Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
William N. Drabble (Texas Bar No. 24074154)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:       jbrookner@grayreed.com
             dyork@grayreed.com
             wdrabble@grayreed.com
             jsmeltzer@grayreed.com
             drayshell@grayreed.com

*Counsel for Appellant Patrick Daugherty*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | ) | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | ) | |
| | ) | |
| | ) | |
| THE DUGABOY INVESTMENT TRUST and PATRICK DAUGHERTY, | ) | Case No. 3:25-cv-01876-K (Consolidated with Case No. 3:25-cv-01901-K) |
| Appellants, | ) | |
| v. | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P, *et al.*, | ) | |
| Appellees. | ) | |

## APPELLANT PATRICK DAUGHERTY'S RESPONSE
## TO APPELLEES' MOTION TO DISMISS APPEAL AS MOOT

## <u>TABLE OF CONTENTS</u>

I.   Preliminary Statement .......................................................................1

II.  Daugherty's Appeal Should Be Considered on Its Merits. ...........................4

    A.   The Record Does Not Support the Application of Section 363...........4

    B.   The Substance of the Settlement Agreement Does Not Support the
Application of Section 363. ............................................................6

    C.   Daugherty's Appeal is Not Moot and Should be Considered on Its
Merits. .......................................................................................11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*,
    179 F.3d 197 (5th Cir. 1999) ................................................................4

*Cadle Co. v. Mims (In re Moore)*,
    608 F.3d 253 (5th Cir. 2010) ....................................................4, 11, 12

*Conn. Gen. Life. Ins. Co. v. United Cos. Fin. Corp. (In re Foster
    Mortg. Corp.)*,
    68 F.3d 914 (5th Cir. 1995) ................................................................4

*Consumer News and Bus. Channel Partnership v. Financial News
    Network, Inc. (In re Financial News Network, Inc.)*,
    980 F.2d 165 (2d Cir. 1992) ................................................................2

*In re Continental Air Lines, Inc.*,
    780 F.2d 1223 (5th Cir. 1986) ..............................................................7

*In re Fieldwood Energy III LLC*,
    No. 20-33948, 2023 WL 2402871 (S.D. Tex. Mar. 7, 2023) *aff'd*
    .93 F.4th 817 (5th Cir. 2024)................................................................4

*Fuchs v. Snyder Tr. Enters. (In re Worldpoint Interactive, Inc.)*,
    335 F.App'x 669 (9th Cir. 2009) ....................................................8, 11

*Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (Matter of VCR I,
    L.L.C.)*,
    922 F.3d 323 (5th Cir. 2019) ....................................................12, 13

*Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey
    Thompson)*,
    292 B.R. 415 (9th Cir. B.A.P. 2003) ....................................................8

*In re Gulf Coast Oil Corp.*,
    404 B.R. 407 (Bankr. S.D. Tex. 2009) ............................................7, 8

*Matter of Highland Capital Mgmt., L.P.*,
    132 F.4th 353 (5th Cir. 2025) ....................................................3, 10

*In re Jackson Brewing Co.*,
    624 F.2d 599 (5th Cir. 1980) .......................................................................5, 11

*Koon v. United States*,
    518 U.S. 81 (1996)...................................................................................................4

*In re Lahijani*,
    325 B.R. 282 (9th Cir. 2005) .................................................................................7

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    583 U.S. 366 (2018)...............................................................................................6,7

*New Industries, Inc. v. Allison D. Byman (Matter of Sneed
    Shipbuilding, Inc.)*,
    916 F.3d 405 (5th Cir. 2019) .........................................................................13, 14

*In re Open Medicine Institute, Inc.*,
    639 B.R. 169 (9th Cir. B.A.P. 2022)....................................................................8

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ...............................................................................11

*Pepper v. Litton*,
    308 U.S. 295 (1939)...............................................................................................2, 6

*Protective Comm. For Indep. Stakeholders of TMT Trailer Ferry, Inc.
    v. Anderson¸*
    390 U.S. 414 (1968)...............................................................................................5, 11

*Sawyer v. Hoag*,
    84 U.S. 610 (1873).................................................................................................2, 7

*Matter of South Coast Supply Company*,
    91 F.4th 376 (5fth Cir. 2024)................................................................................7

*In re VCR I, LLC*,
    No. 1202009EE, 2017 WL 4404280 (Bankr. S.D. Miss. Sept. 29,
    2017), *aff'd sub nom. Gluckstadt Holdings, LLC v. VCR I, LLC*,
    No. 3:17-CV-820-CWR-LRA, 2018 WL 11660086 (S.D. Miss.
    May 9, 2018), *aff'd sub nom. Matter of VCR I, L.L.C.*, 922 F.3d
    323 (5th Cir. 2019)................................................................................................13

*Matter of Walker County Hospital Corp.*,
    3 F.4th 229 (5th Cir. 2021) .............................................................................13, 14

4897-3380-1317

**Statutes**

11 U.S.C. § 363 ...............................................................................*passim*

11 U.S.C. § 363(b) ..........................................................................*passim*

11 U.S.C. sec. 363(b)(1) .........................................................................7

11 U.S.C. § 363(m) .........................................................................*passim*

**Other Authorities**

Fed. R. Bankr. P. 6004 .......................................................................2, 8

Fed. R. Bankr. P. 6004(a)–(h) ................................................................8

Fed. R. Bankr. P. 6004(f)(1)(A) ..............................................................8

Fed. R. Bankr. P. 9019 ...................................................................*passim*

4897-3380-1317

Appellant Patrick Daugherty ("Daugherty") files this response in opposition to Appellees Highland Capital Management, L.P., the Highland Claimant Trust (together, "Highland"), and Mark. S. Kirschner as Litigation Trustee of the Highland Litigation Sub-Trust's (the "Litigation Sub-Trust," together with Highland, the "Appellees")) Motion to Dismiss Appeal as Moot, Doc. No. 21 (the "Motion"). Appellees' Motion should be denied, and this Court should consider Daugherty's appeal on its merits.

## I.    PRELIMINARY STATEMENT

1.    Daugherty's appeal is ripe for the Court's review on its merits, and Appellees' reliance on 11 U.S.C. § 363(m) is misplaced.  Appellees did not establish that a *sale*, pursuant to section 363, occurred or was contemplated by the Settlement Agreement.  Instead, section 363 was, at best, an afterthought in the briefing and the argument put before the bankruptcy court when it considered entry of the Settlement Agreement[1] and, thus, an unwarranted postscript addition to the bankruptcy court's Order.

2.    In fact, beyond the releases and promises to indemnify the *principals* of Appellees flowing from the HMIT Entities to Appellees, it is nearly impossible to see what value, if any, the HMIT Entities transmitted to the Highland *estate* under the terms of the Settlement Agreement.  The lack of value, much less monetary

---

[1] Capitalized terms, unless otherwise defined herein, share the same definitions as those in Appellees Motion.  The Settlement Agreement is attached as Exhibit 1 to the Declaration of James P. Seery, Jr. in Support of Appellees' Motion to Dismiss Appeal as Moot. [*See* Doc. No. 22-1].

value, flowing to Appellees is critical, because it is a fundamental tenant of bankruptcy law that the Court should consider substance over form in reaching its decisions—here, whether the settlement included a *sale*.[2]

3.    The Settlement Agreement itself makes no reference to any common language associated with an alleged sale related to the "Assets,"[3] *e.g.*, "sale," "sell," "purchase," "buy."   So, by its plain language, to characterize the Settlement Agreement as a "sale," or as including a "sale," is a reach, if not a plain misnomer.[4] Moreover, none of the trappings of a typical sale contemplated by section 363 or FED. R. BANKR. P. 6004[5] are present, including whether the Appellees attempted to maximize the value allegedly provided to the estate in exchange for the Assets.[6]

---

[2] *See, e.g., Pepper v. Litton*, 308 U.S. 295, 305 (1939) (discussing how bankruptcy courts are entrusted with equitable powers "to the end that fraud will not prevail, that ***substance will not give way to form***, that technical considerations will not prevent substantial justice from being done.") (emphasis added); *Sawyer v. Hoag*, 84 U.S. 610 (1873) (holding that courts should look beyond the mere form of a transaction to its substance, especially where the rights of creditors are at stake); *Consumer News and Bus. Channel Partnership v. Financial News Network, Inc. (In re Financial News Network, Inc.)*, 980 F.2d 165, 169 (2d Cir. 1992) (noting that "in bankruptcy proceedings substance should not give way to form").

[3] "Assets," as defined by Appellees, refers to the (1) Kirschner Claims, and (2) the Dugaboy Note. Motion at p. 3, n 3.

[4] [*See generally* Doc. No. 22-1.]

[5] Hereinafter, any capitalized reference to a "Bankruptcy Rule", "Bankr. Rule", or the "Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

[6] Even if some of those trappings were present, Appellees concede the Settlement Agreement is not fully consummated: "the parties to the Settlement Agreement have taken all steps to fulfill their respective obligations ***except those tied to future dates***." [Doc. No. 21 at p. 3, n. 6 (emphasis added); *see also* Doc. No. 22 (Decl. of J. Seery) at ¶ 7].

4.      Absent a *sale*, much less a fully consummated sale, the protections provided by section 363(m) do not apply.  As such, the bankruptcy court abused its discretion in finding that section 363(m) applied, and Daugherty's appeal is ripe for consideration.

5.      Additionally, contrary to Appellees' implication that Daugherty has failed to challenge the "good faith" elements of the Settlement Agreement, Daugherty's identified issues for appeal include:

> Whether the Bankruptcy Court abused its discretion by approving the HMIT Settlement Order [Doc. No. 4297] when the settlement is not fair, reasonable, or in the best interests of the estate as the Debtor, through its principals, is foregoing recovery of millions in material value to the estate in exchange for, inter alia, self-serving releases of its principals.[7]

That issue encompasses the negotiations between Appellees and the HMIT Entities, including whether they were conducted in good faith, as it questions the underlying drivers[8] for the parties' entry into the Settlement Agreement whether pursuant to Bankr. Rule 9019 or 11 U.S.C. § 363.

---

[7] [Ex. 5, Bankr. Doc. No. 4369 at p.2].  For convenience, copies of all documents cited herein from the underlying bankruptcy proceedings and adversary proceedings are attached to the Declaration of Drake M. Rayshell in Support of Appellant Patrick Daugherty's Response to Appellee's Motion to Dismiss Appeal as Moot.

[8] Interestingly, the releases exchanged between Appellees and the HMIT Entities became effective **on or before** any other exchanges or obligations occurred under the Settlement Agreement. [*Compare* Doc. No. 22 at ¶¶ 15, 16 *with id.* at ¶¶ 9-14].  Those same releases come on the heels of the Fifth Circuit's March 2025 holding that severely narrowed the scope of liability protections provided by the underlying bankruptcy plan's gatekeeper provision, leaving the debtor's principal's exposed to personal liability in future litigation. *See Matter of Highland Capital Mgmt., L.P.*, 132 F.4th 353, 362 (5th Cir. 2025) (narrowing the scope of "perhaps the broadest gatekeeper injunction ever written into a bankruptcy confirmation plan").

6.     Accordingly, the Court should deny Appellees' Motion to Dismiss and take up Daugherty's appeal on its merits.

## II.    DAUGHERTY'S APPEAL SHOULD BE CONSIDERED ON ITS MERITS.

### A.    The Record Does Not Support the Application of Section 363.

7.     A district court reviews the bankruptcy court's approval of a settlement and application of section 363(b) thereto for abuse of discretion and its conclusions of law *de novo*.[9]  A lower court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).  "Accordingly, the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions."  *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) (quotation omitted).  Such is the case here.

8.     The Motion hinges on this Court accepting (without questioning) the premise that section 363(m) applies to the settlement between Appellees and the HMIT Entities.  Appellees' proposition, however, is belied by the underlying record's near silence on section 363.  During the June 25, 2025, hearing on

---

[9] *See Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 257 (5th Cir. 2010) (citing *Conn. Gen. Life. Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995)); *see also In re Fieldwood Energy III LLC*, No. 20-33948, 2023 WL 2402871 at *2 (S.D. Tex. Mar. 7, 2023) *aff'd* .93 F.4[th] 817 (5th Cir. 2024) (discussing how the district court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous).

4

Appellees' Motion for Entry of the Settlement,[10] "363" was referenced 4 times—and not until page 240 of a 266-page transcript—**after** Appellees presented their closing argument.[11]

9.    Conversely, "9019" was referenced 42 times, the first reference taking place on p. 4 with the bankruptcy court characterizing the hearing as covering "two motions: [1] a motion to extend the duration of the Plan Trust, and then [2] *a motion under Rule 9019 to approve a settlement between the estate entities and Hunter Mountain entities*."[12]   The discrepancy makes sense, because the entirety of the hearing revolved around the application of the Rule 9019 factors,[13] not section 363.[14]

10.    In fact, Appellees' late reference to "section 363," offered after its closing argument, exemplifies how section 363 amounted to little more than a throwaway issue during the hearing: "Just to clarify, the motion was made under 9019 and section 363. I just don't want that to get lost. That's all."[15]

---

[10] [Ex. 2, Bankr. Doc. No. 4216 (the "Settlement Motion")].

[11] [Ex. 4, Bankr. Doc. No. 4296, Hr'g Trans. 240:18-20 (emphasis added)].

[12] [Ex. 4, Bankr. Doc. No. 4296, Hr'g Trans. 4:8-11(emphasis added)].

[13] *See, e.g., Protective Comm. For Indep. Stakeholders of TMT Trailer Ferry, Inc. v. Anderson¸* 390 U.S. 414, 424 (1968); *see also In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

[14] [*See generally,* Ex. 4, Bankr. Doc. No. 4296, Hr'g Trans.].  Moreover, like the Court, in his opening, Appellees' counsel also characterized the hearing as follows: "*This is a 9019 motion*. It's not a terribly high bar." [Ex. 4, Bankr. Doc. No. 4296, Hr'g Trans. 48:8-9 (emphasis added)].  He made no mention of "section 363" until after his closing argument. [*See id.* at 240:18-20].

[15] [Ex. 4, Bankr. Doc. No. 4296, Hr'g Trans. 240:18-20 (emphasis added)].

5

11.    Scouring the record before the bankruptcy court, there is simply no substantive support for section 363 to be found.  And like their superficial reference to "section 363" during the hearing, Appellees' Settlement Motion briefing conflates its Rule 9019 and section 363 analyses,[16] so there is little, if any, support to be found in the briefing for the application of section 363.  Appellees' cursory references to 363 should not amount to a safe harbor against Daugherty's meritorious appeal, and the Court should find that the bankruptcy court abused its discretion in finding section 363 applies under such a hollow record.

**B.    The Substance of the Settlement Agreement Does Not Support the Application of Section 363.**

12.    By itself, the record's near silence regarding section 363 is determinative on this issue, but the Settlement Agreement's absolute silence on section 363, much less any purported *sale*, is dispositive.  The Supreme Court has consistently looked to substance over form in the application of bankruptcy law in order to ensure an equitable result is achieved.  *See, e.g., Pepper v. Litton*, 308 U.S. 295, 305 (1939) (affirming a district court's unwinding of a sale and disallowance of a claim based in part upon a finding that a court's equitable powers should be utilized to ensure that substance should not give way to form); *Merit Management*

---

[16] Appellees' brief sets out the Rule 9019 considerations and then details how the proposed settlement satisfies those factors.  [*See* Ex. 2, Bankr. Doc. No. 4216 at ¶¶ 24, 25, 28-31].  It also sets out the section 363 standard, but then only addresses that standard with a single conclusory sentence: "The Settlement Agreement is clearly a rational exercise of the Highland Entities' business judgment." [Ex. 2, Bankr. Doc. No. 4216 at ¶¶ 26, 30; *see also* Ex. 3, Bankr. Doc. No. 4275 at ¶ 5 (same, Appellees' dedicated one sentence to the section 363 standard)].

*Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380–81 (2018)(same); *Sawyer v. Hoag*, 84 U.S. 610, 621 (1873)(same). The substance of Appellees' Settlement Agreement demonstrates that this transaction is a compromise pursuant to Bankruptcy Rule 9019, not a sale free and clear pursuant to section 363(b).

13.    Section 363 governs the debtor's use of property of the estate in transactions, including alleged sales, made outside the ordinary course of business.[17] "The bankruptcy court's obligation in approving section 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Matter of South Coast Supply Company*, 91 F.4th 376, 384 (5fth Cir. 2024) (citing *In re Lahijani*, 325 B.R. 282, 288 (9th Cir. 2005)). Indeed, "the principal justification for § 363(b) sales is that aggressive marketing in an active market assures that the estate will receive maximum benefit." *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 424 (Bankr. S.D. Tex. 2009). To satisfy that standard, one court has summarized:

> the §363(b) movant should be prepared to prove, not just allege, why it is appropriate to provide extraordinary bankruptcy authority and remedies solely for the benefit of a party whose contract under state law does not provide those remedies and benefits. And if the proposed transaction will not even pay all of the expenses of the bankruptcy proceeding, it would be especially difficult to understand why the purchaser should get the benefit of extraordinary bankruptcy powers and remedies for which it did not pay.

---

[17] Subsection 363(b) provides that "a debtor in possession, 'after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.' . . . [F]or the debtor in possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing 11 U.S.C. sec. 363(b)(1)).

7

*In re Gulf Coast Oil Corp.*, 404 B.R. 407, 427 (Bankr. S.D. Tex. 2009). Appellees have done nothing to satisfy the section 363 requirements.[18] Appellees' settlement merely resolved mutual claims among the parties pursuant to Bankruptcy Rule 9019. The Settlement Agreement did not require, much less establish by its terms, that optimal value was captured by the Appellees through this transaction, as required by section 363, to clothe the transaction with the protections of 363(m).[19]

14.    Nor could Appellees have otherwise offered any evidence that the estate's value has been maximized because they never attempted to appraise the Assets they purport to have "sold."[20] Appellees instead transferred the burden of appraisal to the HMIT Entities through the Settlement Agreement's terms.[21]

---

[18] Instead, Appellees' settlement flips the section 363 requirements on their head. For example, Bankruptcy Rule 6004 imposes certain requirements upon a sale conducted outside of the ordinary course of business under section 363 or otherwise. *See* FED. R. BANKR. P. 6004(a)–(h). And Bankruptcy Rule 6004(f)(1)(A) imposes a requirement to file an itemized statement upon completion of the sale that details: (1) the property sold; (2) the name of each purchaser; and (3) the consideration received for each item or lot or, if sold in bank, for the entire property. *Id.* at (f)(1)(A). Appellees provided no evidence that they attempted to follow Rule 6004's outline or actively shop these Assets on the open market.

[19] *See In re Open Medicine Institute, Inc.*, 639 B.R. 169, 182 (9th Cir. B.A.P. 2022) ("Because this settlement resolved mutual claims, it was not a one-way sale requiring scrutiny under § 363.")*; accord Fuchs v. Snyder Tr. Enters. (In re Worldpoint Interactive, Inc.)*, 335 F.App'x 669, 670 (9th Cir. 2009) ("We are not persuaded by [appellant's] contention that the settlement amounted to an asset sale under *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson)*, 292 B.R. 415, 421 (9th Cir. B.A.P. 2003), because both parties to the settlement here released claims.").

[20] Notably, the HMIT Entities did not transfer anything of monetary value to the estate in exchange for the Dugaboy Note, or the Kirschner Claims. *See generally* Doc. No. 22-1.

[21] [*See e.g.*, Ex. 2, Bankr. Doc. No. 4216 (Appellees' Settlement Motion) at ¶ 21, n. 8 ("Pursuant to the Settlement Agreement, HMIT will engage an independent valuation service to value the Dugaboy Note…")].

15.    In fact, Appellees required the HMIT Entities to agree, under the terms of their Settlement Agreement, that Appellees were making no representations as to the value of the Assets.  Regarding the Dugaboy Note, the HMIT Entities agreed to "acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis."  Doc. No. 22-1 (Settlement Agreement) at p. 10, § 5(b).  The same is true for the Kirschner Claims.  Appellees required the HMIT Entities to agree to an all-caps disclaimer:

> "THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT **THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR AMENDED COMPLAINT."**

*Id.* at p. 12, § 8(b)(bold emphasis added).

16.    Accordingly, instead of pursuing the optimal value in exchange for the purported Assets, Appellees essentially represented that the Assets had no value. However, the Settlement Agreement itself defines the "Dugaboy Note" as that "certain Promissory Note dated May 31, 2017, **in the original face amount of**

9

**$24,268,621.69,**" and, at one point in time, the Litigation Trustee characterized the Kirschner Claims as seeking recovery of "**hundreds of millions of dollars** in damages that [Highland] suffered at the hands of its founder, James Dondero, acting in concert with other entities."[22]  Accordingly, Appellees' disclaimer of the value of these assets is the antithesis of section 363's requirements.

17.     Because Appellees expressly disclaimed that the Assets had any value, it is hard to envision how the settlement transaction could amount to a sale. Moreover, the HMIT Entities did not exchange any valuable consideration that actually increased the value of the Highland estate in connection with the purported sale.  Instead, Appellees traded the Kirschner Claims and the Dugaboy Note (the "Assets") to the HMIT Entities for releases tied to ongoing litigation between the HMIT Entities and Appellees.  Doc. No. 22-1 at § 9.  These releases predominantly protect the debtor's current principals from current and future legal exposure rather than fill the coffers of the debtor's estate.[23]  *Id.* at § 10.

18.     Given Appellees' failure to appraise the Assets, their express disclaimers that the Assets had any value, and their failure to receive any monetary

---

[22] [Doc. No. 22-1 at p.3 (Dugaboy Note); *see* Ex. 1, Adv. Proc. 21-03076-sgj, Doc. No. 158 at p.1 (Kirschner Claims)].  Appellees also ignore the value of the potential tax benefits associated with the capital account transfer, of nearly $337M, to the HMIT Entities that could otherwise inure to the benefit of the Highland Estate and its pass-through claimants. [*See* Doc. No. 22-1 at § 4(a)].

[23] Indeed, the Settlement Agreement simply creates by contract the broad releases and injunctions for the benefit of Appellees' principals that the Fifth Circuit prohibited when it twice ordered the bankruptcy court to limit the exculpation and gatekeeper provisions of the bankruptcy plan.  *See Matter of Highland Capital Mgmt., L.P.*, 132 F.4th 353, 362 (5th Cir. 2025).

10

value in exchange for their assignment, the substance of the Settlement Agreement does not support the finding that a 363(b) sale existed.[24] The Settlement Agreement is no more than a standard compromise under Rule 9019.[25]

**C.    Daugherty's Appeal is Not Moot and Should be Considered on Its Merits.**

19.    Tellingly, the Fifth Circuit case law relied upon by Appellees confirms Daugherty's argument that section 363 does not properly apply to Appellees' Settlement Agreement. Appellees cite to the Fifth Circuit's opinion in *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) for the proposition that a settlement can also be a sale of estate assets under Bankruptcy Code section 363(b), pointing out that in so ruling, the Fifth Circuit adopted a position held by at least three other circuit courts. However, while true that "every sale of property involves a transfer, [] **not every transfer is a sale**." *In re Pacific Lumber Co.*, 584 F.3d 229, 245 (5th Cir. 2009).

---

[24] Coincidentally, neither the Claim Assignment Agreement (Kirschner Claims) or the Note Elevation and Assignment Agreement (Dugaboy Note) reference section 363. *See* Doc. Nos. 22-9, 22-10. However, both acknowledge that they are relying upon the bankruptcy court's approval of the Settlement Agreement pursuant to the "9019 Motion." *See id.*

[25] Bankruptcy Rule 9019 authorizes bankruptcy courts to approve compromises and settlements. *See* Fed. R. Bankr. P. 9019. The bankruptcy court reviews a proposed compromise to ensure it is "'fair and equitable' and 'in the best interest of the estate.'" *See Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968)); *see also In re Worldpoint Interactive, Inc.*, 335 F.App'x 669, 670 (9th Cir. 2009) ("The record provided sufficient information for the bankruptcy court to assess that the settlement agreement was fair and equitable, and, thus, the court did not abuse its discretion by approving the agreement … [w]e are not persuaded by Fuchs' contention that the settlement amounted to an asset sale … because both parties to the settlement here released claims.").

11

20.    As discussed above, bankruptcy courts are required to "scrutinize" a proposed sale under section 363(b), "ensur[ing] that fundamental bankruptcy policies of asset value maximization and equitable distribution are satisfied."[26]  A proposed compromise pursuant to Rule 9019 is not subject to the same scrutiny.

21.    Thus, in *Moore*, the court remanded the case to the bankruptcy court to conduct the necessary analysis under section 363(b), determining whether the value of the asset being sold was maximized through the proposed compromise or if there was potentially more value to be obtained at an auction and public sale, considering a higher bid had been offered. 608 F.3d at 265.  In so ruling, the Fifth Circuit stated that "[b]ecause the bankruptcy court did not entertain Cadle's offer and did not hold an auction, the true value of the claims is undetermined." *Id.*

22.    The same is true here.  Appellees never appraised the value of the "Assets" they purport to have "sold," thus they cannot be sure of the value of the assets, let alone offer proof of value maximization.  Thus, this Court should find that the bankruptcy court never considered the transaction to be a sale pursuant to section 363(b) and that applying section 363(m) to this transaction was an abuse of the bankruptcy court's discretion.

23.    Indeed, the Appellees concede, in citing to *Gluckstadt Holdings, L.L.C. v. VCR I, L.L.C. (Matter of VCR I, L.L.C.)*, 922 F.3d 323, 327 (5th Cir. 2019) that

---

[26] *In re Moore*, 608 F.3d at 262, n. 18 (discussing how any sale of avoidance actions would need to undergo "careful judicial scrutiny pursuant to existing § 363(b) requirements").

"when a settlement agreement in a bankruptcy proceeding involves the sale of the debtor's property, such agreement triggers the requirements of § 363."[27] In *Matter of VCR I*, the Fifth Circuit determined that even though the chapter 7 trustee accepted a lower offer, he had conducted an auction and marketed the property, thus fulfilling his fiduciary duty to maximize the assets of the estate. 922 F.3d at 328. Additionally, the transaction in *Matter of VCR I* resulted in money flowing from the purchaser into the estate. *Id.*[28] Neither occurred here, the only consideration flowing from the HMIT Entities to Appellees is a release of claims, and the Appellees failed to otherwise appraise, much less maximize, the value of the Assets of the estate. Appellees, therefore, failed to comply with section 363's requirements.

24.    The Appellees also rely on *Sneed Shipbuilding* and *Walker County Hospital*.[29] In citing to *Sneed Shipbuilding*, the Appellees contend that the Fifth Circuit held that section 363(m) made the bankruptcy court's approval the "final word" on the subject unless an objector obtains a stay of the ruling. Motion at p. 6,

---

[27] In *Matter of VCR I*, the Fifth Circuit noted that section 363(m) did not apply because the appeal did not seek to invalidate the sale. 922 F.3d at 326 n.2. Here, there is no "sale" to invalidate, thus section 363(m) does not apply.

[28] In *Matter of VCR I,* the purchaser paid over $2 million into the bankruptcy estate in exchange for estate assets. *See also In re VCR I, LLC,* No. 1202009EE, 2017 WL 4404280, at *4 (Bankr. S.D. Miss. Sept. 29, 2017), *aff'd sub nom. Gluckstadt Holdings, LLC v. VCR I, LLC,* No. 3:17-CV-820-CWR-LRA, 2018 WL 11660086 (S.D. Miss. May 9, 2018), *aff'd sub nom. Matter of VCR I, L.L.C.,* 922 F.3d 323 (5th Cir. 2019) ("[T]he MTC paid $2,011,700.00 to the bankruptcy estate.").

[29] *See* Motion at pp. 6–7, ¶¶ 10–11 (citing to *New Industries, Inc. v. Allison D. Byman (Matter of Sneed Shipbuilding, Inc.)*, 916 F.3d 405 (5th Cir. 2019) and *Matter of Walker County Hospital Corp.*, 3 F.4th 229 (5th Cir. 2021)).

13

¶ 10.   However, there was no question whether a sale took place in *Sneed Shipbuilding*: a third-party purchaser obtained clean title to one of the estate's chief assets in exchange for nearly $15 million flowing into the estate. *Matter of Sneed Shipbuilding, Inc.*, 916 F.3d at 407.  Separately, the estate utilized a portion of the proceeds from the sale to resolve a separate controversy regarding a cloud on the title to the asset sold via a settlement pursuant to Bankruptcy Rule 9019.  *Id.*  Here, as detailed above, the estate is not receiving any money in exchange for its "Assets" and even if it had, there would be no rationale for how the estate Assets' value was maximized by this transaction.

25.   Similarly, Appellees specifically cite to *Walker County Hospital* for the proposition that section 363(m) supports the important policy of affording finality to sale orders in bankruptcy proceedings.  Motion, p. 7, ¶ 11 (citing *Walker County Hospital*, 3 F.4th at 235).  However, *Walker County Hospital* is inapposite.  In the case at bar, application of section 363(m) was an abuse of discretion as the Appellees never provided sufficient evidence to overcome their burden of proof for the settlement to be approved as a sale pursuant to section 363(b), and further, the bankruptcy court did not consider whether the trustee had fulfilled his fiduciary duties to maximize the value of the assets purportedly sold.

*** 

26.   In sum, Appellees failed to establish the requirements of section 363 through their briefing, argument, and evidence put before the bankruptcy court, the

Settlement Agreement, by its terms, does not support a finding that the substance of the transaction supports its characterization as a section 363 sale, and the Fifth Circuit case law cited by Appellees weighs against the extraordinary relief they request from this court under section 363(m). This Court should therefore deny Appellees Motion to Dismiss Daugherty's Appeal as Moot, so it can take up whether the Settlement Agreement was properly approved on the merits of Daugherty's Appeal.

## PRAYER

For these reasons, Daugherty respectfully requests the Court deny Appellees Motion and grant him any such further relief to which he may be justly entitled.

15

Dated: September 2, 2025.  Respectfully submitted,

**GRAY REED**

BY: */s/ Andrew K. York*
   Jason S. Brookner (Texas Bar No. 240033684)
   Andrew K. York (Texas Bar No. 24051554)
   William N. Drabble (Texas Bar No. 24074154)
   Joshua D. Smeltzer (Texas Bar No. 24113859)
   Drake M. Rayshell (Texas Bar No. 24118507)
   1601 Elm Street, Suite 4600
   Dallas, Texas 75201
   Telephone: (214) 954-4135
   Facsimile:  (214) 953-1332
   Email:  jbrookner@grayreed.com
       dyork@grayreed.com
       wdrabble@grayreed.com
       jsmeltzer@grayreed.com
       drayshell@grayreed.com

**Counsel for Appellant Patrick Daugherty**


## <u>CERTIFICATE OF COMPLIANCE</u>

  1.  This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A), because excluding the portions excluded by Fed. R. Bankr. P. 8015(g), this document contains 4,423 words.

  2.  This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, typeface Times New Roman, 14-point type (12-point type of footnotes).


      */s/ Andrew K. York*
      Andrew K. York

4897-3380-1317

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 2, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

<u>*/s/ Andrew K. York*</u>
Andrew K. York