**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P

§
§  Case No.  19-34054-sgj11

**The Dugaboy Investment Trust - Appellant**

§
**vs.**                                              §              **3:25-CV-01876-K**

**Highland Capital Management, L.P; et al**  - Appellee

§
§

[4297] **Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document # 4216) Entered on 6/30/2025**

## Volume 4

# APPELLANT RECORD

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Case No. 19-34054-sgj** |
| | § | |
| **Reorganized Debtor.** | § | |
| | § | *INDEX* |

## APPELLANT THE DUGABOY INVESTMENT TRUST'S AMENDED STATEMENT OF ISSUES TO BE PRESENTED AND DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

1

Pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Appellant The Dugaboy Investment Trust ("Appellant"), having filed a Notice of Appeal [Docket No. 4311] on July 14, 2025; and having filed *Appellant The Dugaboy Investment Trust's Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal* [Docket No. 4365] on August 11, 2025 in the above-captioned case; and having received correspondence from the Bankruptcy Clerk's Office [Docket No. 4367] asking Dugaboy to correct certain errors in its August 11, 2025 submission [Docket No. 4365]; hereby submits this *Amended Statement of Issues to be Presented and Designation of Items to be Included in the Record on Appeal*, and respectfully requests that the Clerk prepare and forward the items listed herein to the District Court for inclusion in the record in connection with this appeal.[1]

## STATEMENT OF ISSUES TO BE PRESENTED ON APPEAL

1. **Did the Bankruptcy Court err in approving the settlement agreement and release entered into between the Highland Entities and the HMIT Entities pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure as being fair, equitable, and in the best interest of the estate?**

2. **Did the Bankruptcy Court err by approving a settlement agreement utilizing an improper valuation methodology and without sufficient supporting evidence?**

3. **Did the Bankruptcy Court err in approving the overly broad and vague release provisions contained within the settlement agreement?**

4. **Did the Bankruptcy Court err in approving the settlement agreement without allowing adequate time for the Cayman Islands Joint Official Liquidators to complete their investigation?**

5. **Did the Bankruptcy Court err in concluding Mark Patrick had the requisite corporate authority to enter into and bind the HMIT entities to the settlement agreement?**

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

---

[1] Because of its voluminous nature, Docket #4255 will be delivered to the Clerk on a flash drive which will arrive tomorrow, August 13, 2025.

2

*Vol. 1*
*000001*

1. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Docket No. 4311] filed by Appellant;

*000010*

2. *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4297];

*000014*

3. Docket entries kept by the bankruptcy clerk in case no. 19-34054-sg11;

4. Any opinion, findings of fact and conclusions of law of the bankruptcy court relating to the issues on appeal, including transcripts of all oral rulings: Transcript of hearing held June 25, 2025 before Judge Stacey C.G. Jernigan [Docket No. 4296] re: Motion for Entry of an Order Approving Settlement with HMIT Entities (4216) [Docket No. 4297]; and

5. Each of the additional documents and items designated below:

*Vol. 2*
*000625*
*000786*
*000 804*

| Date Filed | Docket No. | Description/Docket Text |
|---|---|---|
| 2/22/2021 | 1943 | Order confirming the fifth amended chapter 11 plan, as modified and granting related relief (RE: related document(s)1472 Chapter 11 plan filed by Debtor Highland Capital Management, L.P., 1808 Chapter 11 plan filed by Debtor Highland Capital Management, L.P.). Entered on 2/22/2021 (Okafor, M.) |
| 5/19/2025 | 4216 | Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: #1 Exhibit A--Proposed Order (Annable, Zachery) |
| 5/19/2025 | 4217 | Declaration re: (Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an |

*Vol. 2*

| | | | |
|---|---|---|---|
| | | | Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 (Annable, Zachery) |
| *000807* | 5/19/2025 | 4217-1 | Proposed Settlement Agreement |
| *000832* | 5/20/2025 | 4218 | Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust(Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust(Attachments: # 1 Exhibit A-- Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |
| *000838* | 5/22/2025 | 4221 | Amended Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust(Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust(Attachments: # 1 Exhibit A-- Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery |

| | | | |
|---|---|---|---|
| *Vol. 2*<br><br>*0008 44* | 6/9/2025 | 4228 | Motion for expedited hearing on Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion Filed by Partner Dugaboy Investment Trust (related document #4227 (Attachments: #1 Proposed Order Granting Motion for Expedited Hearing (Hesse, Gregory) Modified linkage on 6/10/2025 (mdo). |
| *0008 49* | 6/9/2025 | 4230 | Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| *0008 57* | 6/10/2025 | 4232 | Response opposed to (related document(s): 4227 Motion to extend time to Time to Respond to Trusts' Motion filed by Partner Dugaboy Investment Trust, 4228 Motion for expedited hearing (related documents 4216 Motion to compromise controversy) on Emergency Motion for an Order Extending Duration of Time to Respond To Trusts' Motion filed by Partner Dugaboy Investment Trust) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| *0008 63* | 6/10/2025 | 4234 | Reply to (related document(s): 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) to (I) Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion and (II) Motion for Expedited Hearing on Emergency Motion for an Order Extending Duration of Time to Respond to Trusts' Motion filed by Partner Dugaboy Investment Trust. (Hesse, Gregory) |
| *0008 67* | 6/20/2025 | 4251 | Exhibit List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| *0008 69* | 6/20/2025 | 4252 | Witness List for the June 25, 2025 Hearing filed by Partner Dugaboy Investment Trust (RE: related document(s)4230 Objection). (Lang, Michael) |
| *Vol. 3*<br><br>*0008 71*<br>*Thru* *Vol. 13* | 6/20/2025 | 4255<br><br>*(to be submitted to* | Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to |

*Vol. 3*
*Starts with*
*0008711 —*

*Thru Vol End*
*Vol 1.3*

*of*

| | Clerk on flash drive) | | Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 , #2 Exhibit 2 , #3 Exhibit 3 , #4 Exhibit 4 , #5 Exhibit 5 , #6 Exhibit 6 , #7 Exhibit 7 , #8 Exhibit 8 , #9 Exhibit 9 , #10 Exhibit 10 , #11 Exhibit 11 , #12 Exhibit 12 , #13 Exhibit 13 , #14 Exhibit 14 , #15 Exhibit 15 , #16 Exhibit 16 , #17 Exhibit 17 , #18 Exhibit 18 , #19 Exhibit 19 , #20 Exhibit 20 , #21 Exhibit 21 , #22 Exhibit 22 , #23 Exhibit 23 , #24 Exhibit 24 , #25 Exhibit 25 , #26 Exhibit 26 , #27 Exhibit 27 , #28 Exhibit 28 , #29 Exhibit 29 , #30 Exhibit 30 , #31 Exhibit 31 , #32 Exhibit 32 , #33 Exhibit 33 , #34 Exhibit 34 , #35 Exhibit 35 , #36 Exhibit 36 , #37 Exhibit 37 , #38 Exhibit 38 , #39 Exhibit 39 , #40 Exhibit 40 , #41 Exhibit 41 , #42 Exhibit 42 , #43 Exhibit 43 , #44 Exhibit 44 , #45 Exhibit 45 , #46 Exhibit 46 , #47 Exhibit 47 , #48 Exhibit 48 , #49 Exhibit 49 , #50 Exhibit 50 , #51 Exhibit 51 , #52 Exhibit 52 , #53 Exhibit 53 , #54 Exhibit 54 , #55 Exhibit 55 , #56 Exhibit 56 , #57 Exhibit 57 , #58 Exhibit 58 , #59 Exhibit 59 , #60 Exhibit 60 , #61 Exhibit 61 , #62 Exhibit 62 , #63 Exhibit 63 , #64 Exhibit 64 , #65 Exhibit 65 , #66 Exhibit 66 , #67 Exhibit 67 , #68 Exhibit 68 , #69 Exhibit 69 , #70 Exhibit 70 , #71 Exhibit 71 , #72 Exhibit 72 , #73 Exhibit 73 , #74 Exhibit 74 , #75 Exhibit 75 , #76 Exhibit 76 , #77 Exhibit 77 , #78 Exhibit 78 , #79 Exhibit 79 , #80 Exhibit 80 , #81 Exhibit 81 , #82 Exhibit 82 , #83 Exhibit 83 , #84 Exhibit 84 , #85 Exhibit 85 , #86 Exhibit 86 , #87 Exhibit 87 , #88 Exhibit 88 , #89 Exhibit 89 , #90 Exhibit 90 , #91 Exhibit 91 , #92 Exhibit 92 , #93 Exhibit 93 , #94 Exhibit 94 , #95 Exhibit 95 , #96 Exhibit 96 , #97 Exhibit 97 , #98 Exhibit 98 , #99 Exhibit 99 , #100 Exhibit 100 , #101 Exhibit 101 , #102 Exhibit 102 , #103 Exhibit 103 , #104 Exhibit 104 , #105 Exhibit 105 , #106 Exhibit 106 , #107 Exhibit 107 , #108 Exhibit 108 , #109 Exhibit 109 , #110 Exhibit 110 , #111 Exhibit 111 , #112 Exhibit 112 , #113 Exhibit 113 , #114 Exhibit 114 , #115 Exhibit 115 , #116 Exhibit 116 , #117 Exhibit 117 , #118 Exhibit 118 , #119 Exhibit 119 , #120 Exhibit 120 , #121 Exhibit 121 , #122 Exhibit 122 , #123 Exhibit 123 (Annable, Zachery) |
| *Vol.14* *003528* | 6/20/2025 | 4256 | Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis |

| | | | |
|---|---|---|---|
| *Vol 14* | 6/20/2025 | 4257 | Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: #1 Exhibit 1 - Charitable DAF/CLO HoldCo Organization Chart, #2 Exhibit 2 - Rand Structure Chart,#3 Exhibit 3 - July 9, 2021 Memo on DAFs and Sponsoring Orgs, #4 Exhibit 4 - Charitable Respondents Response and Disclosures (Okin, Matthew) |
| *Vol. 15* | 6/23/2025 | 4271 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4253 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 66, #2 Exhibit 67 (Annable, Zachery) |
| | 6/23/2025 | 4272 | Amended Witness and Exhibit List filed by Interested Parties Crown Global Life Insurance, Ltd, The Dallas Foundation (RE: related document(s)4257 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 5, #2 Exhibit 66, #3 Exhibit 7 7,4 Exhibit 8 ,8, Exhibit 9 (Curry, David) |
| | 6/23/2025 | 4273 | Objection to (related document(s)): 4255 List (witness/exhibit/generic) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) filed by Partner Dugaboy Investment Trust. (Ohlinger, Ali) |
| | 6/23/2025 | 4276 | Reply to (related document(s)): 4223 Objection filed by Creditor The Dugaboy Investment Trust) filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust. (Annable, Zachery) |
| | 6/24/2025 | 4277 | Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4255 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 124 , #2 Exhibit 125 (Annable, Zachery) |
| *Vol. 16* | 6/24/2025 | 4279 | Witness and Exhibit List with Respect to Hearing to be Held on June 25, 2025 filed by Partner Dugaboy Investment Trust (RE: related document(s)4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s)4144 Order on motion to extend/shorten time)). (Attachments: #1 Exhibit 1 (Deitsch-Perez, Deborah) |

Handwritten annotations in left margin: *003531, 003851, 003875, 004002, 004017, 004019, 004236*

| | | | |
|---|---|---|---|
| *Vol. 16*<br><br>*0004247* | 6/24/2025 | 4280 | Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)). (Attachments: #1 Exhibit 126 (Annable, Zachery) |
| *0004287* | 6/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). (Entered: 06/27/2025) |
| *0004272* | 6/27/2025 | 4290 | Stipulation by Highland Claimant Trust, Highland Litigation Sub-Trust and The Dugaboy Investment Trust. filed by Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s)4223 Objection). (Annable, Zachery) |
| *0004276* | 6/27/2025 | 4291 | Stipulation withdrawing objection of The Dallas Foundation and Crown Global Life Insurance, LTD to Motion for Entry of an order pursuant to Bankruptcy Rule 9019 and 11 U.S.C. Section 363 approving settlement with the HMIT Entities and authorizing actions consistent therewith (RE: related document(s) 4232 Response filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust, 4282 Stipulation filed by Creditor Hunter Mountain Investment Trust). Entered on 6/27/2025 (Okafor, M.) |
| *0004288* | 7/1/2025 | 4299 | Motion to withdraw document Consent Motion to Dismiss HMIT Remand Proceedings with Prejudice (related document(s) 3699 |

| | | | |
|---|---|---|---|
| | | | Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| | 7/1/2025 | 4300 | Motion to withdraw document Consent Motion to Dismiss Delaware Action Proceedings with Prejudice (related document(s) 4000 Motion for leave) Filed by Creditor Hunter Mountain Investment Trust, Interested Party Hunter Mountain Trust (Attachments: #1 Proposed Order (Salzer, Ian) |
| | 7/7/2025 | 4304 | Order withdrawing Emergency Motion for Leave to File Adversary Proceeding [Dkt. 3699] with prejudice (RE: related document(s)4299 Motion to withdraw document filed by Interested Party Hunter Mountain Trust, Creditor Hunter Mountain Investment Trust). IT IS THEREFORE ORDERED that the proceedings defined in the Dismissal Motion as: Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P., Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including Hunter Mountain Investment Trusts Emergency Motion for Leave to File Adversary Proceeding filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating thereto), are dismissed with prejudice. Entered on 7/7/2025 (Okafor, M.) |
| | 7/14/2025 | 4311 | Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. Fee Amount $298 filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Lang, Michael) |
| | 7/16/2025 | 4323 | Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)4311 Notice of appeal of Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| | 7/17/2025 | 4326 | Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust. Objections due by 8/7/2025. (Lang, Michael) Modified text on 7/21/2025 (mdo). |
| | 7/17/2025 | 4329 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01876-K. (RE: related document(s)4311 Notice of appeal of |

| Vol. 16 | | | Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith. filed by Creditor The Dugaboy Investment Trust (RE: related document(s)4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025.) (Whitaker, Sheniqua) |
| Vol. 17 — 004684 | 7/21/2025 | 4333 | Memorandum of opinion (RE: related document(s)4308 Notice (generic) filed by Interested Party State of Texas, 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order filed by Creditor The Dugaboy Investment Trust). Entered on 7/21/2025 (Okafor, M.) |
| 004700 | 7/21/2025 | 4334 | Order denying stay requests (related document 4326 The Dugaboy Investment Trust's Motion to Stay 9019 Order and 4308 Notice). Entered on 7/21/2025. (Okafor, M.) Additional attachment(s) added on 7/21/2025 (Okafor, M. |
| 004812 | 8/4/2025 | 4353 | Notice of appeal . Fee Amount $298 filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion).   Appellant   Designation   due   by   08/18/2025. (Attachments: #1 Exhibit A (Harper, Geoffrey) |
| 004834 | 8/5/2025 | 4359 | Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-02072-S. (RE: related document(s)4353 Notice of appeal filed by Partner Dugaboy Investment Trust (RE: related document(s) 4333 Memorandum of opinion). (Almaraz, Jeanette) |
| | | | |

Dated: August 12, 2025

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: */s/ Geoffrey S. Harper*

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500

10

(214) 453-6400 (fax)

Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Appellant The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 12, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/ Geoffrey S. Harper*_____
Geoffrey S. Harper

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001121

HCMLPHMIT00000240

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001122

HCMLPHMIT00000241

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001123

HCMLPHMIT00000242

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1.    <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

8

HCMLPHMIT00000243

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

001125

HCMLPHMIT00000244

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Distributions on the Allowed Class 10 Interests.</u>

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer through the address contained in Section 3 ("**Wire Transfer**").

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests.</u>

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)    On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with

001126

HCMLPHMIT00000245

Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.    <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT

11

001127
HCMLPHMIT00000246

ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending

001128

HCMLPHMIT00000247

Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    Further Provisions Concerning The General Releases.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

001129

HCMLPHMIT00000248

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

001130
HCMLPHMIT00000249

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.   <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)   Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)   Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)   For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.   <u>Representations and Warranties</u>.

(a)   Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)   The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)   Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

001131

HCMLPHMIT00000250

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms. Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10[534] (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001132

HCMLPHMIT00000251

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.   <u>Indemnification</u>.

(a)   Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)   Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.   <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

001133

HCMLPHMIT00000252

18.     <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.     <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.     <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

18

HCMLPHMIT00000253

**EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

001135

HCMLPHMIT00000254

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

001136


HCMLPHMIT00000255

29.     <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

001137

HCMLPHMIT00000256

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By    _____
              Name:       Mark Patrick
              Title:        Administrator
              Date:        May __, 2025

**BEACON MOUNTAIN LLC**

By    _____
              Name:
              Title:
              Date:        May __, 2025

**RAND ADVISORS, LLC**

By    _____
              Name:       Mark Patrick
              Title:        President
              Date:        May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By    _____
              Name:       Mark Patrick
              Title:        President
              Date:        May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By    _____
              Name:       Mark Patrick
              Title:        President

001138

HCMLPHMIT00000257

Date:      May \_\_, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By    _____
        Name:    Mark Patrick
        Title:    President
        Date:    May \_\_, 2025

**ATLAS IDF GP, LLC**

By    _____
        Name:    Mark Patrick
        Title:    President
        Date:    May \_\_, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By    _____
        Name:    James. P. Seery, Jr.
        Title:    Chief Executive Officer
        Date:    May \_\_, 2025

**HIGHLAND CLAIMANT TRUST**

By    _____
        Name:    James P. Seery, Jr.
        Title:    Claimant Trustee
        Date:    May \_\_, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By    _____
        Name:    Marc S. Kirschner
        Title:    Litigation Trustee

001139

HCMLPHMIT00000258

Date:        May __, 2025

**HIGHLAND INDEMNITY TRUST**

By    _____
      Name:       James P. Seery, Jr.
      Title:      Indemnity Trust Administrator
      Date:       May __, 2025

001140

HCMLPHMIT00000259

~~CONFIDENTIAL SETTLEMENT COMMUNICATION~~
~~SUBJECT TO FED. R. EVID. 408~~
~~DRAFT 5/16/2025~~ EXECUTION VERSION

### SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the  "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

### DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

4923-8662-5850.9 36027.003

HCMLPHMIT00000260

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. And The Get Good Non-Exempt Trust, collectively as Payee.

2

HCMLPHMIT00000261

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001143

HCMLPHMIT00000262

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd.  *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

4

HCMLPHMIT00000263

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

5

HCMLPHMIT00000264

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

6

001146
HCMLPHMIT00000265

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

7

001147
HCMLPHMIT00000266

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

### AGREEMENT

1.  <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

8

HCMLPHMIT00000267

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(b)      Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.      <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)      The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.      <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955 [wire instructions]

4.      <u>HMIT Class 10 Interest</u>.

(a)      Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)      Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)      Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

9

HCMLPHMIT00000268

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     <u>Initial Interim Distributions on the Allowed Class 10 Interests.</u>

(a)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer through the address contained in Section 3 ("**Wire Transfer**").

> **Formatted:** Font: Bold, Underline

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     <u>Subsequent Distribution(s) on the Allowed Class 10 Interests.</u>

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)     On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)     Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with

001150
HCMLPHMIT00000269

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.   <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)   On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)   The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)   Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.   <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)   Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)   THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT

11

HCMLPHMIT00000270

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending

12

HCMLPHMIT00000271

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    Further Provisions Concerning The General Releases.

(a)    FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

13

HCMLPHMIT00000272

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)       As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)       any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)      any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

14

HCMLPHMIT00000273

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

15

HCMLPHMIT00000274

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(d)      Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.      No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.      Gatekeeper Standard.

(a)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001156
HCMLPHMIT00000275

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

001157
HCMLPHMIT00000276

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

18

001158
HCMLPHMIT00000277

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

001159
HCMLPHMIT00000278

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    Notices.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

20

001160
HCMLPHMIT00000279

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/16/2025

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

21

001161

HCMLPHMIT00000280

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
    Name:    Mark Patrick
    Title:    Administrator
    Date:    May __, 2025

**BEACON MOUNTAIN LLC**

By _____
    Name:
    Title:
    Date:    May __, 2025

**RAND ADVISORS, LLC**

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
    Name:    Mark Patrick
    Title:    President
    Date:    May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
    Name:    Mark Patrick
    Title:    President

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00000281

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:          May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner


By  _____
       Name:       Mark Patrick
       Title:        President
       Date:        May __, 2025

**ATLAS IDF GP, LLC**


By  _____
       Name:       Mark Patrick
       Title:        President
       Date:        May __, 2025


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By  _____
       Name:       James. P. Seery, Jr.
       Title:        Chief Executive Officer
       Date:        May __, 2025


**HIGHLAND CLAIMANT TRUST**


By  _____
       Name:       James P. Seery, Jr.
       Title:        Claimant Trustee
       Date:        May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**


By  _____
       Name:       Marc S. Kirschner
       Title:        Litigation Trustee


SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

HCMLPHMIT00000282

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:         May __, 2025

**HIGHLAND INDEMNITY TRUST**


By    _____
      Name:      James P. Seery, Jr.
      Title:     Indemnity Trust Administrator
      Date:      May __, 2025


Signature Page to Settlement Agreement & General Release

HCMLPHMIT00000283

**EXHIBIT 32**

001165

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Tim Cournoyer" <TCournoyer@HighlandCapital.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields"
<jshields@shieldslegal.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz"
<jpomerantz@pszjlaw.com>
**Subject:** RE: SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE
COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft
05.15.25) KHH Clean for Execution 5.16.DOCX
**Date:** Fri, 16 May 2025 20:15:55 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

Everyone,

I am holding Mark's signatures.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Friday, May 16, 2025 1:24 PM

001166

HCMLPHMIT00000287

**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>; John A. Morris
<jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** FW: SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand
Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution
when opening attachments, following links or responding to this message.

Louis,

Please find attached a revised draft with just two clean-up changes as reflected in the Redline.

We have received verbal approval of the Claimant Trust's Oversight Board to proceed, and we are in the process
of collecting signatures to the written consents of the Class 9 holders and the Oversight Board, and our internal
signatures to the Settlement Agreement.  If you could begin to do the same on your end, we will confirm once we
are ready to exchange signature pages.

Thanks and please let us know if you have any questions or concerns.

Best,

**TIMOTHY J. COURNOYER**
MANAGING DIRECTOR AND ASSISTANT GENERAL COUNSEL



100 Crescent Court  |  Suite 1850  |  Dallas, Texas 75201
D: 972.628.4153  |  M: 305.479.0804  |  F: 972.628.4147
TCournoyer@HighlandCapital.com  |  www.highlandcapital.com

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Friday, May 16, 2025 11:40 AM
**To:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand
Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX

John and Jeff,

Please see a final redline with wire instructions added, a bold of a WHEREAS, and references to
payments being made by Wire Transfer.  I did not add the Wire Transfer to the final distribution part
because of the reference to "assets" versus payment and did not want to go into the body of the
document to deal with that.  Also the attached PDF (redlined against John's clean from yesterday)
does not include the header clean up contained in the word version.  We are prepared to execute this
version.  Mark will be out for a while today so just let us know if we can get his signatures or whether
you have any further comments.  Thank you.

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any
attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto
without prior consent of a member of the legal department at Highland Capital Management.

---

HCMLPHMIT00000288

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000289

**EXHIBIT 33**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "jpseeryjr@gmail.com" <jpseeryjr@gmail.com>, "mpatricktax1040@gmail.com"
<mpatricktax1040@gmail.com>, "Shawn Raver" <sraver@dafholdco.com>,
"jshields@shieldslegal.com" <jshields@shieldslegal.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, "Tim Cournoyer"
<TCournoyer@HighlandCapital.com>, "David Klos" <DKlos@HighlandCapital.com>,
"Matthew Gray" <MGray@HighlandCapital.com>
**Subject:** Re: Timing
**Date:** Sat, 17 May 2025 00:50:45 +0000
**Importance:** Normal

---

We will review the 9019 this weekend

Louis M. Phillips
On May 16, 2025 at 5:14:22 PM CDT, jpseeryjr@gmail.com wrote:

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution
when opening attachments, following links or responding to this message.

---

All:

We have approvals on our side except UBS which is going through its process. I expect them to be
done and approved on Monday.

John plans to circulate the 9019 tomorrow.

If we are set on the 9019 and get our last approval, we would like to release signatures and file the
9019 on Monday afternoon.

Thank you.


Best. Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

HCMLPHMIT00000290

**EXHIBIT 34**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Gregory V. Demo"
<GDemo@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Rule 9019 Motion (revised)
**Date:** Sat, 17 May 2025 13:16:39 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image002.png; image001(1).jpg; image002(1).png

---

Thanks

Louis M. Phillips
On May 17, 2025 at 7:43:19 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Further changes have been made, Louis.

Please review this version.

Chat soon,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** John A. Morris
**Sent:** Saturday, May 17, 2025 8:42 AM
**To:** James Seery <jpseeryjr@gmail.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos (dklos@highlandcapital.com)
<DKlos@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo
<GDemo@pszjlaw.com>
**Subject:** Highland: Rule 9019 Motion (revised)

Sorry.

HCMLPHMIT00000291

I did not realize HCMLP's changes had not been incorporated.

They have been now.

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston





HCMLPHMIT00000292

**EXHIBIT 35**

001174

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** FW: Highland: HMIT Settlement Agreement (final change?)
**Date:** Mon, 19 May 2025 11:36:33 +0000
**Importance:** Normal
**Attachments:** CHANGED_PAGE_ONLY_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image002.jpg; image003.png; image005.png

John and Jeff,

These changes are fine.


**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Sunday, May 18, 2025 8:47 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Amelia L. Hurt

001175

<Amanda.Hart@KellyHart.com>

**Subject:** Highland: HMIT Settlement Agreement (final change?)

---

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Good morning, Louis.

One of our Oversight Board members requested that paragraph 19 be modified to include all "Highland Released Parties."

While the issue is arguably addressed in Section 16(a), we see no harm and attach a proposed revision that is, of course, reciprocal.

Please let us know if this is acceptable.  If so, we'll send a fully revised agreement.

Please also let us know if you have any comments on the draft Rule 9019 motion.  If we can obtain UBS' consent tomorrow, we want to get this filed.

Thank you,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

HCMLPHMIT00000296

18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto, any Highland Released Party, or any HMIT Released Party brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing ~~Party~~Person in that Action shall be entitled to have and recover from the non-prevailing ~~Party~~Person all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing ~~Party~~Person may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY**

001177

HCMLPHMIT00000297

**EXHIBIT 36**

001178

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "Amelia L. Hurt"
    <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Cc:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)
**Date:** Mon, 19 May 2025 14:42:26 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image002.png

---

I can get those to you in a bit.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:41 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

HCMLPHMIT00000342

EXTERNAL SENDER ALERT: This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

We can use Mark's prior signatures.  Can you send them to me know and we'll hold them in escrow pending your release?

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 10:37 AM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Thanks Greg.  Will get back shortly.  Also, I asked John this morning (I improvidently left you off the message) about whether Mark will need to sign a final execution version (I have his signatures ion the version immediately prior to the few changes made Saturday).

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

HCMLPHMIT00000343

Confidentiality Notice – This transmission is attorney-client privileged and/or protected as attorney work product from disclosure under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000344

**EXHIBIT 37**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>,
"Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields"
<jshields@shieldslegal.com>
**Subject:** Settlement Agreement Executed by Mark Patrick
**Date:** Mon, 19 May 2025 16:09:14 +0000
**Importance:** Normal
**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.014(Execution_Version).docx;
CHANGED_PAGE_ONLY_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image001.png

---

Greg,

Attached is the version of the Settlement Agreement executed by Mark Patrick.  You are authorized to
hold in escrow, pending a written release from escrow from me.  You are also authorized to substitute
the changed page attached for purposes of a final execution version.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18
U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the
use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually
receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

001183

EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the  "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with <u>Section 18</u>.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001184

HCMLPHMIT00000347

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

2

001185

HCMLPHMIT00000348

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001186

HCMLPHMIT00000349

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

001187

HCMLPHMIT00000350

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001188

HCMLPHMIT00000351

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"**Operating Expenses**" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001189

HCMLPHMIT00000352

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001190

HCMLPHMIT00000353

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1.    <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001191
HCMLPHMIT00000354

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.    <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

Hunter Mountain Investment Trust
C/o CLO Holdco, LLC
Hancock Whitney
Account # - 071173413
Routing # - 113000968
(469) 604-0955

4.    <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest

001192

HCMLPHMIT00000355

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Distributions on the Allowed Class 10 Interests.</u>

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer with the Pro Rata portion in respect of the HMIT Class 10 Interest sent to the wire instructions contained in Section 3 ("**Wire Transfer**").

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests.</u>

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)    On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is

001193

HCMLPHMIT00000356

subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.    <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER

11

HCMLPHMIT00000357

CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date,

001195

HCMLPHMIT00000358

including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10. <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11. <u>Further Provisions Concerning The General Releases</u>.

(a) **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b) To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c) Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

001196

HCMLPHMIT00000359

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d) As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i) any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii) any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland

14

HCMLPHMIT00000360

Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.   <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)   Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)   Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)   For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.   <u>Representations and Warranties</u>.

(a)   Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)   The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)   Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

001198
HCMLPHMIT00000361

(d)     Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.     <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.     <u>Gatekeeper Standard</u>.

(a)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10[5]3[4] (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge

001199

HCMLPHMIT00000362

and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

(a)    Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)    Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

001200

HCMLPHMIT00000363

18.     <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.     <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.     <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS**

001201

HCMLPHMIT00000364

**EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

19

HCMLPHMIT00000365

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

001203
HCMLPHMIT00000366

29.   <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

21

001204

HCMLPHMIT00000367

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
      Name:     Mark Patrick
      Title:      Administrator
      Date:     May 16, 2025

**BEACON MOUNTAIN LLC**

By _____
      Name:     Mark Patrick
      Title:      President
      Date:     May 16, 2025

**RAND ADVISORS, LLC**

By _____
      Name:     Mark Patrick
      Title:      President
      Date:     May 16, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
      Name:     Mark Patrick
      Title:      President
      Date:     May 16, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001205

HCMLPHMIT00000368

**RAND PE FUND MANAGEMENT, LLC**

By _____
      Name:    Mark Patrick
      Title:     President
      Date:     May 16, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____
      Name:    Mark Patrick
      Title:     President
      Date:     May 16, 2025

**ATLAS IDF GP, LLC**

By _____
      Name:    Mark Patrick
      Title:     President
      Date:     May 16, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By _____
      Name:    James. P. Seery, Jr.
      Title:     Chief Executive Officer
      Date:     May __, 2025

001206

HCMLPHMIT00000369

## HIGHLAND CLAIMANT TRUST

By _____
     Name:    James P. Seery, Jr.
     Title:     Claimant Trustee
     Date:    May __, 2025

## HIGHLAND LITIGATION SUB-TRUST

By _____
     Name:    Marc S. Kirschner
     Title:     Litigation Trustee
     Date:    May __, 2025

## HIGHLAND INDEMNITY TRUST

By _____
     Name:    James P. Seery, Jr.
     Title:     Indemnity Trust Administrator
     Date:    May __, 2025

001207

HCMLPHMIT00000370

**EXHIBIT 38**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>,
"Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields"
<jshields@shieldslegal.com>
**Subject:** Re: Settlement Agreement Executed by Mark Patrick
**Date:** Mon, 19 May 2025 16:14:16 +0000
**Importance:** Normal
**Inline-Images:** image002.jpg; image003.png; image002(1).jpg; image003(1).png

---

That is fine

Louis M. Phillips
On May 19, 2025 at 11:12:52 AM CDT, Gregory V. Demo <GDemo@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Thank you.  Can I roll forward the dates on the signature pages to May 19?

We are planning on filing a version of the settlement agreement with /s/ signatures rather than formal signatures.  We'll still have a version with actual signatures that I'll circulate once everyone is released.

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 12:09 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz
<jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** Settlement Agreement Executed by Mark Patrick

Greg,

Attached is the version of the Settlement Agreement executed by Mark Patrick.  You are authorized to hold in escrow, pending a written release from escrow from me.  You are also authorized to substitute the changed page attached for purposes of a final execution version.

HCMLPHMIT00000371

Louis M. Phillips
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



HCMLPHMIT00000372

**EXHIBIT 39**

| **From:** | "Louis M. Phillips" <Louis.Phillips@kellyhart.com> |
|---|---|
| **To:** | "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com> |
| **Cc:** | "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com> |
| **Subject:** | FW: Highland - 9019 Motion (HMIT) |
| **Date:** | Mon, 19 May 2025 16:29:10 +0000 |
| **Importance:** | Normal |
| **Attachments:** | 4911-7411-2063.v9_HCMLP_-_9019_Motion_(HMIT).docx; Redline_-_HCMLP_-_9019_Motion_(HMIT)_KHH_final_responsive_version_Clean_5.19-4898-9315-1301-v1_and_HCMLP_-_9019_Motion_(HMIT)-4911-7411-2063-v9.pdf |
| **Inline-Images:** | image001.jpg; image003.png |

Greg,

These changes are approved.


**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

001212

HCMLPHMIT00000373

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000374

**EXHIBIT 40**

001214

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "Gregory V. Demo" <GDemo@pszjlaw.com>, "John A. Morris" <jmorris@pszjlaw.com>,
"Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields"
<jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)
**Date:** Mon, 19 May 2025 21:47:28 +0000
**Importance:** Normal
**Inline-Images:** image007.jpg; image008.png; image009.png; image010.png; image001.png

---

Thank you Greg.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 4:44 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

HCMLPHMIT00000423

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a fully executed copy of the settlement agreement.  All signatures are released.

We are filing now.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 1:24 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Thank you Greg.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 12:18 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached are the Highland Entities' signatures, which are to be held in escrow.  Once we get final sign off on the Highland side, all signatures will be released and we'll file everything per your email below.  I'll also send a fully compiled settlement agreement for your records.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 12:45 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

Movants' counsel is authorized to file the agreed version of the 9019 Motion and to affix my electronic signature to it. Mark Patrick's signatures are released upon full execution by the signing parties after obtaining the represented required consents.  Please send me the Highland parties' signatures once received.

HCMLPHMIT00000425

And I guess you will send around a full version of the fully executed version, correct?

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 11:30 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** RE: Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Thank you.  Can you please confirm that we can file and that Mr. Patrick's signatures are released upon final approval on the Highland side?

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn

001218



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, May 19, 2025 12:29 PM
**To:** Gregory V. Demo <GDemo@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields <jshields@shieldslegal.com>
**Subject:** FW: Highland - 9019 Motion (HMIT)

Greg,

These changes are approved.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Monday, May 19, 2025 9:27 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jim Shields

HCMLPHMIT00000427

<jschurig@kellyhart.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland - 9019 Motion (HMIT)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Attached is a revised draft of the 9019 motion with a redline against what you sent this morning.  We accepted all your changes—with a few stylistic modifications—and include a few additional changes.

With John traveling, please keep me copied on future emails.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Cell: 312.662.3573 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000428

**EXHIBIT 41**

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 14:13:07 +0000
**Importance:** Normal
**Inline-Images:** image001.png

---

Louis,

Can you either send a black line or confirm that the only change from the version I sent to you on Wednesday is that the reference to Dugaboy was deleted from item 3 on Exhibit A?

Thanks.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it last evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually

HCMLPHMIT00000562

received this email or you are not a reader of this email, any review, use, dissemination, distribution, copying, or other
communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225)
381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be
used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000563

**EXHIBIT 42**

001224

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <louis.phillips@kellyhart.com>, "Amelia L. Hurt"
      <amelia.hurt@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 16:35:15 +0000
**Importance:** Normal
**Attachments:** EXECUTED_Confidentiality_Agreement_-
      _M_Patrick_and_Related_Entities_(Execution_Version).pdf
**Inline-Images:** image002.png; image001.jpg

---

Louis and Amelia,

Attached is a fully executed copy of the Confidentiality Agreement.

Please let us know when you expect to send a proposal.  We are prepared to meet with you and Mark (and any other
Representatives who sign the NDA) in Dallas or New York promptly thereafter.

I'm available if you want to discuss anything in the interim.  Otherwise, have a good weekend.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Saturday, March 22, 2025 11:34 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@highlandcapital.com>; Tim Cournoyer <TCournoyer@highlandcapital.com>; Jeff Pomerantz
<jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Hayley R. Winograd
<hwinograd@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement

EXECUTED

Best.  Jim

HCMLPHMIT00000564

Jim Seery
631-804-2049
jpseeryjr@gmail.com

_____

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Saturday, March 22, 2025 at 10:20 AM
**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Cc:** David Klos <DKlos@highlandcapital.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>,
Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>, Hayley R.
Winograd <hwinograd@pszjlaw.com>, Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement

Jim,

Louis sent back a signed NDA.

There is at least one change (the deletion of the word "Dugaboy" from item 3 of Exhibit A, which is fine), but he didn't
send a black line so I'm trying to confirm there is nothing else.

If anyone knows how to compare, please do so.

But send me the signed version in the meantime at your convenience.

Also, it might make sense to dust off the "litigation protections" and conform them to the Patrick parties.  Please let me
know if you and Tim want to handle that or if you want us to do so; I'm not sure when we present them to Louis, but
we should be prepared.

I'll be available to talk between 11:30 and 5 pm today.

Chat soon,

John

_____

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it last
evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.


**Louis M. Phillips**
*Partner*

001226

HCMLPHMIT00000565

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

001227

HCMLPHMIT00000566

# CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "**Agreement**") is entered into as of March 18, 2025 (the "**Effective Date**") by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**" or the "**Disclosing Party**"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("**Mr. Patrick**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**Hunter Mountain**"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**"), CDH GP, Ltd., a Cayman Islands exempted company ("**DAF GP**"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**", and together with DAF Holdco, DAF GP and DAF Fund, the "**DAF Entities**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**Rand Entities**", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "**Recipients**"), on the other hand.  Highland and the Recipients are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## Recitals

WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on Exhibit A hereto (collectively, the "**Pending Litigations**");

WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "**Potential Settlement**");

WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

001228

HCMLPHMIT00000567

1. **Representations and Warranties**

   (a) Each Party hereby represents and warrants to the other Parties as follows:

   (i) <u>Existence and Good Standing</u>. Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed. Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates. Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

   (ii) <u>Authority; Enforceability</u>. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement. The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law. This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

   (iii) <u>No Violations</u>. The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

   (1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

   (2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

   (iv) <u>Legal Proceedings</u>. There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

   (b) Each Recipient hereby represents and warrants to Highland as follows:

   (i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the "**Dondero Related Parties**") directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

2

HCMLPHMIT00000568

(ii) Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii) Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

**2.      Confidential and Proprietary Nature of the Information**

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

**3.      Confidential Information**

As used in this Agreement, the term "**Confidential Information**" means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the "**Highland Related Parties**")), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

3

001230

HCMLPHMIT00000569

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

**4.      Restricted Use of Confidential Information**

Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement. It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "**Representatives**") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

001231

HCMLPHMIT00000570

## 5.     Legally Compelled Disclosure

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

## 6.     Return or Destruction of Confidential Information

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

## 7.     No Obligation to Negotiate a Potential Settlement

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

## 8.     No Representations or Warranties

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

5

001232

HCMLPHMIT00000571

9.    **Miscellaneous**

(a)    <u>Modification</u>.  This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)    <u>Waiver</u>.  Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)    <u>Certain Definitions</u>.

(i) The term "**Governmental Entity**" means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii) The term "**Law**" means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii) The term "**Organizational Documents**" means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv) The term "**Person**" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)    <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)    <u>Breach</u>.  Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

6

001233

HCMLPHMIT00000572

shall be in addition to all other remedies available at law or equity. The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.

(f)     Liability and Indemnity.  Recipients shall, jointly and severally, be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient or its Representatives violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.

(g)     Notices.   All notices, requests, demands, claims, and other communications hereunder shall be in writing.   Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:          Highland Capital Management, L.P.
                         100 Crescent Court, Suite 1850
                         Dallas, Texas 75201
                         Attention: James P. Seery, Jr.
                         Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

                         With copies to:

                         Pachulski Stang Ziehl & Jones LLP
                         780 3rd Avenue #34
                         New York, New York 10017
                         Attention: John A. Morris
                         Email: jmorris@pszjlaw.com

If to Recipients:        c/o Mark Patrick
                         6716 Glenhurst Dr.
                         Dallas, Texas 75254
                         Email: mpatrick@dafholdco.com

                         With copies to:

                         Kelly Hart & Pitre
                         301 Main Street Suite 1600
                         Baton Rouge, Louisiana 70801
                         Attention: Louis M. Phillips
                         Email: Louis.Phillips@kellyhart.com

001234

HCMLPHMIT00000573

(h)     <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)     <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)     <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)     <u>Construction</u>.  This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

[SIGNATURES ON FOLLOWING PAGE]

8

001235
HCMLPHMIT00000574

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**RECIPIENTS:**

_____
MARK PATRICK

HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator

CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director

CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director

001236

HCMLPHMIT00000575

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President

Type text here

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001237

HCMLPHMIT00000576

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____
Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____
Name: Mark Patrick
Title: President

001238

HCMLPHMIT00000577

## EXHIBIT A

## PENDING LITIGATION

1.     DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.     HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.     HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.     HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.     DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

**EXHIBIT B**

**JOINDER TO CONFIDENTIALITY AGREEMENT**

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of _____, _____, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and _____ (the "**Joining Party**").  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.    Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any

001240
HCMLPHMIT00000579

Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: _____

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

001241

HCMLPHMIT00000580

**EXHIBIT 43**

|  | |
|---|---|
| **From:** | "John A. Morris" <jmorris@pszjlaw.com> |
| **To:** | "Louis Phillips" <Louis.Phillips@kellyhart.com> |
| **Cc:** | "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com" <Amelia.Hurt@kellyhart.com> |
| **Subject:** | Highland/DAF/HMIT: Follow up |
| **Date:** | Fri, 4 Apr 2025 20:54:20 +0000 |
| **Importance:** | Normal |
| **Attachments:** | 4923-0508-6766.v3_Litigation_Protections_M._Patrick.docx |
| **Inline-Images:** | image001.jpg |

---

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>.  Attached are the "Litigation Protections" I mentioned.  They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>.  It sounds like yesterday's Zoom meeting was helpful.  Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>.  We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>.  For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>.  We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>.  Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom).  Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

HCMLPHMIT00000621



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000622

## PREAMBLE

The provisions below are collectively referred to as the "Litigation Protections." The Parties agree that the intent of the Litigation Protections is to enact a permanent cessation of all litigation concerning or related to the Highland Entities through and including the Effective Date.

## GENERAL AND UNCONDITIONAL RELEASE

Upon the Effective Date, and to the maximum extent permitted by law, each of the DAF/HMIT Entities[1] on behalf of himself, herself, or itself and each of its respective current or former advisors, trustees, directors, officers, managers, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, affiliates (including affiliated and/or controlled funds and other investment vehicles), successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the DAF/HMIT Entities, the "DAF/HMIT Releasors") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the DAF/HMIT Releasors, or any person or entity claiming through, under, or on behalf of any of the DAF/HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Effective Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management of the Highland Entities, or the Highland Entities' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "DAF/HMIT Entity Released Claims").

Upon the Effective Date, and to the maximum extent permitted by law, each of the Highland Entities on behalf of itself and each of its respective current or former advisors, trustees, directors, officers, managers, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, affiliates (including affiliated and/or controlled funds and other investment vehicles), successors, predecessors, designees, and assigns (whether by operation of law or otherwise) in each case from and including August 11, 2021 (collectively with the Highland Entities, the "Highland Releasors") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each DAF/HMIT Released Party from, and waives and relinquishes, any and all Claims, which the Highland Releasors, or any person or entity claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the DAF/HMIT

---

[1] The "DAF/HMIT Entities" means, individually and collectively, Mr. Mark Patrick, Mr. Shawn Raver, Mr. Paul Murphy, Hunter Mountain Investment Trust, a Delaware statutory trust, Beacon Mountain LLC, a Delaware limited liability compay, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, Liberty CLO Holdco, Ltd, [a Cayman Islands, exempted company], and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, and Atlas IDF GP, LLC, a Delaware limited liability company.

001245

HCMLPHMIT00000623

Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Effective Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management of the Highland Entities, or the Highland Entities' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "Highland Entity Released Claims" and together with the DAF/HMIT Entity Released Claims, the "Released Claims"). *Notwithstanding the forgoing*, "Highland Releasors" does not include James Dondero, Scott Ellington, Isaac Leventon, or any entity directly or indirectly owned (in whole or in part) and/or controlled by Mr. Dondero or Mr. Ellington or Mr. Leventon.

**FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASE IS INTENDED TO BE GENERAL AND INCLUDES, WITHOUT LIMITATION, A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE EFFECTIVE DATE.**

To the maximum extent permitted by law, each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, waive the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE DAF/HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER DAF/HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, hereby

001246

HCMLPHMIT00000624

agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the DAF/HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the DAF/HMIT Entities and the Highland Entities in executing this Agreement fully, finally, and forever to settle and release all such matters, and all claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in Section [_] hereof, should:

(a) any DAF/HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any DAF/HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any DAF/HMIT Entity Released Claim (such claim or cause of action, a "Patrick Alleged Claim"), such DAF/HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such Patrick Alleged Claim to the Highland Claimant Trust and the Highland Claimant Trust will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Patrick Alleged Claim.

(b) any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any DAF/HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "Highland Alleged Claim"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to Mr. Mark Patrick and Mr. Mark Patrick will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

**THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF EITHER PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE DAF/HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

001247
HCMLPHMIT00000625

## COVENANT NOT TO SUE; LIMITATION ON STANDING

Subject to the occurrence of the Effective Date:

(a) each of the DAF/HMIT Releasors covenants and agrees that it will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any DAF/HMIT Entity Released Claim and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so.

(b) each of the Highland Releasors covenants and agrees that it will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the DAF/HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so.

(c) For the avoidance of doubt, (i) except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), no DAF/HMIT Entity shall file any pleading, motion, adversary proceeding, or other paper in the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court expect with respect to any order granting or denying the motion to approve this Settlement), including but not limited to, in connection with HMIT's status as a holder of a Class 10 interest; and (ii) this Agreement shall not operate to give any Patrick Party standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval).

## NO PRIOR ASSIGNMENT OF CLAIMS

Each of the DAF/HMIT Entities hereby represents and warrants that every DAF/HMIT Entity Released Claim has not heretofore been assigned or encumbered, and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any DAF/HMIT Releasor.

Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered, and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

## ACKNOWLEDGEMENT OF IRREVOCABLY BINDING AND ENFORCEABLE NATURE OF ALL PLAN PROTECTIONS; DISMISSAL WITH PREJUDICE BY DAF/HMIT ENTITIES OF ALL PENDING LITIGATION

The DAF/HMIT Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the DAF/HMIT Releasors. The DAF/HMIT Entities further agree, on their own behalf and on behalf of the other DAF/HMIT Releasors, that the DAF/HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other party to do so or act in concert with or assist (financially or otherwise) any other party in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Trust

001248
HCMLPHMIT00000626

Agreement, the LPA, or the Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

Within two Business Days following the Effective Date, the DAF/HMIT Entities will dismiss, or cause to be dismissed, with prejudice any action, suit, or proceeding, in law, in equity or otherwise, or withdraw, or cause to be withdrawn, with prejudice any claim or cause of action against, affecting, or related to any Released Party or any DAF/HMIT Entity Released Claim, including (i) *Charitable DAF Fund v. Highland Capital Management, L.P.*, 24-10880 (Fifth Circuit), (ii) *Charitable DAF Fund, L.P., et al v. Highland Cap. Mgmt., L.P.*, Case No. 3:21-cv-01585-S (N.D. Tex.), (iii) *Hunter Mountain Investment Trust v. Highland Capital Management, L.P.*, 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court; (iv) *Dugaboy Investment Trust v. Highland Capital Management, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (dismissal only of plaintiff Hunter Mountain Investment Trust); and (v) *Hunter Mountain Investment Trust v. Highland Capital Management, L.P.*, 3:24-cv-01786-L (N.D. Tex.).

## NO INDEPENDENT DUTY OWED

The Highland Entities, individually and collectively, shall owe no duty to the DAF/HMIT Entities, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

## GATEKEEPER STANDARD

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the DAF/HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "Gatekeeper Court"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's Original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

The DAF/HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other DAF/HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that

001249
HCMLPHMIT00000627

the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

## INDEMNIFICATION

Without in any manner limiting the available remedies for any breach of this Agreement, the DAF/HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all liability, actions, claims, demands, liens, losses, damages, judgments, and expenses, including attorneys' fees and costs, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties set forth in [NON-ASSIGNMENT PROVISION] or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any DAF/HMIT Releasor or that are induced, encouraged, assisted  or directed by any DAF/HMIT Releasor or brought or prosecuted in concert with any DAF/HMIT Releasor against any Highland Released Party with respect to or related to any DAF/HMIT Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any DAF/HMIT Entity that breaches Section [COVENANT NOT TO SUE] of this Agreement shall be liable to the Highland Released Party against whom the applicable suit, action, or other proceeding has been brought or prosecuted in violation of Section [_] for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such suit, action, or proceeding.   Each DAF/HMIT Entity acknowledges and agrees that the DAF/HMIT Entities are and shall be severally but not jointly liable for any costs, liabilities, or damages arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement as set forth in this Section [_].

Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the DAF/HMIT Released Parties harmless from and against any and all liability, actions, claims, demands, liens, losses, damages, judgments, and expenses, including attorneys' fees and costs, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties set forth in [NON-ASSIGNMENT PROVISION] or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any DAF/HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section [COVENANT NOT TO SUE] of this Agreement shall be liable to the DAF/HMIT Released Party against whom the applicable suit, action, or other proceeding has been brought or prosecuted in violation of Section [_] for the reasonable attorneys' fees and costs incurred by such DAF/HMIT Released Party in defending against or otherwise responding to such suit, action, or proceeding.   Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any costs, liabilities, or damages arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement as set forth in this Section [_].

001250
HCMLPHMIT00000628

## DEFINITIONS

"Bankruptcy Case" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"Bankruptcy Court" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"Business Day" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"Claims" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"Committee" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"Confirmation Order" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"DAF/HMIT Released Parties" means [PATRICK TO PROVIDE].

"Effective Date" means the date on which the Bankruptcy Court enters an order approving the material terms of this Agreement.

"Gatekeeper" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"Highland" means Highland Capital Management, L.P.

"Highland Entities" means collectively Highland, the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust.

"Highland Released Parties" means collectively (i) the Highland Entities, (ii) any entity directly or indirectly majority-owned and/or controlled by any Highland Entity, (iii) any entity directly or indirectly managed by any Highland Entity whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "Highland Parties"), (iv) each of the Highland Parties' trustees and administrators (including the trustees of the Highland Claimant Trust, Highland Litigation Sub-Trust, and Highland Indemnity Trust), current and former officers, executives, agents, directors, advisors, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, affiliates, successors, designees, and assigns, (v) the current and

4923-0508-6766.3 36027.003

7

001251
HCMLPHMIT00000629

former members of the Oversight Board of the Highland Claimant Trust and their affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party or Covered Party, including, but not limited to, as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Highland Claimant Trust, and the Indemnity Trust Administrator of the Highland Indemnity Trust, (viii) the Committee and each of its members, (ix) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case and (b) retained by any Highland Party on or after August 11, 2021, (x) any person or entity indemnified by any Highland Entity (the entities described in clauses (i)-(x), collectively, the "<u>Covered Parties</u>"), and (xi) each Covered Party's current and former officers, executives, agents, directors, advisors, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Covered Parties" include Highland CLO Funding Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Argentina Regional Opportunity Fund, Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., South fork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding A, Longhorn Credit Funding B, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Prometheus Master Fund, L.P., Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing*, "Highland Released Parties" does not include James Dondero, Scott Ellington, Isaac Leventon, or any entity directly or indirectly owned (in whole or in part) and/or controlled by Mr. Dondero or Mr. Ellington or Mr. Leventon.

"<u>Indemnity Trust Administrator</u>" has the meaning given to it in the Indemnity Trust Agreement.

"<u>Indemnity Trust Agreement</u>" means that certain *Indemnity Trust Agreement*, effective as of August 16, 2021.

"<u>Independent Board</u>" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"<u>LPA</u>" means that certain *Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.*

001252


HCMLPHMIT00000630

"Original Plan" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"Oversight Board" means the oversight board of the Highland Claimant Trust.

"Parties" means [insert signatories].

"Plan" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"Plan Documents" has the meaning given to it in the Plan.

"Plan Protections" means, collectively, the provisions of the Plan contained in Article IX thereof.

"Sub-Trust Agreement" means that certain *Highland Litigation Sub-Trust Agreement*.

"Trust Agreement" means that certain *Highland Claimant Trust Agreement.*

001253

HCMLPHMIT00000631

# EXHIBIT 44

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <louis.phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <amelia.hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 15:09:00 +0000
**Importance:** Normal
**Inline-Images:** image001.png; image002.jpg

---

Louis,

Following up.

1. <u>Meeting</u>.  We propose that the business folks (including Mark and Jim) meet in person at Highland's offices at 10:30 am Central Time tomorrow (casual dress, no suits), with lawyers participating by Zoom; if you want to attend in person, Jeff may attend in person as well so let me know (I am unable to attend in person because of other commitments).

2. <u>DAF/HMIT information request</u>.  During tomorrow's meeting, Highland will provide the information requested below (and can quickly walk through the same information that was presented the other day for your benefit if that would be helpful).

3. <u>Highland information request</u>.  As requested, please provide a copy of the Remittance Agreement referred to in the Intercreditor Agreement and share with us any other agreements or information concerning any current or former connection between DAF/CLOH/HMIT and Dondero/Okada/Dugaboy, including the funding of the HMIT litigation (that Mark testified to in June 2023) and the disposition of the HMIT Notes made in favor of Dugaboy and Okada. We just need to know how any agreement may impact the Dondero side, if at all.

4. <u>NDA signatures</u>.  Please let us know who will be participating on your side and send any Joinders not previously sent (I'm not sure we received one for you and Amelia).

We look forward to your prompt response.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

<span style="text-align:right">001255</span>

HCMLPHMIT00000642

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 7, 2025 8:12 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas.  How many from your side would be participating in person?  I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000643

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>. Attached are the "Litigation Protections" I mentioned. They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>. It sounds like yesterday's Zoom meeting was helpful. Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>. We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>. For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>. We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>. Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom). Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000644

**EXHIBIT 45**

|  |  |
|---|---|
| **From:** | "John A. Morris" <jmorris@pszjlaw.com> |
| **To:** | "Louis Phillips" <Louis.Phillips@kellyhart.com> |
| **Cc:** | "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com" <Amelia.Hurt@kellyhart.com> |
| **Subject:** | Highland: Privileged and confidential settlement communication and materials |
| **Date:** | Tue, 8 Apr 2025 20:22:22 +0000 |
| **Importance:** | Normal |
| **Attachments:** | Privileged_and_confidential_-_DRAFT_4.8.25_discussion_materials.pdf; PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_4.8.25.pdf; HFP_-_Entity_Chart_-_2011.pdf |
| **Inline-Images:** | image001.jpg |

---

E-MAIL AND ATTACHMENTS DELIVERED PURSUANT TO FED. R. EVID. 408
<u>AND APPLICABLE CONFIDENTIALITY AGREEMENT</u>

Louis,

Thank you and your team for your time today.

As a follow up, attached are the following:

1. Discussion materials from today (draft numbers)
2. Discussion materials from today (draft structure)
3. HFP entity chart from 2011

On your end, please send us the following at your earliest convenience:

1. Copy of settlement agreement circa 2022 between HMIT and Dugaboy/Okada entities
2. Copy of operative document relating to the [redemption] of the Dolomiti/Hakusan entities limited partnership interest in Rand PE Fund I
3. Copy of operative document providing for the [extinguishment] of participating shares of the supporting organizations of Charitable DAF Holdco, Ltd.

Let's confer as soon as you've had a chance to consider these matters with your team.

Please let us know if you have any questions in the interim.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
<u>vCard</u> | <u>Bio</u> | <u>LinkedIn</u>

HCMLPHMIT00000656



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000657

Case 19-34054-sgj11   Doc 4255-45   Filed 06/20/25   Entered 06/20/25 21:39:29   Desc
Exhibit 45   Page 4 of 7

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Current Snapshot - remaining assets [1]**
*in USD millions, except percentages*

| Asset description | Ref | Claimant Trust [2] | Indemnity Trust [3] | Combined |
|---|---|---|---|---|
| Cash/treasuries | [4] | $    20.3 | $    67.9 | $    88.1 |
| Disputed Claims Reserve | [5] | 2.7 | - | 2.7 |
| Dugaboy Note receivable | [6] | - | 17.6 | 17.6 |
| HCM Korea (note and equity) | [7] | 3.0 | - | 3.0 |
| HCLOF shares | [8] | 2.5 | - | 2.5 |
| HCRE bad faith sanction | [9] | 0.9 | - | 0.9 |
| Kirschner Litigation (main adversary) | [10] | *See footnote* | - | - |
| HMIT note | [11] | *See footnote* | - | - |
| **Total assets** | | **$    29.4** | **$    85.5** | **$    114.8** |

[1] As of April 3, 2025.  This disclosure is NOT a balance sheet prepared in accordance with US GAAP.  In some instances, values are estimated and actual amounts retained may ultimately differ materially.  No liabilities are included herein, including existing liabilities, contingent liabilities, indemnification obligations, or considerations for future expenses, including costs of liquidation that have not yet been, but will be incurred.

[2] Claimant Trust, including consolidation of the various "Plan" entities other than the Indemnity Trust (HCMLP GP, LLC, Highland Capital Management, LP, Litigation Sub-Trust), each on a standalone basis, with intercompany balances eliminated.

[3] Stand-alone assets retained by the Indemnity Trust.  Other than less than <$1M retained in cash, remainder of cash is invested in US treasuries with maturities less than 1 year.  Excludes <$1M of cash/treasuries on account of the Okada settlement.  Pursuant to the Okada settlement, these funds are segregated and are to be repaid to Okada as first-out funds to the extent that any excess exists in the Indemnity Trust.  Accordingly, in a settlement scenario, these funds would not be available to Class 10 interest holders.

[4] Cash and treasuries includes full face amount of treasuries maturing within 6 months and has also been adjusted up to assume the near-term receipt of approximately $5 million from Highland CLO Funding, Ltd.

[5] Segregated funds invested in US treasuries with near-term maturities.  Funds are reserved for the Dugaboy tax proof of claim, which remains pending.  If Highland successfully objects to the proof of claim, funds would be released from the Disputed Claims Reserve.  If the claim is ultimately allowed in full or in part, funds would be paid to Dugaboy on account of the allowed claim and any excess remaining would be released from the Disputed Claims Reserve.

[6] Note receivable from The Dugaboy Investment Trust ("Dugaboy").  ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046.  Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024.  Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines.  The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[7] 100% equity interest in Highland Capital Management Korea Limited ("HCM Korea"), plus $2.5 million note from HCM Korea.  Ultimate value dependent on the monetization of the Caris Life Sciences investment through an expected 2025 IPO, which is expected to be in the range of $2 million to $5 million, but could also exceed or fall short of this range.

[8] Shares of Highland CLO Funding, Ltd. ("HCLOF"), a Guernsey company.  Value has been adjusted down to assume a near-term cash dividend of approximately $5 million.  Remaining value is primarily tied up in the "Acis 6" asset, for which a NexPoint entity has recently initiated an appeal in the 2nd Circuit Court of Appeals.  Ultimate value dependent on the Acis 6 litigation and costs of winding down HCLOF and expected to be in the range of $2 million to $4 million, but could also exceed or fall short of this range.

[9] Bad faith sanction against HCRE of $825,940.55, currently on appeal in the District Court.  Fully briefed since November 2024.  Award was posted in the court registry and is accruing post-judgment interest at a rate of $118.80/day.  Approximately $870k is outstanding, including post-judgment interest currently.  No assurance that the appeal will resolve favorably and as a result, there is no assurance that any amounts will ultimately be collected.

[10] Litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust.  Adversary proceeding is currently stayed.  The value of the claims, their collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

[11] Within the litigation brought by Marc Kirschner as Litigation Trustee to the Litigation Sub-Trust were claims against HMIT relating to the "HMIT note" receivable, which had originally been a portion of the consideration HMIT paid for acquiring limited partnership interests in Highland in 2015.  These claims are also stayed as part of the overall stay in the case.  The value of the note, its collectibility, and the costs of their continued pursuit is ultimately unknown.  For purposes of aggregating the current value of assets for this illustrative presentation, no value has been ascribed.

001261
HCMLPHMIT00000658

Case 19-34054-sgj11    Doc 4255-45    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 45    Page 5 of 7

Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties

**Uses: how much could be left after satisfying Class 9 claims?**
*in USD millions*

| | | | |
|---|---|---|---|
| Total combined assets | $ | 114.8 | *see "current snapshot"* |
| Less: | | | |
| Oustanding Class 9, including interest | | (21.0) | |
| Existing Incentive Compensation triggered through full payment of Class 9 | | (2.5) | |
| Long-dated assets - Dugaboy Note receivable | | (17.6) | [1] |
| Wind down expenses and accrued liabilities | | (20.0) | [2] |
| Pending Class 8 claims (Daugherty tax) | | *See footnote* | [3] |
| Indemnification obligations | | *See footnote* | [4] |
| **Net expected cash prior to any indemnification considerations and necessary reserves** | **$** | **53.7** | [5] |
| **Plus: Non-cash assets - Dugaboy Note receivable** | **$** | **17.6** | |

[1] Note receivable from The Dugaboy Investment Trust ("Dugaboy"). ~$17.4M principal and ~$0.2M interest currently outstanding, accruing at approximately $1,553/day.  Fair value is less than face value as the note is long-dated, accruing interest at 3.26% and makes annual principal and interest payments through 2046, with the last of such payments due December 31, 2046. Dugaboy is current on its payments, including with the most recent payment completed for year-end 2024. Principal payments due are $790,215 yearly, plus accrued interest, which declines each year as principal declines. The next interest payment due December 31, 2025 is $566,677.  No assurance that Dugaboy will continue making the annual principal and interest payments when due, although the holder of the note could accelerate and pursue collection in that event.

[2] Amount is ultimately TBD and will ultimately depend on litigation, timing of monetization of remaining assets, and operational needs.  For example, if additional litigation is brought forth, outside counsel will incur additional time and expense and certain employees may need to be retained for a longer period of time.  If actual expenses exceed $20 million, less cash would be potentially available after Class 9; if actual expenses fall short of $20 million, more cash would be potentially available after Class 9.

[3] For illustrative purposes of this presentation, $0 is assumed.  However, if the claim is ultimately allowed in full or in part, funds would be paid to Daugherty on account of the allowed claim, which would reduce cash potentially available after Class 9.  No assurances can be provided that the claim will be completely disallowed.

[4] For illustrative purposes of this presentation, $0 is assumed.  Thus, all funds utilized for purposes of satisfying indemnification obligations will reduce the funds available dollar for dollar.  Under current conditions, it is believed that at least $100 million may be needed for indemnification obligations and as a result, there is not sufficient liquidity at this time to even make any further payments to Class 9 interest holders.  Assuming a final/non-appealable order, providing for among other things, a complete cessation of litigation and comprehensive releases from the HMIT/DAF parties, the need for indemnification reserves could be greatly reduced.

[5] Assumes HCM Korea, HCLOF, and HCRE bad faith sanctions are monetized for the amounts described on the "current snapshot" ($6.4 million in aggregate).  Monetization in excess of these amounts would result in more cash remaining; monetization below those amounts would result in less cash remaining.

DRAFT - SUBJECT TO REVISION/AMENDMENT



*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Information request made April 7, 2025**

**(i) Accrued liabilities**

| | Entity | Amount | |
|---|---|---|---|
| End of case/severance bonuses - remaining employees | HCMLP | $ 1,230,000 | |
| Accounts payable book balance (as of March 31, 2025) | HCMLP | 576,207 | |
| Estimate of other incurred, but not invoiced for work performed | HCMLP | 500,000 | *general estimate* |
| **Sub-total (i)** | | **$ 2,306,207** | A |

| <u>Other liabilities not included in section totals above</u> | Entity | Amount | |
|---|---|---|---|
| Distribution payable | HCT | $ 2,656,732 | *previously authorized distributions related to pending Daugherty claim (has offsetting cash reserve; see current snapshot); to be released following resolution of the pending claim* |
| Okada settlement payable | Indemnity Trust | 870,000 | *first-out dollars in treasuries (amount is face of such treasuries) - for purposes of settlement discussions, the cash reserved related to the Okada settlement and the potential first-out dollars are excluded as irrelevant* |

**(ii) Anticipated success or severance (or completion) payments or bonuses**

| | Entity | Amount | |
|---|---|---|---|
| Incentive Compensation Plan | HCMLP/HCT | $ 2,480,088 | *assuming full payment of the Class 9's; calc'd as 14.71516% on remaining distributions to Class 9 with a time discount applied to the gross dollars distributed* |
| Retention Date payments - employees | HCMLP | 925,000 | *Retention Date is 9/30/2025* |
| Nate Burns (employee) incentive comp | HCMLP | -- | *Note receives a portion of the performance fees earned related to HCM Korea; assuming zero for presentation purposes as amounts would be a percentage of incremental value received from HCM Korea* |
| **Sub-total (ii)** | | **$ 3,405,088** | B |

**(iii) Continuing admin budget for the Claimant Trust, Indemnification sub trust and/or litigation sub trust**

| | | | |
|---|---|---|---|
| See subsequent page; Sub-total (iii) | | $ 16,768,874 | *C - additional detail contained on separate page* |

| **Sum of A, B, and C** | | **$ 22,480,169** | |
|---|---|---|---|

**(iv) Identity and amount and basis for any holdback(s)**

| Identity: | | Amount | Basis for amount |
|---|---|---|---|
| Sum of A, B, and C from above | | $ 22,480,169 | *from above; See notes and assumptions related to items A, B, and C* |
| Incremental operational reserve | | 5,000,000 | *Excess cash to retain to cover potential cost overages - largest risk is incremental litigation and resulting time and expense of PSZJ plus longer retention of employees/CEO to assist with litigation, if applicable* |
| Indemnification reserves | | 35,000,000 | *Assumes comprehensive releases and settlement amongst the HMIT/DAF Parties; at least $100 million if no settlement* |
| Sum of items above | | 62,480,169 | *to below* |

| Calc of estimated cash available for a prelim distribution to Class 10, assuming settlement | | $ millions | |
|---|---|---|---|
| Current cash/treasuries (see previous page) | | 88.1 | *Cash and treasuries (including all Plan entities)* |
| Assets expected to monetize in next 12 months | | 6.4 | *HCM Korea, remainder of HCLOF, bad faith sanction (but excluding near-term Dugaboy Note P&I amortization due December 2025)* |
| **Sub-total** | | **94.5** | |
| | | | |
| less: outstanding Class 9, including interest | | (21.0) | *current outstanding Class 9 with interest* |
| less: holdbacks (from above) | | (62.5) | *from above* |
| | | | |
| Remaining cash available for initial distribution to Class 10 | | $ 11.1 | *[1]* |
| **Round to nearest million** | | **$ 11.0** | |

*[1] Possibility of incremental amount of up to $2.7 million in the event of a successful opposition to the pending Daugherty tax POC, along with incremental interim cash received from Dugaboy Note P&I amortization.  Amount also does not include non-cash assets (litigation, outstanding Dugaboy Note, etc).*

001263
HCMLPHMIT00000660



Case 19-34054-sgj11    Doc 4255-45    Filed 06/20/25    Entered 06/20/25 21:39:29    Desc
Exhibit 45    Page 7 of 7

*Privileged and confidential - provided pursuant to Rule 408 and the binding Confidentiality Agreement executed amongst the Parties*
**Projected Budget Build-Up**

Remaining expected budget assuming a comprehensive settlement with HMIT/DAF Parties (excluding accrued liabilities and contingencies separately discussed)

| Description | | Total for budget | Notes and assumptions |
|---|---|---|---|
| Pachulski Stang and other litigation or BK-related | $ | 5,000,000 | Primary issues: expected new litigation to defend (actual causes of action unknown) from Dondero parties, incorporation of HMIT/DAF settlement and approval/appeals of same, appeals of "valuation complaint" and "HCRE bad faith", extension of the Trust for 1 yr. and dissolution issues. Ultimate amount required could vary materially higher or lower. |
| HCMLP employees salary and benefits (other than CEO) | | 4,084,354 | Assumes declining headcount from 6 to 3, ending August 2026 (monthly trending from approx. $300k/month currently to approx. $200k/month at end) |
| Claimant Trustee/CEO salary | | 2,700,000 | Assumes 18 months at $150k/month |
| Litigation Trustee | | 360,000 | Assumes 18 months at $20k/month |
| Independent Member | | 225,000 | Assumes 18 months at $12.5k/month |
| Litigation trust (other than Trustee) | | 250,000 | Assuming minimal time and expense other than in conjunction with transfer of main case |
| Incentive Compensation on distributions to Cl. 10 | | TBD | Provide for alignment in regards to quantum and timing of distributions and management of costs |
| *Overhead related* | | | |
| Facilities/offsite storage and related | | 1,079,121 | Office space through end of 2026 and offsite document retention through 2028 |
| External tax | | 1,000,000 | Declining each year with final year for tax year 2027 |
| IT costs | | 701,760 | Cloud storage, network infrastructure through 2027, email storage through 2030 |
| Accounting systems and information | | 331,045 | General retention and maintenance through 2028 (primarily Oracle maintenance) |
| Other professionals | | 200,000 | Misc reserve for other professionals |
| Other misc overhead | | 200,000 | Misc reserve for other overhead, T&E, entity wind-up costs, etc |
| Indemnification expenses | | 200,000 | Assuming misc. expenses from misc. matters |
| US Trustee | | 437,594 | Assuming 0.8% of budget + accruals + distributions (assuming $30M total) |
| **Grand total** | $ | **16,768,874** | *to previous page* |



001264
HCMLPHMIT00000661

**EXHIBIT 46**

001265

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "amelia.hurt@kellyhart.com" <Amelia.Hurt@kellyhart.com>
**Subject:** Highland: Confidential Settlement Communication
**Date:** Wed, 16 Apr 2025 20:58:17 +0000
**Importance:** Normal
**Attachments:** PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_CLEAN _4.16.25.pdf; PRIVILEGED_AND_CONFIDENTIAL_DRAFT_SETTLEMENT_STRUCTURE_REDLI NE_4.16.25.pdf; Privileged_and_Confidential_-_Indemnity_Trust_2025-4-16_Draft.pdf; Highland_Indemnity_Trust_- _Second_Amended_and_Restated_Indemnity_Trust_Agreement.pdf
**Inline-Images:** image001.jpg

---

**COMMUNICATION TENDERED PURSUANT TO FED. R. EVID. 408
AND THE PARTIES' CONFIDENTIALITY AGREEMENT**

Louis,

We're following up on recent discussions, including the call last Friday between Mark Patrick and Jim Seery.

We are providing three groups of documents: (a) a revised settlement structure (and black line) that takes into account the discussion between Mark and Jim; (b) an illustration of sources/uses and plausible timeline for payments; and (c) the Second Amended and Restated Indemnity Trust Agreement (which we expect to be executed in the coming days).

Specifically, please find attached the following:

1. Revised draft of settlement structure (Clean)
2. Revised draft of settlement structure (Redlined against version from last week)
3. Illustrative sources and uses of timing/amounts of potential future Indemnity Trust payouts
4. Second Amended and Restated Indemnity Trust Agreement
   a. The provisions we believe the HMIT team should focus on to understand the uses and limitations of the Indemnity Trust are:
      i. Intro and First Whereas Clause with certain definitions
      ii. Section 1.1

      1. Beneficiaries
      2. Indemnified Parties
      3. Indemnity Obligations
      4. Indemnity Trust Account
      5. Indemnity Trust Assets
      6. Trust Indemnified Parties
      iii. Section 2.1(c)
      iv. Section 2.4
      v. Section 3.5
      vi. Article VIII
      vii. Section 9.12 (Okada)

HCMLPHMIT00000672

Jim and his team would like to walk you and your team through these documents. We have a board call tomorrow afternoon so if we could speak tomorrow until 3:00 pm Eastern, that would be ideal (we believe 90 minutes is sufficient).  If that is not feasible, we can also be available until 1:00 pm Eastern on Friday.

Finally, if Mr. Shields is going to review any of the attached documents or participate in our discussions, please be sure to send his Joinder in advance.

Please let us know what works for your side.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000673

## SECOND AMENDED AND RESTATED INDEMNITY TRUST AGREEMENT

This Second Amended and Restated Indemnity Trust Agreement (this "Agreement"), dated as of [●], 2025, by and among the Highland Claimant Trust, a Delaware statutory trust, as grantor (the "Grantor"), James P. Seery, Jr., as indemnity trust administrator (the "Indemnity Trust Administrator," which term shall include any successor Indemnity Trust Administrator), Wilmington Trust, National Association, a national banking association ("WTNA"), as indemnity trustee, for the benefit of the Beneficiaries (in such capacity hereunder, and not in its individual capacity, the "Indemnity Trustee"), and WTNA, as the Delaware trustee (in such capacity hereunder, and not in its individual capacity, the "Delaware Trustee") (collectively, the "Parties"), amends and restates the First Amended and Restated Indemnity Trust Agreement entered into by and among the Parties, effective as of July 1, 2024 (the "Prior Agreement"). Capitalized terms used herein but not defined shall have the respective meanings assigned thereto in Section 1.1.

## RECITALS

WHEREAS, the Parties entered into the Indemnity Trust Agreement, effective as of August 16, 2021 (the "Original Indemnity Trust Agreement") to establish a Delaware statutory trust, the Indemnity Trust, for the benefit of the Beneficiaries, (a) to secure the performance by each of the Claimant Trust, the Litigation Sub-Trust and the Reorganized Debtor of its indemnity obligations as specified in (i) Section 8.2 of that certain Claimant Trust Agreement, (ii) Section 8.2 of the Litigation Sub-Trust Agreement and (iii) Section 10 of the Reorganized Limited Partnership Agreement, establishing the Reorganized Debtor pursuant to the Plan (the foregoing (i)-(iii), the "Indemnity Obligations"), and (b) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to be the primary source of indemnification for the respective Indemnity Obligations, in each case regardless of whether such Indemnity Obligations survive the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable;

WHEREAS, the Indemnity Trust Administrator agreed to act as administrator hereunder to direct the Indemnity Trustee with respect to the transfer, distribution and release of Indemnity Trust Assets;

WHEREAS, the Indemnity Trustee agreed to act as trustee hereunder to hold and apply the Indemnity Trust Assets on behalf of the Indemnity Trust, as specified herein, for the sole use and exclusive benefit of the Beneficiaries;

WHEREAS, the Indemnity Trust is the payee under the Indemnification Funding Note;

WHEREAS, the Indemnification Funding Note requires the payors thereunder to make payments on the Indemnification Funding Note so that the Indemnity Trust Assets are not less than $25 million;

WHEREAS, the Grantor initially funded the Indemnity Trust by depositing $2.5 million in cash and the Indemnification Funding Note into the Indemnity Trust Account;

001268

HCMLPHMIT00000674

WHEREAS, the payors funded the Indemnification Funding Note so that the Indemnity Trust Account held approximately $25 million in cash Assets;

WHEREAS, Section 2.3(b) of the Original Indemnity Trust Agreement authorized the Grantor to transfer Assets into the Indemnity Trust Account in excess of the amount due on the Indemnification Funding Note;

WHEREAS, the Grantor regularly assesses the potential magnitude of Indemnity Obligations and whether the Indemnity Trust Assets are sufficient to cover all current or potential Indemnity Obligations;

WHEREAS, the Grantor's assessment and re-assessment of the magnitude of potential Indemnity Obligations is continually informed by developments in litigations related to the Plan, and the costs related thereto, taken against the Grantor and other Trust Indemnified Parties, as well as actions against third-parties that relate to the Plan or Trust Indemnified Parties;

WHEREAS, based upon the Grantor's initial re-assessment of the potential magnitude of Indemnity Obligations, the Grantor determined that $25 million in the Indemnity Trust Account was likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on March 13, 2023, the Grantor transferred an additional interim amount of $7 million in cash into the Indemnity Trust Account;

WHEREAS, effective May 3, 2023, the Parties amended the Original Indemnity Trust Agreement by entering into the First Amendment to Indemnity Trust Agreement to clarify that the transfer of additional Assets to the Indemnity Trust and any additional transfers of Assets to the Indemnity Trust will be subject to the Indemnity Trust Administrator's ability to transfer Indemnity Trust Assets from the Indemnity Trust Account to the Claimant Trust if he determines, in his sole and absolute discretion, that amounts in excess of $32 million (the then approximate amount of Indemnity Trust Assets) in cash or other Assets are not then required to satisfy potential Indemnity Obligations;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on May 3, 2023, the Grantor transferred an additional interim amount of $3 million in cash into the Indemnity Trust Account;

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on August 29, 2023, the Grantor transferred an additional interim amount of $15 million in cash into the Indemnity Trust Account;

WHEREAS, that certain Settlement Agreement was entered into as of January 11, 2024, by and among (a) Highland Capital Management, L.P.; (b) the Litigation Trustee; (c) the Claimant Trust; (d) the Indemnity Trust; (e) Mark K. Okada ("Okada"); (f) Mark & Pamela Okada Family Trust – Exempt Trust # 1 ("MAP Trust 1"); (g) Mark & Pamela Okada Family Trust – Exempt Trust #2 ("MAP Trust 2"); and (h) Lawrence Tonomura, solely in his capacity as Trustee of MAP

2

001269
HCMLPHMIT00000675

Trust 1 and MAP Trust 2 ("Tonomura," and together with Okada, MAP Trust 1, and MAP Trust 2, the "Okada Parties"), and such Settlement Agreement became effective when approved by the Bankruptcy Court on February 7, 2024 (as so approved by the Bankruptcy Court, the "Okada Settlement Agreement");

WHEREAS, based upon the Grantor's further re-assessment of Indemnity Obligations and its determination that the Indemnity Trust Assets were then likely insufficient to satisfy all Indemnity Obligations then existing or arising in the future, on December 24, 2024, the Grantor transferred an additional interim amount of $10 million in cash into the Indemnity Trust Account;

WHEREAS, the Grantor continually re-assesses all existing and potential Indemnity Obligations, and based on developing litigation threats and litigation actions involving Trust Indemnified Parties it has determined the current cash and US Treasury balance of the Indemnity Trust Account of approximately $68.7 million (including the face value of US Treasuries with maturities of less than 1 (one) year, but excluding non-cash assets) is likely insufficient to satisfy existing and potential future Indemnification Obligations and additional Assets will be required to satisfy all Indemnification Obligations absent final court resolution of certain litigation issues and/or comprehensive settlements;

WHEREAS, the Grantor has a limited life and (a) certain of the books and records and privileges of its subsidiaries are required by regulation to be maintained beyond its permitted life, and (b) certain of its books and records and privileges and the books and records and privileges of its subsidiaries are essential to support Indemnified Obligations for the benefit of Beneficiaries;

WHEREAS, in order for the Indemnity Trust to efficiently support its obligation to satisfy all Indemnity Obligations for the benefit of the Beneficiaries, it must maintain records and privileges currently maintained for the benefit of the Beneficiaries beyond the life of the Grantor, including by owning additional non-cash Assets contributed to it by the Grantor;

WHEREAS, the Parties desire to make additional amendments consistent with the Prior Agreement in order to facilitate the efficient management of the Indemnity Trust and the Indemnity Trust Assets for the benefit of the Beneficiaries; and

WHEREAS, in consideration of the mutual covenants and promises, and upon the terms and conditions, set forth herein, the Parties agree to amend and restate the Prior Agreement in its entirety as follows:

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements and covenants herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, each of the Grantor, the Indemnity Trust Administrator, and the Indemnity Trustee have executed this Agreement for the benefit of the Beneficiaries.

001270

HCMLPHMIT00000676

TO HAVE AND TO HOLD unto the Indemnity Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Beneficiaries, and for the performance of and compliance with the terms hereof.

IT IS FURTHER COVENANTED AND DECLARED that the Indemnity Trust Assets are to be strictly held and applied by the Indemnity Trustee on behalf of the Indemnity Trust subject to the specific terms set forth below.

**ARTICLE I.**
**DEFINITION AND TERMS**

1.1     <u>Certain Definitions</u>.   Unless the context shall otherwise require and except as contained in this <u>Section 1.1</u> or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Claimant Trust Agreement, or if not defined therein, shall have the respective meanings assigned thereto in the Plan.   For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "<u>Acis 7 Proceeds</u>" has the meaning ascribed to it in the Okada Settlement Agreement.

(b)     "<u>Advisory Representatives</u>" means the following individuals who are also current Oversight Board representatives as of the date of this Agreement: (i) independent member Richard Katz, (ii) Muck Holdings LLC representative Michael Linn, and (iii) Jessup Holdings LLC representative Christopher Provost, each to the extent they desire to and do act as Advisory Representatives hereunder.

(c)     "<u>Agreement</u>" has the meaning set forth in the preamble hereto.

(d)     "<u>Assets</u>" means all assets, property, rights, benefits, or privileges that a "liquidated trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, which, for the avoidance of doubt, need not be in the form of cash or cash equivalents.

(e)     "<u>Bankruptcy Court</u>" means the Bankruptcy Court for the Northern District of Texas, Dallas Division.

(f)     "<u>Beneficiaries</u>" means the Trust Indemnified Parties.

(g)     "<u>Beneficiary Withdrawal Request</u>" has the meaning set forth in <u>Section 2.4(c)</u>.

(h)     "<u>Business Day</u>" means any day other than a Saturday, a Sunday or a day on which banking institutions or trust companies in Wilmington, Delaware are authorized or obligated by law, regulation or executive order to remain closed.

(i)     "<u>Cause</u>" means (i) a person's willful failure to perform his material duties hereunder, which is not remedied within thirty (30) days of notice; (ii) a person's commission of

4

HCMLPHMIT00000677

an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(j)     "Claimant Trust Agreement" means that certain agreement effective as of the Effective Date of the Plan (as may be amended, supplemented, or otherwise modified in accordance with the terms thereof), by and among Highland Capital Management, L.P., the Claimant Trustee, and the Delaware Trustee (as defined in the Claimant Trust Agreement) for the benefit of the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) filed with the Plan Supplement [Docket No. 1811].

(k)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of the Claimant Trust Agreement.

(l)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(m)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act, 12 Del. C. §3801, et seq.

(n)     "Delaware Trustee" has the meaning set forth in the preamble hereto.

(o)     "Final Order" means an order or judgment of a court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

(p)     "Indemnification Funding Note" means that certain $25 million note made by Highland Capital Management, L.P., Grantor, and Litigation Sub-Trust, dated August 11, 2021, in favor of the Indemnity Trust, a form of which is attached hereto as Exhibit A.

(q)     "Indemnified Amount" has the meaning set forth in Section 2.4(c).

(r)     "Indemnified Party" has the meaning set forth in Section 7.2(a).

(s)     "Indemnity Obligations" has the meaning set forth in the Recitals hereof.

5

001272

HCMLPHMIT00000678

(t)     "Indemnity Trust" means the "Highland Indemnity Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(u)     "Indemnity Trust Account" has the meaning set forth in Section 2.1(c).

(v)     "Indemnity Trust Administrator" has the meaning set forth in the preamble hereto.

(w)     "Indemnity Trust Assets" means (i) all Assets, including, but not limited to, cash, the Indemnification Funding Note, and any cash equivalents, notes, or other Assets held in the Indemnity Trust Account or otherwise owned by the Indemnity Trust or held for the benefit of the Indemnity Trust, and any proceeds realized or received from or with respect to such Assets, and (ii) any Assets transferred by or on behalf of the Grantor to the Indemnity Trust Account on or after the Effective Date.

(x)     "Indemnity Trustee" has the meaning set forth in the preamble hereto.

(y)     "Investment Company Act" means the Investment Company Act of 1940.

(z)     "IRS" means the Internal Revenue Service.

(aa)    "Liability" means any claim, expense, debt, obligation, liability, loss, damages, injury (to person, property or natural resources), penalty, stamp or other similar tax, action, suits, judgment, cost and expense (including costs of investigation and defense and attorneys' fees, costs and expenses), in each case, whether direct or indirect and whether accrued or contingent.

(bb)    "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims (as defined in the Plan) and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(cc)    "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(dd)    "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(ee)    "MAP Trust 1" has the meaning set forth in the Recitals hereof.

(ff)    "MAP Trust 2" has the meaning set forth in the Recitals hereof.

001273

HCMLPHMIT00000679

(gg) "<u>Okada</u>" has the meaning set forth in the Recitals hereof.

(hh) "<u>Okada Parties</u>" has the meaning set forth in the Recitals hereof.

(ii) "<u>Okada Settlement Agreement</u>" has the meaning set forth in the Recitals hereof.

(jj) "<u>Original Indemnity Trust Agreement</u>" has the meaning set forth in the preamble hereto.

(kk) "<u>Oversight Board</u>" means the Oversight Board of the Claimant Trust consisting of (x) independent member Richard Katz, (y) Jessup Holdings LLC, and (z) Muck Holdings LLC.

(ll) "<u>Permitted Investments</u>" has the meaning set forth in <u>Section 3.1(b)</u>.

(mm) "<u>PetroCap Proceeds</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(nn) "<u>PetroCap Proceeds Demand</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(oo) "<u>Plan</u>" means the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1808] (as amended [Docket No. 1875]) confirmed pursuant to that certain *Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief* [Docket No. 1943].

(pp) "<u>Prior Agreement</u>" has the meaning set forth in the preamble hereto.

(qq) "<u>SLP</u>" has the meaning set forth in <u>Section 9.12(a)</u>.

(rr) "<u>Termination Date</u>" has the meaning set forth in <u>Section 8.1(d)</u>.

(ss) "<u>Tonomura</u>" has the meaning set forth in the Recitals hereof.

(tt) "<u>Trust Indemnified Parties</u>" means the following:

(i) "Indemnified Parties" under Section 8.2 of the Claimant Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision;

(ii) "Indemnified Parties" under Section 8.2 of the Litigation Sub-Trust Agreement and their respective employees, agents and professionals, which are also indemnitees under the same provision; and

(iii) "Covered Persons" under Section 10 of the Reorganized Limited Partnership Agreement.

(uu) "<u>Withdrawal Notice</u>" has the meaning set forth in <u>Section 2.4(e)</u>.

7

001274

HCMLPHMIT00000680

(vv)    "<u>WTNA</u>" has the meaning set forth in the preamble hereto.

1.2    <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular terms or numbers shall be deemed to include the others in all cases where they would apply.  Terms defined in the current tense shall have a comparable meaning when used in the past or future tense and vice versa.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter," "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements, instruments or other documents shall be deemed to refer to such agreements, instruments or other documents as the same may be amended, restated, supplemented or otherwise modified in accordance with the terms thereof.  Any statute or regulation referred to herein means such statute or regulation as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, includes any rules and regulations promulgated under such statute), and references to any section of any statute or regulation include any successor to such section.

## ARTICLE II.
## INDEMNITY TRUST AND INDEMNITY TRUST ACCOUNT

2.1    <u>Creation of Trust and Establishment of Account</u>.

(a)    Pursuant to the Original Indemnity Trust Agreement, the Indemnity Trust was created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Indemnity Trust", and the Indemnity Trust is hereby continued.  The Indemnity Trustee shall be empowered to conduct all business and hold all property constituting the Indemnity Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)    Pursuant to the Original Indemnity Trust Agreement, the Delaware Trustee and the Indemnity Trustee have caused to be executed and filed in the office of the Secretary of State of the State of Delaware a Certificate of Trust for the Indemnity Trust, and each of them agree to execute, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law, in accordance with the terms and conditions set forth herein.

(c)    Pursuant to the Original Indemnity Trust Agreement, the Grantor established a trust account with the Indemnity Trustee in the name of the Indemnity Trust with account no. 150474-000 (the "<u>Indemnity Trust Account</u>"), which shall be a segregated non-interest bearing trust account for the sole use and exclusive benefit of the Beneficiaries upon the terms and conditions hereinafter set forth.  For all purposes of this Agreement, the term "<u>Indemnity Trust Account</u>" means the funds and Assets held by the Indemnity Trustee on behalf of the Indemnity Trust hereunder constituting the corpus of the Indemnity Trust, upon the terms and conditions hereinafter set forth.

8

001275
HCMLPHMIT00000681

2.2    Authorization to Receive Assets.  The Indemnity Trustee and its lawfully appointed successors are authorized and shall have the power to receive such Assets as the Grantor shall transfer or cause to be transferred to the Indemnity Trustee on behalf of the Indemnity Trust, and to hold, invest, reinvest, manage and dispose of the same for the uses and purposes and in the manner and according to the provisions hereinafter set forth.  All such Assets placed in the Indemnity Trust shall at all times be maintained in the Indemnity Trust Account, separate and distinct from all other assets of the Grantor, and within the dominion and control of the Indemnity Trustee on behalf of the Indemnity Trust for the benefit of the Beneficiaries.

2.3    Deposit of Assets to the Indemnity Trust Account.

(a)    Pursuant to the Original Indemnity Trust Agreement, the Grantor transferred to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit in the Indemnity Trust Account, cash in an amount equal to $2,500,000 and an Indemnification Funding Note, the form of which is attached hereto as Exhibit A.

(b)    Thereafter, the Grantor (or any other person on behalf of the Grantor) may from time to time transfer to the Indemnity Trustee on behalf of the Indemnity Trust, for deposit to the Indemnity Trust Account or to be otherwise held by the Indemnity Trustee for the benefit of the Beneficiaries, any Assets, including pursuant to Section 9.12(a) or Section 9.12(b), as payments under the Indemnification Funding Note or otherwise for the benefit of the Beneficiaries; provided that such Assets shall be valued according to their current fair market value. Any interest or investment income on such Assets, to the extent not invested or reinvested, shall be retained in the Indemnity Trust Account and will be considered a part of the corpus of the Indemnity Trust and included in the balance of the Indemnity Trust Account. The Indemnity Trustee shall not be responsible for valuing any Indemnity Trust Assets.

(c)    Upon receipt at any time of a contribution or payment from the Grantor (or any other person on behalf of the Grantor) and after giving effect to any payments required to be made hereunder, the Indemnity Trustee shall invest available Indemnity Trust Assets in Permitted Investments but only at and in accordance with the written direction of the Indemnity Trust Administrator; provided, that whether any Indemnity Trust Asset should be held in its original form, disposed of or liquidated, or invested in Permitted Investments shall be determined by the Indemnity Trust Administrator in his sole and absolute discretion. The Indemnity Trustee may conclusively and exclusively rely on any such investment direction and shall bear no Liability for any loss or other injury based on acting or omitting to act in accordance with such investment direction. All such Permitted Investments shall constitute Indemnity Trust Assets and be held by the Indemnity Trustee on behalf of the Indemnity Trust in the Indemnity Trust Account for the benefit of the Beneficiaries. In the absence of such written direction, the Indemnity Trust Assets including any available funds shall be held uninvested in the Indemnity Trust Account. Any earnings and income shall become part of the Indemnity Trust Assets and disbursed in accordance with this Agreement. The Indemnity Trustee is hereby authorized and directed to sell or redeem any such investments as it deems necessary to make any payments or distributions required or permitted under this Agreement; provided that the Acis 7 Proceeds and any PetroCap Proceeds may be expended only in the order contemplated in Section 9.12(d) as instructed in writing by the Indemnity Trust Administrator. The Indemnity Trustee shall have no responsibility or Liability for any loss which may result from any investment or sale of

9

HCMLPHMIT00000682

investment made pursuant to this Agreement or any disbursement instructed by the Indemnity Trust Administrator.  The Indemnity Trustee is hereby authorized, in making or disposing of any investment permitted by this Agreement, to deal with itself (in its individual capacity) or with any one or more of its affiliates, whether it or any such affiliate is acting as agent of the Indemnity Trustee or for any third person or dealing as principal for its own account.  The Parties acknowledge that the Indemnity Trustee is not providing investment supervision, recommendations, or advice.

    2.4   <u>Withdrawals on Behalf of the Beneficiaries</u>.

       (a)   The Indemnity Trust shall pay or reimburse the applicable Beneficiary for the amounts requested by such Beneficiary (i) to be paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, with respect to its Indemnity Obligations to the extent not otherwise paid by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, and (ii) following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, for any claims that if brought against such Beneficiary would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, in each case regardless of whether such Indemnity Obligations survive the dissolution or termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, pursuant to the procedures set forth below.  With respect to clause (ii) above, the Indemnity Trust shall assume for the benefit of the Beneficiaries the Indemnity Obligations on the terms set forth herein.

       (b)   The Indemnity Trustee shall (i) make withdrawals of Indemnity Trust Assets, as instructed in writing by the Indemnity Trust Administrator as described herein pursuant to a Withdrawal Notice, to satisfy amounts due under the Indemnity Obligations in accordance with this Agreement, and (ii) take any action with respect to the Indemnity Trust Assets, as instructed by the Indemnity Trust Administrator, promptly and, in any event, within three (3) Business Days following receipt of such instruction.  The Indemnity Trustee shall be entitled to conclusively and exclusively rely upon any Withdrawal Notice or other written instruction provided to it by the Indemnity Trust Administrator with respect to any withdrawals of Indemnity Trust Assets or other action with respect to the Indemnity Trust Assets in accordance with this Agreement without further inquiry or Liability.

       (c)   At any time prior to the dissolution of the Claimant Trust, any Beneficiary who has made a claim for indemnity to the Claimant Trust pursuant to Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, but has not been paid in full within fourteen (14) days of such claim for indemnification may make a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a written notice to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), substantially in the form attached hereto as <u>Exhibit B</u> ("<u>Beneficiary Withdrawal Request</u>"), setting forth (i) a certification that such Beneficiary has made a claim for indemnification to the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as the case may be, which was not paid in full within fourteen (14) days of such claim for indemnification and (ii) the amount owed to such Beneficiary with respect to such claim for indemnification (the "<u>Indemnified Amount</u>").  For the

10

001277

HCMLPHMIT00000683

avoidance of doubt, the Indemnity Trustee shall have no duty or Liability to review any Beneficiary Withdrawal Request or verify any information contained therein, it being understood and agreed that the Indemnity Trust Administrator shall be solely responsible for doing so.

(d)    At any time following the dissolution of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, any Beneficiary may make a claim for the Indemnified Amount by making a request for withdrawal of Indemnity Trust Assets from the Indemnity Trust Account by delivering a Beneficiary Withdrawal Request to the Indemnity Trust Administrator (with a copy to the Indemnity Trustee);

(e)    Following receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall (i) verify whether such Beneficiary has made a claim for indemnification and has not been paid in full by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, within fourteen (14) days of such claim for indemnification (provided that this clause (i) shall not be applicable to claims made pursuant to Section 2.4(d)); (ii) review the supporting documents attached to such Beneficiary Withdrawal Request; and (iii) deliver a written notice to the Indemnity Trustee (with a copy to the applicable Beneficiary) in the form attached hereto as Exhibit C (the "Withdrawal Notice"). The Withdrawal Notice shall specify the amount to be paid to the applicable Beneficiary and any applicable wire transfer instructions as may be required by the Indemnity Trustee to make such payment. All payments by the Indemnity Trustee to any Beneficiary hereunder shall be sent by wire transfer. The Indemnity Trustee shall have no obligation to determine whether the Indemnity Trust Administrator has complied with the provisions of this Section 2.4(e). If the Indemnity Trust Administrator does not issue a Withdrawal Notice within two (2) Business Days of receipt of a Beneficiary Withdrawal Request, the Indemnity Trust Administrator shall provide the applicable Beneficiary, no later than the third (3rd) Business Day following receipt of the Beneficiary Withdrawal Request, with an explanation in writing of the reasons for the denial of the Beneficiary Withdrawal Request. All disputes related to Beneficiary Withdrawal Requests shall be resolved by the Bankruptcy Court, or another court of competent jurisdiction, in accordance with Section 9.10 of this Agreement. The Indemnity Trustee is entitled to conclusively rely on any order from the Bankruptcy Court or other court of competent jurisdiction concerning any such disputes.

(f)    Within three (3) Business Days of receipt of such Withdrawal Notice, the Indemnity Trustee shall pay by wire transfer of immediately available funds to the applicable Beneficiary the lesser of (i) the Indemnified Amount and (ii) the amount of funds in the Indemnity Trust Account, provided that if the Indemnity Trust Account contains insufficient funds to pay the amounts set forth in such Withdrawal Notice, any such unpaid amounts will be paid by the Indemnity Trustee within three (3) Business Days of receipt by the Indemnity Trustee in the Indemnity Trust Account of sufficient funds (including, for the avoidance of doubt, from any funds subsequently received as payments on the Indemnification Funding Note) to pay any portion thereof.

(g)    If any Beneficiary who has made a claim for indemnification hereunder receives payment with respect to such claim for indemnification from the Claimant Trust or any other source, such Beneficiary must promptly notify the Indemnity Trust Administrator (with a copy to the Indemnity Trustee), upon which the applicable request for payment from the

11

001278

HCMLPHMIT00000684

Indemnity Trust will be revised accordingly, and to the extent that any such amounts were already received from the Indemnity Trust, the Indemnity Trust Administrator, in his reasonable discretion, shall cause such Beneficiary to repay or return such amounts to the Indemnity Trust Account, without interest, or offset such amounts against any future requests for indemnification.

(h)     For the avoidance of doubt, the Indemnity Trustee shall withdraw Indemnity Trust Assets credited to the Indemnity Trust Account without notice to or the consent of the Grantor at any time and from time to time upon a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this Section 2.4. No other statement or document need be presented to the Indemnity Trustee by the Indemnity Trust Administrator in order to withdraw Indemnity Trust Assets credited to the Indemnity Trust Account. Upon receipt of a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator in accordance with the terms of this Section 2.4 by the Indemnity Trustee, the Indemnity Trustee shall promptly take any and all necessary steps to pay the applicable Beneficiary and, when appropriate, to liquidate (but only at the written direction of the Indemnity Trust Administrator) non-cash Indemnity Trust Assets in the Indemnity Trust to pay the applicable Beneficiary. The Indemnity Trustee shall be fully protected in conclusively relying upon any such Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement for such withdrawal and shall not be obligated to investigate or ascertain that the applicable Beneficiary intends to use or uses the Indemnity Trust Assets withdrawn for the purposes set forth herein. Except for acts or omissions involving its own gross negligence or willful misconduct, the Indemnity Trustee shall not be liable to the Grantor, any Beneficiary, the Indemnity Trust Administrator or any third party, for any withdrawals or payments made pursuant to a Withdrawal Notice or other written instructions from the Indemnity Trust Administrator delivered in accordance with this Agreement.

## ARTICLE III.
## INDEMNITY TRUST ADMINISTRATOR

3.1     Authority.

(a)     For any action contemplated or required in connection with the operation of the Indemnity Trust, and for any guidance or instruction to be provided to the Indemnity Trustee, such function, rights and responsibility shall be vested in the Indemnity Trust Administrator. The Indemnity Trust Administrator is an express agent of the Indemnity Trust and is not a delegatee of the Indemnity Trustee.

(b)     The Indemnity Trust Administrator shall have the power to take any actions the Indemnity Trust Administrator, in his sole and absolute discretion, deems desirable or necessary in connection with the operation of the Indemnity Trust. Notwithstanding the foregoing, the right and power of the Indemnity Trust Administrator to direct the Indemnity Trustee to invest the Indemnity Trust Assets, the proceeds thereof, or any income earned by the Indemnity Trust shall be limited to the right and power to invest such Indemnity Trust Assets only in cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; provided, however, that the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold pursuant to the Treasury

12

001279

HCMLPHMIT00000685

Regulations, or any modification in the Internal Revenue Guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise; including, for the avoidance of doubt, any obligations of the United States Treasury, including bills, notes, bonds, or TIPS having a remaining maturity of less than one year at the time of investment ("Permitted Investments"). The Indemnity Trustee shall have no duty to determine if any investment direction provided to it by the Indemnity Trust Administrator satisfies the definition of "Permitted Investments" hereunder.  In the event that market conditions are such that negative interest applies to amounts deposited in the Indemnity Trust Account, the Grantor shall be responsible for the payment of such interest and the Indemnity Trustee shall be entitled to deduct from amounts on deposit with it an amount necessary to pay such negative interest.  For the avoidance of doubt, the indemnification protections afforded to the Indemnity Trustee under Section 7.2 shall cover any interest-related expenses (including, but not limited to, negative interest) incurred by the Indemnity Trustee in the performance of its duties hereunder.

(c)      The Indemnity Trust Administrator shall have the power and authority to retain counsel, tax advisors, consultants, brokers and other experts or advisors, as he considers appropriate to address any matter relating to the Indemnity Trust.  Without limiting the generality of the foregoing, to the extent the Indemnity Trust Administrator identifies any conflict of interest in his capacity as a Beneficiary, on the one hand, and the Indemnity Trust Administrator, on the other, or otherwise relating to the Indemnity Trust, the Indemnity Trust Administrator may retain such advisors or experts, as he, in his sole and absolute discretion, considers appropriate to evaluate and resolve any such conflict of interest.  The cost of any such advisors or experts will be paid by the Claimant Trust, and if not paid in a timely fashion, may represent a claim for indemnity under this Agreement.  The Indemnity Trust Administrator shall keep a record of such fees and expenses incurred and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

3.2    Records; Reporting.

(a)      The Indemnity Trust Administrator shall create and maintain a record of any Beneficiary who makes a claim hereunder at his office or at such other place or places as it shall designate from time to time, which shall be subject to inspection by any Beneficiary upon request; provided that such Beneficiary may be required to agree to maintain confidentiality with respect to any non-public information.

(b)      The Indemnity Trust Administrator shall provide quarterly reporting to the Oversight Board (for so long as it exists) of the Claimant Trust and the Advisory Representatives of (i) the status of the Indemnity Trust Assets, (ii) the balance of cash held by the Indemnity Trust, (iii) the status of any claims made by Beneficiaries and any resolutions thereof, (iv) the status of any litigation, and (vii) operating expenses; provided, however, that the Indemnity Trust Administrator may, with respect to any member of the Oversight Board of the Claimant Trust or Advisory Representative, redact any portion of such reports that relate to such person's or entity's claim for indemnification hereunder, as applicable, and any reporting provided hereunder may be subject to such member of the Oversight Board of the Claimant Trust

13

001280
HCMLPHMIT00000686

or Advisory Representative's agreement to maintain confidentiality with respect to any non-public information.

3.3     Term of Service.  The Indemnity Trust Administrator shall serve as the Indemnity Trust Administrator for the duration of the Indemnity Trust, subject to death, disability, resignation or removal.

3.4     Resignation or Removal of the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator may resign as Indemnity Trust Administrator at any time by giving not less than thirty (30) days' written notice thereof to the Grantor and the Indemnity Trustee.  Upon the resignation of the Indemnity Trust Administrator, the successor Indemnity Trust Administrator will be appointed in accordance with Section 3.4(d).  The resignation of the Indemnity Trust Administrator shall become effective on the acceptance of appointment by a successor Indemnity Trust Administrator.

(b)     The Indemnity Trust Administrator may be removed for Cause immediately upon notice thereof by the Grantor as the Grantor deems appropriate or upon the request of a Beneficiary; provided that such notice shall be accompanied by a final order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, by a final order of such other court of competent jurisdiction establishing Cause.

(c)     [Reserved]

(d)     In the event of a vacancy by reason of Cause, or the death or Disability of the Indemnity Trust Administrator or prospective vacancy by reason of resignation, the successor Indemnity Trust Administrator shall be Richard Katz (the Independent Member of the Oversight Board of Grantor as of the date hereof), and in the event of a vacancy by reason of Cause, or the death or Disability of the fallback successor Indemnity Trust Administrator, the contingent successor shall be David Klos (the CFO of Highland Capital Management, L.P. as of the date hereof).  In the event that neither Richard Katz nor David Klos is able or willing to serve as Indemnity Trust Administrator, a majority of the Advisory Representatives willing to vote shall select the successor.  Any such successor Indemnity Trust Administrator shall be appointed as soon as practicable, but in any event no later than thirty (30) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the-then acting Indemnity Trust Administrator.

3.5     Expenses and Other Payments to the Indemnity Trust Administrator.

(a)     The Indemnity Trust Administrator shall not be compensated for its services under this Agreement; provided that the Indemnity Trust Administrator shall be paid or reimbursed for all of the Indemnity Trust Administrator's reasonable and documented out-of-pocket expenses and disbursements in connection with his duties under this Agreement (including reasonable attorney's fees and expenses in his capacity as such), except any such expense or disbursement as may arise from the Indemnity Trustee's fraud, willful misconduct or gross negligence.  The Indemnity Trust Administrator shall keep a record of such expenses and upon the request of the Grantor or any Beneficiary, the Indemnity Trust Administrator shall

14

001281

HCMLPHMIT00000687

promptly permit the requesting Party or Beneficiary, its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy such records, during normal business hours at the expense of such requesting Party or Beneficiary.

(b)     In the event that the Grantor is dissolved and Assets or Liabilities are transferred to the Indemnity Trust in accordance with this Agreement, nothing in this Agreement shall prohibit the Indemnity Trust from (i) compensating the Indemnity Trust Administrator in his capacity as an officer, other employee, or agent of such Assets or Liabilities for managing such Assets or Liabilities or (ii) compensating any other officers, employees, or agents of such Assets or Liabilities in assisting in the management of such Assets or Liabilities; provided, however, that any such compensation shall be paid solely from funds advanced to the Indemnity Trust with (or in connection with) the Assets or Liabilities transferred, and such funds shall be accounted for and managed by the Indemnity Trust Administrator separate and apart from the Indemnity Trust Assets.

## ARTICLE IV.
## THE INDEMNITY TRUSTEE AND DELAWARE TRUSTEE

4.1     Indemnity Trustee Authority and Duties.

(a)     The Indemnity Trustee shall have the power and authority to hold legal title on behalf of the Indemnity Trust to any and all Assets and rights of the Indemnity Trust in accordance with the terms hereof.  For the avoidance of doubt, the Beneficiaries shall be the sole beneficiaries of the Indemnity Trust and the Indemnity Trustee on behalf of the Indemnity Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

(b)     The Indemnity Trustee shall take written directions from the Indemnity Trust Administrator, in such form specified herein and otherwise satisfactory to the Indemnity Trustee, and shall be entitled to conclusively and exclusively rely upon any such written directions from the Indemnity Trust Administrator without further inquiry or Liability.

(c)     The Indemnity Trustee's duties and responsibilities hereunder shall be determined solely by the express provisions of this Agreement and no other or further duties or responsibilities shall be implied.  The duties and responsibilities of the Indemnity Trustee hereunder shall be deemed purely ministerial in nature, and the Indemnity Trustee shall not be liable except for the performance of such duties, and no implied covenants or obligations shall be read into this Agreement against the Indemnity Trustee.  The Indemnity Trustee shall not be liable or responsible for any loss to the Indemnity Trust Account unless the same is caused by its own willful misconduct or gross negligence.  In no event shall the Indemnity Trustee be responsible or liable for special, indirect, punitive, incidental or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Indemnity Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.  To the extent that, at law or in equity, the Indemnity Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities

15

001282

HCMLPHMIT00000688

of the Indemnity Trustee expressly set forth in this Agreement. The Indemnity Trustee shall have no Liability for any action taken, or errors in judgment made, in good faith by it or any of its officers, employees or agents, unless it shall have been grossly negligent in ascertaining the pertinent facts. The permissive rights of the Indemnity Trustee to do things enumerated in this Agreement shall not be construed as a duty and, with respect to such permissive rights, the Indemnity Trustee shall not be answerable for other than its gross negligence or willful misconduct. The Indemnity Trustee shall not be liable for any amount in excess of the value of the Indemnity Trust Assets.

(d)     The Indemnity Trustee shall take all steps and execute all instruments and documents necessary to effectuate the purpose of the Indemnity Trust and the activities contemplated herein, and take all actions necessary to comply with this Agreement and the obligations hereunder, but only upon receipt of appropriate written instructions from the Indemnity Trust Administrator. The Indemnity Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement at the request or direction of the Indemnity Trust Administrator, pursuant to the provisions of this Agreement, if the Indemnity Trustee is not satisfied that reasonable security or indemnity (satisfactory to the Indemnity Trustee in its sole and absolute discretion) against the costs, expenses and Liabilities which may be incurred by it in compliance with such request or direction is available to the Indemnity Trustee.

(e)     The Indemnity Trustee shall have no duty or responsibility whatsoever to determine that any Indemnity Trust Assets withdrawn from the Indemnity Trust Account pursuant to this Agreement will be used and applied in the manner provided for by this Agreement. The Indemnity Trustee shall only be liable for such losses, damages or expenses which have been finally adjudicated by a court of competent jurisdiction to have directly resulted from its own fraud, willful misconduct, or gross negligence.

(f)     The Indemnity Trustee shall not be responsible for the existence, genuineness or value of any of the Indemnity Trust Assets, for the validity of title to the Indemnity Trust Assets, or for insuring the Indemnity Trust Assets or for the payment of taxes, charges, assessments or liens upon the Indemnity Trust Assets.

(g)     The Indemnity Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement. The Indemnity Trust shall promptly advance and reimburse the Indemnity Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Indemnity Trustee in connection with the performance of its duties hereunder. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Indemnity Trustee.

(h)     The Indemnity Trustee shall not be required to risk or expend its own funds in performing its obligations under this Agreement.

(i)     The Indemnity Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document provided to the Indemnity Trustee by the Indemnity Trust

16

001283

HCMLPHMIT00000689

Administrator or the Beneficiaries.  The Indemnity Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees, and the Indemnity Trustee shall not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent, attorney, custodian or nominee appointed with due care by it.

(j)      The Indemnity Trustee shall be protected in acting upon any statement, notice, resolution, request, consent, order, certificate, report, appraisal, opinion, facsimile, electronic media, letter or other paper or document believed by the Indemnity Trustee to be genuine and to have been signed, sent or presented by the proper Party or Parties.  All notices to the Indemnity Trustee (unless otherwise provided therein) shall be deemed to be effective when received by an officer of the Indemnity Trustee with direct responsibility for the administration of this Agreement.

(k)      Unless otherwise provided in this Agreement, the Indemnity Trustee is authorized to follow and rely upon all written instructions given by the Indemnity Trust Administrator and by attorneys-in-fact acting under written authority furnished to the Indemnity Trustee by the Indemnity Trust Administrator, including instructions given by electronic media, letter and facsimile transmission, if the Indemnity Trustee believes such instructions to be genuine and to have been signed by the proper party or parties.  The Indemnity Trustee shall not incur any Liability to anyone resulting from actions taken by the Indemnity Trustee in reliance in good faith on such written instructions.

(l)      The Indemnity Trustee represents and warrants that (i) it is a national banking association; and (ii) it is not a parent, subsidiary or affiliate of the Grantor, any Beneficiary or the Indemnity Trust Administrator.

(m)      The Indemnity Trustee shall be entitled to rely on and shall not be liable for any action taken or omitted to be taken by the Indemnity Trustee in accordance with the advice of counsel or other professionals retained or consulted by the Indemnity Trustee.

(n)      The Indemnity Trustee shall neither be responsible for, nor chargeable with, knowledge of the terms and conditions of any other agreement, instrument, or document other than this Agreement, whether or not an original or a copy of such agreement has been provided to the Indemnity Trustee.  The Indemnity Trustee shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document other than this Agreement.

(o)      Neither the Indemnity Trustee nor any of its directors, officers, employees, agents or affiliates shall be responsible for nor have any duty to monitor the performance or any action of the Grantor or the Indemnity Trust Administrator, or any of their directors, members, officers, agents, affiliates or employee, nor shall it have any Liability in connection with the malfeasance or nonfeasance by such party.  The Indemnity Trustee may assume performance by all such Persons of their respective obligations.  The Indemnity Trustee shall have no enforcement or notification obligations relating to breaches of representations or warranties of any other Person.

17

001284

HCMLPHMIT00000690

(p)        In the event that any Indemnity Trust Assets or other Assets of the Indemnity Trust shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the Indemnity Trust Assets or other Assets of the Indemnity Trust, the Indemnity Trustee is hereby expressly authorized, in its sole discretion, to respond as it deems appropriate or to comply with all writs, orders or decrees so entered or issued, or which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction.  In the event that the Indemnity Trustee obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other person, firm or corporation, should, by reason of such compliance notwithstanding, such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

(q)        The Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator and shall have no responsibility or Liability for any losses or damages of any nature that may arise from any action taken or not taken by the Indemnity Trustee in accordance with the written direction of the Indemnity Trust Administrator.

(r)        Notwithstanding anything to the contrary herein, the Indemnity Trustee shall have no duty to prepare or file any Federal or state tax report or return with respect to any funds held pursuant to this Agreement or any income earned thereon, except for the delivery and filing of tax information reporting forms required to be delivered and filed with the Internal Revenue Service.   With respect to the preparation, delivery and filing of such required tax information reporting forms and all matters pertaining to the reporting of earnings on funds held under this Agreement, the Indemnity Trustee shall be entitled to request and receive written instructions from the Indemnity Trust Administrator, and the Indemnity Trustee shall be entitled to rely conclusively and without further inquiry on such written instructions.   With respect to any other payments made under this Agreement, the Indemnity Trustee shall not be deemed the payer and shall have no responsibility for performing tax reporting.  The Indemnity Trustee's function of making such payments is solely ministerial and upon express direction of the Indemnity Trust Administrator.

4.2      Term of Service.  The Indemnity Trustee shall serve as the Indemnity Trustee for the duration of the Indemnity Trust, subject to resignation or removal.

4.3      Resignation or Removal of the Indemnity Trustee.

(a)        The Indemnity Trustee may resign at any time by giving not less than thirty (30) days' written notice thereof to the Indemnity Trust Administrator.  The Indemnity Trustee may be removed by the Indemnity Trust Administrator's delivery of not less than thirty (30) days' written notice of removal to the Indemnity Trustee.  Such resignation or removal shall become effective on the acceptance of appointment by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets in accordance with Section 4.3(b) and any undisputed fees, expenses and indemnity due to the outgoing Indemnity Trustee are paid.  If the Indemnity Trust Administrator does not act within such 30-day period, the Indemnity Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Indemnity Trustee.

001285
HCMLPHMIT00000691

(b)     Upon receipt of the Indemnity Trustee's notice of resignation or delivery of notice of Indemnity Trustee's removal, the Indemnity Trust Administrator shall appoint a successor Indemnity Trustee.  Any successor Indemnity Trustee shall be a bank or trust company that is a member of the Federal Reserve System or chartered in the State of Delaware and shall not be a parent, a subsidiary or an affiliate of the Grantor or any of the Beneficiaries.  Upon the acceptance of the appointment as Indemnity Trustee hereunder by a successor Indemnity Trustee and the transfer to such successor Indemnity Trustee of all Indemnity Trust Assets, the resignation or removal of the Indemnity Trustee shall become effective.  Thereupon, such successor Indemnity Trustee shall succeed to and become vested with all the rights, powers, privileges and duties of the resigning or removed Indemnity Trustee, and the resigning or removed Indemnity Trustee shall be discharged from any future duties and obligations under this Agreement.

4.4     <u>Reporting</u>.  The Indemnity Trustee shall provide the Indemnity Trust Administrator, upon the inception of the Indemnity Trust Account, online electronic access to view the Indemnity Trust Account.  Thereafter, the Indemnity Trust Administrator will make available to any Beneficiary a written statement identifying in reasonable detail the balance of the Indemnity Trust Assets as of the applicable reporting date, plus a full accounting of all deposits (including amounts collected under the Indemnification Funding Note and any interest or investment income) and any withdrawals made during the applicable period and the effect of any investment losses; <u>provided</u>, <u>however</u>, that such written statements may be redacted for any sensitive information, as determined by the Indemnity Trust Administrator, in his sole and absolute discretion.

4.5     <u>Books and Records</u>.

(a)     The Indemnity Trustee shall maintain in respect of the Indemnity Trust books and records reflecting Indemnity Trust Assets in its possession and the income of the Indemnity Trust and payment of expenses, Liabilities, and claims against or assumed by the Indemnity Trust in such detail and for such period of time as is customary for the Indemnity Trustee in accordance with its ordinary and customary corporate trust business.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Indemnity Trust.  Except as otherwise provided herein, nothing in this Agreement requires the Indemnity Trustee to file any accounting or seek approval of any court with respect to the administration of the Indemnity Trust, or as a condition for managing any payment or distribution out of the Indemnity Trust Assets.

(b)     The Indemnity Trustee will provide the Indemnity Trust Administrator any books and records concerning the Indemnity Trust Assets upon the Indemnity Trustee's receipt of written direction from the Indemnity Trust Administrator.  The Indemnity Trust Administrator will thereafter promptly permit the Grantor, any Beneficiary or its respective agents, employees or independent auditors to examine, audit, excerpt, transcribe and copy, any non-privileged and non-confidential books, documents, papers and records relating to the Indemnity Trust Account or the Indemnity Trust Assets at the expense of such requesting Party or Beneficiary.  It is understood and agreed that the Indemnity Trustee shall only provide the information in its possession to the Indemnity Trust Administrator and shall have no duty or obligation to provide such information to any other person or entity.

19

001286

HCMLPHMIT00000692

4.6    [Reserved]

4.7    WTNA, as Indemnity Trustee or Delaware Trustee, shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its control, including without limitation, any act or provision of any present or future law or regulation or governmental authority; acts of God; earthquakes; fires; floods; wars; terrorism; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities, computer (hardware or software) or communications service; accidents; labor disputes; acts of civil or military authority or governmental actions; or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility.

4.8    Any corporation or association into which WTNA may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer all or substantially all of its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation or transfer to which the Delaware Trustee or the Indemnity Trustee is a party, will be and become the successor Delaware Trustee or Indemnity Trustee, as applicable, under this Agreement and will have and succeed to the rights, powers, duties, immunities and privileges as its predecessor, without the execution or filing of any instrument or paper or the performance of any further act.

4.9    Delaware Trustee.

(a)    The Delaware Trustee shall have the limited power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Indemnity Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Delaware Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement, in either case as may be directed in a writing delivered to the Delaware Trustee by the Indemnity Trust Administrator and upon which the Delaware Trustee shall be entitled to conclusively and exclusively rely; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal Liability or to result in personal Liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Indemnity Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Indemnity Trust. For the avoidance of doubt, the Delaware Trustee will only have such rights and obligations as expressly provided by reference to the Delaware Trustee hereunder. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Indemnity Trustee or the Indemnity Trust Administrator set forth herein. The Delaware Trustee shall be one of the trustees of the Indemnity Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Delaware Statutory Trust Act and

20

001287

HCMLPHMIT00000693

for taking such actions as are required to be taken by a Delaware Trustee under the Delaware Statutory Trust Act. The duties (including fiduciary duties), Liabilities and obligations of the Delaware Trustee shall be limited to those expressly set forth in this <u>Section 4.9(a)</u> and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee. To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and Liabilities relating thereto to the Indemnity Trust, the other parties hereto or any beneficiary of the Indemnity Trust, it is hereby understood and agreed by the other parties hereto that such duties and Liabilities are replaced by the duties and Liabilities of the Delaware Trustee expressly set forth in this Agreement.

(b)     The Delaware Trustee shall serve until such time as the Indemnity Trust Administrator removes the Delaware Trustee or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Indemnity Trust Administrator in accordance with the terms hereof. The Delaware Trustee may resign at any time upon the giving of at least thirty (30) days' advance written notice to the Indemnity Trust Administrator; <u>provided</u>, that such resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Indemnity Trust Administrator in accordance with the terms hereof. If the Claimant Trustee does not act within such 30-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(c)     Upon the resignation or removal of the Delaware Trustee, the Indemnity Trust Administrator shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee. Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Delaware Statutory Trust Act. Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Indemnity Trust Administrator and any undisputed fees, expenses and indemnity due to the outgoing Delaware Trustee are paid. Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Agreement, with like effect as if originally named as Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Agreement.

(d)     The Delaware Trustee shall be paid such compensation as agreed to pursuant to a separate fee agreement. The Indemnity Trust shall promptly advance and reimburse the Delaware Trustee for all reasonable out-of-pocket costs and expenses (including reasonable legal fees and expenses) incurred by the Delaware Trustee in connection with the performance of its duties hereunder. The terms of this paragraph shall survive termination of this Agreement and/or the earlier resignation or removal of the Delaware Trustee.

## ARTICLE V.
## TRUST INTERESTS

5.1     <u>Interests Beneficial Only</u>. The beneficial interests afforded a Beneficiary hereunder shall not entitle the Beneficiaries to any title in or to the Indemnity Trust Assets (which title shall

001288
HCMLPHMIT00000694

be vested in the Indemnity Trust) or to any right with respect to the administration of the Indemnity Trust except with respect to reporting and the review of books and records as set forth in this Agreement. Further, the Beneficiaries (other than the Indemnity Trustee in such capacity) shall not have any right to direct the actions of the Indemnity Trustee with respect to the Indemnity Trust Assets or the Indemnity Trust Account, or to direct the actions of the Indemnity Trust Administrator.

5.2     <u>Transferability of Trust Interests</u>.  No transfer, assignment, pledge, hypothecation, or other disposition of a Beneficiary's interest in the Indemnity Trust may be effected without the consent of the Indemnity Trust Administrator in his sole and absolute discretion, <u>provided</u> that any such transfer, assignment or hypothecation does not confer upon such assignee status as a Beneficiary under the Indemnity Trust.  The Indemnity Trust Administrator may impose such conditions and other terms upon any transfer, assignment or hypothecation as he considers appropriate, in his sole and absolute discretion.  In the event of an assignment pledge, hypothecation, or other disposition, the foregoing limitations on transferability shall continue to apply in all respects to such beneficial interest and shall be binding on the assignee of such beneficial interest.

5.3     <u>Effect of Death, Incapacity, or Bankruptcy</u>.  The death, incapacity, or bankruptcy of any Beneficiary during the term of the Indemnity Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Beneficiary under this Agreement.

5.4     <u>Change of Address</u>.  Any Beneficiary may, after the Effective Date, select an alternative address by providing notice to the Indemnity Trust Administrator and the Indemnity Trustee identifying such alternative address.  Such notification shall be effective only upon receipt by the Indemnity Trust Administrator and the Indemnity Trustee.  Absent actual receipt of such notice by the Indemnity Trust Administrator and an officer of the Indemnity Trustee responsible for the administration of this Agreement, neither the Indemnity Trust Administrator nor the Indemnity Trustee shall recognize any such change of distribution address.

## ARTICLE VI.
## TAX MATTERS

6.1     <u>Tax Treatment and Tax Returns</u>.  It is intended that the Indemnity Trust Assets shall be treated as owned by the Grantor for federal and applicable state and local income tax purposes. The Grantor shall be responsible for causing to be prepared and filed in a timely fashion all tax returns of the Indemnity Trust relating to the transactions contemplated by this Agreement or otherwise contemplated hereby, and it shall send a copy of each such tax return to the Indemnity Trustee.  The Indemnity Trustee, acting only upon the written direction of the Indemnity Trust Administrator, shall furnish to the Grantor all such information as it has in its possession and as may be reasonably required in connection with the preparation of such tax returns and shall execute such returns if required to do so by the applicable taxing authority.  The Indemnity Trustee shall not be liable for any tax due and payable in connection with this Agreement except for any tax based on or measured by the income of the institution or person acting as the Indemnity Trustee resulting from the amounts paid to the Indemnity Trustee as fees or compensation for acting as the Indemnity Trustee hereunder.  Each Party (other than the Indemnity Trustee and the Delaware

22

HCMLPHMIT00000695

Trustee) shall provide the Indemnity Trustee with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 and such other forms and documents that the Indemnity Trustee may request.  Each such Party understands that if such tax reporting documentation is not provided and certified to the Indemnity Trustee, the Indemnity Trustee may be required by the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to withhold a portion of any interest or other income earned on the investment of the Indemnity Trust Assets.

## ARTICLE VII.
## STANDARD OF CARE AND INDEMNIFICATION

7.1     Standard of Care.  Neither the Indemnity Trustee acting in its capacity as Indemnity Trustee nor the Indemnity Trust Administrator, acting in his capacity as the Indemnity Trust Administrator, shall be personally liable to the Indemnity Trust or to any person (including any Beneficiary) in connection with the affairs of the Indemnity Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such other court of competent jurisdiction, that the acts or omissions of the Indemnity Trustee or the Indemnity Trust Administrator, as the case may be, constituted fraud, willful misconduct, or gross negligence.

7.2     Indemnification.

(a)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold harmless the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator, the Advisory Representatives and all current, former and future officers, directors, employees, representatives and/or agents of any of the Indemnity Trust, the Indemnity Trustee, the Delaware Trustee, the Indemnity Trust Administrator or any of their respective subsidiaries (each, an "Indemnified Party"), from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby, including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence.  Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Grantor in writing of such matter; provided, however, that the failure to provide such prompt notice to the Grantor shall not relieve the Grantor of Liability which it may have to such Indemnified Party hereunder.

(b)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification of an Indemnified Party pursuant to Section 7.2(a), the Indemnity Trust shall indemnify, defend and hold harmless the Indemnified Parties, from and against and reimburse each Indemnified Party for any and all Liabilities of whatever kind or nature regardless of their merit, demanded, asserted or claimed against such Indemnified Party directly or indirectly relating to, or arising from, claims against such Indemnified Party by reason of its participation in the transactions contemplated hereby,

23

001290
HCMLPHMIT00000696

including without limitation all reasonable costs associated with claims for damages to persons or property, and reasonable attorneys' and consultants' fees and expenses and court costs except to the extent caused by such Indemnified Party's fraud, willful misconduct, or gross negligence. Promptly after receipt by an Indemnified Party of notification of the commencement of any proceeding, such Indemnified Party will promptly notify the Indemnity Trust in writing of such matter; provided, however, that the failure to provide such prompt notice to the Indemnity Trust shall not relieve the Indemnity Trust of Liability which it may have to such Indemnified Party hereunder.

(c)     The provisions of this Section 7.2 shall survive the termination of this Agreement or the earlier of the resignation or removal of the Indemnity Trustee or the Indemnity Trust Administrator, as applicable.

7.3     Tax Indemnification.

(a)     To the extent that the Indemnity Trustee becomes liable for the payment of any taxes in respect of income derived from the investment of the Indemnity Trust Assets, the Indemnity Trustee shall satisfy such Liability to the extent possible from the Indemnity Trust Assets.

(b)     At any time prior to the dissolution of the Grantor, the Grantor shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(c)     At any time upon or following (i) the dissolution of Grantor or (ii) the Grantor's failure to satisfy a claim for indemnification pursuant to Section 7.3(b), the Indemnity Trust shall indemnify, defend and hold the Indemnity Trustee harmless from and against any tax, late payment, interest, penalty or other Liability that may be assessed against the Indemnity Trustee on or with respect to the Indemnity Trust Assets and the investment thereof unless such tax, late payment, interest, penalty or other expense was finally adjudicated to have been directly caused by the gross negligence or willful misconduct of the Indemnity Trustee.

(d)     The indemnification provided by this Section 7.3 is in addition to the indemnification provided in Section 7.2 and shall survive the resignation or removal of the Indemnity Trustee and the termination of this Agreement.

## ARTICLE VIII.
## TERMINATION

8.1     Term.

(a)     The Indemnity Trust shall be dissolved and its affairs shall be wound up in accordance with this Agreement and Delaware Statutory Trust Act upon the earlier of (i) the later of (x) the resolution by Final Order of all litigation, claims or proceedings in any forum of any kind which could give rise to an Indemnity Obligation and the payment in full of all

001291
HCMLPHMIT00000697

Indemnity Obligations related thereto and (y) the expiration of all applicable statutes of limitations and any applicable tolling of any such statutes of limitations (in either case of (x) or (y), as determined by agreement of (A) the Indemnity Trust Administrator (in his sole, absolute discretion) and (B) a majority of the remaining Advisory Representatives willing to act (in their respective sole absolute discretion)) for any claims that if brought against a Beneficiary would be or would have been subject to indemnification under Section 8.2 of the Claimant Trust Agreement, Section 8.2 of the Litigation Sub-Trust Agreement or Section 10 of the Reorganized Limited Partnership Agreement, as applicable, and (ii) the mutual agreement to dissolve the Indemnity Trust by (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act, and, if required, entry of an order by the Bankruptcy Court or another court of competent jurisdiction authorizing the termination of the Indemnity Trust.  Notwithstanding the foregoing, if the Indemnity Trust is to be dissolved pursuant to Section 8.1(a)(ii) hereof prior to the expiry of all Indemnification Obligations, (x) if the Grantor is still in existence, then the Grantor, at its expense, shall obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution; or (y) if the Grantor is no longer in existence, then the Indemnity Trust Administrator shall, using Indemnity Trust Assets, obtain insurance coverage acceptable to (A) the Indemnity Trust Administrator and (B) a majority of the remaining Advisory Representatives willing to act prior to such dissolution.  For the avoidance of doubt, neither the liquidation, dissolution nor termination and cancellation of the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, nor the legal existence of the Grantor or any other party will have any effect on the legal existence of the Indemnity Trust.

(b)     Upon the determination of the Indemnity Trust Administrator that the Claimant Trust has substantially completed its efforts to monetize and distribute its assets or such earlier date that the Indemnity Trust Administrator shall determine in his sole and absolute discretion, the Indemnity Trust Administrator and majority of the remaining Advisory Representatives willing to act shall work in good faith to replace the Indemnity Trust with a suitable third-party insurance policy providing then suitable protections to Beneficiaries, in each case, as determined in the sole, absolute discretion of (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act.

(c)     At any time prior to the dissolution of the Indemnity Trust as described in Section 8.1(d), if (i) the Indemnity Trust Administrator (in his sole and absolute discretion) and (ii) a majority of the remaining Advisory Representatives willing to act (in their  respective sole and absolute discretion) determine that the Indemnity Trust Assets are not reasonably necessary to satisfy current or potential Indemnification Obligations to all persons who are or might become Beneficiaries, the Indemnity Trust Administrator may transfer such excess Indemnity Trust Assets (A) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust for use by the Claimant Trust in accordance with the Claimant Trust Agreement, and (B) at any time upon or following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust; provided, however, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; provided, further, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make

25

001292

HCMLPHMIT00000698

them or any other person a beneficiary of the Indemnity Trust or this Agreement; and provided, further, that the Indemnity Trust Assets shall at no time be less than $32 million (valued according to their market value at the time of transfer into the Indemnity Trust Account) unless otherwise provided by Section 8.1(a) or (b) of this Agreement. Any such determination by the (i) the Indemnity Trust Administrator and (ii) a majority of the remaining Advisory Representatives willing to act is final and not subject to review, and in relation to any such determination and transfer, the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, the Indemnity Trustee, and the Delaware Trustee will be entitled to the protections of this Agreement, including but not limited to Article VII, Article VIII, and Article IX.

(d) Upon the dissolution of the Indemnity Trust and in connection with winding up the Indemnity Trust's affairs, any remaining Indemnity Trust Assets (as reduced by payments (actual and reserved) and provisions to pay all claims and obligations of the Indemnity Trust, payments to any Beneficiary or as used to purchase insurance for the benefit of the Beneficiaries to augment or replace the Indemnity Trust or as paid out in accordance with Section 9.12 hereof) will be transferred at the written direction of the Indemnity Trust Administrator (i) at any time prior to the dissolution of the Claimant Trust, to the Claimant Trust and (ii) at any time following the dissolution of the Claimant Trust, according to the same distribution methodology contemplated in Section 9.2 of the Claimant Trust Agreement in effect as of the effective date of the dissolution of the Claimant Trust provided, however, that in no event will any such transferee be entitled to the books, records and or privileges of the Indemnity Trust; provided, further, that for the avoidance of doubt, any person or entity's contractual right to receive or recover any such remaining Indemnity Trust Assets as set forth herein does not make them or any other person a beneficiary of the Indemnity Trust or this Agreement. The Indemnity Trust Administrator shall be solely responsible for the dissolution, liquidation and winding up of the affairs of the Indemnity Trust. Upon the dissolution of the Indemnity Trust and completion of the winding up of the Assets, Liabilities and affairs of the Indemnity Trust pursuant to the Delaware Statutory Trust Act, the Indemnity Trustee (acting only at the written direction of the Indemnity Trust Administrator) shall prepare, execute and file a certificate of cancellation with the State of Delaware to terminate the Indemnity Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date"). If the Delaware Trustee's signature is required for purposes of filing such certificate of cancellation, the Indemnity Trust Administrator shall provide the Delaware Trustee with written direction to execute such certificate of cancellation, and the Delaware Trustee shall be entitled to conclusively and exclusively rely upon such written direction without further inquiry.

8.2 Termination of Duties. Except as otherwise specifically provided herein, upon the Termination Date of the Indemnity Trust, the Indemnity Trustee, the Indemnity Trust Administrator and the Delaware Trustee shall have no further duties or obligations hereunder.

8.3 No Survival. The rights of Beneficiaries hereunder shall not survive the Termination Date.

26

001293
HCMLPHMIT00000699

## ARTICLE IX. MISCELLANEOUS

9.1     <u>Trust Irrevocable</u>.  Except as set forth in this Agreement, establishment of the Indemnity Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Beneficiaries.

9.2     <u>Beneficiaries have No Legal Title to the Indemnity Trust Assets</u>.  No Beneficiary shall have legal title to any part of the Indemnity Trust Assets.

9.3     <u>Agreement for Benefit of Parties Only</u>.  Nothing herein, whether expressed or implied, shall be construed to give any person other than the Parties, the Beneficiaries and the Indemnified Parties any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Indemnity Trust Assets shall be held for the sole and exclusive benefit of the Beneficiaries.  The Beneficiaries and the Indemnified Parties will have the right to enforce the terms of this Agreement in case the Indemnity Trust Administrator fails to perform its obligations hereunder as determined by the Bankruptcy Court or another court of competent jurisdiction.

9.4     <u>Limited Recourse</u>.  Notwithstanding anything herein to the contrary, all obligations of the Indemnity Trust under this Agreement shall be limited recourse obligations of the Indemnity Trust payable solely from the Indemnity Trust Assets.  All obligations of and any claims against the Indemnity Trust hereunder shall be extinguished and not thereafter revive in the event that, at any time, all of the Indemnity Trust Assets are exhausted (including, for the avoidance of doubt, after giving effect to funds subsequently received as payments on the Indemnification Funding Note or otherwise) or distributed pursuant to <u>Section 8.1(d)</u>.  None of the Beneficiaries nor any other person or entity entitled to payments hereunder (including, without limitation pursuant to <u>Sections 7.2, 7.3 and 8.1(c) and (d) hereof</u>) will have recourse to the Indemnity Trust Administrator, the Advisory Representatives, the Oversight Board, Indemnity Trustee or the Delaware Trustee or any of their respective affiliates or their respective officers, directors, employees, representatives or their respective assets.

9.5     <u>Notices</u>.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

    (a)     If to the Grantor:

        Grantor
        c/o Highland Capital Management, L.P.
        100 Crescent Court, Suite 1850
        Dallas, Texas 75201

    With a copy to:

        Pachulski Stang Ziehl & Jones LLP
        10100 Santa Monica Blvd, 13th Floor
        Los Angeles, CA 90067
        Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)

27

HCMLPHMIT00000700

Ira Kharasch (ikharasch@pszjlaw.com)
Gregory Demo (gdemo@pszjlaw.com)

(b)    If to the Indemnity Trust Administrator:

Indemnity Trust Administrator
c/o Highland Capital Management, L.P.
100 Crescent Court, Suite 1850
Dallas, Texas 75201
Attention:  James P. Seery, Jr.

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
         Ira Kharasch (ikharasch@pszjlaw.com)
         Gregory Demo (gdemo@pszjlaw.com)

(c)    If to the Indemnity Trustee:

Indemnity Trustee
Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

(d)    If to the Delaware Trustee:

Wilmington Trust, National Association
1100 North Market Street
Wilmington, DE 19890
Attn:  Corporate Trust Administration/Neumann Marlett III
Email:  nmarlett@wilmingtontrust.com
Phone:  (302) 636-6728
Fax:  (302) 636-4145

Notice mailed shall be effective on the date mailed or sent.  Any Party may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this <u>Section 9.4</u> to the other Parties of such change.

9.6    <u>Amendments</u>.  Any change or modification to this Agreement will be made by written amendment to this Agreement and signed by the Parties hereto; <u>provided</u>, <u>however</u>, that

001295
HCMLPHMIT00000701

any amendment to this Agreement that is materially detrimental to a Beneficiary will not be effective unless consented to in writing by such Beneficiary.

9.7    Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

9.8    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  This Agreement and the exhibits hereto set forth the entire agreement and understanding of the parties related to this transaction and supersedes all prior agreements and understandings, oral or written.

9.9    Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

9.10   Governing Law; Waiver of Jury Trial.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.  Each Party hereto irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.  Beneficiaries are deemed to have waived any right to a trial by jury.

9.11   Consent to Jurisdiction.  Any action brought by a Beneficiary must be brought in the Bankruptcy Court.  Each of the Parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising under or by reason of this Agreement, or any act or omission of the Indemnity Trustee or the Indemnity Trust Administrator. If the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the State of Delaware.

9.12   Okada Settlement.

(a)    On January 21, 2025 and pursuant to the Okada Settlement Agreement, Okada has  transferred, or has cause to be transferred, to the Indemnity Trust, Acis 7 Proceeds, which were transferred and used in accordance with the Okada Settlement Agreement and this Section 9.12.  On January 22, 2025 and in accordance with the Okada Settlement Agreement, the Indemnity Trust Administrator provide written notice to Okada of such receipt by the Indemnity Trust, including the amount of gross proceeds received.  Further, within five (5) Business Days of receipt of any funds on account of Okada's Special Limited Partnership Interest ("SLP") in PetroCap Incentive Partners II, LP (the "PetroCap Proceeds"), Okada will provide written notice to the Indemnity Trust Administrator of such receipt and the amount of gross proceeds received, whereupon a written request from the Indemnity Trust Administrator, Okada

001296

HCMLPHMIT00000702

will provide information reasonably related to SLP that Okada is permitted to provide consistent with his confidentiality or other obligations, for the limited purpose of the Indemnity Trust Administrator assessing the value of and funds received on account of the SLP. If Okada determines that he is unable to provide any such information to the Indemnity Trust Administrator based on confidentiality or other obligations, he will cooperate with the Indemnity Trust Administrator to address those concerns to enable such information to be provided.

(b)     On or after January 1, 2025, the Indemnity Trust Administrator may in writing demand that Okada provide to the Indemnity Trust the lesser of (i) $1,000,000 and (ii) 50% of the gross amount of PetroCap Proceeds Okada actually received as of the date of such demand (the "PetroCap Proceeds Demand"); provided that the PetroCap Proceeds Demand include a written representation by the Indemnity Trust Administrator that all Indemnity Trust Assets have been or will imminently be exhausted and that such demand be made no more than once (assuming the timely and full satisfaction of such demand) by the Indemnity Trust Administrator. If the PetroCap Proceeds Demand is fully satisfied by Okada in a timely manner, Okada's contingent funding obligation under the Okada Settlement Agreement shall be extinguished and no further PetroCap Proceeds Demand may be made by the Indemnity Trust Administrator.

(c)     The Acis 7 Proceeds and any PetroCap Proceeds shall be maintained as part of the Indemnity Trust Account, but accounted for and tracked separately from other Indemnity Trust Assets. The Acis 7 Proceeds and any PetroCap Proceeds transferred to the Indemnity Trust Account may be used in the same authorized manner as other Indemnity Trust Assets, but used only as "last out" funds after all other cash and other Indemnity Trust Assets are expended or otherwise disbursed in accordance with the terms of this Agreement. Further, upon written request from Okada to the Indemnity Trust Administrator, the Indemnity Trust Administrator or the Trust Administrator, as applicable, shall provide information as to the remaining amounts of Acis 7 Proceeds and/or PetroCap Proceeds held by the Indemnity Trust.

(d)     On the earlier of (x) the winding-up of the Indemnity Trust and (y) any disbursement of Indemnity Trust Assets to the Claimant Trust (or any other disbursement in accordance with Article VIII), any unused portion of the Acis 7 Proceeds or the PetroCap Proceeds, plus any interest earned on those proceeds, shall be paid to Okada prior to any distributions of other Indemnity Trust Assets in accordance with Section 8.1(d); provided, that Okada shall provide to the Indemnity Trust and the Indemnity Trust Administrator a bring down of the release provided in paragraph 10 of the Okada Settlement Agreement as a condition to the release of such Indemnity Trust Assets to Okada.

(e)     The Parties acknowledge that Okada retains a reversionary interest in the Acis 7 Proceeds and the PetroCap Proceeds (to the extent they actually exist and are deposited into the Indemnity Trust Account), and to the extent they are not expended or disbursed pursuant to the terms of this Agreement, any unused portion of the Acis 7 Proceeds and/or PetroCap Proceeds shall be returned to Okada in accordance with Section 9(d). For the avoidance of doubt, Okada's right to recover any unused portion of Acis 7 Proceeds and/or PetroCap Proceeds as set forth herein does not make Okada or any of the Okada Parties a beneficiary of the Indemnity Trust or this Agreement.

001297

HCMLPHMIT00000703

[Remainder of Page Intentionally Blank]

001298
HCMLPHMIT00000704

IN WITNESS HEREOF, the Parties hereto have caused this Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trust, as Grantor

By: _____
    James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

James P. Seery, Jr., as Indemnity Trust Administrator

By: _____
    James P. Seery, Jr., not individually but solely in his capacity as the Indemnity Trust Administrator

Wilmington Trust, National Association, as Indemnity Trustee

By: _____

Wilmington Trust, National Association, as Delaware Trustee

By: _____

001299

HCMLPHMIT00000705

<u>**EXHIBIT A**</u>

**Form of Indemnification Funding Note**

<u>**UNSECURED PROMISSORY NOTE**</u>

August [●], 2021

FOR VALUE RECEIVED, the undersigned, Highland Capital Management L.P., Claimant Trust, and Litigation Sub-Trust, (collectively, "<u>Payors</u>") jointly and severally hereby promise to pay to the Indemnity Trust (the "<u>Payee</u>") the Principal Amount (defined below), as provided in this promissory note (this "<u>Indemnification Funding Note</u>").

<u>**Principal Amount**</u>

At all times, the amount owed under this Indemnification Funding Note (the "<u>Principal Amount</u>") shall be equal to TWENTY FIVE MILLION DOLLARS ($25,000,000) **less** the value of any Assets held by the Indemnity Trust. The Principal Amount shall be determined and documented by the Indemnity Trust Administrator and paid in accordance with the payment terms herein. Capitalized terms utilized herein, but not defined have the meanings ascribed to them in the Indemnity Trust Agreement, effective as of August 16, 2021 (the "<u>Agreement</u>").

<u>**Payment**</u>

Payment of the Principal Amount shall be made, in full or in part, on the earlier of (a) demand for payment from the Indemnity Trust Administrator or (b) the date at which the combined Net Asset Value of Highland Capital Management L.P., the Claimant Trust, and the Litigation Sub-Trust is less than 200% of the Principal Amount. Subject to the foregoing, the Claimant Trustee will have sole and absolute discretion to determine the timing and amount of payments of the Principal Amount consistent with his view of liquidity needs of the Claimant Trust and related entities and the requirements of any financing agreement binding on the Claimant Trust. Upon the Claimant Trustee's determination that a payment of the Principal Amount in whole or in part should be made, the amount of the payment shall be due within five (5) days of such a determination. *Notwithstanding anything in the foregoing*, no payment shall be required to be made at any time if such payment would cause Highland Capital Management L.P., the Claimant Trust, or the Litigation Sub-Trust to be in default under or in violation of that certain *Financing Agreement*, dated as of August 11, 2021, by and among, Highland Capital Management, L.P. and Trussway Industries, LLC, as borrowers, each of the entities listed as guarantors thereon, the lenders from time to time party thereto, and Blue Torch Finance LLC (the "<u>Exit Financing Agreement</u>").

For the avoidance of doubt, the foregoing payments of Principal Amount will be senior to any distribution to beneficiaries under the Claimant Trust. In the event that the liquid assets of the Claimant Trust, the Litigation Sub-Trust, and Highland Capital Management L.P. are insufficient to satisfy the foregoing payments, the Claimant Trustee must take all reasonable action, subject in all respects to the terms of the Exit Financing Agreement, to satisfy such obligations under the Indemnification Funding Note, including accessing any available credit lines or third party

001300

HCMLPHMIT00000706

leverage, and no current payments to Claimant Trust beneficiaries will be made until all current amounts of Principal Amount due have been made.

### Interest

The Indemnification Funding Note shall not bear interest, other than that which must be imputed under applicable law.

### Governing Law

This Indemnification Funding Note shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance, but without reference to its conflict of law provisions.

Executed as of August [●], 2021

> *Payors*:
>
> **HIGHLAND CLAIMANT TRUST**
>
> By: _____
> James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee
>
> **HIGHLAND CAPITAL MANAGEMENT, L.P.**
>
> By: _____
> James P. Seery, Jr., not individually but solely in his capacity as Chief Executive Officer
>
> **HIGHLAND LITIGATION TRUST**
>
> By: _____
> Marc Kirschner, not individually but solely in his capacity as the Litigation Trustee

A-2

001301

HCMLPHMIT00000707

## EXHIBIT B

## Form of Beneficiary Withdrawal Request

Indemnity Trust Administrator
[insert contact info for Indemnity Trust Administrator]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]

[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of _____, 2021 (as amended from time to time, the "Indemnity Trust Agreement"), by and among the Claimant Trust, as grantor (the "Grantor"), the Indemnity Trust Administrator, Wilmington Trust, National Association ("WTNA"), as indemnity trustee (the "Indemnity Trustee"), and WTNA, as the Delaware Trustee. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

[In accordance with Section 2.4(c) of the Indemnity Trust Agreement, the undersigned hereby certifies that a claim for indemnification was made under [Section 8.2 of the Claimant Trust Agreement][Section 8.2 of the Litigation Sub-Trust Agreement][Section 10 of the Reorganized Limited Partnership Agreement], but that [he][she][entity name] did not receive full payment within fourteen (14) days of submitting such claim for indemnification.  A copy of such claim and all underlying documentation is attached hereto as Schedule A.][1]

The undersigned hereby requests the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account.  A breakdown of the amounts payable by the Claimant Trust, the Litigation Sub-Trust or the Reorganized Debtor, as applicable, to the undersigned with respect to the Indemnity Obligations is attached hereto as Schedule B.

Wire instructions for the undersigned are attached hereto as Schedule C.

By executing and delivering this Beneficiary Withdrawal Request, the undersigned acknowledges and agrees that any claim for indemnification made hereby is made pursuant to, and is subject in all respects to, the express terms of the [Claimant Trust Agreement] [Litigation Sub-Trust Agreement] [Reorganized Limited Partnership Agreement].

The undersigned irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this request for indemnification and consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or Liability arising hereunder.  If the Bankruptcy Court either declines to exercise

---

[1] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

001302

HCMLPHMIT00000708

jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

[_____], as Beneficiary

By:_____
    Name:
    Title:

B-2

001303

HCMLPHMIT00000709

Schedule A[2]

SUBJECT TO CONFIDENTIALITY AGREEMENT

---

[2] To be omitted from any Beneficiary Withdrawal Requests made pursuant to Section 2.4(d).

001304

HCMLPHMIT00000710

Schedule B

SUBJECT TO CONFIDENTIALITY AGREEMENT

001305
HCMLPHMIT00000711

## EXHIBIT C

## Form of Withdrawal Notice

Indemnity Trustee
[insert contact info for Indemnity Trustee]

with a copy to:

[_____]
[insert contact info for the applicable Beneficiary]


[DATE]

Reference is made to the Indemnity Trust Agreement, effective as of August 16, 2021 (as amended from time to time, the "Indemnity Trust Agreement"), by and among the Claimant Trust, as grantor, the Indemnity Trust Administrator, Wilmington Trust, National Association ("WTNA"), as indemnity trustee (the "Indemnity Trustee"), and WTNA, as the Delaware Trustee, and (ii) the Beneficiary Withdrawal Request from [insert Beneficiary name] dated [insert date]. Capitalized terms used herein shall have the meanings assigned thereto in the Indemnity Trust Agreement.

In accordance with Section 2.4(e) of the Indemnity Trust Agreement, the Indemnity Trust Administrator hereby directs the Indemnity Trustee to pay an amount equal to $[_____] out of the funds on deposit in the Indemnity Trust Account by wire transfer to the following account:

[Insert wire instructions for the applicable Beneficiary]


Indemnity Trust Administrator


By: _____
        James P. Seery, Jr., not individually but
solely in his capacity as the Indemnity Trust
Administrator

C-1

001306

HCMLPHMIT00000712

REVISED DRAFT

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**

**April 15, 2025**

DRAFT Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
    - The HMIT allowed Class 10 interest is not transferable
    - HMIT releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
    - LT releases HMIT from all other claims in the LT litigation and otherwise
    - LT transfers to holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
        - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
        - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
    - Complete cessation and withdrawal of any other litigation among the parties
    - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco settle all claims underlying the current Fifth Circuit appeal and all other claims with

001307

**REVISED DRAFT**

prejudice for a cash payment of $[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for $[3mm] cash, to be paid within [10] business days of execution of the settlement; DAF releases HCLOF from any claims related to Acis 6 distributions
- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o Complete cessation and withdrawal of any other litigation among the parties
- o Settlement will be filed with the Bankruptcy Court and "so ordered"

## Distributions

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[10]mm cash directly to holders of allowed Class 10 interests
    - ▪ On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[10]mm reserve for the Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to Class 10 interest holders or reversal/remand of the settlement
    - ▪ Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - • The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000714

**REVISED DRAFT**

- **Subsequent Distribution(s)**  -  Following the Initial Interim Cash Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for potentially the Disputed Claims Reserve (if the pending claim is not fully resolved) and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with  any excess amounts contributed/distributed to the Indemnity Trust
    - On April 1, 2028, if no threats, demands, or litigations have been brought against the Indemnity Trust or its beneficiaries:
        - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
        - The Indemnity Trust will distribute $[5]mm cash directly to holders of allowed Class 10 interests
        - Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will either (a) sell the currently $[17.6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated (and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
            - For purposes of tracking progress toward the ~$337mm Class 10 interest:
                - if the Dugaboy Note is sold, the distribution will be valued at the amount of cash distributed;
                - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator
            - Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
                - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance or the

001309

HCMLPHMIT00000715

**REVISED DRAFT**

       litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests

    o   As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim). Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to holders of allowed Class 10 interests

- **"Final Distribution"** - After April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to holders of allowed Class 10 interests, up to allowed amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust
  - o The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - o **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court. During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - ▪ The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement
  - o **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
    - ▪ HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.
    - ▪ Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.

001310

HCMLPHMIT00000716

**REVISED DRAFT**

- The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
    - HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
    - Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP
- **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received
- **Information rights to HMIT –** After Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
    - HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- **Approval rights –** None, other than as specified elsewhere
- **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement
- **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion

001311

HCMLPHMIT00000717

REVISED DRAFT

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**

**April ~~815~~, 2025**

~~DRAFT~~ Potential Settlement Structure with DAF and HMIT

**HMIT**

- **Settlement of remanded motion to sue** – HCMLP, the Claimant Trust, and HMIT settle existing motion to sue and all other claims with prejudice for a cash payment of [$500k]
- **Allowance of claim** - HCMLP to allow HMIT Class 10 interest in the amount of ~$337mm (calculated as ~$395mm Petition Date capital account, less ~$58mm P&I outstanding on HMIT note as of Petition Date), subject to:
    - The HMIT allowed Class 10 interest is not transferable
    - HMIT ~~release~~releases all claims and accepts the "Litigation Protections" – see separate document containing the releases and other required provisions – which eliminate claims and limit the Class 10 allowed interest
    - LT releases HMIT from all other claims in the LT litigation and otherwise
    - LT transfers to ~~HMIT~~holders of allowed Class 10 interests all remaining LT litigation (after HMIT and DAF/CLO Holdco releases) "as-is, where-is" along with all documents produced in the LT case to date
        - Such causes of action are limited to the currently stayed litigation and other causes of action that may exist related to former employees Ellington and Leventon
        - If for any reason the transfer of the LT litigation is nullified, the settlement will not be affected
    - Complete cessation and withdrawal of any other litigation among the parties
    - Class 10 remains senior to Class 11 as required by the Plan
- **Court Approval –** Settlement and allowance of Class 10 Claim subject to approval of the Bankruptcy Court

**DAF**

- **Settlement of DAF Claims** – HCMLP, the Claimant Trust, and DAF/CLO Holdco ~~will~~ settle ~~the~~all claims underlying the current Fifth Circuit appeal and all other claims

001312

HCMLPHMIT00000718

REVISED DRAFT

with prejudice for a cash payment of [$250k];$[2mm] within [10] business days of execution of the settlement; the Fifth Circuit appeal will be dismissed with prejudice within [10] business days of execution of the settlement

- o HCMLP will purchase DAF's right to distribution from HCLOF related to Acis 6, as is - where is, without representation except for unencumbered ownership, for [$2.5mm$[3mm] cash, to be paid within [10] business days of approvalexecution of the settlement by the Bankruptcy Court; DAF releases HCLOF from any claims related to Acis 6 distributions
- o DAF/CLO Holdco release all claims and accept the "Litigation Protections" – see separate document containing the releases and other required provisions
- o LT releases DAF/CLO Holdco from all other claims in the LT litigation and otherwise
- o Complete cessation and withdrawal of any other litigation among the parties
- o Settlement will be filed with the Bankruptcy Court and "so ordered"

## Distributions

- **Initial Interim Cash Distributions** – Within [91] days of the receipt of a final/non-appealable order not subject to certiorari:
  - o The Indemnity Trust will distribute $[10]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement
  - o [Subject to Class 9 Approval], the Indemnity Trust will distribute $[1110]mm cash directly to HMIT on accountholders of its allowed Class 10 interestinterests
    - On approval of the settlement by the Bankruptcy Court, the Indemnity Trust will set up a separate $[1110]mm reserve for the HMIT Initial Interim Cash Distribution which reserve will be held in UST on the same terms as other Indemnity Trust holdings pending distribution to HMITClass 10 interest holders or reversal/remand of the settlement
    - Any payments on the Dugaboy Note from the date of Bankruptcy Court approval of the settlement to the date of the Initial Interim Cash Distributions will be held by the Indemnity Trust in a separate account and also be paid to holders of allowed Class 10 interests
      - The actual dollar amount of any such P+I payments paid will reduce the Class 10 interests outstanding

001313

HCMLPHMIT00000719

REVISED DRAFT

- **Subsequent Distribution(s)** - Following the Initial Interim ~~Cash~~ Distributions, most, if not all remaining assets will be held by the Indemnity Trust, except for ~~potentially~~ the Disputed Claims Reserve (if the pending claim is not fully resolved) ~~and cash at the Claimant Trust and HCMLP (indirectly owned by the Indemnity Trust) to be used in the wind-down of those entities with  any excess amounts contributed/distributed to the Indemnity Trust~~
  - On ~~January 14~~April 1, 2028~~],~~, if no threats, demands, or litigations have been brought against ~~the Indemnity Trust or its~~ beneficiaries ~~of the Indemnity Trust~~:
    - The Indemnity Trust will distribute ~$[11]mm cash directly to Class 9 Claimant Trust Beneficiaries in accordance with the waterfall and the Indemnity Trust Agreement, satisfying the remainder of the Class 9 interests outstanding
    - The Indemnity Trust will distribute $[5]mm cash directly to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest~~interests
    - ~~The indemnity~~Note Cash or In-Kind Distribution – At the election of HMIT, the Indemnity Trust will ~~assign directly to HMIT~~either (a) sell the currently $[17.~~5~~6]mm face value (P+I) promissory note receivable from Dugaboy Investment Trust to HCMLP that has been irrevocably participated ~~to the Indemnity Trust~~(and may be assigned if it defaults) to the Indemnity Trust (the "Dugaboy Note") and distribute the net proceeds (plus all P+I payments on the Dugaboy Note from the Interim Cash Distribution Date to April 1, 2028) to holders of allowed Class 10 interests or (b) assign the Dugaboy Note directly to holders of allowed Class 10 interests
      - ~~Note will be valued at $[4]mm for~~For purposes of tracking progress toward the ~$337mm Class 10 interest:
      - ~~Any payments on~~if the Dugaboy Note ~~from~~is sold, the ~~date of approval of~~distribution will be valued at the ~~settlement to the date of assignment of the Dugaboy note will also be paid to HMIT on account of its Class 10 interest~~
        - ~~The actual dollar~~amount of ~~any such P+I payments paid to HMIT will reduce the HMIT Class 10 interest.~~ cash distributed;
        - if the Dugaboy Note is distributed in kind, the distribution will be valued at fair market value as determined by the Indemnity Trust Administrator

001314

HCMLPHMIT00000720

REVISED DRAFT

- Assumes the Dugaboy Note continues to perform; if there is a default prior to April 1, 2028, the Indemnity Trust will accelerate the Dugaboy Note and pursue full collection plus cost of collection
  - If distribution of the Dugaboy Note is to be effected on April 1, 2028 and collection litigation has been commenced, at its election, holders of allowed Class 10 interests can receive, the collected balance of the litigation or elect to have the Indemnity Trust continue the litigation and subsequently pay the proceeds to holders of allowed Class 10 interests
- As it pertains to the Disputed Claims Reserve, Highland will object to the Daugherty tax POC (final remaining pending claim).  Following a final non-appealable order resolving the claim, any remaining funds will be distributed to Class 9 or, if Class 9 has been paid in full, to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest.~~interests

- **"Final Distribution"** - After ~~January 31~~April 1, 2029, if no threats, demands, or litigations have been brought against beneficiaries of the Indemnity Trust and all statutes of limitation (SOLs) and any potentially applicable tolling thereof have expired, at the Indemnity Trust Administrator's sole discretion, any excess remaining funds in the Indemnity Trust shall be paid out in accordance with the Plan and the Indemnity Trust Agreement (i.e. to ~~HMIT on account~~holders of ~~its~~allowed Class 10 ~~interest~~interests, up to ~~its~~ allowed ~~amount~~amounts) in conjunction with the dissolution, wind down and cancellation of the Indemnity Trust.
  - The Indemnity Trust Administrator will consult with [Mark Patrick] regarding potentially applicable SOLs and tolling

- **Other**
  - **Extension of Claimant Trust –** A one-year extension for the Claimant Trust will be sought in the bankruptcy court.  During the 1-year extension period, the Claimant Trust will be placed into dissolution and begin its winding up.
    - The Indemnity Trust will covenant not to transfer any funds to the Claimant Trust following the date of final non-appealable approval of the HMIT settlement

001315

HCMLPHMIT00000721

- o **HCMLP wind down –** the remaining unliquidated assets of the estate, including HCMLP, itself, will be retained within the Indemnity Trust and will be liquidated.
  - ▪ HCMLP personnel will complete the liquidation, dissolution, cancellation, tax compliance, and any other winding up activities for the remaining entities under its purview, including HCMLP.  ~~Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.~~
  - ▪ Any excess amounts remaining at cancellation of HCMLP will be distributed to the Indemnity Trust.
  - ▪ The Indemnity Trust will covenant not to transfer any funds to HCMLP following the date of final non-appealable approval of the HMIT settlement
    - • HCMLP will have a funding agreement with the Claimant Trust to assure that the Claimant Trust has sufficient funds to complete its wind-down
    - • Any excess funds in the Claimant Trust at its cancellation will be contributed to the Indemnity Trust; excess funds at HMLP will be distributed to the Indemnity Trust
- o **HCMLP and its general partner –** While HCMLP will be placed into dissolution, the entity will continue to survive during its winding up period, during which time it may continue to defend inbound litigation, prosecute outbound litigation, maintain its books and records, and monetize its remaining assets.  HCMLP's general partner will be dissolved, wound-down and cancelled along with HCMLP~~.~~
- o **Claimant Trust Oversight Board –** Subject to the Plan and Claimant Trust agreement, it is anticipated that the members of the Oversight Board will continue in their existing roles until the final/non-appealable order approving the HMIT settlement is received~~.~~
- o **Information rights to HMIT –** ~~None prior to vesting; After vesting~~Bankruptcy Court approval of the HMIT settlement, per the Claimant Trust Agreement, except that:
  - ▪ HCMLP will review forecasted expenses with [Mark Patrick] at his request, but not more often than quarterly, and will work in good faith to reduce expenses where possible
- o **Approval rights –** None, other than as specified elsewhere
- o **Duties to HMIT –** None before or after vesting/Bankruptcy Court approval of the HMIT settlement

001316

HCMLPHMIT00000722

REVISED DRAFT

- o **Compensation –** CEO and employee compensation remains governed by existing agreements with the oversight of the Claimant Trust Oversight Board; following the vesting of HMIT's interests, no changes will be permitted to those agreements without HMIT written consent; CEO maintains ability to maintain or reduce headcount in his absolute discretion.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001317

HCMLPHMIT00000723

PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON

PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION

PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**

**HIGHLAND CAPITAL**
M A N A G E M E N T

001318

HCMLPHMIT00000724



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH MEDIATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Total Illustrative Sources and Uses (4/1/26 - 4/1/29) | | |
|---|---|---|
| **Sources** | | **Uses** |

| **Sources** | | | **Uses** | |
|---|---|---|---|---|
| Beginning Cash | $ 67,850,000 | | Cash to repay 9s in Full | $ 21,029,073 |
| Interest Received on Cash (4% annual) | $ 6,970,471 | | Cash distributions to 10s [2] | $ 60,439,653 |
| Dugaboy Note P&I Received | $ 3,991,523 | | | |
| Disputed Claim Reserve [1] | $ 2,656,732 | | | |
| Total Cash Sources | $ 81,468,726 | | Total Cash Uses | $ 81,468,726 |
| | | | | |
| Dugaboy Note (P& Accrued I) 4/1/28 [3] | $ 15,137,110 | | Dugaboy Note to 10s [3] | $ 15,137,110 |
| Total Sources | $ 96,605,837 | | Total Uses | $ 96,605,837 |
| | | | | |
| | | | Total to 9s | $ 21,029,073 |
| | | | Total to 10s (incl Dugaboy Note) [3][4] | $ 75,576,763 |

Notes

[1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[2] Assumes no indemnification costs are expended throughout the period.

[3] Assumes Dugaboy Note FMV at face with no discounting.

[4] Excludes any net value ultimately obtained from the Kirschner Litigation

*DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT*

001319
HCMLPHMIT00000725



## HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL  ATTORNEY WORK PRODUCT PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Interim Cash Distribution Sources and Uses (4/1/26) | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 67,850,000 | | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | | Total Cash Uses | $ 73,222,342 |

| Subsequent Distribution(s) Sources and Uses (4/1/28)[1] | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 49,210,718 | | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | | Total Cash Uses | $ 55,862,943 |
| | | | | |
| Dugaboy Note (P&I Accrued )) 4/1/28 | $ 15,137,110 | | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | | Total Uses | $ 71,000,054 |

| Final Distribution (4/1/29)[1][2] | | | | |
|---|---|---|---|---|
| **Sources** | | | **Uses** | |
| Beginning Cash | $ 39,853,972 | | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | | |
| Total Cash Sources | $ 41,448,130 | | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

001320
HCMLPHMIT00000726

DRAFT – SUBJECT TO CONFIDENTIALITY AGREEMENT



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.  CONFIDENTIAL WORK PRODUCT PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| | Start Date | Assumed Final Order | | Subsequent Distribution(s) [1] | Final Distribution [1][2] | Total |
|---|---|---|---|---|---|---|
| | | Year 1 | Year 2 | Year 3 | Year 4 | |
| Period Ending | 9/30/2025 | 4/1/2026 | 4/1/2027 | 4/1/2028 | 4/1/2029 | |
| Indemnity Trust Cash Balance [3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I) [4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | $ - | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| Class 9 Payment of Disputed Claim Reserve [5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance [6] | $ 21,009,022 | $ 8,352,290 | $ 8,358,972 | $ - | $ - | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note [7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

**Notes**

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001321
HCMLPHMIT00000727

**EXHIBIT 47**

**PRIVILEGED AND CONFIDENTIAL ATTORNEY CLIENT COMMUNICATON**

**PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH EXISTING LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION**

**PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA**



# ILLUSTRATIVE HIGHLAND INDEMNITY TRUST PAYOUT SCHEDULE

EXPERIENCED. DISCIPLINED. **BOLD.**

**HIGHLAND CAPITAL**
M A N A G E M E N T

001323

HCMLPHMIT00000724



## HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL. THIS MATERIAL WAS PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

| Total Illustrative Sources and Uses (4/1/26 - 4/1/29) | | | |
|---|---|---|---|
| **Sources** | | **Uses** | |
| Beginning Cash | $  67,850,000 | Cash to repay 9s in Full | $  21,029,073 |
| Interest Received on Cash (4% annual) | $    6,970,471 | Cash distributions to 10s [2] | $  60,439,653 |
| Dugaboy Note P&I Received | $    3,991,523 | | |
| Disputed Claim Reserve [1] | $    2,656,732 | | |
| Total Cash Sources | $  81,468,726 | Total Cash Uses | $  81,468,726 |
| | | | |
| Dugaboy Note (P& Accrued I)  4/1/28 [3] | $  15,137,110 | Dugaboy Note to 10s [3] | $  15,137,110 |
| Total Sources | $  96,605,837 | Total Uses | $  96,605,837 |
| | | | |
| | | Total to 9s | $  21,029,073 |
| | | Total to 10s (incl Dugaboy Note) [3] [4] | $  75,576,763 |

Notes
 [1] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be
   distributed to Class 9, or if Class 9 has been paid in full, Class 10.
 [2] Assumes no indemnification costs are expended throughout the period.
 [3] Assumes Dugaboy Note FMV at face with no discounting.
 [4] Excludes any net value ultimately obtained from the Kirschner Litigation

DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT

001324
HCMLPHMIT00000725



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATIONPROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

### Interim Cash Distribution Sources and Uses (4/1/26)

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 67,850,000 | Distribution to 9s - IT | $ 10,000,000 |
| Interest Received on Cash | $ 1,360,718 | Distribution to 9s - DCR | $ 2,656,732 |
| Dugaboy Note P&I Received | $ 1,354,892 | Distribution to 10s - IT | $ 10,000,000 |
| Disputed Claim Reserve | $ 2,656,732 | Distribution to 10s - Dugaboy Note P&I | $ 1,354,892 |
| | | Remaining Indemnity Trust Cash | $ 49,210,718 |
| Total Cash Sources | $ 73,222,342 | Total Cash Uses | $ 73,222,342 |

### Subsequent Distribution(s) Sources and Uses (4/1/28) [1]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 49,210,718 | Distribution to 9s - IT | $ 8,372,341 |
| Interest Received on Cash | $ 4,015,595 | Distribution to 10s - IT | $ 5,000,000 |
| Dugaboy Note P&I Received | $ 2,636,631 | Distribution to 10s - Dugaboy Note P&I | $ 2,636,631 |
| | | Remaining Indemnity Trust Cash | $ 39,853,972 |
| Total Cash Sources | $ 55,862,943 | Total Cash Uses | $ 55,862,943 |
| | | | |
| Dugaboy Note (P&I Accrued )) 4/1/28 | $ 15,137,110 | Dugaboy Note to 10s | $ 15,137,110 |
| Total Sources | $ 71,000,054 | Total Uses | $ 71,000,054 |

### Final Distribution (4/1/29) [1] [2]

| Sources | | Uses | |
|---|---|---|---|
| Beginning Cash | $ 39,853,972 | Distribution to 10s | $ 41,448,130 |
| Interest Received on Cash | $ 1,594,159 | | |
| Total Cash Sources | $ 41,448,130 | Total Cash Uses | $ 41,448,130 |

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicable tolling) expired.

001325
HCMLPHMIT00000726

DRAFT – SUBJECT TO CONFIDENTIALITY AGREEMENT



# HIGHLAND INDEMNITY TRUST

PRIVILEGED AND CONFIDENTIAL.  ATTORNEY CLIENT PRIVILEGED.  PREPARED AT THE DIRECTION OF COUNSEL IN CONNECTION WITH LITIGATION AND IN ANTICIPATION OF FUTURE LITIGATION.  PROTECTED BY FRE 408 AND SIMILAR STATE LAW PROTECTIONS.  PROVIDED PURSUANT TO NDA

**Illustrative Indemnity Trust Payout - Draft**
**4/15/2025**

| Period Ending | Start Date 9/30/2025 | Assumed Final Order Year 1 4/1/2026 | Year 2 4/1/2027 | Subsequent Distribution(s) [1] Year 3 4/1/2028 | Final Distribution [1][2] Year 4 4/1/2029 | Total |
|---|---|---|---|---|---|---|
| Indemnity Trust Cash Balance [3] | $ 67,850,000 | $ 49,210,718 | $ 51,179,147 | $ 39,853,972 | $ - | |
| Dugaboy Note Balance (P & and Accrued I) [4] | $ 17,806,565 | $ 16,729,382 | $ 15,932,744 | $ - | $ - | |
| TOTAL INDEMNITY TRUST | $ 85,656,565 | $ 65,940,100 | $ 67,111,891 | $ 39,853,972 | | |
| | | | | | | |
| Disputed Claim Reserve | $ 2,656,732 | $ - | $ - | $ - | $ - | |
| | | | | | | |
| Class 9 Payment of Disputed Claim Reserve [5] | | $ (2,656,732) | $ - | $ - | $ - | $ (2,656,732) |
| Class 9 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (8,372,341) | $ - | $ (18,372,341) |
| Class 9 Total Payments | | $ (12,656,732) | $ - | $ (8,372,341) | $ - | $ (21,029,073) |
| Class 9 Balance [6] | $ 21,009,022 | $ 8,352,290 | $ 8,358,972 | $ - | $ - | |
| | | | | | | |
| Class 10 Payments Indemnity Trust | | $ (10,000,000) | $ - | $ (5,000,000) | $ (41,448,130) | $ (56,448,130) |
| Class 10 Payments Dugaboy Note [7] | | $ (1,354,892) | $ - | $ (17,773,741) | $ - | $ (19,128,633) |
| Class 10 Total Payments | | $ (11,354,892) | $ - | $ (22,773,741) | $ (41,448,130) | $ (75,576,763) |
| Class 10 Balance | $ 336,940,231 | $ 325,585,339 | $ 325,585,339 | $ 302,811,598 | $ 261,363,467 | |

Notes

[1] Assumes no threats, demands or litigations.

[2] Assumes all SOL (and any applicatable tolling) expired.

[3] Assumes no threats, demands or litigations. Assumes 4% Interest earned each period.

[4] 3.26% Interest and $790k Amort due 12/31 each year

[5] HCMLP will object to this claim. If claim is disallowed, following a final non-appealable order, any remaining funds will be distributed to Class 9, or if Class 9 has been paid in full, Class 10.

[6] Interest on balance accrues at 0.08%. Start Date face value of claims outstanding is $20,584,958.56.

[7] Assumes Dugaboy Note FMV at face with no discounting. Payment Year 3 includes P&I received after Initial Interim Cash Distribution.

*DRAFT - SUBJECT TO CONFIDENTIALITY AGREEMENT*

001326
HCMLPHMIT00000727

# EXHIBIT 48

001327

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**To:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/HMIT: Settlement Agreement (HCMLP comments)
**Date:** Thu, 15 May 2025 17:07:04 +0000
**Importance:** Normal
**Attachments:** Highland_HMIT-Rand_Settlement_Agreement.011(Highland_Draft_05.15.25).docx; REDLINE_-_HMIT_Settlement_Agreement.pdf
**Inline-Images:** image001.jpg; image002.png

---

SETTLEMENT COMMUNICATION PURSUANT TO FED. R. EVID. 408
<u>WITHOUT PREJUDICE</u>

Louis:

Thank you for sending the revised version of the draft agreement.

Attached is another black line, this one showing Highland's changes to HMIT's last draft.

Are you and your team available at either **4 or 6 pm Eastern Time today** so we can walk you through this?

Please let me know.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 12:45 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Revised draft attached incorporating the change to Section 8(a).  Thanks

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Thursday, May 15, 2025 11:42 AM
**To:** David Klos <DKlos@HighlandCapital.com>; Tim Cournoyer <TCournoyer@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; John A. Morris <jmorris@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Re: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Makes sense.  New version coming now

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** David Klos <DKlos@HighlandCapital.com>
**Date:** Thursday, May 15, 2025 at 12:40 PM
**To:** Tim Cournoyer <TCournoyer@highlandcapital.com>, Jim Seery <jpseeryjr@gmail.com>, Matthew Gray <MGray@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, John A. Morris <jmorris@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

The deleted provision in Section 3 is similar to a remaining provision in the lead in to Section 8.  Should that be removed as well?

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 11:35 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris' <jmorris@pszjlaw.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Jim – As discussed with you and Dave, attached is a revised draft with one change to Section 3 (removing the provision tying the $500k payment to any specific component of the settlement).

@Jeff Pomerantz, @John A. Morris, @Gregory V. Demo – Please let us know if you expect to have any comments and expected timeframe.

We need to circulate drafts to Class 9's, CTOB and HMIT.  We can likely send a draft to Class 9's and CTOB now subject to ongoing review, since I don't believe you will have any changes to the economic proposal we're making, but obviously want everyone signed off asap for purposes of getting a draft back to HMIT.

Thank you.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 10:40 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris'

**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

All,

Attached are revised drafts of the Settlement Agreement and the Class 9 Written Consent, together with redlines in PDF.  Please let me know if you have any comments ASAP.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 8:23 AM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Below is a quick checklist items to be accomplished.  Please respond if anyone can think of others:

- Settlement Agreement
  - Finalize internal comments among Highland, PSZJ and QE
  - **<u>Need to draft Form of Assignment for Kirschner Claims</u>**
  - Circulate revised draft to:
    - HMIT
    - CTOB
    - Class 9 Holders
- 9019 Motion
  - PSZJ to draft
  - Finalize comments among Highland, QE and PSZJ
  - Circulate final draft to HMIT

- CTOB Resolutions
  - Finalize internal comments among Highland and PSZJ
  - Circulate to:
    - CTOB
    - QE

- Class 9 Consent
  - Finalize internal comments to written consent among Highland and PSZJ
  - Finalize payment schedule to be attached as Exhibit
  - Circulate to:
    - Muck
    - Jessup
    - UBS

- Pay Daugherty Class 9 Claim (can likely happen post-signing)
  - To be completed promptly following receipt of Class 9 Consent

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:19 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz'

001330


HCMLPHMIT00000768

**Subject:** Re: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Thanks - I got those on the issues list as well.

TIMOTHY J. COURNOYER
D: 972.628.4153 | M: 305.479.0804

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:18 PM
**To:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Two principal comments: 1) we don't own the entire Dugaboy Note as defined in the agreement, so we can't assign the amount of the note owed to Get Good. If language as drafted is fine then no worries, 2) clarifying we pay all P&I received on Dugaboy note between execution date and assignment date.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 9:42 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Matt – can you send a PDF of your comments?  I think the colors of the various comments is dependent on each user's individual Word settings.

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 8:59 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Apologies, for some reason my red comments did not show up in prior version. Attached has comments in red.

---

**From:** Matthew Gray
**Sent:** Wednesday, May 14, 2025 8:46 PM
**To:** jpseeryjr@gmail.com; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

I've attached a few comments in red, mostly on the Dugaboy note. Continuing to review.

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Wednesday, May 14, 2025 7:26 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>
**Subject:** FW: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF


Best. Jim


Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Wednesday, May 14, 2025 at 7:33 PM
**To:** James Seery <jpseeryjr@gmail.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>, David Klos <DKlos@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Fwd: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF


Sent from my iPhone


Begin forwarded message:


**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Date:** May 14, 2025 at 7:21:19 PM EDT
**To:** "John A. Morris" <jmorris@pszjlaw.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, Jim Shields <jshields@shieldslegal.com>
**Subject: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF**


John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9. First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done. And then I just took longer to get over the lag from traveling back.

We have made some proposed changes. First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal. We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)). We have added an agreed abatement of everything pending bankruptcy court approval. We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal. We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification. We

HCMLPHMIT00000770

also have tried to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.

**Louis M. Phillips**
*Partner*


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

---

HCMLPHMIT00000771

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000772

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001335

HCMLPHMIT00000773

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001336

HCMLPHMIT00000774

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

001337

HCMLPHMIT00000775

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

4

HCMLPHMIT00000776

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

001339

HCMLPHMIT00000777

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X

001340

HCMLPHMIT00000778

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001341
HCMLPHMIT00000779

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.  <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)     Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

001342
HCMLPHMIT00000780

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(b)     Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.     <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)     The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.     <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.     <u>HMIT Class 10 Interest</u>.

(a)     Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)     Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)     Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

001343

HCMLPHMIT00000781

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(d)    For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    <u>Initial Interim Distributions on the Allowed Class 10 Interests</u>.

(a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    <u>Subsequent Distribution(s) on the Allowed Class 10 Interests</u>.

(a)    On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Five Million Dollars (US$5,000,000.00).

(b)    On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Five Million Dollars (US$5,000,000.00).

(c)    Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential

001344

HCMLPHMIT00000782

Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

       7.    <u>Final Distribution on the Allowed Class 10 Interests</u>.

       (a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

       (b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

       (c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; <u>provided</u>, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

       8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

       (a)    Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including <u>Section 8(b)</u> below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of <u>Section 8(c)</u> below.

       (b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR

001345
HCMLPHMIT00000783

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out

12

001346

HCMLPHMIT00000784

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    General Release By The Highland Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.    Further Provisions Concerning The General Releases.

(a)    **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)    To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)    Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE**

001347
HCMLPHMIT00000785

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

**RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

       (d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

       (i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

       (ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

14

HCMLPHMIT00000786

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and

001349
HCMLPHMIT00000787

represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be  "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.    <u>Indemnification</u>.

HCMLPHMIT00000788

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(a)     Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in Section 13 or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches Section 12 shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)     Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in Section 13 or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section 12 shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.     Execution.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.     Bankruptcy Court Order.  This Agreement and the transactions contemplated hereby is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing

001351

HCMLPHMIT00000789

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the entry of a Final Order of the Bankruptcy Court approving this Agreement and the transactions contemplated hereby in a substantially similar form and on substantially similar terms as set forth herein to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.**

001352

HCMLPHMIT00000790

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

21.   <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.   <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.   <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.   <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.   <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.   <u>Other Provisions</u>.

(a)   No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)   The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default;

001353

HCMLPHMIT00000791

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)     The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)     The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.     Notices.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.     Interpretive Provisions. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by

20

001354

HCMLPHMIT00000792

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*

21

001355

HCMLPHMIT00000793

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____
Name:        Mark Patrick
Title:        Administrator
Date:        May __, 2025

**BEACON MOUNTAIN LLC**

By _____
Name:
Title:
Date:        May __, 2025

**RAND ADVISORS, LLC**

By _____
Name:        Mark Patrick
Title:        President
Date:        May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____
Name:        Mark Patrick
Title:        President
Date:        May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____
Name:        Mark Patrick
Title:        President

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001356

HCMLPHMIT00000794

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By    _____
      Name:        Mark Patrick
      Title:        President
      Date:        May __, 2025

**ATLAS IDF GP, LLC**

By    _____
      Name:        Mark Patrick
      Title:        President
      Date:        May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By    _____
      Name:        James. P. Seery, Jr.
      Title:        Chief Executive Officer
      Date:        May __, 2025

**HIGHLAND CLAIMANT TRUST**

By    _____
      Name:        James P. Seery, Jr.
      Title:        Claimant Trustee
      Date:        May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By    _____
      Name:        Marc S. Kirschner
      Title:        Litigation Trustee

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001357

HCMLPHMIT00000795

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Date:        May __, 2025

**HIGHLAND INDEMNITY TRUST**


By      _____
        Name:      James P. Seery, Jr.
        Title:     Indemnity Trust Administrator
        Date:      May __, 2025

SIGNATURE PAGE TO SETTLEMENT AGREEMENT & GENERAL RELEASE

001358

HCMLPHMIT00000796

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May [],16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand. The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001359

HCMLPHMIT00000797

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, ~~actions~~Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

001360
HCMLPHMIT00000798

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, ~~including~~(vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, ~~(vi)~~in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, ~~(vii)~~viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, ~~(viii)~~ix) Marc S. Kirschner, individually and as Trustee of

001361
HCMLPHMIT00000799

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

the Litigation Sub-Trust, (ix~~x~~) the Committee and each of its members, (~~x~~xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (~~xi~~xii) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(~~xi~~xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, <u>attorneys (and their respective firms),</u> directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" <u>provided</u>, <u>however</u>, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary,* none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, <u>or claiming through, under or on behalf of,</u> any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

001362
HCMLPHMIT00000800

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

001363

HCMLPHMIT00000801

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in ~~Section~~Sections 1 – 2 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means ~~the expenses of operation and administration of the Highland Entities except for the Indemnity Trust~~, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

001364

HCMLPHMIT00000802

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable ~~Statute~~statute of ~~Limitations~~limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats ~~made~~received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by ~~such Party~~the Indemnity Trust to the HMIT Entities, within ~~Five~~five (5) ~~business days~~Business Days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety

001365

HCMLPHMIT00000803

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

> **WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

> **WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

> **WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

> WHEREAS, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

> **WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

> **WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

> **WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

> **WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

> **NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

### AGREEMENT

1.      ~~Abatement~~Stay and Dismissal of Pending Litigation With Prejudice.

001366
HCMLPHMIT00000804

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(a)      Within ~~three (3~~five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to ~~abate~~stay the Pending Litigation.

(b)      Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.      <u>Maintenance of ~~Abatement~~Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)      The Litigation Trustee shall continue to maintain the ~~abatement~~stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within ~~three (3~~five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3.      <u>Cash Payment to HMIT</u>.  ~~In consideration for the dismissal of the Pending Litigation, within three (3~~Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

[wire instructions]

4.      <u>HMIT Class 10 Interest</u>.

(a)      Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)      Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)      Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of <u>or encumber</u> the HMIT Class 10 Interest

001367
HCMLPHMIT00000805

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.     Initial Interim Distributions on the Allowed Class 10 Interests.

(a)     Within ten (10five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of TwelveTen Million Dollars (US$1210,000,000.00) (the "**Initial Interim Cash Distribution Amount**").

(b)     HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

(c)(b)   Within ten (10five (5) Business Days after the Bankruptcy Court Approval Date ("(the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be assigneddistributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the the Highland Entities, including the Indemnity Trust as of, from the Agreement Date to the Note Assignment Date.  Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.     Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)     On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of EightFive Million Dollars (US$85,000,000.00).  . HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)     On DecemeberDecember 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the

001368
HCMLPHMIT00000806

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of ~~Eight~~Five Million Dollars (US$~~8~~5,000,000.00).

~~(c)     HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.~~

~~(d)~~(c)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.    <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)    On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided, however,</u> that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)    ~~In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10~~<u>Within five (5)</u>) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute <u>an</u>a short-form assignment in ~~the form attached hereto as **Exhibit [_]**~~ in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims

001369

HCMLPHMIT00000807

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 5/15/2025

(the "**Kirschner Transfer**"). ~~Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including Section 8(b) below.~~ Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including ~~without limitation~~ the terms of <u>Section 8(c)</u> below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against ~~the~~any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if ~~(a)~~ the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason~~, or (b) the Final Court Approval Date does not occur~~, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     <u>General Release By The HMIT Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other

001370
HCMLPHMIT00000808