**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P

§
§  Case No.  19-34054-sgj11

**Patrick Daugherty - Appellant**

§  **3:25-CV-01901-S**

CONSOLIDATED UNDER:
vs.                                                                   §  **3:25-CV-01876-K**

**Highland Capital Management, L.P; et al** - Appellee

§
§

   **[4297] Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document # 4216) Entered on 6/30/2025**

# Volume 3

# APPELLANT RECORD

Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:     jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           drayshell@grayreed.com

*Counsel to Patrick Daugherty*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | § § § | |

*INDEX*

## APPELLANT'S AMENDED DESIGNATION OF ITEMS
## TO BE INCLUDED IN THE RECORD ON APPEAL
## AND STATEMENT OF THE ISSUES PRESENTED

Pursuant to Fed. R. Bankr. P. 8009(a) and Docket No. 4366, Appellant Patrick Daugherty

("Daugherty") hereby submits his amended designation of items to be included in the record on

appeal and statement of issues to be presented in connection with his appeal from the *Order*

*Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the*

*Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address
for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Case 3:25-cv-01076-sgj11 Document 35 Filed 08/14/25 Entered 08/14/25 12:19 Page 2 of 260 PageID 6949
Case 19-34054-sgj11 Doc 4335 Filed 04/24/25 Entered 04/24/25 Page 2 of 9 Close
Main Document     Page 2 of 9

No. 4297] (the "HMIT Settlement Order").[2] *See Notice of Appeal* [Docket No. 4310, as amended at Docket No. 4327].

## Statement of Issues on Appeal

1. Whether the Bankruptcy Court erred in its approval of the HMIT Settlement Order [Docket No. 4297], which permits payment to Class 10 creditors before all Class 8 and Class 9 claims have been paid in full when the plain language of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. 1808], the Court's Confirmation Order [Dkt. 1943] and the Claimant Trust Agreement [Dkt. 3817-4] require full payment plus applicable interest to all Class 8 and Class 9 creditors before any Class 10 or Class 11 claims can vest.

2. Whether the Bankruptcy Court abused its discretion by approving the HMIT Settlement Order [Docket No. 4297] when the settlement is not fair, reasonable, or in the best interests of the estate as the Debtor, through its principals, is forgoing the recovery of millions in material value to the estate in exchange for, inter alia, self-serving releases of its principals.

## Designation of Record

Daugherty respectfully designates the following items to be included in the appellate record pursuant to Bankruptcy Rule 8009(a):

*000001*

1. Amended Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Dkt. 4327].

*000011*

2. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Dkt. 4310].

*000022*

3. The Judgment Order or Decree appealed from: *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4297].

*000026*

4. Docket Sheet for Bankruptcy Case No. 19-34054-sgj1 kept by the Bankruptcy Clerk.

5. Documents listed below for Bankruptcy Case No. 19-34054-sgj11:

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the HMIT Settlement Order.

4905-5299-6446

*Vol. 2*

*000637*

*000727*

*000745*

*000773*

| Date | Docket | Description |
|------|--------|-------------|
| 11/18/2020 | 1426 | *Transcript regarding Hearing Held 11/17/2020 (90 pages)* RE: Motion for Temporary Allowance of Claim (#1281). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 02/16/2021. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 1422 Hearing held on 11/17/2020. (RE: related document(s) 1281 Motion for leave - Daugherty's Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 filed by Creditor Patrick Daugherty) (Appearances: T. Uebler, J. Christensen, and J. Kathman for P. Daugherty; J. Morris and J. Pomeranz for Debtor; M. Clemente for UCC. Evidentiary hearing. Claim estimated for voting purposes at $9,134,019 for reasons stated on the record. Counsel to upload order.)). Transcript to be made available to the public on 02/16/2021. (Rehling, Kathy) |
| 05/19/2025 | 4216 | *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* (Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) (Attachments: # 1 Exhibit A--Proposed Order) |
| 05/19/2025 | 4217 | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* (filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 05/20/2025 | 4218 | *Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust* (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |

3

Vol. 2

000779

0087B5

| Date | Docket | Description |
|------|--------|-------------|
| 05/22/2025 | 4221 | *Amended Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust* (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |
| 06/09/2025 | 4229 | *Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust)* (filed by Creditor Patrick Daugherty. (Attachments: # 1 Proposed Order) (York, Andrew) |

Vol. 3
Starts w/
000801

Thru End of
Vol. 13

Vol 14
003458

| Date | Docket | Description |
|------|--------|-------------|
| 06/20/2025 | 4255 | *Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust* (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34 # 35 Exhibit 35 # 36 Exhibit 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42 # 43 Exhibit 43 # 44 Exhibit 44 # 45 Exhibit 45 # 46 Exhibit 46 # 47 Exhibit 47 # 48 Exhibit 48 # 49 Exhibit 49 # 50 Exhibit 50 # 51 Exhibit 51 # 52 Exhibit 52 # 53 Exhibit 53 # 54 Exhibit 54 # 55 Exhibit 55 # 56 Exhibit 56 # 57 Exhibit 57 # 58 Exhibit 58 # 59 Exhibit 59 # 60 Exhibit 60 # 61 Exhibit 61 # 62 Exhibit 62 # 63 Exhibit 63 # 64 Exhibit 64 # 65 Exhibit 65 # 66 Exhibit 66 # 67 Exhibit 67 # 68 Exhibit 68 # 69 Exhibit 69 # 70 Exhibit 70 # 71 Exhibit 71 # 72 Exhibit 72 # 73 Exhibit 73 # 74 Exhibit 74 # 75 Exhibit 75 # 76 Exhibit 76 # 77 Exhibit 77 # 78 Exhibit 78 # 79 Exhibit 79 # 80 Exhibit 80 # 81 Exhibit 81 # 82 Exhibit 82 # 83 Exhibit 83 # 84 Exhibit 84 # 85 Exhibit 85 # 86 Exhibit 86 # 87 Exhibit 87 # 88 Exhibit 88 # 89 Exhibit 89 # 90 Exhibit 90 # 91 Exhibit 91 # 92 Exhibit 92 # 93 Exhibit 93 # 94 Exhibit 94 # 95 Exhibit 95 # 96 Exhibit 96 # 97 Exhibit 97 # 98 Exhibit 98 # 99 Exhibit 99 # 100 Exhibit 100 # 101 Exhibit 101 # 102 Exhibit 102 # 103 Exhibit 103 # 104 Exhibit 104 # 105 Exhibit 105 # 106 Exhibit 106 # 107 Exhibit 107 # 108 Exhibit 108 # 109 Exhibit 109 # 110 Exhibit 110 # 111 Exhibit 111 # 112 Exhibit 112 # 113 Exhibit 113 # 114 Exhibit 114 # 115 Exhibit 115 # 116 Exhibit 116 # 117 Exhibit 117 # 118 Exhibit 118 # 119 Exhibit 119 # 120 Exhibit 120 # 121 Exhibit 121 # 122 Exhibit 122 # 123 Exhibit 123) (Annable, Zachery) |
| 06/20/2025 | 4256 | *Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust* (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |

5

*Vol. 14*

*0003461*

*Vol. 15*

*0004643*

*0004654*

*0004656*

*Vol. 16*

*0004873*

*0004898*

| Date | Docket | Description |
|------|--------|-------------|
| 06/23/2025 | 4266 | *Witness and Exhibit List of Patrick Daugherty filed by Creditor Patrick Daugherty* (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 List of 20 Largest Creditors 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 List of 20 Largest Creditors 34 # 35 Exhibit 35 # 36 List of 20 Largest Creditors 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42) (York, Andrew) |
| 06/23/2025 | 4275 | *Omnibus Reply to (related document(s): 4229 Objection filed by Creditor Patrick Daugherty, 4230 Objection filed by Partner Dugaboy Investment Trust, 4231 Objection filed by Interested Party The Dallas Foundation, Interested Party Crown Global Life Insurance, Ltd) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust.* (Annable, Zachery) |
| 06/23/2025 | 4276 | *Joinder by to Reply in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith filed by Creditor Hunter Mountain Investment Trust (RE: related document(s) 4275 Reply).* (Phillips, Louis) |
| 06/24/2025 | 4277 | *Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic)).* (Attachments: # 1 Exhibit 124 # 2 Exhibit 125) (Annable, Zachery) |
| 06/24/2025 | 4280 | *Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)).* (Attachments: # 1 Exhibit 126) (Annable, Zachery) |
| 06/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). |

6

| Date | Docket | Description |
|---|---|---|
| 06/30/2025 | 4296 | *Transcript regarding Hearing Held 06/25/2025 before Judge Stacy G.C. Jernigan (266 pages) RE: Motion for an Order Further Extending Duration of Trusts (4213); Motion for Entry of an Order Approving Settlement with HMIT Entities (4216).* THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 09/29/2025. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 4294 Hearing held on 6/25/2025. (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Appearances: J. Morris and Pachulski team for Reorganized Debtor; R. Loigman for Post-Confirmation Trusts; D. Deitsch-Perez for Dugaboy; L. Young for UST. Evidentiary hearing. Motion granted. Counsel to upload order.), 4295 Hearing held on 6/25/2025. (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Appearances: J. Morris and Pachulski team for Reorganized Debtor; L. Phillips for HMIT Entities; M. Lang for Dugaboy; D. Curry for Dallas Foundation; L. Young for UST. Evidentiary hearing. Motion granted. Counsel to upload order.)). Transcript to be made available to the public on 09/29/2025. (Rehling, Kathy) |
| 07/16/2025 | 4317 | *Clerk's correspondence requesting to amend notice of appeal from creditor.* (RE: related document(s) 4297 Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document 4216) Entered on 6/30/2025. (Okafor, M.)) Responses due by 7/18/2025. (Whitaker, Sheniqua) |
| 07/22/2025 | 4336 | *Certificate of mailing regarding appeal* (RE: related document(s) 4327 Amended notice of appeal filed by Creditor Patrick Daugherty Related document(s) 4310 Notice of appeal filed by Creditor Patrick Daugherty. MODIFIED linkage on 7/17/2025 (suw).) (Attachments: # 1 Service List) (Whitaker, Sheniqua) |
| 07/22/2025 | 4337 | *Notice regarding the record for a bankruptcy appeal to the U.S. District Court.* (RE: related document(s) 4327 Amended Notice of appeal . Fee Amount $298 filed by Creditor Patrick Daugherty (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Attachments: # 1 Exhibit A)) (Whitaker, Sheniqua) |
| 07/22/2025 | 4343 | *Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01901-S.* (RE: related document(s) 4327 Amended notice of appeal filed by Creditor Patrick Daugherty Related document(s) 4310 Notice of appeal filed by Creditor Patrick Daugherty. (RE: related document(s)4297 Order on motion to compromise controversy).) (Almaraz, Jeanette) |

4905-5299-6446

**Reservation of Rights**

Daugherty expressly reserves the right to amend or supplement this Designation and/or to object, or otherwise supplement or move to strike or modify, some or all of any designations filed by any other party to this appeal.  This filing is made expressly subject to, and without waiver, of any and all rights, remedies, challenges and objections.

8

Respectfully submitted this 14th day of August 2025.

**GRAY REED**

By:  */s/ Andrew K. York*
    Jason S. Brookner
    Texas Bar No. 240033684
    Andrew K. York
    Texas Bar No. 24051554
    Joshua D. Smeltzer
    Texas Bar No. 24113859
    Drake M. Rayshell
    Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:     jbrookner@grayreed.com
          dyork@grayreed.com
          jsmeltzer@grayreed.com
          drayshell@grayreed.com

*Counsel to Patrick Daugherty*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 14th day of August 2025, via the CM/ECF system and/or email.

*/s/ Andrew K. York*
ANDREW K. YORK

9

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,*
*L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of The Highland*
*Litigation Sub-Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CLAIMANT TRUST, AND LITIGATION SUB-TRUST WITNESS AND EXHIBIT LIST WITH RESPECT TO HEARING TO BE HELD ON JUNE 25, 2025

Highland Capital Management, L.P., the reorganized debtor (the "<u>Debtor</u>" or "<u>Highland</u>,"

as applicable) in the above-captioned chapter 11 case (the "<u>Bankruptcy Case</u>"), the Highland

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.


1934054250620000000000011

Claimant Trust (the "Claimant Trust"), and the Highland Litigation Sub-Trust (the "Litigation

Sub-Trust," and together with Highland and the Claimant Trust, the "Movants"), by and through

their undersigned counsel, submit the following witness and exhibit list with respect to the

*Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving*

*Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No.

4216], which the Court has set for hearing at 9:30 a.m. (Central Time) on June 25, 2025 (the

"Hearing") in the Bankruptcy Case.

      **A.**    **Witnesses**:

        1.    James P. Seery, Jr.;

        2.    James Dondero;

        3.    Deborah Deitsch-Perez, Esq;

        4.    Any witness identified by or called by any other party; and

        5.    Any witness necessary for rebuttal.

      **B.**    **Exhibits**:

| Number | Exhibit | Offered | Admitted |
|:---:|---|---|---|
| **A.** | **Settlement Agreement** | | |
| 1. | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to a Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Agreement with the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4217] [HCMLPHMIT00002688-HCMLPHMIT00002715] | | |
| **B.** | **Negotiation Documents** | | |
| 2. | Email from L. Phillips to J. Morris dated March 5, 2025 [HCMLPHMIT00000015-HCMLPHMIT00000017] | | |
| 3. | Email from L. Phillips to J. Morris dated March 13, 2025 [HCMLPHMIT00000022-00000026] | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**     **PAGE 2 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000802

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 4. | Email from L. Phillips to J. Morris dated March 18, 2025 [HCMLPHMIT00000028-HCMLPHMIT00000029] | | |
| 5. | Email from L. Phillips to J. Morris dated March 19, 2025 [HCMLPHMIT00000030-HCMLPHMIT00000031] | | |
| 6. | Confidentiality Agreement-M Patrick and Related Entities [HCMLPHMIT00000032-HCMLPHMIT00000045] | | |
| 7. | Email from L. Phillips to J. Morris and A. Hurt dated March 22, 2025 [HCMLPHMIT00000046-HCMLPHMIT00000048] | | |
| 8. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000052-HCMLPHMIT00000054] | | |
| 9. | Email from L. Phillips to J. Morris dated March 24, 2025 [HCMLPHMIT00000055-HCMLPHMIT00000056] | | |
| 10. | Email from L. Phillips to J. Morris dated March 28, 2025 [HCMLPHMIT00000057] | | |
| 11. | Email from L. Phillips to J. Morris dated March 30, 2025 [HCMLPHMIT00000058] | | |
| 12. | Email from L. Phillips to J. Morris dated March 31, 2025 [HCMLPHMIT00000059] | | |
| 13. | HCLOM Intercreditor and Participation Agreement [HCMLPHMIT00000060-HCMLPHMIT00000063] | | |
| 14. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000075-HCMLPHMIT00000078] | | |
| 15. | Email from L. Phillips to J. Morris dated April 2, 2025 [HCMLPHMIT00000079-HCMLPHMIT00000080] | | |
| 16. | Email from L. Phillips to J. Morris dated April 3, 2025 with attachment - Paul Murphy Joinder to Confidentiality Agreement [HCMLPHMIT00000081-HCMLPHMIT00000083] | | |
| 17. | Email from L. Phillips to J. Morris dated April 4, 2025 [HCMLPHMIT00000089] | | |
| 18. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000090-HCMLPHMIT00000092] | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 19. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachment – Shawn Raver Joinder to Confidentiality Agreement [HCMLPHMIT00000093-HCMLPHMIT00000096] | | |
| 20. | Email from L. Phillips to J. Morris dated April 7, 2025 [HCMLPHMIT00000099-HCMLPHMIT00000102] | | |
| 21. | Email from L. Phillips to J. Morris dated April 7, 2025 with attachments- Phillips Joinder to Confidentiality Agreement (signed by Phillips) and A. Hurt Joinder to Confidentiality Agreement (signed by Hurt) [HCMLPHMIT00000103-HCMLPHMIT00000107] | | |
| 22. | Email from L. Phillips to J. Morris dated April 8, 2025 with fully executed HCLOM Remittance Agreement [HCMLPHMIT00000108-HCMLPHMIT00000112] | | |
| 23. | Email from L. Phillips to J. Morris dated April 10, 2025 with HMIT 2022 Settlement Agreement [HCMLPHMIT00000118-HCMLPHMIT00000130] | | |
| 24. | Email from L. Phillips to J. Morris dated April 17, 2025 with attachment James Shields Joinder to Confidentiality Agreement [HCMLPHMIT00000135-HCMLPHMIT00000150] | | |
| 25. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000157-HCMLPHMIT00000158] | | |
| 26. | Email from L. Phillips to J. Morris dated May 9, 2025 [HCMLPHMIT00000159-HCMLPHMIT00000161] | | |
| 27. | Email from L. Phillips to J. Morris dated May 13, 2025 [HCMLPHMIT00000162-HCMLPHMIT00000163] | | |
| 28. | Email from L. Phillips to J. Morris dated May 14, 2025 [HCMLPHMIT00000164-HCMLPHMIT00000166] | | |
| 29. | Email from L. Phillips to J. Morris dated May 14, 2025 with Redlines of Settlement Agreement [HCMLPHMIT00000167-HCMLPHMIT00000218] | | |
| 30. | Email from L. Phillips to J. Morris dated May 15, 2025 [HCMLPHMIT00000226-HCMLPHMIT00000234] | | |
| 31. | Email from L. Phillips to J. Morris dated May 16, 2025 with Clean and Redline of Rand Settlement Agreement [HCMLPHMIT00000235-HCMLPHMIT00000283] | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                                    **PAGE 4 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000804

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 32. | Email from L. Phillips to T. Cournoyer dated May 16, 2025 [HCMLPHMIT00000287-HCMLPHMIT00000289] | | |
| 33. | Email from L. Phillips to J. Seery, M. Patrick, S. Raver, J. Shields, A. Hurt dated May 17, 2025 [HCMLPHMIT00000290] | | |
| 34. | Email from L. Phillips to J. Morris dated May 17, 2025 [HCMLPHMIT00000291-HCMLPHMIT00000292] | | |
| 35. | Email from L. Phillips to J. Morris, J. Pomerantz dated May 19, 2025 with attachment HMIT Redlined Pages only to Settlement Agreement [HCMLPHMIT00000295-HCMLPHMIT00000297] | | |
| 36. | Email from L. Phillips to G. Demo, A. Hurt, J. Shields dated May 19, 2025 [HCMLPHMIT00000342-HCMLPHMIT00000344] | | |
| 37. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 with attachment - M. Patrick signature o HMIT Rand Settlement Agreement [HCMLPHMIT00000345-HCMLPHMIT00000370] | | |
| 38. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz date May 19, 2025 [HCMLPHMIT00000371-HCMLPHMIT00000372] | | |
| 39. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000373-HCMLPHMIT00000374] | | |
| 40. | Email from L. Phillips to G. Demo, J. Morris, J. Pomerantz dated May 19, 2025 [HCMLPHMIT00000423-HCMLPHMIT00000428] | | |
| 41. | Email from J. Morris to L. Phillips dated March 22, 2025 [HCMLPHMIT00000562-HCMLPHMIT00000563] | | |
| 42. | Email from J. Morris to L. Phillips, A. Hurt dated March 22, 2025 with attachment – fully executed Confidentiality Agreement [HCMLPHMIT00000564-HCMLPHMIT00000580] | | |
| 43. | Email from J. Morris to L. Phillips dated April 4, 2025 with attachment Litigation Protections M. Patrick [HCMLPHMIT00000621-HCMLPHMIT00000631] | | |
| 44. | Email from J. Morris to L. Phillips dated April 7, 2025 [HCMLPHMIT00000642-HCMLPHMIT00000644] | | |

WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025          PAGE 5 OF 14
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000805

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 45. | Email from J. Morris to L. Phillips dated April 8, 2025 with attachment – current snapshot of remaining assets<br>[HCMLPHMIT00000656--HCMLPHMIT00000661] | | |
| 46. | Email from J. Morris to L. Phillips dated April 16, 2025 with attachment – Second Amended and Restated Indemnity Trust Agreement<br>[HCMLPHMIT00000672-HCMLPHMIT00000727] | | |
| 47. | April 15, 2025 Draft Illustrative Highland Indemnity Trust Payout Schedule<br>[HCMLPHMIT00000724-HCMLPHMIT00000727] | | |
| 48. | Email from J. Morris to L. Phillips dated May 15, 2025 with attachment – Draft Rand Settlement Agreement and Redline<br>[HCMLPHMIT00000766-HCMLPHMIT00000820] | | |
| 49. | Email from J. Morris to L. Phillips dated May 15, 2025 with Clean and Redline Settlement Agreement<br>[HCMLPHMIT00000829-HCMLPHMIT00000877] | | |
| 50. | Email from L. Phillips to D. Klos dated April 17, 2025<br>[HCMLPHMIT00000947] | | |
| 51. | Email re: Microsoft Teams call from D. Klos to J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt dated April 7, 2025<br>[HCMLPHMIT00000949] | | |
| 52. | Microsoft Teams Appointment for J. Seery, T. Cournoyer, K. Hendrix, J. Morris, G. Demo, M. Patrick, S. Raver, Paul, L. Phillips, A. Hurt scheduled for April 8, 2025<br>[HCMLPHMIT00000950] | | |
| 53. | Email from D. Klos to J. Shields dated April 22, 2025 with attachment – Potential Settlement Structure with DAF and HMIT<br>[HCMLPHMIT00000987-HCMLPHMIT00001000] | | |
| 54. | Email from J. Seery to M. Patrick, S. Raver, L. Phillips, A. Hurt, J. Shields dated April 28, 2025 with attachment – Draft Rand Settlement Agreement<br>[HCMLPHMIT00001001-HCMLPHMIT00001025] | | |
| 55. | Email Microsoft Teams appointment from D. Klos to J. Seery, K. Hendrix, M. Patrick, S. Raver, Paul dated April 3, 2025<br>[HCMLPHMIT00001037] | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                    **PAGE 6 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000806

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 56. | Email from D. Klos to M. Patrick dated April 2, 2025 [HCMLPHMIT00001042] | | |
| 57. | Email from J. Seery to J. Morris, T. Cournoyer, D. Klos, M. Gray dated June 11, 2025 with attachment – Class 9 Consent to Rand Settlement and Release [HCMLPHMIT00001220-HCMLPHMIT00001245] | | |
| **C.** | **Class 9 Documents** | | |
| 58. | Letter to P. Daugherty from J. Seery re: Eighth Distribution re: Highland Claimant Trust dated May 20, 2025 [HCMLPHMIT00002329] | | |
| 59. | Written Consent of Holders of Class 9 Subordinated Claim Trust Interests in the Highland Claimant Trust dated May 16, 2025 [HCMLPHMIT00002677-HCMLPHMIT00002682] | | |
| 60. | Tolling Agreement Extending Claim Objection Deadline dated July 27, 2022 | | |
| 61. | Amendment No. 1 to Tolling Agreement Extending the Claim Objection Deadline dated December 21, 2022 | | |
| 62. | Amendment No. 2 to Tolling Agreement Extending Claim Objection Deadline dated November 6, 2023 | | |
| 63. | Amendment No. 3 to Tolling Agreement Extending Claim Objection Deadline dated November 20, 2024 | | |
| **D.** | **HCLOM/HMIT** | | |
| 64. | Email from L. Phillips to J. Morris dated January 6, 2025 [HCMLPHMIT00000008-HCMLPHMIT00000009] | | |
| 65. | Email from L. Phillips to J. Morris, A. Hurt dated January 11, 2025 [HCMLPHMIT00000010-HCMLPHMIT00000012] | | |
| 66. | *Highland Capital Management, L.P.'s Motion for (A) a Bad Faith Finding and (B) and Award of Attorney's Fees Against Highland CLO Management, Ltd. and James Dondero in Connection with HCLOM Claims 3.65 and 3.66* [Docket No. 4176] [HCMLPHMIT00000441-HCMLPHMIT00000500] | | |

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 67. | Hearing Transcript dated December 18, 2024 [Docket No. 4197]<br>[HCMLPHMIT00003829-HCMLPHMIT00003859] | | |
| 68. | *Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award for Attorney's Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4716]* [Docket No. 4199]<br>[HCMLPHMIT00003860-HCMLPHMIT00003866] | | |
| 69. | Intercreditor and Participation Agreement with HCLOM dated January 10, 2025<br>[HCMLPHMIT00003868-HCMLPHMIT00003871] | | |
| **E.** | **Patrick Authority** | | |
| 70. | Trust Agreement of Hunter Mountain dated December 17, 2015<br>[HCMLPHMIT00004103-HCMLPHMIT00004114] | | |
| 71. | Show Cause Hearing Transcript June 8, 2021<br>[HCMLPHMIT00002716-HCMLPHMIT00003013] | | |
| 72. | HMIT Hearing Transcript June 8, 2023<br>[HCMLPHMIT00003014-HCMLPHMIT00003402] | | |
| 73. | Limited Liability Company Agreement of Atlas IDF GP, LLC dated October 29, 2015<br>[HCMLPHMIT00003511-HCMLPHMIT00003517] | | |
| 74. | HOLDCO Responses and Disclosures Related to the Court's Order Requiring Disclosures [Docket No. 2547]<br>HCMLPHMIT00003523-HCMLPHMIT00003828] | | |
| 75. | HMIT Appointment of Successor Administrator dated 8/12/2022<br>[HCMLPHMIT00003872] | | |
| 76. | Limited Liability Company Agreement of Rand PE Fund Management, LLC dated October 29, 2015<br>[HCMLPHMIT00003873-HCMLPHMIT00003879] | | |
| 77. | Limited Liability Company Agreement of Rand Advisors, LLC dated August 28, 2013<br>[HCMLPHMIT00003880-HCMLPHMIT00003886] | | |

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 78. | Agreement of Limited Partnership of Rand PE Fund I, L.P. dated October 29, 2015<br>[HCMLPHMIT00003887-HCMLPHMIT00003893] | | |
| 79. | Amended and Restated Limited Partnership Agreement of Atlas IDF, LP dated November 30, 2015<br>[HCMLPHMIT00003894-HCMLPHMIT00003928] | | |
| 80. | Atlas IDF, LP Offering of Series 1 Limited Partnership Interests dated November 30, 2015<br>[HCMLPHMIT00003929-HCMLPHMIT00004023] | | |
| 81. | Rand PE Fund I, LP Offering Series 1 Limited Partnership Interests dated November 30, 2015<br>[HCMLPHMIT00004024-HCMLPHMIT00004095] | | |
| 82. | Member and Manager Consent of Atlas IDF GP, LLC dated October 13, 2022<br>[HCMLPHMIT00004124-HCMLPHMIT00004126] | | |
| 83. | Amended and Restated Company Agreement of Atlas IDF GP, LLC dated August 8, 2022<br>[HCMLPHMIT00004127-HCMLPHMIT00004151] | | |
| 84. | Amended and Restated Company Agreement of Rand Advisors, LLC dated August 1, 2022<br>[HCMLPHMIT00004152-HCMLPHMIT00004176] | | |
| 85. | Amended and Restated Company Agreement of Rand PE Fund Management, LLC dated August 1, 2022<br>[HCMLPHMIT00004177-HCMLPHMIT00004201] | | |
| 86. | Membership Interest Purchase Agreement Rand Advisors dated August 1, 2022<br>[HCMLPHMIT00004202-HCMLPHMIT00004215] | | |
| 87. | Member and Manager Consent of Rand Advisors, LLC dated October 13, 2022<br>[HCMLPHMIT00004216-HCMLPHMIT00004218] | | |
| 88. | Member and Manager Consent of Rand PE Fund Management, LLC dated October 13, 2022<br>[HCMLPHMIT00004219-HCMLPHMIT00004221] | | |
| 89. | 3/17/2025 Rand Advisors Form ADV<br>[HCMLPHMIT00003465-HCMLPHMIT00003493] | | |
| 90. | Atlas IDF, LP Subscription 12/21/2015 (signature pages only) | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**                    **PAGE 9 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000809

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 91. | Atlas IDF, LP Subscription 12/23/2015 (signature page only) | | |
| 92. | Atlas IDF LP SEC Form D dated February 24, 2025 [HCMLPHMIT00003518-HCMLPHMIT00003522] | | |
| 93. | Rand PE Fund I, L.P. SEC Form D dated February 24, 2025 [HCMLPHMIT00004096-HCMLPHMIT00004100] | | |
| 94. | Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated September 24, 2015 [HCMLPHMIT00004115-HCMLPHMIT00004123] | | |
| 95. | Second Amended and Restated Limited Liability Company Agreement of Beacon Mountain LLC dated February 12, 2025 | | |
| 96. | Bylaws of The Okada Family Foundation, Inc. (final version) | | |
| 97. | Bylaws of Empower Dallas Foundation, Inc. | | |
| 98. | Crown Global DVA Policy 30218 (signed) | | |
| 99. | Crown Global DVA Termsheet 30218 | | |
| 100. | Crown Global DVA Policy 30219 (signed) | | |
| 101. | Crown Global DVA Termsheet 30219 | | |
| 102. | Crown Global Rand Participation Agreement (Executed) | | |
| 103. | S&G HMIT Opinion Rep Letter dated January 29, 2016 | | |
| 104. | S&G HMIT Opinion dated January 29, 2016 | | |
| F. | **Dugaboy Note** | | |
| 105. | Promissory Note $24,268,621.69 dated May 31, 2017 [HCMLPHMIT00001327-HCMLPHMIT00001328] | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025** **PAGE 10 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000810

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 106. | The Dugaboy Investment Trust Offering of $1817M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002323-HCMLPHMIT00002327] | | |
| 107. | Participation Agreement for Par/Near Par Trades dated July 18, 2024<br>[HCMLPHMIT00002594-HCMLPHMIT00002600] | | |
| 108. | $18.5mm Dugaboy Note Attempted Sale – Process Update<br>[HCMLPHMIT00002601] | | |
| 109. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002602-HCMLPHMIT00002607] | | |
| 110. | The Dugaboy Investment Trust $18.17M Promissory Note Owed to HCMLP February 2024<br>[HCMLPHMIT00002608-HCMLPHMIT00002630] | | |
| 111. | Highland Claimant Trust Recommended Dugaboy Note Contribution dated June 7, 2024<br>[HCMLPHMIT00002631-HCMLPHMIT00002636] | | |
| 112. | Email from D. Klos to DC Sauter dated May 23, 2024<br>[HCMLPHMIT00002637-HCMLPHMIT00002639] | | |
| **G.** | **Capital Account Amounts** | | |
| 113. | Highland Capital Management, L.P. Consolidated Financial Statement and Supplemental Information dated December 31, 2018<br>[HCMLPHMIT00002548-HCMLPHMIT00002593] | | |
| 114. | Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. dated December 24, 2015<br>[HCMLPHMIT00002641-HCMLPHMIT00002676] | | |
| 115. | 2018 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT)<br>[HCMLPHMIT00001332; HCMLPHMIT00001336; HCMLPHMIT00001414; HCMLPHMIT00001419; HCMLPHMIT00001424; HCMLPHMIT00001429; HCMLPHMIT00001434; HCMLPHMIT00001439] | | |

**WITNESS AND EXHIBIT LIST FOR HEARING ON JUNE 25, 2025**    **PAGE 11 OF 14**
SF 4897-3339-1694.4 36027.002 DOCS_NY:42648.1 36027/002

000811

| Number | Exhibit | Offered | Admitted |
|---|---|---|---|
| 116. | 2019 Tax Return for Highland Capital Management, LP (sig page, p. 1 of return, p. 1 of each partners' Schedule K-1 (Strand, Okada, MAP 1, MAP 2, Dugaboy, HMIT) [HCMLPHMIT00001726; HCMLPHMIT00001766; HCMLPHMIT00001865; HCMLPHMIT00001870; HCMLPHMIT00001875; HCMLPHMIT00001880; HCMLPHMIT00001885; HCMLPHMIT00001890] | | |
| 117. | Monthly Operating Report – FINAL November 2019 [HCMLPHMIT00001329] | | |
| 118. | Hunter Mountain Note Receivable October 15, 2019 [HCMLPHMIT00001330] | | |
| **H.** | **Dallas Foundation Issues** | | |
| 119. | Affidavit of James Dondero in the Grand Court of Cayman Islands FSD2025-0099 dated April 16, 2025 [HCMLPHMIT00003429-HCMLPHMIT00003438] | | |
| 120. | Email from J. Pomerantz to D. Curry, M. Okin dated June 19, 2025 | | |
| **I.** | **Plan, CTA, and Litigation Trust Agreement** | | |
| 121. | *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Pages 26-29, (entire document can be found at Docket No. 1808) Excerpts: Article IV. B.1-5 (pages 26-28) Article IV. B.5 (pages 28-29) Article IV. B.7 (page 30) Article IV. B.10 (page 31) Article IV. D. (pages 34-35) Article VII. D.1-2 (pages 44-45) Article XI (pages 53-55) | | |

| Number | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| 122. | *Claimant Trust Agreement*, (entire document can be found at Docket No. 1811-2, as modified by Docket No. 1875-4)<br><br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2(a)-(b) (page 8)<br>Section 3.2(a)-(b) (pages 11-12)<br>Section 3.2(c)(iv) (page 12)<br>Section 2.3(b)(ix) (page 9) | | |
| 123. | *Litigation Sub-Trust Agreement*, (entire document can be found at Docket No. 1811-4)<br><br>Excerpts:<br>Fourth "Whereas" clause (page 1)<br>Section 2.2 (page 5)<br>Section 3.2(a) (page 7)<br>Section 3.2(b) (page 7)<br>Section 3.2(c)(v) (page 7)<br>Section 3.3 (b)(iii) (page 9) | | |
| 124. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |
| 125. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| 126. | All exhibits identified by or offered by any other party at the Hearing | | |

Dated:  June 20, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Jordan A. Kroop (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
jkroop@pszjlaw.com
hwinograd@pszjlaw.com

 - and -

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*
*and the Highland Claimant Trust*

**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**

Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

-and-

**SIDLEY AUSTIN LLP**

Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of the Highland Litigation*
*Sub-Trust*

**EXHIBIT 1**

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
Gregory V. Demo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100

SIDLEY AUSTIN LLP
Paige Holden Montgomery
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Highland Capital Management,*
*L.P. and the Highland Claimant Trust*

*Co-Counsel for Marc S. Kirschner, as*
*Litigation Trustee of The Highland*
*Litigation Sub-Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |

**DECLARATION OF GREGORY V. DEMO IN SUPPORT OF MOTION FOR ENTRY**
**OF AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 363**
**APPROVING SETTLEMENT WITH THE HMIT ENTITIES AND AUTHORIZING**
**ACTIONS CONSISTENT THEREWITH**

       I, Gregory V. Demo, pursuant to 28 U.S.C. § 1746, under penalty of perjury, declare as

follows:

---

[1] The last four digits of the Debtor's taxpayer identification number are 8357. The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.



1.      I am an attorney at the law firm Pachulski Stang Ziehl & Jones LLP, counsel to Highland Capital Management, L.P., and I submit this Declaration in support of the *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith*, being filed concurrently with this Declaration.  I submit this Declaration based on my personal knowledge and review of the documents listed below.

2.      Attached as **<u>Exhibit 1</u>** is a true and correct copy of the *Settlement Agreement and General Release*, dated as of May 19, 2025, by and among, Highland Capital Management, L.P., the Highland Claimant Trust, the Highland Litigation Sub-Trust, and the Highland Indemnity Trust, on the one hand, and Hunter Mountain Investment Trust, Beacon Mountain LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, Atlas IDF GP, LLC, on the other hand.

*[Signature Page Follows]*

000817

HCMLPHMIT00002689

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: May 19, 2025.            /s/ Gregory V. Demo
                                       Gregory V. Demo

HCMLPHMIT00002690

# EXHIBIT 1

000819
HCMLPHMIT00002691

EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 19, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the  "**HMIT Entities**"), on the other hand. The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

000820


HCMLPHMIT00002692

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

2

000821

HCMLPHMIT00002693

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant

3

000822

HCMLPHMIT00002694

Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming

000823

HCMLPHMIT00002695

through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity

000824

HCMLPHMIT00002696

trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement, but excluding Highland, the Claimant Trust, and their respective assets.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in <u>Sections 1 – 2</u> and <u>Sections 9 - 16</u>.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"**Operating Expenses**" means, except for the expenses of the Indemnity Trust (including any payments to Trust Indemnified Parties or Indemnified Parties (in each case, as defined, and pursuant to the terms and conditions set forth, in the Indemnity Trust Agreement)), the expenses of operating and administering the Highland Entities, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

000825

HCMLPHMIT00002697

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threatened restraining orders or injunctions made in writing, or similar written actions of any kind, or sworn statements evidencing the same, in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable statute of limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats received by the Indemnity Trust with respect to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by the Indemnity Trust to the HMIT Entities, within five (5) Business Days after receipt of such Threat.

## RECITALS

7

000826

HCMLPHMIT00002698

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities and certain other Highland Covered Parties, including those asserted in the Pending Litigation;

**WHEREAS**, certain distributions to be made to the holders of allowed Class 10 Claims or Equity Interests pursuant to the terms and subject to the conditions set forth herein are premised on the consent of certain Highland Covered Parties in their capacity as Holders of Class 9 Interests, and such Persons are only willing to provide such consent in exchange for the releases as set forth in this Agreement;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities and their respective indemnitees, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted or attempted to be asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

000827

HCMLPHMIT00002699

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1. <u>Stay and Dismissal of Pending Litigation With Prejudice</u>.

(a)    Within five (5) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to stay the Pending Litigation.

(b)    Within five (5) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2. <u>Maintenance of Stay and Dismissal of Certain Defendants from the Amended Complaint</u>.

(a)    The Litigation Trustee shall continue to maintain the stay of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within five (5) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Counts I, II, III, and XXIV of the Amended Complaint.

3. <u>Cash Payment to HMIT</u>.  Within five (5) Business Days following the Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of Five Hundred Thousand Dollars (US$500,000.00) (the "**Payment**") by wire transfer:

> Hunter Mountain Investment Trust
> C/o CLO Holdco, LLC
> Hancock Whitney
> Account # - 071173413
> Routing # - 113000968
> (469) 604-0955

4. <u>HMIT Class 10 Interest</u>.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable,

9

000828

HCMLPHMIT00002700

statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement. Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c) Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of or encumber the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto (collectively, a "**Class 10 Assignment**"), and any attempted Class 10 Assignment shall be null and void.

(d) For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    Initial Interim Distributions on the Allowed Class 10 Interests.

(a) Within five (5) Business Days after the Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Ten Million Dollars (US$10,000,000.00) (the "**Initial Interim Cash Distribution Amount**"), by means of wire transfer with the Pro Rata portion in respect of the HMIT Class 10 Interest sent to the wire instructions contained in Section 3 ("**Wire Transfer**").

(b) Within five (5) Business Days after the Bankruptcy Court Approval Date (the "**Note Assignment Date**"), the Highland Entities shall cause the portion of the Dugaboy Note held by the Highland Entities to be distributed to HMIT in-kind and take all actions necessary for HMIT to become the holder of such portion of the Dugaboy Note, and shall in addition pay to HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the Highland Entities, including the Indemnity Trust, from the Agreement Date to the Note Assignment Date. Prior to the Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting that the Dugaboy Note can be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

6.    Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a) On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the

000829
HCMLPHMIT00002701

Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00), by Wire Transfer.

(b)   On December 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Six Million Five Hundred Thousand Dollars (US$6,500,000.00) by Wire Transfer.

(c)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution or Second Subsequent Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.   <u>Final Distribution on the Allowed Class 10 Interests</u>.

(a)   On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; <u>provided</u>, <u>however</u>, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)   The Indemnity Trust agrees to not use Indemnity Trust Assets to fund Operating Expenses.

(c)   Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.   <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)   Within five (5) Business Days after the Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>, the Litigation Sub-Trust shall execute a short-

000830

HCMLPHMIT00002702


form assignment in in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (the "**Kirschner Transfer**"). Such assignment shall be in a form mutually acceptable to the Parties and its substance shall be consistent with the terms, conditions and limitations set forth in this Agreement, including Section 8(b) below. Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including the terms of Section 8(c) below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no recourse against any Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint. The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (i) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (ii) any HMIT Entity materially breaches this Agreement, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     General Release By The HMIT Entities. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants,

000831

HCMLPHMIT00002703

administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence asserted by any HMIT Entity in the Pending Litigation or in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.     <u>General Release By The Highland Entities</u>. On the Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) and all Persons claiming through, under or on their behalf (collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**Highland Released Claims**").

11.     <u>Further Provisions Concerning The General Releases</u>.

(a)     **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

000832
HCMLPHMIT00002704

(b)      To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)      Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)      As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

000833
HCMLPHMIT00002705

(i)     any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

(ii)     any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.     <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)     Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, investigate, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)     Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, investigate, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)     For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.     <u>Representations and Warranties</u>.

(a)     Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)     The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the

000834
HCMLPHMIT00002706

other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

(c)     Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)     Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.     <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Released Parties, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.     <u>Gatekeeper Standard</u>.

(a)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and any Persons claiming through, under or on behalf of any of them, and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

000835
HCMLPHMIT00002707

(b)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test," and that the dismissal of the Pending Litigation shall have res judicata effect.

16.     <u>Indemnification</u>.

(a)     Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)     Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT

000836

HCMLPHMIT00002708

Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action. Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

17.    <u>Execution</u>. This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel. All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    <u>Bankruptcy Court Order</u>. The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order. To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date. Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby. If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no effect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in <u>Section 4</u> to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>. Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>. Notwithstanding the foregoing, if any Party hereto, any Highland Released Party, or any HMIT Released Party brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Person in that Action shall be entitled to have and recover from the non-prevailing Person all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Person may suffer or incur in the pursuit or defense of such action or proceeding.

000837

HCMLPHMIT00002709

20. <u>Entire Agreement; No Other Representations</u>. **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PERSON OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT. THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21. <u>Agreement and Release Knowing and Voluntary</u>. The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement. The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22. <u>Cooperation</u>. The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard. For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23. <u>Governing Law</u>. This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24. <u>Jurisdiction/Venue</u>. The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any Action arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or

000838

HCMLPHMIT00002710

subject matter jurisdiction to adjudicate an Action arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim, including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

000839

HCMLPHMIT00002711

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt
301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

*[Signature page follows]*


000840
HCMLPHMIT00002712

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By       /s/ Mark Patrick
          Name:      Mark Patrick
          Title:       Administrator
          Date:       May 19, 2025

**BEACON MOUNTAIN LLC**

By       /s/ Mark Patrick
          Name:      Mark Patrick
          Title:       President
          Date:       May 19, 2025

**RAND ADVISORS, LLC**

By       /s/ Mark Patrick
          Name:      Mark Patrick
          Title:       President
          Date:       May 19, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By       /s/ Mark Patrick
          Name:      Mark Patrick
          Title:       President
          Date:       May 19, 2025

**RAND PE FUND MANAGEMENT, LLC**

By       /s/ Mark Patrick
          Name:      Mark Patrick
          Title:       President
          Date:       May 19, 2025

000841
HCMLPHMIT00002713

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____/s/ Mark Patrick_____
      Name:     Mark Patrick
      Title:      President
      Date:      May 19, 2025

**ATLAS IDF GP, LLC**

By _____/s/ Mark Patrick_____
      Name:     Mark Patrick
      Title:      President
      Date:      May 19, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By _____/s/ James P. Seery, Jr._____
      Name:     James. P. Seery, Jr.
      Title:      Chief Executive Officer
      Date:      May 19, 2025

**HIGHLAND CLAIMANT TRUST**

By _____/s/ James P. Seery, Jr._____
      Name:     James P. Seery, Jr.
      Title:      Claimant Trustee
      Date:      May 19, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By _____/s/ Marc S. Kirschner_____
      Name:     Marc S. Kirschner
      Title:      Litigation Trustee
      Date:      May 19, 2025

000842

HCMLPHMIT00002714

**HIGHLAND INDEMNITY TRUST**


By     /s/ James P. Seery, Jr.
             Name:      James P. Seery, Jr.
             Title:       Indemnity Trust Administrator
             Date:      May 19, 2025

000843
HCMLPHMIT00002715

**EXHIBIT 2**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** RE: Highland: Confidentiality Agreement (draft)
**Date:** Wed, 5 Mar 2025 13:23:52 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

Appreciate it.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, March 5, 2025 7:22 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Re: Highland: Confidentiality Agreement (draft)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Thanks, Louis.

HCMLPHMIT00000015

I hope your mother is comfortable and stable. I can relate to caring for elderly parents . . .

Anyway, I'll wait to hear from you.

Chat soon,

John

Sent from my iPhone

On Mar 5, 2025, at 8:16 AM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:

Thank you John,

I have fallen a bit behind.  After I talked to you from Wisconsin my mother had to be hospitalized and I had to rearrange my travel to get back to LA.  She got home yesterday evening, but still involved with getting home health, sitters, etc.

I hope to get back at things close to full time by tomorrow.  To be sure, my clients are pushing me.

**Louis M. Phillips**
*Partner*

<image001.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, March 4, 2025 4:32 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Highland: Confidentiality Agreement (draft)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis,

Following up, to aid our discussions, attached is a draft Confidentiality Agreement under which Highland would consider providing confidential information.

We look forward to hearing from you on this and related matters.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn

<image004.jpg>
Los Angeles | New York | Wilmington, DE | Houston | San Francisco

# EXHIBIT 3

000848

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** RE: Slight interruption
**Date:** Thu, 13 Mar 2025 21:35:13 +0000
**Importance:** Normal
**Inline-Images:** image006.png; image007.jpg; image008.jpg; image001.png

---

Slight but nothing big.  Hopefully by first of week

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, March 13, 2025 4:26 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** RE: Slight interruption

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Wow.

000849

HCMLPHMIT00000022

You can't catch a break.

I hope there's no injuries.

Chat soon.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Thursday, March 13, 2025 5:10 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Subject:** FW: Slight interruption

John,

Please see below.  Hope to finish my draft proposal for my client to review tomorrow. Then as soon as possible to get It to you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Louis Phillips <louis.phillips10505@gmail.com>
**Sent:** Thursday, March 13, 2025 4:09 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Slight interruption

HCMLPHMIT00000023

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.





**Louis M. Phillips**
*Partner*


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the

000852

HCMLPHMIT00000025

Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

000853

HCMLPHMIT00000026

**EXHIBIT 4**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx
**Date:** Tue, 18 Mar 2025 16:03:57 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

Sure.  Take care.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, March 18, 2025 10:52 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx

HCMLPHMIT00000028

EXTERNAL SENDER ALERT: This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Thank you, Louis.

I'm in LA for a deposition today but will be in touch shortly, hopefully tomorrow.

Chat soon.

John

Sent from my iPhone


On Mar 18, 2025, at 8:18 AM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:

John,

Please see a very minor set of proposed revisions.  While I am finalizing our proposal with my clients, a couple of questions:  (i) Do you have a proposed form of joinder as described in Section 4?  (ii) is it sufficient as far as you are concerned for me to send you via email a list of Representatives as defined in Section 4 for your review and approval?


**Louis M. Phillips**
*Partner*

<image003.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5508

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


<Confidentiality Agreement - M. Patrick and Related Entities.001(Highland Draft 03.04.2025).docx>


HCMLPHMIT00000029

**EXHIBIT 5**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: NDA w/ Patrick and Related Entities
**Date:** Wed, 19 Mar 2025 17:55:25 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

John,

One thing I noticed, and should mention up front:  Re #3 on Exhibit A, if we get to a settlement then HMIT can withdraw its appeal, but we have no influence with respect to Dugaboy. Just mentioning up front. I will get back with you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, March 19, 2025 12:35 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

HCMLPHMIT00000030

**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <amelia.hurt@kellyhart.com>
**Subject:** Highland: NDA w/ Patrick and Related Entities

*EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.*

Louis,

After accepting all your changes, we made a few further changes and added the Exhibits, all of which are reflected in the blackline.

If this version is acceptable, please have it signed and sent back to us at your earliest convenience and we'll promptly send a countersigned copy.

Let's chat to discuss any questions you may have or how you envision this proceeding.

I look forward to speaking with you.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

HCMLPHMIT00000031

EXHIBIT 6

## CONFIDENTIALITY AGREEMENT

    This CONFIDENTIALITY AGREEMENT (this "**Agreement**") is entered into as of March 18, 2025 (the "**Effective Date**") by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**" or the "**Disclosing Party**"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("**Mr. Patrick**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**Hunter Mountain**"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**"), CDH GP, Ltd., a Cayman Islands exempted company ("**DAF GP**"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**", and together with DAF Holdco, DAF GP and DAF Fund, the "**DAF Entities**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**Rand Entities**", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "**Recipients**"), on the other hand.  Highland and the Recipients are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

### Recitals

    WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

    WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on Exhibit A hereto (collectively, the "**Pending Litigations**");

    WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "**Potential Settlement**");

    WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

    WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

### Agreement

    NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

000861

HCMLPHMIT00000032

**1.**      **Representations and Warranties**

     (a)      Each Party hereby represents and warrants to the other Parties as follows:

         (i)      <u>Existence and Good Standing</u>. Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed. Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates. Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

         (ii)      <u>Authority; Enforceability</u>. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement. The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law. This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

         (iii)      <u>No Violations</u>. The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

         (1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

         (2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

         (iv)      <u>Legal Proceedings</u>. There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

     (b)      Each Recipient hereby represents and warrants to Highland as follows:

         (i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the "**Dondero Related Parties**") directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

000862

HCMLPHMIT00000033


(ii)  Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii)  Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

## 2.    Confidential and Proprietary Nature of the Information

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

## 3.    Confidential Information

As used in this Agreement, the term "**Confidential Information**" means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the "**Highland Related Parties**")), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

3

HCMLPHMIT00000034

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

4.       **Restricted Use of Confidential Information**

Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement. It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "**Representatives**") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

000864

HCMLPHMIT00000035

## 5.    Legally Compelled Disclosure

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

## 6.    Return or Destruction of Confidential Information

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

## 7.    No Obligation to Negotiate a Potential Settlement

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

## 8.    No Representations or Warranties

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

000865
HCMLPHMIT00000036

9.    **Miscellaneous**

(a)    <u>Modification</u>.  This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)    <u>Waiver</u>.  Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)    <u>Certain Definitions</u>.

(i)  The term "**Governmental Entity**" means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii)  The term "**Law**" means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii)  The term "**Organizational Documents**" means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv)  The term "**Person**" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)    <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)    <u>Breach</u>.  Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

000866
HCMLPHMIT00000037


shall be in addition to all other remedies available at law or equity.  The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.

(f)    <u>Liability and Indemnity</u>.  Recipients shall, jointly and severally, be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient or its Representatives violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.

(g)    <u>Notices</u>.   All notices, requests, demands, claims, and other communications hereunder shall be in writing.   Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:        Highland Capital Management, L.P.
                       100 Crescent Court, Suite 1850
                       Dallas, Texas 75201
                       Attention: James P. Seery, Jr.
                       Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

                       With copies to:

                       Pachulski Stang Ziehl & Jones LLP
                       780 3rd Avenue #34
                       New York, New York 10017
                       Attention: John A. Morris
                       Email: jmorris@pszjlaw.com

If to Recipients:      c/o Mark Patrick
                       6716 Glenhurst Dr.
                       Dallas, Texas 75254
                       Email: mpatrick@dafholdco.com

                       With copies to:

                       Kelly Hart & Pitre
                       301 Main Street Suite 1600
                       Baton Rouge, Louisiana 70801
                       Attention: Louis M. Phillips
                       Email: Louis.Phillips@kellyhart.com

000867

HCMLPHMIT00000038

(h)    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)    <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)    <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)    <u>Construction</u>.    This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

[SIGNATURES ON FOLLOWING PAGE]

8

000868

HCMLPHMIT00000039

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**RECIPIENTS:**

_____
MARK PATRICK

HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator

CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director

CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

000869

HCMLPHMIT00000040

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General
Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President


Type text here


SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

HCMLPHMIT00000041

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____
Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____
Name: Mark Patrick
Title: President

000871

HCMLPHMIT00000042

## EXHIBIT A

## <u>PENDING LITIGATION</u>

1.   DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.   HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.   HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.   HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.   DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

**EXHIBIT B**

**JOINDER TO CONFIDENTIALITY AGREEMENT**

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of _____, _____, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and _____ (the "**Joining Party**").  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any

000873

HCMLPHMIT00000044

Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

3.       Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**


_____
Name: _____

000874

HCMLPHMIT00000045

**EXHIBIT 7**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement
**Date:** Sat, 22 Mar 2025 17:32:58 +0000
**Importance:** Normal
**Inline-Images:** image002.png; image001.jpg; image002(1).png; image001(1).jpg

---

Thank you John. We will be in touch very soon

Louis M. Phillips
On March 22, 2025 at 12:35:38 PM EDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Louis and Amelia,

Attached is a fully executed copy of the Confidentiality Agreement.

Please let us know when you expect to send a proposal.  We are prepared to meet with you and Mark (and any other Representatives who sign the NDA) in Dallas or New York promptly thereafter.

I'm available if you want to discuss anything in the interim.  Otherwise, have a good weekend.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Saturday, March 22, 2025 11:34 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@highlandcapital.com>; Tim Cournoyer <TCournoyer@highlandcapital.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Hayley R. Winograd <hwinograd@pszjlaw.com>; Jordan A. Kroop <Jkroop@pszjlaw.com>
**Subject:** Re: Confidentiality Agreement

EXECUTED

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Saturday, March 22, 2025 at 10:20 AM
**To:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Cc:** David Klos <DKlos@highlandcapital.com>, Tim Cournoyer
<TCournoyer@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V.
Demo <GDemo@pszjlaw.com>, Hayley R. Winograd <hwinograd@pszjlaw.com>, Jordan A. Kroop
<Jkroop@pszjlaw.com>
**Subject:** FW: Confidentiality Agreement

Jim,

Louis sent back a signed NDA.

There is at least one change (the deletion of the word "Dugaboy" from item 3 of Exhibit A, which is fine), but
he didn't send a black line so I'm trying to confirm there is nothing else.

If anyone knows how to compare, please do so.

But send me the signed version in the meantime at your convenience.

Also, it might make sense to dust off the "litigation protections" and conform them to the Patrick parties.
Please let me know if you and Tim want to handle that or if you want us to do so; I'm not sure when we
present them to Louis, but we should be prepared.

I'll be available to talk between 11:30 and 5 pm today.

Chat soon,

John

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Saturday, March 22, 2025 8:45 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Confidentiality Agreement

John,

I missed that Mark had executed a slightly revised version (word document attached), but found it
last evening.  Apologies.  Please get mean executed version from Mr. Seery.  Thanks.

**Louis M. Phillips**
*Partner*

000877
HCMLPHMIT00000047



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



000878
HCMLPHMIT00000048

**EXHIBIT 8**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Question re settlement process/term sheet
**Date:** Mon, 24 Mar 2025 16:00:18 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image001.png

---

I have the same view, and think it is the best approach.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, March 24, 2025 9:59 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Question re settlement process/term sheet


HCMLPHMIT00000052

**EXTERNAL SENDER ALERT** This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

Under Article IX of the Plan, the Bankruptcy Court retains jurisdiction to approve, among other things, the resolution of Claims, Equity Interests, and pending litigation. Based on that, HCMLP and the Claimant Trust expect to seek Bankruptcy Court approval of any settlement we may reach.

Please let me know if you have a different view.

Regards,

John

**John A. Morris**

Pachulski Stang Ziehl & Jones LLP

Direct Dial: 212.561.7760

Tel: 212.561.7700 | Fax: 212.561.7777

jmorris@pszjlaw.com

vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, March 24, 2025 6:49 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Question re settlement process/term sheet

John,

I would like your view as to whether a settlement agreement, if we reach one, should be made subject to Court approval (or, maybe if it can be). I know we need to account for our agreement with HCLOM, as our agreement supersedes the effect of the agreed order, and says in part that HCLOM has no Class 10 interest. Maybe that is the basis for the Court having authority. Would like your thoughts on what you are assuming re the process and of the Court's authority post-effective date. I admit I did not consult the plan or confirmation order before sending this

**Louis M. Phillips**
*Partner*

HCMLPHMIT00000053

**KELLY HART & PITRE**
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

000882

**EXHIBIT 9**

000883

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jeff Pomerantz"
<jpomerantz@pszjlaw.com>
**Subject:** Re: The proposed list of Representatives under the CA
**Date:** Tue, 25 Mar 2025 21:43:09 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image002.png; image001(1).jpg; image002(1).png

---

Thank you John

Louis M. Phillips
On March 25, 2025 at 4:29:51 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis,

Assuming everyone reads and can stand by the representations in the CA and Joinder, the Highland side has no objection to any of the individuals listed below.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, March 24, 2025 10:36 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** The proposed list of Representatives under the CA

John,

We propose the following list of Representatives under the Confidentiality Agreement.  Please advise.  Once you have approved I will get the joinders executed.

000884

HCMLPHMIT00000055

Louis M. Phillips and Amelia L. Hurt -- Kelly Hart

Shawn Raver -- Chief Operating Officer and Assistant General Counsel Charitable DAF Holdco, Ltd.
Sawnie A. McEntire -- Parsons McEntire McCleary PLLC
Brian P. Shaw -- Carrington Coleman
James D. Shields -- Shields Legal Group
Paul Murphy -- Director CLO HoldCo - Stanbrook Prudhoe (Cayman)

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



**EXHIBIT 10**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Draft Settlement Term Sheet 3.28 Clean.DOCX -- Subject to Rule 408; Confidential Settlement Discussions
**Date:** Fri, 28 Mar 2025 20:49:20 +0000
**Importance:** Normal
**Attachments:** Draft_Settlement_Term_Sheet_3.28_Clean.DOCX
**Inline-Images:** image003.png

---

John,

Please see our draft Settlement Term Sheet ("Draft"). As we assume there will be comments we have not included signature blocks or attached exhibits. I can send Exhibit B either later today or over the weekend (trying to get something else out). I look forward to hearing from you.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.



**EXHIBIT 11**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** Re: Follow up
**Date:** Sun, 30 Mar 2025 23:51:41 +0000
**Importance:** Normal

---

John,

Either works tomorrow. Probably earlier is better for me.

Louis M. Phillips
On March 30, 2025 at 6:17:02 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi.

Are you free to chat with Jeff and me either tomorrow, between 11 and noon or 5:30 pm eastern or Tuesday between 1 and 3 pm or 4 to 6 pm eastern?

If you want one other lawyer to join, that's fine. We'd prefer not a big group for the initial call.

Let us know.

Thanks.

Sent from my iPhone

**EXHIBIT 12**

000890

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Executed Intercreditor Agreement -- settlement Discussions subject to Rule 408; Confidential and Protected
**Date:** Mon, 31 Mar 2025 17:12:01 +0000
**Importance:** Normal
**Attachments:** HCLOM__Intercreditor_Agreement_(HMIT)_Execution_Version.pdf
**Inline-Images:** image001.png

---

John and Jeff,

Please see Exhibit B.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000059

**EXHIBIT 13**

## INTERCREDITOR AND PARTICIPATION AGREEMENT

This Intercreditor and Participation Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between Highland CLO Management, Ltd. (together with its successors and assigns in such capacities, "HCLOM Ltd.") and Hunter Mountain Investment Trust (together with its successors and assigns in such capacities, "HMIT"). HCLOM Ltd. and HMIT are each referred to herein individually as a "Party" and jointly as the "Parties."

## RECITALS

WHEREAS, on September 22, 2020, Highland Capital Management, L.P. filed a Notice of Filing of Debtor's Amended Schedules in its pending Chapter 11 Case No. 19-34054-sgj11 (the "Bankruptcy Case") in which it, among other things, scheduled a creditor's claim by HCLOM Ltd. (the "HCLOM Claim"); and

WHEREAS, on December 27, 2024, the Bankruptcy Court entered a Stipulated and Agreed Order Resolving (A) HCLOM, Ltd.'s Scheduled Claims 3.65 and 3.66; and (B) Highland Capital Management, L.P.'s (1) Objection and (2) Motion for a Bad Faith Finding and an Award of Attorneys' Fees Against HCLOM, Ltd. and James Dondero in Connection Therewith [Docket Nos. 3657, 4176] in the Bankruptcy Case (the "Stipulation and Agreed Order"); and

WHEREAS, the Stipulation and Agreed Order converted the HCLOM Claim to a Class 10 interest/claim (as such is defined in Article III.H. ¶ 10 of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) in the Bankruptcy Case) (the "Plan") in the amount of $10,140,633.26; and

WHEREAS, the Parties have agreed to certain rights and priorities solely as between themselves regarding HCLOM Ltd.'s participation in the payment of Class 10 interests/claims;

THEREFORE, for and in consideration of the promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.    **HMIT Payment Obligation to HCLOM Ltd.** Upon HMIT's receipt of distributions on account of its Class 10 interest/claim (the "Distributions"), HMIT will pay to HCLOM Ltd. an amount equal to five percent (5%) of the funds received by HMIT within two (2) business days after receipt of indefeasible funds by HMIT (the "HMIT Payment Obligation"). HMIT shall be entitled to deduct from the Distributions the fees and expenses billed by Kelly Hart Hallman, LLP which directly relate to the Stipulation and Agreed Order or this Agreement (the "HMIT Expenses") until all HMIT Expenses are paid in full.

2.    **No Additional Duties to HCLOM Ltd.** HMIT shall retain and have the sole discretion to act with respect to its Class 10 interest/claim, and shall owe no additional duties to HCLOM Ltd. or any other person or entity, including without limitation, with respect to (i) the amount of Distributions or recovery by HMIT on account of its Class 10 interests/claims,

1

000893

HCMLPHMIT00000060

(ii) the amount of Distributions that could be received by any holder of Class 10 interests/claims, (iii) the rights of any holder of Class 10 interests/claims, or (iv) any pleading or document that could or should be filed in any way related to the Bankruptcy Case, the Plan, or the HMIT Class 10 interests/claims.

3.     **No Liens or Encumbrances**. HMIT will not take any action that could reasonably be expected to encumber HMIT's Class 10 interests/claims, limit or affect HMIT's right or ability to fulfil and perform the HMIT Payment Obligation, or limit or affect HCLOM Ltd.'s right to receive the Distributions.

4.     **This Agreement Supersedes the Effects of the Stipulated and Agreed Order Among the Parties**. HCLOM acknowledges and agrees that, notwithstanding the Stipulated and Agreed Order, the terms of this Agreement amends and supersedes the effect of the Stipulation and Agreed Order as between the Parties and HCLOM's rights to payment under the Plan are limited solely to the HMIT Payment Obligation.

5.     **Non-Interference; No Cause of Action**. Notwithstanding Paragraph 3, HCLOM will not have any rights to object to or otherwise interfere with the rights of HMIT as a holder of Class 10 interest to reach a settlement with Highland Capital Management, LP ("Highland"). HCLOM acknowledges that it shall have no right to notice or approval of such a settlement nor will it have any cause of action against HMIT arising out of any such settlement.

6.     **Remittance Agreement**. The Parties acknowledge that contemporaneously herewith NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO") have entered into that certain Remittance Agreement effective January 10, 2025 (the "Remittance Agreement"). HCLOM agrees that if NexPoint Small Bay fails to make the DAF Bridge Equity Payment (as defined in the Remittance Agreement) pursuant to the terms of the Remittance Agreement, HMIT will have no obligations to make the HMIT Payment Obligation, and HMIT shall not receive any distribution from HMIT or any other party related to any Class 10 interest/claim. Notwithstanding any failure of NexPoint Small Bay to adhere to the terms of the Remittance Agreement, HCLOM acknowledges that by executing this Agreement, it shall have no other recourse or rights to payment under the Plan other than the terms of this Agreement.

7.     **Choice of Law; Jurisdiction; Venue**. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

8.     **Amendments; Waivers**. No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

2

000894

HCMLPHMIT00000061

9.      **Binding Effect**. Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

10.     **Entire Agreement**. The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the parties acknowledge have been merged into this Agreement.

11.     **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Intercreditor and Participation Agreement as of the Effective Date set forth above and in the capacities set forth below.

000895
HCMLPHMIT00000062

HIGHLAND CLO MANAGEMENT, LTD.

By: _____

Name: __James Dondero_____

Title: ____President_____


HUNTER MOUNTAIN INVESTMENT TRUST

By: _____

Name: _____

Title: _____

000896

HCMLPHMIT00000063

**EXHIBIT 14**

000897

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt"
<Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up
**Date:** Wed, 2 Apr 2025 19:34:59 +0000
**Importance:** Normal
**Inline-Images:** image003.png; image003(1).png

---

Makes sense. I think having the non-outside lawyers is fine as a first step. Will send our list and appreciate your folks gathering what they think is involved.

Louis M. Phillips
On April 2, 2025 at 2:14:41 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis.

Dave Klos will contact Mark and Shawn to set up a business Zoom meeting for tomorrow morning.  We do not intend to have outside lawyers on the call but can if you think that would be best (we know Mark and Shawn are businessmen lawyers, and that's fine).

Please provide the list of information in advance of the call so we can be as responsive as possible.

To be efficient, the Highland team intends to present certain financial information tomorrow (subject to Fed. R. Evid. 408 and the Confidentiality Agreement) that we believe is relevant in all cases.

Please let us know if this makes sense; if so, we'll proceed.

Regards,

John

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Wednesday, April 2, 2025 1:29 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: Follow Up

Correct. Thought that was implicit.

**Louis M. Phillips**
*Partner*



KELLY
HART
PITRE

ATTORNEYS AT LAW

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Wednesday, April 2, 2025 12:15 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

I assume we have the "green light" in the nothing discussed on Monday is a conceptual deal breaker?

Please confirm.

Thanks.

Sent from my iPhone

On Apr 2, 2025, at 1:05 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:

John,

Would it be possible to do an initial Zoom call with those people?  Shawn is out of town for the rest of the week and he is needed.  Maybe your side could discuss the range of information they think is involved and my two people could give their view, in anticipation of a meeting maybe next week?

Mark and Shawn are available tomorrow morning until 1:00 pm central.

I am getting Shawn's Joinder, hopefully today

HCMLPHMIT00000076

**Louis M. Phillips**
*Partner*

<image003.png>

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at *louis.phillips@kellyhart.com*.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Tuesday, April 1, 2025 7:24 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland: Follow Up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

This assumes, of course, that you'll give the "green light" (*i.e.*, nothing discussed yesterday is a showstopper) in advance.

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Tuesday, April 1, 2025 7:14 AM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Follow Up

That sounds good. I will get back

Louis M. Phillips
On March 31, 2025 at 8:15:03 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

000900

CAUTION: EXTERNAL - This message originated outside the Kelly Hart domain. Please exercise caution when opening
attachments, following links or responding to this message.

Louis,

Dave Klos, Kirstin Hendrix, and some others are available later this week to share information with Mark and Shawn at
Highland's offices.  Jim Seery would likely participate by Zoom.

We thought meeting without lawyers might a good first step.  If that makes sense, let me know how Dave can reach out to Mark
and Shawn to set something up.

Chat soon,

John


Sent from my iPhone



HCMLPHMIT00000078

**EXHIBIT 15**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Re: Highland: Confidentiality Agreement
**Date:** Wed, 2 Apr 2025 21:53:34 +0000
**Importance:** Normal
**Inline-Images:** image001.jpg; image001(1).jpg

---

We agree. I have sent Shawn the rider. He is out of town but will get it back to me

Louis M. Phillips
On April 2, 2025 at 4:30:31 PM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis:

Attached is a copy of the Confidentiality Agreement signed by Mr. Seery in his capacities as the CEO of Highland and as the Claimant Trustee of the Highland Claimant Trust.

While the source of the information to be provided is HCMLP, we should have included the Highland Claimant Trust as an express signatory.

If you can acknowledge that Mr. Patrick agrees and understands that—notwithstanding any statement in the Agreement to the contrary—the Highland Claimant Trust is an intended signatory and beneficiary of the Agreement, we can proceed and amend the Agreement tomorrow to make that explicit.

Assuming that's not problematic, please also have Shawn execute the Rider in advance of tomorrow's meeting.

Thank you,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

000904
HCMLPHMIT00000080

**EXHIBIT 16**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>

**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>

**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>

**Subject:** Paul Murphy Joinder

**Date:** Thu, 3 Apr 2025 12:43:06 +0000

**Importance:** Normal

**Attachments:** Paul_Murphy_Joinder_to_CA.pdf

---

John and Jeff,

Please see the Joinder executed by Paul Murphy.  He will be with Mark and Shawn. I should have Shawn's this morning.

Louis M. Phillips
Partner

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


HCMLPHMIT00000081

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Paul Murphy (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Paul Murphy Joinder to CA.DOCX

000907


HCMLPHMIT00000082

3.    Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**


_____
Name: Paul Murphy

Paul Murphy Joinder to CA.DOCX

000908

HCMLPHMIT00000083

**EXHIBIT 17**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Subject:** Re: Catch up
**Date:** Fri, 4 Apr 2025 16:26:41 +0000
**Importance:** Normal

---

Will call as soon as I walk out

Louis M. Phillips
On April 4, 2025 at 11:26:06 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:

> **EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**
>
> ---
>
> Ok.  I have a call at 1 Eastern so please before then if time permits.
>
> Thanks,
>
> John
>
> Sent from my iPhone
>
>
> On Apr 4, 2025, at 12:16 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:
>
>
>
> Will break in 30 minutes
>
> Louis M. Phillips
> On April 4, 2025 at 10:14:42 AM CDT, John A. Morris <jmorris@pszjlaw.com> wrote:
>
> EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.
>
> Hi Louis.
>
> Give me a call when there is a break in the action down there: 1.646.341.3686
>
> Thanks,
>
> John
>
> Sent from my iPhone

HCMLPHMIT00000089

**EXHIBIT 18**

000911

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 12:11:45 +0000
**Importance:** Normal
**Inline-Images:** image004.jpg; image001.png

---

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas.  How many from your side would be participating in person?  I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be



used by any recipient for the purposes of avoiding penalties that may be imposed under federal law or for the purpose
of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

---

Louis:

I'm writing to follow up on several things.

1. <u>Litigation Protections</u>.  Attached are the "Litigation Protections" I mentioned.  They are still subject to review and material change but wanted to share them now.

2. <u>Follow up information</u>.  It sounds like yesterday's Zoom meeting was helpful.  Please let us know if there is any other information your clients need to assess the situation.

3. <u>HCMLP's diligence</u>.  We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. <u>Joinder signature</u>.  For completeness, please send us Shawn's signature page.

5. <u>Preliminary terms/structure</u>.  We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. <u>Further meeting</u>.  Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom).  Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John


**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



HCMLPHMIT00000091

HCMLPHMIT00000092

**EXHIBIT 19**

000915

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Joinder Agreement
**Date:** Mon, 7 Apr 2025 14:08:57 +0000
**Importance:** Normal
**Attachments:** Raver_Joinder.pdf
**Inline-Images:** image003.png

---

John,

Please see the Joinder executed by Shawn Raver.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** Shawn Raver <sraver@dafholdco.com>
**Sent:** Monday, April 7, 2025 9:04 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Subject:** Re: Joinder Agreement

EXTERNAL SENDER ALERT This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

000917

HCMLPHMIT00000094

# JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Shawn Raver (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement. The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Shawn Raver Joinder to CA (2).DOCX

000918

HCMLPHMIT00000095

3.      Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: Shawn Raver

Shawn Raver Joinder to CA (2).DOCX

000919
HCMLPHMIT00000096

**EXHIBIT 20**

000920

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up
**Date:** Mon, 7 Apr 2025 15:17:39 +0000
**Importance:** Normal
**Inline-Images:** image005.jpg; image006.png; image001.png

---

The structure suits me fine.  I will get with Mark and Shawn.  They would be the only ones.

You are correct you do not have joinders from Amelia and I.  The same thing occurred to me last night.  We will send (getting a pre-trial order and brief out for Noon, so maybe a bit after then).  Will get the Remittance Agreement out as well, and will get information re the other matters (I do not have it directly)

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT: 225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Monday, April 7, 2025 10:09 AM

HCMLPHMIT00000099

**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

Following up.

1. Meeting.  We propose that the business folks (including Mark and Jim) meet in person at Highland's offices at 10:30 am Central Time tomorrow (casual dress, no suits), with lawyers participating by Zoom; if you want to attend in person, Jeff may attend in person as well so let me know (I am unable to attend in person because of other commitments).

2. DAF/HMIT information request.  During tomorrow's meeting, Highland will provide the information requested below (and can quickly walk through the same information that was presented the other day for your benefit if that would be helpful).

3. Highland information request.  As requested, please provide a copy of the Remittance Agreement referred to in the Intercreditor Agreement and share with us any other agreements or information concerning any current or former connection between DAF/CLOH/HMIT and Dondero/Okada/Dugaboy, including the funding of the HMIT litigation (that Mark testified to in June 2023) and the disposition of the HMIT Notes made in favor of Dugaboy and Okada. We just need to know how any agreement may impact the Dondero side, if at all.

4. NDA signatures.  Please let us know who will be participating on your side and send any Joinders not previously sent (I'm not sure we received one for you and Amelia).

We look forward to your prompt response.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Monday, April 7, 2025 8:12 AM
**To:** John A. Morris <jmorris@pszjlaw.com>

000922

HCMLPHMIT00000100

Cc: Jason Katz <jkatz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/DAF/HMIT: Follow up

John,

As I mentioned on the phone Friday, we request a breakdown and documentation with specificity of any (i) accrued liabilities, (ii) anticipated success or severance (or completion) payments or bonuses, (iii) continuing admin budget for the Claimant trust, Indemnification sub trust and/or litigation sub trust, and (iv) the identity and amount and basis for any holdback(s).

We are available Tuesday in Dallas.  How many from your side would be participating in person?  I am trying to get my travel plans situated and to make sure my travel might add to the process (for example if you, Jeff, et al from Pachulski are attending remotely so might I). I believe I can get an early flight out in the morning arriving around 7:00 am or a bit later one arriving around 8:45.



**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308


*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, April 4, 2025 3:54 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/DAF/HMIT: Follow up

HCMLPHMIT00000101

EXTERNAL SENDER ALERT This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis:

I'm writing to follow up on several things.

1. Litigation Protections. Attached are the "Litigation Protections" I mentioned. They are still subject to review and material change but wanted to share them now.

2. Follow up information. It sounds like yesterday's Zoom meeting was helpful. Please let us know if there is any other information your clients need to assess the situation.

3. HCMLP's diligence. We'll have some questions on our end, but for now, please send us the Remittance Agreement referred to in the Intercreditor Agreement.

4. Joinder signature. For completeness, please send us Shawn's signature page.

5. Preliminary terms/structure. We hope to provide over the weekend a set of bullet points concerning possible terms and structure of an agreement.

6. Further meeting. Some or all of us are prepared to meet in Dallas on Tuesday at a time to be determined (some may participate by Zoom). Please let us know if that is possible as soon as you're able so we can make travel arrangements.

Please let me know if you have any questions and thank you for your continued cooperation.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

000924

HCMLPHMIT00000102

**EXHIBIT 21**

000925

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** LMP and ALH Joinders Confidentiality Agreement
**Date:** Mon, 7 Apr 2025 21:02:23 +0000
**Importance:** Normal
**Attachments:** 1408_001.pdf; Amelia_Joinder_to_CA.pdf
**Inline-Images:** image003.png

---

John,

Please see the attached joinders.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

000926

HCMLPHMIT00000103

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Louis M. Phillips (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

4233814_1.docx

000927


HCMLPHMIT00000104

3.    Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.


IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.


By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer


**JOINING PARTY:**

_____
Name: Louis M. Phillips

4233814_1.docx

000928
HCMLPHMIT00000105

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and Amelia L. Hurt (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.      Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

Amelia Joinder to CA.DOCX

000929

HCMLPHMIT00000106

3.    Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: Amelia L. Hurt

**000930**

HCMLPHMIT00000107

**EXHIBIT 22**

000931

| | |
|---|---|
| **From:** | "Louis M. Phillips" <Louis.Phillips@kellyhart.com> |
| **To:** | "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com> |
| **Cc:** | "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com> |
| **Subject:** | Remittance Agreement |
| **Date:** | Tue, 8 Apr 2025 13:17:06 +0000 |
| **Importance:** | Normal |
| **Attachments:** | HCLOM__Remittance_Agreement_(Charitable_DAF_Liberty_CLO)(706141854.2).pdf; Remittance_Agreement.pdf |
| **Inline-Images:** | image001.png |

---

John and Jeff,

Please find the Remittance Agreement, executed version.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

HCMLPHMIT00000108

## REMITTANCE AGREEMENT

This Remittance Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO"). NexPoint Small Bay, Charitable DAF, and Liberty CLO are each referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Charitable DAF and Liberty CLO jointly previously provided temporary bridge funding and equity to NexPoint Small Bay, with repayment required in accordance with the Limited Liability Company Agreement of NexPoint Small Bay (the "DAF Bridge Equity"); and

WHEREAS, NexPoint Small Bay currently owes $8,265,050.74 to Charitable DAF and Liberty CLO, jointly, as repayment for the DAF Bridge Equity;

THEREFORE, for and in consideration of the payment, promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Payment to DAF.** On or before January 14, 2025, NexPoint Small Bay shall pay to Charitable DAF and Liberty CLO, jointly, the amount of $8,265,050.74 (the "DAF Bridge Equity Payment").

2.      **Satisfaction and Release of Claims.** Charitable DAF and Liberty CLO each stipulates and agrees that the DAF Bridge Equity Payment will fully and completely satisfy all obligations arising out of or relating to the DAF Bridge Equity, that they each, upon receipt of the DAF Bridge Equity Payment, automatically and forever release and discharge NexPoint Small Bay and its affiliates, members, successors, and assigns, of and from all claims, demands, damages, liability, and responsibility, of any type or kind arising from or relating to the DAF Bridge Equity and/or their membership in NexPoint Small Bay, and Charitable DAF and Liberty CLO shall cease to be Members of NexPoint Small Bay and cease to have any rights under the Limited Liability Company Agreement of NexPoint Small Bay. Charitable DAF and Liberty CLO hereby provide any consent that is required by them under the Limited Liability Company Agreement of NexPoint Small Bay.

3.      **Choice of Law; Jurisdiction; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

ACTIVE 706141854v2

000933

HCMLPHMIT00000109

4.      **Amendments; Waivers.** No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

5.      **Binding Effect.** Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

6.      **Entire Agreement.** The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the Parties acknowledge have been merged into this Agreement.

7.      **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Remittance Agreement as of the Effective Date set forth above and in the capacities set forth below.

**NREA SB II Holdings, LLC,**
a Delaware limited liability company

By: _____
Name:  Anthony Scavo
Title:   Authorized Signatory

CHARITABLE DAF HOLDINGS CORP.

By:_____
Name:_____
Title:_____

LIBERTY CLO HOLDCO, LTD.

By:_____
Name:_____
Title:_____

ACTIVE 706141854v2

000934

HCMLPHMIT00000110

## REMITTANCE AGREEMENT

This Remittance Agreement (the "Agreement") is entered into as of January 10, 2025 (the "Effective Date") by and between NREA SB II Holdings, LLC (together with its successors and assigns in such capacities, "NexPoint Small Bay."), Charitable DAF Holdings Corp. (together with its successors and assigns in such capacities, "Charitable DAF"), and Liberty CLO Holdco, Ltd. (together with its successors and assigns in such capacities, "Liberty CLO"). NexPoint Small Bay, Charitable DAF, and Liberty CLO are each referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Charitable DAF and Liberty CLO jointly previously provided temporary bridge funding and equity to NexPoint Small Bay, with repayment required in accordance with the Limited Liability Company Agreement of NexPoint Small Bay (the "DAF Bridge Equity"); and

WHEREAS, NexPoint Small Bay currently owes $8,265,050.74 to Charitable DAF and Liberty CLO, jointly, as repayment for the DAF Bridge Equity;

THEREFORE, for and in consideration of the payment, promises, covenants, conditions, stipulations, benefits, and obligations described and provided herein, the sufficiency and adequacy of which is expressly hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.      **Payment to DAF.** On or before January 14, 2025, NexPoint Small Bay shall pay to Charitable DAF and Liberty CLO, jointly, the amount of $8,265,050.74 (the "DAF Bridge Equity Payment").

2.      **Satisfaction and Release of Claims.** Charitable DAF and Liberty CLO each stipulates and agrees that the DAF Bridge Equity Payment will fully and completely satisfy all obligations arising out of or relating to the DAF Bridge Equity, that they each, upon receipt of the DAF Bridge Equity Payment, automatically and forever release and discharge NexPoint Small Bay and its affiliates, members, successors, and assigns, of and from all claims, demands, damages, liability, and responsibility, of any type or kind arising from or relating to the DAF Bridge Equity and/or their membership in NexPoint Small Bay, and Charitable DAF and Liberty CLO shall cease to be Members of NexPoint Small Bay and cease to have any rights under the Limited Liability Company Agreement of NexPoint Small Bay. Charitable DAF and Liberty CLO hereby provide any consent that is required by them under the Limited Liability Company Agreement of NexPoint Small Bay.

3.      **Choice of Law; Jurisdiction; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflict of law provisions. Each Party to hereby consents and agrees that the courts located in Texas shall have sole and exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining to this Agreement or to any matter arising out of or relating to this Agreement. Each Party expressly submits and consents in advance to such jurisdiction in any action or suit commenced in any such court, and each Party hereby waives any objection that it may have based upon lack of personal jurisdiction, improper venue, or *forum non conveniens*.

4.      **Amendments; Waivers.** No amendment, modification, or waiver of any of the provisions of this Agreement shall be deemed to be made unless the same shall be in writing signed on behalf of each Party, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and shall in no way impair the rights of the Party making such waiver or the obligations of the other Party in any other respect or at any other time.

5.      **Binding Effect.** Except as otherwise expressly provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the Parties and their respective successors, assigns, executors, representatives, and administrators.

6.      **Entire Agreement.** The Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect to such matters, which the Parties acknowledge have been merged into this Agreement.

7.      **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Signature by facsimile or other similar electronic transmission shall have the same force and effect as an original signature.

IN WITNESS WHEREOF, the Parties have executed this Remittance Agreement as of the Effective Date set forth above and in the capacities set forth below.

NREA SB II Holdings, LLC

By:_____
Name:_____
Title:_____


CHARITABLE DAF HOLDINGS CORP.

By:_____
Name:__Mark Patrick_____
Title:__President_____


LIBERTY CLO HOLDCO, LTD.

By:_____
Name:__Mark Patrick_____
Title:__Director_____

000936

HCMLPHMIT00000112

**EXHIBIT 23**

000937

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: 2022 settlement
**Date:** Thu, 10 Apr 2025 20:57:55 +0000
**Importance:** Normal
**Attachments:** Hunter_Mountain_Settlement_--_Final_Execution_Version_(All_Signatures).pdf
**Inline-Images:** image002.png

---

John and Jeff,

Please see the 2022 Settlement Agreement re the HMIT note(s) that we discussed during the call.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Release (the "Agreement") is entered into as of June 21, 2022 (the "Effective Date"), by and between Hunter Mountain Investment Trust, a Delaware statutory trust ("HMIT") and Rand PE Fund I, LP, Series 1, a Delaware series limited partnership ("Rand") (and together with HMIT, the "Cross-Plaintiffs"), on the one hand, and James D. Dondero ("Dondero"), Mark K. Okada ("Okada), The Dugaboy Investment Trust, a Delaware statutory trust ("Dugaboy"), The Mark and Pamela Okada Family Trust – Exempt Trust #1, a Delaware statutory trust ("MAP#1"), and The Mark and Pamela Okada Family Trust – Exempt Trust #2, a Delaware statutory trust ("MAP#2") (and collectively with Dondero, Okada, Dugaboy, and MAP #1, the "Cross-Defendants"), on the other hand.  In this Agreement, Cross-Plaintiffs and Cross-Defendants are referred to collectively as the "Parties" and each individually as a "Party."

## RECITALS

WHEREAS, on or about December 21, 2015, Highland Capital Management, L.P. ("HCMLP"), a Delaware limited partnership, and its limited partners Dugaboy, Okada, MAP#1, MAP#2, and HMIT (together, the "HCMLP Limited Partners") entered into a Second Amended and Restated Buy-Sell and Redemption Agreement, pursuant to which HMIT agreed to purchase certain limited partnership interests in HCMLP from the HCMLP Limited Partners, which interests, prior to any subsequent transaction, represented 99.5% of the then existing limited partnership interests of HCMLP;

WHEREAS, on or about December 21, 2015, HCMLP and HMIT executed a Contribution Agreement, pursuant to which HMIT agreed to contribute Seventy Million Dollars ($70,000,000.00) of capital (the "Capital Contribution") in the form of cash and a note to HCMLP in return for the issuance of limited partnership interests in HCMLP which when combined with those held by the HCMLP Limited Partners, represented a Fifty-Five Percent (55%) of the limited partnership interests in HCMLP.

WHEREAS, HCMLP required Rand to execute a Guaranty Agreement in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Capital Contribution.

WHEREAS, on December 21, 2015, HMIT issued to HCMLP a Secured Promissory Note in which HMIT agreed to pay HCMLP the principal amount of Sixty-Three Million Dollars ($63,000,000.00), together with interest on the outstanding principal amount at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum for the purchase of the limited partnership interests described in the Contribution Agreement;

WHEREAS, on December 24, 2015, HMIT, in addition to cash considerations, issued Security Promissory Notes to the HCMLP Limited Partners in which HMIT agreed to (i) pay Dugaboy the principal amount of Sixty-Two Million, Six Hundred Fifty-Seven Thousand, Six-Hundred and Forty Seven Dollars and Twenty-Seven Cents ($62,657,647.27), (ii) pay Okada the principal amount of Sixteen Million, Three Hundred and Fifty-One Thousand, Three Hundred and Fifty-Seven Hundred Dollars and Seventy-Two Cents ($16,351,357.12), (iii) pay MAP#1 the

1

000939
HCMLPHMIT00000119

principal amount of Three Million, Two Hundred Eighty-Three Thousand, Six Hundred Eight-Eight Dollars and Nine Cents ($3,283,688.09), (iv) pay MAP#2 the principal amount of One Million, Four Hundred Seven Thousand, Three Hundred Six Dollars and Ninety-Two Cents ($1,407,306.92), and (v) pay interest on the outstanding principal amounts of each of the Secured Promissory Notes at the rate of Two and Sixty-One One Hundredths Percent (2.61%) per annum, in order to pay for HMIT's acquisition of the limited partnership interests in HCMLP from the HCMLP Limited Partners (44.5% post issuance per the Contribution Agreement) in accordance with the Partnership Interest Purchase Agreement;

WHEREAS, as a condition to HMIT's acquiring the referenced limited partnership interests from the HCMLP Limited Partners, the HCMLP Limited Partners each required Rand to execute Guaranty Agreements in which Rand guaranteed the full and prompt payment and performance of all indebtedness, liabilities, and obligations of HMIT arising under or in connection with the Secured Promissory Notes;

WHEREAS, on or about December 24, 2015, HCMLP and the HCMLP Limited Partners executed a Fourth Amended and Restated Agreement of Limited Partnership admitting HMIT as a limited partner of HCMLP;

WHEREAS, on or about October 16, 2019, HCMLP filed a chapter 11 petition in bankruptcy ("HCMLP Bankruptcy");

WHEREAS, on or about April 2, 2020, HMIT filed a proof of claim in the HCMLP Bankruptcy totaling $60,298,739.00;

WHEREAS, HCMLP objected to HMIT's proof of claim, and HCMLP sought subordination of HMIT's claim by instituting an adversary proceeding styled *Highland Capital Management, L.P. v. Hunter Mountain Investment Trust* Adv. Proc. No. 20-03105-sgj (Bankr. N.D. Tex) (the "HMIT Adversary Proceeding");

WHEREAS, by stipulation entered in the HMIT Adversary Proceeding and in the HCMLP Bankruptcy, HMIT withdrew its proof of claim;

WHEREAS, on or about October 15, 2021, Marc A. Kirschner ("Kirschner"), as Trustee of the Litigation Sub-Trust, filed an adversary proceeding, styled *Kirschner v. Dondero, et al.*, Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.) (the "Kirchner Litigation"), in which Kirschner named HMIT and Rand as defendants and asserted claims (i) against HMIT for avoidance and recovery of allegedly constructive and/or intentional fraudulent transfers, illegal distributions under the Delaware Revised Uniform Limited Partnership Act, and breach of contract, and (ii) against Rand for breach of contract;

WHEREAS, on or about March 23, 2022, HMIT and Rand filed cross-claims in the Kirschner Litigation against Cross-Defendants, alleging generally that Cross-Defendants are liable for and should be required to pay any and all damages for which HMIT or Rand may be liable in the Kirschner Litigation (the "Cross-Complaint");

2

HCMLPHMIT00000120

WHEREAS, the Cross-Defendants dispute their liability to Cross-Plaintiffs and all allegations contained in the Cross-Complaint; and

WHEREAS, the Parties now wish to resolve the Cross-Complaint and all other potential disputes between them;

NOW THEREFORE, in consideration of the foregoing recitals, the promises contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

**TERMS OF AGREEMENT**

**1.     Consideration for Settlement**

1.1     <u>Settlement Payment</u>.  The Parties agree that, simultaneously with the execution of this Agreement, and no later than the Effective Date, Cross-Defendants shall make a one-time payment of Fifty Thousand Dollars ($50,000.00) (the "<u>Settlement Payment</u>") to Cross-Plaintiffs consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.2     <u>Payment of Past Attorneys' Fees, Audit Fees, and Bank Fees</u>.  In addition to the Settlement Payment, Cross-Defendants shall, within ten (10) business days of receiving a written demand by Cross-Plaintiffs, which demand shall include relevant back-up documentation, including at a minimum documentation of attorney rates and time entries, pay (i) all attorneys' fees incurred by Cross-Plaintiffs in connection with either the HCMLP Bankruptcy or the Kirschner Lawsuit, (ii) all audit fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy, and (iii) all bank fees incurred by Cross-Plaintiffs during the pendency of the HCMLP Bankruptcy (the "<u>Past Fees Payment</u>").  The Past Fees Payment shall be made consistent with the instructions set forth in Sections 1.3 and 1.4 below.

1.3     <u>Manner of Payments</u>.  The Settlement Payment, and any other payments to be made pursuant to this Agreement, shall be deemed made when received by wire transfer, without set-off, in immediately available funds.  All such payments should be made in a manner to ensure receipt not later than 5:00 p.m., Central Standard Time, on the date when due under this Agreement. Whenever any payment to be made hereunder is due on a day which is not a Business Day (as defined below), such payment shall be made on the next Business Day thereafter, and any such payment shall be deemed timely made.  "<u>Business Day</u>" means a day of the year (other than a Saturday, Sunday, legal holiday, or other day on which banking institutions in the State of Texas are authorized or required by law to close) in which banking institutions are open for the purpose of conducting commercial business.

1.4     <u>Wire Transfer Instructions</u>.  Unless Cross-Plaintiffs instruct Cross-Defendants otherwise in writing, all payments to be made pursuant to this Agreement shall be made pursuant to the wire transfer instructions set forth below:

| | |
|---|---|
| To: | Rand PE Fund I LP |
| Bank: | PNC Bank |
| Bank Address: | PO Box 640750 |
| | Pittsburgh, PA 15264-0570 |

000941

HCMLPHMIT00000121

ABA Routing:  043000096
Account No:  4947568529

  1.5  <u>Agreement to Fund Defense</u>.  In addition to the payments contemplated in this Section 1, as further consideration for settlement, Cross-Defendants agree to fund Cross-Plaintiffs' defense costs in the same manner as set forth in Section 1.2 through 1.4 above with regard to any and all claims now or hereafter asserted against Cross-Plaintiffs in the Kirschner Litigation.  Such defense shall include, at a minimum, the retention of a licensed attorney to represent Cross-Plaintiffs in the Kirschner Litigation and payment of all costs and attorneys' fees associated with Cross-Plaintiffs' defense.  For the avoidance of doubt, the Parties agree that Cross-Defendants may select any counsel of their choosing, in their sole discretion, to replace Cross-Plaintiffs' existing counsel and may retain counsel already representing other named defendants in the Kirschner Litigation, so long as no ethical or other legal conflict bars such dual representation.  Cross-Plaintiffs shall retain full control of their defense in the Kirschner Litigation; provided however, that upon the substitution of counsel for Cross-Plaintiffs as contemplated in this Agreement, Cross-Defendants shall only control Cross-Plaintiffs' defense (hereinafter referred to as a "<u>Change of Litigation Control</u>").  In the event of a Change of Litigation Control, Cross-Plaintiffs shall: a) continue to be promptly apprised of all Kirschner Litigation events, issues, and circumstances which may affect Cross-Plaintiffs in said litigation by substitute counsel; and b) retain the right to consent to any resolution of the claims asserted against Cross-Plaintiffs in the Kirschner Litigation that involves (i) the payment of money by Cross-Plaintiffs, or (ii) any admission of liability by Cross-Plaintiffs, whether by settlement, default judgment, or otherwise.

## 2.  **Dismissal of Cross-Complaint**.

  4.1  <u>Timing of Dismissal</u>.  Within five (5) business days of the Effective Date of this Agreement, the Parties shall stipulate to the dismissal of the Cross-Complaint with prejudice.

  4.2  <u>Responsibility for Filing</u>.  Cross-Plaintiffs shall bear responsibility for ensuring that appropriate notice of the Parties' stipulation of dismissal of the Cross-Complaint is timely filed with the United States Bankruptcy Court for the Northern District of Texas.

## 3.  **Releases**

  3.1  <u>Release by Cross-Plaintiffs of Cross-Defendants</u>.  Cross-Plaintiffs, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "<u>Cross-Plaintiff Releasing Parties</u>") hereby fully and irrevocably release and discharge Cross-Defendants, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "<u>Cross-Defendant Released Parties</u>"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Plaintiff Releasing Parties had, have, or may have against the Cross-Defendant Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-

4

000942
HCMLPHMIT00000122

Complaint, or any other agreements executed by and between the Parties prior to the Effective Date.

3.2    Release by Cross-Defendants of Cross-Plaintiffs. Cross-Defendants, on behalf of themselves, their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents, employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Defendant Releasing Parties") hereby fully and irrevocably release and discharge Cross-Plaintiffs, together with their predecessors, successors, affiliates, and assigns, and each of their past, present, and future officers, directors, managers, agents (inclusive of counsels for Cross-Plaintiffs), employees, representatives, and any person acting by, through, or under the direction of them (collectively, the "Cross-Plaintiff Released Parties"), from all claims, rights, demands, actions, lawsuits, causes of action, grievances, liabilities, obligations, controversies, damages, costs, expenses, losses, and debts, of any nature whatsoever, present or future, known or unknown, contingent or definitive, conditional or unconditional, that the Cross-Defendant Releasing Parties had, have, or may have against the Cross-Plaintiff Released Parties, which arise out of or relate in any manner to the subject matter of this Agreement or the Cross-Complaint, or any other agreements executed by and between the Parties prior to the Effective Date, including but not limited to any and all guarantees or debt obligations facially owed by Cross-Plaintiffs to Cross-Defendants.

## 4.    Confidentiality and Non-Disparagement

4.1    Duty of Confidentiality. The terms of this Agreement and all correspondence relating to this Agreement are and shall remain confidential. The Parties shall not disclose any information relating to this Agreement or its contents, nor shall any Party cause any individual, entity, affiliate, or agent acting under its direction or control to disclose any information relating to this Agreement or its contents, to any third party whatsoever, except (i) with the prior written consent of the other Party to this Agreement; (ii) as may be required by applicable law, regulation, or order of a governmental authority of competent jurisdiction; (iii) during the course of litigation so long as the disclosure is subject to the same restrictions as are embodied in a court-ordered protective order limiting disclosure to outside counsel; or (iv) in confidence to the Party's counsel, accountants, financial advisors, or tax professionals, whom the Party shall advise of the confidential nature of this Agreement.

4.2    Requirements Prior to Disclosure. Should any Party disclose any information relating to this Agreement or its contents under any of the circumstances specified in Section 3.1, the disclosing Party shall notify the other Parties in writing before any disclosure of the same. In such case, the disclosing Party shall: (i) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement or other information the Party intends to disclose; (ii) where applicable, identify the law, regulation, order, or other legal basis for the disclosure; and (iii) to the extent possible, refrain from disclosing anything for at least ten (10) business days following the disclosing Party's written notice of disclosure to give the other Parties an opportunity to resist disclosure or seek other appropriate legal relief. In any event, the Parties shall use reasonable efforts to limit the disclosure of the terms and conditions of this Agreement and seek a protective order or other confidential treatment of the disclosed information.

000943

HCMLPHMIT00000123

4.3    <u>Duty of Non-Disparagement</u>.    Subject to applicable law, each of the Parties covenant and agree that neither they nor any of their respective agents, subsidiaries, affiliates, successors, assigns, officers, employees or directors, will in any way publicly disparage, call into disrepute, defame, slander or otherwise criticize the opposing Parties or such other Parties' agents, subsidiaries, affiliates, successors, assigns, officers, employees, agents, or directors.

4.4    <u>Violation of Duties of Confidentiality and Non-Disparagement</u>.    Any Party violating their duties of confidentiality or non-disparagement shall be responsible for payment of any damages incurred by the other Parties as a result of the violation.  The Parties also shall have the right and standing to seek an injunction against any person and/or entity violating this Section 5, or any person and/or entity who has announced an intention to violate this Section 5 or who has failed to desist from any such violation after written demand to do so, from further or future violations.  All attorneys' fees, costs, and expenses incurred by a Party in enforcing its rights pursuant to this Section 5 shall be the liability of and borne by each and every person and/or entity against whom injunctive, monetary, or other relief is obtained.

5.    **Covenants, Representations, and Warranties**

5.1    <u>Authority to Enter Into Agreement</u>. The Parties covenant and warrant that they have the full power and authority to enter into this Agreement and to carry out its terms and that they have not previously assigned, sold, or otherwise pledged or encumbered any right, title, or interest in the claims released herein or their right, power, or authority to enter into this Agreement.

5.2    <u>Authority to Execute on Behalf of Another</u>.  Any person signing this Agreement on behalf of another person or entity represents and warrants that he or she has full power and authority to do so and that said other person or entity is bound hereby.

5.3    <u>No Admission of Liability</u>.  By entering into this Agreement, no Party is admitting any liability to any other Party or any other person or entity.  Neither this Agreement, nor any document or instrument delivered hereunder, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement, is intended to be or shall be construed as or deemed to be evidence of an admission or concession of any liability or wrongdoing or of the truth of any allegations asserted by any Party against another, and no such statement, transaction, or proceeding shall be admissible in evidence for any such purpose except as required to enforce this Agreement.

5.4    <u>Covenant Not To Sue.</u>  The Parties, for themselves, their heirs, and successors hereby covenant and agree not to file any lawsuit or other action concerning the claims released herein, other than an action to enforce the Agreement.

5.5    <u>Representation by Counsel.</u>  Each Party has executed this Agreement upon its own independent judgment and upon the advice of its independent legal counsel, and not in reliance upon any representation, express or implied, of any kind or nature from any other Party or Party's counsel.

000944
HCMLPHMIT00000124

6.      **Miscellaneous Provisions**

6.1      <u>Governing Law</u>.   The provisions of this Agreement shall be interpreted in accordance with, and governed by, the laws of the State of Texas, without regard to conflict of laws principles.

6.2      <u>Dispute Resolution</u>.  In the event there is an unresolved legal dispute between the Parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the Parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; provided, however, that any Party may pursue a temporary restraining order and/or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief.  The arbitration will be conducted by the American Arbitration Association pursuant to the rules governing complex commercial disputes. A panel of three arbitrators will preside over the arbitration and will together deliberate, decide, and issue the final award.  The arbitrators shall be duly licensed to practice law in the state of Texas. The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law.  Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law.  All proceedings shall be conducted in Dallas, Texas or another mutually agreeable site.  Each party shall bear its own attorneys' fees, costs, and expenses, including any costs of experts, witnesses, and/or travel.

6.3      <u>Waiver of Right to Jury Trial</u>.

EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) SUCH PARTY HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, AND (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY.

6.4      <u>Cooperation</u>.  Each of the Parties hereto shall execute such additional documents and take such additional actions as are or may be reasonably necessary to effectuate the purposes of this Agreement.

000945
HCMLPHMIT00000125

6.5     Counterparts.  This Agreement may be executed in counterparts.  All counterparts so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all Parties are not signatory to the original or to the same counterpart.

6.6     Entire Agreement/No Other Agreements.

THE PARTIES EXPRESSLY ACKNOWLEDGE, COVENANT, AND AGREE THAT THIS AGREEMENT AND ITS EXHIBITS CONSTITUTE THE ENTIRE AGREEMENT OF THE PARTIES WITH RESPECT TO THE SUBJECT MATTER CONTAINED THEREIN.  THE PARTIES EXPRESSLY WAIVE AND DISAVOW ALL PRIOR AGREEMENTS, COVENANTS, REPRESENTATIONS, AND WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, OF THE PARTIES CONCERNING THE SUBJECT MATTER OF THIS AGREEMENT.

6.7     Modification.  This Agreement shall not be modified or amended except by an instrument in writing signed by an authorized representative of each Party.

6.8     No Third-Party Beneficiaries.  This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and Released Parties, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable rights, benefit, or remedy of any nature whatsoever.

6.9     No Waiver.  The failure by any Party to enforce any term of this Agreement shall not be deemed a waiver of the term or any other term of the Agreement, nor shall any Party be deemed to have waived any right to performance under this Agreement unless such waiver is made expressly in writing by the Party making the waiver.

6.10    Severability.  It is expressly understood and agreed that each provision of this Agreement shall be deemed to be severable, and if any provision herein is determined to be invalid, illegal, or unenforceable by a court of competent jurisdiction for any reason, then such invalidity, illegality, and/or unenforceability shall not affect the validity, legality, and enforceability of the remaining provisions of this Agreement.

6.11    Mutual Interpretation.  The Parties agree and stipulate that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power, and that this Agreement has been drafted jointly by the Parties and their respective Counsel.  Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against either Party.

6.12    Binding Effect; Successors and Assigns.  This Agreement, and each provision of this Agreement, shall inure to the benefit of, and shall be binding upon, the Parties as well as the legal successors and assigns of the Parties.

000946
HCMLPHMIT00000126

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

**Hunter Mountain Investment Trust**

Name: _John W. Havis_

Title: _Trustee_

Date: _6 / 21 / 22_

**Rand PE Fund I, LP, Series 1.**

Name: _John W. Havis_

Title: _Manager, Rand PE, LP_

Date: _6 / 21 / 22_

_____

**James D. Dondero**

Date: _____

_____

**Mark K. Okada**

Date: _____

_____

**The Dugaboy Investment Trust,**

Name: _____

Title: _____

Date: _____

_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

Title: _____

Date: _____

_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: _____

Title: _____

Date: _____

9

000947
HCMLPHMIT00000127

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

_____

**Hunter Mountain Investment Trust**

Name: _____

Title: _____

Date: _____


_____

**Rand PE Fund I, LP, Series 1.**

Name: _____

Title: _____

Date: _____

Title: _____

Date: _____

**James D. Dondero**

Date: _____


_____

**Mark K. Okada**

Date: _____

_____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

Title: _____


_____

**The Dugaboy Investment Trust,**

Name: _____

9

000948

HCMLPHMIT00000128

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

| | |
|---|---|
| _____ | _____ |
| **Hunter Mountain Investment Trust** | **Rand PE Fund I, LP, Series 1.** |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

**James D. Dondero**

Date: _____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: *(signature)*

Title: Trustee

Date: June 21, 2022

**Mark K. Okada**

Date: *(signature)*

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: *(signature)*

Title: Trustee

Date: June 21, 2022

**The Dugaboy Investment Trust,**

Name: _____

Title: _____

Date: _____

9

000949
HCMLPHMIT00000129

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date shown below.

**Hunter Mountain Investment Trust**

Name: _____

Title: _____

Date: _____

**Rand PE Fund I, LP, Series 1.**

Name: _____

Title: _____

Date: _____

**James D. Dondero**

Date: _____

**Mark K. Okada**

Date: _____

**The Mark and Pamela Okada Family Trust – Exempt Trust #1**

Name: _____

Title: _____

Date: _____

**The Dugaboy Investment Trust,**

Name: _____

Title: TRUSTEE

Date: 6/21/22

**The Mark and Pamela Okada Family Trust – Exempt Trust #2**

Name: _____

Title: _____

Date: _____

9

000950

HCMLPHMIT00000130

**EXHIBIT 24**

000951

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** FW: Joinder to Confidentiality Agreement
**Date:** Thu, 17 Apr 2025 17:33:36 +0000
**Importance:** Normal
**Attachments:** James_D._Shields_Joinder_to_CA.pdf
**Inline-Images:** image001.png

---

John,

Please see attached Joinder from Jim Shields.  Please have Mr. Seery execute and then return it to me so I can forward to Mr. Shields.  Thank you.



**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** Jim Shields <jshields@shieldslegal.com>
**Sent:** Wednesday, April 16, 2025 11:53 AM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>

000952

HCMLPHMIT00000135

**Cc:** Kasey Ross <kross@theelslegal.com>

**Subject:** RE: Joinder to Confidentiality Agreement

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

HCMLPHMIT00000136

## JOINDER TO CONFIDENTIALITY AGREEMENT

This JOINDER TO CONFIDENTIALITY AGREEMENT (this "**Joinder**") is entered into as of March 18, 2025 (the "**Effective Date**") by and between Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), and James D. Shields (the "**Joining Party**"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Confidentiality Agreement (as hereinafter defined).

WHEREAS, reference is made to that certain Confidentiality Agreement as of March 18, 2025 by and among Highland, on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas, Hunter Mountain Investment Trust, a Delaware statutory trust, Charitable DAF Holdco, Ltd., a Cayman Islands exempted company, CDH GP, Ltd., a Cayman Islands exempted company, Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership, and CLO Holdco, Ltd., a Cayman Islands exempted company, Rand Advisors, LLC, a Delaware limited liability company, Rand PE Fund I, LP, a Delaware series limited partnership, Rand PE Fund Management, LLC, a Delaware limited liability company, Atlas IDF, LP, a Delaware limited partnership, Atlas IDF GP, LLC, a Delaware limited liability company, on the other hand (the "**Confidentiality Agreement**");

WHEREAS, the Joining Party is a Representative of Recipients and desires to receive certain Confidential Information for the sole limited purpose of advising Recipients in connection with its evaluation, negotiation and consummation of a Proposed Settlement; and

WHEREAS, in accordance with Section 4 of the Confidentiality Agreement and as a condition to Highland providing, or permitting Recipients to provide, such Confidential Information to the Joining Party, the Joining Party agrees to the terms and conditions set forth in this Joinder.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    The Joining Party acknowledges that it has received and reviewed a copy of the Confidentiality Agreement.  The Joining Party hereby joins as a Party to, and agrees to be bound by all of the terms, provisions and conditions set forth in, the Confidentiality Agreement as a "Recipient" thereunder, with the same force and effect as if originally named therein as a "Recipient."

2.    Without limiting the generality of the foregoing, the Joining Party hereby (a) makes each of the representations and warranties set forth in Section 1 of the Confidentiality Agreement to Highland and (b) represents and warrants to Highland that such Joining Party (i) does not currently represent any Dondero Related Party and (ii) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation.

James D. Shields Joinder to CA (002)

000954

HCMLPHMIT00000137

3.     Each of the terms, provisions and conditions set forth in Section 9 of the Confidentiality Agreement are incorporated herein by reference in their entirety and shall apply to this Agreement *mutatis mutandis*.

4.     A true and correct copy of the Confidentiality Agreement, as modified in paragraph 9(f) by agreement of Highland and Joining Party, is attached hereto as Exhibit "A".

IN WITNESS WHEREOF, the parties hereto have executed this Joinder to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**JOINING PARTY:**

_____
Name: James D. Shields

James D. Shields Joinder to CA (002)

HCMLPHMIT00000138

Execution Version

*Joinder of confidentility Agreement*

## CONFIDENTIALITY AGREEMENT

This CONFIDENTIALITY AGREEMENT (this "**Agreement**") is entered into as of March 18, 2025 (the "**Effective Date**") by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**" or the "**Disclosing Party**"), on the one hand, and Mark Patrick, a United States citizen and resident of Dallas, Texas ("**Mr. Patrick**"), Hunter Mountain Investment Trust, a Delaware statutory trust ("**Hunter Mountain**"), Charitable DAF Holdco, Ltd., a Cayman Islands exempted company ("**DAF Holdco**"), CDH GP, Ltd., a Cayman Islands exempted company ("**DAF GP**"), Charitable DAF Fund, L.P., a Cayman Islands exempted limited partnership ("**DAF Fund**"), and CLO Holdco, Ltd., a Cayman Islands exempted company ("**CLO Holdco**", and together with DAF Holdco, DAF GP and DAF Fund, the "**DAF Entities**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**Rand Entities**", and the Rand Entities together with Mr. Patrick, Hunter Mountain and the DAF Entities, the "**Recipients**"), on the other hand. Highland and the Recipients are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

### Recitals

WHEREAS, Mr. Patrick hereby represents and warrants that he is a control person for each of Hunter Mountain, the DAF Entities and the Rand Entities;

WHEREAS, there are several active litigations to which Highland or one of its affiliates, on the one hand, and one or more of the Recipients, on the other hand, are parties, including, without limitation, the matters set forth on Exhibit A hereto (collectively, the "**Pending Litigations**");

WHEREAS, the Parties desire to enter into good faith settlement discussions in an effort to reach a mutually acceptable global resolution to the Pending Litigations and all potential claims and causes of action against each other (the "**Potential Settlement**");

WHEREAS, in connection with negotiating the Potential Settlement, it is anticipated that Highland will provide the Recipients with certain Confidential Information (as hereinafter defined); and

WHEREAS, as a condition to Highland providing Recipients with any such Confidential Information, the Recipients agree to the terms and conditions set forth in this Agreement.

### Agreement

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and agreed, the Parties, intending to be legally bound, hereby agree as follows:

000956

HCMLPHMIT00000139

## 1. Representations and Warranties

(a)    Each Party hereby represents and warrants to the other Parties as follows:

(i)    <u>Existence and Good Standing</u>.  Such Party is a legal entity duly organized, validly existing and, to the extent applicable in such jurisdiction, in good standing under the Laws (as hereinafter defined) of the jurisdiction in which it is incorporated or formed.  Such Party has all requisite corporate or similar right, power, authority and capacity to own, lease and operate the properties and assets it owns, leases and operates.  Each Party is qualified to do business as a foreign entity in each jurisdiction in which its ownership of property or the conduct of its business as now conducted requires it to qualify.

(ii)    <u>Authority; Enforceability</u>. Such Party has the full power and authority to execute this Agreement and to perform its obligations under this Agreement.  The execution, delivery and performance of this Agreement have been duly and validly authorized by all required action on behalf of such Party in accordance with its respective Organizational Documents (as hereinafter defined) and applicable Law.  This Agreement constitute the valid and binding obligations of, and enforceable against, such Party.

(iii)    <u>No Violations</u>.  The execution and delivery by such Party of this Agreement, the performance and compliance with the terms and conditions hereof and thereof by such Party, and the performance by such Parent of its obligations contemplated hereby, in each case, will not (with or without notice or passage of time, or both):

(1) violate, conflict with, result in a breach of or constitute a default under any of the provisions of the Organizational Documents of such Party; or

(2) breach, violate or conflict with any provision of any Law or Permit applicable to such Party.

(iv)    <u>Legal Proceedings</u>.  There are no judicial, administrative or arbitral actions, suits, hearings, inquiries, charges, investigations, administrative proceedings, grievances or formal complaints or other proceedings (public or private) commenced, brought, conducted or heard before, or otherwise involving, any Governmental Entity or arbitrator, in each case, pending nor threatened that (i) challenge the validity or enforceability of Party's obligations under this Agreement or (b) seek to prevent or delay, or otherwise would reasonably be expected to adversely affect, the performance by such Party of its obligations hereunder.

(b)    Each Recipient hereby represents and warrants to Highland as follows:

(i) None of James Dondero, nor any Person directly or indirectly owned or controlled by Mr. Dondero (including, without limitation, Dugaboy Investment Trust) nor or any attorney, agent, employee, or representative engaged or working for benefit of Mr. Dondero nor any Person directly or indirectly owned or controlled by him (collectively, the **"Dondero Related Parties"**) directly or indirectly owns any interest in, or directly or indirectly has any control over, such Recipient, including, without limitation, as the result of any written or oral contract, agreement, arrangement or obligation.

2

000957
HCMLPHMIT00000140

(ii) Such Recipient does not represent and is not acting on behalf of any Dondero Related Party.

(iii) Such Recipient has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and is not representing or acting on behalf of any Person with such a duty or obligation.

## 2.    Confidential and Proprietary Nature of the Information

Recipients acknowledge the confidential and proprietary nature of the Confidential Information, agree to hold and keep the Confidential Information in strict confidence as provided in this Agreement, agree that the use of any such Confidential Information is expressly limited to the pursuit of a Potential Settlement and shall not be used for any other purpose or in any other manner except as expressly provided in this Agreement, and otherwise agree to each and every restriction and obligation in this Agreement.

## 3.    Confidential Information

As used in this Agreement, the term **"Confidential Information"** means and includes (a) any and all of the following items that will be disclosed to any Recipient or any of their respective Representatives (as hereinafter defined) by or on behalf of Highland, whether orally or in writing and without regard to whether Highland has specifically designated such item as confidential, proprietary or non-public: any and all confidential, proprietary or non-public information concerning the business or affairs of Highland or any of its affiliates or related accounts, or other Persons (as hereinafter defined) (which includes, for the avoidance of doubt and without limitation, Highland Claimant Trust, Highland Litigation Sub-Trust, Highland Indemnity Trust, each of their and Highland's direct and indirect subsidiaries, and each of their respective affiliates, and its and their respective parent entities, beneficiaries, members, shareholders, owners, creditors, trustees, oversight boards, directors, managers, officers, employees, agents, advisors and representatives (collectively, the **"Highland Related Parties"**)), including, without limitation, any written or oral information, reports and data concerning financial statements, assets, liabilities, indemnity and other obligations, cash flow, income, and expenses; past, current or planned investment or portfolio information; contracts and agreements; know-how, inventions and ideas, whether past, current or planned; partner, beneficiary, owner or investor lists; partner, beneficiary, owner or investor information; business plans; entity structure details; all compliance-related reports, records and information; and any other information, however documented, that is proprietary or non-public or is a trade secret within the meaning of applicable state trade secret Law, and (b) any and all statements or representations made in the course of discussing, negotiating or evaluating a Potential Settlement, including, without limitation, the terms of any Potential Settlement and the fact that (i) Confidential Information has been disclosed to Recipient and (ii) any discussions or negotiations are taking place concerning a Potential Settlement.

To the extent that any Confidential Information includes information or materials subject to the attorney-client privilege, work-product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the Parties understand and agree that they have a commonality of interest with respect to such matters, and it

3

000958
HCMLPHMIT00000141

is their desire, intention, and mutual understanding that the sharing of such information or materials is not intended to, and shall not, waive or diminish in any way the confidentiality of such information or material or its continued protection under the attorney-client privilege, work-product doctrine, or other applicable privilege. Accordingly, all Confidential Information disclosed by or on behalf of Highland that is entitled to protection under the attorney-client privilege, work-product doctrine, or other applicable privilege shall remain entitled to such protection under these privileges and this Agreement.

## 4.    Restricted Use of Confidential Information

Recipients agree that the Confidential Information (a) shall be kept strictly confidential by each Recipient and (b) without limiting the foregoing, shall not be disclosed by or on behalf of any Recipient to any Person (as hereinafter defined) except as otherwise expressly permitted by this Agreement. It is understood and the Recipients agree that Confidential Information may only be disclosed to Mr. Patrick and such specific legal counsel, accountants and financial advisors of the Recipients to whom such disclosure has been consented to in writing by Highland in its sole discretion (which consent may be given via email) (collectively "**Representatives**") and who (i) require such Confidential Information for the purpose of evaluating, negotiating or consummating a Proposed Settlement (ii) are informed by Recipient of the confidential nature of the Confidential Information and the obligations set forth in this Agreement, and (iii) execute a written joinder in the form annexed hereto as Exhibit B pursuant to which the Representative agrees to be bound to this Agreement as if they were an original Party hereto, with such joinder including, without limitation, a representation and warranty that such Representative (1) does not currently represent any Dondero Related Party and (2) has no duty or obligation to provide any Confidential Information to any Person not a party to this Agreement, whether through a common or joint interest agreement or otherwise, and does not represent any Person with such a duty or obligation. Recipients further agree that Recipients and their Representatives shall not use any of the Confidential Information to the detriment of Highland or any Highland Related Party or for any reason or purpose other than evaluating, negotiating or consummating a Proposed Settlement. Recipients shall enforce this Agreement as to its Representatives and take such action, legal or otherwise, to the extent necessary to cause them to comply with this Agreement and thereby prevent any disclosure of Confidential Information by any of its Representatives (including, without limitation, all actions that any Recipient would take to protect its own confidential information).

Without limiting the generality of the foregoing and for the avoidance of doubt, the Recipients and their Representatives shall not disclose or refer to any Confidential Information to (a) subject to Section 5 below, any Governmental Entity (as hereinafter defined), including, without limitation, in any pleadings or submissions, or (b) any Dondero Related Party. The Parties acknowledge that it is their collective intent that no Confidential Information disclosed hereunder may be examined in any proceeding of a Governmental Entity (or any discovery relating to any such proceeding), and all Confidential Information shall be entitled to all protections applicable under Federal Rule of Evidence 408 and any other protections afforded to settlement and compromise communications under any other applicable Law.

4

000959
HCMLPHMIT00000142

5.    **Legally Compelled Disclosure**

If any Recipient or any of its Representatives becomes compelled by Law (whether by oral questions, interrogatories, requests for information or documents, subpoena, civil or criminal investigative demand, or similar process) to make any disclosure that is prohibited or otherwise constrained by this Agreement, such Recipient or its Representative, as the case may be, shall provide Highland with immediate notice of such legal proceedings, including all related documentation, so Highland may (a) seek an appropriate protective order or other appropriate relief, or (b) waive compliance with the provisions of this Agreement.  In the absence of a protective order or Recipients receiving a written waiver from Highland, Recipients or their Representatives are permitted (with Highland's cooperation but at Recipient's expense) to disclose that portion (and only that portion) of the Confidential Information that Recipient or its Representative is legally compelled by an order of an applicable Governmental Entity of competent jurisdiction to disclose; provided, however, that Recipient and its Representatives must use best efforts to obtain reliable assurance that confidential treatment will be accorded by any Person to whom any Confidential Information is so disclosed.

6.    **Return or Destruction of Confidential Information**

If Highland notifies Recipients that it wishes Recipients to return all Confidential Information, then Recipients (i) shall promptly deliver to Highland all documents or other materials disclosed by or on behalf of Highland to Recipient or its Representatives constituting Confidential Information, together with all copies and summaries thereof in the possession or under the control of Recipients or their Representatives, and (ii) will destroy materials generated by Recipients or their Representatives that include or refer to any part of the Confidential Information, without retaining any copies, including, without limitation, any electronically stored copies or attachments to emails, of any such documents or materials.  Written notice of return or destruction shall constitute a valid termination of access to Confidential Information and shall be deemed to have been given at the time Highland sends such notice.  Such notice may be sent in any manner reasonably calculated to notify Recipients of the termination.

7.    **No Obligation to Negotiate a Potential Settlement**

None of the Parties shall have rights or obligations of any kind whatsoever with respect to any Potential Settlement by virtue of this Agreement other than for the matters specifically agreed to herein.  Without limiting the preceding sentence, nothing in this Agreement requires any Party to enter into any Potential Settlement or to negotiate the same for any specified period of time or on any specific terms.

8.    **No Representations or Warranties**

Highland shall have no obligation to provide any information—confidential or otherwise—to the Recipients and retains the right to determine, in its sole discretion, what information, if any, it wishes to make available to Recipients, and neither Highland nor any Highland Related Party makes any representation or warranty (express or implied) concerning the completeness or accuracy of the Confidential Information.

5

000960
HCMLPHMIT00000143

## 9.   Miscellaneous

(a)   <u>Modification</u>.  This Agreement may only be modified or waived by a separate writing signed by the Party or Parties expressly modifying or waiving this Agreement.

(b)   <u>Waiver</u>.  Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

(c)   <u>Certain Definitions</u>.

(i)   The term **"Governmental Entity"** means any federal, national, state, foreign, provincial, local or other government or any governmental, regulatory, administrative or self-regulatory authority, agency, bureau, board, commission, court, judicial or arbitral body, department, political subdivision, tribunal or other instrumentality thereof, including any fiscal intermediary or administrative contractor acting on behalf of any of the foregoing.

(ii)   The term **"Law"** means any law, rule, regulation, statute, code, ordinance, decree or other restriction of any Governmental Entity or any order, injunction, judgment, decree, ruling, writ, assessment or award of a Governmental Entity.

(iii)   The term **"Organizational Documents"** means certificates of incorporation, bylaws, certificates of formation, certificates of trust, limited liability company agreements, limited liability partnership agreements, partnership or limited partnership agreements, trust agreements or other similar formation or governing documents of any Person, in each case, as amended, restated or otherwise modified to date.

(iv)   The term **"Person"** means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, any other business entity, or a Governmental Entity.

(d)   <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.  If any of the terms, covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the Parties contemplate and intend that the authority making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

(e)   <u>Breach</u>.  Recipients agree that Highland will be irreparably injured by a breach of this Agreement by any Recipient or its Representatives, that monetary remedies will be inadequate to protect Highland against any actual or threatened breach of this Agreement by any Recipient or by its Representatives, and that Highland shall be entitled to an injunction or other equitable relief as a remedy for any breach as a matter of right and without the necessity of having to post a bond. Such remedy shall not be deemed to be the exclusive remedy for a breach of this Agreement, but

6

000961
HCMLPHMIT00000144

shall be in addition to all other remedies available at law or equity. The non-prevailing Party shall pay the other Party's costs and expenses in any action to enforce the terms of this Agreement.

(f)    <u>Liability and Indemnity</u>.  Recipients shall, ~~jointly and severally,~~ be liable to and shall indemnify and hold Highland and the Highland Related Parties harmless from and against any and all claims, suits, losses, damages, costs or expenses, including reasonable attorney fees, incurred or suffered by Highland or any Highland Related Party as a result of any Recipient ~~or its Representatives~~ violation of this Agreement, including, without limitation, using or disclosing any Confidential Information other than in accordance with this Agreement, whether such use or disclosure is performed negligently or otherwise.



(g)    <u>Notices</u>.  All notices, requests, demands, claims, and other communications hereunder shall be in writing.  Any notice, request, demand, claim or other communication hereunder shall be deemed duly delivered: (a) four (4) business days after it is sent by registered or certified mail, return receipt requested, postage prepaid; (b) one (1) business day after it is sent for next business day delivery via a reputable nationwide overnight courier service; (c) when sent, if emailed on a business day; and (d) the next business day following the day on which the email is sent if emailed on a day that is not a business day, in each case to the intended recipient as set forth below:

If to Highland:        Highland Capital Management, L.P.
                      100 Crescent Court, Suite 1850
                      Dallas, Texas 75201
                      Attention: James P. Seery, Jr.
                      Email: jpseeryjr@gmail.com AND notices@highlandcapital.com

                      With copies to:

                      Pachulski Stang Ziehl & Jones LLP
                      780 3rd Avenue #34
                      New York, New York 10017
                      Attention: John A. Morris
                      Email: jmorris@pszjlaw.com

If to Recipients:      c/o Mark Patrick
                      6716 Glenhurst Dr.
                      Dallas, Texas 75254
                      Email: mpatrick@dafholdco.com

                      With copies to:

                      Kelly Hart & Pitre
                      301 Main Street Suite 1600
                      Baton Rouge, Louisiana 70801
                      Attention: Louis M. Phillips
                      Email: Louis.Phillips@kellyhart.com

7

000962
HCMLPHMIT00000145

(h)    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, without regard to conflict of laws provisions. Each Party hereby irrevocably submits and acknowledges and recognizes the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (which court, for purposes of this Agreement, is the only court of competent jurisdiction), over any suit, action or other proceeding arising out of, under or in connection with this Agreement or its subject matter.  Each Party irrevocably consents to service of process in any action or proceeding arising out of or relating to this Agreement in the manner provided for notices in <u>Section 9(g)</u> above. Nothing in this Agreement shall affect the right of any Party to serve process in any manner permitted by law.

(i)    <u>Execution of Agreement</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by email shall constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the Parties transmitted by email shall be deemed to be their original signatures for any purpose whatsoever.

(j)    <u>Headings</u>.  The headings of the sections of this Agreement are inserted for convenience of reference only and shall not control or affect the meaning or construction of any of the terms of this Agreement in any manner.

(k)    <u>Construction</u>.  This Agreement has been fully negotiated by the Parties. Accordingly, in interpreting this Agreement, no weight shall be placed on which Party to this Agreement or its counsel drafted the provision being interpreted.

[SIGNATURES ON FOLLOWING PAGE]

8

000963

HCMLPHMIT00000146

IN WITNESS WHEREOF, the Parties have executed this Agreement to be effective as of the Effective Date.

**HIGHLAND:**

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____
Name: James P. Seery, Jr.
Title: Chief Executive Officer

**RECIPIENTS:**

_____
MARK PATRICK

HUNTER MOUNTAIN INVESTMENT TRUST

By: _____
Name: Mark Patrick
Title: Administrator

CHARITABLE DAF HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director

CDH GP, LTD.

By: _____
Name: Mark Patrick
Title: Director

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

000964

HCMLPHMIT00000147

CHARITABLE DAF FUND, L.P.
By: CDH GP, Ltd., its General Partner

By: _____
Name: Mark Patrick
Title: Managing Member


CLO HOLDCO, LTD.

By: _____
Name: Mark Patrick
Title: Director


RAND ADVISORS, LLC

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND I, L.P.
By: Rand PE Fund Management, LLC, its General Partner

By: _____
Name: Mark Patrick
Title: President


RAND PE FUND MANAGEMENT, LLC

By: _____
Name: Mark Patrick
Title: President


Type text here


SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT


000965
HCMLPHMIT00000148

ATLAS IDF, LP
By: Atlas IDF GP, LLC its General Partner

By: _____
Name: Mark Patrick
Title: President

Type text here

ATLAS IDF GP, LLC

By: _____
Name: Mark Patrick
Title: President

SIGNATURE PAGE TO CONFIDENTIALITY AGREEMENT

000966

HCMLPHMIT00000149

## EXHIBIT A

## PENDING LITIGATION

1.   DAF/CLOH appeal of Seery Retention Order (21-cv-01585-S)

2.   HMIT appeal of Order denying leave to file Claims Trading Complaint (23-cv-02071-E)

3.   HMIT appeal of Order dismissing Valuation Complaint (24-cv-01531-X)

4.   HMIT appeal of Order staying motion for leave to remove Seery (24-cv-01786)

5.   DAF appeal of decision affirming dismissal of HarbourVest Complaint (24-10880)

4910-0725-4050.6 36027.003


000967
HCMLPHMIT00000150

**EXHIBIT 25**

000968

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** Possibility of brief call?
**Date:** Fri, 9 May 2025 19:02:46 +0000
**Importance:** Normal
**Inline-Images:** image003.png

---

John,

I just got back from Turkey, and am amazed at the increased toll that come with increased age.  But am in the office today.

While I was over there we got together and went through the settlement agreement draft.  We aim to get a responsive redline by Monday or Tuesday.  I just want to update as to a shift represented by our thinking about the timing of the releases, a proposed agreement to stay pending bankruptcy court approval, and how we are searching for a slightly different approach to money.  Let me know if you want/have time to visit.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

000969



HCMLPHMIT00000158

**EXHIBIT 26**

000971

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Subject:** RE: Possibility of brief call?
**Date:** Fri, 9 May 2025 19:18:10 +0000
**Importance:** Normal
**Inline-Images:** image003.png; image004.png

---

Sure.  I will be working tomorrow.  We can visit.  Good luck.

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Friday, May 9, 2025 2:09 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Amelia L. Hurt <Amelia.Hurt@kellyhart.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Re: Possibility of brief call?

HCMLPHMIT00000159

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Welcome back.

I am in Court in Delaware so today is out?

Any appetite for a call tomorrow?

Otherwise, Monday will work.

Let us know.

Thanks.

Sent from my iPhone


On May 9, 2025, at 3:02 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:


John,

I just got back from Turkey, and am amazed at the increased toll that come with increased age.  But am in the office today.

While I was over there we got together and went through the settlement agreement draft.  We aim to get a responsive redline by Monday or Tuesday.  I just want to update as to a shift represented by our thinking about the timing of the releases, a proposed agreement to stay pending bankruptcy court approval, and how we are searching for a slightly different approach to money.  Let me know if you want/have time to visit.



**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

*Licensed to Practice in the State of Louisiana*

HCMLPHMIT00000160

Confidentiality or other information. This communication may be privileged and subject to the Electronic Communications Privacy Act,
18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for
the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person
actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying
of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone
at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot
be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the
purpose of marketing or recommending to any other party any transaction or other matter.

000974
HCMLPHMIT00000161

**EXHIBIT 27**

000975

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>

**To:** "John A. Morris" <jmorris@pszjlaw.com>

**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>

**Subject:** RE: Checking in

**Date:** Tue, 13 May 2025 23:04:58 +0000

**Importance:** Normal

---

John,

My fault.  It took a few days longer than I expected to get over my trip to Turkey (actually the travel back).  I sent my proposed version to the client group today and proposed a call early morning tomorrow with an eye toward getting it to you by Noon.

Louis M. Phillips
Partner


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

-----Original Message-----
From: John A. Morris <jmorris@pszjlaw.com>
Sent: Tuesday, May 13, 2025 6:00 PM
To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
Subject: Checking in

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi Louis.


000976
HCMLPHMIT00000162

Checking in.

Jim had understood from Mark that we were to receive comments on the draft agreement yesterday or today.

Any ETA?  Let us know if call would be helpful.

We look forward to hearing from you.

Regards,

John

Sent from my iPhone

000977

HCMLPHMIT00000163

**EXHIBIT 28**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Checking in
**Date:** Wed, 14 May 2025 23:08:10 +0000
**Importance:** Normal

---

Typing transmittal email.



Louis M. Phillips
Partner


KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

Licensed to Practice in the State of Louisiana

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


-----Original Message-----
From: John A. Morris <jmorris@pszjlaw.com>
Sent: Wednesday, May 14, 2025 6:03 PM
To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
Subject: Re: Checking in

EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Hi Louis.

Everything ok?

HCMLPHMIT00000164

We came to move this forward. Let us know.

Thanks.

Sent from my iPhone

> On May 13, 2025, at 7:05 PM, Louis M. Phillips <Louis.Phillips@kellyhart.com> wrote:
>
> John,
>
> My fault.  It took a few days longer than I expected to get over my trip to Turkey (actually the travel back).  I sent my proposed version to the client group today and proposed a call early morning tomorrow with an eye toward getting it to you by Noon.
>
>
>
>
> Louis M. Phillips
> Partner
>
>
>
> KELLY HART & PITRE
> 301 MAIN STREET SUITE 1600
> BATON ROUGE, LOUISIANA 70801
> TELEPHONE: 225-381-9643
> FAX: 225-336-9763
> DIRECT:  225-338-5308
>
> louis.phillips@kellyhart.com
> http://www.kellyhart.com
>
> Licensed to Practice in the State of Louisiana
>
> Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.
>
> IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.
>
> -----Original Message-----
> From: John A. Morris <jmorris@pszjlaw.com>
> Sent: Tuesday, May 13, 2025 6:00 PM
> To: Louis M. Phillips <Louis.Phillips@kellyhart.com>
> Cc: Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
> Subject: Checking in
>
> EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.
>
> Hi Louis.
>
> Checking in.
>
> Jim had understood from Mark that we were to receive comments on the draft agreement yesterday or today.
>
> Any ETA?  Let us know if call would be helpful.

000980


HCMLPHMIT00000165

> We look forward to hearing from you.
>
> Regards,
>
> John
>
> Sent from my iPhone
>

000981

HCMLPHMIT00000166

**EXHIBIT 29**

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com>
**Subject:** KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF
**Date:** Wed, 14 May 2025 23:20:51 +0000
**Importance:** Normal
**Attachments:** KH_clean_of_Redline_of_v9_Settlement_Agreement_after_comments_5.14.DOCX; Redline_KH_5.14_against_Highland_v9.PDF
**Inline-Images:** image003.png

---

John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9.  First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done.  And then I just took longer to get over the lag from traveling back.

We have made some proposed changes.  First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal. We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)).  We have added an agreed abatement of everything pending bankruptcy court approval.  We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal.  We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification.  We also have tried to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.

HCMLPHMIT00000167

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

000984

HCMLPHMIT00000168

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/25/25
5/14/2025

# SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of ~~April [   ],~~May [], 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

HCMLPHMIT00000169

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

000986
HCMLPHMIT00000170

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (viii) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (ix) the Committee and each of its members, (x) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on

000987
HCMLPHMIT00000171

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

or after August 11, 2021, (xi) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd.,  Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland,

000988
HCMLPHMIT00000172

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee*

000989
HCMLPHMIT00000173

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

*of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action ~~other than the HMIT Note Claims~~ that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in <u>Section 1</u> and <u>Sections 9 - 16</u>.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

<u>"Operating Expenses" means the expenses of operation and administration of the Highland Entities except for the Indemnity Trust, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.</u>

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders

000990
HCMLPHMIT00000174

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats, of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement). ), excluding any such action that would otherwise be a Threat except that any applicable Statute of Limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats made to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by such Party to the HMIT Entities, within Five (5) business days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

000991
HCMLPHMIT00000175

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities, including those asserted in the Pending Litigation;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

1.    Abatement and Dismissal of Pending Litigation With Prejudice.

(a)    Within three (3) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to abate the Pending Litigation.

1.(b)    Within three (3) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.    Maintenance of Abatement and Dismissal of Certain Defendants from the Amended Complaint.

(a)    Within three (3) Business Days after the Effective Date, the Litigation Trustee shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand

000992
HCMLPHMIT00000176

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

~~PE Fund from Counts I, II, and III of the Amended Complaint. For the avoidance of doubt, Counts I, II, and III constitute all Kirschner Claims that are not HMIT Note Claims, and such dismissal shall not affect or impair any HMIT Note Claims or any liability or obligation of HMIT with respect to the HMIT Note, if any.~~

~~(b)~~(a)  ~~Within three (3) Business Days after the Final~~The Litigation Trustee shall continue to maintain the abatement of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within three (3) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from ~~Count~~ Counts I, II, III, and XXIV of the Amended Complaint~~, which constitutes all HMIT Note Claims against HMIT and Rand PE.~~.

3.  <u>Cash Payment to HMIT</u>.  In consideration for the dismissal of the Pending Litigation, within three (3) Business Days following the ~~Agreement~~Bankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of ~~[~~Five Hundred Thousand Dollars (US$500,000.00)~~]~~) (the "**Payment**") by wire transfer:

[wire instructions]

4.  <u>HMIT Class 10 Interest</u>.

(a)  Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, <u>less</u> the HMIT Note Balance.

(b)  Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)  Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto.

000993
HCMLPHMIT00000177

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

(d)     For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.    Initial Interim ~~Cash~~ Distributions on the Allowed Class 10 Interests.

(a)     Within ten (10) Business Days ~~of~~after the ~~Final~~Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests~~: (i)~~ cash in the aggregate amount of ~~[Ten~~Twelve Million Dollars (US$~~10~~12,000,000.00)~~]~~) (the "**Initial Interim Cash Distribution Amount**"~~); and (ii) cash in the aggregate amount of all principal and interest payments paid on the Dugaboy Note and actually received by Highland or the Indemnity Trust from and after the Bankruptcy Court Approval Date (the "~~**Initial Interim Dugaboy Distribution Amount**"). "~~).

(b)     ~~Upon~~HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

~~(b)     Within ten (10) Business Days after~~ the Bankruptcy Court Approval Date~~, the Indemnity Trust shall establish a balance sheet reserve in respect of the Initial Interim Cash Distribution Amount and the Initial Interim Dugaboy Distribution Amount (if and when received), which reserve will be held solely in cash or Permitted Investments and otherwise on~~ ("**Note Assignment Date**"), ~~the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 5(a).~~

~~6.     Subsequent Distribution(s) on~~Highland Entities shall cause the Dugaboy Note to be assigned to HMIT and take all actions necessary for HMIT to become the ~~Allowed Class 10 Interests.~~

~~(a)~~(c)   On the ~~later~~holder of the ~~Final Court Approval Date and April 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "~~**Subsequent Distribution**~~", and the date on which such Subsequent Distribution is made, the "~~**Subsequent Distribution Date**~~") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Five Million Dollars (US$5,000,000.00)]; and (ii)(x)~~(1) if HMIT elects in writing that it desires for the Indemnity Trust to sell the~~Dugaboy Note, ~~the net proceeds, if any, actually received by the Indemnity Trust from such sale, or (2) if HMIT instead elects that it desires~~and shall in addition pay ~~to receive the Dugaboy Note in kind, the Dugaboy Note in kind, plus (y)~~HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the ~~the~~ Highland Entities including the Indemnity Trust ~~from and after the Initial Interim Distributions~~as of the Note Assignment ~~(the amount pursuant~~ Date. ~~Prior to subclause (y), the "~~**Subsequent Dugaboy P+I Amount**~~"). If the~~ ~~Dugaboy Note is distributed in kind~~Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude to reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution~~.~~, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting

000994

HCMLPHMIT00000178

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

that the Dugaboy Note can ~~or will~~ be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

~~(b)      Upon the Initial Interim Distribution Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the cash portion of the Subsequent Dugaboy P+I Amount, which will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 6(a).~~

6.      Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)      On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00). . HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)      On Decemeber 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).

(c)      HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subeguent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

~~(c)~~(d)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution~~, including any Cash, the Dugaboy Note,~~ or ~~the~~Second Subsequent ~~Dugaboy P+I Amount,~~Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.      Final Distribution on the Allowed Class 10 Interests.

(a)      On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or

000995

HCMLPHMIT00000179

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)     The Indemnity Trust agrees to not use Indemnity Trust Assets to fund ~~the operating expenses of Highland.~~Operating Expenses.

(c)     Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.     <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims</u>.

(a)     In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10) Business Days ~~of~~after the ~~Agreement~~Bankruptcy Court Approval Date, but after the dismissal provided for in <u>Section 2</u>~~, and solely to the extent permitted by the Plan, the Litigation Sub-Trust Agreement and applicable law~~, the Litigation Sub-Trust shall execute an assignment in the form attached hereto as **Exhibit [_]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims (~~which, for the avoidance of doubt, shall not include any HMIT Note Claims~~) (the "**Kirschner Transfer**").[1] Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including without limitation the terms of Section 8(c) below.

(b)     THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT.  The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement.  Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no

---

[1] ~~NTD: HMIT Claim to be dismissed without prejudice.~~

000996
HCMLPHMIT00000180

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

recourse against the Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)    As promptly as reasonably practicable following the ~~Effective~~Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)    Each Party acknowledges and agrees that if (a) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occur, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.    <u>General Release By The HMIT Entities</u>. On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

10.    <u>General Release By The Highland Entities</u>.

(a)    On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and

000997

HCMLPHMIT00000181

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)(collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims~~, excepting any HMIT Note Claims,~~ which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the ~~Agreement~~Bankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "~~**Initial Highland Released Claims**~~"). ~~For the avoidance of doubt and notwithstanding anything herein to the contrary, the HMIT Note Claims shall not be released until Final Court Approval Date, at which time the HMIT Note will be applied to calculate the allowed HMIT Class 10 Interest set forth in Section 4 and the balance of the HMIT Note and any HMIT Note Claims shall be released pursuant to Section 10(b).~~

~~(b)~~10.   ~~Upon the Final Court Approval Date, and to the maximum extent permitted by law, each of the Highland Releasors hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, the HMIT Note Claims (the "**Subsequent Highland Released Claims**" and together with the Initial Highland Released Claims, the "**Highland Entity Released Claims**" and together with the HMIT Entity Released Claims, the "**Released Claims**").~~**Highland Released Claims**").

11.   Further Provisions Concerning The General Releases.

(a)   **FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.**

(b)   To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c)   Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of

000998
HCMLPHMIT00000182

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein.  Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)     As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)     any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**HMIT Alleged Claim**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

000999
HCMLPHMIT00000183

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

        (ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

        12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

        (a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

        (b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

        (c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

        13.    <u>Representations and Warranties</u>.

        (a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

        (b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors.  The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

001000
HCMLPHMIT00000184

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    <u>No Continuing Rights, Duties or Obligations</u>.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    <u>Gatekeeper Standard</u>.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during

001001
HCMLPHMIT00000185

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)     The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

16.   <u>Indemnification</u>.

(a)     Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in <u>Section 13</u> or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches <u>Section 12</u> shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)     Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in <u>Section 13</u> or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches <u>Section 12</u> shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of <u>Section 12</u> for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001002

HCMLPHMIT00000186

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

17.    <u>Execution</u>.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    <u>Bankruptcy Court Order</u>.  The allowance of the allowed HMIT Class 10 Interest pursuant to <u>Section 4</u> is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    <u>Fees and Expenses</u>.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to <u>Section 18</u>.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    <u>Entire Agreement; No Other Representations</u>.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "<u>REPRESENTATIONS</u>"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY**

001003

HCMLPHMIT00000187

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

**HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT**.

21.    <u>Agreement and Release Knowing and Voluntary</u>.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    <u>Cooperation</u>.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    <u>Governing Law</u>.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    <u>Jurisdiction/Venue</u>.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an action or proceeding arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    <u>No Admissions</u>.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim,

001004
HCMLPHMIT00000188

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.   <u>Other Provisions</u>.

(a)   This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement.  No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)   The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)   The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)   The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.   <u>Notices</u>.   All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt

001005
HCMLPHMIT00000189

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.  <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.  <u>For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.</u>

29.  <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

001006

HCMLPHMIT00000190

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By _____

Name: Mark Patrick
Title: Administrator
Date: ~~April~~May __, 2025

**RAND ADVISORS, LLC**

By _____

Name: Mark Patrick
Title: President
Date: ~~April~~May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By _____

Name: Mark Patrick
Title: President
Date: ~~April~~May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By _____

Name: Mark Patrick
Title: President
Date: ~~April~~May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By _____

001007

HCMLPHMIT00000191

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

Name:      Mark Patrick
Title:     President
Date:      ~~April~~May __, 2025

**ATLAS IDF GP, LLC**

By      _____
Name:      Mark Patrick
Title:     President
Date:      ~~April~~May __, 2025

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By      _____
Name:      James. P. Seery, Jr.
Title:     Chief Executive Officer
Date:      ~~April~~May __, 2025

**HIGHLAND CLAIMANT TRUST**

By      _____
Name:      James P. Seery, Jr.
Title:     Claimant Trustee
Date:      ~~April~~May __, 2025

**HIGHLAND LITIGATION SUB-TRUST**

By      _____
Name:      Marc S. Kirschner
Title:     Litigation Trustee
Date:      ~~April~~May __, 2025

001008

HCMLPHMIT00000192

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**HIGHLAND INDEMNITY TRUST**

By    _____

           Name:     James P. Seery, Jr.
           Title:      Indemnity Trust Administrator
           Date:     ~~April~~May __, 2025

001009
HCMLPHMIT00000193

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/25/25
5/14/2025

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of April [ ], May [], 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

4923-8662-5850.9 36027.003

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

001011
HCMLPHMIT00000195

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or in, the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

Formatted: Font color: Auto

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, including Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (vii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (viii) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (ix) the Committee and each of its members, (x) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on

4923-8662-5850.9 36027.003                              3

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

or after August 11, 2021, (xi) any Person indemnified by any Highland Party (the Persons described in clauses (i)-(xi), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" *provided*, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO, Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland,

001013

HCMLPHMIT00000197

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

"**HMIT Note**" means that certain Secured Promissory Note dated December 21, 2015, in the original face amount of $63,000,000 from HMIT, as maker, and Highland, as payee.

"**HMIT Note Claims**" means any Claim related to, in connection with or arising out of the HMIT Note.

"**HMIT Released Parties**" means collectively (i) the HMIT Entities, (ii) any Affiliate of any HMIT Entity and any Person directly or indirectly majority owned by any HMIT Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any HMIT Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i) – (iii), collectively, the "**HMIT Parties**"), (iv) each of the HMIT Parties' current and former trustees, administrators, officer, executives, agents, directors, advisors, consultants, manager, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns (v) the professionals (and their respective firms (a) retained by any HMIT Party during the Bankruptcy Case or which provided services to any HMIT Party during the Bankruptcy Case or (b) retained by any HMIT Released Party on or after August 11, 2021, (vi) any Person indemnified by any HMIT Party (the Persons described in clauses (i) – (vi), collectively, the "**HMIT Covered Parties**"), and (vii) each HMIT Covered Party's current and former officers, executives, agents, directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "HMIT Covered Parties." *Notwithstanding the forgoing*, none of "HMIT Released Parties", "HMIT Parties", nor "HMIT Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner, and none of such Persons are released from any Claims by any Person in connection with this Agreement.

"**Indemnity Trust Administrator**" has the meaning given to it in the Indemnity Trust Agreement.

"**Indemnity Trust Agreement**" means that certain *Second Amended and Restated Indemnity Trust Agreement of the Indemnity Trust* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of [April 28], 2025, by and among the Claimant Trust, as grantor, James P. Seery, Jr., as indemnity trust administrator, and Wilmington Trust, National Association, a national banking association, as indemnity trustee and Delaware trustee.

"**Indemnity Trust Assets**" has the meaning set forth in the Indemnity Trust Agreement.

"**Independent Board**" means the independent board appointed by the Bankruptcy Court on January 9, 2020, pursuant to that certain *Order Approving Settlement with Official Committee*

001014
HCMLPHMIT00000198

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

*of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 339].

"**Kirschner Claims**" means all Claims and causes of action ~~other than the HMIT Note Claims~~ that were asserted or could have been asserted by the Litigation Trustee of the Litigation Sub-Trust, in the Amended Complaint.

"**Liability**" means any liability, debt, obligation, loss, damage, claim, cost or expense (including costs of investigation and defense and attorney's fees, costs and expenses), in each case, whether direct or indirect, whether accrued or contingent, whether or not involving a third-party claim, and including incidental and consequential damages and diminution of value.

"**Litigation Protections**" means, individually and collectively, the rights, duties, and obligations set forth in Section 1 and Sections 9 - 16.

"**Litigation Sub-Trust**" means the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act.

"**Litigation Sub-Trust Agreement**" means that certain Litigation Sub-Trust Agreement of the Litigation Sub-Trust (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 16, 2021, by and among James P. Seery, Jr., as Claimant Trustee of the Claimant Trust, Wilmington Trust, National Association, a national banking association, as Delaware Trustee, and the Litigation Trustee.

"**Litigation Trustee**" means Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust.

"**LPA**" means that certain *Sixth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.* (as may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), dated as of October 4, 2021.

"Operating Expenses" means the expenses of operation and administration of the Highland Entities except for the Indemnity Trust, including legal expenses, employee compensation, Claimant Trustee/CEO and other trust and trustee related compensation, incentive compensation, and customary general and administrative expenses.

"**Original Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* attached as Exhibit A to the *Order (A) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as modified) and (B) Granting Related Relief*, filed at Docket No. 1943 on the Bankruptcy Court's docket.

"**Oversight Board**" means the oversight board of the Highland Claimant Trust.

"**Pending Litigation**" means (i) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:23-cv-02071-E (N.D. Tex.), on remand to the Bankruptcy Court (including *Hunter Mountain Investment Trust's Emergency Motion for Leave to File Adversary Proceeding* filed at Bankruptcy Court Docket No. 3699 and all proceedings, decisions, and orders

001015

HCMLPHMIT00000199

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

relating there); (ii) *Dugaboy Investment Trust v. Highland Cap. Mgmt, L.P.*, 3:24-cv-01531-X (N.D. Tex.) (only as to HMIT), and (iii) *Hunter Mountain Investment Trust v. Highland Cap. Mgmt., L.P.*, Case No. 3:24-cv-01786-L (N.D. Tex.).

"**Permitted Investments**" has the meaning set forth in the Indemnity Trust Agreement.

"**Person**" means any natural person, partnership, limited liability partnership, corporation, limited liability company, association, joint stock company, trust, estate, joint venture, unincorporated organization or Governmental Authority.

"**Plan**" means that certain *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* as conformed in accordance with the Fifth Circuit's rulings.

"**Plan Documents**" has the meaning given to it in the Plan.

"**Plan Protections**" means, collectively, the provisions of the Plan contained in Article IX thereof.

"**Pro Rata**" means the proportion that (a) the allowed amount of a particular Claim or Equity Interest in Class 10 bears to (b) the aggregate allowed amount of all Claims or Equity Interests in Class 10.

"**Threats**" means any written threats, of legal action, legal demands, filed complaints, petitions for pre-suit discovery, suits, litigations, arbitrations, actual or threated restraining orders or injunctions made in writing, or similar written actions of any kind in any forum against any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), excluding any such action that would otherwise be a Threat except that any applicable Statute of Limitations that could be applicable to such action has expired.

"**Threats Notice**" means the written notice of any Threats made to any Trust Indemnified Parties or Indemnified Party (both as defined in the Indemnity Trust Agreement), that is hereby required to be provided by such Party to the HMIT Entities, within Five (5) business days after receipt of such Threat.

## RECITALS

**WHEREAS**, as of the Petition Date, HMIT held Class B and Class C Limited Partnerships Interests in Highland;

**WHEREAS**, on December 21, 2015, HMIT entered into the HMIT Note with Highland, which had a total outstanding principal balance of Fifty-Seven Million Six Hundred Ninety Thousand Six Hundred Forty and 95/100 Dollars ($57,690,640.95) as of the Petition Date (the "**HMIT Note Balance**");

**WHEREAS**, HMIT's Class B and Class C Limited Partnership Interests in Highland were extinguished on August 11, 2021, in accordance with the Plan;

001016

HCMLPHMIT00000200

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

**WHEREAS**, pursuant to the LPA, HMIT's capital account balance at Highland on account of its Class B and Class C Limited Partnership Interests on the Petition Date was Three Hundred Ninety-Four Million Six Hundred Thirty Thousand Eight Hundred Seventy-One and 53/100 Dollars ($394,630,871.53) (the "**HMIT Capital Account Balance**");

**WHEREAS**, some or all of the HMIT Entities have asserted certain Claims against certain Highland Entities, including those asserted in the Pending Litigation;

**WHEREAS**, some or all of the Highland Entities have asserted certain Claims against certain HMIT Entities, including the HMIT Note Claims;

**WHEREAS**, the Parties wish to terminate, extinguish, and release any and all rights, duties, obligations and Claims that (a) any of the Highland Released Parties owed or have, or may have owed or have, to or with respect to any of the HMIT Released Parties, and (b) any of the HMIT Released Parties owed or have, or may have owed or have, to or with respect to any of the Highland Released Parties, as provided in this Agreement (collectively, the "**Rights and Obligations**");

**WHEREAS**, the Parties agree that the Litigation Protections are intended to enact a permanent cessation of all litigation concerning or related to the Highland Released Parties through and including the Agreement Date; and

**WHEREAS**, the Parties, individually and collectively, wish to (a) resolve all disputes between and/or among any of the Highland Entities, on the one hand, and any of the HMIT Entities, on the other hand, including those asserted in the Pending Litigation, (b) fix and allow HMIT's Class 10 Interest at the amount and on the terms provided herein; and (c) terminate, extinguish, and release all Rights and Obligations on the terms provided herein.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

**AGREEMENT**

1.       Abatement and Dismissal of Pending Litigation With Prejudice.

(a)      Within three (3) Business Days after the Agreement Date, the HMIT Entities shall take all steps necessary (at their own cost) to abate the Pending Litigation.

~~1.~~(b)      Within three (3) Business Days after the Bankruptcy Court Approval Date, the HMIT Entities shall take all steps necessary (at their own cost) to dismiss the Pending Litigation with prejudice.

2.       Maintenance of Abatement and Dismissal of Certain Defendants from the Amended Complaint.

~~(a)      Within three (3) Business Days after the Effective Date, the Litigation Trustee shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand~~

001017
HCMLPHMIT00000201

[Formatted: Level 2, Indent: First line: 0"]

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

PE Fund from Counts I, II, and III of the Amended Complaint.  For the avoidance of doubt, Counts I, II, and III constitute all Kirschner Claims that are not HMIT Note Claims, and such dismissal shall not affect or impair any HMIT Note Claims or any liability or obligation of  HMIT with respect to the HMIT Note, if any.

(b)(a)    Within three (3) Business Days after the FinalThe Litigation Trustee shall continue to maintain the abatement of Adv. Proc. No. 21-03076-sgj and all related proceedings arising therefrom through the Bankruptcy Court Approval Date. Within three (3) Business Days after the Bankruptcy Court Approval Date, the Litigation Sub-Trust shall take all steps necessary (at its own cost) to dismiss, with prejudice, HMIT and Rand PE from Count Counts I, II, III, and XXIV of the Amended Complaint, which constitutes all HMIT Note Claims against HMIT and Rand PE..

3.    Cash Payment to HMIT.  In consideration for the dismissal of the Pending Litigation, within three (3) Business Days following the AgreementBankruptcy Court Approval Date, Highland shall pay HMIT a one-time, lump sum of [Five Hundred Thousand Dollars (US$500,000.00)]) (the "**Payment**") by wire transfer:

[wire instructions]

4.    HMIT Class 10 Interest.

(a)    Subject to entry of the Bankruptcy Court Order, and the terms of this Agreement, the HMIT Class 10 Interest shall be deemed allowed in the amount of Three Hundred Thirty-Six Million Nine Hundred Forty Thousand Two Hundred Thirty and 58/100 Dollars (US$336,940,230.58), which amount represents the HMIT Capital Account Balance, less the HMIT Note Balance.

(b)    Notwithstanding anything to the contrary in the Plan or the Claimant Trust Agreement, as an integral part of this Agreement to consent to the allowance of the HMIT Class 10 Interest and the other considerations in this Agreement, HMIT shall not be deemed, and no holder of the HMIT Class 10 Interest shall be, a Claimant Trust Beneficiary or a "Beneficiary" under the Claimant Trust Agreement, and the Highland Released Parties, individually and collectively, shall owe no duty to any HMIT Releasor (whether contractual, fiduciary, equitable, statutory or otherwise), including with respect to the HMIT Class 10 Interest, in each case, except as expressly set forth in this Agreement.  Furthermore, without limiting the foregoing and for the avoidance of doubt, the contractual right of the holder of the HMIT Class 10 Interest to receive or recover any payments or Indemnity Trust Assets from the Indemnity Trust as set forth in this Agreement or the Indemnity Trust Agreement does not make any HMIT Releasor or any other Person a beneficiary of the Indemnity Trust or under the Indemnity Trust Agreement.

(c)    Notwithstanding anything to the contrary in the Plan, the Claimant Trust Agreement or the Indemnity Trust Agreement, in no event shall HMIT sell, transfer, assign, pledge, hypothecate, participate or otherwise dispose of the HMIT Class 10 Interest or any rights (including any right to payment) with respect thereto.

4923-8662-5850.9 36027.003                    9

Formatted: Not Highlight

Formatted: Not Highlight

HCMLPHMIT00000202

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(d)　　For the avoidance of doubt, the HMIT Class 10 Interest is and shall remain senior to the not yet allowed, unvested contingent Class 11 Claims of Equity Interests as provided for in the Plan, the Plan Documents, and the Claimant Trust Agreement.

5.　　Initial Interim ~~Cash~~ Distributions on the Allowed Class 10 Interests.

(a)　　Within ten (10) Business Days ~~of~~after the ~~Final~~Bankruptcy Court Approval Date, the Indemnity Trust shall distribute (the date on which such distribution is made, the "**Initial Interim Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: ~~(i)~~ cash in the aggregate amount of ~~[Ten~~Twelve Million Dollars (US$~~10~~12,000,000.00)~~]~~) (the "**Initial Interim Cash Distribution Amount**")~~; and (ii) cash in the aggregate amount of all principal and interest payments paid on the Dugaboy Note and actually received by Highland or the Indemnity Trust from and after the Bankruptcy Court Approval Date (the "Initial Interim Dugaboy Distribution Amount"). "~~).

(b)　　~~Upon~~HMIT shall deposit and hold Ten Million Dollars (US$10,000,000) of the Initial Interim Cash Distirbution Amount in an interest bearing escrow account (the "**HMIT Escrow Account**") pending the Final Court Approval Date.

~~(b)　　Within ten (10) Business Days after~~ the Bankruptcy Court Approval Date~~, the Indemnity Trust shall establish a balance sheet reserve in respect of the Initial Interim Cash Distribution Amount and the Initial Interim Dugaboy Distribution Amount (if and when received), which reserve will be held solely in cash or Permitted Investments and otherwise on~~ ("**Note Assignment Date**"). ~~the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 5(a).~~

6.　　~~Subsequent Distribution(s) on~~Highland Entities shall cause the Dugaboy Note to be assigned to HMIT and take all actions necessary for HMIT to become the ~~Allowed Class 10 Interests.~~

~~(a)~~(c)　　~~On the later~~holder ~~of the Final Court Approval Date and April 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "Subsequent Distribution", and the date on which such Subsequent Distribution is made, the "Subsequent Distribution Date") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: (i) cash in the aggregate amount of [Five Million Dollars (US$5,000,000.00)]; and (ii)(x)(1) if HMIT elects in writing that it desires for the Indemnity Trust to sell the~~ Dugaboy Note, ~~the net proceeds, if any, actually received by the Indemnity Trust from such sale, or (2) if HMIT instead elects that it desires~~and shall in addition pay ~~to receive the Dugaboy Note in kind, the Dugaboy Note in kind, plus (y)~~HMIT cash in the aggregate amount of all principal and interest payments actually received on the Dugaboy Note by the ~~the Highland Entities including the~~ Indemnity Trust ~~from and after the Initial Interim Distribution~~as of the Note Assignment Date ~~(the amount pursuant to subclause (y), the "Subsequent Dugaboy P+I Amount"). If the~~ Prior to ~~Dugaboy Note is distributed in kind~~Bankruptcy Court Approval Date, HMIT will engage an independent valuation service provider to value the Dugaboy Note for purposes of determining the magnitude of reduction to the outstanding allowed Class 10 Interests on account of such in-kind distribution~~.~~, which shall not be less than Fifty percent (50%) of the current balance owed under the Dugaboy Note. The HMIT Entities acknowledge and agree that none of the Highland Entities are representing or warranting

001019
HCMLPHMIT00000203

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

that the Dugaboy Note can ~~or will~~ be sold, or the price, if any, that could be received for the Dugaboy Note and further acknowledge and agree that any such purchase price may be de minimis.

> **Formatted:** Not Highlight

~~(b)      Upon the Initial Interim Distribution Date, the Indemnity Trust shall establish a balance sheet reserve in respect of the cash portion of the Subsequent Dugaboy P+I Amount, which will be held solely in cash or Permitted Investments and otherwise on the same terms as other Indemnity Trust Assets pursuant to the Indemnity Trust Agreement pending distribution in accordance with Section 6(a).~~

6.      Subsequent Distribution(s) on the Allowed Class 10 Interests.

(a)      On December 1, 2027, the Indemnity Trust shall distribute (such distribution, collectively, the "**First Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**First Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests: cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).  .  HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the First Subsequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

(b)      On Decemeber 1, 2028, the Indemnity Trust shall distribute (such distribution, collectively, the "**Second Subsequent Distribution**", and the date on which such Subsequent Distribution is made, the "**Second Subsequent Distribution Date**") Pro Rata to the Holders of allowed Class 10 Claims or Equity Interests cash in the aggregate amount of Eight Million Dollars (US$8,000,000.00).

(c)      HMIT shall deposit and hold Six Million Dollars (US$6,000,000) of the Second Subequent Distribution in the HMIT Escrow Account pending the Final Court Approval Date.

~~(c)~~(d)   Notwithstanding anything herein to the contrary, the obligations of the Indemnity Trust to make the First Subsequent Distribution~~, including any Cash, the Dugaboy Note,~~ or ~~the~~Second Subsequent ~~Dugaboy P+I Amount,~~Distribution is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII, Section 8.1(c) of the Indemnity Trust Agreement that the Indemnity Trust Assets comprising such distributions are not reasonably necessary to satisfy current or potential Indemnification Obligations (as defined in the Indemnity Trust Agreement) to all persons who are or might become Beneficiaries (as defined in the Indemnity Trust Agreement).

7.      Final Distribution on the Allowed Class 10 Interests.

(a)      On the later of the Final Court Approval Date and April 1, 2029, the Indemnity Trust will distribute all excess remaining Indemnity Trust Assets in accordance with Article VIII of the Indemnity Trust Agreement; provided, however, that the obligation of the Indemnity Trust to make any such distributions and/or dissolve and wind up the affairs of the Indemnity Trust is subject in all respects to (i) there being no Threats and (ii) a determination in accordance with Article VIII of the Indemnity Trust Agreement that (1) a Final Order(s) (as defined in the Indemnity Trust Agreement) has been entered resolving all litigation, claims or

11

001020

HCMLPHMIT00000204

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

proceedings in any forum of any kind which could give rise to Indemnity Obligations (as defined in the Indemnity Trust Agreement) and payment in full of all such Indemnity Obligations and (2) all applicable statutes of limitations and any applicable tolling of such statutes of limitation have expired.

(b)    The Indemnity Trust agrees to not use Indemnity Trust Assets to fund ~~the operating expenses of Highland.~~Operating Expenses.

(c)    Following the Bankruptcy Court Approval Date, at the request of Mark Patrick, solely in his capacity, and to the extent he remains, as administrator of HMIT, but not more often than quarterly, Highland and the Indemnity Trust Administrator agree to review (i) the status of their respective assets, (ii) the balance of cash held, (iii) the status of any claims made for indemnification and any resolutions thereof, (iv) the status of any litigation, and (v) forecasted operating expenses with Mr. Patrick, and will each work in good faith to reduce operating expenses where reasonably practicable; provided, however, that all such reporting shall be subject to Mr. Patrick's agreement to maintain confidentiality with respect to any non-public information.

8.    <u>Transfer Kirschner Claims; Dismissal of HMIT Note Claims.</u>

(a)    In consideration of the dismissal of the Pending Litigation and the releases provided herein, within ten (10) Business Days ~~of~~after the ~~Agreement~~Bankruptcy Court Approval Date, but after the dismissal provided for in Section 2~~, and solely to the extent permitted by the Plan, the Litigation Sub-Trust Agreement and applicable law~~, the Litigation Sub-Trust shall execute an assignment in the form attached hereto as **Exhibit [__]** in favor of the HMIT Entities transferring all of the Litigation Sub-Trust's right, title, and interest in and to the Kirschner Claims ~~(which, for the avoidance of doubt, shall not include any HMIT Note Claims)~~ (the "**Kirschner Transfer**").[‡] Each HMIT Entity acknowledges and agrees that none of the Highland Entities will have any duty or obligation to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof, except as provided in this Agreement, including without limitation the terms of Section 8(c) below.

(b)    THE HMIT ENTITIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT THE LITIGATION SUB-TRUST IS TRANSFERRING THE KIRSCHNER CLAIMS ON AN "AS IS AND WITH ALL FAULTS" BASIS AND THAT THE HMIT ENTITIES ARE NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM THE HIGHLAND ENTITIES OR THEIR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE KIRSCHNER CLAIMS AND AMENDED COMPLAINT, INCLUDING WITH RESPECT TO THE ENFORCEABILITY, TRANSFERABILITY, VIABILITY, STRENGTH, OR VALUE OF ANY OF THE KIRSCHNER CLAIMS OR THE AMENDED COMPLAINT. The HMIT Entities hereby specifically acknowledge that they have carefully reviewed this Section and have had the opportunity to discuss its import with legal counsel and that the provisions of this Section are a material part of this Agreement. Thus, if for any reason HMIT is precluded from or is otherwise unable to prosecute all or any of the Kirschner Claims, (i) the HMIT Releasors shall have no

---

[‡] ~~NTD: HMIT Claim to be dismissed without prejudice.~~

001021

HCMLPHMIT00000205

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

recourse against the Highland Released Parties whatsoever and shall not be entitled to compensation of any kind, it being agreed that the HMIT Entities are otherwise receiving adequate consideration for the duties and obligations they are undertaking pursuant to this Agreement and (ii) there will be no effect whatsoever on the validity and enforceability of this Agreement or any of the other transactions contemplated hereby.

(c)     As promptly as reasonably practicable following the ~~Effective~~Bankruptcy Court Approval Date, the Highland Entities shall provide to the HMIT Entities electronic copies of written discovery requests and responses thereto, and documents produced in discovery in respect of the Kirschner Claims and the Amended Complaint.  The Highland Entities will not provide any other documents regarding the Kirschner Claims including any attorney-client communications and any documents subject to the attorney work-product doctrine or similar privileges or immunities concerning the Kirschner Claims (collectively, the "**Kirschner Privileges**"), it being understood and agreed that the Highland Entities are retaining, and not transferring or waiving, the Kirschner Privileges.

(d)     Each Party acknowledges and agrees that if (a) the Kirschner Transfer is found or deemed to be impermissible or invalid, for any reason, or (b) the Final Court Approval Date does not occur, the Kirschner Claims and Amended Complaint will revert to, and remain an asset of, the Litigation Sub-Trust.

9.     General Release By The HMIT Entities. On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the HMIT Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and its and their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise) (collectively with the HMIT Entities, the "**HMIT Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each Highland Released Party from, and waives and relinquishes, any and all Claims, which the HMIT Releasors, or any Person claiming through, under, or on behalf of any of the HMIT Releasors, ever had, now has, or hereafter can, shall, or may have against any of the Highland Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the Agreement Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the Highland Released Parties, or the Highland Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "**HMIT Entity Released Claims**").

~~10.~~     General Release By The Highland Entities.

~~(a)~~     On the ~~Agreement~~Bankruptcy Court Approval Date, and to the maximum extent permitted by law, each of the Highland Entities, on behalf of itself and each of its respective Affiliates (including Affiliated and/or managed funds, accounts and other investment vehicles) and

4923-8662-5850.9 36027.003

13

HCMLPHMIT00000206

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

its or their respective current and former advisors, consultants, administrators, trustees, directors, officers, managers, executives, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, successors, predecessors, designees, and assigns (whether by operation of law or otherwise)(collectively with the Highland Entities, the "**Highland Releasors**") hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, any and all Claims, excepting any HMIT Note Claims, which the Highland Releasors, or any Person claiming through, under, or on behalf of any of the Highland Releasors, ever had, now has, or hereafter can, shall, or may have against any of the HMIT Released Parties by reason of, arising from, relating to, or in connection with, any fact, matter, or transaction that occurred prior to the AgreementBankruptcy Court Approval Date, including any fact, matter, transaction, or occurrence in connection with, relating to, or with respect to the Bankruptcy Case, the management or operation of any of the HMIT Released Parties, or the HMIT Released Parties' property and including any defense, affirmative defenses, and right to setoff arising out of, or otherwise related to, any of the foregoing (collectively, the "Initial Highland Released Claims"). For the avoidance of doubt and notwithstanding anything herein to the contrary, the HMIT Note Claims shall not be released until Final Court Approval Date, at which time the HMIT Note will be applied to calculate the allowed HMIT Class 10 Interest set forth in Section 4 and the balance of the HMIT Note and any HMIT Note Claims shall be released pursuant to Section 10(b).

(b)10. Upon the Final Court Approval Date, and to the maximum extent permitted by law, each of the Highland Releasors hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, discharges, remises, and exonerates each HMIT Released Party from, and waives and relinquishes, the HMIT Note Claims (the "Subsequent Highland Released Claims" and together with the Initial Highland Released Claims, the "Highland Entity Released Claims" and together with the HMIT Entity Released Claims, the "Released Claims").Highland Released Claims").

11. <u>Further Provisions Concerning The General Releases.</u>

(a) FOR THE AVOIDANCE OF DOUBT, THE FOREGOING RELEASES ARE INTENDED TO BE GENERAL AND INCLUDE A RELEASE OF ALL RELEASED CLAIMS, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, ARISING OR EXISTING FROM THE BEGINNING OF TIME THROUGH AND INCLUDING THE AGREEMENT DATE.

(b) To the maximum extent permitted by law, each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefit of any statute or other principle of law or equity that limits the applicability of a release with respect to Claims that the releasing party does not know or suspect to exist in his, her or its favor at the time of executing the release.

(c) Without limiting the scope of the foregoing waiver, in connection with the foregoing release, each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, waives the benefits of

Formatted: Level 1, Indent: First line: 0.5", Keep with next, Keep lines together

4923-8662-5850.9 36027.003

14

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

Section 1542 of the California Civil Code (to the extent, if any, that Section 1542 might apply to the foregoing release), which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees that the provisions of Section 1542 of the Civil Code of the State of California and all similar federal or state law, rights, rules or legal principles, legal or equitable, in each case solely to the extent such provisions apply, **ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY EACH OF THE HMIT ENTITIES AND THE HIGHLAND ENTITIES, ON THEIR OWN BEHALF AND ON BEHALF OF THE OTHER HMIT RELEASORS AND HIGHLAND RELEASORS, RESPECTIVELY,** in each and every capacity, to the full extent that such rights and benefits pertaining to the matters released herein may be waived, and each of the HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, hereby agrees and acknowledges that this waiver and relinquishment is an essential term of this Agreement, without which the consideration provided would not have been given.

In connection with such waiver and relinquishment, each of the HMIT Entities and Highland Entities acknowledges that it is aware that it may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which it now knows or believes to be true, with respect to the matters released herein. Nevertheless, it is the intent of each of the HMIT Entities and the Highland Entities, on its own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, in executing this Agreement fully, finally, and forever to settle and release all such matters, and all Claims related thereto, which exist, may exist or might have existed (whether or not previously or currently asserted in any action) which are the subject to the releases granted above.

(d)    As an integral component of this Agreement, and notwithstanding the Parties' intent set forth in the preamble hereto and the general nature of the releases in <u>Sections 9 and 10</u>, should:

(i)    any HMIT Releasor contend or assert that any Claim of any kind whatsoever held by any HMIT Releasor against any Highland Released Party survives this Agreement and is in any way related to or arising from or in connection with any HMIT Entity Released Claim (such claim or cause of action, a "**<u>HMIT Alleged Claim</u>**"), such HMIT Releasor will be deemed to have irrevocably, fully, and finally assigned such HMIT Alleged Claim to the Highland Entities and the Highland Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such HMIT Alleged Claim.

001024
HCMLPHMIT00000208

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

(ii)    any Highland Releasor contend or assert that any Claim of any kind whatsoever held by any Highland Releasor against any HMIT Released Party survives this Agreement and is in any way related to or arising from or in connection with any Highland Entity Released Claim (such claim or cause of action, a "**Highland Alleged Claim**"), such Highland Releasor will be deemed to have irrevocably, fully, and finally assigned such Highland Alleged Claim to the HMIT Entities and the HMIT Entities will be deemed to have forever, finally, full, unconditionally, and irrevocably, and completely released such Highland Alleged Claim.

12.    <u>Covenant Not To Sue; Limitation on Standing</u>. Upon the Agreement Date:

(a)    Each of the HMIT Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the Highland Released Parties, to recover, enforce, or collect any HMIT Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(b)    Each of the Highland Releasors covenants and agrees that it will not institute or prosecute any Action, in law, in equity or otherwise, against any of the HMIT Released Parties, to recover, enforce, or collect any Highland Entity Released Claim and will not (i) induce, encourage or direct any other Person to do so or (ii) act in concert with or assist (financially or otherwise) any other Person in doing so.

(c)    For the avoidance of doubt, this Agreement shall not operate to give any HMIT Entity standing for any purpose in connection with the Bankruptcy Case (or in connection with any appeal arising from any order entered by the Bankruptcy Court), except for the limited purpose of seeking Court approval of this Agreement (including with respect to any appeal concerning any order entered granting or denying such approval), and except for the limited purpose of enforcing this Agreement, no HMIT Entity shall commence any Action in connection with the HMIT Class 10 Interest.

13.    <u>Representations and Warranties</u>.

(a)    Each of the HMIT Entities hereby represents and warrants that every HMIT Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any HMIT Releasor.

(b)    The HMIT Entities, on their own behalf and on behalf of the other HMIT Releasors, acknowledge and agree that each Plan Provision is lawful, effective, and binding on the HMIT Releasors. The HMIT Entities further agree, on their own behalf and on behalf of the other HMIT Releasors, that the HMIT Releasors will never, in any way, challenge or seek to modify, nullify, vacate, or revoke, or induce, encourage or direct any other Person to do so or act in concert with or assist (financially or otherwise) any other Person in doing so the Confirmation Order, the Plan, the Plan Protections, or any Plan Document, including the Claimant Trust Agreement, the LPA, the Indemnity Trust Agreement or the Litigation Sub-Trust Agreement, in the Bankruptcy Court, in any other state or federal court, in any other forum or tribunal, or otherwise, including administrative or regulatory tribunals and foreign courts.

001025
HCMLPHMIT00000209

5/14/2025

(c)    Each of the Highland Entities hereby represents and warrants that every Highland Entity Released Claim has not heretofore been assigned or encumbered and is not the subject of a transfer (as such term is defined in 11 U.S.C. § 101(54)), by any Highland Releasor.

(d)    Each Party severally represents and warrants as to itself only that: (i) it has taken all necessary action to authorize and approve the execution, delivery and performance of this Agreement; (ii) such Party has full power and authority to execute and deliver this Agreement; and (iii) this Agreement constitutes a valid, legal and binding obligation of such Party, and is enforceable subject to its terms.  Each individual signatory hereto individually warrants and represents to all Parties hereto that such individual has full power and authority to act on behalf of and bind the Party for which he or she has executed this Agreement; provided, however that no signatory shall otherwise provide any warranty or representation or otherwise be a party to this Agreement on an individual basis.

14.    No Continuing Rights, Duties or Obligations.  Except for the rights, duties, and obligations expressly set forth in this Agreement, all Rights and Obligations that existed or may have existed shall be deemed terminated, extinguished, and released upon the Agreement Date. For the avoidance of doubt, from and after the Agreement Date, (a) the Highland Released Parties, individually and collectively, shall owe no duty, past or present, including with respect to the Kirchner Claims, to the HMIT Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement, and (b) the HMIT Released Parties, individually and collectively, shall owe no duty to the Highland Releasors, individually and collectively, whether contractual, fiduciary, equitable, statutory or otherwise, except as arising out of this Agreement.

15.    Gatekeeper Standard.

(a)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that, notwithstanding the United States Court of Appeals for the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P.*, No. 23-10534 (5th Cir. Mar. 18, 2025), the "Gatekeeper" provisions contained in Highland's Original Plan is forever binding on each of the HMIT Entities and for a claim or cause of action to be "colorable" for purposes of the Gatekeeper, it must be found by final order of the Bankruptcy Court (the "**Gatekeeper Court**"), which order shall be subject to appeal to a court of competent jurisdiction, to have satisfied the "Gatekeeper Colorability Test" as such term is defined in *In re Highland Capital Management, L.P.*, 2023 Bankr. LEXIS 2104 at *124-36 (Bankr. N.D. Tex. Aug. 24, 2023).

(b)    The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, acknowledge and agree that compliance with the Gatekeeper requires (i) a motion seeking leave to sue an Exculpated Party (as that term is defined in Highland's original Plan) and a finding that the litigant's claims and causes of action are "colorable" attaching a complaint setting forth the basis for such claims or causes of action and (ii), in the Gatekeeper Court's sole discretion, an evidentiary hearing (during

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

which the Gatekeeper Court may, among other things, hear testimony and assess the credibility of any witness(es)) to determine whether a proposed claim or cause of action is "colorable."

(c)      The HMIT Entities and the Highland Entities, on their own behalf and on behalf of the other HMIT Releasors and Highland Releasors, respectively, further acknowledge and agree that the moving party under the Gatekeeper has the burden of satisfying the "Gatekeeper Colorability Test."

16.      Indemnification.

(a)      Without in any manner limiting the available remedies for any breach of this Agreement, the HMIT Entities, severally but not jointly, agree to indemnify, defend, and hold the Highland Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any HMIT Entity set forth in Section 13 or (y) any Actions brought or prosecuted by or on behalf of, any HMIT Releasor or that are induced, encouraged, assisted  or directed by any HMIT Releasor or brought or prosecuted in concert with any HMIT Releasor against any Highland Released Party with respect to or related to any HMIT Entity Released Claims.  Without limiting the scope of the foregoing in any manner, any HMIT Entity that breaches Section 12 shall be liable to the Highland Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such Highland Released Party in defending against or otherwise responding to such Action.  Each HMIT Entity acknowledges and agrees that the HMIT Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

(b)      Without in any manner limiting the available remedies for any breach of this Agreement, the Highland Entities, severally but not jointly, agree to indemnify, defend, and hold the HMIT Released Parties harmless from and against any and all Liability, that may arise or result from or on account of, or that are otherwise related or attributable to (x) any breach of this Agreement or of any representation or warranty contained in the Agreement, including the representations and warranties of any Highland Entity set forth in Section 13 or (y) any suits, proceedings, or other actions brought or prosecuted by or on behalf of, any Highland Releasor or that are induced, encouraged, assisted  or directed by any Highland Releasor or brought or prosecuted in concert with any Highland Releasor against any HMIT Released Party with respect to or related to any Highland Entity Released Claims.  Without in any manner limiting the scope of the foregoing, any Highland Entity that breaches Section 12 shall be liable to the HMIT Released Party against whom the applicable Action has been brought or prosecuted in violation of Section 12 for the reasonable attorneys' fees and costs incurred by such HMIT Released Party in defending against or otherwise responding to such Action.  Each Highland Entity acknowledges and agrees that the Highland Entities are and shall be severally but not jointly liable for any Liability arising from or out of any breach of this Agreement or of any representation or warranty set forth in this Agreement.

001027

HCMLPHMIT00000211

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

17.    Execution.  This Agreement may be executed by the exchange of signatures by facsimile or by PDF attachment to an email transmittal and in counterparts, and if so executed, shall be fully executed when a counterpart has been executed and delivered by all Parties hereto through counsel.  All counterparts taken together shall constitute one and the same agreement and shall be fully enforceable as such.

18.    Bankruptcy Court Order.  The allowance of the allowed HMIT Class 10 Interest pursuant to Section 4 is subject to the entry of the Bankruptcy Court Order.  To that end, the Highland Entities shall file the 9019 Motion no later than five (5) Business Days after the Agreement Date.  Each Party shall, and shall cause each of their respective Affiliates to, undertake any and all actions in compliance with applicable law to obtain the Bankruptcy Court Order as promptly as practicable, and without limiting the foregoing, if an Action is threatened or instituted by any Person opposing the 9019 Motion or otherwise challenging the validity or legality, or seeking to restrain the consummation, of the transactions contemplated by this Agreement or the Bankruptcy Court Order, each Party shall, and shall cause its respective Affiliates to, use their commercially reasonable best efforts to avoid, resist, resolve or, if necessary, and defend to effectuate this Agreement and consummate the transactions hereby.  If the 9019 Motion is not approved by entry of the Bankruptcy Court Order or if the Bankruptcy Court Approval is precluded from becoming a Final Order, (a) there will be no affect on, adjustment to, or impairment of, in any way, the validity and enforceability of the remainder of this Agreement, and the other transactions contemplated hereby, all of which shall remain in full force and effect and (b) each Party shall, and shall cause its respective Affiliates to, use their best efforts to seek the allowance of the HMIT Class 10 Interest in a substantially similar amount and on substantially similar terms as set forth in Section 4 to the fullest extent possible so as to give effect to the original intent of the Parties as closely as possible.

19.    Fees and Expenses.  Whether or not the transactions contemplated hereby are consummated or the Bankruptcy Court Order is obtained, and except as otherwise expressly provided in this Agreement, each Party will bear its respective fees, costs and expenses (including legal, accounting and other professional fees) incurred in connection with the preparation, negotiation, execution and performance of this Agreement or the transactions contemplated hereby, including with respect to each Party's respective obligations pursuant to Section 18.  Notwithstanding the foregoing, if any Party hereto brings an Action to enforce or interpret the terms and provisions of this Agreement, the prevailing Party in that Action shall be entitled to have and recover from the non-prevailing Party all such fees, costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing Party may suffer or incur in the pursuit or defense of such action or proceeding.

20.    Entire Agreement; No Other Representations.  **THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES, AND NO RIGHTS ARE CREATED IN FAVOR OF ANY PARTY OTHER THAN AS SPECIFIED OR EXPRESSLY SET FORTH IN THIS AGREEMENT.  THERE ARE NO REPRESENTATIONS, CONDITIONS, WARRANTIES, STATEMENTS, OR UNDERSTANDINGS (COLLECTIVELY, "REPRESENTATIONS"), EITHER ORAL OR WRITTEN, BETWEEN THE PARTIES OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS AGREEMENT.  THE PARTIES EXPRESSLY AGREE THAT THEY**

001028

HCMLPHMIT00000212

> **Formatted:** No underline

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

5/14/2025

HAVE NOT BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT; AND THE PARTIES EXPRESSLY AGREE THAT THEY HAVE NOT RELIED ON ANY REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES EXPRESSLY AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT RELYING SOLELY ON THEIR OWN JUDGMENT AND NOT ON ANY REPRESENTATIONS BY ANY PARTY, EXCEPT FOR THOSE REPRESENTATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PARTIES AGREE THAT REPRESENTATIONS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT SHALL NOT BE USED IN THE INTERPRETATION OR CONSTRUCTION OF THIS AGREEMENT, AND NEITHER THE HMIT RELEASED PARTIES NOR THE HIGHLAND RELEASED PARTIES SHALL HAVE ANY LIABILITY FOR ANY CONSEQUENCES ARISING AS A RESULT OF ANY REPRESENTATIONS NOT SET FORTH IN THIS AGREEMENT.

21.    Agreement and Release Knowing and Voluntary.  The Parties acknowledge that they have considered this Agreement with their respective attorneys and have carefully read this Agreement, that it has been fully explained by their attorneys, and that they have had a reasonable opportunity to consider this Agreement.  The Parties further represent that they know and fully understand the contents of this Agreement, that they intend to be legally bound by this Agreement and the releases and covenants contained herein, and that they are signing this Agreement, including the release provisions herein, voluntarily and of their own free will and without coercion, and with the benefit of advice of counsel.

22.    Cooperation.  The Parties agree to perform any services or actions reasonably necessary to carry out the terms and conditions of this Agreement or the transactions contemplated hereby, including the execution and delivery of reasonable additional documents, instruments, conveyances and/or assurances, in good faith, and to reasonably communicate and cooperate with one another in this regard.  For the avoidance of doubt, nothing in this Section shall obligate the Highland Entities to assist the HMIT Entities in any way with respect to the Kirschner Claims, including the prosecution thereof.

23.    Governing Law.  This Agreement shall be construed pursuant to and governed by the laws of the State of Delaware (substantive and procedural) without reference to principles of conflicts of law that would result in the application of any other State's laws.

24.    Jurisdiction/Venue.  The Parties hereby irrevocably submit to the jurisdiction and venue of the Bankruptcy Court with respect to any action or proceeding arising out of or related to this Agreement or the subject matter hereof; if (and only if) the Bankruptcy Court lacks personal or subject matter jurisdiction to adjudicate an action or proceeding arising out of or related to this Agreement or the subject matter hereof, then the Parties irrevocably submit to the jurisdiction and venue of the United States District Court for the Northern District of Texas.

25.    No Admissions.  All Parties acknowledge and agree that the matters set forth in this Agreement constitute the settlement and compromise of disputed Claims and that this Agreement shall not constitute the admission of any fact or liability by any of them regarding any Claim,

001029

HCMLPHMIT00000213

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

including the Claims released hereunder, and neither the terms hereof, nor the fact of this Agreement itself, shall be evidence of any kind in any Action, other than an Action to enforce the terms of the Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.

26.    <u>Other Provisions</u>.

(a)    This Agreement contains the entire agreement and understanding of the parties and supersedes any and all prior or contemporaneous agreements, arrangements, and understandings relating to the subject matter of this Agreement.  No representation, inducement, agreement, promise or understandings altering, modifying, amending, taking from or adding to, the terms and conditions hereof shall have any force or effect unless the same is in writing and validly executed by each of the Parties hereto.

(b)    The waiver by any Party of any breach of, or default under, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or default; provided, however, that for any such waiver to be enforceable, it shall be in writing and executed by the non-breaching Party.

(c)    The headings contained in this Agreement are for convenience only and shall in no way restrict or otherwise affect the construction of the provisions hereof.

(d)    The Parties shall each execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

27.    <u>Notices</u>.  All notices required or permitted to be provided hereunder shall be afforded to the respective parties to and through their counsel, and shall be transmitted simultaneously by electronic mail (with PDF attachments, as necessary) and by telefax, addressed as follows:

To the Highland Entities:

**PACHULSKI STANG ZIEHL AND JONES LLP**
Jeffrey N. Pomerantz
John A. Morris
10100 Santa Monica Boulevard
Los Angeles, California 90067-4003
310.277.6910
jpomerantz@pszjlaw.com
jmorris@pszjlaw.com

To the HMIT Entities:

**KELLY HART PITRE**
Louis M. Phillips
Amelia Hurt

4923-8662-5850.9 36027.003                    21

001030
HCMLPHMIT00000214

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
~~DRAFT 4/28/25~~

5/14/2025

301 Main Street, Suite 1600
225.381.9643
Louis.Phillips@Kellyhart.com
Amelia.Hurt@Kellyhart.com

28.    <u>Severability</u>. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity and enforceability of any other provision of this Agreement.  For the avoidance of doubt, if any provision of this Agreement is overturned on appeal after the Bankruptcy Court Approval Date, any portion that is not overturned on appeal shall remain in full force and effect.

29.    <u>Interpretive Provisions</u>. Unless the express context otherwise requires: (a) the words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, shall refer to this Agreement as a whole and not to any particular provision of this Agreement; (b) words defined in the singular shall have a comparable meaning when used in the plural, and vice versa; (c) the words "Dollars" and "$" mean U.S. dollars; (d) references herein to a specific Section, Subsection, Recital, Schedule or Exhibit shall refer, respectively, to Sections, Subsections, Recitals, Schedules or Exhibits of this Agreement; (e) wherever the word "include," "includes" or "including" is used in this Agreement, it shall be deemed to be followed by the words ",without limitation,"; (f) references herein to any gender shall include each other gender; (g) references herein to any Person shall include such Person's heirs, executors, personal representatives, administrators, successors and assigns; provided, however, that nothing contained in this clause (g) is intended to authorize any assignment or transfer not otherwise permitted by this Agreement; (h) with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding"; (i) the word "or" shall be disjunctive but not exclusive; (j) the headings contained in this Agreement are intended solely for convenience and shall not affect the rights of the Parties; and (k) if the last day for the giving of any notice or the performance of any act required or permitted under this Agreement is a day that is not a Business Day, then the time for the giving of such notice or the performance of such action shall be extended to the next succeeding Business Day.

[*Signature page follows*]

001031
HCMLPHMIT00000215

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**HUNTER MOUNTAIN INVESTMENT TRUST**

By    _____

       Name:      Mark Patrick
       Title:       Administrator
       Date:      ~~April~~May __, 2025

**RAND ADVISORS, LLC**

By    _____

       Name:      Mark Patrick
       Title:       President
       Date:      ~~April~~May __, 2025

**RAND PE FUND I, LP**
By: Rand PE Fund Management, LLC, its General Partner

By    _____

       Name:      Mark Patrick
       Title:       President
       Date:      ~~April~~May __, 2025

**RAND PE FUND MANAGEMENT, LLC**

By    _____

       Name:      Mark Patrick
       Title:       President
       Date:      ~~April~~May __, 2025

**ATLAS IDF, LP**
By: Atlas IDF GP, LLC, its General Partner

By    _____

4923-8662-5850.9 36027.003

23

001032

HCMLPHMIT00000216

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

| | |
|---|---|
| Name: | Mark Patrick |
| Title: | President |
| Date: | ~~April~~May __, 2025 |

**ATLAS IDF GP, LLC**


By _____

| | |
|---|---|
| Name: | Mark Patrick |
| Title: | President |
| Date: | ~~April~~May __, 2025 |


**HIGHLAND CAPITAL MANAGEMENT, L.P.**


By _____

| | |
|---|---|
| Name: | James. P. Seery, Jr. |
| Title: | Chief Executive Officer |
| Date: | ~~April~~May __, 2025 |


**HIGHLAND CLAIMANT TRUST**


By _____

| | |
|---|---|
| Name: | James P. Seery, Jr. |
| Title: | Claimant Trustee |
| Date: | ~~April~~May __, 2025 |

**HIGHLAND LITIGATION SUB-TRUST**


By _____

| | |
|---|---|
| Name: | Marc S. Kirschner |
| Title: | Litigation Trustee |
| Date: | ~~April~~May __, 2025 |

4923-8662-5850.9 36027.003

24

001033

HCMLPHMIT00000217

CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FED. R. EVID. 408
DRAFT 4/28/25

**HIGHLAND INDEMNITY TRUST**


By  _____

     Name:     James P. Seery, Jr.

     Title:     Indemnity Trust Administrator

     Date:     ~~April~~May __, 2025

001034

HCMLPHMIT00000218

**EXHIBIT 30**

001035

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**To:** "John A. Morris" <jmorris@pszjlaw.com>
**Cc:** "Jeff Pomerantz" <jpomerantz@pszjlaw.com>, "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)
**Date:** Thu, 15 May 2025 18:22:12 +0000
**Importance:** Normal
**Inline-Images:** image006.jpg; image007.png; image008.png; image002.png

---

Thanks

**Louis M. Phillips**
*Partner*



**KELLY HART & PITRE**
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, May 15, 2025 1:21 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)

HCMLPHMIT00000226

**EXTERNAL SENDER ALERT** This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.

Louis,

The Highland team will send a Teams invite for 4:00 pm Eastern Time.

Chat soon,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Sent:** Thursday, May 15, 2025 2:08 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** RE: Highland/HMIT: Settlement Agreement (HCMLP comments)

John,

We are available at either time.  Let us know which you prefer.  Thanks

**Louis M. Phillips**
*Partner*



KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

louis.phillips@kellyhart.com
www.kellyhart.com

HCMLPHMIT00000227

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, May 15, 2025 12:07 PM
**To:** Louis M. Phillips <Louis.Phillips@kellyhart.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Amelia L. Hurt <Amelia.Hurt@kellyhart.com>
**Subject:** Highland/HMIT: Settlement Agreement (HCMLP comments)

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

SETTLEMENT COMMUNICATION PURSUANT TO FED. R. EVID. 408
<u>WITHOUT PREJUDICE</u>

Louis:

Thank you for sending the revised version of the draft agreement.

Attached is another black line, this one showing Highland's changes to HMIT's last draft.

Are you and your team available at either **4 or 6 pm Eastern Time today** so we can walk you through this?

Please let me know.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 12:45 PM

To: [jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com) <[jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com)>; David Klos <[DKlos@HighlandCapital.com](mailto:DKlos@HighlandCapital.com)>; Matthew Gray
<[MGray@HighlandCapital.com](mailto:MGray@HighlandCapital.com)>; Jeff Pomerantz <[jpomerantz@pszjlaw.com](mailto:jpomerantz@pszjlaw.com)>; John A. Morris <[jmorris@pszjlaw.com](mailto:jmorris@pszjlaw.com)>;
Gregory V. Demo <[GDemo@pszjlaw.com](mailto:GDemo@pszjlaw.com)>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Revised draft attached incorporating the change to Section 8(a).  Thanks

**From:** [jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com) <[jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com)>
**Sent:** Thursday, May 15, 2025 11:42 AM
**To:** David Klos <[DKlos@HighlandCapital.com](mailto:DKlos@HighlandCapital.com)>; Tim Cournoyer <[TCournoyer@HighlandCapital.com](mailto:TCournoyer@HighlandCapital.com)>; Matthew Gray
<[MGray@HighlandCapital.com](mailto:MGray@HighlandCapital.com)>; Jeff Pomerantz <[jpomerantz@pszjlaw.com](mailto:jpomerantz@pszjlaw.com)>; John A. Morris <[jmorris@pszjlaw.com](mailto:jmorris@pszjlaw.com)>;
Gregory V. Demo <[GDemo@pszjlaw.com](mailto:GDemo@pszjlaw.com)>
**Subject:** Re: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Makes sense.  New version coming now

Best.  Jim

Jim Seery
631-804-2049
[jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com)

---

**From:** David Klos <[DKlos@HighlandCapital.com](mailto:DKlos@HighlandCapital.com)>
**Date:** Thursday, May 15, 2025 at 12:40 PM
**To:** Tim Cournoyer <[TCournoyer@highlandcapital.com](mailto:TCournoyer@highlandcapital.com)>, Jim Seery <[jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com)>, Matthew Gray
<[MGray@highlandcapital.com](mailto:MGray@highlandcapital.com)>, Jeff Pomerantz <[jpomerantz@pszjlaw.com](mailto:jpomerantz@pszjlaw.com)>, John A. Morris
<[jmorris@pszjlaw.com](mailto:jmorris@pszjlaw.com)>, Gregory V. Demo <[GDemo@pszjlaw.com](mailto:GDemo@pszjlaw.com)>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments
5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

The deleted provision in Section 3 is similar to a remaining provision in the lead in to Section 8.  Should that be
removed as well?

---

**From:** Tim Cournoyer <[TCournoyer@HighlandCapital.com](mailto:TCournoyer@HighlandCapital.com)>
**Sent:** Thursday, May 15, 2025 11:35 AM
**To:** Jim Seery <[jpseeryjr@gmail.com](mailto:jpseeryjr@gmail.com)>; David Klos <[DKlos@HighlandCapital.com](mailto:DKlos@HighlandCapital.com)>; Matthew Gray
<[MGray@HighlandCapital.com](mailto:MGray@HighlandCapital.com)>; 'Jeff Pomerantz' <[jpomerantz@pszjlaw.com](mailto:jpomerantz@pszjlaw.com)>; 'John A. Morris'
<[jmorris@pszjlaw.com](mailto:jmorris@pszjlaw.com)>; 'Gregory V. Demo' <[GDemo@pszjlaw.com](mailto:GDemo@pszjlaw.com)>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH
5.14 against Highland v9.PDF

Jim – As discussed with you and Dave, attached is a revised draft with one change to Section 3 (removing the
provision tying the $500k payment to any specific component of the settlement).

@Jeff Pomerantz, @John A. Morris, @Gregory V. Demo – Please let us know if you expect to have any
comments and expected timeframe.

We need to circulate drafts to Class 9's, CTOB and HMIT.  We can likely send a draft to Class 9's and CTOB
now subject to ongoing review, since I don't believe you will have any changes to the economic proposal we're
making, but obviously want everyone signed off asap for purposes of getting a draft back to HMIT.

HCMLPHMIT00000229

Thank you.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 10:40 AM
**To:** Jim Seery <jpseeryjr@gmail.com>; David Klos <DKlos@HighlandCapital.com>; Matthew Gray <MGray@HighlandCapital.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>; 'John A. Morris' <jmorris@pszjlaw.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>
**Subject:** RE: PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

All,

Attached are revised drafts of the Settlement Agreement and the Class 9 Written Consent, together with redlines in PDF.  Please let me know if you have any comments ASAP.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Thursday, May 15, 2025 8:23 AM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** PRIVILEGED: RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Below is a quick checklist items to be accomplished.  Please respond if anyone can think of others:

- Settlement Agreement
  - Finalize internal comments among Highland, PSZJ and QE
  - **<u>Need to draft Form of Assignment for Kirschner Claims</u>**
  - Circulate revised draft to:
    - HMIT
    - CTOB
    - Class 9 Holders
- 9019 Motion
  - PSZJ to draft
  - Finalize comments among Highland, QE and PSZJ
  - Circulate final draft to HMIT

- CTOB Resolutions
  - Finalize internal comments among Highland and PSZJ
  - Circulate to:
    - CTOB
    - QE

- Class 9 Consent
  - Finalize internal comments to written consent among Highland and PSZJ
  - Finalize payment schedule to be attached as Exhibit
  - Circulate to:
    - Muck
    - Jessup
    - UBS

- Pay Daugherty Class 9 Claim (can likely happen post-signing)

HCMLPHMIT00000230

To be completed promptly following receipt of Class 9 Consent

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:19 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** Re: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Thanks - I got those on the issues list as well.

TIMOTHY J. COURNOYER
D: 972.628.4153 | M: 305.479.0804

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 10:18 PM
**To:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Two principal comments: 1) we don't own the entire Dugaboy Note as defined in the agreement, so we can't assign the amount of the note owed to Get Good. If language as drafted is fine then no worries, 2) clarifying we pay all P&I received on Dugaboy note between execution date and assignment date.

---

**From:** Tim Cournoyer <TCournoyer@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 9:42 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>; Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Matt – can you send a PDF of your comments?  I think the colors of the various comments is dependent on each user's individual Word settings.

---

**From:** Matthew Gray <MGray@HighlandCapital.com>
**Sent:** Wednesday, May 14, 2025 8:59 PM
**To:** Jim Seery <jpseeryjr@gmail.com>; 'John A. Morris' <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; 'Jeff Pomerantz' <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Apologies, for some reason my red comments did not show up in prior version. Attached has comments in red.

HCMLPHMIT00000231

**From:** Matthew Gray
**Sent:** Wednesday, May 14, 2025 8:46 PM
**To:** jpseeryjr@gmail.com; John A. Morris <jmorris@pszjlaw.com>
**Cc:** Tim Cournoyer <TCournoyer@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; 'Gregory V. Demo' <GDemo@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** RE: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

I've attached a few comments in red, mostly on the Dugaboy note. Continuing to review.

---

**From:** jpseeryjr@gmail.com <jpseeryjr@gmail.com>
**Sent:** Wednesday, May 14, 2025 7:26 PM
**To:** Matthew Gray <MGray@HighlandCapital.com>
**Subject:** FW: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Best.  Jim

Jim Seery
631-804-2049
jpseeryjr@gmail.com

---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Date:** Wednesday, May 14, 2025 at 7:33 PM
**To:** James Seery <jpseeryjr@gmail.com>, Tim Cournoyer <TCournoyer@highlandcapital.com>, David Klos <DKlos@highlandcapital.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>, Gregory V. Demo <GDemo@pszjlaw.com>
**Subject:** Fwd: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF

Sent from my iPhone

Begin forwarded message:

**From:** "Louis M. Phillips" <Louis.Phillips@kellyhart.com>
**Date:** May 14, 2025 at 7:21:19 PM EDT
**To:** "John A. Morris" <jmorris@pszjlaw.com>, Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Cc:** "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, Jim Shields <jshields@shieldslegal.com>
**Subject: KH clean of Redline of v9 Settlement Agreement after comments 5.14.DOCX; Redline KH 5.14 against Highland v9.PDF**

John,

Please see the HMIT Entities' responsive version of the settlement agreement along with the redline from your version 9.  First, I apologize for the delay, as the last version, sent by Mr. Seery, arrived on the day I landed in Istanbul, and scheduling on my side plus my schedule while overseas made it difficult to get things done.  And then I just took longer to get over the lag from traveling back.

We have made some proposed changes.  First major change is that we are willing to have the releases made effective as of bankruptcy court approval, and live with that in the event of an appeal.

We also think, because the bankruptcy court will have approved the agreement, that the assignment of the Dugaboy Note and the Kirchner litigation should be done within the revised timeline set forth, and that there is no reason for any reservation of HMIT Note Claims by the Litigation Sub Trust (and no reason that we can see for continued day to day activity of the sub-trust, as the litigation would only be returned if an appeal is successful (which none of us think will be the case – at least I think none of us do)).  We have added an agreed abatement of everything pending bankruptcy court approval.  We have also accelerated funding, though propose an agreement to escrow funds in the event of reversal on appeal.  We have reviewed the information provided by Mr. Seery and his group and think our structure and timing of funding leaves plenty of money aside for indemnification.  We also have tried to identify and make clear what a Threat would be, to get something objective we can rely on and receive notice of.

I am around tomorrow and Friday.  I will be working this weekend (without jet lag) and in my New Orleans office Monday preparing for an all day trial on Tuesday. We should be able to corral my side quickly.

There are some other tweaks that are minor we think, with the changes mentioned above being the major changes in structure.

Also, John, while the parties have discussed this matter the attached draft agreement does not contain any reference.  That is ok with us, but my clients request from your side an answer to the following question:  "Did any of the Highland Entities or their affiliates, for their own account or on behalf of Highland CDO Holding Company, affirmatively give consent to the transfer by Sentinel Reinsurance, Ltd. or its affiliates of that certain promissory note in the original principal amount of app.$32.8M and dated December 13, 2010, and executed by CLO Holdco, Ltd.?"

I really appreciate your patience. Look forward to visiting soon.

**Louis M. Phillips**
*Partner*

KELLY HART & PITRE
301 MAIN STREET SUITE 1600
BATON ROUGE, LOUISIANA 70801
TELEPHONE: 225-381-9643
FAX: 225-336-9763
DIRECT:  225-338-5308

*louis.phillips@kellyhart.com*
*www.kellyhart.com*

*Licensed to Practice in the State of Louisiana*

Confidentiality Notice: The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2510, et seq., and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (225) 381-9643 and return the original message to us at louis.phillips@kellyhart.com.

IRS Circular 230 Disclosure: Any tax advice contained in this email including any attachments, was not intended to be used, and cannot be used by you or anyone else, for the purpose of avoiding penalties imposed by the Internal Revenue Code or other law or for the purpose of marketing or recommending to any other party any transaction or other matter.


HCMLPHMIT00000233

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

HCMLPHMIT00000234

# EXHIBIT 31

| | |
|---|---|
| **From:** | "Louis M. Phillips" <Louis.Phillips@kellyhart.com> |
| **To:** | "John A. Morris" <jmorris@pszjlaw.com>, "Jeff Pomerantz" <jpomerantz@pszjlaw.com> |
| **Cc:** | "Amelia L. Hurt" <Amelia.Hurt@kellyhart.com>, "Jim Shields" <jshields@shieldslegal.com> |
| **Subject:** | SETTLEMENT AND RELEASE AGREEMENT KHH FINAL REDLINE COMMENTS 5.16.PDF; Highland HMIT-Rand Settlement Agreement.012(Highland Draft 05.15.25) KHH Clean for Execution 5.16.DOCX |
| **Date:** | Fri, 16 May 2025 15:39:55 +0000 |
| **Importance:** | Normal |
| **Attachments:** | SETTLEMENT_AND_RELEASE_AGREEMENT_KHH_FINAL_REDLINE_COMMENTS_5.16.PDF; Highland_HMIT-Rand_Settlement_Agreement.012(Highland_Draft_05.15.25)_KHH_Clean_for_Execution_5.16.DOCX |

---

John and Jeff,

Please see a final redline with wire instructions added, a bold of a WHEREAS, and references to payments being made by Wire Transfer.  I did not add the Wire Transfer to the final distribution part because of the reference to "assets" versus payment and did not want to go into the body of the document to deal with that.  Also the attached PDF (redlined against John's clean from yesterday) does not include the header clean up contained in the word version.  We are prepared to execute this version.  Mark will be out for a while today so just let us know if we can get his signatures or whether you have any further comments.  Thank you.

EXECUTION VERSION

## SETTLEMENT AGREEMENT & GENERAL RELEASE

THIS SETTLEMENT AGREEMENT & GENERAL RELEASE (this "**Agreement**") is entered into as of May 16, 2025 (the "**Agreement Date**"), by and among Highland Capital Management, L.P., a Delaware limited partnership ("**Highland**"), the Highland Claimant Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Claimant Trust**"), the Highland Litigation Sub-Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Litigation Sub-Trust**"), and the Highland Indemnity Trust, a Delaware statutory trust governed by the Delaware Statutory Trust Act (the "**Indemnity Trust**", and together with Highland, the Claimant Trust and the Litigation Sub-Trust, the "**Highland Entities**"), on the one hand, and Hunter Mountain Investment Trust, a Delaware statutory trust ("**HMIT**"), Beacon Mountain LLC, a Delaware limited liability company ("**Beacon Mountain**"), Rand Advisors, LLC, a Delaware limited liability company ("**Rand Advisors**"), Rand PE Fund I, LP, a Delaware series limited partnership ("**Rand PE Fund**"), Rand PE Fund Management, LLC, a Delaware limited liability company ("**Rand GP**"), Atlas IDF, LP, a Delaware limited partnership ("**Atlas IDF**"), Atlas IDF GP, LLC, a Delaware limited liability company ("**Atlas GP**" and together with HMIT, Beacon Mountain, Rand Advisors, Rand PE Fund, Rand GP and Atlas IDF, the "**HMIT Entities**"), on the other hand.  The Highland Entities and the HMIT Entities are collectively referred to as the "**Parties**," and each individually, as a "**Party**".

## DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Claimant Trust Agreement or the Plan, as applicable (in each case, as hereinafter defined). For purposes of this Agreement, the following capitalized terms have the following meanings:

"**9019 Motion**" means the motion seeking entry of the Bankruptcy Court Order pursuant to Bankruptcy Rule 9019 and in accordance with Section 18.

"**Action**" means any action, claim, demand, arbitration, hearing, charge, complaint, investigation, examination, indictment, litigation, suit or other civil, criminal, administrative or investigative proceedings, including any petition under Rule 202 of the Texas Rules of Civil Procedure.

"**Affiliate**" means a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, a specified Person as of the date on which, or at any time during the period for which, the determination of affiliation is being made. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as applied to any Person, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or other ownership interest, by contract or otherwise.

"**Amended Complaint**" means the *Amended Complaint and Objection to Claims*, filed as docket number 158 in *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. May 19, 2022).

"**Bankruptcy Case**" means *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.) and its related proceedings.

001047

HCMLPHMIT00000236

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended).

"**Bankruptcy Court**" means the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.

"**Bankruptcy Court Approval Date**" means the date on which the Bankruptcy Court Order is issued.

"**Bankruptcy Court Order**" means an order of the Bankruptcy Court approving the allowance of the HMIT's Class 10 Interest as provided in this Agreement pursuant to the 9019 Motion.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Business Day**" means any day other than (i) a Saturday or a Sunday, (ii) a day on which the Federal Reserve Bank of New York or the New York Stock Exchange is closed, or (iii) a day on which banks in the States of Texas are required, or authorized by law, to close.

"**Claimant Trust Agreement**" means that certain Claimant Trust Agreement of the Claimant Trust (as may have been or may be amended, supplemented or otherwise modified in accordance with the terms thereof from time to time), effective as of August 11, 2021, by and among Highland, as settlor, James P. Seery, Jr., a Claimant Trustee, and Wilmington Trust, National Association, a national banking association, as Delaware trustee.

"**Claims**" means any claims, debts, liabilities, demands, obligations, breaches of contract, breaches of duty or any relationship, misfeasance, malfeasance, promises, acts, omissions, agreements, liens, losses, costs and expenses (including attorney's fees and related costs), damages, injuries, suits, Actions, and causes of action of whatever kind or nature, whenever and however, arising, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise.

"**Class 10**" means the class of Claims or Equity Interests described in Article II. Section H.10. of the Plan.

"**Class 11**" means the class of Claims or Equity Interests described in Article II. Section H.11. of the Plan.

"**Committee**" means the official committee of unsecured creditors appointed in the Bankruptcy Case.

"**Confirmation Order**" means that certain *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943], as conformed in accordance with the Fifth Circuit's rulings.

"**Dugaboy Note**" means that certain Promissory Note dated May 31, 2017, in the original face amount of $24,268,621.69, from The Dugaboy Investment Trust, as Maker, and Highland Capital Management, L.P. and The Get Good Non-Exempt Trust, collectively as Payee.

2

HCMLPHMIT00000237

"**Final Court Approval Date**" means the date on which the Bankruptcy Court Order becomes a Final Order.

"**Final Order**" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Highland Entities, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

"**Gatekeeper**" means the gatekeeping provision contained in Article IX. F of the Plan as of August 11, 2021.

"**Governmental Authority**" means any federal, provincial, state, local or foreign government or political subdivision thereof, court of competent jurisdiction, administrative agency, judicial or arbitral body, or commission or other governmental or regulatory authority or instrumentality.

"**Highland Released Parties**" means collectively (i) the Highland Entities, (ii) any Affiliate of any Highland Entity and any Person directly or indirectly majority-owned by any Highland Entity or any of their respective Affiliates, (iii) any Person directly or indirectly managed by any Highland Entity or any of their respective Affiliates, whether by contract or otherwise (the entities described in clauses (i)-(iii), collectively, the "**Highland Parties**"), (iv) each of the Highland Parties' current and former trustees and administrators (including the trustees of any of the Claimant Trust, the Litigation Sub-Trust, or the Indemnity Trust), officers, executives, agents, directors, advisors, advisory representatives, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, (v) the current and former members of the Oversight Board of the Claimant Trust in any capacity (including Richard Katz) and their Affiliates, (vi) Farallon Capital Management, LLC, Stonehill Capital Management, LLC, Muck Holdings LLC, and Jessup Holdings LLC, in each case, in any capacity, (vii) the Independent Board and its members John Dubel, James P. Seery, Jr., and Russell Nelms, (viii) James P. Seery, Jr., individually and in all capacities for any Highland Released Party, including as Chief Executive Officer of Highland Capital Management, L.P., Claimant Trustee of the Claimant Trust, and the Indemnity Trust Administrator of the Indemnity Trust, (ix) Marc S. Kirschner, individually and as Trustee of the Litigation Sub-Trust, (x) the Committee and each of its members, (xi) the professionals (and their respective firms) (a) retained by Highland or the Committee during the Bankruptcy Case or which provided services to Highland or the Committee during the Bankruptcy Case or (b) retained by any Highland Released Party on or after August 11, 2021, (xii) any Person indemnified by any

3

001049
HCMLPHMIT00000238

Highland Party (the Persons described in clauses (i)-(xii), collectively, the "**Highland Covered Parties**"), and (xii) each Highland Covered Party's current and former officers, executives, agents, attorneys (and their respective firms), directors, advisors, consultants, administrators, managers, members, partners (including limited and general partners), employees, beneficiaries, shareholders, other equityholders, participants, direct and indirect subsidiaries and parents, Affiliates, successors, designees, and assigns, if not otherwise included in the defined term "Highland Covered Parties;" provided, however, and for the avoidance of doubt, and without in any way limiting the scope of the foregoing, "Highland Covered Parties" shall include Highland CLO Funding, Ltd., Highland HCF Advisor, Ltd., Highland Multi Strategy Credit Fund, L.P., Highland Multi Strategy Credit Fund GP, L.P., Highland Multi Strategy Credit GP, LLC, Highland Multi Strategy Credit Fund, Ltd., Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., Highland Select Equity Fund, L.P., Highland Restoration Capital Partners Master, L.P., Highland Restoration Capital Partners GP, LLC, Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Offshore Director, LLC, Acis CLO Management, LLC, Neutra, Ltd., Pollack, Ltd., Acis CLO Management Holdings, L.P., Acis CLO Management Intermediate Holdings I, LLC, Acis CLO Management Intermediate Holdings II, LLC, Acis CLO Assets Holdings Limited, CHG Houston Holdings, LLC, Penant Management, L.P., Penant Management GP, LLC, Gunwale, LLC, HE Capital, LLC, Gleneagles CLO, Ltd., Aberdeen Loan Funding, Ltd. Highland Argentina Regional Opportunity Fund GP, LLC, Highland Argentina Regional Opportunity Fund, L.P., Highland Argentina Regional Opportunity Fund, Ltd., Highland Argentina Regional Opportunity Master Fund, L.P., Highland Latin America Consulting, Ltd., Highland Capital Management Korea Limited, Highland Capital Management Latin America, L.P., Highland Latin America GP, Ltd., Highland Latin America LP, Ltd., Highland Offshore Partners, L.P. (Diversified), Brentwood CLO, Ltd., Eastland CLO, Ltd., Bristol Bay Funding Ltd., Jasper CLO Ltd., Highland Legacy Limited, Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Liberty CLO, Ltd., Valhalla CLO, Ltd., Stratford CLO Ltd., Southfork CLO, Ltd., Pam Capital Funding, L.P., Stonebridge-Highland Healthcare Private Equity Fund, Pamco Cayman Ltd., Red River CLO, Ltd., Rockwall CDO II Ltd., Rockwall CDO II Ltd., Westchester CLO, Ltd. Longhorn Credit Funding, LLC, PensionDanmark Pensionsforsikringsaktieselskab, Highland Dynamic Income Master Fund L.P., Highland Dynamic Income Fund GP, LLC, Highland Dynamic Income Fund, L.P., Highland Dynamic Income Fund, Ltd., Highland JHT Holdings, LLC, Highland Prometheus Master Fund, L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland Sunbridge GP, LLC, Trussway Holdings, LLC, Trussway Industries, LLC, TW Company, Inc., T-Way Investments, LLC, SSP Holdings, LLC, Highland Flexible Income UCITS Fund, and Acis CLO 2017-7, Ltd. *Notwithstanding the forgoing or anything herein to the contrary*, none of "Highland Released Parties", "Highland Parties", nor "Highland Covered Parties" shall include James Dondero, Scott Ellington, Isaac Leventon, or any Person directly or indirectly owned as of the date hereof (in whole or in part) by, and/or Affiliated as of the date hereof with, or claiming through, under or on behalf of, any of Mr. Dondero, Mr. Ellington, or Mr. Leventon in any manner and none of such Persons are released from any Claim by any Person in connection with this Agreement.

"**HMIT Class 10 Interest**" means the unvested, contingent Class 10 interest in the Claimant Trust (a) to be allowed on account of HMIT's pre-petition equity interest in Highland, and (b) subject to the terms and conditions, as applicable, of the Plan, the Plan Documents, the Claimant Trust Agreement, and in accordance with this Agreement, and applicable law.

4

001050

HCMLPHMIT00000239