**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P

|   |   |   |
|---|---|---|
| | § | |
| | § | Case No. **19-34054-sgj11** |
| **Patrick Daugherty - Appellant** | | |
| | § | **3:25-CV-01901-S** |
| | | CONSOLIDATED UNDER: |
| vs. | § | **3:25-CV-01876-K** |
| **Highland Capital Management, L.P; et al** - Appellee | | |
| | § | |
| | § | |

  **[4297] Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document # 4216) Entered on 6/30/2025**

# Volume 13

# APPELLANT RECORD

Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:     jbrookner@grayreed.com
           dyork@grayreed.com
           jsmeltzer@grayreed.com
           drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | § § § | |

*INDEX*

**APPELLANT'S AMENDED DESIGNATION OF ITEMS
TO BE INCLUDED IN THE RECORD ON APPEAL
AND STATEMENT OF THE ISSUES PRESENTED**

Pursuant to Fed. R. Bankr. P. 8009(a) and Docket No. 4366, Appellant Patrick Daugherty

("Daugherty") hereby submits his amended designation of items to be included in the record on

appeal and statement of issues to be presented in connection with his appeal from the *Order*

*Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the*

*Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket

---

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Case 3:25-cv-01036-K  Document 35-13  Filed 08/04/25  Entered 08/04/25 12:32:18  Page 3 of 168  PageID 9548
Case 19-34054-sgj11  Doc 4869-5  Filed 08/01/25  Entered 08/01/25 12:32:18  Page 3 of 9
Main Document        Page 2 of 9

No. 4297] (the "<u>HMIT Settlement Order</u>").[2] *See Notice of Appeal* [Docket No. 4310, as amended at Docket No. 4327].

### Statement of Issues on Appeal

1. Whether the Bankruptcy Court erred in its approval of the HMIT Settlement Order [Docket No. 4297], which permits payment to Class 10 creditors before all Class 8 and Class 9 claims have been paid in full when the plain language of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. 1808], the Court's Confirmation Order [Dkt. 1943] and the Claimant Trust Agreement [Dkt. 3817-4] require full payment plus applicable interest to all Class 8 and Class 9 creditors before any Class 10 or Class 11 claims can vest.

2. Whether the Bankruptcy Court abused its discretion by approving the HMIT Settlement Order [Docket No. 4297] when the settlement is not fair, reasonable, or in the best interests of the estate as the Debtor, through its principals, is forgoing the recovery of millions in material value to the estate in exchange for, inter alia, self-serving releases of its principals.

### Designation of Record

Daugherty respectfully designates the following items to be included in the appellate record pursuant to Bankruptcy Rule 8009(a):

000001  1. Amended Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Dkt. 4327].

000011  2. Notice of Appeal for Bankruptcy Case No. 19-34054-sgj11 [Dkt. 4310].

000022  3. The Judgment Order or Decree appealed from: *Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith* [Docket No. 4297].

000026  4. Docket Sheet for Bankruptcy Case No. 19-34054-sgj1 kept by the Bankruptcy Clerk.

5. Documents listed below for Bankruptcy Case No. 19-34054-sgj11:

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the HMIT Settlement Order.

4905-5299-6446

*Vol. 2*

| Date | Docket | Description |
|------|--------|-------------|
| 11/18/2020 | 1426 | *Transcript regarding Hearing Held 11/17/2020 (90 pages)* RE: Motion for Temporary Allowance of Claim (#1281). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 02/16/2021. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 1422 Hearing held on 11/17/2020. (RE: related document(s) 1281 Motion for leave - Daugherty's Motion for Temporary Allowance of Claim for Voting Purposes Pursuant to Bankruptcy Rule 3018 filed by Creditor Patrick Daugherty) (Appearances: T. Uebler, J. Christensen, and J. Kathman for P. Daugherty; J. Morris and J. Pomeranz for Debtor; M. Clemente for UCC. Evidentiary hearing. Claim estimated for voting purposes at $9,134,019 for reasons stated on the record. Counsel to upload order.)). Transcript to be made available to the public on 02/16/2021. (Rehling, Kathy) |
| 05/19/2025 | 4216 | *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* (Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) (Attachments: # 1 Exhibit A-- Proposed Order) |
| 05/19/2025 | 4217 | *Declaration of Gregory V. Demo in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith* (filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust) (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 05/20/2025 | 4218 | *Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust* (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |

*000637*

*000727*

*000745*

*000773*

Vol. 2

| Date | Docket | Description |
|------|--------|-------------|
| 05/22/2025 | 4221 | *Amended Notice of hearing filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust* (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Attachments: # 1 Exhibit A # 2 Exhibit B), 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Attachments: # 1 Exhibit A--Proposed Order)). Hearing to be held on 6/25/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 4213 and for 4216, (Annable, Zachery) |
| 06/09/2025 | 4229 | *Objection to (related document(s): 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust)* (filed by Creditor Patrick Daugherty. (Attachments: # 1 Proposed Order) (York, Andrew) |

000779

008785

4

| Date | Docket | Description |
|------|--------|-------------|
| 06/20/2025 | 4255 | *Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust* (RE: related document(s) <u>4216</u> Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # <u>1</u> Exhibit 1 # <u>2</u> Exhibit 2 # <u>3</u> Exhibit 3 # <u>4</u> Exhibit 4 # <u>5</u> Exhibit 5 # <u>6</u> Exhibit 6 # <u>7</u> Exhibit 7 # <u>8</u> Exhibit 8 # <u>9</u> Exhibit 9 # <u>10</u> Exhibit 10 # <u>11</u> Exhibit 11 # <u>12</u> Exhibit 12 # <u>13</u> Exhibit 13 # <u>14</u> Exhibit 14 # <u>15</u> Exhibit 15 # <u>16</u> Exhibit 16 # <u>17</u> Exhibit 17 # <u>18</u> Exhibit 18 # <u>19</u> Exhibit 19 # <u>20</u> Exhibit 20 # <u>21</u> Exhibit 21 # <u>22</u> Exhibit 22 # <u>23</u> Exhibit 23 # <u>24</u> Exhibit 24 # <u>25</u> Exhibit 25 # <u>26</u> Exhibit 26 # <u>27</u> Exhibit 27 # <u>28</u> Exhibit 28 # <u>29</u> Exhibit 29 # <u>30</u> Exhibit 30 # <u>31</u> Exhibit 31 # <u>32</u> Exhibit 32 # <u>33</u> Exhibit 33 # <u>34</u> Exhibit 34 # <u>35</u> Exhibit 35 # <u>36</u> Exhibit 36 # <u>37</u> Exhibit 37 # <u>38</u> Exhibit 38 # <u>39</u> Exhibit 39 # <u>40</u> Exhibit 40 # <u>41</u> Exhibit 41 # <u>42</u> Exhibit 42 # <u>43</u> Exhibit 43 # <u>44</u> Exhibit 44 # <u>45</u> Exhibit 45 # <u>46</u> Exhibit 46 # <u>47</u> Exhibit 47 # <u>48</u> Exhibit 48 # <u>49</u> Exhibit 49 # <u>50</u> Exhibit 50 # <u>51</u> Exhibit 51 # <u>52</u> Exhibit 52 # <u>53</u> Exhibit 53 # <u>54</u> Exhibit 54 # <u>55</u> Exhibit 55 # <u>56</u> Exhibit 56 # <u>57</u> Exhibit 57 # <u>58</u> Exhibit 58 # <u>59</u> Exhibit 59 # <u>60</u> Exhibit 60 # <u>61</u> Exhibit 61 # <u>62</u> Exhibit 62 # <u>63</u> Exhibit 63 # <u>64</u> Exhibit 64 # <u>65</u> Exhibit 65 # <u>66</u> Exhibit 66 # <u>67</u> Exhibit 67 # <u>68</u> Exhibit 68 # <u>69</u> Exhibit 69 # <u>70</u> Exhibit 70 # <u>71</u> Exhibit 71 # <u>72</u> Exhibit 72 # <u>73</u> Exhibit 73 # <u>74</u> Exhibit 74 # <u>75</u> Exhibit 75 # <u>76</u> Exhibit 76 # <u>77</u> Exhibit 77 # <u>78</u> Exhibit 78 # <u>79</u> Exhibit 79 # <u>80</u> Exhibit 80 # <u>81</u> Exhibit 81 # <u>82</u> Exhibit 82 # <u>83</u> Exhibit 83 # <u>84</u> Exhibit 84 # <u>85</u> Exhibit 85 # <u>86</u> Exhibit 86 # <u>87</u> Exhibit 87 # <u>88</u> Exhibit 88 # <u>89</u> Exhibit 89 # <u>90</u> Exhibit 90 # <u>91</u> Exhibit 91 # <u>92</u> Exhibit 92 # <u>93</u> Exhibit 93 # <u>94</u> Exhibit 94 # <u>95</u> Exhibit 95 # <u>96</u> Exhibit 96 # <u>97</u> Exhibit 97 # <u>98</u> Exhibit 98 # <u>99</u> Exhibit 99 # <u>100</u> Exhibit 100 # <u>101</u> Exhibit 101 # <u>102</u> Exhibit 102 # <u>103</u> Exhibit 103 # <u>104</u> Exhibit 104 # <u>105</u> Exhibit 105 # <u>106</u> Exhibit 106 # <u>107</u> Exhibit 107 # <u>108</u> Exhibit 108 # <u>109</u> Exhibit 109 # <u>110</u> Exhibit 110 # <u>111</u> Exhibit 111 # <u>112</u> Exhibit 112 # <u>113</u> Exhibit 113 # <u>114</u> Exhibit 114 # <u>115</u> Exhibit 115 # <u>116</u> Exhibit 116 # <u>117</u> Exhibit 117 # <u>118</u> Exhibit 118 # <u>119</u> Exhibit 119 # <u>120</u> Exhibit 120 # <u>121</u> Exhibit 121 # <u>122</u> Exhibit 122 # <u>123</u> Exhibit 123) (Annable, Zachery) |
| 06/20/2025 | 4256 | *Witness and Exhibit List filed by Creditor Hunter Mountain Investment Trust* (RE: related document(s) <u>4216</u> Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Phillips, Louis) |

*Handwritten margin notes:* Vol. 3 Starts w/ 000801 Thru End of Vol. 13 ; Vol 14 003458

4905-5299-6446

*Vol. 14*

*00034l61*

*Vol. 15*

*0046143*

*0046154*

*0046156*

*Vol. 16*

*0046173*

*004898*

| Date | Docket | Description |
|------|--------|-------------|
| 06/23/2025 | 4266 | *Witness and Exhibit List of Patrick Daugherty filed by Creditor Patrick Daugherty* (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 List of 20 Largest Creditors 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 List of 20 Largest Creditors 34 # 35 Exhibit 35 # 36 List of 20 Largest Creditors 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42) (York, Andrew) |
| 06/23/2025 | 4275 | *Omnibus Reply to (related document(s): 4229 Objection filed by Creditor Patrick Daugherty, 4230 Objection filed by Partner Dugaboy Investment Trust, 4231 Objection filed by Interested Party The Dallas Foundation, Interested Party Crown Global Life Insurance, Ltd) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust.* (Annable, Zachery) |
| 06/23/2025 | 4276 | *Joinder by to Reply in Support of Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith filed by Creditor Hunter Mountain Investment Trust* (RE: related document(s) 4275 Reply). (Phillips, Louis) |
| 06/24/2025 | 4277 | *Amended Witness and Exhibit List filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust* (RE: related document(s) 4255 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 124 # 2 Exhibit 125) (Annable, Zachery) |
| 06/24/2025 | 4280 | *Amended Witness and Exhibit List (Highland Capital Management, L.P., Highland Claimant Trust, and Litigation Sub-Trust Second Amended Witness and Exhibit List with Respect to Hearing to Be Held on June 25, 2025) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust* (RE: related document(s) 4255 List (witness/exhibit/generic), 4277 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 126) (Annable, Zachery) |
| 06/25/2025 | 4293 | Court admitted exhibits date of hearing June 25, 2025 (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) Filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Court Admitted Debtors Exhibits #1 through #9; #11 through #56 & #58 through #123 & #126 offered by attorney John Morris; Court Also Admitted Patrick Daugherty Exhibits #1 through #42 offered by attorney Drew K. York: Court also admitted Dugaboy Investment Trust Exhibit #3, which was a letter offered by attorney Michael J. Lang.) (Edmond, Michael) Modified on 6/30/2025 (emi).Modified on 6/30/2025 (emi). |

*Vol. 16*

*004899*

| Date | Docket | Description |
|------|--------|-------------|
| 06/30/2025 | 4296 | *Transcript regarding Hearing Held 06/25/2025 before Judge Stacy G.C. Jernigan (266 pages) RE: Motion for an Order Further Extending Duration of Trusts (4213); Motion for Entry of an Order Approving Settlement with HMIT Entities (4216).* THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 09/29/2025. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 4294 Hearing held on 6/25/2025. (RE: related document(s) 4213 Motion to extend time to (Motion for an Order Further Extending Duration of Trusts) (RE: related document(s) 4144 Order on motion to extend/shorten time) Filed by Interested Party Highland Litigation Sub-Trust, Other Professional Highland Claimant Trust (Appearances: J. Morris and Pachulski team for Reorganized Debtor; R. Loigman for Post-Confirmation Trusts; D. Deitsch-Perez for Dugaboy; L. Young for UST. Evidentiary hearing. Motion granted. Counsel to upload order.), 4295 Hearing held on 6/25/2025. (RE: related document(s) 4216 Motion to compromise controversy with the HMIT Entities. (Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith) filed by Debtor Highland Capital Management, L.P., Other Professional Highland Claimant Trust, Interested Party Highland Litigation Sub-Trust (Appearances: J. Morris and Pachulski team for Reorganized Debtor; R. Loigman for Post-Confirmation Trusts; L. Phillips for HMIT Entities; M. Lang for Dugaboy; D. Curry for Dallas Foundation; L. Young for UST. Evidentiary hearing. Motion granted. Counsel to upload order.)). Transcript to be made available to the public on 09/29/2025. (Rehling, Kathy) |
| 07/16/2025 | 4317 | *Clerk's correspondence requesting to amend notice of appeal from creditor.* (RE: related document(s) 4297 Order approving settlement between the Highland Entities and the HMIT Entities and authorizing actions consistent therewith (related document 4216) Entered on 6/30/2025. (Okafor, M.)) Responses due by 7/18/2025. (Whitaker, Sheniqua) |
| 07/22/2025 | 4336 | *Certificate of mailing regarding appeal* (RE: related document(s) 4327 Amended notice of appeal filed by Creditor Patrick Daugherty Related document(s) 4310 Notice of appeal filed by Creditor Patrick Daugherty. MODIFIED linkage on 7/17/2025 (suw).) (Attachments: # 1 Service List) (Whitaker, Sheniqua) |
| 07/22/2025 | 4337 | *Notice regarding the record for a bankruptcy appeal to the U.S. District Court.* (RE: related document(s) 4327 Amended Notice of appeal . Fee Amount $298 filed by Creditor Patrick Daugherty (RE: related document(s) 4297 Order on motion to compromise controversy). Appellant Designation due by 07/28/2025. (Attachments: # 1 Exhibit A)) (Whitaker, Sheniqua) |
| 07/22/2025 | 4343 | *Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-01901-S.* (RE: related document(s) 4327 Amended notice of appeal filed by Creditor Patrick Daugherty Related document(s) 4310 Notice of appeal filed by Creditor Patrick Daugherty. (RE: related document(s)4297 Order on motion to compromise controversy).) (Almaraz, Jeanette) |

*Vol. 17*
*005165*

*005166*

*005181*

*005183*

**Reservation of Rights**

Daugherty expressly reserves the right to amend or supplement this Designation and/or to object, or otherwise supplement or move to strike or modify, some or all of any designations filed by any other party to this appeal.  This filing is made expressly subject to, and without waiver, of any and all rights, remedies, challenges and objections.

4905-5299-6446

Respectfully submitted this 14th day of August 2025.

**GRAY REED**

By: _/s/ Andrew K. York_
      Jason S. Brookner
      Texas Bar No. 240033684
      Andrew K. York
      Texas Bar No. 24051554
      Joshua D. Smeltzer
      Texas Bar No. 24113859
      Drake M. Rayshell
      Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:   (214) 953-1332
Email:       jbrookner@grayreed.com
            dyork@grayreed.com
            jsmeltzer@grayreed.com
            drayshell@grayreed.com

_Counsel to Patrick Daugherty_

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 14th day of August 2025, via the CM/ECF system and/or email.

_/s/ Andrew K. York_
ANDREW K. YORK

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The following table includes a rollforward of non-controlling interests from December 31, 2017, to December 31, 2018.

*(in thousands)*

| | |
|---|---:|
| Noncontrolling interest, December 31, 2017 | $ 424,844 |
| Net loss attributable to noncontrolling interest | (61,313) |
| Noncontrolling partner contributions | 14,615 |
| Noncontrolling partner distributions | (58,061) |
| Noncontrolling interest of deconsolidated entities | (3,218) |
| Noncontrolling interest, December 31, 2018 | $ 316,867 |

## Investment Transactions
Investment transactions are recorded on a trade date basis. Investments in securities are valued at market or fair value at the date of the consolidated financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

## Management and Incentive Fee Revenue
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements. Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value. The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages. During the year ended December 31, 2018, the Partnership and its Consolidated Entities recognized management fees and incentive fees of approximately $36.6 million and $0.1 million, respectively.

## Shared Services Revenue
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2018, the Partnership and its Consolidated Entities recognized shared services revenue of approximately $9.2 million, which has been presented in *Shared services fees* in the Consolidated Statement of Income. See further discussion in Note 8.

003300

HCMLPHMIT00002559

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Income and Expense Recognition**

Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**

The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these consolidated financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 13.

**Cash and Cash Equivalents**

Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2018, the Partnership and Consolidated Entities held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Entities regularly monitor the credit quality of these institutions.

**Notes Receivable**

Notes receivable consists of secured promissory notes with maturities greater than one year. When available, the Partnership uses observable market data, including pricing on recent closed transactions to value notes. When appropriate, these notes may be valued using collateral values. Adjustments to the value may be performed in circumstances where attributes specific to the collateral exist suggesting impairment.

**Other Intangible Assets**

Goodwill and other intangible assets are recorded on the Consolidated Balance Sheet at current carrying values. The Partnership and its Consolidated Entities perform an impairment test on an annual basis. Any impairment in the value of other intangible assets is accounted for in the year when it occurs.

**Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

003301
HCMLPHMIT00002560

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership and its Consolidated Entities are depreciating fixed assets as follows:

|  | Period |
|---|---|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 3 - 5 years |
| Computer software | 3 years |

**Securities Sold, Not Yet Purchased**
Certain of the Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Partnership's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Options Contracts**
The Partnership and the Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership or the Consolidated Entities purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the Partnership or the Consolidated Entities enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership or the Consolidated Entities purchasing a security at a price different from the current market value.

003302

HCMLPHMIT00002561


# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership and the Consolidated Entities are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Entities is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Entities consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

### Margin Transactions
To obtain more investable cash, certain of the Consolidated Entities may use various forms of leverage including purchasing securities on margin.  A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

### Withdrawals Payable
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable.  This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2018.  Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2018, the Consolidated Investment Funds had withdrawals payable of $57.0 million.

### Foreign Currency Transactions
The Partnership's subsidiaries HCM Singapore and HCM Korea use Singapore dollars and Korean won, respectively, as their functional currency.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2018.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the Consolidated Statement of Income.

The Consolidated Entities do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments* on the Consolidated Statement of Income.

### Life Settlement Contracts
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows. At December 31, 2018, the Consolidated Investment Fund was invested in 13 policies, which had a total face value of approximately $145.3 million and a fair value of $35.7 million.

003303

HCMLPHMIT00002562

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Financing**

The Partnership and its Consolidated Entities may finance the acquisition of its investments in securities and loans through financing arrangements which are classified in Notes payable and Investment liabilities on the Consolidated Balance Sheet. The Partnership and its Consolidated Entities recognize interest expense on all borrowings on the accrual basis in the Consolidated Statement of Income.

**Financial Instruments**

The Partnership and its Consolidated Entities determine fair value of financial instruments as required by U.S. GAAP. The carrying amounts for cash and cash equivalents, receivables, accounts payable, withdrawals payable, debt and notes payable, due to brokers, investment liabilities and accrued liabilities approximate their fair values. For fair value of investment, see Note 5.

**Accounts Payable, Accrued and Other Liabilities**

Expenses are recorded on an accrual basis, as incurred. Current liabilities are included in Accounts payable. Long-term liabilities are included in Accrued and other liabilities.

**Partners' Capital**

The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

003304

HCMLPHMIT00002563

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2018

3.    **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2018:

*(in thousands)*

| | | |
|---|---|---:|
| Leasehold improvements | $ | 7,193 |
| Buildings | | 2,595 |
| Furniture and fixtures | | 2,796 |
| Computer and equipment | | 2,863 |
| Computer software | | 331 |
| Accumulated depreciation | | (11,197) |
| | $ | 4,581 |

Depreciation expense in 2018 totaled approximately $1.3 million for the Partnership and its subsidiaries.

4.    **Investments**

Detailed below is a summary of the Partnership and its Consolidated Entities' investments at December 31, 2018:

| *(in thousands)* | Amortized Cost/Cost | | Fair Value | |
|---|---:|---|---:|---|
| Common equity securities | $ | 423,306 | $ | 535,374 |
| Closed-end mutual funds | | 100,788 | | 94,845 |
| Floating rate syndicated bank loans | | 142,586 | | 72,622 |
| Real Estate Investment Trusts | | 28,271 | | 57,475 |
| Life settlement contracts | | 65,276 | | 35,744 |
| Limited partnership interests | | 24,892 | | 30,521 |
| Rights & warrants | | 26,661 | | 7,446 |
| LLC interests | | 10,629 | | 2,775 |
| Preferred equity | | 258 | | 8,282 |
| Asset-backed securities | | 7,350 | | 102 |
| Participation interests | | 6,590 | | - |
| Corporate bonds | | 85,421 | | - |
| Total investments | $ | 922,027 | $ | 845,186 |
| | **Proceeds** | | **Fair Value** | |
| Securities sold, not yet purchased | $ | (26,135) | $ | (32,357) |

15

003305

HCMLPHMIT00002564

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

5.   **Fair Value of Financial Instruments**

**Fair Value Measurement**

U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Entities have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Entities use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Entities use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Entities  develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

003306

HCMLPHMIT00002565

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2018, the Partnership and its Consolidated Entities' investments consisted primarily of common equity securities, closed-end mutual funds, floating rate syndicated bank loans, real estate investment trusts, life settlement contracts, limited partnership interests, rights and warrants, LLC interests, asset-backed securities, and preferred equity. In addition, certain of the Consolidated Entities engage in short sale transactions. The majority of these financial instruments are not listed on national securities exchanges and management is required to use significant judgment to estimate their values.

**Public Equity Investments**
Publicly traded equities, including closed-end mutual funds and publicly traded REITs are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

**Private Equity Investments**
The Partnership and Consolidated Entities hold private equity investments which often resulted from the restructuring of other instruments which are classified as common equity securities. These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Partnership and Consolidated Entities will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis. When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

003307

HCMLPHMIT00002566

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The Consolidated Entities also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

### Debt Securities
The Partnership and Consolidated Entities invest in various types of debt, including floating rate syndicated bank loans, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Partnership and Consolidated Entities first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Partnership and Consolidated Entities may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

### Life Settlement Contracts
Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

At December 31, 2018, the Consolidated Entities' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 1-2 | - | $ - | $ - |
| 2-3 | 3 | 33,785 | 16,940 |
| 3-4 | - | - | - |
| 4-5 | - | - | - |
| Thereafter | 10 | 111,500 | 18,804 |
| Total | 13 | $ 145,285 | $ 35,744 |

003308

HCMLPHMIT00002567

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Asset-Backed Securities**

The Consolidated Entities invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity.  The Consolidated Entities generally utilize an independent third parties to provide the relevant inputs. The Consolidated Entities evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Entities may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

**Limited Partnership and LLC Interests**

The Partnership and its Consolidated Entities hold limited partnership and LLC interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2018:

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/18 |
|---|---|---|---|---|
| Common equity securities | $ 139,236 | $ 296,695 | $ 99,443 | $ 535,374 |
| Closed-end mutual funds | 94,845 | - | - | 94,845 |
| Floating rate syndicated bank loans | - | 21 | 72,601 | 72,622 |
| Real Estate Investment Trusts | 46,594 | 10,881 | - | 57,475 |
| Life settlement contracts | - | - | 35,744 | 35,744 |
| Limited partnership interests | - | - | 30,521 | 30,521 |
| Rights & warrants | 20 | 123 | 7,303 | 7,446 |
| LLC interests | - | - | 2,775 | 2,775 |
| Preferred equity | 8,282 | - | - | 8,282 |
| Asset-backed securities | - | - | 102 | 102 |
| **Total** | $ 288,977 | $ 307,720 | $ 248,489 | $ 845,186 |
| | | | | |
| **Liabilities** | | | | |
| Common stock & Options sold short | $ 32,357 | $ - | - | $ 32,357 |

003309

HCMLPHMIT00002568

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2018:

(in thousands)

| | Fair Value at December 31, 2017 | Purchases | Sales and Maturities | Restructures | Transfers Into Level 3 | Net Realized Gains / (Losses) | Net Unrealized Gains / (Losses) | Fair Value at December 31, 2018 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $ 141,201 | $ 1,058 | $ (116) | $ - | $ - | $ - | $ (42,700) | $ 99,443 |
| Floating rate syndicated bank loans | 64,307 | 12,146 | (1,952) | - | - | (2,799) | 899 | 72,601 |
| Life settlement contracts | 28,959 | 7,353 | - | - | - | - | (568) | 35,744 |
| Limited partnership interests | 27,863 | 4,600 | (4,766) | - | 928 | 351 | 1,545 | 30,521 |
| Rights & warrants | 8,013 | - | - | - | - | - | (710) | 7,303 |
| LLC interests | 3,352 | 165 | (1,312) | - | - | 985 | (415) | 2,775 |
| Asset-backed securities | 6,477 | 1 | (3,051) | (2,171) | (928) | (39,580) | 39,354 | 102 |
| | $ 280,172 | $ 25,323 | $ (11,197) | $ (2,171) | $ - | $ (41,043) | $ (2,595) | $ 248,489 |

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $41.8 million of the net unrealized losses presented in the table above relate to investments held as of December 31, 2018.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

003310

HCMLPHMIT00002569

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

| Category | Ending Balance at 12/31/2018 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Common equity securities | $ 99,443 | Multiples Analysis | Multiple of EBITDA | 2.5x - 7.0x |
| | | | Cap Rate | 8.0 - 10.0% |
| | | | Multiple of Revenue | 0.20x - 0.30x |
| | | | Liquidity Discount | 25% |
| | | Discounted Cash Flow | Discount Rate | 10.5 - 40.0% |
| | | | Terminal Multiple | 1.25 - 6.50x |
| | | | Long-Term Grow th Rate | 2% |
| | | Transaction Analysis | Multiple of EBITDA | 4.0x - 7.75x |
| | | | Cap Rate | 8 - 10% |
| | | Bid Indications | Enterprise Value ($mm) | $720.0 - $765.0 |
| | | Impairment Analysis | Recoverable Value | 0% |
| | | Appraisal | N/A | N/A |
| Floating rate syndicated bank loans | 72,601 | Multiples Analysis | Multiple of EBITDA | 2.0x - 5.0x |
| | | | Multiple of Revenue | 0.35x - 0.50x |
| | | Escrow Recovery Analysis | Risk Discount | 40% |
| | | Appraisal | N/A | N/A |
| | | Bid Indications | Transaction Price | 10% |
| | | Sales Proceeds Analysis | Discount Rate | 6.0% |
| | | Discounted Cash Flow | Discount Rate | 12.3% - 40.0% |
| | | | Terminal Multiple | 1.25x |
| | | | Spread Adjustment | 0.0% - 6.3% |
| Life settlement contracts | 35,744 | Discounted Cash Flow | Discount Rate | 15.0 - 16.0% |
| Limited partnership interests | 30,521 | Net Asset Value | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Rights & w arrants | 7,303 | Discounted Cash Flow | Discount Rate | 11.0% - 17.0% |
| | | | Terminal Multiple | 6.5x |
| | | Multiples Analysis | Multiple of EBITDA | 6.0x - 7.0x |
| | | Transaction Analysis | Multiple of EBITDA | 7.25x - 7.75x |
| | | Bid Indication of Value | Enterprise Value (in millions) | $720.0 - $765.0 |
| LLC interests | 2,775 | Discounted Cash Flow | Discount Rate | 6% |
| | | Adjusted Appraisal | Minority Discount | 25% |
| | | Bid Indication | Total Purchase Price (in millions) | $130.00 |
| Asset-backed securities | 102 | Adjusted NAV | N/A | N/A |
| **Total** | **$ 248,489** | | | |

In addition to the unobservable inputs utilized for various valuation methodologies, the Partnership often uses a combination of two or more valuation methodologies to determine fair value for a single holding. In such instances, the Partnership assesses the methodologies and ascribes weightings to each methodology. The selection of weightings is an inherently subjective process, dependent on professional judgement. These selections may have a material impact to the concluded fair value for such holdings.

The significant unobservable inputs used in the fair value measurement of the Partnership's assets could fluctuate significantly, resulting in a significantly higher or lower fair value measurement.

003311

HCMLPHMIT00002570

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

---

**6.     Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans.   The Consolidated Entities may also invest in derivative instruments, including total return and credit default swaps.   Investments in these derivative instruments throughout the year subject the Consolidated Entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Entities due to a change in the market value of its investments or the value of the investments underlying swap agreements.   The Partnership and its Consolidated Entities' exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations.   These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Entities investments. Volatility or illiquidity could impair the Partnership and its Consolidated Entities performance or result in losses.   The Partnership and its Consolidated Entities may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets.   The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its Consolidated Entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract.   Because the Consolidated Entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties.   To limit the credit risk associated with such transactions, the Consolidated Entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Entities' limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.   There is no public market for the interests, and neither the Consolidated Entities nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the Consolidated Entities.   Consolidated Entities could be materially affected by the liquidity, credit and other events of the Partnership.

003312

HCMLPHMIT00002571

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**High Yield Bonds and Loans**

The Partnership and its Consolidated Entities' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Entities' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Entities purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower.  Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Entities  have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Entities may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Debt Obligations**

The Partnership and its Consolidated Entities' investment portfolio consists of collateralized loan obligations that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. Because of the inherent uncertainty of these investments, the Partnership's best estimates may differ significantly from values that would have been used had broader market for the investments existed.

**Distressed Investments**

A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Entities invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

003313
HCMLPHMIT00002572

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Corporate Bonds, Preferred Securities, and Loans**
The Consolidated Entities may invest in corporate bonds, floating rate syndicated bank loans, and preferred securities which are rated in the lower rating categories by the various credit rating agencies (or in comparable non-rated securities). Securities in the lower rating categories are subject to greater risk of loss of principal and interest than higher-rated securities and are generally considered to be predominantly speculative with respect to the issuer's capacity to pay interest and repay principal. They are also subject to greater risks than securities with higher ratings in the case of deterioration of general economic conditions. Because of these greater risks associated with the lower-rated securities, the yields and prices of such securities may be more volatile than those for higher-rated securities. The market for lower-rated securities is thinner and less active than that for higher-rated securities, which could adversely affect the prices at which these securities may be sold by the Consolidated Entities.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Entities' investments. However, the Consolidated Entities' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Entities. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversity could expose the Consolidated Entities to losses that are disproportionate to market movements as a whole.

At December 31, 2018, the Consolidated Entities' investments were predominantly concentrated in the United States and Cayman Islands.

**Exit Difficulties**
The Partnership and its Consolidated Entities cannot assure investors that it will be able to exit its investments by sale or other disposition at attractive prices, if at all. The mergers and acquisitions and public securities markets are highly cyclical, which means that the Consolidated Entities' investments, even its best performing investments, may be illiquid for extended periods of time despite the Consolidated Entities' efforts to identify attractive exit opportunities. Additionally, a significant portion of the Consolidated Entities' assets at any time will likely consist of debt obligations and other securities that are thinly-traded, for which no market exists and/or are restricted as to their transferability under applicable law and/or documents governing particular transactions of the Consolidated Entities. In some cases, the Consolidated Entities may be unable to realize an investment prior to the date on which the Consolidated Entities are scheduled to terminate and/or have to sell or otherwise dispose of one or more investments on disadvantageous terms as a result of the Consolidated Entities' termination, or distribute such investments in kind.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Entities are provided by major financial institutions. In addition, all of the Partnership and its Consolidated Entities' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges. The Partnership or its Consolidated Entities may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Entities might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

003314

HCMLPHMIT00002573

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Leverage Risk**
The Consolidated Entities may borrow funds from brokers, banks and other lenders to finance its trading operations.  The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Entities' investment portfolio may be subject.  The use of margin and short-term borrowings creates several risks for the Consolidated Entities.  If the value of the Consolidated Entities' securities fall below the margin level required by a counterparty, additional margin deposits would be required.  If the Consolidated Entities are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Entities' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Entities to incur significant losses.  In addition, to the extent the Consolidated Entities have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Entities' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Entities.  In addition, because the use of leverage allows the Consolidated Entities to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Entities may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Entities' assets, the Consolidated Entities may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements.  As a result, the Consolidated Entities may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets.  The banks and dealers that provide financing to the Consolidated Entities have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies.  Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar.  The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2018, the Consolidated Entities' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Litigation Risk**
The Partnership and its Consolidated Entities are periodically subject to legal actions arising from the ordinary course of business.  The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Entities.  Refer to Note 14 for a discussion of open litigation.

003315
HCMLPHMIT00002574

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

7.  **Intangible Assets**

On May 12, 2017, HCM Latin America, as manager, purchased all rights and obligations for management of a certain hedge fund. As of December 31, 2018, the current carrying value of these rights and obligations is $3.0 million, which consists of the original purchase price of $2.0 million and a deferred purchase price of $1.0 million and is reflected in the Consolidated Balance Sheet.

The Partnership and its Consolidated Entities perform an impairment test as required by U.S. GAAP on a yearly basis. The Partnership has determined that an impairment charge was necessary for the value obtained on December 19, 2017, for subadvisory and shared servicing rights from an affiliate. As of December 31, 2018, the asset was determined to be fully impaired and an impairment expense of $2.8 million is reflected in the Consolidated Statement of Income.

8.  **Related Party Transactions**

**Investments Under Common Control**

Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. As of December 31, 2018, the Partnership and its Consolidated Entities held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 296,695 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 59,539 |
| OmniMax International, Inc. | Term Loan | 52,464 |
| JHT Holdings Inc. | Common Stock | 25,099 |
| OmniMax International, Inc. | Common Equity | 7,804 |
| Carey International, Inc. | Term Loan | 5,401 |
| CCS Medical, Inc. | Loan | 5,960 |
| Trussway Holdings, LLC | Common Equity | 4,582 |
| JHT Holdings Inc. | Term Loan | 4,160 |
| OmniMax International, Inc. | Warrants | 551 |

003316
HCMLPHMIT00002575

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2018, the Partnership and the Consolidated Entities held the following investments that were issued and managed by affiliates of the Partnership:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| Harko, LLC | LLC Units | $    2,721 |
| Highland CLO Funding | Partnership Interest | 610 |
| Highland Energy MLP Fund | Mutual Fund Shares | 1,363 |
| Highland Floating Rate Opportunities Fund | Closed-end mutual fund shares | 832 |
| Highland Global Allocation Fund | Mutual Fund Shares | 2,173 |
| Highland Long/Short Equity Fund | Mutual Fund Shares | 267 |
| Highland Long/Short Healthcare Fund | Mutual Fund Shares | 2,963 |
| Highland Master Loan Fund | Limited Partnership interest | 106 |
| Highland Merger Arbitrage Fund | Mutual Fund Shares | 1,321 |
| Highland Opportunistic Credit Fund | Mutual Fund Shares | 5,477 |
| Highland Premier Growth Equity Fund | Mutual Fund Shares | 64 |
| Highland Small Cap Equity Fund | Mutual Fund Shares | 465 |
| NexPoint Strategic Opportunities Fund | Mutual Fund Shares | 36,563 |
| NexPoint Multi Family Capital Trust | REIT | 10,881 |
| NexPoint Real Estate Strategies Fund | Closed-end mutual fund shares | 1,454 |
| NexPoint Residential Trust | REIT | 85,223 |

### Expenses Reimbursable by Funds Managed

In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2018, approximately $6.4 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other Assets* in the accompanying Consolidated Balance Sheet.

### Accounts Held with Related Party

During the year the Partnership and its Consolidated Entities maintained bank accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2018, balances in these accounts were approximately $0.5 million, a portion of which exceeds Federal deposit insurance limits.

### Investment in Affiliated Loans

During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank.  Interest earned on the loans during the year was approximately $10.4 million and is included in interest and investment income in the Consolidated Statement of Income. At December 31, 2018, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $83.3 million and $56.5 million, respectively.

003317

HCMLPHMIT00002576

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Notes and Other Amounts Due from Affiliates**

During the year ended December 31, 2018, Highland Capital Management Fund Advisors, L.P. ("HCMFA") did not issue any new promissory notes to the Partnership. The outstanding promissory notes accrue interest at a rate ranging from of 1.97 - 2.62%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $5.3 million and is payable on demand. The Partnership will not demand payment on amounts owed that exceed HCMFA's excess cash availability prior to May 31, 2021. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, NexPoint Advisors, L.P. ("NPA") did not issue any new promissory notes to the Partnership. The outstanding promissory note accrues interest at a rate of 6.0%. As of December 31, 2018 total interest and principal due on the outstanding promissory note was approximately $28.6 million and is payable in annual installments throughout the term of the loan. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, HCRE Partners, LLC ("HCRE") issued a promissory note to the Partnership in the amount of $0.8 million. The note accrues interest at a rate of 8.0%. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $9.4 million and is generally payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, Highland Capital Management Services, Inc. ("HCMSI") issued promissory notes to the Partnership in the aggregate amount of $0.4 million. All outstanding promissory notes accrue interest at a rate ranging from 2.75% – 3.05%, the long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $14.0 million and is generally payable in annual installments throughout the term of the notes. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, James Dondero ("Dondero") issued promissory notes to the Partnership in the aggregate amount of $14.9 million. The outstanding promissory notes accrue interest at a rate ranging from 2.03% – 2.95%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $29.2 million and is generally payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2018, Mark Okada ("Okada") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 2.25%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $1.3 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

003318
HCMLPHMIT00002577

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

During the year ended December 31, 2018, The Dugaboy Investment Trust ("Dugaboy") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 3.26%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2018 total interest and principal due on outstanding promissory notes was approximately $20.1 million and is payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

On December 21, 2015, the Partnership entered into a contribution agreement (the "Contribution Agreement") with an affiliated trust.  Pursuant to the Contribution Agreement, a note (the "Note Receivable") in the amount of $63.0 million was due to the Partnership.  The Note Receivable will mature on December 21, 2030.  The Note Receivable accrues interest at a rate of 2.61% per annum. Accrued interest is paid-in-kind, with principal receipts occurring pursuant to a note amortization schedule, with such annual receipts commencing December 21, 2019. During the year, the trust pre-paid $2.1 million. As of December 31, 2018 total interest and principal due on the Note Receivable was approximately $60.2 million.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York corporation ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf. Separately, the Partnership pays for, and seeks reimbursement for, various operating expenses on behalf of Highland New York. For the year ended December 31, 2018, total marketing fee expense charged to the Partnership by Highland New York was approximately $0.9 million. Because the Partnership funded Highland New York's operations, including amounts above the marketing fee, as of December 31, 2018, net amounts owed to the Partnership by Highland New York was approximately $4.9 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of HCMFA, a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to HCMFA was approximately $2.7 million and as of December 31, 2018, amount owed to the Partnership by HCMFA was approximately $0.2 million.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to Falcon was approximately $0.2 million and as of December 31, 2018, no amounts were owed to the Partnership by Falcon for services rendered.

003319

HCMLPHMIT00002578

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Effective March 17, 2017, pursuant to the Third Amended and Restated Sub-Advisory Agreement and the Fourth Amended and Restated Shared Services Agreement, the Partnership continued performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Subadvisory services include investment advisory services and shared services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fees charged by the Partnership to Acis for shared services and subadvisory fees were approximately $2.6 million and $3.4 million, respectively. As of December 31, 2018, amount owed to the Partnership by Acis was approximately $6.0 million. Although such fees were earned in 2018, all related revenues and receivables recorded by the Partnership have been fully reserved against based on estimated collectability.

Effective January 1, 2018, pursuant to the Third Amended and Restated Shared Services Agreement, the Partnership commenced performing services on behalf of NPA. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexPoint was approximately $2.0 million and as of December 31, 2018, no amounts were owed to the Partnership by NexPoint for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Shared Services Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexBank Capital was approximately $0.2 million and as of December 31, 2018, $0.1 million was owed to the Partnership by NexBank Capital for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Investment Advisory Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2018, the total fee charged by the Partnership to NexBank was approximately $3.6 million and as of December 31, 2018, amounts owed by NexBank to the Partnership for services rendered were approximately $0.9 million.

Effective April 1, 2015, the Partnership commenced performing services on behalf of NexPoint Real Estate Advisors, L.P. ("NREA"). Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. NREA is charged a fee for the services provided. For the year ended December 31, 2018, the total fee charged to NREA by the Partnership was approximately $1.0 million and as of December 31, 2018, no amounts were owed by NREA to the Partnership for services rendered.

Effective January 1, 2018, the Partnership entered in to a Payroll Reimbursement Agreement (the "Agreement") with HCMFA. Under the Agreement, HCMFA reimburses the Partnership for the cost of any dual employees of the Partnership and HCMFA and who provide advice to registered investment companies advised by HCMFA. For the year ended December 31, 2018, the total fees charged by the Partnership to HCMFA was approximately $6.2 million and as of December 31, 2018, no amounts were owed by HCMFA to the Partnership for services rendered.

003320
HCMLPHMIT00002579

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Effective January 1, 2018, the Partnership entered in to a Payroll Reimbursement Agreement (the "Agreement") with NPA. Under the Agreement, NPA reimburses the Partnership for the cost of any dual employees of the Partnership and NPA and who provide advice to registered investment companies advised by NPA. For the year ended December 31, 2018, the total fees charged by the Partnership to NPA was approximately $4.3 million and as of December 31, 2018, no amounts were owed by NPA to the Partnership for services rendered.

**Investment liability**

On December 28, 2016, the Partnership entered into a purchase and sale agreement with The Get Good Nonexempt Trust ("Get Good"). In consideration for a note receivable from an affiliate, the Partnership sold or participated certain investments that it already held, with the participated investments carrying an aggregate market value of $21.3 million as of the date of the transaction. The fair value of the Agreement will fluctuate with the fair value of the securities, throughout the term of the Agreement. As of December 31, 2018, the fair value of the participated investments was $12.1 million.

On December 5, 2016, Select entered in to Stock Purchase Agreements with two counterparties for shares of Trussway Industries ("Trussway"), in exchange for promissory notes in the aggregate amount of $15.4 million. The promissory notes accrue interest at a rate of 2.07%, the long-term Applicable Federal Rate, compounded annually. Select must pay one-twenty-fifth of the initial note amounts, plus any additional principal attributable to the sale of Trussway, along with accumulated interest on an annual basis. The promissory notes will mature on December 5, 2041. As of December 31, 2018 the remaining principal payable on the promissory notes was $14.8 million. The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

During 2014 and 2015, Select received multiple master securities loan agreements (the "Securities Agreements") for securities borrowed from an affiliate. The Securities Agreements accrue interest at a rate ranging from 0.38 - 0.48%, the short term Applicable Federal Rate. The fair value of the securities loans will fluctuate with the fair value of the borrowed securities, throughout the term of the Securities Agreements. As of December 31, 2018, the fair value of the loans was $19.2 million. The fair value of Select's securities loans approximates the carrying value of the securities loans.

9.   **Notes Payable**

**Promissory Notes and Loan Agreements**

On August 17, 2015, the Partnership entered in to a promissory note with Frontier State Bank ("Frontier") in the amount of $9.5 million. Pursuant to the First Amended and Restated Loan Agreement, dated March 29, 2018, Frontier made an additional loan to the Partnership in the amount of $1.0 million. The promissory note accrues interest at the 3 month LIBOR rate plus 4.75%, adjusted each date of change, per annum. Accrued interest shall be paid quarterly. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc and will mature on August 17, 2021. As of December 31, 2018 the remaining principal payable on the promissory note was $7.2 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 25, 2015, Highland Select Equity Fund, L.P. ("Select") entered in to a promissory note with Dugaboy in the amount of $1.0 million. The promissory note accrues interest at a rate of 2.82%, the long-term Applicable Federal Rate, compounded annually. The accrued interest and principal of the promissory note is due and payable on demand. As of December 31, 2018 the remaining principal payable on the promissory note was $1.0 million.   The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

003321

HCMLPHMIT00002580

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

On October 7, 2016, the Partnership entered in to a promissory note with Acis in the amount of $12.7 million. The Partnership is required to make certain payments of the initial note amount, plus accumulated interest on May 31 of each year, until maturity. The promissory note is set to mature on May 31, 2020. The promissory note accrues interest at a rate of 3.00% per annum. Pursuant to an Assignment and Transfer Agreement dated November 3, 2017, between Acis and an affiliate of the Partnership, Acis transferred the promissory note to the affiliate. As of December 31, 2018 the remaining principal payable on the promissory note was $9.5 million.

On August 29, 2016, Maple Avenue Holdings, LLC ("Maple") entered in to a promissory note with Great Southern Bank in the amount of $3.9 million. Maple must pay principal and accrued interest installments on a monthly basis until maturity. The promissory note will mature on August 29, 2019. The promissory note accrues interest at a rate of 3.26% per annum. As of December 31, 2018 the remaining principal payable on the promissory note was $3.4 million. The fair value of Maple's outstanding notes payable approximates the carrying value of the notes payable.

On May 1, 2018, Multi Strategy Master executed a loan agreement (the "Loan Agreement") with NexBank SSB, an affiliate of the Partnership. The original principal borrowed under the Loan Agreement was $36.5 million. The loan bears interest at the 1-month LIBOR rate plus 3.25%. The maturity date is May 1, 2021. For the year ended December 31, 2018, the Multi Strategy Master incurred and paid approximately $1.3 million of interest expense, and made aggregate principal payments of approximately $1.9 million. Shares of Metro-Goldwyn Mayer, Inc. are pledged as collateral on the loan. The loan was used to purchase an outstanding redemption of $38.7 million at a discount resulting in a reallocation of partners' capital on the Statement of Changes in Partners' Capital. As of December 31, 2018 the remaining principal payable on the loan was $34.6 million. The fair value of Multi Strategy Master's outstanding loan approximates the carrying value of the loan.

**10.    Due to Broker**

As of December 31, 2018 the due to broker balance of approximately $116.6 million is payable to financing counterparties for margin transactions.

**11.    Commitments and Contingencies**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss. The Partnership regularly co-invests in vehicles it advises. The amounts committed are within the Partnerships capacity to fund when capital is called. In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant. Also refer to Note 8 for commitments of certain subsidiaries in affiliated loans.

**Loans as Co-Borrower**
The Partnership is a named co-borrower in a Bridge Loan Agreement ("Loan") dated September 26, 2018 with Key Bank for $556.3 million. The Loan accrues interest at the 3 month LIBOR rate plus 3.75%, per annum. Accrued interest shall be paid monthly by a borrower other than the Partnership ("Lead Borrower"). The Loan will mature on September 26, 2019. The carrying value of the Loan is reflected on the financial statements of the Lead Borrower.

003322
HCMLPHMIT00002581


**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

**Legal Proceedings**

The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, Consolidated statement of Income, or its liquidity.  See Note 14.

**Operating Leases**

The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or non-cancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

**Years Ending December 31,**

| | |
|---|---:|
| 2019 | 1,550 |
| 2020 | 1,566 |
| 2021 | 1,567 |
| 2022 | 522 |
| Total | $ 5,205 |

Total rental expense of the Partnership and its Consolidated Entities for operating leases was approximately $1.5 million for the year ended December 31, 2018.

**12.    Post Retirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2018 expense reflects a service cost charge for the value of the new participant's benefit earned during 2018.

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2018 are reconciled in the tables below.

003323
HCMLPHMIT00002582

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

*(in thousands)*

| **Change in projected benefit obligation** | | **2018** |
|---|---|---:|
| Benefit obligation at beginning of year | $ | 2,578 |
| Service cost | | 6 |
| Interest cost | | 80 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 386 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (121) |
| Benefit obligation at end of year | $ | 2,929 |

| **Change in plan assets** | | **2018** |
|---|---|---:|
| Fair value of plan assets at beginning of year | $ | 2,924 |
| Actual return on plan assets | | 449 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (121) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 3,252 |

| **Reconciliation of Funded Status** | | **2018** |
|---|---|---:|
| Accumulated benefit obligation at end of year | $ | 2,929 |
| Projected benefit obligation at end of year | | 2,929 |
| Fair value of assets at end of year | | 3,252 |
| Funded status at end of year | $ | 323 |

The Partnership did not contribute to the plan during 2018.

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2018:

| | |
|---|---:|
| Discount rate | 3.19% |
| Rate of compensation increase | N/A |

003324

HCMLPHMIT00002583

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2018:

| | |
|---|---|
| Discount rate | 3.19% |
| Expected long-term return on plan assets | 3.19% |
| Rate of compensation increase | N/A |

As of December 31, 2018, there were no plan assets categorized as Level 3.

**13.   Income Taxes**

**The Partnership**

For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018.

**Multi Strategy Master**

For U.S. income tax purposes, Multi Strategy Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Multi Strategy Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Master business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices.

Dividends as well as certain interest and other income received by Multi Strategy Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2018, a minimal withholding tax liability of $0.9 million is classified within accrued and other liabilities on the Consolidated Balance Sheet.

003325

HCMLPHMIT00002584

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Multi Strategy Master applies authoritative guidance which requires management to determine whether a tax position Multi Strategy Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018.

Multi Strategy Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

**Restoration Onshore**

Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2018, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

**Restoration Offshore**

Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.



003326
HCMLPHMIT00002585

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2018. As of December 31, 2018, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2015 forward (with limited exceptions).

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

003327

HCMLPHMIT00002586

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

---

**14.     Legal Proceedings**

The Partnership and certain affiliated investment vehicles are defendants in a complaint filed on February 24, 2009 New York state court by UBS Securities LLC and UBS AG, London Branch relating to a CLO warehouse facility with respect to which UBS is attempting to extend liability beyond the two entities that bore sole risk of loss under the governing documents.  On February 19, 2010, the court dismissed all claims against the Partnership. UBS since has filed additional claims against the Partnership and certain additional investment vehicles.  On July 21, 2011, the First Appellate Division again dismissed two of UBS's four claims against the Partnership, severely limiting the remaining two claims.  Additional claims were dismissed in a further appellate ruling issued on October 31, 2017.  Certain claims were tried in July 2018 against two Highland-affiliated defendants, but the trial court has neither ruled on those claims nor indicated when it will set UBS's remaining claims for trial.  The second trial, if it occurs, will try all claims against the Partnership and certain affiliated investment vehicles.

From time to time the Partnership is party to disputes with disgruntled former employees.  One such matter involves a former employee that improperly recorded internal conversations in violation of the Partnership's internal policies and procedures and potentially certain criminal and regulatory provisions.  The former employee obtained a $7.9 million judgment against Highland affiliate Acis Capital Management, L.P. ("Acis").  The employee currently is attempting to collect this judgment through various proceedings in Texas state and federal court, including claims against Highland for receipt of assets from Acis.

In another matter, a Court ruled that a former employee breached his fiduciary duty to the Partnership, owed damages to the Partnership, and ordered the former employee to cease using or disclosing the Partnership's confidential information.   Additionally, an award was entered in favor of the employee against a separate incentive compensation entity for an interest that was already escrowed in his name prior to trial and in which he was already vested.  The dispute over the amount of his vested interest is on-going.  Additionally, the Partnership from time to time must take action to enforce the permanent injunction against the former employee's continuing improper disclosures of the Partnership's confidential information.

The Partnership is engaged in litigation and arbitration with a group of investors relating to the post-financial crisis wind down and distribution of the remaining assets in the Crusader hedge fund vehicle.

The Partnership currently is and has been previously subject to various legal proceedings, many of which have been due to the nature of operating in the distressed loan business in the U.S. The legal process is often the route of last resort to recover amounts due from delinquent borrowers. We currently do not anticipate these proceedings will have a material negative impact to the Partnership.

**15.     Subsequent Events**

On March 18, 2019, SSP Holdings, LLC issued a promissory note to the Partnership in the amount of $2.0 million. The note accrues interest at a rate of 18%.

On March 26, 2019, Trussway Holdings, LLC issued a promissory note to the Partnership in the amount of $1.0 million. The note accrues interest at a rate of 10%.

003328


HCMLPHMIT00002587

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2018**

On March 28, 2019, the Partnership distributed equity to its partners in the aggregate amount of $3.7 million.

On March 28, 2019, the Partnership received a $3.7 million pay down on the outstanding Contribution Agreement.

Over the course of 2019, through the report date, HCMFA issued promissory notes to the Partnership in the aggregate amount of $7.4 million. The notes accrue interest at a rate of 2.39%.

The Partnership has performed an evaluation of subsequent events through June 3, 2019, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

003329

HCMLPHMIT00002588

**Highland Capital Management, L.P.**

**(A Delaware Limited Partnership)**

**As of And Year Ended December 31, 2018**

**Supplemental Information**

003330

HCMLPHMIT00002589

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2018**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 2,567 | $ 2,467 | $ - | $ 5,034 |
| Investments at fair value (cost $922,027) | 161,939 | 683,247 | - | 845,186 |
| Equity method investees | 121,936 | - | (121,936) | - |
| Management and incentive fees receivable | 2,242 | 158 | (7) | 2,393 |
| Due from brokers | - | 598 | - | 598 |
| Other assets | 8,421 | 5,660 | (4,826) | 9,255 |
| Notes and other amounts due from affiliates | 176,963 | - | (3,565) | 173,398 |
| Intangible assets | - | 3,022 | - | 3,022 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,197 | 4,538 | 43 | - | 4,581 |
| **Total assets** | $ 478,606 | $ 695,195 | $ (130,334) | $ 1,043,467 |
| | | | | |
| **Liabilities and partners' capital** | | | | |
| | | | | |
| **Liabilities** | | | | |
| | | | | |
| Accounts payable | $ 4,838 | $ 145 | $ - | $ 4,983 |
| Securities sold, not yet purchased (proceeds $26,135) | - | 32,357 | - | 32,357 |
| Withdrawals payable | - | 57,009 | - | 57,009 |
| Due to affiliates | 4,542 | - | (4,542) | - |
| Due to brokers | 31,194 | 86,108 | (742) | 116,560 |
| Due to brokers for securities purchased, not yet settled | 1,640 | - | - | 1,640 |
| Accrued and other liabilities | 35,574 | 4,276 | 396 | 40,246 |
| Notes payable | 16,722 | 42,540 | (3,510) | 55,752 |
| Investment liabilities | 12,135 | 33,957 | - | 46,092 |
| **Total liabilities** | 106,645 | 256,392 | (8,398) | 354,639 |
| | | | | |
| Non-controlling interest | - | 316,867 | - | 316,867 |
| | | | | |
| Commitments and contingencies | | | | |
| | | | | |
| **Partners' capital** | 371,961 | 121,936 | (121,936) | 371,961 |
| | | | | |
| **Total liabilities and partners' capital** | $ 478,606 | $ 695,195 | $ (130,334) | $ 1,043,467 |

003331

HCMLPHMIT00002590

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
## Supplemental Consolidating Statement of Income
## Year Ended December 31, 2018

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---:|---:|---:|---:|
| **Revenue:** | | | | |
| Management fees | $ 35,264 | $ 1,336 | $ - | $ 36,600 |
| Interest and investment income | 4,857 | 10,974 | - | 15,831 |
| Incentive fees | 17 | 53 | - | 70 |
| Shared services fees | 9,187 | - | - | 9,187 |
| Other income | 1,038 | 1,584 | - | 2,622 |
| Total revenue | 50,363 | 13,947 | - | 64,310 |
| **Expenses:** | | | | |
| Compensation and benefits | 33,670 | 805 | - | 34,475 |
| Professional fees | 14,624 | 3,055 | - | 17,679 |
| Interest expense | 1,695 | 3,975 | - | 5,670 |
| Marketing and advertising expense | 2,413 | - | - | 2,413 |
| Depreciation and amortization | 1,304 | 13 | - | 1,317 |
| Investment and research consulting | 1,082 | - | - | 1,082 |
| Bad debt expense | 7,862 | - | - | 7,862 |
| Other operating expenses | 6,786 | 3,241 | - | 10,027 |
| Total expenses | 69,436 | 11,089 | - | 80,525 |
| **Other Income/(Expense):** | | | | |
| Other income | 9,816 | 10 | - | 9,826 |
| Impairment on intangible assets | (2,830) | - | - | (2,830) |
| Total other income | 6,986 | 10 | - | 6,996 |
| Income/(loss) before investment and derivative activities | (12,087) | 2,868 | - | (9,219) |
| **Realized and unrealized gain/(loss) on investments and derivatives:** | | | | |
| Net realized gain/(loss) on investments and derivatives | 13,397 | (44,914) | - | (31,517) |
| Net change in unrealized loss on investments and derivatives | (406) | (93,349) | - | (93,755) |
| Net realized and unrealized loss on investments and derivatives | 12,991 | (138,263) | - | (125,272) |
| Net unrealized losses from equity method investees | (74,082) | - | 74,082 | - |
| Net loss | (73,178) | (135,395) | 74,082 | (134,491) |
| Net loss attributable to non-controlling interest | - | (61,313) | - | (61,313) |
| Net loss attributable to Highland Capital Management, L.P. | $ (73,178) | $ (74,082) | $ 74,082 | $ (73,178) |

003332
HCMLPHMIT00002591

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2018**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 2,567 |
| Investments at fair value (cost $263,008*) | | 259,460 |
| Equity method investees | | 24,415 |
| Management and incentive fees receivable | | 2,242 |
| Intangible assets | | 8,421 |
| Notes and other amounts due from affiliates | | 176,963 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,177 | | 4,538 |
| **Total assets** | $ | 478,606 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,838 |
| Due to affiliate | | 4,542 |
| Due to brokers | | 31,194 |
| Due to brokers for securities purchased not yet settled | | 1,640 |
| Accrued and other liabilities | | 35,574 |
| Notes payable | | 16,722 |
| Investment liabilities | | 12,135 |
| Total liabilities | | 106,645 |
| Partners' capital | | 371,961 |
| **Total liabilities and partners' capital** | $ | 478,606 |

*Investments, at fair value includes $97.5 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited financial statements.

003333

HCMLPHMIT00002592

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---:|---:|
| **Revenue:** | | |
| Management fees | $ | 35,264 |
| Incentive fees | | 17 |
| Shared services fees | | 9,187 |
| Interest and investment income | | 4,857 |
| Miscellaneous income | | 1,038 |
| Total revenue | | 50,363 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 33,670 |
| Professional fees | | 14,624 |
| Marketing and advertising expense | | 2,413 |
| Interest expense | | 1,695 |
| Depreciation and amortization | | 1,304 |
| Investment and research consulting | | 1,082 |
| Bad debt expense | | 7,862 |
| Other operating expenses | | 6,786 |
| Total expenses | | 69,436 |
| | | |
| **Other Income/(Expense):** | | |
| Other income | | 9,816 |
| Impairment on intangible assets | | (2,830) |
| Total other income | | 6,986 |
| | | |
| Loss before investment activities | | (12,087) |
| | | |
| **Realized and unrealized gains/losses on investments:** | | |
| Net realized gain on sale of investments | | 13,397 |
| Net change in unrealized loss on investments* | | (56,529) |
| Total realized and unrealized loss on investments | | (43,132) |
| | | |
| Loss from equity method investees: | | (17,959) |
| | | |
| **Net loss** | $ | (73,178) |

*Net change in unrealized gain on investments includes $56.1 million of unrealized loss from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited consolidated financial statements.

003334

HCMLPHMIT00002593

# EXHIBIT 114

003335

# FOURTH AMENDED AND RESTATED

## AGREEMENT OF LIMITED PARTNERSHIP

## OF

## HIGHLAND CAPITAL MANAGEMENT, L.P.

THE PARTNERSHIP INTERESTS REPRESENTED BY THIS LIMITED PARTNERSHIP AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OP 1933 OR UNDER ANY STATE SECURITIES ACTS IN RELIANCE UPON EXEMPTIONS UNDER THOSE ACTS. THE SALE OR OTHER DISPOSITION OF THE PARTNERSHIP INTERESTS IS PROHIBITED UNLESS THAT SALE OR DISPOSITION IS MADE IN COMPLIANCE WITH ALL SUCH APPLICABLE ACTS. ADDITIONAL RESTRICTIONS ON TRANSFER OF THE PARTNERSHIP INTERESTS ARE SET FORTH IN THIS AGREEMENT.

003336

HCMLPHMIT00002641

# FOURTH AMENDED AND RESTATED
## AGREEMENT OF LIMITED PARTNERSHIP
### OF
## HIGHLAND CAPITAL MANAGEMENT, L.P.

### TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE 1 | GENERAL | 1 |
| 1.1. | Continuation | 1 |
| 1.2. | Name | 1 |
| 1.3. | Purpose | 1 |
| 1.4. | Term. | 1 |
| 1.5. | Partnership Offices; Addresses of Partners. | 1 |
| ARTICLE 2 | DEFINITIONS | 2 |
| 2.1. | Definitions | 2 |
| 2.2. | Other Definitions | 6 |
| ARTICLE 3 | FINANCIAL MATTERS | 6 |
| 3.1. | Capital Contributions | 6 |
| 3.2. | Allocations of Profits and Losses | 8 |
| 3.3. | Allocations on Transfers | 9 |
| 3.4. | Special Allocations | 9 |
| 3.5. | Curative Allocations | 10 |
| 3.6. | Code Section 704(c) Allocations | 10 |
| 3.7. | Capital Accounts | 11 |
| 3.8. | Distributive Share for Tax Purpose | 12 |
| 3.9. | Distributions. | 12 |
| 3.10. | Compensation and Reimbursement of General Partner | 14 |
| 3.11. | Books, Records, Accounting, and Reports | 14 |
| 3.12. | Tax Matters | 14 |
| ARTICLE 4 | RIGHTS AND OBLIGATIONS OF PARTNERS | 15 |
| 4.1. | Rights and Obligations of the General Partner | 15 |
| 4.2. | Rights and Obligations of Limited Partners | 19 |
| 4.3. | Transfer of Partnership Interests | 19 |
| 4.4. | Issuances of Partnership Interests to New and Existing Partners | 21 |
| 4.5. | Withdrawal of General Partner | 21 |
| 4.6. | Admission of Substitute Limited Partners and Successor General Partner | 21 |
| ARTICLE 5 | DISSOLUTION AND WINDING UP | 22 |
| 5.1. | Dissolution | 22 |
| 5.2. | Continuation of the Partnership | 23 |
| 5.3. | Liquidation | 23 |
| 5.4. | Distribution in Kind | 24 |
| 5.5. | Cancellation of Certificate of Limited Partnership | 24 |
| 5.6. | Return of Capital | 24 |
| 5.7. | Waiver of Partition. | 24 |
| ARTICLE 6 | GENERAL PROVISIONS | 24 |
| 6.1. | Amendments to Agreement | 24 |

i

003337

HCMLPHMIT00002642

| | | |
|---|---|---|
| 6.2. | Addresses and Notices | 25 |
| 6.3. | Titles and Captions | 25 |
| 6.4. | Pronouns and Plurals | 25 |
| 6.5. | Further Action | 25 |
| 6.6. | Binding Effect | 25 |
| 6.7. | Integration | 25 |
| 6.8. | Creditors | 25 |
| 6.9. | Waiver | 25 |
| 6.10. | Counterparts | 25 |
| 6.11. | Applicable Law | 25 |
| 6.12. | Invalidity of Provisions | 25 |
| 6.13. | Mandatory Arbitration | 26 |

003338

HCMLPHMIT00002643

**FOURTH AMENDED AND RESTATED**
**AGREEMENT OF LIMITED PARTNERSHIP**
**OF**
**HIGHLAND CAPITAL MANAGEMENT, L.P.**

THIS FOURTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP is entered into on this 24th day of December, 2015, to be effective as of December 24, 2015, by and among Strand Advisors, Inc., a Delaware corporation (*"Strand"*), as General Partner, the Limited Partners party hereto, and any Person hereinafter admitted as a Limited Partner.

Certain terms used in this Agreement are defined in Article 2.

## ARTICLE 1

## GENERAL

**1.1.   Continuation.** Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Act. Except as expressly provided herein, the rights and obligations of the Partners and the administration and termination of the Partnership shall be governed by the Delaware Act.

**1.2.   Name.** The name of the Partnership shall be, and the business of the Partnership shall be conducted under the name of Highland Capital Management, L.P. The General Partner, in its sole and unfettered discretion, may change the name of the Partnership at any time and from time to time and shall provide Limited Partners with written notice of such name change within twenty (20) days after such name change.

**1.3.   Purpose.** The purpose and business of the Partnership shall be the conduct of any business or activity that may lawfully be conducted by a limited partnership organized pursuant to the Delaware Act. Any or all of the foregoing activities may be conducted directly by the Partnership or indirectly through another partnership, joint venture, or other arrangement.

**1.4.   Term.** The Partnership was formed as a limited partnership on July 7, 1997, and shall continue until terminated pursuant to this Agreement.

**1.5.   Partnership Offices; Addresses of Partners.**

(a)   Partnership Offices.  The registered office of the Partnership in the State of Delaware shall be 1013 Centre Road, Wilmington, Delaware 19805-1297, and its registered agent for service of process on the Partnership at that registered office shall be Corporation Service Company, or such other registered office or registered agent as the General Partner may from time to time designate. The principal office of the Partnership shall be 300 Crescent Court, Suite 700, Dallas, Texas 75201, or such other place as the General Partner may from time to time designate. The Partnership may maintain offices at such other place or places as the General Partner deems advisable.

(b)   Addresses of Partners.  The address of the General Partner is 300 Crescent Court, Suite 700, Dallas, Texas 75201. The address of each Limited Partner shall be the address of that Limited Partner appearing on the books and records of the Partnership. Each Limited Partner agrees to provide the General Partner with prompt written notice of any change in his/her/its address.

003339

HCMLPHMIT00002644

# ARTICLE 2

## DEFINITIONS

**2.1.  Definitions.**  The following definitions shall apply to the terms used in this Agreement, unless otherwise clearly indicated to the contrary in this Agreement:

"*Additional Capital Contribution*" has the meaning set forth in <u>Section 3.1(b)</u> of this Agreement.

"*Adjusted Capital Account Deficit*" means, with respect *to* any Partner, the deficit balance, if any, in the Capital Account of that Partner as of the end of the relevant Fiscal Year, or other relevant period, giving effect to all adjustments previously made thereto pursuant to <u>Section 3.7</u> and further adjusted as follows: (i) credit to that Capital Account, any amounts which that Partner is obligated or deemed obligated to restore pursuant to any provision of this Agreement or pursuant to Treasury Regulations Section 1.704-1(b)(2)(ii)(c); (ii) debit to that Capital Account, the items described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6); and (iii) to the extent required under the Treasury Regulations, credit to that Capital Account (A) that Partner's share of "minimum gain" and (B) that Partner's share of "partner nonrecourse debt minimum gain." (Each Partner's share of the minimum gain and partner nonrecourse debt minimum gain shall be determined under Treasury Regulations Sections 1.704-2(g) and 1.704-2(i)(5), respectively.)

"*Affiliate*" means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term "*control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting Securities, by contract or otherwise.

"*Agreement*" means this Fourth Amended and Restated Agreement of Limited Partnership, as it may be amended, supplemented, or restated from time to time.

"*Business Day*" means Monday through Friday of each week, except that a legal holiday recognized as such by the government of the United States or the State of Texas shall not be regarded as a Business Day.

"*Capital Account*" means the capital account maintained for a Partner pursuant to <u>Section 3.7(a)</u>.

"*Capital Contribution*" means, with respect to any Partner, the amount of money or property contributed to the Partnership with respect to the interest in the Partnership held by that Person.

"*Certificate of Limited Partnership*" means the Certificate of Limited Partnership filed with the Secretary of State of Delaware by the General Partner, as that Certificate may be amended, supplemented or restated from time to time.

"*Class A Limited Partners*" means those Partners holding a Class A Limited Partnership Interest, as shown on <u>Exhibit A</u>.

"*Class A Limited Partnership Interest*" means a Partnership Interest held by a Partner in its capacity as a Class A Limited Partner."

003340

HCMLPHMIT00002645

*"Class B Limited Partner"* means those Partners holding a Class B Limited Partnership Interest, as shown on Exhibit A.

*"Class B Limited Partnership Interest"* means a Partnership Interest held by a Partner in its capacity as a Class B Limited Partner."

*"Class B NAV Ratio Trigger Period"* means any period during which the Class B Limited Partner's aggregate capital contributions, including the original principal balance of the Contribution Note, and reduced by the aggregate amount of distributions to the Class B Limited Partner, exceed 75 percent of the product of the Class B Limited Partner's Percentage Interest multiplied by the total book value of the Partnership; provided, however, that the General Partner shall only be required to test for a Class B NAV Ratio Trigger Period annually, as of the last day of each calendar year; provided further the General Partner must complete the testing within 180 days of the end of each calendar year; provided further that if the test results in a Class B NAV Ratio Trigger Period, the General Partner may, at its own election, retest at any time to determine the end date of the Class B NAV Ratio Trigger Period.

*"Class C Limited Partner"* means those Partners holding a Class C Limited Partnership Interest, as shown on Exhibit A.

*"Class C Limited Partnership Interest"* means a Partnership Interest held by a Partner in its capacity as a Class C Limited Partner."

*"Class C NAV Ratio Trigger Period"* means any period during which an amount equal to $93,000,000.00 reduced by the aggregate amount of distributions to the Class C Limited Partner after the Effective Date exceeds 75 percent of the product of the Class C Limited Partner's Percentage Interest multiplied by the total book value of the Partnership; provided, however, that the General Partner shall only be required to test for a Class C NAV Ratio Trigger Period annually, as of the last day of each calendar year; provided further the General Partner must complete the testing within 180 days of the end of each calendar year; provided further that if the test results in a Class C NAV Ratio Trigger Period, the General Partner may, at its own election, retest at any time to determine the end date of the Class C NAV Ratio Trigger Period.

*"Code"* means the Internal Revenue Code of 1986, as amended and in effect from time to time.

*"Contribution Note"* means that certain Secured Promissory Note dated December 21, 2015 by and among Hunter Mountain Investment Trust, as maker, and the Partnership as Payee.

*"Default Loan"* has the meaning set forth in Section 3.1(c)(i).

*"Defaulting Partner"* has the meaning set forth in Section 3.1(c).

*"Delaware Act"* means the Delaware Revised Uniform Limited Partnership Act, Part IV, Title C, Chapter 17 of the Delaware Corporation Law Annotated, as it may be amended, supplemented or restated from time to time, and any successor to that Act.

*"Effective Date"* means the date first recited above.

*"Fiscal Year"* has the meaning set forth in Section 3.11(b).

003341
HCMLPHMIT00002646

"*Founding Partner Group*" means, all partners holding partnership interests in the Partnership immediately before the Effective Date.

"*General Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a General Partner pursuant to the terms of this Agreement; and (ii) has not ceased to be a General Partner pursuant to the terms of this Agreement.

"*Limited Partner*" means any Person who (i) is referred to as such in the first paragraph of this Agreement, or has become a Limited Partner pursuant to the terms of this Agreement, and (ii) has not ceased to be a Limited Partner pursuant to the terms of this Agreement.

"*Liquidator*" has the meaning set forth in Section 5.3.

"*Losses*" means, for each Fiscal Year, the losses and deductions of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any expenditures described in Code Section 705(a)(2)(B).

"*Majority Interest*" means the owners of more than fifty percent (50%) of the Percentage Interests of Class A Limited Partners.

"*NAV Ratio Trigger Period*" means a Class B NAV Ratio Trigger Period or a Class C NAV Ratio Trigger Period.

"*Net Increase in Working Capital Accounts*" means the excess of (i) Restricted Cash plus Management and Incentive Fees Receivable plus Other Assets plus Deferred Incentive Fees Receivable less Accounts Payable less Accrued and Other Liabilities as of the end of the period being measured over (ii) Restricted Cash plus Management and Incentive Fees Receivable plus Other Assets plus Deferred Incentive Fees Receivable less Accounts Payable less Accrued and Other Liabilities as of the beginning of the period being measured; provided, however, that amounts within each of the aforementioned categories shall be excluded from the calculation to the extent they are specifically identified as being derived from investing or financing activities. Each of the capitalized terms in this definition shall have the meaning given them in the books and records of the Partnership and appropriate adjustments may be made to the extent the Partnership adds new ledger accounts to its books and records that are current assets or current liabilities.

"*New Issues*" means Securities that are considered to be "new issues," as defined in the Conduct Rules of the National Association of Securities Dealers, Inc.

"*Nonrecourse Deduction*" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(1), as computed under Treasury Regulations Section 1.704-2(c).

"*Nonrecourse* Liability" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"*Operating Cash Flow*" means Total Revenue less Total Operating Expenses plus Depreciation & Amortization less Net Increase in Working Capital Accounts year over year. Each of the capitalized terms in this definition shall have the meaning given them in the books and records of the Partnership.

003342

HCMLPHMIT00002647

"***Partner***" means a General Partner or a Limited Partner.

"***Partner Nonrecourse Debt***" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(4).

"***Partner Nonrecourse Deductions***" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(2).

"***Partner Nonrecourse Debt Minimum Gain***" has the meaning set forth in Treasury Regulations Section 1.704-2(i)(5).

"***Partnership***" means Highland Capital Management, L.P., the Delaware limited partnership established pursuant to this Agreement.

"***Partnership Capital***" means, as of any relevant date, the net book value of the Partnership's assets.

"***Partnership Interest***" means the interest acquired by a Partner in the Partnership including, without limitation, that Partner's right: (a) to an allocable share of the Profits, Losses, deductions, and credits of the Partnership; (b) to a distributive share of the assets of the Partnership; (c) if a Limited Partner, to vote on those matters described in this Agreement; and (d) if the General Partner, to manage and operate the Partnership.

"***Partnership Minimum Gain***" has the meaning set forth in Treasury Regulations Section 1.704-2(d).

"***Percentage Interest***" means the percentage set forth opposite each Partner's name on Exhibit A as such Exhibit may be amended from time to time in accordance with this Agreement.

"***Person***" means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity.

"***Priority Distributions***" has the meaning set forth in Section 3.9(b).

"***Profits***" means, for each Fiscal Year, the income and gains of the Partnership determined in accordance with accounting principles consistently applied from year to year employed under the Partnership's method of accounting and as reported, separately or in the aggregate, as appropriate, on the Partnership's information tax return filed for federal income tax purposes, plus any income described in Code Section 705(a)(1)(B).

"***Profits Interest Partner***" means any Person who is issued a Partnership Interest that is treated as a "profits interest" for federal income tax purposes.

"***Purchase Notes***" means those certain Secured Promissory Notes of even date herewith by and among Hunter Mountain Investment Trust, as maker, and The Dugaboy Investment Trust, The Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #1, and The Mark K. Okada, The Mark and Pamela Okada Family Trust – Exempt Trust #2, each as Payees of the respective Secured Promissory Notes.

5

HCMLPHMIT00002648

"*Record Date*" means the date established by the General Partner for determining the identity of Limited Partners entitled to vote or give consent to Partnership action or entitled to exercise rights in respect of any other lawful action of Limited Partners.

"*Second Amended Buy-Sell and Redemption Agreement*" means that certain Second Amended and Restated Buy-Sell and Redemption Agreement, dated December 21, 2015, to be effective as of December 21, 2015 by and between the Partnership and its Partners, as may be amended, supplemented, or restated from time to time.

"*Securities*" means the following: (i) securities of any kind (including, without limitation, "securities" as that term is defined in Section 2(a)(1) of the Securities Act); (ii) commodities of any kind (as that term is defined by the U.S. Securities Laws and the rules and regulations promulgated thereunder); (iii) any contracts for future or forward delivery of any security, commodity or currency; (iv) any contracts based on any securities or group of securities, commodities or currencies; (v) any options on any contracts referred to in clauses (iii) or (iv); or (vi) any evidences of indebtedness (including participations in or assignments of bank loans or trade credit claims). The items set forth in clauses (i) through (vi) herein include, but are not limited to, capital stock, common stock, preferred stock, convertible securities, reorganization certificates, subscriptions, warrants, rights, options, puts, calls, bonds, mutual fund interests, debentures, notes, certificates of deposit, letters of credit, bankers acceptances, trust receipts and other securities of any corporation or other entity, whether readily marketable or not, rights and options, whether granted or written by the Partnership or by others, treasury bills, bonds and notes, any securities or obligations issued or guaranteed by the United States or any foreign country or any state or possession of the United States or any foreign country or any political subdivision or agency or instrumentality of any of the foregoing, and derivatives of any of the foregoing.

"*Securities Act*" means the Securities Act of 1933, as amended, and any successor to such statute.

"*Substitute Limited Partner*" has the meaning set forth in Section 4.6(a).

"*Transfer*" or derivations thereof, of a Partnership Interest means, as a noun, the transfer, sale, assignment, exchange, pledge, hypothecation or other disposition of a Partnership Interest, or any part thereof, directly or indirectly, and as a verb, voluntarily or involuntarily to transfer, sell, assign, exchange, pledge, hypothecate or otherwise dispose of.

"*Treasury Regulations*" means the Department of Treasury Regulations promulgated under the Code, as amended and in effect (including corresponding provisions of succeeding regulations).

**2.2.**    **Other Definitions**. All terms used in this Agreement that are not defined in this Article 2 have the meanings contained elsewhere in this Agreement.

### ARTICLE 3

### FINANCIAL MATTERS

**3.1.**    **Capital Contributions**.

(a)    Initial Capital Contributions. The initial Capital Contribution of each Partner shall be set forth in the books and records of the Partnership.

(b)    Additional Capital Contributions.

6

003344

HCMLPHMIT00002649

(i)    The General Partner, in its reasonable discretion and for a *bona fide* business purpose, may request in writing that the Founding Partner Group make additional Capital Contributions in proportion to their Percentage Interests (each, an "***Additional Capital Contribution***").

(ii)    Any failure by a Partner to make an Additional Capital Contribution requested under Section 3.1(b)(i) on or before the date on which that Additional Capital Contribution was due shall result in the Partner being in default.

(c)    Consequences to Defaulting Partners. In the event a Partner is in default under Section 3.1(b) (a "***Defaulting Partner***"), the Defaulting Partner, in its sole and unfettered discretion, may elect to take either one of the option set forth below.

(i)    Default Loans. If the Defaulting Partner so elects, the General Partner shall make a loan to the Defaulting Partner in an amount equal to that Defaulting Partner's additional capital contribution (a "***Default Loan***"). A Default Loan shall be deemed advanced on the date actually advanced. Default Loans shall earn interest on the outstanding principal amount thereof at a rate equal to the Applicable Federal Mid-Term Rate (determined by the Internal Revenue Service for the month in which the loan is deemed made) from the date actually advanced until the same is repaid in full. The term of any Default Loan shall be six (6) months, unless otherwise extended by the General Partner in its sole and unfettered discretion. If the General Partner makes a Default Loan, the Defaulting Partner shall not receive any distributions pursuant to Section 3.9(a) or Section 5.3 or any proceeds from the Transfer of all or any part of its Partnership Interest while the Default Loan remains unpaid. Instead, the Defaulting Partner's share of distributions or such other proceeds shall (until all Default Loans and interest thereon shall have been repaid in full) first be paid to the General Partner. Such payments shall be applied first to the payment of interest on such Default Loans and then to the repayment of the principal amounts thereof, but shall be considered, for all other purposes of this Agreement, to have been distributed to the Defaulting Partner. The Defaulting Partner shall be liable for the reasonable fees and expenses incurred by the General Partner (including, without limitation, reasonable attorneys' fees and disbursements) in connection with any enforcement or foreclosure upon any Default Loan and such costs shall, to the extent enforceable under applicable law, be added to the principal amount of the applicable Default Loan. In addition, at any time during the term of such Default Loan, the Defaulting Partner shall have the right to repay, in full, the Default Loan (including interest and any other charges). If the General Partner makes a Default Loan, the Defaulting Partner shall be deemed to have pledged to the General Partner and granted to the General Partner a continuing first priority security interest in, all of the Defaulting Partner's Partnership Interest to secure the payment of the principal of, and interest on, such Default Loan in accordance with the provisions hereof, and for such purpose this Agreement shall constitute a security agreement. The Defaulting Partner shall promptly execute, acknowledge and deliver such financing statements, continuation statements or other documents and take such other actions as the General Partner shall request in writing in order to perfect or continue the perfection of such security interest; and, if the Defaulting Partner shall fail to do so within seven (7) days after the Defaulting Partner's receipt of a notice making demand therefor, the General Partner is hereby appointed the attorney-in-fact of, and is hereby authorized on behalf of, the Defaulting Partner, to execute, acknowledge and deliver all such documents and take all such other actions as may be required to perfect such security interest. Such appointment and authorization are coupled with an interest and shall be irrevocable. The General Partner shall, prior to exercising any right or remedy (whether at law, in equity or pursuant to the terms hereof) available to it in connection with such security interest, provide to the Defaulting Partner a notice, in reasonable detail, of the right or remedy to be exercised and the intended timing of such exercise which shall not be less than five (5) days following the date of such notice.

7

003345

HCMLPHMIT00002650

(ii)    <u>Reduction of Percentage Interest</u>. If the Defaulting Partner does not elect to obtain a Default Loan pursuant to <u>Section 3.1(c)(i)</u>, the General Partner shall reduce the Defaulting Partner's Percentage Interest in accordance with the following formula:

> The Defaulting Partner's new Percentage Interest shall equal the product of (1) the Defaulting Partner's current Percentage Interest, multiplied by (2) the quotient of (a) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), divided by (b) the sum of (i) the current Capital Account of the Defaulting Partner (with such Capital Account determined after taking into account a revaluation of the Capital Accounts immediately prior to such determination), plus (ii) the amount of the additional capital contribution that such Defaulting Partner failed to make when due.

To the extent any downward adjustment is made to the Percentage Interest of a Partner pursuant to this <u>Section 3.1(c)(ii)</u>, any resulting benefit shall accrue to the Partners (other than the Defaulting Partner) in proportion to their respective Percentage Interests.

**3.2.**    **Allocations of Profits and Losses.**

(a)    <u>Allocations of Profits</u>. Except as provided in <u>Sections 3.4</u>, <u>3.5</u>, and <u>3.6</u>, Profits for any Fiscal Year will be allocated to the Partners as follows:

(i)    <u>First</u>, to the Partners until cumulative Profits allocated under this <u>Section 3.2(a)(i)</u> for all prior periods equal the cumulative Losses allocated to the Partners under <u>Section 3.2(b)(iii)</u> for all prior periods in the inverse order in which such Losses were allocated; and

(ii)    <u>Next</u>, to the Partners until cumulative Profits allocated under this <u>Section 3.2(a)(ii)</u> for all prior periods equal the cumulative Losses allocated to the Partners under <u>Section 3.2(b)(ii)</u> for all prior periods in the inverse order in which such Losses were allocated; and

(iii)    <u>Then</u>, to all Partners in proportion to their respective Percentage Interests.

(b)    <u>Allocations of Losses</u>. Except as provided in <u>Sections 3.4</u>, <u>3.5</u>, and <u>3.6</u>, Losses for any Fiscal Year will be will be allocated as follows:

(i)    <u>First</u>, to the Partners until cumulative Losses allocated under this <u>Section 3.2(b)(i)</u> for all prior periods equal the cumulative Profits allocated to the Partners under <u>Section 3.2(a)(iii)</u> for all prior periods in the inverse order in which such Profits were allocated; and

(ii)    <u>Next</u>, to the Partners in proportion to their respective positive Capital Account balances until the aggregate Capital Account balances of the Partners (excluding any negative Capital Account balances) equal zero; *provided, however,* losses shall first be allocated to reduce amounts that were last allocated to the Capital Accounts of the Partners; and

(iii)    <u>Then</u>, to all Partners in proportion to their respective Percentage Interests.

8

003346
HCMLPHMIT00002651

(c)     Limitation on Loss Allocations.  If any allocation of Losses would cause a Limited Partner to have an Adjusted Capital Account Deficit, those Losses instead shall be allocated to the General Partner.

**3.3.     Allocations on Transfers**.  Taxable items of the Partnership attributable to a Partnership Interest that has been Transferred (including the simultaneous decrease in the Partnership Interest of existing Partners resulting from the admission of a new Partner) shall be allocated in accordance with Section 4.3(d).

**3.4.     Special Allocations**.  If the requisite stated conditions or facts are present, the following special allocations shall be made in the following order:

(a)     Partnership Minimum Gain Chargeback.  Notwithstanding any other provision of this Article 3, if there is a net decrease in Partnership Minimum Gain during any taxable year or other period for which allocations are made, prior to any other allocation under this Agreement, each Partner shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods) in proportion to, and to the extent of, an amount equal to that Partner's share of the net decrease in Partnership Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2).  The items to be allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g).  This Section 3.4(a) is intended to comply with the partnership minimum gain chargeback requirements of the Treasury Regulations and shall be subject to all exceptions provided therein.

(b)     Partner Nonrecourse Debt Minimum Gain Chargeback.  Notwithstanding any other provision of this Article 3 (other than Section 3.4(a)), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain with respect to a Partner Nonrecourse Debt during any taxable year or other period for which allocations are made, any Partner with a share of such Partner Nonrecourse Debt Minimum Gain as of the beginning of the year shall be specially allocated items of Partnership income and gain for that period (and, if necessary, subsequent periods in an amount equal to that Partner's share of the net decrease in the Partner Nonrecourse Debt Minimum Gain during that year determined in accordance with Treasury Regulations Section 1.704-2(g)(2).  The items to be so allocated shall be determined in accordance with Treasury Regulations Section 1.704-2(g).  This Section 3.4(b) is intended to comply with the partner nonrecourse debt minimum gain chargeback requirements of the Treasury Regulations, shall be interpreted consistently with the Treasury Regulations and shall be subject to all exceptions provided therein.

(c)     Qualified Income Offset.  If a Partner unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Sections 1.704-1(b)(2)(ii)(d)(4), (d)(5) or (d)(6), then items of Partnership income and gain shall be specially allocated to each such Partner in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of the Partner as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(c) shall be made if and only to the extent that the Partner would have an Adjusted Capital Account Deficit after all other allocations provided for in this Article 3 have been tentatively made without considering this Section 3.4(c).

(d)     Gross Income Allocation.  If a Partner has a deficit Capital Account at the end of any Fiscal Year of the Partnership that exceeds the sum of (i) the amount the Partner is obligated to restore, and (ii) the amount the Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Treasury Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5), then each such Partner shall be specially allocated items of income and gain of the Partnership in the amount of the excess as quickly as possible; *provided, however,* an allocation pursuant to this Section 3.4(d) shall be made if and only to

9

003347

HCMLPHMIT00002652

the extent that the Partner would have a deficit Capital Account in excess of that sum after all other allocations provided for in this Article 3 have been tentatively made without considering Section 3.4(c) or 3.4(d).

     (e)   Nonrecourse Deductions. Nonrecourse Deductions for any taxable year or other period for which allocations are made shall he allocated among the Partners in accordance with their Percentage interests.

     (f)   Partner Nonrecourse Deductions. Notwithstanding anything to the contrary in this Agreement, any Partner Nonrecourse Deductions for any taxable year or other period for which allocations are made will be allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which the Partner Nonrecourse Deductions are attributable in accordance with Treasury Regulations Section 1.704-2(i).

     (g)   Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any asset of the Partnership under Code Section 734(b) or Code Section 743(b) is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of the adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) and that gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to that Section of the Treasury Regulations.

     (h)   Section 481 Adjustments. Any allocable items of income, gain, expense, deduction or credit required to be made by Section 481 of the Code as the result of the sale, transfer, exchange or issuance of a Partnership Interest will be specially allocated to the Partner receiving said Partnership Interest whether such items are positive or negative in amount.

     **3.5.**    **Curative Allocations.** The "***Basic Regulatory Allocations***" consist of (i) the allocations pursuant to Section 3.2(c), and (ii) the allocations pursuant to Sections 3.4. Notwithstanding any other provision of this Agreement, the Basic Regulatory Allocations shall be taken into account in allocating items of income, gain, loss and deduction among the Partners so that, to the extent possible, the net amount of the allocations of other items and the Basic Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner if the Basic Regulatory Allocations had not occurred. For purposes of applying the foregoing sentence, allocations pursuant to this Section 3.5 shall be made with respect to allocations pursuant to Section 3.4 (g) and (h) only to the extent that it is reasonably determined that those allocations will otherwise be inconsistent with the economic agreement among the Partners. To the extent that a special allocation under Section 3.4 is determined not to comply with applicable Treasury Regulations, then the Partners intend that the items shall be allocated in accordance with the Partners' varying Percentage Interests throughout each tax year during which such items are recognized for tax purposes.

     **3.6.**    **Code Section 704(c) Allocations.** In accordance with Code Section 704(c) and the Treasury Regulations thereunder, income, gain, loss and deduction with respect to property contributed to the capital of the Partnership shall, solely for tax purposes, be allocated among the Partners so as to take account of any variation at the time of the contribution between the tax basis of the property to the Partnership and the fair market value of that property. Except as otherwise provided herein, any elections or other decisions relating to those allocations shall be made by the General Partner in any manner that reasonably reflects the purpose and intent of this Agreement. Allocations of income, gain, loss and deduction pursuant to this Section 3.6 are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, the Capital Account of any Partner or the share

003348

HCMLPHMIT00002653

of Profits, Losses, other tax items or distributions of any Partner pursuant to any provision of this Agreement.

### 3.7.  Capital Accounts.

(a)  Maintenance of Capital Accounts.  The Partnership shall establish and maintain a separate capital account *("Capital Account")* for each Partner in accordance with the rules of Treasury Regulations Section 1.704-1(b)(2)(iv), subject to and in accordance with the provisions set forth in this Section 3.7.

(i)  The Capital Account balance of each Partner shall be credited (increased) by (A) the amount of cash contributed by that Partner to the capital of the Partnership, (B) the fair market value of property contributed by that Partner to the capital of the Partnership (net of liabilities secured by that contributed property that the Partnership assumes or takes subject to under Code Section 752), and (C) that Partner's allocable share of Profits and any items in the nature of income or gain which are specially allocated pursuant to Sections 3.4 and 3.5; and

(ii)  The Capital Account balance of each Partner shall be debited (decreased) by (A) the amount of cash distributed to that Partner by the Partnership, (B) the fair market value of property distributed to that Partner by the Partnership (net of liabilities secured by that distributed property that such Partner assumes or takes subject to under Code Section 752), (C) that Partner's allocable share of expenditures of the Partnership described in Code Section 705(a)(2)(B), and (D) that Partner's allocable share of Losses and any items in the nature of expenses or losses which are specially allocated pursuant to Sections 3.2, 3.4 and 3.5.

The provisions of this Section 3.7 and the other provisions of this Agreement relating to the maintenance of Capital Accounts have been included in this Agreement to comply with Code Section 704(b) and the Treasury Regulations promulgated thereunder and will be interpreted and applied in a manner consistent with those provisions.  The General Partner may modify the manner in which the Capital Accounts are maintained under this Section 3.7 in order to comply with those provisions, as well as upon the occurrence of events that might otherwise cause this Agreement not to comply with those provisions.

(b)  Negative Capital Accounts.  If any Partner has a deficit balance in its Capital Account, that Partner shall have no obligation to restore that negative balance or to make any Capital Contribution by reason thereof, and that negative balance shall not be considered an asset of the Partnership or of any Partner.

(c)  Interest.  No interest shall be paid by the Partnership on Capital Contributions or on balances in Capital Accounts.

(d)  No Withdrawal.  No Partner shall be entitled to withdraw any part of his/her/its Capital Contribution or his/her/its Capital Account or to receive any distribution from the Partnership, except as provided in Section 3.9 and Article 5.

(e)  Loans From Partners.  Loans by a Partner to the Partnership shall not be considered Capital Contributions.

(f)  Revaluations.  The Capital Accounts of the Partners shall not be "booked-up" or "booked-down" to their fair market values under Treasury Regulations Section 1.704(c)-1(b)(2)(iv)(f) or otherwise.

003349
HCMLPHMIT00002654

**3.8.    Distributive Share for Tax Purpose.** All items of income, deduction, gain, loss or credit that are recognized for federal income tax purposes will be allocated among the Partners in accordance with the allocations of Profits and Losses hereunder as determined by the General Partner in its sole and unfettered discretion. Notwithstanding the foregoing, the General Partner may (i) as to each New Issue, specially allocate to the Partners who were allocated New Issue Profit from that New Issue any short-term capital gains realized during the Fiscal Year upon the disposition of such New Issue during that Fiscal Year, and (ii) specially allocate items of gain (or loss) to Partners who withdraw capital during any Fiscal Year in a manner designed to ensure that each withdrawing Partner is allocated gain (or loss) in an amount equal to the difference between that Partner's Capital Account balance (or portion thereof being withdrawn) at the time of the withdrawal and the tax basis for his/her/ its Partnership Interest at that time (or proportionate amount thereof); *provided, however,* that the General Partner may, without the consent of any other Partner, (a) alter the allocation of any item of taxable income, gain, loss, deduction or credit in any specific instance where the General Partner, in its sole and unfettered discretion, determines such alteration to be necessary or appropriate to avoid a materially inequitable result *(e.g.,* where the allocation would create an inappropriate tax liability); and/or (b) adopt whatever other method of allocating tax items as the General Partner determines is necessary or appropriate in order to be consistent with the spirit and intent of the Treasury Regulations under Code Sections 704(b) and 704(c).

**3.9.    Distributions.**

(a)    <u>General</u>.   The General Partner may make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion, without being limited to current or accumulated income or gains, but no such distribution shall be made out of funds required to make current payments on Partnership indebtedness; provided, however, that the General Partner may not make non-pro rata distributions under this Section 3.9(a) during an NAV Ratio Trigger Period without the consent of the Class B Limited Partner (in the case of a Class B NAV Ratio Trigger Period) and/or the Class C Limited Partner (in the case of a Class C NAV Ratio Trigger Period); provided, further this provision should not be interpreted to limit in any way the General Partner's ability to make non-pro rata tax distributions under Section 3.9(c) and Section 3.9(f). The Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners. Thus, the Partners acknowledge that distributions from the Partnership may be limited. Any distributions made to the Class B Limited Partner or the Class C Limited Partner pursuant to Section 3.9(b) shall reduce distributions otherwise allocable to such Partners under this Section 3.9(a) until such aggregate reductions are equal to the aggregate distributions made to the Class B Partners and the Class C Partners under Section 3.9(b).

(b)    <u>Priority Distributions</u>.   Prior to the distribution of any amounts to Partners pursuant to Section 3.9(a), and notwithstanding any other provision in this Agreement to the contrary, the Partnership shall make the following distributions ("*Priority Distributions*") pro-rata among the Class B Limited Partner and the Class C Limited Partner in accordance with their relative Percentage Interests:

(i)    No later than March 31st of each calendar year, commencing March 31, 2017, an amount equal to $1,600,000.00;

(ii)    No later than March 31st of each year, commencing March 31, 2017, an amount equal to three percent (3%) of the Partnership's investment gain for the prior year, as reflected in the Partnership's books and records within ledger account number 90100 plus three percent (3%) of the gross realized investment gains for the prior year of Highland Select Equity Fund, as reflected in its books and records;

12

HCMLPHMIT00002655

(iii)      No later than March 31st of each year, commencing March 31, 2017, an amount equal to ten percent (10%) of the Partnership's Operating Cash Flow for the prior year; and

(iv)      No later than December 24th of each year, commencing December 24, 2016, an amount equal to the aggregate annual principal and interest payments on the Purchase Notes for the then current year.

(c)      Tax Distributions.  The General Partner may, in its sole discretion, declare and make cash distributions pursuant hereto to the Partners to allow the federal and state income tax attributable to the Partnership's taxable income that is passed through the Partnership to the Partners to be paid by such Partners (a "*Tax Distribution*").  The General Partner may, in its discretion, make Tax Distributions to the Founding Partner Group without also making Tax Distributions to other Partners; provided, however, that if the General Partner makes Tax Distributions to the Founding Partner Group, Tax Distributions must also be made the Class B Limited Partner to the extent the Class B Limited Partner provides the Partnership with documentation showing it is subject to an entity-level federal income tax obligation.  Notwithstanding anything else in this Agreement, the General Partner may declare and pay Tax Distributions even if such Tax Distributions cause the Partnership to be unable to make Priority Distributions under Section 3.9(b).

(d)      Payments Not Deemed Distributions.    Any amounts paid pursuant to Sections 4.1(e) or 4.1(h) shall not be deemed to be distributions for purposes of this Agreement.

(e)      Withheld Amounts.  Notwithstanding any other provision of this Section 3.9 to the contrary, each Partner hereby authorizes the Partnership to withhold and to pay over, or otherwise pay, any withholding or other taxes payable by the Partnership with respect to that Partner as a result of that Partner's participation in the Partnership.  If and to the extent that the Partnership shall be required to withhold or pay any such taxes, that Partner shall be deemed for all purposes of this Agreement to have received a payment from the Partnership as of the time that withholding or tax is paid, which payment shall be deemed to be a distribution with respect to that Partner's Partnership Interest to the extent that the Partner (or any successor to that Partner's Partnership Interest) is then entitled to receive a distribution.  To the extent that the aggregate of such payments to a Partner for any period exceeds the distributions to which that Partner is entitled for that period, the amount of such excess shall be considered a loan from the Partnership to that Partner.  Such loan shall bear interest (which interest shall be treated as an item of income to the Partnership) at the "Applicable Federal Rate" (as defined in the Code), as determined hereunder from time to time, until discharged by that Partner by repayment, which may be made in the sole and unfettered discretion of the General Partner out of distributions to which that Partner would otherwise be subsequently entitled.  Any withholdings authorized by this Section 3.9(d) shall be made at the maximum applicable statutory rate under the applicable tax law unless the General Partner shall have received an opinion of counsel or other evidence satisfactory to the General Partner to the effect that a lower rate is applicable, or that no withholding is applicable.

(f)      Special Tax Distributions.  The Partnership shall, upon request of such Founding Partner, make distributions to the Founding Partners (or loans, at the election of the General Partner) in an amount necessary for each of them to pay their respective federal income tax obligations incurred through the effective date of the Third Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., the predecessor to this Agreement.

(g)      Tolling of Priority Distributions.  In the event of a "Honis Trigger Event," as defined in the Second Amended Buy-Sell and Redemption Agreement, the Partnership shall not make any distributions, including priority distributions under Section 3.9(b), to the Class B Limited Partner or the Class C Limited Partner until such time as a replacement trust administrator, manager and general partner,

13

HCMLPHMIT00002656

as applicable, acceptable to the Partnership in its sole discretion, as indicated by an affirmative vote of consent by a Majority Interest, shall be appointed to the Class B Limited Partner/Class C Limited Partner and any of its direct or indirect owners that have governing documents directly affected by a Honis Trigger Event.

### 3.10.  Compensation and Reimbursement of General Partner.

(a)  <u>Compensation</u>.  The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest; provided, however, that no compensation above five million dollars per year may be approved, even by a Majority Interest, during a NAV Ratio Trigger Period.

(b)  <u>Reimbursement for Expenses</u>.  In addition to amounts paid under other Sections of this Agreement, the General Partner and its Affiliates shall be reimbursed for all expenses, disbursements, and advances incurred or made, and all fees, deposits, and other sums paid in connection with the organization and operation of the Partnership, the qualification of the Partnership to do business, and all related matters.

### 3.11.  Books, Records, Accounting, and Reports.

(a)  <u>Records and Accounting</u>.  The General Partner shall keep or cause to be kept appropriate books and records with respect to the Partnership's business, which shall at all times be kept at the principal office of the Partnership or such other office as the General Partner may designate for such purpose.  The books of the Partnership shall be maintained for financial reporting purposes on the accrual basis or on a cash basis, as the General Partner shall determine in its sole and unfettered discretion, in accordance with generally accepted accounting principles and applicable law.  Upon reasonable request, the Class B Limited Partner or the Class C Limited Partner may inspect the books and records of the Partnership.

(b)  <u>Fiscal Year</u>.  The fiscal year of the Partnership shall be the calendar year unless otherwise determined by the General Partner in its sole and unfettered discretion.

(c)  <u>Other Information</u>.  The General Partner may release information concerning the operations of the Partnership to any financial institution or other Person that has loaned or may loan funds to the Partnership or the General Partner or any of its Affiliates, and may release such information to any other Person for reasons reasonably related to the business and operations of the Partnership or as required by law or regulation of any regulatory body.

(d)  <u>Distribution Reporting to Class B Limited Partner and Class C Limited Partner</u>.  Upon request, the Partnership shall provide the Class B Limited Partner and/or the Class C Limited Partner information on any non-pro rata distributions made under <u>Section 3.9</u> to Partners other than the Partner requesting the information.

### 3.12.  Tax Matters.

(a)  <u>Tax Returns</u>.  The General Partner shall arrange for the preparation and timely filing of all returns of Partnership income, gain, loss, deduction, credit and other items necessary for federal, state and local income tax purposes.  The General Partner shall deliver to each Partner as copy of his/her/its IRS Form K-1 as soon as practicable after the end of the Fiscal Year, but in no event later than October 1.  The classification, realization, and recognition of income, gain, loss, deduction, credit and

003352
HCMLPHMIT00002657

other items shall be on the cash or accrual method of accounting for federal income tax purposes, as the General Partner shall determine in its sole and unfettered discretion. The General Partner in its sole and unfettered discretion may pay state and local income taxes attributable to operations of the Partnership and treat such taxes as an expense of the Partnership.

(b)   Tax Elections. Except as otherwise provided herein, the General Partner shall, in its sole and unfettered discretion, determine whether to make any available tax election.

(c)   Tax Controversies. Subject to the provisions hereof, the General Partner is designated the Tax Matters Partner (as defined in Code Section 6231), and is authorized and required to represent the Partnership, at the Partnership's expense, in connection with all examinations of the Partnership's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Partnership funds for professional services and costs associated therewith. Each Partner agrees to cooperate with the General Partner in connection with such proceedings.

(d)   Taxation as a Partnership. No election shall be made by the Partnership or any Partner for the Partnership to be excluded from the application of any of the provisions of Subchapter K, Chapter 1 of Subtitle A of the Code or from any similar provisions of any state tax laws.

## ARTICLE 4

## RIGHTS AND OBLIGATIONS OF PARTNERS

4.1.   **Rights and Obligations of the General Partner.**   In addition to the rights and obligations set forth elsewhere in this Agreement, the General Partner shall have the following rights and obligations:

(a)   Management. The General Partner shall conduct, direct, and exercise full control of over all activities of the Partnership. Except as otherwise expressly provided in this Agreement, all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner, and Limited Partners shall have no right of control over the business and affairs of the Partnership.   In addition to the powers now or hereafter granted to a general partner of a limited partnership under applicable law or that are granted to the General Partner under any provision of this Agreement, the General Partner shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership, including, without limitation: (i) the determination of the activities in which the Partnership will participate; (ii) the performance of any and all acts necessary or appropriate to the operation of any business of the Partnership (including, without limitation, purchasing and selling any asset, any debt instruments, any equity interests, any commercial paper, any note receivables and any other obligations); (iii) the procuring and maintaining of such insurance as may be available in such amounts and covering such risks as are deemed appropriate by the General Partner; (iv) the acquisition, disposition, sale, mortgage, pledge, encumbrance, hypothecation, of exchange of any or all of the assets of the Partnership; (v) the execution and delivery on behalf of, and in the name of the Partnership, deeds, deeds of trust, notes, leases, subleases, mortgages, bills of sale and any and all other contracts or instruments necessary or incidental to the conduct of the Partnership's business; (vi) the making of any expenditures, the borrowing of money, the guaranteeing of indebtedness and other liabilities, the issuance of evidences of indebtedness, and the incurrence of any obligations it deems necessary or advisable for the conduct of the activities of the Partnership, including, without limitation, the payment of compensation and reimbursement to the General Partner and its Affiliates pursuant to Section 3.10; (vii) the use of the assets of the Partnership (including, without limitation, cash on hand) for any Partnership purpose on any terms it sees fit, including, without limitation, the financing of operations of the Partnership, the lending of funds to other Persons, and the repayment of obligations

15

HCMLPHMIT00002658

of the Partnership; (viii) the negotiation, execution, and performance of any contracts that it considers desirable, useful, or necessary to the conduct of the business or operations of the Partnership or the implementation of the General Partner's powers under this Agreement; (ix) the distribution of Partnership cash or other assets; (x) the selection, hiring and dismissal of employees, attorneys, accountants, consultants, contractors, agents and representatives and the determination of their compensation and other teens of employment or hiring; (xi) the formation of any further limited or general partnerships, joint ventures, or other relationships that it deems desirable and the contribution to such partnerships, ventures, or relationships of assets and properties of the Partnership; and (xii) the control of any matters affecting the rights and obligations of the Partnership, including, without limitation, the conduct of any litigation, the incurring of legal expenses, and the settlement of claims and suits.

(b)     Certificate of Limited Partnership. The General Partner caused the Certificate of Limited Partnership of the Partnership to be filed with the Secretary of State of Delaware as required by the Delaware Act and shall cause to be filed such other certificates or documents (including, without limitation, copies, amendments, or restatements of this Agreement) as may be determined by the General Partner to be reasonable and necessary or appropriate for the formation, qualification, or registration and operation of a limited partnership (or a partnership in which Limited Partners have limited liability) in the State of Delaware and in any other state where the Partnership may elect to do business.

(c)     Reliance by Third Parties. Notwithstanding any other provision of this Agreement to the contrary, no lender or purchaser or other Person, including any purchaser of property from the Partnership or any other Person dealing with the Partnership, shall be required to verify any representation by the General Partner as to its authority to encumber, sell, or otherwise use any assess or properties of the Partnership, and any such lender, purchaser, or other Person shall be entitled to rely exclusively on such representations and shall be entitled to deal with the General Partner as if it were the sole party in interest therein, both legally and beneficially. Each Limited Partner hereby waives any and all defenses or other remedies that may be available against any such lender, purchaser, or other Person to contest, negate, or disaffirm any action of the General Partner in connection with any such sale or financing. In no event shall any Person dealing with the General Partner or the General Partner's representative with respect to any business or property of the Partnership be obligated to ascertain that the terms of this Agreement have been complied with, and each such Person shall be entitled to rely on the assumptions that the Partnership has been duly formed and is validly in existence. In no event shall any such Person be obligated to inquire into the necessity or expedience of any act or action of the General Partner or the General Partner's representative, and every contract, agreement, deed, mortgage, security agreement, promissory note, or other instrument or document executed by the General Partner or the General Partner's representative with respect to any business or property of the Partnership shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i), at the time of the execution and delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Partnership; and (iii) the General Partner or the General Partner's representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Partnership.

(d)     Partnership Funds. The funds of the Partnership shall be deposited in such account or accounts as are designated by the General Partner. The General Partner may, in its sole and unfettered discretion, deposit funds of the Partnership in a central disbursing account maintained by or in the name of the General Partner, the Partnership, or any other Person into which funds of the General Partner, the Partnership, on other Persons are also deposited; *provided, however,* at all times books of account are maintained that show the amount of funds of the Partnership on deposit in such account and interest accrued with respect to such funds as credited to the Partnership. The General Partner may use the funds of the Partnership as compensating balances for its benefit; *provided, however,* such funds do

16

HCMLPHMIT00002659

not directly or indirectly secure, and are not otherwise at risk on account of, any indebtedness or other obligation of the General Partner or any director, officer, employee, agent, representative, or Affiliate thereof. Nothing in this Section 4.1(d) shall be deemed to prohibit or limit in any manner the right of the Partnership to lend funds to the General Partner or any Affiliate thereof pursuant to Section 4.1(e)(i). All withdrawals from or charges against such accounts shall be made by the General Partner or by its representatives. Funds of the Partnership may be invested as determined by the General Partner in accordance with the terms and provisions of this Agreement.

(e)    Loans to or from General Partner: Contracts with Affiliates; Joint Ventures.

(i)    The General Partner or any Affiliate of the General Partner may lend to the Partnership funds needed by the Partnership for such periods of time as the General Partner may determine; *provided, however,* the General Partner or its Affiliate may not charge the Partnership interest at a rate greater than the rate (including points or other financing charges or fees) that would be charged the Partnership (without reference to the General Partner's financial abilities or guaranties) by unrelated lenders on comparable loans. The Partnership shall reimburse the General Partner or its Affiliate, as the case may be, for any costs incurred by the General Partner or that Affiliate in connection with the borrowing of funds obtained by the General Partner or that Affiliate and loaned to the Partnership. The Partnership may loan funds to the General Partner and any member of the Founding Partner Group at the General Partner's sole and exclusive discretion.

(ii)    The General Partner or any of its Affiliates may enter into an agreement with the Partnership to render services, including management services, for the Partnership. Any service rendered for the Partnership by the General Partner or any Affiliate thereof shall be on terms that are fair and reasonable to the Partnership.

(iii)    The Partnership may Transfer any assets to joint ventures or other partnerships in which it is or thereby becomes a participant upon terms and subject to such conditions consistent with applicable law as the General Partner deems appropriate; provided, however, that the Partnership may not transfer any asset to the General Partner or one of its Affiliates during any NAV Ratio Trigger Period for consideration less than such asset's fair market value.

(f)    Outside Activities' Conflicts of Interest. The General Partner or any Affiliate thereof and any director, officer, employee, agent, or representative of the General Partner or any Affiliate thereof shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including, without limitation, business interests and activities in direct competition with the Partnership. Neither the Partnership nor any of the Partners shall have any rights by virtue of this Agreement or the partnership relationship created hereby in any business ventures of the General Partner, any Affiliate thereof, or any director, officer, employee, agent, or representative of either the General Partner or any Affiliate thereof.

(g)    Resolution of Conflicts of Interest. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Delaware Act or any other applicable law, rule, or regulation.

(h)    Indemnification. The Partnership shall indemnify and hold harmless the General Partner and any director, officer, employee, agent, or representative of the General Partner (collectively,

17

003355

HCMLPHMIT00002660

the "*GP Party*"), against all liabilities, losses, and damages incurred by any of them by reason of any act performed or omitted to be performed in the name of or on behalf of the Partnership, or in connection with the Partnership's business, including, without limitation, attorneys' fees and any amounts expended in the settlement of any claims or liabilities, losses, or damages, to the fullest extent permitted by the Delaware Act; *provided, however,* the Partnership shall have no obligation to indemnify and hold harmless a GP Party for any action or inaction that constitutes gross negligence or willful or wanton misconduct. The Partnership, in the sole and unfettered discretion of the General Partner, may indemnify and hold harmless any Limited Partner, employee, agent, or representative of the Partnership, any Person who is or was serving at the request of the Partnership acting through the General Partner as a director, officer, partner, trustee, employee, agent, or representative of another corporation, partnership, joint venture, trust, or other enterprise, and any other Person to the extent determined by the General Partner in its sole and unfettered discretion, but in no event shall such indemnification exceed the indemnification permitted by the Delaware Act. Notwithstanding anything to the contrary in this Section 4.1(h) or elsewhere in this Agreement, no amendment to the Delaware Act after the date of this Agreement shall reduce or limit in any manner the indemnification provided for or permitted by this Section 4.1(h) unless such reduction or limitation is mandated by such amendment for limited partnerships formed prior to the enactment of such amendment. In no event shall Limited Partners be subject to personal liability by reason of the indemnification provisions of this Agreement.

     (i)    Liability of General Partner.

        (i)    Neither the General Partner nor its directors, officers, employees, agents, or representatives shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts or omissions that do not constitute gross negligence or willful or wanton misconduct.

        (ii)    The General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its directors, officers, employees, agents, or representatives, and the General Partner shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner.

     (j)    Reliance by General Partner.

        (i)    The General Partner may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

        (ii)    The General Partner may consult with legal counsel, accountants, appraisers, management consultants, investment bankers, and other consultants and advisers selected by it, and any opinion of any such Person as to matters which the General Partner believes to be within such Person's professional or expert competence shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by the General Partner hereunder in good faith and in accordance with such opinion.

     (k)    The General Partner may, from time to time, designate one or more Persons to be officers of the Partnership. No officer need be a Partner. Any officers so designated shall have such authority and perform such duties as the General Partner may, from time to time, delegate to them. The General Partner may assign titles to particular officers, including, without limitation, president, vice president, secretary, assistant secretary, treasurer and assistant treasurer. Each officer shall hold office until such Person's successor shall be duly designated and shall qualify or until such Person's death or

003356
HCMLPHMIT00002661

until such Person shall resign or shall have been removed in the manner hereinafter provided. Any number of offices may be held by the same Person. The salaries or other compensation, if any, of the officers and agents of the Partnership shall be fixed from time to time by the General Partner. Any officer may be removed as such, either with or without cause, by the General Partner whenever in the General Partner's judgment the best interests of the Partnership will be served thereby. Any vacancy occurring in any office of the Partnership may be filled by the General Partner.

    **4.2.**    **Rights and Obligations of Limited Partners**. In addition to the rights and obligations of Limited Partners set forth elsewhere in this Agreement, Limited Partners shall have the following rights and obligations:

        (a)    <u>Limitation of Liability</u>. Limited Partners shall have no liability under this Agreement except as provided herein or under the Delaware Act.

        (b)    <u>Management of Business</u>. No Limited Partner shall take part in the control (within the meaning of the Delaware Act) of the Partnership's business, transact any business in the Partnership's name, or have the power to sign documents for or otherwise bind the Partnership other than as specifically set forth in this Agreement.

        (c)    <u>Return of Capital</u>. No Limited Partner shall be entitled to the withdrawal or return of its Capital Contribution except to the extent, if any, that distributions made pursuant to this Agreement or upon termination of the Partnership may be considered as such by law and then only to the extent provided for in this Agreement.

        (d)    <u>Second Amended Buy-Sell and Redemption Agreement</u>. Each Limited Partner shall comply with the terms and conditions of the Second Amended Buy-Sell and Redemption Agreement.

        (e)    <u>Default on Priority Distributions</u>. If the Partnership fails to timely pay Priority Distributions pursuant to Section 3.9(b), and the Partnership does not subsequently make such Priority Distribution within ninety days of its due date, the Class B Limited Partner or the Class C Limited Partner may require the Partnership to liquidate publicly traded securities held by the Partnership or Highland Select Equity Master Fund, L.P., a Delaware limited partnership controlled by the Partnership; provided, however, that the General Partner may in its sole discretion elect instead to liquidate other non-publicly traded securities owned by the Partnership in order to satisfy the Partnership's obligations under <u>Section 3.9(b)</u> and this <u>Section 4.2(e)</u>. In either case, Affiliates of the General Partner shall have the right of first offer to purchase any securities liquidated under this <u>Section 4.2(e)</u>.

    **4.3.**    **Transfer of Partnership Interests.**

        (a)    <u>Transfer</u>. No Partnership Interest shall be Transferred, in whole or in part, except in accordance with the terms and conditions set forth in this <u>Section 4.3</u> and the Second Amended Buy-Sell and Redemption Agreement. Any Transfer or purported Transfer of any Partnership Interest not made in accordance with this <u>Section 4.3</u> and the Second Amended Buy-Sell and Redemption Agreement shall be null and void. An alleged transferee shall have no right to require any information or account of the Partnership's transactions or to inspect the Partnership's books. The Partnership shall be entitled to treat the alleged transferor of a Partnership Interest as the absolute owner thereof in all respects, and shall incur no liability to any alleged transferee for distributions to the Partner owning that Partnership Interest of record or for allocations of Profits, Losses, deductions or credits or for transmittal of reports and notices required to be given to holders of Partnership Interests.

19

003357

HCMLPHMIT00002662

(b)      Transfers by General Partner. The General Partner may Transfer all, but not less than all, of its Partnership Interest to any Person only with the approval of a Majority Interest; provided, however, that the General Partner may not Transfer its Partnership Interest during any NAV Ratio Trigger Period except to the extent such Transfers are for estate planning purposes or resulting from the death of the individual owner of the General Partner. Any Transfer by the General Partner of its Partnership Interest under this Section 4.3(b) to an Affiliate of the General Partner or any other Person shall not constitute a withdrawal of the General Partner under Section 4.5(a), Section 5.1(b), or any other provision of this Agreement. If any such Transfer is deemed to constitute a withdrawal under such provisions or otherwise and results in the dissolution of the Partnership under this Agreement or the laws of any jurisdiction to which the Partnership of this Agreement is subject, the Partners hereby unanimously consent to the reconstitution and continuation of the Partnership immediately following such dissolution, pursuant to Section 5.2.

(c)      Transfers by Limited Partners. The Partnership Interest of a Limited Partner may not be Transferred without the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), and in accordance with the Second Amended Buy-Sell and Redemption Agreement.

(d)      Distributions and Allocations in Respect of Transferred Partnership Interests. If any Partnership Interest is Transferred during any Fiscal Year in compliance with the provisions of Article 4 and the Second Amended Buy-Sell and Redemption Agreement, Profits, Losses, and all other items attributable to the transferred interest for that period shall be divided and allocated between the transferor and the transferee by taking into account their varying interests during the period in accordance with Code Section 706(d), using any conventions permitted by law and selected by the General Partner; provided that no allocations shall be made under this Section 4.3(d) that would affect any special allocations made under Section 3.4. All distributions declared on or before the date of that Transfer shall be made to the transferor. Solely for purposes of making such allocations and distributions, the Partnership shall recognize that Transfer not later than the end of the calendar month during which it is given notice of that Transfer; *provided, however,* if the Partnership does not receive a notice stating the date that Partnership Interest was Transferred and such other information as the General Partner may reasonably require within thirty (30) days after the end of the Fiscal Year during which the Transfer occurs, then all of such items shall be allocated, and all distributions shall be made, to the person who, according to the books and records of the Partnership, on the last day of the Fiscal Year during which the Transfer occurs, was the owner of the Partnership Interest. Neither the Partnership nor any Partner shall incur any liability for making allocations and distributions in accordance with the provisions of this Section 4.3(d), whether or not any Partner or the Partnership has knowledge of any Transfer of ownership of any Partnership Interest.

(e)      Forfeiture of Partnership Interests Pursuant to the Contribution Note. In the event any Class B Limited Partnership Interests are forfeited in favor of the Partnership as a result of any default on the Contribution Note, the Capital Accounts and Percentage Interests associated with such Class B Limited Partnership Interests shall be allocated pro rata among the Class A Partners. The Priority Distributions in Section 3.9(b) made after the date of such forfeiture shall each be reduced by an amount equal to the ratio of the Percentage Interest associated with the Class B Limited Partnership Interest transferred pursuant to this Section 4.3(e) over the aggregate Percentage Interests of all Class B Limited Partnership Interests and Class C Limited Partnership Interests, calculated immediately prior to any forfeiture of such Class B Limited Partnership Interest.

(f)      Transfers of Partnership Interests Pursuant to the Purchase Notes. Notwithstanding any other provision in this Agreement, the Partnership shall respect, and the General Partner hereby provides automatic consent for, any transfers (in whole or transfers of partial interests) of

003358

HCMLPHMIT00002663

the Class C Limited Partnership Interests, or a portion thereof, if such transfer occurs as a result of a default on the Purchase Notes. Upon the transfer of any Class C Limited Partnership Interest to any member of the Founding Partner Group (or their assigns), such Class C Limited Partnership Interest shall automatically convert to a Class A Partnership Interest. The Priority Distributions in Section 3.9(b) shall each be reduced by an amount equal to the ratio of the Percentage Interest associated with the transferred Class C Limited Partnership Interest over the aggregate Percentage Interests of all Class B Limited Partnership Interests and Class C Limited Partnership Interests, calculated immediately prior to any transfer of such Class C Limited Partnership Interest.

**4.4.    Issuances of Partnership Interests to New and Existing Partners.**

(a)    Issuance of Partnership Interests to New Limited Partners. The General Partner may admit one or more additional Persons as Limited Partners ("Additional Limited Partners") to the Partnership at such times and upon such terms as it deems appropriate in its sole and unfettered discretion; provided, however, that the General Partner may only admit additional Persons as Limited Partners in relation to the issuance of equity incentives to key employees of the Partnership; provided, further that the General Partner may not issue such equity incentives to the extent they entitle the holders, in the aggregate, to a Percentage Interest in excess of twenty percent without the consent of the Class B Limited Partner and the Class C Limited Partner. All Class A Limited Partners, the Class B Limited Partner and the Class C Limited Partner shall be diluted proportionately by the issuance of such limited partnership interests. No Person may be admitted to the Partnership as a Limited Partner until he/she/it executes an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Second Amended Buy-Sell and Redemption Agreement.

(b)    Issuance of an Additional Partnership Interest to an Existing Partner. The General Partner may issue an additional Partnership Interest to any existing Partner at such times and upon such terms as it deems appropriate in its sole and unfettered discretion. Upon the issuance of an additional Partnership Interest to an existing Partner, the Percentage Interests of the members of the Founding Partner Group shall be diluted proportionately. Any additional Partnership Interest shall be subject to all the terms and conditions of this Agreement and the Second Amended Buy-Sell and Redemption Agreement.

**4.5.    Withdrawal of General Partner**

(a)    Option. In the event of the withdrawal of the General Partner from the Partnership, the departing General Partner (the "**Departing Partner**") shall, at the option of its successor (if any) exercisable prior to the effective date of the departure of that Departing Partner, promptly receive from its successor in exchange for its Partnership Interest as the General Partner, an amount in cash equal to its Capital Account balance, determined as of the effective date of its departure.

(b)    Conversion. If the successor to a Departing Partner does not exercise the option described in Section 4.5(a), the Partnership Interest of the Departing Partner as the General Partner of the Partnership shall be converted into a Partnership Interest as a Limited Partner.

**4.6.    Admission of Substitute Limited Partners and Successor General Partner.**

(a)    Admission of Substitute Limited Partners. A transferee (which may be the heir or legatee of a Limited Partner) or assignee of a Limited Partner's Partnership Interest shall be entitled to receive only the distributive share of the Partnership's Profits, Losses, deductions, and credits attributable to that Partnership Interest. To become a substitute Limited Partner (a "**Substitute Limited Partner**"),

21

003359

HCMLPHMIT00002664

that transferee or assignee shall (1) obtain the consent of the General Partner (which consent may be withheld in the sole and unfettered discretion of the General Partner), (ii) comply with all the requirements of this Agreement and the Second Amended Buy-Sell and Redemption Agreement with respect to the Transfer of the Partnership Interest at issue, and (iii) execute an Addendum to this Agreement in the form attached as Exhibit B (which may be modified by the General Partner in its sole and unfettered discretion) and an addendum to the Second Amended Buy-Sell and Redemption Agreement. Upon admission of a Substitute Limited Partner, that Limited Partner shall be subject to all of the restrictions applicable to, shall assume all of the obligations of, and shall attain the status of a Limited Partner under and pursuant to this Agreement with respect to the Partnership Interest held by that Limited Partner.

(b)    Admission of Successor General Partner.  A successor General Partner selected pursuant to Section 5.2 or the transferee of or successor to all of the Partnership Interest of the General Partner pursuant to Section 4.3(b) shall be admitted to the Partnership as the General Partner, effective as of the date of the withdrawal or removal of the predecessor General Partner or the date of Transfer of that predecessor's Partnership Interest.

(c)    Action by General Partner.  In connection with the admission of any substitute Limited Partner or successor General Partner or any additional Limited Partner, the General Partner shall have the authority to take all such actions as it deems necessary or advisable in connection therewith, including the amendment of Exhibit A and the execution and filing with appropriate authorities of any necessary documentation.

## ARTICLE 5

## DISSOLUTION AND WINDING UP

5.1.    **Dissolution.**  The Partnership shall be dissolved upon:

(a)    The withdrawal, bankruptcy, or dissolution of the General Partner, or any other event that results in its ceasing to be the General Partner (other than by reason of a Transfer pursuant to Section 4.3(b));

(b)    An election to dissolve the Partnership by the General Partner that is approved by the affirmative vote of a Majority Interest; *provided, however,* the General Partner may dissolve the Partnership without the approval of the Limited Partners in order to comply with Section 14 of the Second Amended Buy-Sell and Redemption Agreement; or

(c)    Any other event that, under the Delaware Act, would cause its dissolution.

For purposes of this Section 5.1, the bankruptcy of the General Partner shall be deemed to have occurred when the General Partner: (i) makes a general assignment for the benefit of creditors; (ii) files a voluntary bankruptcy petition; (iii) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceeding:  (iv) files a petition or answer seeking a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law; (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the General Partner in a proceeding of the type described in clauses (i) through (iv) of this paragraph; (vi) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties; or (vii) one hundred twenty (120) days expire after the date of the commencement of a proceeding against the General Partner seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution, or

22

003360
HCMLPHMIT00002665

similar relief under any law if the proceeding has not been previously dismissed, or ninety (90) days expire after the date of the appointment, without the General Partner's consent or acquiescence, of a trustee, receiver, or liquidator of the General Partner or of all or any substantial part of the General Partner's properties if the appointment has not previously been vacated or stayed, or ninety (90) days expire after the date of expiration of a stay, if the appointment has not previously been vacated.

    **5.2.**    **Continuation of the Partnership.**  Upon the occurrence of an event described in <u>Section 5.1(a)</u>, the Partnership shall be deemed to be dissolved and reconstituted if a Majority Interest elect to continue the Partnership within ninety (90) days of that event. If no election to continue the Partnership is made within ninety (90) days of that event, the Partnership shall conduct only activities necessary to wind up its affairs. If an election to continue the Partnership is made upon the occurrence of an event described in <u>Section 5.1(a)</u>, then:

    (a)    Within that ninety (90)-day period a successor General Partner shall be selected by a Majority Interest;

    (b)    The Partnership shall be deemed to be reconstituted and shall continue until the end of the term for which it is formed unless earlier dissolved in accordance with this <u>Article 5</u>;

    (c)    The interest of the former General Partner shall be converted to an interest as a Limited Partner; and

    (d)    All necessary steps shall be taken to amend or restate this Agreement and the Certificate of Limited Partnership, and the successor General Partner may for this purpose amend this Agreement and the Certificate of Limited Partnership, as appropriate, without the consent of any Partner.

    **5.3.**    **Liquidation.**  Upon dissolution of the Partnership, unless the Partnership is continued under <u>Section 5.2</u>, the General Partner or, in the event the General Partner has been dissolved, becomes bankrupt (as defined in <u>Section 5.1</u>), or withdraws from the Partnership, a liquidator or liquidating committee selected by a Majority Interest, shall be the Liquidator. The Liquidator (if other than the General Partner) shall be entitled to receive such compensation for its services as may be approved by a Majority Interest. The Liquidator shall agree not to resign at any time without fifteen (15) days' prior written notice and (if other than the General Partner) may be removed at any time, with or without cause, by notice of removal approved by a Majority Interest. Upon dissolution, removal, or resignation of the Liquidator, a successor and substitute Liquidator (who shall have and succeed to all rights, powers, and duties of the original Liquidator) shall within thirty (30) days thereafter be selected by a Majority Interest. The right to appoint a successor or substitute Liquidator in the manner provided herein shall be recurring and continuing for so long as the functions and services of the Liquidator are authorized to continue under the provisions hereof, and every reference herein to the Liquidator shall be deemed to refer also to any such successor or substitute Liquidator appointed in the manner provided herein. Except as expressly provided in this <u>Article 5</u>, the Liquidator appointed in the manner provided herein shall have and may exercise, without further authorization or consent of any of the parties hereto, all of the powers conferred upon the General Partner under the terms of this Agreement (but subject to all of the applicable limitations, contractual and otherwise, upon the exercise of such powers) to the extent necessary or desirable in the good faith judgment of the Liquidator to carry out the duties and functions of the Liquidator hereunder for and during such period of time as shall be reasonably required in the good faith judgment of the Liquidator to complete the winding up and liquidation of the Partnership as provided herein. The Liquidator shall liquidate the assets of the Partnership and apply and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of applicable law:

003361

HCMLPHMIT00002666

   (a) To the payment of the expenses of the terminating transactions including, without limitation, brokerage commission, legal fees, accounting fees and closing costs;

   (b) To the payment of creditors of the Partnership, including Partners, in order of priority provided by law;

   (c) To the Partners and assignees to the extent of, and in proportion to, the positive balances in their respective Capital Accounts as provided in Treasury Regulations Section 1.704-1(b)(2)(ii)(b)(2); *provided, however,* the Liquidator may place in escrow a reserve of cash or other assets of the Partnership for contingent liabilities in an amount determined by the Liquidator to be appropriate for such purposes; and

   (d) To the Partners in proportion to their respective Percentage Interests.

  **5.4.** **Distribution in Kind.** Notwithstanding the provisions of <u>Section 5.3</u> that require the liquidation of the assets of the Partnership, but subject to the order of priorities set forth therein, if on dissolution of the Partnership the Liquidator determines that an immediate sale of part or all of the Partnership's assets would be impractical or would cause undue loss to the Partners and assignees, the Liquidator may defer for a reasonable time the liquidation of any assets except those necessary to satisfy liabilities of the Partnership (other than those to Partners) and/or may distribute to the Partners and assignees, in lieu of cash, as tenants in common and in accordance with the provisions of <u>Section 5.3</u>, undivided interests in such Partnership assets as the Liquidator deems not suitable for liquidation. Any such distributions in kind shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any joint operating agreements or other agreements governing the operation of such properties at such time. The Liquidator shall determine the fair market value of any property distributed in kind using such reasonable method of valuation as it may adopt.

  **5.5.** **Cancellation of Certificate of Limited Partnership.** Upon the completion of the distribution of Partnership property as provided in <u>Sections 5.3</u> and <u>5.4</u>, the Partnership shall be terminated, and the Liquidator (or the General Partner and Limited Partners if necessary) shall cause the cancellation of the Certificate of Limited Partnership in the State of Delaware and of all qualifications and registrations of the Partnership as a foreign limited partnership in jurisdictions other **than** the State of Delaware and shall take such other actions as may be necessary to terminate the Partnership.

  **5.6.** **Return of Capital.** The General Partner shall not be personally liable for the return of the Capital Contributions of Limited Partners, or any portion thereof, it being expressly understood that any such return shall be **made** solely from Partnership assets.

  **5.7.** **Waiver of Partition.** Each Partner hereby waives any rights to partition of the Partnership property.

**ARTICLE 6**

**GENERAL PROVISIONS**

  **6.1.** **Amendments to Agreement.** The General Partner may amend this Agreement without the consent of any Partner if the General Partner reasonably determines that such amendment is necessary and appropriate; *provided, however, any* action taken by the General Partner shall be subject to its fiduciary duties to the Limited Partners under the Delaware Act; provided further that any amendments

24

003362

HCMLPHMIT00002667

that adversely affect the Class B Limited Partner or the Class C Limited Partner may only be made with the consent of such Partner adversely affected.

**6.2.    Addresses and Notices.** Any notice, demand, request, or report required or permitted to be given or made to a Partner under this Agreement shall be in writing and shall be deemed given or made when delivered in person or when sent by United States registered or certified mail to the Partner at his/her/its address as shown on the records of the Partnership, regardless of any claim of any Person who may have an interest in any Partnership Interest by reason of an assignment or otherwise.

**6.3.    Titles and Captions.** All article and section titles and captions in the Agreement are for convenience only, shall not be deemed part of this Agreement, and in no way shall define, limit, extend, or describe the scope or intent of any provisions hereof. Except as specifically provided otherwise, references to "Articles," "Sections" and "Exhibits" are to "Articles," "Sections" and "Exhibits" of this Agreement. All Exhibits hereto are incorporated herein by reference.

**6.4.    Pronouns and Plurals.** Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns, pronouns, and verbs shall include the plural and vice versa.

**6.5.    Further Action.** The parties shall execute all documents, provide all information, and take or refrain from taking all actions as may be necessary or appropriate to achieve the purposes of this Agreement.

**6.6.    Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, successors, legal representatives, and permitted assigns.

**6.7.    Integration.** This Agreement constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

**6.8.    Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership.

**6.9.    Waiver.** No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute waiver of any such breach or any other covenant, duty, agreement, or condition.

**6.10.    Counterparts.** This agreement may be executed in counterparts, all of which together shall constitute one agreement binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

**6.11.    Applicable Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to the principles of conflicts of law.

**6.12.    Invalidity of Provisions.** If any provision of this Agreement is declared or found to be illegal, unenforceable, or void, in whole or in part, then the parties shall be relieved of all obligations arising under that provision, but only to the extent that it is illegal, unenforceable, or void, it being the intent and agreement of the parties that this Agreement shall be deemed amended by modifying that provision to the extent necessary to make it legal and enforceable while preserving its intent or, if that is

25

003363
HCMLPHMIT00002668

not possible, by substituting therefor another provision that is legal and enforceable and achieves the same objectives.

6.13.   **General Partner Discretion.**   Whenever the General Partner may use its sole discretion, the General Partner may consider any items it deems relevant, including its own interest and that of its affiliates.

6.14.   **Mandatory Arbitration.**   In the event there is an unresolved legal dispute between the parties and/or any of their respective officers, directors, partners, employees, agents, affiliates or other representatives that involves legal rights or remedies arising from this Agreement, the parties agree to submit their dispute to binding arbitration under the authority of the Federal Arbitration Act; provided, however, that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and /or preliminary injunctive relief in connection with any confidentiality covenants or agreements binding on the other party, with related expedited discovery for the parties, in a court of law, and thereafter, require arbitration of all issues of final relief.   The arbitration will be conducted by the American Arbitration Association, or another mutually agreeable arbitration service.   A panel of three arbitrators will preside over the arbitration and will together deliberate, decide and issue the final award. The arbitrators shall be duly licensed to practice law in the state of Texas.   The discovery process shall be limited to the following:  Each side shall be permitted no more than (i) two party depositions of six hours each, each deposition to be taken pursuant to the Texas Rules of Civil Procedure; (ii) one non-party deposition of six hours; (iii) twenty-five interrogatories; (iv) twenty-five requests for admissions; (v) ten request for production (in response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents, including electronic documents); and (vi) one request for disclosure pursuant to the Texas Rules of Civil Procedure.   Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted.   The arbitrators shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. The arbitrators will not have the authority to render a decision that contains an outcome based on error of state or federal law or to fashion a cause of action or remedy not otherwise provided for under applicable state or federal law.   Any dispute over whether the arbitrators have failed to comply with the foregoing will be resolved by summary judgment in a court of law.   In all other respects, the arbitration process will be conducted in accordance with the American Arbitration Association's dispute resolution rules or other mutually agreeable arbitration services rules.   All proceedings shall be conducted in Dallas, Texas or another mutually agreeable site.   Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and /or travel, subject to a final arbitration award on who should bear costs and fees.   The duty to arbitrate described above shall survive the termination of this Agreement.   Except as otherwise provided above, the parties hereby waive trial in a court of law or by jury.  All other rights, remedies, statutes of limitation and defenses applicable to claims asserted in a court of law will apply in the arbitration.

26

003364
HCMLPHMIT00002669

*Remainder of Page intentionally Left Blank.*
*Signature Page Follows.*

003365

HCMLPHMIT00002670

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year first written above.

GENERAL PARTNER:

**STRAND ADVISORS, INC.,**
a Delaware corporation

By: _____
      James D. Dondero,
      President

LIMITED PARTNERS:

**THE DUGABOY INVESTMENT TRUST**

By: _____
Name: Nancy M. Dondero
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1**

By: _____
Name: Lawrence Tonomura
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2**

By: _____
Name: Lawrence Tonomura
Its:    Trustee

**MARK K. OKADA**

_____
Mark K. Okada

*Signature Page to Fourth Amended and Restated
Agreement of Limited Partnership*

003366

HCMLPHMIT00002671

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date and year first written above.

GENERAL PARTNER:

**STRAND ADVISORS, INC.,**
a Delaware corporation

By: _____

       James D. Dondero,
       President


LIMITED PARTNERS:

**THE DUGABOY INVESTMENT TRUST**


By: _____
Name: Nancy M. Dondero
Its:    Trustee

**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #1**

By: _____
Name: Lawrence Tonomura
Its:    Trustee


**THE MARK AND PAMELA OKADA FAMILY
TRUST – EXEMPT TRUST #2**

By: _____
Name: Lawrence Tonomura
Its:    Trustee


**MARK K. OKADA**


_____
Mark K. Okada


*Signature Page to Fourth Amended and Restated
Agreement of Limited Partnership*

**003367**
HCMLPHMIT00002672

**HUNTER MOUNTAIN INVESTMENT TRUST**
By: Beacon Mountain LLC, Administrator

By: _____
Name: John Honis
Its:    President

*Signature Page to Fourth Amended and Restated*
*Agreement of Limited Partnership*

003368

HCMLPHMIT00002673

## EXHIBIT A

| | Percentage Interest | |
|---|---|---|
| CLASS A PARTNERS | By Class | Effective % |
| GENERAL PARTNER: | | |
| Strand Advisors | 0.5573% | 0.2508% |
| LIMITED PARTNERS: | | |
| The Dugaboy Investment Trust | 74.4426% | 0.1866% |
| Mark K. Okada | 19.4268% | 0.0487% |
| The Mark and Pamela Okada Family Trust - Exempt Trust #1 | 3.9013% | 0.0098% |
| The Mark and Pamela Okada Family Trust - Exempt Trust #2 | 1.6720% | 0.0042% |
| Total Class A Percentage Interest | 100.0000% | 0.500% |
| CLASS B LIMITED PARTNERS | | |
| Hunter Mountain Investment Trust | 100.0000% | 55.0000% |
| CLASS C LIMITED PARTNERS | | |
| Hunter Mountain Investment Trust | 100.0000% | 44.500% |
| PROFIT AND LOSS AMONG CLASSES | | |
| Class A Partners | 0.5000% | |
| Class B Partners | 55.0000% | |
| Class C Partners | 44.5000% | |

HCMLPHMIT00002674

## EXHIBIT B

## ADDENDUM
## TO THE
## FOURTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP
## OF
## HIGHLAND CAPITAL MANAGEMENT, L.P.

THIS ADDENDUM (this "**Addendum**") to that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, to be effective as of December 24, 2015, as amended from time to time (the "Agreement"), is made and entered into as of the ___ day of _____, 20_, by and between Strand Advisors, Inc., as the sole General Partner (the "**General Partner**") of Highland Capital Management, L.P. (the "**Partnership**") and _____ ("_____") (except as otherwise provided herein, all capitalized terms used herein shall have the meanings set forth in the Agreement).

### RECITALS:

WHEREAS, the General Partner, in its sole and unfettered discretion, and without the consent of any Limited Partner, has the authority under (i) Section 4.4 of the Agreement to admit Additional Limited Partners, (ii) Section 4.6 of the Agreement to admit Substitute Limited Partners and (iii) Section 6.1 of the Agreement to amend the Agreement;

WHEREAS, the General Partner desires to admit _____ as a Class __ Limited Partner holding a __% Percentage Interest in the Partnership as of the date hereof;

WHEREAS, _____ desires to become a Class __ Limited Partner and be bound by the terms and conditions of the Agreement; and

WHEREAS, the General Partner desires to amend the Agreement to add _____ as a party thereto.

### AGREEMENT:

RESOLVED, as a condition to receiving a Partnership Interest in the Partnership, _____ acknowledges and agrees that he/she/it (i) has received and read a copy of the Agreement, (ii) shall be bound by the terms and conditions of the Agreement; and (iii) shall promptly execute an addendum to the Second Amended Buy-Sell and Redemption Agreement; and be it

FURTHER RESOLVED, the General Partner hereby amends the Agreement to add _____ as a Limited Partner, and the General Partner shall attach this Addendum to the Agreement and make it a part thereof; and be it

FURTHER RESOLVED, this Addendum may be executed in any number of counterparts, all of which together shall constitute one Addendum binding on all the parties hereto, notwithstanding that all such parties are not signatories to the original or the same counterpart.

003370

HCMLPHMIT00002675

IN WITNESS WHEREOF, the undersigned have executed this Addendum as of the day and year above written.

GENERAL PARTNER:

**STRAND ADVISORS, INC.**

By: _____

    Name: _____

    Title: _____

NEW LIMITED PARTNER:

[_____]

AGREED AND ACCEPTED:

In consideration of the terms of this Addendum and the Agreement, in consideration of the Partnership's allowing the above signed Person to become a Limited Partner of the Partnership, and for other good and valuable consideration receipt of which is hereby acknowledged, the undersigned shall be bound by the terms and conditions of the Agreement as though a party thereto.

SPOUSE OF NEW LIMITED PARTNER:

[_____]

HCMLPHMIT00002676

# EXHIBIT 115

| Form **1065** | **U.S. Return of Partnership Income** | OMB No. 1545-0123 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | For calendar year 2018, or tax year beginning _____, 2018, ending ____, 20 ____. ▶ **Go to** *www.irs.gov/Form1065* **for instructions and the latest information.** | **2018** |

| **A** Principal business activity | Name of partnership | **D** Employer identification number |
|---|---|---|
| INVESTMENT MANAGEMENT | HIGHLAND CAPITAL MANAGEMENT, LP | 75-2716725 |
| **B** Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | **E** Date business started |
| INVESTMENT SERVICES | | 300 CRESCENT COURT, SUITE 700 | 07/07/1997 |
| **C** Business code number | | City or town, state or province, country, and ZIP or foreign postal code | **F** Total assets (see instructions) |
| 523900 | | DALLAS, TX  75201 | $  1,043,466,149. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☒ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return

**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year. ▶  6

**J** Check if Schedules C and M-3 are attached. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales. . . . . . . . . . . . . . | **1a** | 45,840,305. | |
| | **b** Returns and allowances . . . . . . . . . . . . | **1b** | | |
| | **c** Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . | | **1c** | 45,840,305. |
| | **2** Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . | | **2** | |
| | **3** Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . | | **3** | 45,840,305. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | | **4** | -17,273,319. |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)) . . . . . . . . . . . . | | **5** | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . | | **6** | |
| | **7** Other income (loss) (attach statement) . . . . . . . . . SEE STATEMENT 1 . | | **7** | 1,286,935. |
| | **8** Total income (loss). Combine lines 3 through 7 . . . . . . . . . . . . . . | | **8** | 29,853,921. |
| **Deductions** (see instructions for limitations) | **9** Salaries and wages (other than to partners) (less employment credits) . . . . . | | **9** | 33,449,969. |
| | **10** Guaranteed payments to partners . . . . . . . . . . . . . . . . . . | | **10** | |
| | **11** Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . | | **11** | 26,410. |
| | **12** Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . | | **12** | 6,583,982. |
| | **13** Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | **13** | 1,615,192. |
| | **14** Taxes and licenses . . . . . . . . . . . . . SEE STATEMENT 1 . | | **14** | 1,918,825. |
| | **15** Interest (see instructions) . . . . . . . . . . . SEE STATEMENT 1 . | | **15** | 1,674,962. |
| | **16a** Depreciation (if required, attach Form 4562) . . . | **16a** | 539,809. | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return | **16b** | | **16c** | 539,809. |
| | **17** Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . | | **17** | |
| | **18** Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . | | **18** | |
| | **19** Employee benefit programs . . . . . . . . . . . . . . . . . . . . | | **19** | 1,890,053. |
| | **20** Other deductions (attach statement) . . . . . . . . . . . . . . . . | | **20** | 23,266,179. |
| | **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 . . . | | **21** | 70,965,581. |
| **Tax and Payment** | **22** Ordinary business income (loss). Subtract line 21 from line 8 . . . . . . . . . | | **22** | -41,111,460. |
| | **23** Interest due under the look-back method - completed long-term contracts (attach Form 8697) . . | | **23** | |
| | **24** Interest due under the look-back method - income forecast method (attach Form 8866) . . . | | **24** | |
| | **25** BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . | | **25** | |
| | **26** Other taxes (see instructions) . . . . . . . . . . . . . . . . . . | | **26** | |
| | **27** Total balance due. Add lines 23 through 27 . . . . . . . . . . . . . . | | **27** | |
| | **28** Payment (see instructions) . . . . . . . . . . . . . . . . . . . | | **28** | |
| | **29** Amount owed. If line 28 is smaller than line 27, enter amount owed . . . . . . . | | **29** | |
| | **30** Overpayment. If line 28 is larger than line 27, enter overpayment . . . . . . . | | **30** | |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _(signature)_  Signature of partner or limited liability company member    ▶ 9-15-19  Date

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | TODD CRAWFORD | _(signature)_ Todd Crawford | 09/12/2019 | | P00848788 |
| | Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 | |
| | Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 HOUSTON, TX 77002-2591 | | | Phone no. 713-982-2000 | |

For Paperwork Reduction Act Notice, see separate instructions.
JSA  8P1010 2.000
I128CM  1216            V18-6.3F
Form **1065** (2018)

003373

HCMLPHMIT00001332

| Form **1065** | | | **U.S. Return of Partnership Income** | | | | OMB No. 1545-0123 |
|---|---|---|---|---|---|---|---|

Department of the Treasury
Internal Revenue Service

For calendar year 2018, or tax year beginning _____, 2018, ending _____, 20 _____.
▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

**2018**

| **A** Principal business activity | | Name of partnership | | **D** Employer identification number |
|---|---|---|---|---|
| INVESTMENT MANAGEMENT | | HIGHLAND CAPITAL MANAGEMENT, LP | | 75-2716725 |
| **B** Principal product or service | Type or Print | Number, street, and room or suite no. If a P.O. box, see instructions. | | **E** Date business started |
| INVESTMENT SERVICES | | 300 CRESCENT COURT, SUITE 700 | | 07/07/1997 |
| **C** Business code number | | City or town, state or province, country, and ZIP or foreign postal code | | **F** Total assets (see instructions) |
| 523900 | | DALLAS, TX 75201 | | $ 1,043,466,149. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return
**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶
**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year. ▶ 6
**J** Check if Schedules C and M-3 are attached ▶ ☒

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales | **1a** | 45,840,305. | |
| | **b** Returns and allowances | **1b** | | |
| | **c** Balance. Subtract line 1b from line 1a | | **1c** | 45,840,305. |
| | **2** Cost of goods sold (attach Form 1125-A) | | **2** | |
| | **3** Gross profit. Subtract line 2 from line 1c | | **3** | 45,840,305. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | | **4** | -17,273,319. |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)) | | **5** | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | **6** | |
| | **7** Other income (loss) (attach statement) SEE STATEMENT 1 | | **7** | 1,286,935. |
| | **8** Total income (loss). Combine lines 3 through 7 | | **8** | 29,853,921. |
| **Deductions** (see instructions for limitations) | **9** Salaries and wages (other than to partners) (less employment credits) | | **9** | 33,449,969. |
| | **10** Guaranteed payments to partners | | **10** | |
| | **11** Repairs and maintenance | | **11** | 26,410. |
| | **12** Bad debts | | **12** | 6,583,982. |
| | **13** Rent | | **13** | 1,615,192. |
| | **14** Taxes and licenses SEE STATEMENT 1 | | **14** | 1,918,825. |
| | **15** Interest (see instructions) SEE STATEMENT 1 | | **15** | 1,674,962. |
| | **16a** Depreciation (if required, attach Form 4562) **16a** 539,809. | | | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return **16b** | | **16c** | 539,809. |
| | **17** Depletion (**Do not deduct oil and gas depletion.**) | | **17** | |
| | **18** Retirement plans, etc. | | **18** | |
| | **19** Employee benefit programs | | **19** | 1,890,053. |
| | **20** Other deductions (attach statement) SEE STATEMENT 1 | | **20** | 23,266,179. |
| | **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 | | **21** | 70,965,381. |
| | **22** Ordinary business income (loss). Subtract line 21 from line 8 | | **22** | -41,111,460. |
| **Tax and Payment** | **23** Interest due under the look-back method - completed long-term contracts (attach Form 8697) | | **23** | |
| | **24** Interest due under the look-back method - income forecast method (attach Form 8866) | | **24** | |
| | **25** BBA AAR imputed underpayment (see instructions) | | **25** | |
| | **26** Other taxes (see instructions) | | **26** | |
| | **27** Total balance due. Add lines 23 through 27 | | **27** | |
| | **28** Payment (see instructions) | | **28** | |
| | **29** Amount owed. If line 28 is smaller than line 27, enter amount owed | | **29** | |
| | **30** Overpayment. If line 28 is larger than line 27, enter overpayment | | **30** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____   ▶ _____
Signature of partner or limited liability company member        Date

May the IRS discuss this return with the preparer shown below? See instructions.
☒ Yes ☐ No

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | Todd Crawford | 09/12/2019 | | P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 HOUSTON, TX 77002-2591 | | | | Phone no. 713-982-2000 |

**For Paperwork Reduction Act Notice, see separate instructions.**

JSA  8P1010 2.000
1128CM   1216

V18-6.3F

Form **1065** (2018)

003374

HCMLPHMIT00001336

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

**2018**

For calendar year 2018, or tax year

beginning ___/___/ 2018   ending ___/___/___

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

## Partner's Share of Income, Deductions, Credits, etc.

**➤ See back of form and separate instructions.**

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (103,105) | 15 | Credits |
| 2 | Net rental real estate income (loss) 10,876 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | A | VARIOUS |
| 5 | Interest income 25,256 | B | 213,008 |
| 6a | Ordinary dividends 10,556 | C | 203,560 |
| 6b | Qualified dividends 1,549 | G | 9,448 |
| 6c | Dividend equivalents | I | 25,111 |
| 7 | Royalties 2,603 | J | 238,918 |
| 8 | Net short-term capital gain (loss) (80,700) | * | SEE STMT |
| 9a | Net long-term capital gain (loss) 68,910 | 17 | Alternative minimum tax (AMT) items |
| 9b | Collectibles (28%) gain (loss) | A | 7 |
| 9c | Unrecaptured section 1250 gain | D | 5,475 |
| 10 | Net section 1231 gain (loss) 12,132 | * | SEE STMT |
| 11 | Other income (loss) A 4,351 | 18 | Tax-exempt income and nondeductible expenses |
| | I 5,119 | C | 9,036 |
| 12 | Section 179 deduction | 19 | Distributions |
| 13 | Other deductions A 89 | A | 12,637 |
| | H 20,910 | 20 | Other information |
| | * SEE STMT | A | 42,819 |
| 14 | Self-employment earnings (loss) | B | (2,330) |
| | | T | 742 |
| | | * | SEE STMT |

*See attached statement for additional information.

## Part I   Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's identifying number
95-4440863

**F** Partner's name, address, city, state, and ZIP code
STRAND ADVISORS, INC
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?   S - CORPORATION

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.250795 % | 0.250795 % |
| Loss | NONE % | NONE % |
| Capital | 0.250795 % | 0.250795 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 467,696 | $ 310,721 |
| Qualified nonrecourse financing | $ NONE | $ 102,634 |
| Recourse | $ 150,598,314 | $ 136,641,607 |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account | $ 1,129,023 |
| Capital contributed during the year | $ |
| Current year increase (decrease) | $ (183,519) |
| Withdrawals & distributions | $ ( 12,637 ) |
| Ending capital account | $ 932,867 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

For IRS Use Only

**For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   Cat. No. 11394R   Schedule K-1 (Form 1065) 2018

Partner #1

003375

HCMLPHMIT00001414

| | | |
|---|---|---|
| **Schedule K-1** | ☐ Final K-1    ☐ Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**20 18**

For calendar year 2018, or tax year

beginning ___/___/ 2018    ending ___/___/___

**Partner's Share of Income, Deductions,**
**Credits, etc.**    ▶ See back of form and separate instructions.

### Part I   Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II   Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
MARK OKADA
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner? INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.048684 % | 0.048684 % |
| Loss | NONE % | NONE % |
| Capital | 0.048684 % | 0.048684 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse   $ | 90,788 | $ 60,316 |
| Qualified nonrecourse financing   $ | NONE | $ 19,923 |
| Recourse   $ | 12,000,000 | $ 12,000,000 |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account   $ | 219,163 |
| Capital contributed during the year   $ | |
| Current year increase (decrease)   $ | (35,622) |
| Withdrawals & distributions   $( | 2,455) |
| Ending capital account   $ | 181,086 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes    ☒ No
If "Yes," attach statement (see instructions)

### Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) (20,015) | | 15 | Credits |
| 2 | Net rental real estate income (loss) 2,111 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| | | | A | VARIOUS |
| 4 | Guaranteed payments | | B | 41,349 |
| 5 | Interest income 4,903 | | C | 39,515 |
| 6a | Ordinary dividends 2,049 | | G | 1,834 |
| 6b | Qualified dividends 301 | | I | 4,875 |
| 6c | Dividend equivalents | | J | 46,378 |
| 7 | Royalties 505 | | * | SEE STMT |
| 8 | Net short-term capital gain (loss) (15,665) | | 17 | Alternative minimum tax (AMT) items |
| 9a | Net long-term capital gain (loss) 13,377 | | A | 1 |
| 9b | Collectibles (28%) gain (loss) | | D | 1,063 |
| 9c | Unrecaptured section 1250 gain | | * | SEE STMT |
| 10 | Net section 1231 gain (loss) 2,355 | | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | | C | 1,754 |
| A | 845 | | | |
| I | 994 | | 19 | Distributions |
| 12 | Section 179 deduction | | A | 2,455 |
| 13 | Other deductions | | 20 | Other information |
| A | 17 | | A | 8,312 |
| H | 4,059 | | B | (452) |
| * | SEE STMT | | T | 144 |
| 14 | Self-employment earnings (loss) | | * | SEE STMT |

*See attached statement for additional information.

For IRS Use Only

---

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2018

P10180B265567 08/21/2019 14:26

Partner # 2

003376

HCMLPHMIT00001419

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2018**

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123

For calendar year 2018, or tax year

beginning ___ / ___ / 2018   ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.**   ➤ See back of form and separate instructions.

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

| No. | Item | Amount | No. | Item | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | (4,019) | 15 | Credits | |
| 2 | Net rental real estate income (loss) | 424 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions | |
| | | | A | | VARIOUS |
| 4 | Guaranteed payments | | B | | 8,304 |
| 5 | Interest income | 985 | C | | 7,936 |
| 6a | Ordinary dividends | 412 | G | | 368 |
| 6b | Qualified dividends | 60 | I | | 979 |
| 6c | Dividend equivalents | | J | | 9,314 |
| 7 | Royalties | 101 | * | | SEE STMT |
| 8 | Net short-term capital gain (loss) | (3,146) | 17 | Alternative minimum tax (AMT) items | |
| 9a | Net long-term capital gain (loss) | 2,686 | A | | |
| | | | D | | 213 |
| 9b | Collectibles (28%) gain (loss) | | * | | SEE STMT |
| 9c | Unrecaptured section 1250 gain | | 18 | Tax-exempt income and nondeductible expenses | |
| 10 | Net section 1231 gain (loss) | 473 | C | | 352 |
| 11 | Other income (loss) | | | | |
| A | | 170 | | | |
| I | | 200 | 19 | Distributions | |
| | | | A | | 494 |
| 12 | Section 179 deduction | | 20 | Other information | |
| 13 | Other deductions | | A | | 1,670 |
| A | | 3 | | | |
| H | | 815 | B | | (91) |
| * | | SEE STMT | T | | 29 |
| 14 | Self-employment earnings (loss) | | * | | SEE STMT |

## Part I   Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's identifying number
74-6494106

**F** Partner's name, address, city, state, and ZIP code
THE MARK AND PAMELA OKADA
FAMLY TRUST, EXEMPT TRUST #1
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.009777 % | 0.009777 % |
| Loss | NONE % | NONE % |
| Capital | 0.009777 % | 0.009777 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse $ | 18,232 | 12,113 |
| Qualified nonrecourse financing $ | NONE | 4,001 |
| Recourse $ | NONE | NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account $ | 44,012 |
| Capital contributed during the year $ | |
| Current year increase (decrease) $ | (7,153) |
| Withdrawals & distributions $ | (494) |
| Ending capital account $ | 36,365 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes", attach statement (see instructions)

*See attached statement for additional information.

For IRS Use Only

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

**20 18**

For calendar year 2018, or tax year

beginning __/__/ 2018   ending __/__/__

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

## Partner's Share of Income, Deductions, Credits, etc.

➤ See back of form and separate instructions.

### Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's identifying number
68-6203494

**F** Partner's name, address, city, state, and ZIP code
THE MARK AND PAMELA OKADA
FAMLY TRUST, EXEMPT TRUST #2
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.004190 % | 0.004190 % |
| Loss | NONE % | NONE % |
| Capital | 0.004190 % | 0.004190 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse  $ | 7,814 | $ 5,191 |
| Qualified nonrecourse financing  $ | NONE | $ 1,715 |
| Recourse  $ | NONE | $ NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account  $ | 18,862 |
| Capital contributed during the year  $ | |
| Current year increase (decrease)  $ | (3,065) |
| Withdrawals & distributions  $ ( | 212 ) |
| Ending capital account  $ | 15,585 |

☐ Tax basis    ☐ GAAP    ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (1,723) |
| 2 | Net rental real estate income (loss) | 182 |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 422 |
| 6a | Ordinary dividends | 176 |
| 6b | Qualified dividends | 26 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 43 |
| 8 | Net short-term capital gain (loss) | (1,348) |
| 9a | Net long-term capital gain (loss) | 1,151 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | 203 |
| 11 | Other income (loss) A | 73 |
| | I | 85 |
| 12 | Section 179 deduction | |
| 13 | Other deductions A | 1 |
| | H | 349 |
| | * | SEE STMT |
| 14 | Self-employment earnings (loss) | |

| Box | Description | Amount |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions A | VARIOUS |
| | B | 3,559 |
| | C | 3,401 |
| | G | 158 |
| | I | 420 |
| | J | 3,992 |
| | * | SEE STMT |
| 17 | Alternative minimum tax (AMT) items A | |
| | D | 91 |
| | * | SEE STMT |
| 18 | Tax-exempt income and nondeductible expenses C | 151 |
| 19 | Distributions A | 212 |
| 20 | Other information A | 715 |
| | B | (39) |
| | T | 12 |
| | * | SEE STMT |

*See attached statement for additional information.

For IRS Use Only

| | | |
|---|---|---|
| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2018**<br>For calendar year 2018, or tax year<br>beginning / / 2018 ending / / | ☐ Final K-1 ☐ Amended K-1 OMB No. 1545-0123 |

**Partner's Share of Income, Deductions, Credits, etc.** ▶ See back of form and separate instructions.

## Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II  Information About the Partner

**E** Partner's identifying number
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

**F** Partner's name, address, city, state, and ZIP code
THE DUGABOY INVESTMENT TRUST
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☐ General partner or LLC member-manager ☒ Limited partner or other LLC member

**H** ☒ Domestic partner ☐ Foreign partner

**I1** What type of entity is this partner? TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.186554 % | 0.186554 % |
| Loss | NONE % | NONE % |
| Capital | 0.186554 % | 0.186554 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 347,896 | $ 231,130 |
| Qualified nonrecourse financing . . $ | NONE | $ 76,344 |
| Recourse . . $ | 35,000,000 | $ 35,000,000 |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account . . . $ | 839,824 |
| Capital contributed during the year . $ | |
| Current year increase (decrease) . . $ | (136,505) |
| Withdrawals & distributions . . $ ( | 9,406 ) |
| Ending capital account . . . . $ | 693,914 |

☐ Tax basis ☐ GAAP ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes ☒ No
If "Yes," attach statement (see instructions)

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (76,695) |
| 2 | Net rental real estate income (loss) | 8,090 |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 18,786 |
| 6a | Ordinary dividends | 7,852 |
| 6b | Qualified dividends | 1,153 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 1,936 |
| 8 | Net short-term capital gain (loss) | (60,028) |
| 9a | Net long-term capital gain (loss) | 51,259 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | 9,024 |
| 11 | Other income (loss) | |
| A | | 3,236 |
| I | | 3,808 |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 66 |
| H | | 15,554 |
| * | | SEE STMT |
| 14 | Self-employment earnings (loss) | |
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 158,446 |
| C | | 151,418 |
| G | | 7,028 |
| I | | 18,679 |
| J | | 177,719 |
| * | | SEE STMT |
| 17 | Alternative minimum tax (AMT) items | |
| A | | 5 |
| D | | 4,073 |
| * | | SEE STMT |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 6,722 |
| 19 | Distributions | |
| A | | 9,406 |
| 20 | Other information | |
| A | | 31,850 |
| B | | (1,733) |
| T | | 552 |
| * | | SEE STMT |

*See attached statement for additional information.

For IRS Use Only

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

beginning ___ / ___ / **2018**   ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.**   ➤ See back of form and separate instructions.

**20 18**

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123

For calendar year 2018, or tax year

| **Part III** | **Partner's Share of Current Year Income, Deductions, Credits, and Other Items** |
|---|---|

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| | (40,905,903) | | |
| 2 | Net rental real estate income (loss) | | |
| | 4,314,785 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| | | A | VARIOUS |
| 4 | Guaranteed payments | | |
| | | B | 84,508,257 |
| 5 | Interest income | | |
| | 10,019,919 | C | 80,759,899 |
| 6a | Ordinary dividends | | |
| | 4,187,952 | G | 3,748,358 |
| 6b | Qualified dividends | | |
| | 614,699 | I | 9,962,559 |
| 6c | Dividend equivalents | | |
| | | J | 94,787,981 |
| 7 | Royalties | | |
| | 1,032,631 | * | SEE STMT |
| 8 | Net short-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| | (32,016,601) | A | 2,588 |
| 9a | Net long-term capital gain (loss) | | |
| | 27,339,116 | D | 2,172,179 |
| 9b | Collectibles (28%) gain (loss) | | |
| | | * | SEE STMT |
| 9c | Unrecaptured section 1250 gain | 18 | Tax-exempt income and nondeductible expenses |
| | | C | 3,585,104 |
| 10 | Net section 1231 gain (loss) | | |
| | 4,813,197 | | |
| 11 | Other income (loss) | | |
| A | 1,726,088 | | |
| I | 2,030,832 | 19 | Distributions |
| | | A | 5,015,296 |
| 12 | Section 179 deduction | | |
| | | 20 | Other information |
| 13 | Other deductions | A | 16,987,726 |
| A | 35,183 | | |
| H | 8,295,974 | B | (924,462) |
| * | SEE STMT | T | 294,297 |
| 14 | Self-employment earnings (loss) | | |
| | | * | SEE STMT |

*See attached statement for additional information.

## Partner's Share of Income, Deductions, Credits, etc.

| **Part I** | **Information About the Partnership** |
|---|---|

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return
OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

| **Part II** | **Information About the Partner** |
|---|---|

**E** Partner's identifying number
47-5145562

**F** Partner's name, address, city, state, and ZIP code
HUNTER MOUNTAIN INVESTMENT TRUST
F/B/O BEACON MOUNTAIN, LLC
87 RAILROAD PLACE, SUITE 403
SARATOGA SPRINGS, NY 12866

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I1** What type of entity is this partner?   TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 99.500000 % | 99.500000 % |
| Loss | NONE % | NONE % |
| Capital | 99.500000 % | 99.500000 % |

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 185,553,010 | $ 123,274,967 |
| Qualified nonrecourse financing . . $ | NONE | $ 40,718,835 |
| Recourse . . $ | NONE | $ NONE |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account . . . $ | 447,926,317 |
| Capital contributed during the year . $ | |
| Current year increase (decrease) . . $ | (72,807,286) |
| Withdrawals & distributions . . $ ( | 5,015,296 ) |
| Ending capital account . . . $ | 370,103,735 |

☐ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☒ Other (explain) BOOK

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If "Yes," attach statement (see instructions)

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Cat. No. 11394R   Schedule K-1 (Form 1065) 2018

P10180B265567 08/21/2019 14:26

Partner # 6

003380

HCMLPHMIT00001439

For IRS Use Only

# EXHIBIT 116

003381

Form **1065**

Department of the Treasury
Internal Revenue Service

## U.S. Return of Partnership Income

For calendar year 2019, or tax year beginning _____, 2019, ending _____, 20 ____

▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

OMB No. 1545-0123

**2019**

| | | | |
|---|---|---|---|
| **A** Principal business activity<br><br>INVESTMENT MANAGEMENT | Name of partnership<br><br>HIGHLAND CAPITAL MANAGEMENT, LP | | **D** Employer identification number<br><br>75-2716725 |
| **B** Principal product or service<br><br>INVESTMENT SERVICES | **Type or Print** | Number, street, and room or suite no. If a P.O. box, see instructions.<br><br>300 CRESCENT COURT, SUITE 700 | **E** Date business started<br><br>07/07/1997 |
| **C** Business code number<br><br>523900 | | City or town, state or province, country, and ZIP or foreign postal code<br><br>DALLAS, TX 75201 | **F** Total assets (see instructions)<br><br>$ 1,015,968,222. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return

**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶ _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 6

**J** Check if Schedules C and M-3 are attached. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**K** Check if Partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

### Income

| | | | |
|---|---|---|---|
| **1a** | Gross receipts or sales . . . . . . . . . . . . . . . . | **1a** | 32,009,311. |
| **b** | Returns and allowances . . . . . . . . . . . . . . . . | **1b** | |
| **c** | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . | **1c** | 32,009,311. |
| **2** | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . | **2** | |
| **3** | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . | **3** | 32,009,311. |
| **4** | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | **4** | -3,799,517. |
| **5** | Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) . . . . . . . . . . | **5** | |
| **6** | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . | **6** | |
| **7** | Other income (loss) (attach statement) . . . . . . . . . . . SEE. STATEMENT. 1. | **7** | -2,886,805. |
| **8** | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . . | **8** | 25,322,989. |

### Deductions (see instructions for limitations)

| | | | |
|---|---|---|---|
| **9** | Salaries and wages (other than to partners) (less employment credits) . . . . . . . . | **9** | 28,941,198. |
| **10** | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . . . . | **10** | |
| **11** | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** | 18,389. |
| **12** | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | 5,139,915. |
| **13** | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | 1,377,540. |
| **14** | Taxes and licenses . . . . . . . . . . . . . . . . . . . SEE. STATEMENT. 1. | **14** | 1,761,610. |
| **15** | Interest (see instructions) . . . . . . . . . . . . . . . SEE. STATEMENT. 1. | **15** | 1,910,445. |
| **16a** | Depreciation (if required, attach Form 4562) . . . . . . . | **16a** | 423,258. | |
| **b** | Less depreciation reported on Form 1125-A and elsewhere on return | **16b** | | **16c** | 423,258. |
| **17** | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . . . . . | **17** | |
| **18** | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18** | |
| **19** | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | 1,808,577. |
| **20** | Other deductions (attach statement) . . . . . . . . . . . . SEE. STATEMENT. 1. | **20** | 15,611,953. |
| **21** | Total deductions. Add the amounts shown in the far right column for lines 9 through 20 . | **21** | 56,992,885. |
| **22** | **Ordinary business income (loss).** Subtract line 21 from line 8 . . . . . . . . . . | **22** | -31,669,896. |

### Tax and Payment

| | | | |
|---|---|---|---|
| **23** | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | **23** | |
| **24** | Interest due under the look-back method - income forecast method (attach Form 8866) . . . . | **24** | |
| **25** | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . . . . | **25** | |
| **26** | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . | **26** | |
| **27** | **Total balance due.** Add lines 23 through 26 . . . . . . . . . . . . . . . . . . | **27** | |
| **28** | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . | **28** | |
| **29** | Amount owed. If line 28 is smaller than line 27, enter amount owed . . . . . . . . . | **29** | |
| **30** | Overpayment. If line 28 is larger than line 27, enter overpayment . . . . . . . . . . | **30** | |

### Sign Here

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _Signature of partner or limited liability company member_     ▶ **9/10/20** Date

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

### Paid Preparer Use Only

| | | | |
|---|---|---|---|
| Print/Type preparer's name<br>TODD CRAWFORD | Preparer's signature<br>T.W. Crawford | Date<br>9/6/2020 | Check ☐ if self-employed | PTIN<br>P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500<br>HOUSTON, TX 77002-2591 | | | Phone no.<br>713-982-2000 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1065** (2019)

JSA  9P1010 1.000

1128CM   1216          V19-6.4F

003382

HCMLPHMIT00001762

**Form 1065**

**U.S. Return of Partnership Income**

Department of the Treasury
Internal Revenue Service

For calendar year 2019, or tax year beginning _____, 2019, ending _____, 20 ____.

▶ Go to *www.irs.gov/Form1065* for instructions and the latest information.

**2019**

OMB No. 1545-0123

| | | |
|---|---|---|
| **A** Principal business activity<br>INVESTMENT MANAGEMENT | Name of partnership<br>HIGHLAND CAPITAL MANAGEMENT, LP | **D** Employer identification number<br>75-2716725 |
| **B** Principal product or service<br>INVESTMENT SERVICES | **Type or Print** Number, street, and room or suite no. If a P.O. box, see instructions.<br>300 CRESCENT COURT, SUITE 700 | **E** Date business started<br>07/07/1997 |
| **C** Business code number<br>523900 | City or town, state or province, country, and ZIP or foreign postal code<br>DALLAS, TX 75201 | **F** Total assets (see instructions)<br>$ 1,015,968,222. |

**G** Check applicable boxes: **(1)** ☐ Initial return **(2)** ☒ Final return **(3)** ☐ Name change **(4)** ☐ Address change **(5)** ☐ Amended return

**H** Check accounting method: **(1)** ☐ Cash **(2)** ☒ Accrual **(3)** ☐ Other (specify) ▶

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ 6

**J** Check if Schedules C and M-3 are attached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☒

**K** Check if Partnership: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 22 below. See instructions for more information.

**Income**

| | | | |
|---|---|---|---:|
| **1a** | Gross receipts or sales . . . . . . . . . . . . . . . . | **1a** 32,009,311. | |
| **b** | Returns and allowances . . . . . . . . . . . . . . . | **1b** | |
| **c** | Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . . . . . . . . . | **1c** | 32,009,311. |
| **2** | Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . . . . . . . . . | **2** | |
| **3** | Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . . . . . . . . . | **3** | 32,009,311. |
| **4** | Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) STMT. 1 | **4** | −3,799,517. |
| **5** | Net farm profit (loss) (attach Schedule F (Form 1040 or 1040-SR)) . . . . . . . . . . . . | **5** | |
| **6** | Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797) . . . . . . . . . . . . | **6** | |
| **7** | Other income (loss) (attach statement) . . . . . . . . . . SEE STATEMENT 1 | **7** | −2,886,805. |
| **8** | **Total income (loss).** Combine lines 3 through 7 . . . . . . . . . . . . . . . . . . | **8** | 25,322,989. |

**Deductions** (see instructions for limitations)

| | | | |
|---|---|---|---:|
| **9** | Salaries and wages (other than to partners) (less employment credits) . . . . . . . . . . . | **9** | 28,941,198. |
| **10** | Guaranteed payments to partners . . . . . . . . . . . . . . . . . . . . . . . . . | **10** | |
| **11** | Repairs and maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **11** | 18,389. |
| **12** | Bad debts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **12** | 5,139,915. |
| **13** | Rent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **13** | 1,377,540. |
| **14** | Taxes and licenses . . . . . . . . . . . . . . . . . . . . . SEE STATEMENT 1 | **14** | 1,761,610. |
| **15** | Interest (see instructions) . . . . . . . . . . . . . . . . . SEE STATEMENT 1 | **15** | 1,910,445. |
| **16a** | Depreciation (if required, attach Form 4562) . . . . . . . | **16a** 423,258. | |
| **b** | Less depreciation reported on Form 1125-A and elsewhere on return | **16b** | |
| | | **16c** | 423,258. |
| **17** | Depletion (**Do not deduct oil and gas depletion.**) . . . . . . . . . . . . . . . . . | **17** | |
| **18** | Retirement plans, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18** | |
| **19** | Employee benefit programs . . . . . . . . . . . . . . . . . . . . . . . . . . . | **19** | 1,808,577. |
| **20** | Other deductions (attach statement) . . . . . . . . . . . . SEE STATEMENT 1 | **20** | 15,611,953. |
| **21** | **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 . . | **21** | 56,992,885. |
| **22** | Ordinary business income (loss). Subtract line 21 from line 8 . . . . . . . . . . . . . | **22** | −31,669,896. |

**Tax and Payment**

| | | | |
|---|---|---|---:|
| **23** | Interest due under the look-back method - completed long-term contracts (attach Form 8697) . | **23** | |
| **24** | Interest due under the look-back method - income forecast method (attach Form 8866) . . . . | **24** | |
| **25** | BBA AAR imputed underpayment (see instructions) . . . . . . . . . . . . . . . . . | **25** | |
| **26** | Other taxes (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . | **26** | |
| **27** | **Total balance due.** Add lines 23 through 26 . . . . . . . . . . . . . . . . . . . | **27** | |
| **28** | Payment (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . | **28** | |
| **29** | **Amount owed.** If line 28 is smaller than line 27, enter amount owed . . . . . . . . . . | **29** | |
| **30** | **Overpayment.** If line 28 is larger than line 27, enter overpayment . . . . . . . . . . . | **30** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than partner or limited liability company member) is based on all information of which preparer has any knowledge.

▶ _____ Signature of partner or limited liability company member   Date _____

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name<br>TODD CRAWFORD | Preparer's signature<br>*Todd Crawford* | Date<br>9/6/2020 | Check ☐ if self-employed   PTIN<br>P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500<br>HOUSTON, TX 77002-2591 | | | Phone no.<br>713-982-2000 |

For Paperwork Reduction Act Notice, see separate instructions.

JSA   9P1010 1.000

1128CM   1216

V19-6.4F

Form **1065** (2019)

003383

HCMLPHMIT00001766

Case 19-34054-sgj11 Doc 4255-116 Filed 06/20/25 Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K Document 35-11 Filed 06/24/25 Page 95 of 168 PageID 9640
Desc Exhibit 116 Page 25 of 39 Page 95 of 168 PageID 9640

| | |
|---|---|
| Schedule K-1 (Form 1065) | **2019** |
| Department of the Treasury Internal Revenue Service | |

☐ Final K-1  ☐ Amended K-1  OMB No. 1545-0123

**Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

For calendar year 2019, or tax year

beginning ___/___/2019  ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.

▶ See back of form and separate instructions.

### Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN if a disregarded entity. See inst.)
95-4440863

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
STRAND ADVISORS, INC
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☒ General partner or LLC member-manager  ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner  ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN ___  Name ___

**I1** What type of entity is this partner?  S CORPORATION

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.250795 % | 0.250795 % |
| Loss | NONE % | NONE % |
| Capital | 0.250795 % | 0.250795 % |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 310,721 | $ 294,988 |
| Qualified nonrecourse financing | $ 102,634 | $ 352,799 |
| Recourse | $ 136,641,607 | $ 211,263,413 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account | $ 932,867 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (46,485) |
| Other increase (decrease) (attach explanation) | $ 95 |
| Withdrawals & distributions | $ ( 9,351 ) |
| Ending capital account | $ 877,126 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No  If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ___ $
Ending ___ $

| Box | Description | Amount |
|---|---|---|
| 1 | Ordinary business income (loss) | (79,427) |
| 2 | Net rental real estate income (loss) | 59,057 |
| 3 | Other net rental income (loss) | |
| 4a | Guaranteed payments for services | |
| 4b | Guaranteed payments for capital | |
| 4c | Total guaranteed payments | |
| 5 | Interest income | 24,413 |
| 6a | Ordinary dividends | 6,149 |
| 6b | Qualified dividends | 332 |
| 6c | Dividend equivalents | |
| 7 | Royalties | 2,891 |
| 8 | Net short-term capital gain (loss) | (22,160) |
| 9a | Net long-term capital gain (loss) | 53,724 |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | 7 |
| 10 | Net section 1231 gain (loss) | (3,439) |
| 11 | Other income (loss) | |
| A | | 38 |
| * | SEE STMT | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| A | | 11 |
| H | | 14,992 |
| * | SEE STMT | |
| 14 | Self-employment earnings (loss) | |

| Box | Description | Amount |
|---|---|---|
| 15 | Credits | |
| 16 | Foreign transactions | |
| A | | VARIOUS |
| B | | 271,740 |
| C | | 275,214 |
| G | | (3,473) |
| I | | 19,783 |
| J | | 167,808 |
| * | SEE STMT | |
| 17 | Alternative minimum tax (AMT) items | |
| A | | (8) |
| D | | 5,336 |
| * | SEE STMT | |
| 18 | Tax-exempt income and nondeductible expenses | |
| C | | 14,285 |
| 19 | Distributions | |
| A | | 9,351 |
| 20 | Other information | |
| A | | 38,729 |
| B | | 623 |
| T | | 717 |
| * | SEE STMT | |

☐ 21  More than one activity for at-risk purposes*
☐ 22  More than one activity for passive activity purposes*

*See attached statement for additional information.

For IRS Use Only

| | | |
|---|---|---|
| | | ☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2019**

For calendar year 2019, or tax year

beginning ___/___/2019   ending ___/___/___

## Partner's Share of Income, Deductions, Credits, etc.
▶ See back of form and separate instructions.

### Part I Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
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

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
MARK OKADA
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN ___ Name ___

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.048684 % | 0.048684 % |
| Loss | NONE % | NONE % |
| Capital | 0.048684 % | 0.048684 % |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 60,316 | $ 57,262 |
| Qualified nonrecourse financing | $ 19,923 | $ 68,484 |
| Recourse | $ 12,000,000 | $ 12,000,000 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account | $ 181,086 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (9,024) |
| Other increase (decrease) (attach explanation) | $ 16,149 |
| Withdrawals & distributions | $ ( 17,945 ) |
| Ending capital account | $ 170,265 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning . . . . . $
Ending . . . . . $

### Part III Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss) (15,418) | | 15 | Credits |
| 2 | Net rental real estate income (loss) 11,464 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions |
| 4a | Guaranteed payments for services | | A | VARIOUS |
| 4b | Guaranteed payments for capital | | B | 52,750 |
| 4c | Total guaranteed payments | | C | 53,424 |
| | | | G | (674) |
| 5 | Interest income 4,739 | | I | 3,840 |
| 6a | Ordinary dividends 1,194 | | J | 32,575 |
| 6b | Qualified dividends 64 | | * | SEE STMT |
| 6c | Dividend equivalents | | 17 | Alternative minimum tax (AMT) items |
| | | | A | (2) |
| 7 | Royalties 561 | | D | 1,036 |
| 8 | Net short-term capital gain (loss) (4,302) | | * | SEE STMT |
| 9a | Net long-term capital gain (loss) 10,429 | | 18 | Tax-exempt income and nondeductible expenses |
| 9b | Collectibles (28%) gain (loss) | | C | 2,773 |
| 9c | Unrecaptured section 1250 gain 1 | | | |
| 10 | Net section 1231 gain (loss) (668) | | 19 | Distributions |
| 11 | Other income (loss) | | A | 17,945 |
| A | 7 | | | |
| * | SEE STMT | | 20 | Other information |
| 12 | Section 179 deduction | | A | 7,518 |
| 13 | Other deductions | | | |
| A | 2 | | B | 121 |
| H | 2,910 | | T | 139 |
| * | SEE STMT | | * | SEE STMT |
| 14 | Self-employment earnings (loss) | | | |

| | |
|---|---|
| 21 | ☐ More than one activity for at-risk purposes* |
| | ☐ More than one activity for passive activity purposes* |

*See attached statement for additional information.

*For IRS Use Only*

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Cat. No. 11394R   Schedule K-1 (Form 1065) 2019

P14409B330613 08/26/2020 18:00

Partner # 2

003385

HCMLPHMIT00001870

# Schedule K-1
## (Form 1065)

Department of the Treasury
Internal Revenue Service

2019

For calendar year 2019, or tax year

beginning ___/___/ 2019    ending ___/___/___

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) (3,096) | 15 | Credits |
| 2 | Net rental real estate income (loss) 2,302 | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| | | A | VARIOUS |
| 4a | Guaranteed payments for services | B | 10,594 |
| 4b | Guaranteed payments for capital | C | 10,729 |
| 4c | Total guaranteed payments | G | (135) |
| 5 | Interest income 952 | I | 771 |
| 6a | Ordinary dividends 240 | J | 6,542 |
| 6b | Qualified dividends 13 | * | SEE STMT |
| 6c | Dividend equivalents | 17 | Alternative minimum tax (AMT) items |
| | | A | NONE |
| 7 | Royalties 113 | D | 208 |
| 8 | Net short-term capital gain (loss) (864) | * | SEE STMT |
| 9a | Net long-term capital gain (loss) 2,094 | 18 | Tax-exempt income and nondeductible expenses |
| 9b | Collectibles (28%) gain (loss) | C | 557 |
| 9c | Unrecaptured section 1250 gain NONE | | |
| 10 | Net section 1231 gain (loss) (134) | 19 | Distributions |
| 11 | Other income (loss) | A | 366 |
| A | 1 | | |
| * | SEE STMT | 20 | Other information |
| 12 | Section 179 deduction | A | 1,510 |
| 13 | Other deductions | B | 24 |
| A | NONE | | |
| H | 584 | T | 28 |
| * | SEE STMT | * | SEE STMT |
| 14 | Self-employment earnings (loss) | | |

Partner's Share of Income, Deductions, Credits, etc.    ▶ See back of form and separate instructions.

### Part I — Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
74-6494106

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
THE MARK AND PAMELA OKADA
FAMILY TRUST, EXEMPT TRUST #1
3800 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager    ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner    ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN ___    Name ___

**I1** What type of entity is this partner?  TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.009777 % | 0.009777 % |
| Loss | NONE % | NONE % |
| Capital | 0.009777 % | 0.009777 % |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 12,113 | $ 11,499 |
| Qualified nonrecourse financing | $ 4,001 | $ 13,753 |
| Recourse | $ NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** Partner's Capital Account Analysis

| | |
|---|---|
| Beginning capital account | $ 36,365 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (1,812) |
| Other increase (decrease) (attach explanation) | $ 5 |
| Withdrawals & distributions | $ ( 366 ) |
| Ending capital account | $ 34,192 |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No  If "Yes," attach statement. See instructions.

**N** Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)
Beginning ___ $ ___
Ending ___ $ ___

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Cat. No. 11394R    Schedule K-1 (Form 1065) 2019

HCMLPHMIT00001875

| | |
|---|---|
| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2019**<br>For calendar year 2019, or tax year<br>beginning __/__/2019  ending __/__/__ |

☐ Final K-1  ☐ Amended K-1          OMB No. 1545-0123

**Partner's Share of Income, Deductions, Credits, etc.**  ▶ See back of form and separate instructions.

### Part I  Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
64-62039K9

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
THE MARF AND PAMELA OFADA
YAML# TRUST, EXEMPT TRUST 82
3400 WENTWOOD DRIVE
DALLAS, TX 75225

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____  Name _____

**I1** What type of entity is this partner?  TRUST

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 0.0091K0 % | 0.0091K0 % |
| Loss | NONE % | NONE % |
| Capital | 0.0091K0 % | 0.0091K0 % |

Check if decrease is due to sale or exchange of partnership interest  ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 5,1K1 | $ 9,K24 |
| Qualified nonrecourse financing | $ 1,715 | $ 5,4K9 |
| Recourse | $ NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L**  **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account | $ 15,545 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (777) |
| Other increase (decrease) (attach explanation) | $ 3 |
| Withdrawals & distributions | $ ( 157 ) |
| Ending capital account | $ 19,659 |

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No   If "Yes," attach statement. See instructions.

**N**  **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning _____ $ _____
Ending _____ $ _____

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| 1 | Ordinary business income (loss)<br>(1,327) | 15 | Credits | |
| 2 | Net rental real estate income (loss)<br>K47 | 16 | Foreign transactions | |
| 3 | Other net rental income (loss) | A | VARIOUS | |
| 4a | Guaranteed payments for services | B | 9,590 | |
| 4b | Guaranteed payments for capital | C | 9,5K4 | |
| 4c | Total guaranteed payments | G | (54) | |
| 5 | Interest income<br>904 | I | 331 | |
| 6a | Ordinary dividends<br>103 | J | 2,409 | |
| 6b | Qualified dividends<br>6 | * | SEE STMT | |
| 6c | Dividend equivalents | 17 | Alternative minimum tax (AMT) items | |
| 7 | Royalties<br>94 | A | NONE | |
| 8 | Net short-term capital gain (loss)<br>(370) | D | 4K | |
| 9a | Net long-term capital gain (loss)<br>4K4 | * | SEE STMT | |
| 9b | Collectibles (28%) gain (loss) | 18 | Tax-exempt income and nondeductible expenses | |
| 9c | Unrecaptured section 1250 gain<br>NONE | C | 23K | |
| 10 | Net section 1231 gain (loss)<br>(57) | 19 | Distributions | |
| 11 | Other income (loss) | A | 157 | |
| A | 1 | | | |
| * | SEE STMT | 20 | Other information | |
| 12 | Section 179 deduction | A | 697 | |
| 13 | Other deductions | B | 10 | |
| A | NONE | | | |
| H | 250 | T | 12 | |
| * | SEE STMT | * | SEE STMT | |
| 14 | Self-employment earnings (loss) | | | |

21 ☐ More than one activity for at-risk purposes*
22 ☐ More than one activity for passive activity purposes*
*See attached statement for additional information.

*For IRS Use Only*

For Paperwork Reduction Act Notice, see Instructions for Form 1065.    www.irs.gov/Form1065    Cat. No. 11394R    **Schedule K-1 (Form 1065) 2019**

**Schedule K-1**
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

2019

For calendar year 2019, or tax year

beginning ___ / ___ / 2019   ending ___ / ___ /

☐ Final K-1   ☐ Amended K-1   OMB No. 1545-0123

**Partner's Share of Income, Deductions, Credits, etc.**   ► See back of form and separate instructions.

## Part I   Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ► OGDEN

**D** ☐ Check if this is a publicly traded partnership (PTP)

## Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
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

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
9AMES DONDERO
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☒ If the partner is a disregarded entity (DE), enter the partner's:
TIN NONE   Name THE DUGABOY INVESTMENT TRUST

**I1** What type of entity is this partner?   INDI4 IDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 08IV655. % | 08IV655. % |
| Loss | NONE % | NONE % |
| Capital | 08IV655. % | 08IV655. % |

Check if decrease is due to sale or exchange of partnership interest . . ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse . . $ | 231,130 | $ 21(,.27 |
| Qualified nonrecourse financing . . $ | 76,3.. | $ 262,.30 |
| Recourse . . $ | 35,000,000 | $ 35,000,000 |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L**   **Partner's Capital Account Analysis**

Beginning capital account . . . $ _____ 6(,3,(1.
Capital contributed during the year . . $ _____
Current year net income (loss) . . . $ _____ )3.,57VE
Other increase (decrease) (attach explanation) $ _____ 1..,(00
Withdrawals & distributions . . . $ _____ (151,7V5)
Ending capital account . . . $ _____ 652,.51

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N**   **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning . . . . $ _____
Ending . . . . . $ _____

## Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | | |
| | )5(,0V1E | | |
| 2 | Net rental real estate income (loss) | | |
| | .3.(2( | | |
| 3 | Other net rental income (loss) | | |
| | | | |
| 4a | Guaranteed payments for services | | |
| | / | | |
| 4b | Guaranteed payments for capital | | |
| | | | |
| 4c | Total guaranteed payments | | |
| | | | |
| 5 | Interest income | | |
| | 1V,160 | | |
| 6a | Ordinary dividends | | |
| | .,57. | | |
| 6b | Qualified dividends | | |
| | 2.7 | | |
| 6c | Dividend equivalents | | |
| | | | |
| 7 | Royalties | | |
| | 2,151 | | |
| 8 | Net short-term capital gain (loss) | | |
| | )16,.V.E | | |
| 9a | Net long-term capital gain (loss) | | |
| | 3(.(63 | | |
| 9b | Collectibles (28%) gain (loss) | | |
| | | | |
| 9c | Unrecaptured section 1250 gain | | |
| | 5 | | |
| 10 | Net section 1231 gain (loss) | | |
| | )2,55VE | | |
| 11 | Other income (loss) | | |
| A | 2V | | |
| I | SEE STMT | | |
| 12 | Section 179 deduction | | |
| | | | |
| 13 | Other deductions | | |
| A | V | | |
| H | 11,152 | | |
| I | SEE STMT | | |
| 14 | Self-employment earnings (loss) | | |

| | | | |
|---|---|---|---|
| 15 | Credits | | |
| 16 | Foreign transactions | | |
| A | 4ARIOUS | | |
| / | 202,13. | | |
| C | 20.,71V | | |
| G | )2,5V.E | | |
| I | 1.,716 | | |
| 9 | 12.,V2. | | |
| I | SEE STMT | | |
| 17 | Alternative minimum tax (AMT) items | | |
| A | )6E | | |
| D | 3,(6( | | |
| | SEE STMT | | |
| 18 | Tax-exempt income and nondeductible expenses | | |
| C | 10,626 | | |
| 19 | Distributions | | |
| A | 151,7V5 | | |
| 20 | Other information | | |
| A | 2V,V0( | | |
| / | .63 | | |
| T | 53. | | |
| I | SEE STMT | | |
| 21 | ☐ More than one activity for at-risk purposes* | | |
| 22 | ☐ More than one activity for passive activity purposes* | | |

*See attached statement for additional information.

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Cat. No. 11394R   **Schedule K-1 (Form 1065) 2019**

PI.ntfit × 5

003388

HCMLPHMIT00001885

| | | |
|---|---|---|
| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

20**19**

For calendar year 2019, or tax year

beginning ___ / ___ / 2019   ending ___ / ___ / ___

**Partner's Share of Income, Deductions, Credits, etc.**   ▶ See back of form and separate instructions.

### Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Box | Description | Amount | Box | Description | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | (31,511,547) | 15 | Credits | |
| 2 | Net rental real estate income (loss) | 23,429,983 | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions | |
| | | | A | | VARIOUS |
| 4a | Guaranteed payments for services | | B | | 107,809,792 |
| 4b | Guaranteed payments for capital | | C | | 109,187,851 |
| 4c | Total guaranteed payments | | G | | (1,378,061) |
| 5 | Interest income | 9,685,521 | I | | 7,848,766 |
| 6a | Ordinary dividends | 2,439,576 | J | | 66,575,961 |
| 6b | Qualified dividends | 131,590 | * | | SEE STMT |
| 6c | Dividend equivalents | | 17 | Alternative minimum tax (AMT) items | |
| | | | A | | (3,101) |
| 7 | Royalties | 1,147,036 | D | | 2,116,810 |
| 8 | Net short-term capital gain (loss) | (8,791,920) | * | | SEE STMT |
| 9a | Net long-term capital gain (loss) | 21,314,362 | 18 | Tax-exempt income and nondeductible expenses | |
| 9b | Collectibles (28%) gain (loss) | | C | | 5,667,593 |
| 9c | Unrecaptured section 1250 gain | 2,880 | | | |
| 10 | Net section 1231 gain (loss) | (1,364,433) | 19 | Distributions | |
| 11 | Other income (loss) | | A | | 3,711,456 |
| A | | 14,893 | | | |
| * | | SEE STMT | 20 | Other information | |
| 12 | Section 179 deduction | | A | | 15,365,420 |
| 13 | Other deductions | | B | | 247,031 |
| A | | 4,238 | | | |
| H | | 5,947,873 | T | | 284,597 |
| * | | SEE STMT | * | | SEE STMT |
| 14 | Self-employment earnings (loss) | | | | |

### Part I   Information About the Partnership

**A** Partnership's employer identification number
75-2716725

**B** Partnership's name, address, city, state, and ZIP code
HIGHLAND CAPITAL MANAGEMENT, LP
300 CRESCENT COURT, SUITE 700
DALLAS, TX 75201

**C** IRS Center where partnership filed return ▶ OGDEN

**D** Check if this is a publicly traded partnership (PTP) ☐

### Part II   Information About the Partner

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)
47-5261938

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.
RAND PE FUNDS I, LP
87 RAILROAD PLACE, SUITE 403
SARATOGA SPRINGS, NY 12866

**G** ☐ General partner or LLC member-manager   ☒ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☒ If the partner is a disregarded entity (DE), enter the partner's:
TIN 47-5145562   Name HNTR MNTN INV TRST FBO BCN MN

**I1** What type of entity is this partner?   PARTNERSHIP

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 99.500000 % | 99.500000 % |
| Loss | NONE % | NONE % |
| Capital | 99.500000 % | 99.500000 % |

Check if decrease is due to sale or exchange of partnership interest ☐

**K** Partner's share of liabilities:

| | Beginning | Ending |
|---|---|---|
| Nonrecourse | $ 123,274,967 | $ 117,033,004 |
| Qualified nonrecourse financing | $ 40,718,835 | $ 139,968,727 |
| Recourse | $ NONE | $ NONE |

☒ Check this box if Item K includes liability amounts from lower tier partnerships.

**L** **Partner's Capital Account Analysis**

| | |
|---|---|
| Beginning capital account | $ 370,103,735 |
| Capital contributed during the year | $ |
| Current year net income (loss) | $ (18,442,312) |
| Other increase (decrease) (attach explanation) | $ 39,227 |
| Withdrawals & distributions | $ ( 3,711,456 ) |
| Ending capital account | $ 347,989,195 |

**21** ☐ More than one activity for at-risk purposes*
**22** ☐ More than one activity for passive activity purposes*

*See attached statement for additional information.

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No   If "Yes," attach statement. See instructions.

**N** **Partner's Share of Net Unrecognized Section 704(c) Gain or (Loss)**
Beginning _____ $
Ending _____ $

For IRS Use Only

For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Cat. No. 11394R   Schedule K-1 (Form 1065) 2019

P14409B330613 08/26/2020 18:00

Partner # 6

003389

HCMLPHMIT00001890

**EXHIBIT 117**

003390

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

|  | 10/15/2019 | 10/31/2019 | 11/30/2019 |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 |
| Investments, at fair value [3] | 232,620 | 235,144 | 233,776 |
| Equity method investees [3] | 161,819 | 161,813 | 175,381 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 |
| Due from affiliates [1] | 151,901 | 152,124 | 152,523 |
| Other assets | 11,311 | 11,260 | 10,621 |
| **Total assets** | **$ 566,513** | **$ 569,501** | **$ 583,468** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,135 | 1,250 |
| Post-petition accounts payable [4] | - | 102 | 236 |
| Secured debt: | | | |
|     Frontier | 5,195 | 5,195 | 5,195 |
|     Jefferies | 30,328 | 30,315 | 30,268 |
| Accrued expenses and other liabilities [4] | 59,203 | 59,184 | 60,848 |
| Accrued re-organization related fees [5] | - | - | - |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 569,501** | **$ 583,468** |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and November 30, 2019

Assets

Cash and cash equivalents

| Code | Code | Description | Amount |
|---|---|---|---|
| 10010 10010 | | 10010 OPERATING | 4,399,685.76 |
| 10011 10011 | | 10011 OPERATING - CASH CLEARING | (5,357,965.85) |
| 10012 10012 | | 10012 OPERATING - DEPOSITS IN TRANSIT | 3,058,753.60 |
| 10020 10020 | | 10020 INSURANCE ACCT | 291,109.28 |
| 10030 10030 | | 10030 MONEY MARKET | 136,658.61 |
| 10060 10060 | | 10060 BROKERAGE | 93.74 |
| 10100 10100 | | 10100 MISC OPERATING 1 | (1,132,704.16) |
| 10102 10102 | | 10102 MISC OPERATING 1 - DEPOSITS IN TRANSIT | 1,132,895.00 |
| | | Total cash and cash equivalents | 2,528,525.98 |

Investments, at fair value

| Code | Description | Amount |
|---|---|---|
| 11100 11100 | 11100 INVESTMENT SECURITIES - COST | 66,751,143.30 |
| 11150 11150 | 11150 INVESTMENT SECURITIES - MARK TO MARKET | (7,702,195.68) |
| 17140 17140 | 17140 LT INVSTMT - HIGHLAND CLO FUNDING | 481,354.43 |
| 17207 17207 | 17207 LT INVSTMT - NXRT | 49,648,257.65 |
| 17209 17209 | 17209 LT INVSTMT - NHT | 10,718,068.67 |
| 17210 17210 | 17210 LT INVSTMT - NEXPOINT REAL ESTATE STRATEGIES FUND | 1,721,458.16 |
| 17405 17405 | 17405 LT INVSTMT - CRUSADER | 5,431,955.00 |
| 17440 17440 | 17440 LT INVSTMT - CREDIT STRATEGIES FUND | 132,002.75 |
| 17445 17445 | 17445 LT INVSTMT - MULTI STRAT CREDIT FUND | 20,244,908.67 |
| 17460 17460 | 17460 LT INVSTMT - RESTORATION CAPITAL PARTNERS | 36,949,197.43 |
| 17462 17462 | 17462 LT INVSTMT - PETROCAP PARTNERS II | 12,065,754.32 |
| 17466 17466 | 17466 LT INVSTMT - PETROCAP INCENTIVE PARTNERS III | 380.00 |
| 17467 17467 | 17467 LT INVSTMT - PETROCAP PARTNERS III | 1,254,168.41 |
| 17471 17471 | 17471 LT INVSTMT - HIGHLAND LOAN FUND | 261,889.71 |
| 17474 17474 | 17474 LT INVSTMT - HIGHLAND MERGER ARBITRAGE FUND | 1,397,752.04 |
| 17540 17540 | 17540 LT INVSTMT - HIGHLAND OPPORTUNISTIC CREDIT FUND | 5,427,536.32 |
| 17542 17542 | 17542 LT INVSTMT - HIGHLAND PREMIER GROWTH EQUITY FUND | 67,639.33 |
| 17543 17543 | 17543 LT INVSTMT - HIGHLAND SMALL CAP EQUITY FUND | 533,357.32 |
| 17550 17550 | 17550 LT INVSTMT - NEXPOINT CREDIT STRATEGIES | 13,275,503.51 |
| 17555 17555 | 17555 LT INVSTMT - L/S EQUITY FUND | - |
| 17560 17560 | 17560 LT INVSTMT - ENERGY AND MATERIALS FUND | 8,928.17 |
| 17561 17561 | 17561 LT INVSTMT - FLOATING RATE OPPORTUNITIES | 792,313.43 |
| 17562 17562 | 17562 LT INVSTMT - GLOBAL ALLOCATION | 1,573,054.32 |
| 17592 17592 | 17592 LT INVSTMT - HEALTH CARE FUND | 2,752,533.87 |
| | Total investments, at fair value | 223,786,961.13 |

Equity method investees

| Code | Description | Amount |
|---|---|---|
| 17410 17410 | 17410 LT INVSTMT - SELECT EQUITY FUND | 130,213,244.86 |
| 17475 17475 | 17475 LT INVSTMT - EAMES, LTD | 5,908,796.26 |
| 17480 17480 | 17480 LT INVSTMT - STARCK, LTD | 6,960,671.89 |
| 17485 17485 | 17485 LT INVSTMT - WRIGHT, LTD | 22,303,199.33 |
| 17835 17835 | 17835 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT LATIN AMERICA | - |
| 17840 17840 | 17840 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT SINGAPORE | 457,809.57 |
| 17850 17850 | 17850 LT INVSTMT - HIGHLAND CAPITAL MANAGEMENT KOREA | 1,011,300.61 |
| 17880 17880 | 17880 LT INVSTMT - PENANT MANAGEMENT | 302,358.21 |
| 17881 17881 | 17881 LT INVSTMT - EAGLE EQUITY ADVISORS | 22,803.05 |
| 17885 17885 | 17885 LT INVSTMT - MAPLE AVENUE HOLDINGS | 547,633.82 |
| 17900 17900 | 17900 LT INVSTMT - OTHER LONG-TERM INVESTMENTS | 2,924,323.00 |
| | Total equity method investees | 170,652,140.60 |

Management and incentive fees receivable

| Code | Description | Amount |
|---|---|---|
| 12145 12145 | 12145 MGMT FEES RECVBL - VALHALLA | 12,287.85 |
| 12150 12150 | 12150 MGMT FEES RECVBL - SOUTHFORK | 7,941.94 |
| 12160 12160 | 12160 MGMT FEES RECVBL - JASPER | 35,443.91 |
| 12165 12165 | 12165 MGMT FEES RECVBL - GLENEAGLES | 19,494.83 |
| 12170 12170 | 12170 MGMT FEES RECVBL - LIBERTY | 45,288.78 |
| 12175 12175 | 12175 MGMT FEES RECVBL - ROCKWALL | 18,213.61 |

003392

| | | | |
|---|---|---|---|
| 12180 12180 | 12180 MGMT FEES RECVBL - RED RIVER | | 30,118.03 |
| 12190 12190 | 12190 MGMT FEES RECVBL - GRAYSON | | 99,945.24 |
| 12210 12210 | 12210 MGMT FEES RECVBL - EASTLAND | | 83,341.49 |
| 12215 12215 | 12215 MGMT FEES RECVBL - BRENTWOOD | | 36,565.44 |
| 12225 12225 | 12225 MGMT FEES RECVBL - ROCKWALL II | | 121,756.83 |
| 12230 12230 | 12230 MGMT FEES RECVBL - WESTCHESTER | | 130,594.11 |
| 12235 12235 | 12235 MGMT FEES RECVBL - HIGHLAND PARK | | 24,144.35 |
| 12265 12265 | 12265 MGMT FEES RECVBL - STRATFORD | | 42,557.64 |
| 12270 12270 | 12270 MGMT FEES RECVBL - GREENBRIAR | | 60,028.30 |
| 12280 12280 | 12280 MGMT FEES RECVBL - ABERDEEN | | 15,288.93 |
| 12445 12445 | 12445 MGMT FEES RECVBL - MULTI STRAT CREDIT FUND | | 20,567.91 |
| 12466 12466 | 12466 MGMT FEES RECVBL - PROMETHEUS | | 22,237.17 |
| 12471 12471 | 12471 MGMT FEES RECVBL - HIGHLAND LOAN FUND | | 1,736.85 |
| 12475 12475 | 12475 MGMT FEES RECVBL - LIFE SETTLEMENTS PROGRAM | | 0.01 |
| 12635 12635 | 12635 MGMT FEES RECVBL - LONGHORN A | | 8,439.48 |
| 12640 12640 | 12640 MGMT FEES RECVBL - LONGHORN B | | 128,482.29 |
| 12660 12660 | 12660 MGMT FEES RECVBL - BANDERA STRATEGIC CREDIT PARTNERS | | 4.10 |
| 12665 12665 | 12665 MGMT FEES RECVBL - PENSION DENMARK | | 430,691.12 |
| 12670 12670 | 12670 MGMT FEES RECVBL - NEXBANK | | 813,275.89 |
| 12675 12675 | 12675 MGMT FEES RECVBL - DAF | | 163,043.48 |
| 12680 12680 | 12680 MGMT FEES RECVBL - TRUSSWAY | | 10,080.65 |
| 12685 12685 | 12685 MGMT FEES RECVBL - SSP | | 197,173.42 |
| 14125 14125 | 14125 SUBADVISOR FEES RECEIVABLE - HCLOH | | 53,863.81 |
| | | | |
| | Total management and incentive fees receivable | | 2,632,607.46 |
| | | | |
| | Investment income receivable | | |
| 14010 14010 | 14010 CASH INTEREST RECEIVABLE | | 1,243,304.26 |
| | | | |
| | Total investment income receivable | | 1,243,304.26 |
| | | | |
| | Deferred incentive fees | | |
| 12906 12906 | 12906 INCTV FEES RECVBL - CRUSADER - OFFSHORE | | 15,020,930.06 |
| 12999 12999 | 12999 ALLOWANCE FOR UNCOLLECTIBLE ACCOUNTS | | (15,020,930.06) |
| | Fixed assets | | |
| 16100 16100 | 16100 BUILDINGS | | 2,594,846.58 |
| 16150 16150 | 16150 BUILDINGS - ACCUM DEPRECIATION | | (891,978.45) |
| 16200 16200 | 16200 FURNITURE AND FIXTURES | | 2,796,433.00 |
| 16250 16250 | 16250 FURNITURE AND FIXTURES - ACCUM DEPRECIATION | | (2,678,004.27) |
| 16300 16300 | 16300 COMPUTERS AND EQUIPMENT | | 2,805,720.49 |
| 16350 16350 | 16350 COMPUTERS AND EQUIPMENT - ACCUM DEPRECIATION | | (2,484,405.74) |
| 16400 16400 | 16400 COMPUTER SOFTWARE | | 331,195.05 |
| 16450 16450 | 16450 COMPUTER SOFTWARE - ACCUM DEPRECIATION | | (269,706.55) |
| 16500 16500 | 16500 LEASEHOLD IMPROVEMENTS | | 7,191,571.54 |
| 16550 16550 | 16550 LEASEHOLD IMPROVEMENTS - ACCUM DEPRECIATION | | (5,641,290.05) |
| | | | |
| | Total fixed assets | | 3,754,381.60 |
| | | | |
| | Other assets | | |
| 13110 13110 | 13110 REIMB EXP - PAMCO CAYMAN | | 151,270.77 |
| 13115 13115 | 13115 REIMB EXP - PAM CAPITAL | | 1,071.55 |
| 13120 13120 | 13120 REIMB EXP - LEGACY | | 146,431.94 |
| 13125 13125 | 13125 REIMB EXP - HIGHLAND V | | 19,535.41 |
| 13140 13140 | 13140 REIMB EXP - BRISTOL BAY | | 2,187.28 |
| 13145 13145 | 13145 REIMB EXP - VALHALLA | | 5,832.60 |
| 13150 13150 | 13150 REIMB EXP - SOUTHFORK | | 5,978.91 |
| 13160 13160 | 13160 REIMB EXP - JASPER | | 25,365.46 |
| 13165 13165 | 13165 REIMB EXP - GLENEAGLES | | 39,707.18 |
| 13170 13170 | 13170 REIMB EXP - LIBERTY | | 39,248.30 |
| 13175 13175 | 13175 REIMB EXP - ROCKWALL | | 13,040.05 |
| 13180 13180 | 13180 REIMB EXP - RED RIVER | | 17,189.51 |
| 13190 13190 | 13190 REIMB EXP - GRAYSON | | 42,151.73 |
| 13200 13200 | 13200 REIMB EXP - HIGHLAND FINANCIAL TRUST | | 8,381.53 |

| | | | |
|---|---|---|---|
| 13210 13210 | 13210 REIMB EXP - EASTLAND | 41,315.16 |
| 13215 13215 | 13215 REIMB EXP - BRENTWOOD | 91,010.17 |
| 13225 13225 | 13225 REIMB EXP - ROCKWALL II | 45,707.94 |
| 13230 13230 | 13230 REIMB EXP - WESTCHESTER | 115,662.06 |
| 13235 13235 | 13235 REIMB EXP - HIGHLAND PARK | 17,797.31 |
| 13265 13265 | 13265 REIMB EXP - STRATFORD | 15,332.69 |
| 13270 13270 | 13270 REIMB EXP - GREENBRIAR | 27,252.17 |
| 13276 13276 | 13276 REIMB EXP - ACIS CLO MANAGEMENT | 3,946.72 |
| 13280 13280 | 13280 REIMB EXP - ABERDEEN | 4,861.52 |
| 13281 13281 | 13281 REIMB EXP - HEWETT'S ISLAND | - |
| 13282 13282 | 13282 REIMB EXP - ACIS CLO 2018-VIII | 12,297.70 |
| 13284 13284 | 13284 REIMB EXP - ACIS CLO 2017-VII | 34,229.54 |
| 13285 13285 | 13285 REIMB EXP - ACIS CLO 2013-1 | 115,828.83 |
| 13286 13286 | 13286 REIMB EXP - ACIS CLO 2013-II | 0.03 |
| 13287 13287 | 13287 REIMB EXP - ACIS CLO 2014-III | 141,187.64 |
| 13288 13288 | 13288 REIMB EXP - ACIS CLO 2014-IIII | 161,700.16 |
| 13289 13289 | 13289 REIMB EXP - ACIS CLO 2014-V | 175,460.76 |
| 13290 13290 | 13290 REIMB EXP - ACIS CLO 2015-VI | 210,400.78 |
| 13298 13298 | 13298 REIMB EXP - ACIS CLO 2017-VII | 86,292.45 |
| 13403 13403 | 13403 REIMB EXP - HIGHLAND PROMETHEUS FUND | 2,390.26 |
| 13404 13404 | 13404 REIMB EXP - HIGHLAND LATIN AMERICA OPPORTUNITY FUND | (300.00) |
| 13410 13410 | 13410 REIMB EXP - SELECT EQUITY FUND | 44,673.00 |
| 13420 13420 | 13420 REIMB EXP - REAL ESTATE FUND | 8.92 |
| 13435 13435 | 13435 REIMB EXP - CDO OPPORTUNITIES FUND | 21,722.21 |
| 13440 13440 | 13440 REIMB EXP - CREDIT STRATEGIES FUND | 21.24 |
| 13445 13445 | 13445 REIMB EXP - MULTI STRAT CREDIT FUND | 71,217.26 |
| 13450 13450 | 13450 REIMB EXP - MULTI-STRAT INSURANCE DEDICATED FUND | 600.00 |
| 13460 13460 | 13460 REIMB EXP - RESTORATION CAPITAL PARTNERS | 32,683.10 |
| 13462 13462 | 13462 REIMB EXP - GRANITE BAY | 2,150.79 |
| 13465 13465 | 13465 REIMB EXP - CLO VALUE FUND | 47.62 |
| 13467 13467 | 13467 REIMB EXP - BB HIGHLAND FLOATING RATE FUND I | 250.00 |
| 13468 13468 | 13468 REIMB EXP - BB VOTORANTIM HIGHLAND INFRASTRUCTURE LLC | 8,604.01 |
| 13471 13471 | 13471 REIMB EXP - HIGHLAND LOAN FUND | 10,569.33 |
| 13475 13475 | 13475 REIMB EXP - LIFE SETTLEMENTS PROGRAM | 4,606.55 |
| 13515 13515 | 13515 REIMB EXP - FLOATING RATE | 6,607.38 |
| 13521 13521 | 13521 REIMB EXP - FLOATING RATE OPPORTUNITIES | 2,042.05 |
| 13540 13540 | 13540 REIMB EXP - HIGHLAND OPPORTUNISTIC CREDIT FUND | 139.53 |
| 13550 13550 | 13550 REIMB EXP - NEXPOINT CREDIT STRATEGIES | 48,761.50 |
| 13580 13580 | 13580 REIMB EXP - HIGHLAND INCOME FUND | 23,648.49 |
| 13591 13591 | 13591 REIMB EXP - HC MULTI-STRATEGY FUND | 9,120.88 |
| 13592 13592 | 13592 REIMB EXP - HEALTH CARE FUND | 10.21 |
| 13610 13610 | 13610 REIMB EXP - CALPERS DISTRESSED | 11.56 |
| 13635 13635 | 13635 REIMB EXP - LONGHORN A | 10,220.09 |
| 13640 13640 | 13640 REIMB EXP - LONGHORN B | 24,732.66 |
| 13660 13660 | 13660 REIMBURSABLE FUND EXPNESES - PYXIS L/S EQUITY FUND | 1,263.26 |
| 13661 13661 | 13661 REIMBURSABLE FUND EXPNESES - PYXIS L/S HEALTHCARE FUND | 12,331.25 |
| 13665 13665 | 13665 REIMBURSABLE FUND EXPNESES - PYXIS SMALL CAP EQUITY FU | 342.25 |
| 13670 13670 | 13670 REIMBURSABLE FUND EXPNESES - HIGHLAND OPPORTUNISTIC CR | 858.02 |
| 13672 13672 | 13672 REIMBURSABLE FUND EXPNESES - PYXIS ENERGY & MATERIALS | 219.00 |
| 13676 13676 | 13676 EXP REIMB GLOBAL ALLOCATION FUND | 7,509.40 |
| 13685 13685 | 13685 EXP REIMB IBOXX SENIOR LOAN ETF | 4,857.87 |
| 13690 13690 | 13690 EXP REIMB - NEXPOINT RESIDENTIAL TRUST | 35,354.89 |
| 13691 13691 | 13691 EXP REIMB - NEXPOINT CAPITAL | 62,057.74 |
| 13692 13692 | 13692 EXP REIMB - NEXPOINT MULTI FAMILY REALTY TRUST | 168.38 |
| 13905 13905 | 13905 REIMBURSABLE FUND EXPENSES - COMPANY REIMB | 4,176,204.78 |
| 13910 13910 | 13910 REIMBURSABLE FUND EXPENSES - OTHER | (1,166,137.22) |
| 13990 13990 | 13990 REIMBURSABLE FUND EXPENSES - OTHER | 662,179.33 |
| 13999 13999 | 13999 REIMBURSABLE FUND EXPNESES - CLEARING | 1,726,654.35 |
| 14130 14130 | 14130 MISCELLANEOUS RECEIVABLE | 8,900.00 |
| 14135 14135 | 14135 SHARED SVCS FEE RECVBL - FALCON | 0.09 |
| 14140 14140 | 14140 SHARED SVCS FEE RECVBL - PYXIS | 143,384.01 |
| 14142 14142 | 14142 SHARED SVCS FEE RECVBL - HCLOH | 37,290.33 |
| 14143 14143 | 14143 SHARED SVCS FEE RECVBL - HCM LATIN AMERICA | 10,000.00 |
| 14148 14148 | 14148 SHARED SVCS FEE RECVBL - RAND ADVISORS | 9,999.92 |
| 14149 14149 | 14149 SHARED SVCS FEE RECVBL - NREA | (0.01) |
| 14199 14199 | 14199 UNAPPLIED RECEIPTS | (20,825.39) |

003394

| | | | |
|---|---|---|---|
| 14520 14520 | 14520 DUE FROM HIGHLAND CAPITAL MANAGEMENT EUROPE LTD. | - | |
| 14530 14530 | 14530 DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 7,482,480.88 | |
| 14531 14531 | 14531 DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 10,413,539.53 | |
| 14532 14532 | 14532 DUE FROM NEXPOINT ADVISORS | 24,534,644.03 | |
| 14533 14533 | 14533 DUE FROM HCRE PARTNERS | 10,394,680.47 | |
| 14535 14535 | 14535 DUE FROM HERA | 3,349,587.22 | |
| 14540 14540 | 14540 DUE FROM SSP | 2,198,610.05 | |
| 14545 14545 | 14545 DUE FROM TRUSSWAY | 1,056,956.03 | |
| 14555 14555 | 14555 DUE FROM HIGHLAND CAPITAL MANAGEMENT SINGAPORE PTE LTD | 35,158.50 | |
| 14565 14565 | 14565 DUE FROM OTHER - TAX LOANS | 10,670,299.84 | |
| 14575 14575 | 14575 DUE FROM HIGHLAND CAPITAL OF NEW YORK | 5,023,073.12 | |
| 14580 14580 | 14580 DUE FROM NEXBANK | 69,677.42 | |
| 14585 14585 | 14585 DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 56,873,209.22 | |
| 14590 14590 | 14590 DUE FROM OTHER AFFILIATE | 5,288,256.35 | |
| 14595 14595 | 14595 DUE FROM HIGHLAND CAPITAL KOREA | 3,132,278.05 | |
| 14750 14750 | 14750 LONG TERM NOTES RECEIVABLE | 18,286,268.16 | |
| 14900 14900 | 14900 INTERCOMPANY RECEIVABLE | 1,663.65 | |
| 15010 15010 | 15010 PREPAID INSURANCE | 316,404.81 | |
| 15020 15020 | 15020 PREPAID RENT | (708,213.81) | |
| 15025 15025 | 15025 PREPAID RESEARCH | 496,846.51 | |
| 15030 15030 | 15030 OTHER PREPAID EXPENSES | 11,250.00 | |
| 15490 | 15490 PREPAID EXPENSE CLEARING | 27,223.80 | |
| 15510 15510 | 15510 DEPOSITS | 129,871.65 | |

|  |  |  |
|---|---|---|
| Total other assets | 166,938,592.22 | |
| Total assets | 571,536,513.25 | |

Liabilities and Partners' Capital

Current liabilities:

Securities sold, not yet purchased

| | | | |
|---|---|---|---|
| 22010 22010 | 22010 SECURITIES SOLD, NOT YET PURCHASED - PROCEEDS | (180.71) x | pre |

| | |
|---|---|
| Total securities sold, not yet purchased | (180.71) |

Due to broker

| | | | |
|---|---|---|---|
| 20700 20700 | 20700 DUE TO BROKERS | (30,328,462.58) | |

Total due to broker

Due to broker for securities purchased, not yet settled
Payable to Highland Capital Management Services, Inc.

| | | | |
|---|---|---|---|
| 23015 23015 | 23015 DUE TO MAPLE AVENUE HOLDINGS | (4,975,000.00) x | pre |
| 23035 23035 | 23035 DUE TO HIGHLAND CAPITAL OF NEW YORK | 5,446.00 x | |
| 23045 23045 | 23045 DUE TO HIGHLAND CAPITAL MANAGEMENT SINGAPORE PTE LTD | (248,745.28) x | pre |
| 23050 23050 | 23050 DUE TO AFFILIATE - OTHER | (208,051.44) x | |
| 23099 23099 | 23099 PAYABLES - OTHER AFFILIATE | (2,059,337.01) x | pre |

| | |
|---|---|
| Total payable to Highland Capital Management Services, Inc | (7,485,687.73) |

Accounts payable

| | | | |
|---|---|---|---|
| 20100 20100 | 20100 ACCOUNTS PAYABLE | (1,176,300.44) | |
| 20200 20200 | 20200 INTEREST PAYABLE | (613,638.07) x | mix |

Total accounts payable

| | | Accrued and other liabilities | |
|---|---|---|---|
| 20900 | 20900 | 20900 INTERCOMPANY PAYABLE | - |
| 21010 | 21010 | 21010 ACCRUED LIABILITIES - INTEREST | 225.00 x |
| 21030 | 21030 | 21030 ACCRUED LIABILITIES - LEGAL | (8,761,799.69) x |
| 21040 | 21040 | 21040 ACCRUED LIABILITIES - AUDIT FEES | (165,967.74) x |
| 21080 | 21080 | 21080 ACCRUED LIABILITIES - INCOME TAX | (175,023.00) x |
| 21090 | 21090 | 21090 ACCRUED LIABILITIES - OTHER | (3,166.60) x |
| 21110 | 21110 | 21110 ACCRUED LIABILITIES - HCNY HEALTH INS PREMIUMS | (119,062.29) x |
| 21111 | 21111 | 21111 ACCRUED LIABILITIES - HCMFA HEALTH INS PREMIUMS | (95,045.39) x |
| 21113 | 21113 | 21113 ACCRUED LIABILITIES - HC FUNDS DISTRIBUTOR HEALTH IN | (754,170.28) x |
| 21114 | 21114 | 21114 ACCRUED LIABILITIES - NEXBANK HEALTH INS PREMIUMS | 544,043.98 x |
| 21115 | 21115 | 21115 ACCRUED LIABILITIES - DRUGCRAFTERS HEALTH INS PREMIUMS | 206,721.33 x |
| 21116 | 21116 | 21116 ACCRUED LIABILITIES - MARKHAM HEALTH INS PREMIUMS | 196,640.32 x |
| 21117 | 21117 | 21117 ACCRUED LIABILITIES - NEXBANK SECURITIES HEALTH INS PR | 38,116.34 x |
| 21118 | 21118 | 21118 ACCRUED LIABILITIES - HCMLP HEALTH INS PREMIUMS | 68,737.06 x |
| 21119 | 21119 | 21119 ACCRUED LIABILITIES - PCP HEALTH INS PREMIUMS | (8,854.67) x |
| 21120 | 21120 | 21120 ACCRUED LIABILITIES - JMIJM HEALTH INS PREMIUMS | (6,252.54) x |
| 21121 | 21121 | 21121 ACCRUED LIABILITIES - NXRT HEALTH INS PREMIUMS | (9,034.91) x |
| 21122 | 21122 | 21122 ACCRUED LIABILITIES - NPA HEALTH INS PREMIUMS | (25,017.59) x |
| 21123 | 21123 | 21123 ACCRUED LIABILITIES - EAGLE EQUITY HEALTH INS PREMIUMS | (4,458.02) x |
| 21124 | 21124 | 21124 ACCRUED LIABILITIES - VINEBROOK HEALTH INS PREMIUMS | (592.82) x |
| 21125 | 21125 | 21125 ACCRUED LIABILITIES - NHT HEALTH INS PREMIUMS | (1,185.64) x |
| 21200 | 21200 | 21200 ACCRUED LIABILITIES - HCMLP SHARED SERVICES | (18,014.97) x |
| 21205 | 21205 | 21205 ACCRUED LIABILITIES - HCFD SHARED SERVICES | (36,698.75) x |
| 21510 | 21510 | 21510 ACCRUED PAYROLL LIABILITIES - BONUS | (13,688,973.83) x |
| 21520 | 21520 | 21520 ACCRUED PAYROLL LIABILITIES - FEDERAL INC TAX W/H | - x |
| 21550 | 21550 | 21550 ACCRUED PAYROLL LIABILITIES - FICA | - x |
| 21560 | 21560 | 21560 ACCRUED PAYROLL LIABILITIES - MEDICARE | (13,310.19) x |
| 21600 | 21600 | 21600 ACCRUED PAYROLL LIABILITIES - 401(K) EE CONTRIBUTION | 3,262.35 x |
| 21630 | 21630 | 21630 ACCRUED PAYROLL LIABILITIES - LIFE INSURANCE | (13,761.35) x |
| 21640 | 21640 | 21640 ACCRUED PAYROLL LIABILITIES - FLEXIBLE SPENDING ACCOUN | (354,881.89) x |
| 21670 | 21670 | 21670 ACCRUED PAYROLL LIABILITIES - EE EXPENSE REIMBURSEMENT | (5,000.00) x |
| 21680 | 21680 | 21680 ACCRUED PAYROLL LIABILITIES - VACATION | (939,324.00) x |
| 21695 | 21695 | 21695 ACCRUED PAYROLL LIABILITY - SUSPENSE | 21,811.26 x |
| 25445 | 25445 | 25445 DEFERRED MANAGEMENT FEES - MULTI STRAT CREDIT | (431,483.88) x |
| 25461 | 25461 | 25461 DEFERRED INCENTIVE FEES - UNEARNED RCP CARRY | (4,392,937.00) x |
| 25500 | 25500 | 25500 DEFERRED MANAGEMENT FEES - DAF | 0.02 x |
| | | Total accrued and other liabilities | (28,944,459.38) |
| | | Other current liabilities | |
| 24150 | 24150 | 24150 CLAIMS PAYABLE | (73,997,399.28) |
| | | Total other current liabilities | (73,997,399.28) |
| | | Total current liabilities | |
| | | Debt and notes payable | |
| 26100 | 26100 | 26100 NOTES PAYABLE | (5,194,651.00) |
| 26110 | 26110 | 26110 CLASS A TERM NOTES PAYABLE | (9,541,446.00) x |
| 26200 | 26200 | 26200 REVOLVING CREDIT FACILITY | (11,340,751.26) x |
| | | Total debts and notes payable | (26,076,848.26) |
| | | | (64,225,759) |
| | | Payable to Highland Capital Management Services, Inc. | 5,023,073 |
| | | Deferred compensation | (59,202,686) |
| 27200 | 27200 | 27200 PROFIT SHARING PLAN | (632,258.10) x |
| 27265 | 27265 | 27265 2017 DEFERRED SHARES | (3,411,606.44) x |
| 27266 | 27266 | 27266 2018 DEFERRED SHARES | (1,758,391.79) x |
| 27267 | 27267 | 27267 2019 DEFERRED SHARES | (497,339.23) x |

003396

| | | | |
|---|---|---|---|
| | Total deferred compensation | | (6,299,595.56) |
| | Other liabilities | | |
| | Total liabilities | | (174,922,572.01) |
| | Commitments | | |
| | Partners' capital | | |
| 31000 31000 | 31000 PARTNERS' CAPITAL | | (6,509,576.64) |
| 32000 32000 | 32000 SUBSCRIPTIONS | | (91,499,999.99) |
| 33000 33000 | 33000 REDEMPTIONS | | 503,589,902.86 |
| 39000 39000 | 39000 RETAINED EARNINGS | | (765,702,051.50) |
| 40145 40145 | 40145 MGMT FEE REV - VALHALLA | | (50,628.85) |
| 40150 40150 | 40150 MGMT FEE REV - SOUTHFORK | | (27,757.53) |
| 40160 40160 | 40160 MGMT FEE REV - JASPER | | (145,851.77) |
| 40165 40165 | 40165 MGMT FEE REV - GLENEAGLES | | (140,043.03) |
| 40170 40170 | 40170 MGMT FEE REV - LIBERTY | | (165,929.40) |
| 40175 40175 | 40175 MGMT FEE REV - ROCKWALL | | (66,518.03) |
| 40180 40180 | 40180 MGMT FEE REV - RED RIVER | | (189,123.14) |
| 40190 40190 | 40190 MGMT FEE REV - GRAYSON | | (465,501.18) |
| 40210 40210 | 40210 MGMT FEE REV - EASTLAND | | (436,949.87) |
| 40215 40215 | 40215 MGMT FEE REV - BRENTWOOD | | (190,598.12) |
| 40225 40225 | 40225 MGMT FEE REV - ROCKWALL II | | (524,333.53) |
| 40230 40230 | 40230 MGMT FEE REV - WESTCHESTER | | (328,847.76) |
| 40235 40235 | 40235 MGMT FEE REV - HIGHLAND PARK | | (96,479.77) |
| 40265 40265 | 40265 MGMT FEE REV - STRATFORD | | (178,461.48) |
| 40270 40270 | 40270 MGMT FEE REV - GREENBRIAR | | (258,673.40) |
| 40280 40280 | 40280 MGMT FEE REV - ABERDEEN | | (41,945.72) |
| 40445 40445 | 40445 MGMT FEE REV - MULTI STRAT CREDIT FUND | | (484,270.56) |
| 40466 40466 | 40466 MGMT FEE REV - PROMETHEUS | | (86,688.68) |
| 40471 40471 | 40471 MGMT FEE REV - HIGHLAND LOAN FUND | | (180,409.31) |
| 40473 40473 | 40473 MGMT FEE REV - HIGHLAND FLEXIBLE INCOME UCITS FUND | | (41,013.32) |
| 40635 40635 | 40635 MGMT FEE REV - LONGHORN A | | (39,412.35) |
| 40640 40640 | 40640 MGMT FEE REV - LONGHORN B | | (518,445.68) |
| 40644 40644 | 40644 MGMT FEE REV - PENSION DENMARK | | (1,163,257.92) |
| 40646 40646 | 40646 MGMT FEE REV - NEXBANK | | (2,505,695.14) |
| 40647 40647 | 40647 MGMT FEE REV - DAF | | (3,596,743.32) |
| 40684 40684 | 40684 MGMT FEE REV - TRUSSWAY | | (114,247.30) |
| 40685 40685 | 40685 MGMT FEE REV - SSP | | (197,173.42) |
| 40690 40690 | 40690 SUBADVISORY FEES - HCLOH | | (206,475.99) |
| 41455 41455 | 41455 INCTV FEE REV - HIGHLAND DYNAMIC INCOME FUND | | (150,925.36) |
| 45100 45100 | 45100 INTEREST INCOME | | (96.17) |
| 45200 45200 | 45200 DIVIDEND INCOME | | (2,625,125.09) |
| 45445 45445 | 45445 ROYALTY FEES | | (875,539.73) |
| 45509 45509 | 45509 SUBADVISOR FEES - HCMFA | | (3,945,290.32) |
| 45511 45511 | 45511 SUBADVISOR FEES - NEXPOINT ADVISORS | | (2,389,935.48) |
| 45515 45515 | 45515 SHARED SVCS FEE REV - NEXPOINT | | (1,593,290.32) |
| 45530 45530 | 45530 SHARED SVCS FEE REV - NEXBANK | | (189,677.42) |
| 45535 45535 | 45535 SHARED SVCS FEE REV - FALCON | | (135,000.00) |
| 45540 45540 | 45540 SHARED SVCS FEE REV - PYXIS | | (2,950,803.13) |
| 45541 45541 | 45541 SHARED SVCS FEE REV - HCLOH | | (142,944.91) |
| 45543 45543 | 45543 SHARED SVCS FEE REV - HCM LATIN AMERICA | | (100,000.00) |
| 45555 45555 | 45555 SHARED SVCS FEE REV - RAND ADVISORS | | (171,053.46) |
| 45560 45560 | 45560 SHARED SVCS FEE REV - NREA | | (720,000.00) |
| 45690 45690 | 45690 ADMIN FEES - ALL CAP EQUITY FUND | | - |
| 45900 45900 | 45900 MISCELLANEOUS INCOME | | (69,625.13) |
| 50110 50110 | 50110 SALARIES | | 9,150,582.76 |
| 50130 50130 | 50130 OVERTIME | | 443,209.60 |
| 50150 50150 | 50150 SEVERANCE | | 480,800.00 |
| 50210 50210 | 50210 CASH BONUS | | 9,248,793.64 |
| 50230 50230 | 50230 PROFIT SHARING | | 632,258.10 |
| 50240 50240 | 50240 401(K) MATCH | | 333,561.32 |
| 50255 50255 | 50255 SHORT-TERM INCENTIVE PLAN | | (436,285.82) |
| 50265 50265 | 50265 2017 DEFERRED SHARES | | 1,097,191.17 |

| 50266 50266 | 50266 2018 DEFERRED SHARES | 822,120.61 |
| 50267 50267 | 50267 2019 DEFERRED SHARES | 497,339.14 |
| 50268 50268 | 50268 2016 DEFERRED SHARES | (25,311.95) |
| 50290 50290 | 50290 OTHER COMPENSATION | 1,155,780.58 |
| 50310 50310 | 50310 HEALTH INSURANCE | 1,523,588.77 |
| 50320 50320 | 50320 LIFE INSURANCE | 54,361.18 |
| 50410 50410 | 50410 EMPLOYER FICA | 583,174.17 |
| 50420 50420 | 50420 EMPLOYER MEDICARE | 375,760.29 |
| 50430 50430 | 50430 EMPLOYER FUTA | 4,744.82 |
| 50440 50440 | 50440 EMPLOYER SUTA | 12,959.77 |
| 60100 60100 | 60100 PERIODICALS | 22,386.10 |
| 60200 60200 | 60200 RESEARCH | 916,140.49 |
| 61100 61100 | 61100 LEGAL | 4,595,085.91 |
| 61200 61200 | 61200 AUDIT | 169,967.74 |
| 61300 61300 | 61300 CONSULTING | 3,452,054.35 |
| 61325 61325 | 61325 ASSET PLACEMENT FEES | 104,945.38 |
| 61350 61350 | 61350 ADMINISTRATION FEES | 57,121.04 |
| 61355 61355 | 61355 DATA SERVICE FEES | 43,875.13 |
| 61400 61400 | 61400 PAYROLL SERVICE | 19,604.39 |
| 61450 61450 | 61450 PLACEMENT FEES | 38,750.00 |
| 61510 61510 | 61510 VIRTUAL RECRUITING | 16,255.54 |
| 61530 61530 | 61530 CANDIDATE REIMBURSEMENT | 745.33 |
| 61540 61540 | 61540 TRAINING | 3,078.00 |
| 62100 62100 | 62100 DEPRECIATION EXPENSE - BUILDING | 48,653.37 |
| 62200 62200 | 62200 DEPRECIATION EXPENSE - FURNITURE AND FIXTURES | 100,107.56 |
| 62300 62300 | 62300 DEPRECIATION EXPENSE - COMPUTERS AND EQUIPMENT | 151,012.94 |
| 62400 62400 | 62400 DEPRECIATION EXPENSE - COMPUTER SOFTWARE | (13,361.00) |
| 62500 62500 | 62500 DEPRECIATION EXPENSE - LEASEHOLD IMPROVEMENTS | 498,088.99 |
| 69110 69110 | 69110 RENT - DALLAS | 994,874.28 |
| 69140 69140 | 69140 RENT - STORAGE | 11,023.33 |
| 69210 69210 | 69210 UTILITIES | 55,034.52 |
| 69220 69220 | 69220 OFFICE SUPPLIES | 143,507.22 |
| 69232 69232 | 69232 TELEPHONES - OFFICE | 86,573.03 |
| 69234 69234 | 69234 TELEPHONES - MOBILE | 102,030.73 |
| 69238 69238 | 69238 INTERNET | 213,470.37 |
| 69240 69240 | 69240 COMPUTER HARDWARE | 66,426.65 |
| 69250 69250 | 69250 COMPUTER SOFTWARE | 400,694.97 |
| 69260 69260 | 69260 MAINTENANCE | 18,021.65 |
| 69270 69270 | 69270 POSTAGE | 19,179.88 |
| 69280 69280 | 69280 TEMPORARY SERVICES | 2,579.33 |
| 69281 69281 | 69281 FOOD SUPPLIES | 144,648.14 |
| 69282 69282 | 69282 PARKING | 138,958.85 |
| 69290 69290 | 69290 OFFICE OVERHEAD - OTHER | 227,701.36 |
| 69310 69310 | 69310 DIRECTORS AND OFFICERS | 247,662.00 |
| 69320 69320 | 69320 WORKERS COMPENSATION | 34,662.88 |
| 69330 69330 | 69330 BUY/SELL | 14,875.00 |
| 69340 69340 | 69340 ADDITIONAL LIFE INSURANCE | 41,601.38 |
| 69350 69350 | 69350 OTHER INSURANCE | 88,305.83 |
| 69410 69410 | 69410 AIRFARE | 136,385.18 |
| 69420 69420 | 69420 MEALS | 64,817.22 |
| 69430 69430 | 69430 LODGING | 44,258.29 |
| 69440 69440 | 69440 ENTERTAINMENT | 509,735.88 |
| 69450 69450 | 69450 EMPLOYEE LUNCH | 283,814.86 |
| 69460 69460 | 69460 GROUND TRANSPORTATION | 23,557.78 |
| 69490 69490 | 69490 TRAVEL - OTHER | 5,972.71 |
| 69500 69500 | 69500 MARKETING AND ADVERTISING | 561,172.46 |
| 69600 69600 | 69600 CHARITABLE CONTRIBUTIONS | 67,700.00 |
| 69610 69610 | 69610 BUSINESS GIFTS | 116,780.19 |
| 69722 69722 | 69722 STATE CORPORATE TAX | 50.00 |
| 69730 69730 | 69730 TAXES - OTHER | 537,045.85 |
| 69832 69832 | 69832 CONFERENCE REGISTRATION | 12,420.78 |
| 69910 69910 | 69910 FEES AND DUES | 208,428.87 |
| 69920 69920 | 69920 BANK CHARGES | 14,052.09 |
| 69950 69950 | 69950 BAD DEBT | 79,835.57 |
| 69990 69990 | 69990 MISCELLANEOUS - OTHER | 684.72 |
| 80100 80100 | 80100 INTEREST INCOME - NON-OPERATING | (5,765,215.32) |

003398

| 80200 80200 | 80200 INTEREST EXPENSE - NON-OPERATING | 1,344,399.09 |
| 80800 80800 | 80800 COMPANY DISCOUNT ON SHARE PURCHASES | (768,566.33) |
| 80900 80900 | 80900 OTHER INCOME/EXPENSE | 74,007,399.28 |
| 90100 90100 | 90100 REALIZED CAPITAL GAINS/LOSSES | (3,959,534.93) |
| 91100 91100 | 91100 INVESTMENT SECURITIES | 5,784,240.27 |
| 91207 91207 | 91207 NXRT | (15,997,586.35) |
| 91209 91209 | 91209 NHT | 163,219.32 |
| 91403 91403 | 91403 HIGHLAND PROMETHEUS FUND | 20.00 |
| 91410 91410 | 91410 SELECT EQUITY FUND | (109,058,363.77) |
| 91445 91445 | 91445 CREDIT OPPORTUNITIES FUND | 6,830,992.36 |
| 91460 91460 | 91460 RESTORATION CAPITAL PARTNERS | 9,909,464.57 |
| 91462 91462 | 91462 PETROCAP PARTNERS II | (468,147.29) |
| 91463 91463 | 91463 PETROCAP PARTNERS III | 9,472.57 |
| 91471 91471 | 91471 HIGHLAND LOAN FUND | (4,746.24) |
| 91480 91480 | 91480 STARCK | 2,346,668.27 |
| 91485 91485 | 91485 WRIGHT | (19,196,588.45) |
| 91495 91495 | 91495 HIGHLAND CLO FUNDING, LTD | 129,003.42 |
| 91835 91835 | 91835 HIGHLAND CAPITAL MANAGEMENT LATIN AMERICA, LP | 4,004,360.11 |
| 91840 91840 | 91840 HIGHLAND CAPITAL MANAGEMENT SINGAPORE | (9,123.39) |
| 91850 91850 | 91850 HIGHLAND CAPITAL MANAGEMENT KOREA | 225,509.80 |
| 91881 91881 | 91881 EAGLE EQUITY ADVISORS | 247,196.95 |
| 91885 91885 | 91885 MAPLE AVENUE HOLDINGS | (83,374.05) |
| 91900 91900 | 91900 OTHER INVESTMENTS | 424,641.00 |
| 99990 99990 | 99990 SYSTEM DEFAULT | (4,458.02) |

|  | Total partners capital | (396,613,941.24) |
|  | Total liabilities and partners' capital | (571,536,513.25) |

003399

**EXHIBIT 118**

Case 19-34054-sgj11     Doc 4255-118     Filed 06/20/25     Entered 06/20/25 21:39:29
Desc Exhibit 118     Page 2 of 3                              20191015 Hunter Mountain Note Receivable

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Balance Type** | | | Actual | | | | | |

| Ledger | * List - Text | Highland Capital Management US | | Uploaded by: _____ |
|---|---|---|---|---|
| Category | * List - Text | Adjustment | | |
| Source | * List - Text | Spreadsheet | | Posted by: _____ |
| Currency | * List - Text | USD | | |
| Accounting Date | * List - Date | 10/15/2019 | | |
| Journal Name | Text | 20191015 Hunter Mountain Note R | | |
| Journal Description | Text | Hunter Mountain Note Receivable | | |

| Upl | Entity | Department | Account | Business Unit | Future | Debit | Credit | Line Description | Messages |
|---|---|---|---|---|---|---|---|---|---|
| | * List - Text | | | | | * Number | * Number | Text | |
| | 0010 | 000 | 14010 | 00 | 0000 | 61,002.36 | | Hunter Mountain Note Receivable - Interest | ⊙ |
| | 0010 | 000 | 14010 | 00 | 0000 | | - | Hunter Mountain Note Receivable Update - PIK | ⊙ |
| | 0010 | 000 | 14585 | 00 | 0000 | - | | Hunter Mountain Note Receivable Update - PIK | ⊙ |
| | 0010 | 210 | 80100 | 10 | 0000 | | 61,002.36 | Hunter Mountain Note Receivable - Interest | ⊙ |
| Totals: | | | | | | 61002.36 | 61002.36 | | |

Tip: This is not the end of the Template.  Unprotect the sheet and insert as many rows as needed.

003401

**"Contribution Note" Amortization Table**
**Interest and principal payable on the anniversaries of the effective date of the notes**

| | | |
|---|---|---|
| Beginning Principal | 63,000,000 | |
| Interest Rate | 2.61% | December 2015 Long-term AFR |
| Effective Date | 12/21/2015 | |

**Revised Schedule Incorporating Prepayments as of 01/05/17**

| Date | Interest Accrual | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | PIK | Ending Prin Bal | Total Paid | |
|---|---|---|---|---|---|---|---|---|---|
| 12/31/17 | 43,260.12 | - | 43,260.12 | 60,663,611.75 | - | - | 60,663,611.75 | - | |
| 03/31/18 | 390,407.74 | - | 433,667.86 | 60,663,611.75 | - | - | 60,663,611.75 | - | |
| 06/30/18 | 394,745.60 | - | 828,413.46 | 60,663,611.75 | - | - | 60,663,611.75 | - | |
| 09/30/18 | 399,083.46 | - | 1,227,496.92 | 60,663,611.75 | - | - | 60,663,611.75 | - | |
| 10/31/18 | 134,473.78 | - | 1,361,970.70 | 60,663,611.75 | - | - | 60,663,611.75 | | |
| 11/30/18 | 130,135.91 | - | 1,492,106.61 | 60,663,611.75 | - | - | 60,663,611.75 | | |
| 12/19/18 | 82,419.41 | (1,574,526.02) | - | 60,663,611.75 | (504,879.98) | - | 60,158,731.77 | (2,079,406.00) | prepayment |
| 12/21/18 | 8,603.52 | (8,603.52) | - | 60,158,731.77 | | 8,603.52 | 60,167,335.29 | - | |
| 12/31/18 | 43,023.77 | - | 43,023.77 | 60,167,335.29 | - | - | 60,167,335.29 | - | |
| 01/31/19 | 133,373.67 | - | 176,397.44 | 60,167,335.29 | - | - | 60,167,335.29 | | |
| 02/28/19 | 120,466.54 | - | 296,863.98 | 60,167,335.29 | - | - | 60,167,335.29 | | |
| 03/28/19 | 120,466.54 | (417,330.52) | - | 60,167,335.29 | (3,294,125.95) | - | 56,873,209.34 | (3,711,456.47) | prepayment |
| 03/31/19 | 12,200.47 | - | 12,200.47 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 04/30/19 | 122,004.72 | - | 134,205.19 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 05/31/19 | 126,071.54 | - | 260,276.73 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 06/30/19 | 122,004.72 | - | 382,281.45 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 07/31/19 | 126,071.54 | - | 508,352.99 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 08/31/19 | 126,071.54 | - | 634,424.53 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 09/30/19 | 122,004.72 | - | 756,429.25 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 10/15/19 | 61,002.36 | - | 817,431.61 | 56,873,209.34 | | | 56,873,209.34 | | |
| 10/31/19 | 65,069.18 | - | 882,500.79 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 11/30/19 | 122,004.72 | - | 1,004,505.51 | 56,873,209.34 | - | - | 56,873,209.34 | | |
| 12/21/19 | 85,403.30 | (1,089,908.81) | - | 56,873,209.34 | | 1,089,908.81 | 57,963,118.15 | - | |
| 12/21/20 | 1,516,982.14 | (1,516,982.14) | - | 57,963,118.15 | | 1,516,982.14 | 59,480,100.29 | - | |
| 12/21/21 | 1,552,430.62 | (1,552,430.62) | - | 59,480,100.29 | (4,033,126.51) | 1,552,430.62 | 56,999,404.40 | (4,033,126.51) | |
| 12/21/22 | 1,487,684.45 | (1,487,684.45) | - | 56,999,404.40 | (5,000,000.00) | 1,487,684.45 | 53,487,088.85 | (5,000,000.00) | |
| 12/21/23 | 1,396,013.02 | (1,396,013.02) | - | 53,487,088.85 | (5,000,000.00) | 1,396,013.02 | 49,883,101.87 | (5,000,000.00) | |

003402

**EXHIBIT 119**

003403

Digitally signed by Advance Performance Exponenta
PDF
Date: 2025.04.16 20:39:55 -05:00
Reason: Apex Certified
Location: Apex



IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

FSD NO.     OF 2025 (    )

IN THE MATTER OF SECTION 92 OF THE COMPANIES ACT (2025 REVISION)

AND IN THE MATTER OF CHARITABLE DAF HOLDCO LTD AND THE CHARITABLE DAF FUND LP

---

### AFFIDAVIT OF JAMES DAVID DONDERO

---

I, **JAMES DAVID DONDERO**, of 300 Crescent Court, Suite 700, Dallas, Texas, United States, 75201, **MAKE OATH AND SAY** as follows:

1. I am the President of NexPoint Advisors, L.P. (**NexPoint**), an investment advisor registered with the U.S. Securities and Exchange Commission (**SEC**). I am a Certified Public Accountant and Chartered Financial Analyst with over forty years of investment advisory experience managing billions of dollars of investments across various assets classes.

2. I make this affidavit in support of the petition (the **Petition**) filed by the Supporting Organizations (as defined below) seeking the winding up on the just and equitable basis of Charitable DAF HoldCo, Ltd (the **LP**) and the Charitable DAF Fund, LP (the **Fund**) pursuant to section 92(e) of the Companies Act (2025 Revision) (the **Act**) and Order 3, rule 3 of the Companies Winding Up Rules (2025 Consolidation) (the **CWR**).

3. I make this affidavit from matters within my own personal knowledge and believe the information contained herein to be true and accurate in all respects.

4. Now produced and shown to me and marked "**JDD-1**" is a bundle of true copy documents to which I refer in this affidavit. References to page numbers in this affidavit are references to that exhibit unless otherwise specified.

003404

HCMLPHMIT00003429

Case 19-34054-sgj11   Doc 4255-119   Filed 06/20/25   Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K   Document 35 Exhibit 119 Page 35 of 11 Page 116 of 168   PageID 9661

FSD2025-0099                        **Page 2 of 10**                        2025-04-16

## BACKGROUND

5.   I founded NexPoint in 2012. NexPoint is an alternative investment firm, with a particular focus on investment in the real estate sector. NexPoint has assets under management exceeding US$16 billion in value.

6.   I was formerly the President of Highland Capital Management, L.P. (**Highland**), also an SEC registered investment advisor which I founded in 1993. From that time until 2015, Highland was majority owned by me and/or my affiliates. In December 2015, I divested my majority stake of Highland (**2015 Transaction**). On 16 October 2019, Highland filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code (**Highland Bankruptcy**) in the Northern District of Texas. The Highland Bankruptcy plan was confirmed in February 2021, and the estate remains open as it makes distributions to creditors.

7.   In February 2021, as part of the Highland Bankruptcy, the employment contracts of the majority of Highland's employees were terminated. Many of the former back-office employees of Highland thereafter became employees of a newly formed company called Skyview Group (**Skyview**) that provides middle and back-office services to various clients, including companies in which I hold an interest such as NexPoint.

## THE FUND

8.   In addition to my business interests, I am a regular donor to philanthropic and charitable causes. The Fund is one of the vehicles I utilize to donate such funds to charitable organizations.

9.   In 2010, the finance, accounting, and tax staff of Highland identified certain assets to be donated to a charitable foundation. In 2011, I requested the Donor Advised Fund (or DAF) to be formed and structured in a way that allowed these donations to be receipted and distributed to certain charitable foundations, as the ultimate beneficial owners of the Fund's economic interest. The structure proposed by the tax and legal advisors to effect this was for the Fund to have one limited partner (i.e. the LP) which would issue 'participation shares' to be held by certain charitable supporting organizations (together, the **Supporting Organizations**) and in turn each of those entities would provide funding directly to certain charitable foundations in the U.S. (together, the **Charities**).

10.  The Amended and Restated Limited Partnership Agreement of the Fund dated 7 November 2011 (**ARLPA**), and the Amended and Restated Memorandum and Articles of Association of the LP dated 19 January 2015 (**Articles**), govern the Fund and its partners.

11.  The LP holds 99% ninety-nine percent (99%) of the economic interest in the Fund. The remaining one percent (1%) is (or at least was as at the time of the Fund's formation) held by its general partner, Charitable DAF GP, LLC (the **GP**), a Delaware company incorporated on 25 October 2011.

003405

HCMLPHMIT00003430

12. In addition to the Participation Shares, the LP issued 100 management shares (the ***Management Shares***) with the only voting rights for any and all shareholders in the LP. In essence, the Articles and ARLPA therefore grant complete control of the Fund structure to the holder of the Management Shares in the LP and the entirety of the issued share capital of the GP. Those shares have at all material times been held by a single individual, who as a result has substantial control over the entire Fund structure (the ***Control Position***).

13. The ARLPA provides that the Fund was formed to make investments, directly or indirectly, on behalf of certain entities "*for the economic benefit of the Limited Partner and its <u>Indirect Charitable Owners</u>*" and contemplates the engagement of investment (and other service) advisors to effect this. In this context, the Control Position is responsible for the governance and management functions of the Fund as required in order for the Fund to carry out its sole purpose of benefiting the Supporting Organizations and the Charities they support.

**GRANT SCOTT**

14. I initially selected Grant Scott for the Control Position, a person I have known for years who also has great integrity.

15. From 2010 until the 2015 Transaction, the Fund operated as a non-discretionary advised account of Highland, meaning Highland provided back-and-middle-office staff to the Fund and also provided recommendations regarding potential investments to Mr Scott as the Control Person. However, Mr Scott had complete discretion in adopting or rejecting the investment recommendations provided to the Fund by Highland. He also had final discretion over payments made by the Fund to third parties. In his position as the Control Person, Mr Scott was paid $60,000 USD per annum.

16. After the 2015 Transaction, my affiliates and I no longer owned a majority stake in Highland. Subsequently, I was advised that, as a result of the change of ownership, the Fund was permitted to enter into a paying Investment Advisory Agreement with Highland. This form of investment advisory agreement was in place from January 2017 until it was terminated effective March 2021.

**MARK PATRICK**

17. Mark Patrick was hired as Tax Counsel at Highland in 2008. His job duties included maximizing tax saving to Highland's limited partners, including me and my affiliates. In that role, Mr. Patrick directly represented me as my personal tax counsel. He represented me in tax efficiency planning and tax-deductible charitable giving, among other things. He provided the same services for various trusts and companies affiliated with me. Mr Patrick served that role at Highland from 2008 until his departure in February 2021.

18. In March 2021, Mr Patrick was hired by Skyview as Tax Counsel and continued to perform

003406

HCMLPHMIT00003431

Case 19-34054-sgj11   Doc 4255-119   Filed 06/20/25   Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K    Document 35-119   Filed 08/02/25   Page 118 of 168    PageID 9663

FSD2025-0099                          **Page 4 of 10**                          2025-04-16

substantially similar tax counsel duties for me. At Mr Patrick's request, his job title was changed to "Managing Director, Tax" in September 2021, although his role with respect to me and my affiliates remained substantially the same.

19.   The legal structure of the Fund (including as regards its partners and ultimate beneficiaries as discussed above) was created in 2011 on the advice of Mr Patrick working with outside counsel. Mr Patrick advised me that, to avoid potential negative findings by the U.S. Internal Revenue Service, as the donor/grantor of assets to the Fund, I could not have any control over the Fund or its entities. I followed his advice as my tax counsel.

20.   In March 2021, Mr Scott informed me that he wanted to resign from the Control Position. The Fund had become engaged in certain disputes arising from the Highland Bankruptcy, and he did not believe he was equipped to handle those disputes. Mr Patrick suggested to Mr Scott and me that he was prepared to take on the Control Position and, in that role, to handle the litigation related to the Highland Bankruptcy as it affected the Fund. At the time, Mr Patrick was my attorney and Mr Scott was my trusted friend, and I was happy for Mr Scott to pass the Control Position to Mr Patrick.

21.   On 25 March 2021, Mr Scott: (i) resigned as director of the LP, (ii) appointed Mr Patrick as director of the LP, and (iii) transferred to Mr Patrick the Management Shares for nominal consideration. Mr Patrick therefore assumed the Control Position from that date.

22.   At some point, I understand that a person named Paul Murphy based in the Cayman Islands also was appointed as director to the LP and a portion of the Fund's subsidiaries, giving those entities two directors. However, I understand that in the event of a dissenting vote by Mr Murphy, Mr Patrick's vote counts as the tiebreaker for corporate voting.

**MR PATRICK'S CONTROL OF THE FUND**

23.   In the initial period following Mr Patrick's assumption of the Control Position, there was no noticeable change in the management of the Fund. NexPoint provided, without charge, investment ideas to the Fund, as Highland previously had done, and Mr Patrick was free (as Mr Scott had been) to decide whether or not the Fund wished to follow NexPoint's recommendations. This approach was similar to the non-discretionary advised account status of the Fund prior to 2017.

24.   Subsequently, however, communications between Mr Patrick and Skyview and me began to become less frequent, and over time I came to suspect that Mr Patrick was utilizing the Control Position not for the benefit of the Supporting Organizations, the Charities or the Fund, but rather for his own personal enrichment.

25.   On 28 June 2023, Mr Patrick sent an email to Lauren Short, an employee of NexPoint, requesting that the Highland Dallas Foundation (i.e. the Supporting Organization that supports the Dallas

003407
HCMLPHMIT00003432

Foundation) "*direct $10,000*" to Creative HEARTS TX, a non-profit entity formed on 13 June 2023. Following due diligence, Ms Short learned that the directors of the entity were Mr Patrick, Darees Patrick and Alyse Patrick (his daughter and wife). Mr Patrick had made the grant request without disclosing his and/or his family's involvement.

26.  Ms Short discussed the matter with Mr Patrick, who did not provide many details, but said the non-profit was formed to facilitate paying for trainers or speakers on self-defense training for teenage girls. Ms Short understood that Patrick's expectation was that this would be an annual donation to a "club" at his daughter's school. While Ms Short inquired, there was no detail forthcoming as to whether or not Creative Hearts would be a pass-through donating the monies to other charities or would directly do any work with the trainers or speakers itself. There also was not clarity if Creative Hearts' members intended to take a salary from the grant. The grant payment was authorized on 5 September 2023, but Mr Patrick was informed that further payments were unlikely. I was informed of this process by Ms Short and her supervisor. Contemporaneously with the grant approval, my team also informed the Dallas Foundation of the situation.

27.  As another example, in or around September 2023, I was contacted by Kevin Cronin of Fortaris Capital Advisors (**Fortaris**). Fortaris provides litigation support services including due diligence, internal investigations, fraud detection, asset verification and in-depth background checks. Mr Cronin is a former police sergeant and Special Agent with the Department of Homeland Security.

28.  Fortaris was at the time engaged by the Fund in respect of an unrelated matter and Mr Cronin was known to me personally. In September 2023, Mr Cronin and I met, and he informed me that he had been approached by Mr Patrick with a proposition whereby Mr Patrick (on behalf of the Fund) would engage an entity controlled by Mr Cronin (other than Fortaris) at a monthly fee of between $25,000 and $50,000, and that this fee would be split between Fortaris and Mr Patrick as a supplement to Mr Patrick's compensation. Mr Cronin informed me that he had asked Mr Patrick if this arrangement would amount to fraud, and that Mr Patrick's response had been: "*you can't steal from yourself.*"

29.  Mr Cronin informed me that he understood from this statement that Mr Patrick believed he owned the Fund and could use the funds controlled by it however he pleased. Mr Cronin further informed me that he was uncomfortable about Mr Patrick's proposal and that he subsequently communicated this to Mr Patrick, Mr Patrick cut off all further communications between them.

30.  Mr Cronin's allegations that Mr Patrick was seeking to make a secret, undisclosed personal profit from the Fund were extremely concerning. I have subsequently been informed by my U.S. attorneys that, had Mr Cronin agreed with this proposal, it would have likely constituted U.S. federal wire fraud, and/or violations of the Texas Penal Code's prohibitions on bribery and misapplication of fiduciary property. Shortly after Mr Cronin contacted me, I met with Mr Patrick and confronted him about the allegations, which he admitted to me were true. I informed the Supporting Organizations

003408
HCMLPHMIT00003433

Case 19-34054-sgj11   Doc 4255-119   Filed 06/20/25   Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K   Document 13   Filed 09/02/25   Page 120 of 168   PageID 9665

FSD2025-0099                    **Page 6 of 10**                    2025-04-16

about the matter and Mr Patrick's admission. However, at the time, both the Supporting Organizations and I were concerned that under the Articles, the Supporting Organizations did not have the power (in their capacity as Participating Shareholders) to limit Mr Patrick's powers or remove him from his position.

31.  Given the situations described above, and the lack of communication about the Fund, I became increasingly concerned about Mr Patrick's management of the Fund, including the potential misuse and/or misappropriation of its assets. In June 2024 therefore I requested that my team at NexPoint analyze the financial information of the Fund that I had in my possession, covering the calendar years ending 2018 to 2023 and the first half of 2024. My team produced an annual expense summary of that information (the *Expense Summary*) which indicated substantial increases in expenditures during Mr Patrick's tenure, particularly during early 2023 and mid-2024, as follows:

(a)  Directors' fees increased from around US$40,000 in 2022 to almost US$600,000 in 2023 – and increased even further to around US$2.25 million in the first half of 2024 alone.

(b)  Expenses overall for the first half of 2024 were around US$18.3 million – roughly the same amount spent over the entire course of 2023 (i.e. US$18.6 million).

32.  The Expense Summary reinforced my concern that Mr Patrick is using the Control Position for his own enrichment rather than to benefit the Supporting Organizations and the causes they support. I therefore directed my employees at NexPoint to provide the Expense Summary to the Supporting Organizations, and which they promptly did.

33.  In August 2024, I became aware of yet another issue concerning Mr Patrick. NexPoint and its affiliates, through their investment activities, regularly obtain material non-public information (*MNPI*) related to those investments.  As a service provider to NexPoint and its affiliates, Skyview employees also obtain the same MNPI. Trading on the basis of MNPI amounts to 'insider trading' which is prohibited under U.S. securities laws. As a result, NexPoint and its affiliates, and Skyview, all have the same robust regulatory compliance program to prevent, among other things, insider trading (*Compliance Policy*). NexPoint and its affiliates, and Skyview, require their employees to abide by the Compliance Policy at all times and employees are required to confirm in writing on a quarterly basis that they will not use MNPI while trading.  Mr Patrick completed the annual 2023, Q4 2023, Q1 2024, and Q2 2024 certifications, among others.

34.  I was informed that my director of charitable giving had been contacted by Ms Diaz, the CEO of the Highland Dallas Foundation, Inc. (*Dallas Foundation*), one of the Charities. Ms Diaz stated that on 28 August 2024, Mr Patrick contacted the Dallas Foundation's attorney to provide information about an asset held by the Dallas Foundation, which was held directly and separately from the Fund. This information was obtained by Mr Patrick through his employment at Skyview and constituted MNPI,

003409

HCMLPHMIT00003434

which is prohibited by U.S. securities laws from being disclosed and/or acted upon. On the basis of this MNPI, Mr Patrick advised the Dallas Foundation to exercise a put option it held in a NexPoint affiliated asset. The Dallas Foundation did not act on the information or recommendation provided by Mr Patrick, but in the event it had exercised the put option, both the Dallas Foundation and Mr Patrick would have committed violations of the U.S. securities laws that prohibit insider trading.

35.   Upon receipt of the allegations against Mr Patrick, Skyview's compliance department commenced an internal investigation which, due to the serious nature of the allegations, was conducted without Mr Patrick's knowledge, so as to avoid potentially tipping off Mr Patrick about the investigation. By the end of September 2024, the investigation was substantially complete, and the conclusion had been reached that Mr Patrick's actions constituted a serious breach of his compliance and employee obligations. On 1 October 2024, as part of the finalisation of the investigation report, Skyview's chief compliance officer interviewed Ms Diaz about the allegations against Mr Patrick, which I understand confirmed Skyview's conclusions. The final investigation report was issued on 11 October 2024 and concluded that Mr Patrick had attempted a serious breach of U.S. securities laws. A copy of the report and its attachments is at **page 1**.

36.   On 2 October 2024, Mr Patrick abruptly resigned his position from Skyview and thereafter became openly hostile towards the Charities, my affiliated companies, and me. Although neither I nor anyone at Skyview has direct evidence of Mr Patrick having been tipped off about the investigation, the timing of his resignation causes me to conclude that Mr Patrick became aware of the investigation into his behaviour and resigned before the report was published.

37.   On the same day that Mr Patrick resigned his position at Skyview, he also terminated Skyview's service agreement with the Fund, and as a result all legal, compliance, back office and other services provided to the Fund. Mr. Patrick and Mr. Murphy have stated that that they intend to take on the role of investment advisors for the Fund. I am not aware of Mr. Murphy's qualifications for this role, nor am I aware of any third-party investment advisor that has been retained by the Fund to fill this role. Based on my knowledge and expertise in investment management, and my sixteen years working with Mr Patrick as my counsel, I believe that Mr Patrick is a well-qualified tax counsel, but does not have the experience, training, or expertise to be an investment professional.

38.   After his resignation from Skyview and the termination of Skyview's services agreement with the Fund, I have received repeated reports and evidence of Mr Patrick causing certain DAF entities to liquidate their assets, some at below-market value. For example, on 20 February 2025, Mr Patrick's subordinate Shawn Raver asked for the in-bound wire instructions for one of my affiliates that owned a position in a trust called Hunter Mountain. Hunter Mountain owns most of the distribution rights of the equity position in the Highland Bankruptcy, meaning most of the residual value of the estate should be distributed to Hunter Mountain at the close of the Highland Bankruptcy. According to

003410
HCMLPHMIT00003435

Case 19-34054-sgj11    Doc 4255-119    Filed 06/20/25    Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K    Document 35-13    Filed 09/02/25    Page 122 of 168    PageID 9667

FSD2025-0099                        **Page 8 of 10**                        2025-04-16

Hunter Mountain's own filings, this value has been calculated in excess of $100 million gross, with approximately $17 million net value.

39. After additional inquiries from accounting staff, Mr Raver disclosed that the entire Hunter Mountain position had been sold to an unidentified party for $1 million. The Fund has not disclosed the identity of the purchaser. I am familiar with the Highland Bankruptcy estate and there is no valuation, net, gross, or otherwise, that I can imagine that would support a $1 million sales price. Additionally, given my founding and my affiliates' ownership of Highland, Mr Patrick would know that I was one of a few natural buyers of the Hunter Mountain position. While Mr Patrick of course would not be obliged to sell Hunter Mountain to me, the fact that Mr Patrick authorized the sale of Hunter Mountain at a below-market value without even approaching a natural buyer indicates a non-market, non-fiduciary reason for the sale.

40. Atlas IDF, L.P. is a fund controlled by its general partner Atlas IDF GP, LLC, a wholly owned subsidiary of the DAF. The economic beneficiaries of Atlas IDF are the holders of annuity policies issued by Crown Global Insurance Company. The majority annuity policy holder is Empower Dallas Foundation, a charitable foundation for which I serve as President whose purpose is to benefit the Dallas Foundation.

41. On 20 February 2025, Mr Patrick in his capacity as the general partner of Atlas IDF GP, LLC, sent a letter to Crown Global Insurance advising of the intention to dissolve Atlas in accordance with the partnership agreement dated 30 November 2015 on the basis of (i) concerns about the long-term availability and viability of back-office support; (ii) unsuccessful efforts to sell the defaulted Notes issued by HCRE Partners (one of my affiliates) dated 7 May 2014 in the amount of $2,3M and 27 May 2014 in the amount of $5M, held by the Partnership; and (iii) the decision by an affiliate of the GP to purchase the Notes at a price above their appraised value of zero dollars to facilitate an orderly wind-up. At the time, the amounts outstanding on the two Notes, including accumulated interest, was in excess of $13M. The intention was to sell the Notes collectively for $500,000. Mr Patrick launched litigation related to these Notes prior to the 20 February 2025 attempted sale of the Notes to an affiliate.

42. On 27 February 2025, H&K as counsel for the Empower Dallas Foundation (the policyholder), sent an email to Crown Global advising that the foundation was gathering information and requested that Crown Global therefore withdraw its consent to the proposed sale of the Notes to CLO Holdco. On 28 February 2025, Mr Patrick sent a further letter to Crown Global noting the revocation of consent to sell the Notes, and noting that: "*in addition to the purchase of the "Notes" for $500,000, we also intend to include a provision in the purchase and sale documents that, if the Notes are repaid in full within 12 months, all amounts received (minus fees and expenses of collection and purchase price) will be remitted to you as the sole limited partner of Atlas IDF, LP.*" The initial zero valuation and

003411

HCMLPHMIT00003436

Case 19-34054-sgj11   Doc 4255-119   Filed 06/20/25   Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K   Document 35 Exhibit 119   Page 123 of 168   PageID 9668

FSD2025-0099                    **Page 9 of 10**                    2025-04-16

proposed $500,000 sale price was confusing given that HCRE Partners had offered to pay the full amounts due in an amortizing schedule. After the withholding of consent, the revised offer of 28 February 2025 still is confusing given that the amortization schedule is longer than 12 months.

**ATTORNEY GENERAL INVESTIGATION**

43.   I have become aware that, on 14 March 2025, the Texas Attorney General (*Texas AG*) commenced an investigation into Charitable DAF GP, LLC (the Fund's former general partner) in relation to the organization, conduct and management of Charitable DAF GP, LLC, and its related entities.

44.   I understand that the Texas AG has the power to investigate a charity, should it deem necessary, to determine whether a charity is complying with Texas law.

45.   I understand that the Charities have requested information about the investigation from the Texas AG, but do not have knowledge of any further details.

**DONATIONS TO THE CHARITIES**

46.   Until Mr Patrick's departure in October 2024, I regularly donated to through the Charities to the Fund as part of my charitable giving program. My affiliates and I, which donated through the Charities to the DAF entities in 2023 and in various years prior, and are the primary funding source for the Fund. As allowed pursuant to US law, I direct the Charities to utilize the Fund's assets to sponsor charitable causes I particularly value, including underprivileged youth education, cancer research, heart health, veterans' services, and local institutions such as zoos and museums. Though I wish to continue to support these charitable causes, I will not give any future donations through the Charities to the Fund while it is under Mr Patrick's management and/or control.

**FUNDING OF PROCEEDINGS**

47.   As stated above, I do not hold a controlling interest in any of the Charities or the Supporting Organizations. However, I sit on the boards of the Supporting Organizations simply for the purpose of overseeing how the Charities are deploying the Fund's assets for charitable purposes, and the impact of those donations in the community. In this context, I became aware that the Supporting Organizations were meeting to vote on the decision to take legal action to take steps to preserve the assets of the Charities they exist to support. Given my connection with the Fund and personal relationship with Mr Patrick, I recused myself from that meeting and was not otherwise involved in the decision taken by the Supporting Organizations to commence these proceedings.

48.   The Supporting Organizations approached me about the costs associated with legal action and their reticence to use funds that should and otherwise would be used for charitable purposes, and asked whether I would be prepared to fund the action personally. I agreed to do so. I have not and will not

003412
HCMLPHMIT00003437

Case 19-34054-sgj11   Doc 4255-119   Filed 06/20/25   Entered 06/20/25 21:39:29
Case 3:25-cv-01876-K   Document 35   Exhibit 119   Filed 06/21/25   Page 124 of 168   PageID 9669

FSD2025-0099                    **Page 10 of 10**                    2025-04-16

at any time receive a benefit, nor do I have control of the proceedings, because of this funding arrangement. The Supporting Organizations have decision making authority in relation to these proceedings. My concern is solely to ensure that the Fund, and the funds that I have donated over time that are held in the Fund, are used only to benefit the Charities and the causes they support.

SWORN by the above named        )
JAMES DAVID DONDERO              )
This 9th day of April 2025       )
at 4:46 pm                       )

_____
JAMES DAVID DONDERO

BEFORE ME:

_____
NOTARY PUBLIC

KRYSTAL HUGHES
Notary ID #129488160
My Commission Expires
July 12, 2025

THIS AFFIDAVIT was presented by Johnstone Law Ltd., attorneys for the Petitioners, whose address for service is Unit 9, Tropic Centre, 18 Earth Close, Grand Cayman, KY1-1109, Cayman Islands (Ref:AJ/RZ/0016)

003413

HCMLPHMIT00003438

# EXHIBIT 120

003414

| | |
|---|---|
| **From:** | John A. Morris |
| **Sent:** | Thursday, June 19, 2025 6:10 PM |
| **To:** | Andrea T. Bates; Hayley R. Winograd |
| **Subject:** | FW: Highland -- Request to File Rule 2019 Statement |

---

**From:** Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Sent:** Monday, June 16, 2025 4:24 PM
**To:** David Curry <dcurry@okinadams.com>; Matthew Okin <mokin@okinadams.com>
**Cc:** John A. Morris <jmorris@pszjlaw.com>; Gregory V. Demo <GDemo@pszjlaw.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>
**Subject:** Highland -- Request to File Rule 2019 Statement

Gentlemen –

As your law firm purports to represent  multiple parties in connection with the Highland bankruptcy case and next week's hearing we hereby request that you comply with your obligations to file promptly a Rule 2019 statement with the Bankruptcy Court.

Best,
Jeff

**Jeff Pomerantz**
Pachulski Stang Ziehl & Jones LLP
Tel: 310.277.6910 | Cell: 310.489.0285 | Fax: 310.201.0760
jpomerantz@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | New York | Wilmington, DE | Houston | San Francisco

003415

**EXHIBIT 121**

003416

Case 19-34054-sgj11 Doc 1808 Filed 01/22/21 Entered 01/22/21 00:12:05 Page 1 of 66
Case 3:25-cv-01876-K Document 35-18 Filed 09/12/25 Page 128 of 168 PageID 9673
Docket #1808 Date Filed: 01/22/2021

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

---

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

---

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
    ikharasch@pszjlaw.com
    gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
    ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



¨1¤}HD5!,     =/«
1934054210122000000000013

Article IV.B.1-5

cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.  The Claimant Trust**[2]

1.  *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

003419

Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.      *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.      *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and

003420

monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.        *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5.        *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

(i)        the payment of the Claimant Trust Expenses;

(ii)       the payment of other reasonable expenses of the Claimant Trust;

(iii)      the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)      the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)       the orderly monetization of the Claimant Trust Assets;

(vi)      litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)     the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)    the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)      the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. The Litigation Sub-Trust Agreement generally will provide for, among other things:

        (i)      the payment of other reasonable expenses of the Litigation Sub-Trust;

        (ii)      the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

        (iii)      the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

    *6.*          *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust

003422

Article IV.B.7

Agreement, as appropriate. The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7. *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

8. *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9. *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

003424

Article IV.B.10

003425

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.        _Claimant Trust Assets._

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

11.        _Claimant Trust Expenses._

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12.        _Trust Distributions to Claimant Trust Beneficiaries._

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, _provided_ that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13.        _Cash Investments._

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; _provided, however,_ that such investments are

31

003426

Article IV.D

003427

5.        *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.        *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.        *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement.  As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor.  Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

**D.    Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in

003428

the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

### E.    Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of

003429

Article VII.D.1-2

damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Filing of Proofs of Claim

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

### B.    Disputed Claims

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

### C.    Procedures Regarding Disputed Claims or Disputed Equity Interests

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

### D.    Allowance of Claims and Equity Interests

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

003431

1.     *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

2.     *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

3.     *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH**

003432

Article XI

Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or

003434

expense reimbursement that may be requested by a purchaser thereof; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such

54

003435

orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.   Payment of Statutory Fees and Filing of Reports

All outstanding Statutory Fees shall be paid on the Effective Date.  All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed.  The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

### B.   Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

### C.   Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then:  (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement

003436

**EXHIBIT 122**

003437

*DRAFT*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [_____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____ , 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

(vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.    Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.    For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

2

Section 2.2(a)-(b)

2.2   <u>Objectives</u>.

      (a)     The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

      (b)     It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3   <u>Nature and Purposes of the Claimant Trust</u>.

      (a)     The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, <u>provided</u>, <u>however</u>, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust,

003441

Section 3.2(a)-(b)

2.5 <u>Principal Office</u>.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6 <u>Acceptance</u>.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7 <u>Further Assurances</u>.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8 <u>Incidents of Ownership</u>.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## <u>ARTICLE III.</u><br><u>THE TRUSTEES</u>

3.1 <u>Role</u>.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2 <u>Authority</u>.

(a) In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b) The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; <u>provided</u>, <u>however</u>, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or

003443

otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)    solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)    open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)    as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)    settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)    sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)    upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)    exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)    protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)    obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and

12

003444

Section 3.2(c)(iv)

otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)     solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)     open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)     as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)     settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)     sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)     upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)     exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)     protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)     obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and

003446

Section 2.3(b)(ix)

pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)    The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)    to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)    to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)    to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)    to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)    to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)    to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)    to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)    to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)    to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

003448

**EXHIBIT 123**

Case 19-34054-sgj11 Doc 1811-4 Filed 01/22/21 Entered 01/22/21 00:29 Page 29 of 23
Case 3:25-cv-01876-K    Document 35-1 Exhibit Filed 09/16/25 Page 25 of 9  Page 161 of 168    PageID 9706
*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee and Delaware Trustee, the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Section 2.2

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1     Establishment of Sub-Trust.

(a)     The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement. The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date. Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims. For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges. For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents. For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

5

003452

Section 3.2(a)
Section 3.2(b)
Section 3.2(c)(v)

3.2    <u>Authority</u>.

(a)    In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims.  The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b)    The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i)    hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii)    perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii)    subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)    determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)    subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all

003454

Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)    with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii)    subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)    make all payments relating to the Litigation Sub-Trust Assets;

(ix)    assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

(x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)    to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)    take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the

8

003455

Section 3.3(b)(iii)

Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

003457