IN THE UNITED STATES DISTRICT CORT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| Highland Capital | § | Case No. 19-34054-sgj11 |
| Management, L.P., | § | |
| | § | |
| Reorganized Debtor | § | |
| | § | |
| The Dugaboy Investment Trust | § | |
| and Patrick Daugherty, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-1876-K |
| | § | (Consolidated with Civil Action |
| Highland Capital | § | No. 25-CV-1901-K) |
| Management, L.P. et al., | § | |
| | § | |
| Appellees. | § | |

## APPELLANT PATRICK DAUGHERTY'S BRIEF

Jason S. Brookner
State Bar No. 24033684
Andrew K. York
State Bar No. 24051554
William N. Drabble
State Bar No. 24074154
Joshua D. Smeltzer
State Bar No. 24113859
Drake M. Rayshell
State Bar No. 24118507

**Gray Reed & McGraw LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email: jbrookner@grayreed.com
Email: dyork@grayreed.com
Email: jsmeltzer@grayreed.com
Email: wdrabble@grayreed.com
Email: drayshell@grayreed.com

*Counsel for Appellant Patrick Daugherty*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................ii

TABLE OF AUTHORITIES ..........................................................iv

STATEMENT OF JURISDICTION ..............................................1

ISSUE PRESENTED ....................................................................2

STATEMENT OF FACTS .............................................................3

    I.    Highland's Bankruptcy ..................................................3

    II.   Daugherty's Claims........................................................3

    III.  The Plan ..........................................................................5

    IV.  Cram Down and Confirmation of the Plan..................8

    V.    Partial Settlement of Daugherty's Claims ..................9

    VI.  The HMIT Litigation....................................................11

    V.    The Settlement Agreement.........................................13

    VI.  The Bankruptcy Court's Approval of the Settlement
          Agreement ...................................................................15

SUMMARY OF THE ARGUMENT .........................................16

STANDARD OF REVIEW.........................................................18

ARGUMENT ...................................................................................... 19

I.   Because the Settlement Agreement Violates the
     Absolute-Priority Rule, It Is Not "Fair and Equitable." ............ 19

II.  The Settlement Agreement Impermissibly Alters
     Creditors' Rights Under the Plan and Claimant Trust
     Agreement. ................................................................................. 27

III. Daugherty's Consent to Payment of a Junior Claim
     Does Not Estop Him from Challenging the Settlement
     Agreement. ................................................................................. 34

CONCLUSION .................................................................................. 36

CERTIFICATE OF COMPLIANCE .......................................................... 38

CERTIFICATE OF SERVICE ................................................................. 38

4907-2353-2152.3

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adam v. Itech Oil Co.* (*In re Gibraltar Res., Inc.*),
210 F.3d 573 (5th Cir. 2000) ................................................................... 1

*Columbia Gulf Transmission Co. v. La. Nat. Gas Pipeline,*
*Inc.*, Civ. A. No. 93-239, 1994 WL 693361
(E.D. La. Dec. 9, 1994) ......................................................... 20

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017) ........................................... 16, 23, 25, 35

*Davidson v. Davidson* (*In re Davidson*),
947 F.2d 1294 (5th Cir. 1991) ...................................... 34, 35

*DISH Network Corp. v. DBSD N. Am., Inc.*,
634 F.3d 79 (2d Cir. 2011) ........................................... 35

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*,
Civil Action No. 3:24-CV-1531-X, 2025 WL 2163271
(N.D. Tex. July 30, 2025) ..................................................... 12

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*
(*In re Highland Cap. Mgmt., L.P.*),
Case No. 19-34054-sgj-11, 2024 WL 2703149
(Bankr. N.D. Tex. May 24, 2024) ................................... 12, 30

*Eubanks v. FDIC*,
977 F.2d 166 (5th Cir. 1992) ......................................... 28

*Feld v. Zale Corp.* (*In re Zale Corp.*),
62 F.3d 746 (5th Cir. 1995) ............................................ 26

*First Nat'l Bank v. Crescent Elec. Supply Co.*
(*In re Renaissance Hosp. Grand Prairie, Inc.*),
713 F.3d 285 (5th Cir. 2023) ....................................... 18, 19

*In re Highland Cap. Mgmt., L.P.*,
    Case No. 19-34054-sgj-11, 2023 WL 5523949
    (Bankr. N.D. Tex. Aug. 25, 2023) ........................................................ 11

*In re Joint E. & S. Dist. Asbestos Litig.*,
    982 F.2d 721 (2d Cir. 1992) ............................................................... 28

*In re MCorp Fin., Inc.*,
    160 B.R. 941 (S.D. Tex. 1991) ............................................................ 20

*Motorola, Inc. v. Official Comm. of Unsecured Creditors*
    (*In re Iridium Operating, LLC*),
    478 F.3d 452 (2d Cir. 2007) ............................................................... 23

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*
    (*In re Highland Cap. Mgmt., L.P.*),
    48 F. 4th 419 (5th Cir. 2022) ........................................................ 9, 29

*In re Oakhurst Lodge, Inc.*,
    582 B.R. 784 (Bankr. E.D. Cal. 2018) .................................................. 28

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power*
    *Coop, Inc.* (*In re Cajun Elec. Power Coop, Inc.*),
    119 F.3d 349 (5th Cir. 1997) ............................................ 19, 21, 22, 26

*Official Comm. of Unsecured Creditors v. CIT Grp./Bus.*
    *Credit, Inc.*, 787 F.3d 173 (3d Cir. 2015) ............................................ 23

*Protective Comm. for Indep. Stockholders of TMT Trailer*
    *Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) .......................................................... 20, 21, 22, 25

*Raymond James & Assocs., Inc. v. Jalbert*
    (*In re German Pellets La., L.L.C.*),
    91 F. 4th 802 (5th Cir. 2024) ............................................................. 28

*Rivercity v. Herpel* (*In re Jackson Brewing Co.*),
    624 F.2d 599 (5th Cir. 1980) .......................................................... 19, 20

*SCH Corp. v. CFI Class Action Claimants*,
    597 F. App'x 143 (3d Cir. 2015) ......................................................... 28

4907-2353-2152.3

*Teta v. Chow* (*In re TWL Corp.*),
    712 F.3d 886 (5th Cir. 2013)............................................................. 19

*U.S. Brass Corp. v. Travelers Ins. Grp., Inc.*
    (*In re U.S. Brass Corp.*),
    301 F.3d 296 (5th Cir. 2002)............................................................. 28

*United States v. AWECO, Inc.* (*In re AWECO, Inc.*),
    725 F.2d 293 (5th Cir. 1984)............................................ 20, 23, 24, 25

**Statutes**

11 U.S.C. § 363 ................................................................................. 1, 15

11 U.S.C. § 1127 ....................................................................... 28, 29, 34

11 U.S.C. § 1129 .................................................................................. 35

11 U.S.C. § 1141 .................................................................................. 28

28 U.S.C. § 158 ...................................................................................... 1

28 U.S.C. § 1334 .................................................................................... 1

**Other Authorities**

Fed. R. Bankr. P. 8002 ........................................................................... 1

Fed. R. Bankr. P. 9019 ......................................................................... 20

4907-2353-2152.3

## STATEMENT OF JURISDICTION

The bankruptcy court had subject-matter jurisdiction to enter the order from which Appellant appeals, because the approval of a compromise or settlement with the reorganized debtor is a proceeding "arising in . . . cases under title 11." 28 U.S.C. § 1334(b).

The bankruptcy court entered its "Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement Between the Highland Entities and the HMIT Entities and Authorizing Actions Consistent Therewith" on June 30, 2025. ROA.22–25. Appellant timely appealed from that order on July 14, 2015, and filed an amended notice of appeal on July 17, 2025. ROA.1–21; *see also* Fed. R. Bankr. P. 8002(a)(1) (stating that, generally, "a notice of appeal must be filed with the bankruptcy clerk within 14 days after the judgment, order, or decree being appealed is entered").

This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). "A bankruptcy court's approval of a settlement order that brings an end to litigation between parties is a 'final' order" and "appealable as of right under 28 U.S.C. § 158." *Adam v. Itech Oil Co.* (*In re Gibraltar Res., Inc.*), 210 F.3d 573, 576 (5th Cir. 2000).

1

## ISSUE PRESENTED

1.  Did the bankruptcy court abuse its discretion by approving a settlement agreement that required payment to the reorganized debtor's former equity holder before its unsecured creditors had been paid in full?

## STATEMENT OF FACTS

### I.    Highland's Bankruptcy

Appellee Highland Capital Management, L.P. (Highland) is a Dallas-based investment firm founded by James Dondero and Mark Okada. ROA.3587. Dondero, through Appellant Dugaboy Investment Trust (Dugaboy) and Strand Advisors, Inc., and Okada, personally and through his own trusts, owned Highland's Class A limited-partnership interests. ROA.730, 3588. Those Class A interests represented 0.50% of Highland's total equity. ROA.730, 3588. The Class B and C interests, which represented the remaining 95.5%, were owned by Hunter Mountain Investment Trust (HMIT). ROA.730, 3588. Dondero originally controlled HMIT. *See* ROA.3812.

Faced with significant business litigation and multiple unpaid judgments, Highland filed for Chapter 11 bankruptcy on October 16, 2019, in the U.S. District Court for the District of Delaware. ROA.731, 3603. The case was later transferred to this Court. ROA.731, 3603.

### II.    Daugherty's Claims

Appellant Patrick Daugherty, a former limited partner and employee of Highland, filed a proof of claim, which he superseded and replaced twice. ROA.787, 3472–74. In his latest proof of claim (No. 205),

Daugherty asserted that he had a general, unsecured non-priority claim against Highland in the amount of $40,710,819.42. ROA.3474.

Part of that claim arose out of losses that Highland had allocated to Daugherty for the 2008 tax year. ROA.3480. Due to the financial crises, Highland lacked sufficient funds to pay Daugherty and other senior-level personnel the cash bonuses to which they were entitled. ROA.5040–41. In lieu of those bonuses, Highland allocated a share of its losses to its limited partners, which they could deduct from their other income, reduce their tax liability, and receive a refund. ROA.5040–41. Highland estimated that Daugherty's refund would be $1,475,816 and promised that his other compensation would be "fairly adjusted" if his "actual refund deviate[d] materially from [the] estimate." ROA.3513, 5043.

Daugherty thought the tax-refund scheme was "fishy," so he secured an agreement from Dondero that Highland would make Daugherty whole if the IRS disagreed with the tax treatment. ROA.5043, 5063, 5065. Highland then allocated approximately $4 million in losses to Daugherty, which he claimed on his return and received a refund of approximately $1.2 million. ROA.681, 5054, 5064.

4

As Daugherty anticipated, the IRS questioned the tax treatment and, in October 2009, it notified Daugherty that it was auditing Highland's and his returns. ROA.5048. That audit remains ongoing. ROA.5048–49; *see also* ROA.3508 ("It is currently unknown when, if, or how the 2008 Audit will be resolved."). Daugherty asserts that, if the audit ends in adverse determination and a material deviation between his tax refund and Highland's estimate, he is entitled to the substitute compensation that Highland promised. COA.788, 3506–07. He also asserts that Highland is required to reimburse him for any penalties and interest the IRS assesses (collectively, the Tax-Refund Claim). ROA.5044.

## III.  The Plan

One month after Daugherty filed his third and final proof of claim, Highland filed its "Fifth Amended Plan of Reorganization of Highland Capital Management, L.P." (Plan). ROA.3673–737. The Plan creates eleven classes of  creditors and equity holders and three classes of administrative claimants. ROA.3696–702. Classes 8 and 9 consist of general unsecured claims and subordinated claims, respectively. ROA.3696, 3700–01. Class 10 consists of the Class B and C limited-

partnership interests owned by HMIT, and Class 11 consists of the Class A limited-partnership interests owned by Dugaboy and others. ROA.3684. 3701–02.

The Plan also creates four new entities: (1) the Reorganized Debtor (still named Highland); (2) its new general partner; (3) the Claimant Trust and (4) the Litigation Sub-Trust. ROA.3702–03. Under the Plan, the Litigation Sub-Trust is responsible for "investigating, prosecuting, settling, or resolving" claims pending against Highland under the direction of its trustee, Marc Kirschner. *See* ROA.3705.

The Claimant Trust is responsible for managing and monetizing assets of the estate, resolving claims, and "winding down the Reorganized Debtor's business operations." ROA.3683, 3705, 3710. The Claimant Trustee also makes distributions of the net proceeds of the Claimant Trust's assets to holders of allowed Class 8 and Class 9 claims as trust beneficiaries. ROA.3683, 3700–01, 3717–18. Those distributions must be equal to the holder's pro rata share or "such other less favorable treatment as to which [the] Holder and the Claimant Trustee have agreed upon in writing." ROA.3700–01.

In contrast, the Plan states that each holder of allowed Class 10 and Class 11 interests "shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interest or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing." ROA.3701–02. The Plan's definition of "Contingent Claimant Trust Interests" states that those rights "shall not vest . . . unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full . . . and all Disputed Claims in Class 8 and 9 have been resolved." ROA.3685. "Disputed Claims" means any claim, as that term is by the Bankruptcy Code, "that is not yet Allowed." ROA.3685, 3683.

The Claimant Trust Agreement was a supplement to the Plan. ROA.3744–80; *see also* ROA.3683. It states that "the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the 'Equity Holders.')." ROA.3769. But those "Contingent Trust Interests shall not vest and the Equity Holders shall not have any rights under [the Claimant Trust

Agreement], unless and until the Claimant Trustee files . . . a certification that all GUC Beneficiaries have been paid indefeasibly in full . . . and all Disputed Claims have been resolved . . . ." ROA.3769. The Claimant Trust Agreement defines "GUC Beneficiaries" as the "Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests." ROA.3747.

## IV.    Cram Down and Confirmation of the Plan

Of the impaired and voting-eligible classes, Classes 2, 7, and 9 voted to accept the Plan, while Classes 8, 10, and 11 voted to reject it. ROA.3587, 3623. The bankruptcy court, however, confirmed the Plan as modified in spite of those rejections under the Bankruptcy Code's "cram down" provision. ROA.3582–671.

On February 22, 2021, the bankruptcy court issued its "Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief" (Confirmation Order). ROA.3582–671. In the Confirmation Order, the bankruptcy court concluded that the Plan was fair and equitable because "the holders of Equity Interests that are junior to the Claims in Class 8 and Class 9 will not receive or retain under the Plan on account of such

junior claim interest any property unless and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest . . . ." ROA.3626.

Several creditors and equity holders controlled by Dondero, including Dugaboy, appealed directly to the Fifth Circuit, but it affirmed "the confirmation order in large part." *See NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 48 F. 4th 419, 424 (5th Cir. 2022). Like the bankruptcy court, the Fifth Circuit concluded that the Plan was fair and equitable because, by its terms, "no trust property vests with class-10 or -11 claimants 'unless and until' class-8 claims 'have been paid indefeasibly in full.'" *Id.* at 434 (quoting 11 U.S.C. § 1129(b)(2)(B)(ii)).

The Plan took effect on August 11, 2021. ROA.731. On that date, the Claimant Trust and Litigation Sub-Trust were created, and James S. Seery, Jr. was appointed as the Claimant Trustee. ROA.731–32.

## V.    Partial Settlement of Daugherty's Claims

In November 2021, the newly reorganized Highland, the Claimant Trust, and Daugherty entered a settlement agreement. Under it, Daugherty received an allowed Class 8 claim in the amount of $8.25 million, an allowed Class 9 claim in the amount of $3.75 million, and a

one-time payment of $750,000 in full satisfaction of all his claims against Highland—except for the Tax-Refund Claim. ROA.3475. Daugherty retained that claim, and Highland retained the right to assert any defenses to it. ROA.3481. But the parties agreed that any litigation "concerning the validity and amount of the [Tax-Refund Claim] shall be stayed until the IRS makes a final determination . . . ." ROA.3481. Following an evidentiary hearing, the bankruptcy court approved that settlement agreement as being "fair and reasonable." ROA.1453.

The agreement to stay litigation concerning the Tax-Refund Claim created an issue as Highland's deadline to object to claims approached with no IRS determination in sight. *See* ROA.1454. To resolve that issue, Daugherty, Highland, and the Claimant Trust entered a Tolling Agreement to extend the claim-objection deadline. ROA.1452–59. In exchange for that extension, Highland and the Claimant Trust "agree[d] to reserve $2,650,353.00 on account of the [Tax-Refund Claim] in the 'Disputed Claim Reserve' as such term is defined in the Plan until the Parties resolve the [Tax Refund Claim] . . . ." ROA.1454. Daugherty, Highland, and the Claimant Trust subsequently amended the Tolling

10

Agreement to further extend the deadline. ROA.1461–62, 1464–66, 1468–69.

## VI.  The HMIT Litigation

Meanwhile, Dondero launched an "unrelenting barrage of meritless and harassing litigation, making good on his oft-mentioned alleged threat to 'burn down the place' after not achieving the results he wanted in the Highland bankruptcy case." *In re Highland Cap. Mgmt., L.P.*, Case No. 19-34054-sgj-11, 2023 WL 5523949, at *4 (Bankr. N.D. Tex. Aug. 25, 2023). In March 2023, HMIT attempted to join that barrage by filing an emergency motion for leave to file an adversary proceeding and assert breach-of-fiduciary-duty, conspiracy, and unjust-enrichment claims against Highland, the Claimant Trust, and Seery.[1] ROA.733.

The bankruptcy court denied HMIT's motion for leave, concluding that it lacked standing to assert its proposed claims and, in any event, those claims were not colorable. *In re Highland Cap. Mgmt.*, 2023 WL 5523949, at *48. But HMIT appealed to this Court, which has remanded for further proceedings. ROA.733.

---

[1] The Plan's gate-keeper provision required HMIT to file the motion for leave. ROA.3728–29.

In May 2023, Dugaboy and HMIT filed a "Complaint to (i) Compel Disclosures About the Assets of the Highland Claimant Trust and (ii) Determine (a) Relative Value of those Assets, and (b) the Nature of Plaintiffs' Interests in the Claimant Trust." ROA.733. Highland and the Claimant Trust moved to dismiss that complaint, which the bankruptcy court granted. *See Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), Case No. 19-34054-sgj-11, 2024 WL 2703149, at *2 (Bankr. N.D. Tex. May 24, 2024). It concluded that it lacked subject-matter jurisdiction over two of the counts and that the third count failed to state a claim upon which relief could be granted. *Id.* at *16. Dugaboy and HMIT appealed, but this Court affirmed. *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, Civil Action No. 3:24-CV-1531-X, 2025 WL 2163271, at *1 (N.D. Tex. July 30, 2025).

On January 1, 2024, HMIT filed a second motion for leave, this time attempting to commence an action in the Delaware Chancery Court to remove the Clamant Trustee. ROA.733. Highland and the Claimant Trust filed a motion to stay that second motion for leave, which the bankruptcy court granted. ROA.733. HMIT again appealed to this Court. ROA.734.

12

## V.   The Settlement Agreement

After a change in control over HMIT, it began negotiating with Highland, the Claimant Trust, and the Litigation Sub-Trust to settle the foregoing litigation (HMIT Litigation). In May 2025, HMIT and its associated parties[2] (HMIT Entities) entered a Settlement Agreement and General Release (Settlement Agreement) with Highland, the Claimant Trust, the Litigation Sub-Trust, and their associated parties. ROA.749–72. In the Settlement Agreement, HMIT promised, *inter alia*, to dismiss the HMIT Litigation with prejudice and provide broad, general releases to Highland, the Claimant Trust, Seery, and others. ROA.757, 760–63.

In exchange, Highland, the Claimant Trust, and the Litigation Sub-Trust promised, *inter alia*, to:

- pay $500,000 to HMIT;

- allow HMIT's Class 10 interests in the amount of $336,940,230.58;

- distribute $10 million pro rata to the holders of allowed Class 10 interests (i.e., HMIT) within five days after the bankruptcy court's approval of the Settlement Agreement;

---

[2] Those parties are Beacon Mountain, LLC, Rand Advisors, LLC, Rand PE Fund I, LP, Rand PE Fund Management, LLC, Atlas IDF, LP, and Atlas IDF GP, LLC. ROA.749.

- distribute an additional $6.5 million pro rata to holders of allowed Class 10 interests (i.e., HMIT) on December 1, 2027, subject to certain conditions precedent;

- distribute an additional $6.5 million pro rata to holders of allowed Class 10 interests (i.e., HMIT) on December 1, 2028, subject to certain conditions precedent; and

- distribute in-kind a promissory note in the original face amount of $24,268,621.69 from Dugaboy, as maker, to HMIT;

ROA.757, 758–59; *see also* ROA.734–35 (describing "the principal terms of the Settlement Agreement").

Before submitting the Settlement Agreement to the bankruptcy court for approval, Seery began negotiating with all the holders of allowed Class 9 claims—except for Daugherty. ROA.5017–18. Seery believed that Daugherty would attempt to hold up the Settlement Agreement so, rather than dealing with him, Seery proposed paying his Class 9 claim in full. ROA.5018. On May 16, the other holders of allowed Class 9 claims signed a written consent to the non-ratable distribution to Daugherty and the distributions to HMIT under the Settlement Agreement. ROA.1445–50.

Four days later, the Claimant Trust made a distribution of $797,269.56 to Daugherty, which paid his Class 9 claim in full. ROA.1443, 4984.

14

## VI. The Bankruptcy Court's Approval of the Settlement Agreement

On May 19, Highland, the Claimant Trust, and the Litigation Sub-Trust filed their "Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement with the HMIT Entities and Authorizing Actions Consistent Therewith." ROA.727–44. Daugherty and Dugaboy each filed an objection on June 9. ROA.785–97, 5192–99. In his objection, Daugherty argued that the Settlement Agreement was not fair and equitable and that "any settlement payments made to the HMIT Entities—a holder of Class 10 contingent equity interests—prior to the full satisfaction of Mr. Daugherty's Class 8 claim would be improper and subvert the Bankruptcy Code, [the] Confirmation Order, and the Claimant Trust Agreement." ROA.793.

On June 25, the bankruptcy court held an evidentiary hearing on Highland, the Claimant Trust, and the Litigation's Sub-Trust's motion to approve the Settlement Agreement. ROA.4899–5164. At the conclusion of the hearing, the bankruptcy court announced its ruling that the Settlement Agreement was "fair and equitable and in the best interest of the estate and within the range of reasonableness, given due regard for all the expense, delay, and likelihood of success." ROA.5154. It approved

the Settlement Agreement and specifically overruled Daugherty's and Dugaboy's objections. ROA.5156. The bankruptcy court entered an order to that effect five days later. ROA.22–25.

Daugherty and Dugaboy each filed appeals, which this Court consolidated in this proceeding. *See* ROA.1–22

## SUMMARY OF THE ARGUMENT

The bankruptcy court's approval of the Settlement Agreement runs headlong into "the cornerstone of reorganization practice and theory"— the absolute-priority rule. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) (quoting Bruce A. Markwell, *Owners, Auctions, and Absolute Priority in Bankruptcy Reorganizations*, 44 Stan. L. Rev. 69, 123 (1991)). Under that rule, senior creditors must be paid in full before junior creditors receive anything, and equity holders only receive value after all creditors are paid in full. And the Fifth Circuit has held that the Bankruptcy Code does not permit the distribution of settlement proceeds outside of a plan of reorganization in a way that violates the absolute-priority rule.

Yet the bankruptcy court approved settlement that does exactly that. Under the Settlement Agreement, HMIT receives substantial

distributions on account of its former equity interests in Highland, even though Daugherty's senior claim has not been resolved, much less paid in full. And the bankruptcy court did not ensure that, after full performance of the Settlement Agreement, the Claimant Trust would hold sufficient funds to pay Daugherty's claim in full. Thus, the bankruptcy court abused its discretion by approving the Settlement Agreement.

Compounding that error is the conflict between the Settlement Agreement, on the one hand, and the Plan and Claimant Trust Agreement, on the other. When, as here, a plan of reorganization is crammed down over the objection of a class of unsecured creditors, the plan may only be confirmed if it complies with the absolute-priority rule from dissenting class down. Both the bankruptcy court and Fifth Circuit held that the Plan complied with that rule and was fair and equitable, because it and the Claimant Trust Agreement provided that HMIT's Class 10 interest would vest if and only if the Claimant Trustee certified that all claims in Class 8 had been indefeasibly paid in full and all disputed claims in Classes 8 and 9 had been resolved. But, under the Settlement Agreement, HMIT will receive distributions on account of its

17

Class 10 interest, even though the Claimant Trustee has not filed such a certification. Nor could he do so, since he admits that Daugherty's Class 8 claim remains unresolved. Because the Settlement Agreement materially alters Daugherty's rights, it is an impermissible attempt to modify a substantially consummated plan.

Moreover, Highland's argument that Daugherty is estopped from challenging the Settlement Agreement is unavailing, because he did not take any actions inconsistent with the absolute-priority rule or the Plan. He merely consented to payment his junior Class 9 claim before his Class 8 claim, which the rule and Plan allow him to do. Therefore, this Court should reverse the bankruptcy court's order approving the Settlement Agreement.

## STANDARD OF REVIEW

"When reviewing a bankruptcy court's decision in a 'core proceeding,' [this Court] functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie, Inc.*), 713 F.3d 285, 293 (5th Cir. 2023) (quoting *Webb v. Rsrv. Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The

18

decision to approve a settlement lies within the bankruptcy court's sound discretion and is reviewed for abuse of that discretion. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop, Inc.* (*In re Cajun Elec. Power Coop, Inc.*), 119 F.3d 349, 355 (5th Cir. 1997); *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602–03 (5th Cir. 1980). "A bankruptcy court abuses its discretion when it applies an improper legal standard or rests its decision on findings of fact that are clearly erroneous." *Teta v. Chow* (*In re TWL Corp.*), 712 F.3d 886, 891 (5th Cir. 2013); *see also In re Renaissance Hosp. Grand Prairie*, 713 F.3d at 294 (stating that, generally, a bankruptcy court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo).

## ARGUMENT

The bankruptcy court abused its discretion by approving the Settlement Agreement. It is not fair and equitable as a matter of law, because it violates the absolute-priority rule. And it conflicts with both the Plan and the Claimant Trust Agreement.

## I.    Because the Settlement Agreement Violates the Absolute-Priority Rule, It Is Not "Fair and Equitable."

The Settlement Agreement is not fair and equitable. Settlements and compromises are a "normal part of the process of reorganization,"

19

but, before taking effect, settlement agreements must be approved by the bankruptcy court in accordance with Federal Rule of Bankruptcy Procedure 9019. Fed. R. Bankr. P. 9019(a); *In re Jackson Brewing Co.*, 624 F.2d at 602 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). Rule 9019 "prevents debtors from entering into secret agreements and safeguards the rights of creditors who otherwise might be harmed by providing them with an opportunity to object to the proposed settlement if they find it unsatisfactory." *Columbia Gulf Transmission Co. v. La. Nat. Gas Pipeline, Inc.*, Civ. A. No. 93-239, 1994 WL 693361, at *4 (E.D. La. Dec. 9, 1994).

Rule 9019 sets out the procedures that the bankruptcy court must follow when approving a settlement agreement but says nothing about the standard that it must apply. *See generally* Fed. R. Bankr. P. 9019. That standard comes from the Supreme Court's decision in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).[3] There, the Court held that the proposed

---

[3] In *TMT Trailer Ferry*, the settlement agreement was presented for approval as part of the plan of reorganization. *See TMT Trailer Ferry*, 390 U.S. at 421–22. But the Fifth Circuit and other courts have extended its holding to settlement agreements presented for approval apart from the plan. *See United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 298 (5th Cir. 1984); *see also In re MCorp Fin., Inc.*, 160 B.R. 941, 951 (S.D. Tex. 1991) ("[U]sing a different standard in plan-connected

settlement must be both "fair and equitable" in the "'informed, independent judgment' of the bankruptcy court." *Id.* at 424 (quoting *Nat'l Sur. Co. v. Coriell*, 289 U.S. 426, 436 (1933)); *see also Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop, Inc.* (*In re Cajun Elec. Power Coop, Inc.*), 119 F.3d 349, 355 (5th Cir. 1997) ("Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." (quotations omitted)). And the Court instructed that the bankruptcy court should evaluate fairness and equity from two different angles. *See TMT Trailer Ferry*, 390 U.S. at 424, 441.

First, the bankruptcy court must evaluate whether the proposed settlement is fair and equitable to the debtor and other settling parties. *See id.* at 424. It must "compare the terms of the compromise with the likely rewards of litigation" by weighing several factors. *Id.* They are: (1) "the probabilities of ultimate success should the claim be litigated;" (2) "the complexity, expense, and likely duration of such litigation;" (3) the possible difficulties of collecting on any judgment which might be obtained;" and (4) "all other factors relevant to a full and fair assessment

---

settlements than in independent pre- or post-plan settlements lacks an economic, legal, or rational basis.").

of the wisdom of the proposed compromise." *Id.*; *see also In re Cajun Elec. Power Coop*, 119 F.3d at 356 (quoting *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 599, 602 (5th Cir. 1980)). The Fifth Circuit has subsequently held that, under the rubric of the final catch-all factor, the bankruptcy court should consider: (5) "the best interests of the creditors, 'with proper deference to their reasonable views;'" and (6) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *In re Cajun Elec. Power Coop*, 119 F.3d at 356 (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortg. Corp.*), 68 F.3d 914, 917, 918 (5th Cir. 1995)).

Second, the bankruptcy court must evaluate whether the proposed settlement is fair to the debtor's other, non-settling creditors. In *TMT Trailer Ferry*, the Supreme Court held that the "fair and equitable" standard "incorporates the absolute priority doctrine under which creditors and stockholders may participate only in accordance with their respective priorities and . . . unsecured creditors are entitled to priority over stockholders to the full extent of their debts . . . ." *TMT Trailer Ferry*, 390 U.S. at 441 (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 452 (1940)); *see also In re Cajun Elec. Power Coop*, 119 F.3d at 355

4907-2353-2152.3

("The words 'fair and equitable' are terms of art—they mean that senior interests are entitled to full priority over junior ones." (quoting *United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 298 (5th Cir. 1984))). That absolute-priority doctrine "constitutes a basic underpinning of business bankruptcy law" and "has long been considered fundamental to the Bankruptcy Code's operation." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464, 465 (2017).

In the Fifth Circuit,[4] "a bankruptcy court abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors." *In re AWECO*, 725 F.2d at 298. For example, in *AWECO*, a junior unsecured creditor asserted a $27 million breach-of-contract claim against the debtor. *Id.* at 295. The debtor and the junior creditor entered an agreement to settle that claim, under which the debtor would transfer

---

[4] The courts of appeals are split on how much weight the bankruptcy court must give the absolute-priority doctrine in approving settlements. In *Motorola, Inc. v. Official Committee of Unsecured Creditors* (*In re Iridium Operating, LLC*), 478 F.3d 452 (2d Cir. 2007), the Second Circuit rejected the *per se* rule that the Fifth Circuit adopted in *AWECO* as "too rigid." *Id.* at 464. But it held that compliance with the absolute-priority doctrine "will be the most important factor for a bankruptcy court to consider in approving a settlement under Bankruptcy Rule 9019" and "will be dispositive" in most cases. *Id.* at 455. The Third Circuit agreed with the Second Circuit in *Official Committee of Unsecured Creditors v. CIT Group/Business Credit, Inc.*, 787 F.3d 173, 184 (3d Cir. 2015), but that decision was reversed on other grounds. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 454–55 (2017).

23

cash and property worth $5.3 million to the junior creditor. *Id.* at 295–96
The IRS, which held two priority tax claims, objected to the settlement.
*Id.* Nevertheless, the bankruptcy court approved the settlement
agreement because it concluded that the amount of payment was fair in
light of the merits of the junior creditor's claim. *Id.* at 297. The district
court affirmed, pointing to testimony that "indicated that a settlement
with [the junior creditor] would give the debtor its only chance at
reorganization" and, hence, "benefitted all creditors." *Id.*

The Fifth Circuit, however, reversed. *Id.* at 300. It did not question
the bankruptcy court's finding that the settlement agreement was fair
given the risks and rewards of litigation. Instead, the Fifth Circuit held
that the bankruptcy court had erred because it did not determine
whether, after the payment of the settlement amount, enough money
would remain in the estate to pay in full all creditors whose claims had
priority over the junior creditor. *Id.* at 299. The estate's value was "purely
conjectural," so the bankruptcy court could not know whether paying the
junior creditor would "deplete[] the estate so severely as to endanger
senior claims." *Id.* Because the bankruptcy court did not have sufficient
information to conclude that the settlement complied with the absolute-

24

priority rule, its approval constituted an abuse of discretion as a matter of law. *Id.* at 300.

Similarly, the bankruptcy court abused its discretion by approving the Settlement Agreement in this case. Below, Highland focused exclusively on whether the Settlement Agreement was negotiated at arms' length and in good faith and whether its terms were fair and reasonable in light of the potential risks and rewards of continuing to defend against the HMIT Litigation. ROA.736–39.

Highland did not argue that the Settlement Agreement complied with the absolute-priority doctrine. *See id.* Nor could it have done so. Under the Settlement Agreement, HMIT—a former equity holder—will receive $500,000.00 and distributions of at least $10 million before Daugherty's Class 8 claim is paid in full. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017) ("The Code places equity holders at the bottom of the priority list. They receive nothing until all [general unsecured creditors] are paid in full."); *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 441 (1968) (stating that "unsecured creditors are entitled to priority over

stockholders to the full extent of their debts" (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 452 (1940))).

Rather than arguing that the Settlement Agreement complied with the absolute-priority doctrine, Highland argued that it did not apply at all "because it is a requirement for plan confirmation . . . ." ROA.4649. Highland did not cite any authority in support of that assertion. ROA.4649. That is not surprising given that the Fifth Circuit has repeatedly held the exact opposite. *See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop, Inc.* (*In re Cajun Elec. Power Coop, Inc.*), 119 F.3d 349, 355 (5th Cir. 1997) ("The words 'fair and equitable' are terms of art—they mean that senior interests are entitled to full priority over junior ones." (quoting *United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 298 (5th Cir. 1984))); *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 754 n.22 (5th Cir. 1995) (same).

Moreover, the bankruptcy court did not determine whether performance of the Settlement Agreement would leave sufficient funds in the Claimant Trust to pay Daugherty's Class 8 claim in full. Such a determination would require calculation of the net value of property that the Claimant Trust will hold after the Settlement Agreement is fully

26

performed, and the amount of Daugherty's Class 8 claim. The bankruptcy court did not perform either of those calculations. Indeed, the evidence admitted at the hearing reveals significant disagreement about the value of Daugherty's Class 8 claim. Seery testified that Highland and the Claimant Trust have estimated their potential liability to be $1.475 million, plus approximately $2.2 million in pre-petition interest. ROA.5016. But Daugherty testified that the value of his claim could range from $5.7 million to $7.4 million. ROA.5045–46. The bankruptcy court did not resolve that dispute before it approved the Settlement Agreement.

Therefore, the bankruptcy court did not conclude that priority of payments will be respected as to Daugherty. It abused its discretion by finding that the Settlement Agreement is fair and equitable and approving it.

## II.    The Settlement Agreement Impermissibly Alters Creditors' Rights Under the Plan and Claimant Trust Agreement.

The bankruptcy court also abused its discretion by approving the Settlement Agreement because it conflicts with the Plan and the Claimant Trust Agreement. A confirmed plan of reorganization "bind[s] the debtor . . . and any creditor, equity security holder, or general partner

27

in the debtor, . . . whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a); *see also Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992) ("[A] confirmed plan of reorganization is binding upon every entity that holds a claim or interest . . . ." (quoting 5 *Collier on Bankruptcy* ¶ 1141.01[1] (15th ed. 1992))). Similarly, the bankruptcy court's confirmation order is "a judgment that binds all interested parties to the plan's terms." *Raymond James & Assocs., Inc. v. Jalbert* (*In re German Pellets La., L.L.C.*), 91 F. 4th 802, 805 (5th Cir. 2024); *see also Eubanks*, 977 F.2d at 171 (holding that the confirmation order has "the weight of a final judgment for res judicata purposes").

A post-confirmation settlement agreement that materially alters the parties' rights or obligations under the plan or a plan-related document must satisfy the requirements for plan modification under 11 U.S.C. § 1127(b). *See U.S. Brass Corp. v. Travelers Ins. Grp., Inc.* (*In re U.S. Brass Corp.*), 301 F.3d 296, 307–08 (5th Cir. 2002); *SCH Corp. v. CFI Class Action Claimants*, 597 F. App'x 143, 147–50 (3d Cir. 2015); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 747–48 (2d Cir. 1992); *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 796–97 (Bankr. E.D. Cal. 2018).

28

That cannot be done in this case. Section 1127(b) prohibits modification of substantially consummated plans of reorganization. 11 U.S.C. § 1127(b). And the Fifth Circuit recognized three years ago that the Plan had already been substantially consummated. *See NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap. Mgmt., L.P.*), 48 F. 4th 419, 430 & n.9 (5th Cir. 2022). Thus, § 1127(b) prohibited bankruptcy court from approving the Settlement Agreement if it materially alters the Plan's or the Contingent Trust Agreement's terms.

It does. Article III(H)(1) of the Plan states that HMIT, as the holder of Class 10 claims, "shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interest or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing." ROA.3701. But the Plan's definition of "Contingent Claimant Trust Interests" states that those rights "shall not vest . . . unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been indefeasibly paid in full . . . and *all*

*Disputed Claims in Class 8 and Class 9 have been resolved.*"[5] ROA.3685
(emphasis added).

As the bankruptcy court previously explained, that language means
exactly what it says:

> HMIT's . . . former limited partnership interests in Highland
> were classified as Class 10 . . . . Under the terms of the Plan,
> these interests were cancelled in exchange for unvested
> contingent interests in the Claimant Trust . . . that will vest
> if, and only, if the Claimant Trustee certifies that the Class 8
> general unsecured claims and Class 9 subordinated claims
> have been paid in full, *all disputed claims in Classes 8 and 9*
> *have been resolved*, and certain other obligations—primarily,
> the Claimant Trust's significant indemnity obligations—have
> been satisfied.

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.* (*In re Highland Cap.*
*Mgmt., L.P.*), No. 19-34054-SGJ-11, 2024 WL 2703149, at *3 (Bankr.
N.D. Tex. May 24, 2024) (emphasis altered and footnote removed).

The Claimant Trust Agreement contains a near-identical provision.

Article 5.1(c) states that the "Contingent Trust Interests shall not vest,
and Equity Holders shall not have any rights under th[at] Agreement,
unless and until the Claimant Trustee files with the Bankruptcy Court a

---

[5] The Plan also defines "Claimant Trust Beneficiaries" to include "Holders of Allowed
Class B/C Limited Partnership Interest" "only upon certification by the Claimant
Trustee that the Holders of [Allowed General Unsecured Claims and Allowed
Subordinated Claims] have been paid indefeasibly in full . . . and *all Disputed Claims*
*in Class 8 and Class 9 have been resolved* . . . ." ROA.3683 (emphasis added).

certification that all GUC Beneficiaries have been paid indefeasibly in full . . . *and all Disputed Claims have been resolved* . . . ." ROA.3769 (emphasis added). The GUC Beneficiaries are "the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests." ROA.3747.

The Settlement Agreement materially alters those terms by requiring an initial pro rata distribution of $10 million and two subsequent distributions of $6.5 million to HMIT, the holder of Class 10 interests, even though the Seery testified that he has not filed a certification that "all Disputed Claims in Class 8 . . . have been resolved." ROA.3685, 3769; *see also* ROA.5022 (conceding that the "certification has not been issued yet by the Claimant Trustee in this bankruptcy"). In fact, Seery could not file such a certification because, as Highland admitted in its motion, Daugherty's Class 8 claim remains "unresolved." ROA.730 ("Assuming the Settlement Agreement is approved, the only unresolved Claims or Equity Interests will be Patrick Daugherty's claim . . . .").

Highland argued below that the Settlement Agreement did not violate the Plan or Claimant Trust Agreement because Daugherty's "disputed Class 8 Claim has been fully reserved in an amount he agreed

to and in accordance with the Disputed Claim Reserve requirements in the Plan . . . ." ROA.4649. In support, Highland cited the Tolling Agreement, which extended the deadline to object to Daugherty's Class 8 claim, and its three amendments. ROA.1452–59, 1461–62, 1464–66, 1468–69, 4649. That argument is unavailing for two reasons.

First, fully reserving a disputed claim is not tantamount to resolving that claim. Both the Plan and the Claimant Trust Agreement require the Claimant Trustee to certify the "all Disputed Claims in Class 8 . . . have been *resolved*," not reserved. ROA.3685; *see also* ROA.3769. Article VII of the Plan sets out the "procedures for *resolving* contingent unliquidated and disputed claims." ROA.3721 (emphasis altered). Under it, Highland or the Claimant Trustee may file "an objection to the allowance of any Disputed Claim . . ., request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline . . . ." ROA.3721. Highland and the Claimant Trustee may also settle or compromise any disputed claim, in which case it "shall be deemed to be an Allowed Claim . . . in the amount compromised for purposes of th[e] Plan." ROA.3721.

The disputed-claim-reserve requirement is found in Article VI of the Plan, which governs distributions for allowed claims and equity interests. ROA.3717. It merely ensures that the Claimant Trustee retains sufficient funds to pay a disputed claim in the event it is resolved and "subsequently become[s] an Allowed Claim." ROA.3685; *see also* ROA.3718 ("If upon *resolution* of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed to a Claimant Trust Asset." (emphasis added)).

Second, the evidence does not support Highland's assertion that Daugherty's Class 8 claim has been fully reserved. In the Tolling Agreement, Highland and the Claimant Trust "agree[d] to reserve $2,650,353.00 on account of [the Tax-Refund Claim] in the 'Disputed Claim Reserve' as such term is defined in the Plan until the Parties *resolve* the [Tax-Refund Claim] pursuant to a signed settlement agreement or, alternatively, an order of the Bankruptcy Court." ROA.1454 (emphasis added). The Tolling Agreement also states that Daugherty's Tax-Refund Claim is "estimated to be $2,650,353.00 as of

October 23, 2020." ROA.1453. Nowhere does the Tolling Agreement or its amendments state that amount *fully* reserves Daugherty's Class 8 claim.

In short, Highland's attempts to reconcile the Settlement Agreement with the Plan and the Claimant Trust Agreement are unsuccessful. Because the Settlement Agreement materially alters their terms, it is an attempt to modify a substantially consummated plan, and § 1127(b) prohibited the bankruptcy court from approving it.

## III. Daugherty's Consent to Payment of a Junior Claim Does Not Estop Him from Challenging the Settlement Agreement.

Furthermore, Daugherty is not estopped from challenging the Settlement Agreement. At the hearing on its motion to approve the Settlement Agreement, Highland argued for the first time that Daugherty was estopped because he had accepted payment in full on his Class 9 claim, even though his Class 8 claim remained unresolved and unpaid. ROA.5132–33.

The doctrine of quasi-estoppel, upon which Highland apparently relies, "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects." *Davidson v. Davidson* (*In re Davidson*), 947 F.2d 1294, 1297 (5th Cir. 1991). Unlike other forms of

34

estoppel, quasi-estoppel does not require a showing of detrimental reliance. *Id.*

Daugherty's positions, however, are not inconsistent. The absolute-priority rule only applies when senior creditors do not consent to the participation of junior classes. *See* 11 U.S.C. § 1129(a), (b)(1), (b)(2)(B). Senior creditors may—and often do—agree to partial payment of junior claims or interest before their own claims are paid in full. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017) (stating that Chapter 11 plans "may impose a different ordering with the consent of the affected parties"); *DISH Network Corp. v. DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (explaining that the absolute-priority rule "provides that a reorganization plan may not give 'property' to the holders of any junior claims or interests 'on account of' those claims or interests, unless all classes of senior claims either receive the full value of their claims *or give their consent*" (emphasis added)). Similarly, the Plan allows holders of Allowed Claims (including those in Class 8) to accept "other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed in writing." ROA.3700.

35

Here, Daugherty simply took advantage of the flexibility that the absolute-priority doctrine and Plan provide him as a senior creditor to consent to payment of his junior Class 9 claim before he receives full value for his Class 8 claim. His agreement to payment of one junior claim does not mean that he must agree to payment on account of every other junior claim, much less equity interests. Because Daugherty's acceptance of payment for his Class 9 claim is consistent with the absolute-priority rule and the Plan, the doctrine of quasi-estoppel does not preclude him from challenging the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, this Court should reverse the bankruptcy court's order approving the Settlement Agreement.

4907-2353-2152.3

Respectfully submitted,

**Gray Reed & McGraw LLP**

By:  */s/ William N. Drabble*
    Jason S. Brookner
    Texas Bar No. 24033684
    Andrew K. York
    Texas Bar No. 24051554
    William N. Drabble
    Texas Bar No. 24074154
    Joshua D. Smeltzer
    Texas Bar No. 24113859
    Drake M. Rayshell
    Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:  jbrookner@grayreed.com
       dyork@grayreed.com
       wdrabble@grayreed.com
       jsmeltzer@grayreed.com
       drayshell@grayreed.com

*Attorneys for Appellant Patrick Daugherty*

37

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Bankruptcy Procedure 8015(h), I certify that this brief complies with the type-volume limitation of Rule 8015(a)(7)(B)(i), because it contains 7018 words, excluding the parts of the brief exempted by Rule 8015(g). In determining the number of words, I have relied on the "word count" feature of Microsoft Office 365, which was used to prepare this brief.

*/s/ William N. Drabble*
William N. Drabble

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief was duly served on all counsel of record in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Federal Rule of Bankruptcy Procedure 8011(c)(2)(A) by filing it with this Court's CM/ECF Electronic Notification System on this twelfth day of November, 2025.

*/s/ William N. Drabble*
William N. Drabble

4907-2353-2152.3