Case No. 3:25-cv-01876-K

---

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

---

## IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,
### *Debtor*

---

## THE DUGABOY INVESTMENT TRUST

### *Appellant*

### v.

## HIGHLAND CAPITAL MANAGEMENT, L.P. and HIGHLAND CLAIMANT TRUST,

### *Appellees*

---

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 19-34054-sgj11
The Honorable Chief Judge Stacey G. C. Jernigan, Presiding

---

## APPELLANT THE DUGABOY INVESTMENT TRUST'S OPENING BRIEF

---

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
(214) 453-6500
(214) 453-6400 (fax)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Federal Rule of Bankruptcy Procedure 8012(c)(2), Local Bankruptcy Rule 8012.1, and Local Civil Rules 3.1(c), 3.2(e), 7.4, 81.1(a)(4)(D), and 81.2, Appellant The Dugaboy Investment Trust provides the following information:

1. The Dugaboy Investment Trust ("Dugaboy") is one of two Appellants in this Appeal.

2. Mr. James Dondero is the 100% primary irrevocable beneficiary of Dugaboy and accordingly has a financial interest in the outcome of this Appeal.

3. Dugaboy is represented in this Appeal by Geoffrey S. Harper and John Michael Gaddis of Winston & Strawn LLP.

4. The other Appellant in this Appeal is Patrick Daugherty, an individual.

5. Mr. Daugherty is represented in this Appeal by Jason S. Brookner, Andrew K. York, William N. Drabble, Joshua D. Smeltzer, and Drake M. Rayshell of Gray Reed & McCraw LLP.

6. Highland Capital Management, L.P. is an Appellee in this Appeal and is also the reorganized debtor in the bankruptcy case captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, pending in the United States Bankruptcy Court of the Northern District of Texas. Highland Capital

Management, L.P. is represented in this Appeal by Pachulski Stang Ziehl & Jones LLP and Hayward PLLC.

7.  Highland Claimant Trust is an Appellee in this Appeal and is represented by Pachulski Stang Ziehl & Jones LLP and Hayward PLLC.

8.  Appellant Dugaboy reserves the right to amend or supplement this Certificate of Interested Persons and Corporate Disclosures if necessary or appropriate.


Dated: November 25, 2025          Respectfully submitted,

                                  **WINSTON & STRAWN LLP**

                                  By:  */s/ Geoffrey S. Harper*

                                  Geoffrey S. Harper
                                  Texas Bar No. 00795408
                                  gharper@winston.com
                                  John Michael Gaddis
                                  Texas Bar No. 24069747
                                  mgaddis@winston.com
                                  2121 N. Pearl Street, Suite 900
                                  Dallas, TX 75201
                                  (214) 453-6500
                                  (214) 453-6400 (fax)

                                  *Counsel for Appellant*
                                  *The Dugaboy Investment Trust*

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT REGARDING ORAL ARGUMENT ...........................................1

STATEMENT OF JURISDICTION...................................................................1

INTRODUCTION ...............................................................................................2

ISSUES PRESENTED.........................................................................................5

I.   STATEMENT OF THE CASE ..........................................................6

    A.   Highland's Pre-Petition Ownership Structure. .........................6

    B.   Highland's Bankruptcy Proceeding. ..........................................6

    C.   Mark Patrick's Fraudulent Misconduct. ...................................7

    D.   Background to the Settlement....................................................9

    E.   The Proposed Settlement. ........................................................10

    F.   Dugaboy's Objections to the Settlement. ...............................11

    G.   The June 25, 2025 Hearing. .....................................................12

    H.   The Bankruptcy Court's Findings and Ruling........................13

II.   STANDARD OF REVIEW ...............................................................15

III.   SUMMARY OF THE ARGUMENT.................................................15

IV.   ARGUMENT AND AUTHORITIES ................................................18

    A.   The Bankruptcy Court Abused Its Discretion
        Under Rule 9019 By Approving a Settlement That
        Is Neither Fair, Equitable, nor in the Best Interest
        of the Estate...............................................................................18

        1.   Standard for Approving Settlement
            Agreements in Bankruptcy. ...........................................19

2.    The Bankruptcy Court Failed to Satisfy Its
Duties Under Rule 9019. ...............................................21

3.    Highland Cannot Establish the Required
Good Faith Under 11 U.S.C. § 363. ............................24

B.    The Bankruptcy Court Erred in Approving the
Settlement Agreement Without Allowing Time for
the Cayman Islands Liquidators to Complete their
Investigation. ...........................................................................26

1.    Applicable Legal Standard. .........................................27

2.    The Bankruptcy Court Ruled Prematurely
and Thus Failed to Consider Highly
Damning Evidence That Potentially
Undermined Mark Patrick's Ability to Enter
the Settlement on Behalf of HMIT. ..............................27

3.    The Bankruptcy Court Was on Notice that
More Evidence of Mark Patrick's
Misconduct Was Imminent. ..........................................29

4.    The "Gaping Holes" in the Record Should
Have Dissuaded the Bankruptcy Court from
Approving the Settlement. ............................................30

5.    The Court Reached Erroneous Conclusions
About the Propriety of the Settlement. .........................31

6.    The Cayman Investigation Uncovered Facts
That Compel Rejection of the Proposed
Settlement. ...................................................................32

C.    The Bankruptcy Court Erred in Allowing an
Untested and Unreliable Claim Valuation
Methodology. ...........................................................................34

1.    Applicable Legal Standard. .........................................35

2.    Highland's Fixed-Dollar Methodology is
Unsupported and Unreliable. ........................................36

3.    Dugaboy's Proposed Pro Rata Method is the
Correct Approach for Valuing Equity
Interests Under the Absolute Priority Rule. ................37

4.    HMIT's Substantial Equity Interest Is
Sufficient to Value All Class 10 Claims......................39

5.    The Bankruptcy Court Incorrectly Valued
the Equity Interests. ......................................................39

CONCLUSION ...................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Age Refining, Inc.*,
    801 F.3d 530 (5th Cir. 2015) ...........................................................................15

*Matter of AWECO, Inc.*,
    725 F.2d 293 (5th Cir. 1984) ..................................... 2, 20, 21, 22, 23, 27, 30, 34

*Matter of Bufkin Bros., Inc.*,
    757 F.2d 1573 (5th Cir. 1985) ........................................................................35

*In re Cajun Elec. Power Coop., Inc.*,
    119 F.3d 349 (5th Cir. 1997) ...........................................................................20

*In re Coastal Plains, Inc.*,
    179 F.3d 197 (5th Cir. 1999) ...........................................................................15

*Cook v. Waldron*,
    2006 WL 1007489 (S.D. Tex. 2006) ................................................................27

*DeepRock Venture Partners, L.P. v. Beach (In re Beach)*,
    731 F. App'x 322 (5th Cir. 2018) .....................................................................20

*Matter of Foster Mortg. Corp.*,
    68 F.3d 914 (5th Cir. 1995) .............................................................................20

*Matter of Hammons*,
    614 F.2d 399 (5th Cir. 1980) ...........................................................................35

*In re Idearc, Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009)............................................................38

*In re Introgen Therapeutics*,
    429 B.R. 570 (Bankr. W.D. Tex. 2010).............................................................37

*Matter of Jackson Brewing Co.*,
    624 F.2d 599 (5th Cir. 1980) ...............................................................19, 20, 27

*Koon v. United States*,
    518 U.S. 81 (1996)...................................................................................15

*Matter of Liberia Alma Mater, Inc.*,
    123 B.R. 698 (Bankr. D. P.R. 1991)...................................................31

*In re Lion Cap. Grp.*,
    49 B.R. 163 (Bankr. S.D.N.Y. 1985)..................................................31

*In re M Cap. Corp.*,
    290 B.R. 743 (9th Cir. BAP 2003) .....................................................25

*In re Moore*,
    608 F.3d 253 (5th Cir. 2010) ..............................................................15

*Netsphere, Inc. v. Baron*,
    703 F.3d 296 (5th Cir. 2012) ..............................................................29

*In re Northlake Dev. LLC*,
    643 F.3d 448 (5th Cir. 2011) ..............................................................33

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*
    *v. Anderson*,
    390 U.S. 414 (1968)...............................................19, 20, 21, 36, 40

*In re Rock & Republic Enters. Inc.*,
    No. 10–11728, 2011 WL 6445420 (Bankr. S.D.N.Y. Dec. 22, 2011) ...............30

*In re Seaquest Diving, L.P.*,
    579 F.3d 411 (5th Cir. 2009) ........................................................37, 40

*In re Serta Simmons Bedding, Inc.*,
    125 F.4th 555 (5th Cir. 2024) ............................................................40

*In re Stembridge*,
    394 F.3d 383 (5th Cir. 2004) ..............................................................36

*In re Tik-Tok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ..............................................................15

*In re TMT Procurement Corp.*,
    764 F.3d 512 (5th Cir. 2014) .................................................24, 25, 26

**Statutes**

11 U.S.C. § 363 ................................................................6, 13, 14, 17, 24, 26

11 U.S.C. § 363(m) ...................................................................14, 24

11 U.S.C. § 726(a)(6) ....................................................................40

11 U.S.C. § 1129(b)(2)(C) ...............................................................37

**Other Authorities**

Fed. R. Bankr. P. 9019          2, 4, 5, 6, 13, 14, 15, 16, 18, 19, 21, 22, 23, 26,
          .........................................................27, 29, 30, 32, 33, 34, 41

## STATEMENT REGARDING ORAL ARGUMENT

Given the complexity of the legal issues as well as the lengthy factual record and procedural history, Appellant Dugaboy respectfully requests oral argument to aid this Court's consideration of this Appeal.

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Northern District of Texas exercised jurisdiction under 28 U.S.C. § 157(b)(1). On June 30, 2025, the Bankruptcy Court entered an Order (R. 000010) approving Highland Capital Management, L.P.'s *Motion for Entry of an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 363 Approving Settlement With the HMIT Entities and Authorizing Actions Consistent Therewith*.

On July 14, 2025, Dugaboy timely filed its Notice of Appeal from the same order. R. 000001.

The Bankruptcy Court's approval of a settlement under Federal Rule of Bankruptcy Procedure 9019 is a final, appealable order. *See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000); *In re Reagor-Dykes Motors, L.P.*, 613 B.R. 878, 887–88 (Bankr. N.D. Tex. 2020). This Court has jurisdiction under 28 U.S.C. § 158(a)(1) over this Appeal from a final decision of the Bankruptcy Court.

## INTRODUCTION

This Appeal arises from the Bankruptcy Court's clear errors and abuses of discretion in approving a proposed Settlement between Highland Capital Management L.P. ("Highland") and Hunter Mountain Investment Trust ("HMIT").

To approve a settlement under Bankruptcy Rule 9019, the law required the Bankruptcy Court to determine whether the proposed settlement is fair, equitable, and in the best interest of the estate and its creditors. The law also required the court to make that determination based on its own inquiry into the underlying facts rather than relying on the self-serving and conclusory assurances of the settlement's proponents. That didn't happen here. Rather than grounding its decision on solid facts, the Bankruptcy Court was derelict in its duty of inquiry leading it to approve a dubious settlement with "gaping holes" in its factual underpinnings.[1] Such a flawed decision "inherently constitutes an abuse of discretion."[2]

This was no mere oversight or misunderstanding on the Bankruptcy Court's part. The court knew of troubling accusations against HMIT's purported representative Mark Patrick that raised serious questions about his authority to negotiate and enter into a fair and equitable settlement on behalf of HMIT. Evidence presented at the hearing—much of it from Patrick's own mouth—put the court on

---

[1] *Matter of AWECO, Inc*., 725 F.2d 293, 299 (5th Cir. 1984).

[2] *Id*.

notice that Patrick had engaged in a potentially massive scheme to defraud certain charitable foundations, and that the HMIT settlement perpetuated that fraud. But rather than pause the proceedings to make a serious inquiry into the fraud allegations, the court accepted at face value Patrick's self-serving testimony that he acted in good faith in effectuating the Settlement.

This is not some common situation where interested parties are disappointed by a case development and raise generic allegations of fraud. The court of the Cayman Islands—where some of the affected entities were domiciled— had already found sufficient indicia of self-dealing and fraud that it had removed Patrick from the leadership of affiliated entities and appointed the equivalent of a receiver to run them in his place. That receiver—known in the Cayman Islands judicial system as the Joint Liquidators led by the international accounting firm Grant Thornton—was continuing to investigate Patrick's misconduct and so informed the Bankruptcy Court. This misconduct included Patrick's fraudulent and self-dealing efforts to use the settlement of HMIT's claims as a means to hide his ill-gotten gains and stay one step ahead of judicial inquiries into his conduct.

The Bankruptcy Court also knew that considerably more evidence from the Cayman Islands proceeding would soon be forthcoming, but declined to wait for it— willfully blinding itself to evidence it knew could undercut the basis for the

Settlement and casting aside any notion of comity toward another country's judicial process.

Similar error infected the Bankruptcy Court's consideration of the proper method for valuing HMIT's Class 10 equity interests (and consequently constraining the valuation of Dugaboy's own Class 11 interests). Rather than independently apprising itself of alternative valuation methods—such as the well-established and standard *pro rata* method urged by Dugaboy—the court allowed Highland to use, and then adopted for its own decision, an untested and unreliable method that there was no evidence anyone else had ever used for that purpose. This was clear error and an abuse of discretion.

The Bankruptcy Court made these missteps, in its own words, because it was determined to rule "today" and approve the deal the court believed would speed the resolution of much of this sprawling bankruptcy case. But the false sense of urgency driving the court was itself an abuse of discretion. In its rush to make a ruling, the court erroneously valued speedy resolution ahead of the principles of fairness, equity, and the estate's best interest that guide the Rule 9019 analysis, and absent any independent inquiry into the underlying facts. The law does not allow bankruptcy courts to cut investigative corners for the sake of speed, and for that reason the Bankruptcy Court's order approving the Settlement must be reversed.

## ISSUES PRESENTED[3]

1.    Did the Bankruptcy Court abuse its discretion in approving the settlement agreement and release entered into between the settling Highland Entities and the HMIT Entities under Rule 9019 of the Federal Rules of Bankruptcy Procedure as being fair, equitable, and in the best interest of the estate?[4]

2.    Did the Bankruptcy Court abuse its discretion in approving the settlement agreement without allowing adequate time for the Cayman Islands Joint Official Liquidators to complete their investigation into the alleged fraud and misconduct by Mark Patrick?

3.    Did the Bankruptcy Court commit clear error in approving the settlement agreement using an improper valuation methodology and without sufficient supporting evidence of value?

---

[3]  Dugaboy has made two changes from the presentation of topics in its original Statement of Issues (*see* Bankr. Dkt. 4368). First, Dugaboy has taken the arguments on Mark Patrick's authority to act on behalf of HMIT (originally "Issue 5") and consolidated them into related discussions under Issues 1 and 2. Second, Dugaboy is no longer pursuing the issue of overbroad releases in the Settlement Agreement that was included as "Issue 3" in its original Statement of Issues. *See id*.

[4]  As detailed in the Settlement Agreement, the settling parties comprised the "Highland Entities" (which included Highland Capital Management, L.P.; the Highland Claimant Trust; the Highland Litigation Sub-Trust; and the Highland Indemnity Trust) on the one hand, and the "HMIT Entities" (which included Hunter Mountain Investment Trust ("HMIT"); Beacon Mountain LLC; Rand Advisors, LLC; Rand PE Fund I, LP; Rand PE Fund Management, LLC; and Atlas IDF, LP) on the other hand.. R. 000808.

## I.    STATEMENT OF THE CASE

In this Appeal, Dugaboy challenges the Bankruptcy Court's June 30, 2025 order approving a Settlement Agreement ("Settlement" or "Agreement") between Highland and HMIT under Federal Rule of Bankruptcy Procedure 9019 and 11 U.S.C. § 363. *See* R. 000006.

### A.    Highland's Pre-Petition Ownership Structure.

Before its bankruptcy filing on October 16, 2019, Highland structured its limited partnership interests into three classes named "A," "B," and "C." R. 000652. HMIT acquired all the Class B and C interests, which amounted to 99.5% of Highland's partnership interests. R. 004688. Dugaboy (and several other entities)[5] retained the Class A interests which amounted to the remaining 0.5% of Highland's equity. R. 000789. Highland was required to maintain limited partner capital accounts for tax purposes. R. 000790; R. 003454.

### B.    Highland's Bankruptcy Proceeding.

Highland filed its chapter 11 bankruptcy petition on October 16, 2019.  On February 22, 2021, the Bankruptcy Court confirmed Highland's *Fifth Amended Plan of Reorganization* ("Plan") (R. 000625) with an effective date of August 11, 2021 (R. 000790).  Contemporaneously with the Plan, the Claimant Trust was created

---

[5] For simplicity, this Appeal uses "Dugaboy" as a shorthand for all former Class A and current Class 11 interest-holders. The claimants in Class 11 include Dugaboy, Strand Advisors, Mark Okada individually, and two Okada Family Trust entities.

under the Claimant Trust Agreement ("CTA").  Among other things, the Plan and CTA provided for the conversion of the pre-petition limited partnership interests into unvested contingent interests in the Claimant Trust, according to the same *pro rata* shares of 99.5% for HMIT and 0.5% for Dugaboy. HMIT's Class B and Class C interests became Class 10 interests, and the Class A interests of Dugaboy and other equity holders became Class 11 interests. R. 000744–000745.  These Class 10 and Class 11 equity interests sit at the bottom of the bankruptcy order of priority, and the holders of Class 10 and 11 claims can collect on their claims only after all senior classes of creditors have been paid or otherwise consented.  R. 000669.  As discussed in Section IV.C below, the Bankruptcy Court fixed the allowed amount of HMIT's Class 10 interest on the same date that it approved the Settlement (R. 000010).  The court subsequently fixed the allowed amount of Dugaboy's Class 11 interest on September 22, 2025.[6]

### C.    Mark Patrick's Fraudulent Misconduct.

The fraudulent misconduct committed by HMIT's purported representative Mark Patrick is the background to several of Dugaboy's objections to the Settlement. Patrick began as tax counsel for Highland. R. 004340. In that role, he helped design

---

[6] Dugaboy challenges the Bankruptcy Court's Class 10 ruling in this Appeal because it was contemporaneous with the approval of the Settlement Agreement and was argued at the same June 25, 2025 hearing. Supp. R. 000013. Dugaboy is challenging the Bankruptcy Court's Class 11 ruling in a separate appeal pending before Judge Lindsay.  *See* N.D. Tex. Case No. 3:25-cv-02724-L.

and build a donor-advised fund platform centered on Charitable DAF HoldCo, Ltd. ("HoldCo"), whose participation shares were held through intermediary supporting organizations for the benefit of The Dallas Foundation, Greater Kansas City Community Foundation, The Santa Barbara Foundation, and The Community Foundation of North Texas (the "Charitable Beneficiaries" or the "Charities"). *See* R. 004331–004332. During his tenure at Highland, Patrick also assisted in the restructuring of the ownership of Highland through the formation of HMIT, whose beneficial ownership ultimately resided in the supporting organizations of The Dallas Foundation. *See* R. 004691–004694. After leaving Highland for a company called Skyview Group in 2021, Patrick assumed managerial control of HoldCo from the prior independent fiduciary, and—leveraging his credibility and knowledge— positioned himself at the center of the HoldCo structure and, subsequently, of HMIT. R. 004350–004351.

Beginning in late 2023, Patrick launched a covert restructuring to divert HoldCo's assets away from the Charities for his personal gain. Put simply, Patrick secretly formed new entities in the Cayman Islands and Delaware and inserted these entities between HoldCo and other entities in its organizational structure. R. 004362. He then adopted an operating agreement eliminating all fiduciary duties to HoldCo's owners and giving sole valuation and redemption power to himself. R. 004362. Patrick also dramatically increased his own compensation (including more than $10

8

million in bonuses), appointed his relatives and paid them as officers, issued new participation shares to his own "shell" charitable entity DFW Charitable Foundation headquartered at his home address, engaged a friendly valuation firm to slash the value of HoldCo's participation shares by over 99%, and divested the Charitable Beneficiaries of their HoldCo shares for a meager total of $1.6 million against a corpus of roughly $270 million. R. 004332–004333; R. 004356.

These moves left Patrick's new sham foundation—created for his own benefit—as the sole beneficial owner of what once were HoldCo's assets. At the June 25, 2025 hearing, it also emerged that HMIT had been sold to CLO HoldCo LLC, another entity controlled by Patrick, and that Patrick's sham charity is now the sole beneficial owner of HMIT.[7]  Supp. R. 000173–000174, Hrg. Tr. at 173:22–174:16. Thus, Patrick's fraudulent scheme enables him (through his personal, sham charity) to enjoy all the financial upside of HMIT.

### D.    Background to the Settlement.

---

[7] As Mark Patrick admitted at the hearing, he controls HMIT through several intermediate entities. As originally structured, HMIT was owned by Beacon Mountain, LLC. Patrick engineered the sale of Beacon Mountain to CLO HoldCo, LLC in February 2025. CLO HoldCo, LLC is owned by CLO HoldCo Limited. CLO HoldCo Limited is owned by Charitable DAF Fund, LP. Charitable DAF Fund, LP was owned by HoldCo until March 2025, when Patrick engineered its sale to CDMC FAD, LLC—a Patrick-created entity whose 100% beneficial owner is Patrick's sham charity, DFW Charitable Foundation. Supp. R. 000173–74 and 000183, Hrg. Tr. 173:22–174:11, 183:4–11.

Under Patrick's control, HMIT was actively adverse to Highland in the underlying bankruptcy proceeding, pressing significant litigation, including seeking leave to file (1) an adversary proceeding against Highland estate fiduciaries, (2) a complaint to compel disclosure of the assets in the Claimant Trust and establish the status of certain equity holders as vested Claimant Trust Beneficiaries, and (3) a Delaware complaint to remove the Claimant Trustee, James Seery, for conflicts of interest and breaches of fiduciary duty. R. 000792. Those efforts all reflected a sustained adversarial posture.

After Patrick surreptitiously restructured HMIT to operate for his own benefit, that posture abruptly reversed. Highland and HMIT agreed to settle, ending years of contentious litigation. *See* R. 000808. Patrick no doubt was eager to settle so that he could pocket HMIT's payoffs before the investigation by the Cayman Joint Official Liquidators caught up to him, and further litigation with Highland would draw judicial scrutiny he did not want. *See* Section IV.B below. On May 19, 2025, Highland filed its motion asking the Bankruptcy Court to approve the proposed Settlement. R. 000786.

### E.    The Proposed Settlement.

After years of conflict between Highland and HMIT, the entities reached the Settlement at issue. *See* R. 000808. The Agreement's terms included: (i) an immediate cash payment of $500,000 from Highland to HMIT; (ii) an allowed Class

10

10[8] claim for HMIT in the amount of $336,940,230.58; (iii) an initial $10 million distribution to the Holders of allowed Class 10 claims; (iv) a subsequent distribution of all excess remaining Indemnity Trust assets to the Holders of allowed Class 10 claims on a *pro rata* basis; and (v) mutual, broad releases of all claims. R. 000816-000827.  The Settlement also provided for Highland to transfer to HMIT a Note owed by Dugaboy for approximately $17 million, in exchange for a dollar-for-dollar reduction in HMIT's Class 10 interest. R. 000817.[9] This transfer of the Dugaboy Note gave Dugaboy a direct pecuniary interest in the proposed Settlement.

## F. Dugaboy's Objections to the Settlement.

Dugaboy objected to the proposed Settlement, concerned with its fairness and reasonableness—and its likely use to further Patrick's self-dealing and efforts to deter scrutiny of his misconduct—especially amid emerging evidence that Patrick had restructured HoldCo and defrauded the Charities. *See* R.000849; Supp. R. 000035, Hrg. Tr. 35:11–15. The Charities also had significant concerns with Patrick's actions, causing them to file an Involuntary Winding-Up Petition in the

---

[8] Terms not herein defined are used within the meaning given them in the Settlement Agreement.

[9] The Settlement also assigned an unsupported claim that the estate had been maintaining against Highland management (including against the donors who had given Highland's membership interests to HMIT in the first place) to HMIT and therefore to Patrick, presumably so that he could prosecute and/or deter those donors from scrutinizing Patrick's hijacking of the charitable entities.  R. 000818–000819.

Cayman Islands Court, which appointed Joint Official Liquidators ("JOLs") to recover control of HoldCo from Patrick. *See* R. 004331. Upon filing the involuntary petition, the Charities learned that Patrick had secretly placed HoldCo into a voluntary liquidation just weeks before and the filings disclosed that it had less than $2 million available for distribution, which triggered an investigation into Patrick's conduct. In light of the pending investigation in the Cayman Islands and the many questions it posed about the propriety of the Settlement, Dugaboy urged the Bankruptcy Court at a minimum to wait to approve the Settlement until after the Cayman Islands investigation. Supp. R. 000205, Hrg. Tr. 205:21–24. The Bankruptcy Court declined to do so and approved the Settlement over Dugaboy's objections. R. 004549.

### G. The June 25, 2025 Hearing.

On June 25, 2025, the Bankruptcy Court held an evidentiary hearing to consider the proposed Settlement, as well as a motion to fix the allowed amount of HMIT's Class 10 interests. *See generally* Supp. R. 000001–000266.

Even though Dugaboy was not a party to the Settlement, the Bankruptcy Court correctly recognized that Dugaboy had standing to object because the Settlement would affect Dugaboy's own economic interests. Supp. R. 000038; Hrg. Tr. 38:20–22 ("I think they're affected by the settlement, so that makes them a party in interest."). Specifically, Dugaboy was indebted to Highland on a Note worth

12

approximately $17 million, and Highland transferred that Note to HMIT as part of the Settlement. R. 000817. Furthermore, the valuation of HMIT's Class 10 interest would directly affect the funds available for Dugaboy's Class 11 interest, which was subordinated to Class 10. R. 000728.

In its June 9, 2025 Preliminary Objection to the Settlement (R. 000849) and in argument at the hearing (*see generally* Supp. R. 000245–254), Dugaboy objected that (1) there was insufficient evidence to support approval of the Settlement under Rule 9019 (*see* Section IV.A below); (2) there were serious questions as to Patrick's authority to enter into the Settlement on behalf of HMIT (*see* Sections IV.A and IV.B below); and (3) the Class 10 and Class 11 equity interests should be valued as a percentage based on *pro rata* ownership shares rather than a fixed dollar amount (*see* Section IV.C below). R. 000855; Supp. R. 000250, Hrg. Tr. 250:6–17. The Bankruptcy Court overruled each of Dugaboy's objections. R. 000009.

## H.    The Bankruptcy Court's Findings and Ruling.

At the June 25, 2025 hearing, the Bankruptcy Court granted Highland's motion and approved the Settlement under both Bankruptcy Rule 9019 and 11 U.S.C. § 363. Supp. R. 000255–256, Hrg. Tr. 255:1–256:10; Supp. R. 000262, Hrg. Tr. 262:18–25. The Bankruptcy Court made numerous findings, including that the Settlement was the product of arm's length, good-faith negotiations; and that the Settlement was fair, equitable, and within the range of reasonableness when

compared to the alternative of continued litigation. Supp. R. 000256. Hrg. Tr. 256:10–13. The Bankruptcy Court adopted Highland's valuation methodology and fixed the allowed amount of its Class 10 claim at approximately $337 million. R. 000013. The Bankruptcy Court also rejected Dugaboy's objection to Patrick's authority—as well as Dugaboy's request that the court hear directly from the Cayman Liquidators investigating him—concluding it had seen no persuasive evidence that he lacked authority to act on behalf of HMIT. Supp. R. 000259, Hrg. Tr. 259:12–16.

In its June 30, 2025 Order, the Bankruptcy Court approved the Settlement in all respects under both Rule 9019 and 11 U.S.C. § 363. The Bankruptcy Court memorialized its findings from the hearing and additionally found, among other things, that the Settlement was an appropriate exercise of the movants' business judgment and that the HMIT entities were good faith purchasers of estate assets and thus entitled to the protection of Bankruptcy Code § 363(m). R. 000008.

Dugaboy timely filed its Notice of Appeal from this Order on July 14, 2025, R. 004304, and now files this Appeal.

## II.    STANDARD OF REVIEW

When sitting in an appellate capacity, this Court reviews the Bankruptcy Court's findings of fact for clear error, and the Bankruptcy Court's conclusions of law *de novo*. *In re Age Refining, Inc.*, 801 F.3d 530, 538 (5th Cir. 2015).

This Court reviews the Bankruptcy Court's approval of a settlement agreement under Fed. R. Bankr. P. 9019 for abuse of discretion.  *In re Moore*, 608 F.3d 253, 257 (5th Cir. 2010).

A lower court "by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).  Thus, "the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).  "Abuse-of-discretion review is deferential; [but] it is not a rubber stamp."  *In re Tik-Tok, Inc.*, 85 F.4th 352, 360 (5th Cir. 2023).

## III.    SUMMARY OF THE ARGUMENT

The course of events below is extraordinary. The Bankruptcy Court disregarded the interests of storied charitable foundations, including one that has long been a force for good in Dallas, at the request of a corrupt fiduciary—Mark Patrick—who had restructured their supporting corporate entities for his own benefit.  A foreign court, based on significant evidence of this misconduct, had already removed Patrick from control of one such entity and had appointed the

equivalent of a receiver to investigate. That Patrick even had the slightest possible nominal authority to enter into this Settlement was only accomplished by further nefarious restructuring, through which he had transferred the relevant assets and interests from the jurisdiction of the Cayman courts just ahead of his ouster.

The Bankruptcy Court viewed these dramatic developments as of no moment, and expressed no curiosity as to how or why Patrick had come before it with this Settlement. Instead, the court approved a Settlement designed to further benefit Patrick personally and give him tools to cut off further scrutiny of his misconduct. That the Bankruptcy Court did not decline or at least pause approval of the Settlement was error.

A bankruptcy court cannot determine whether a proposed settlement is fair, equitable, or in the best interest of the estate under Bankruptcy Rule 9019 without conducting an independent inquiry into the underlying facts so that it could make an informed and intelligent decision. For the reasons explained below, the Bankruptcy Court abused its discretion by failing to perform its duty of inquiry under Rule 9019 and by declining to hear evidence of a massive fraudulent scheme that rendered the Settlement both unfair and inequitable.

Multiple errors followed from the Bankruptcy Court's dereliction of its investigative duty. The court took at face value the movants' conclusory and self-serving statements that they engaged in arm's length negotiations and acted in good

16

faith, ignoring significant evidence to the contrary. The court also disregarded multiple warnings about Patrick's fraudulent misconduct that cast doubt on his ability to act on behalf of HMIT in negotiating and entering a fair and equitable settlement. Evidence presented at the hearing—much of it from Patrick's own mouth—was sufficient to put the court on notice that his scheme to defraud the Charities was connected to his surreptitious and fraudulent restructuring of HMIT.

The Bankruptcy Court also knew that considerably more evidence from the Cayman Liquidators' investigation of Patrick would be forthcoming within weeks, but it declined to wait for that and proceeded to make a quick ruling premised on an incomplete and inadequate factual record. These gaping holes in the factual record should have dissuaded the court from a premature ruling. Instead, the court abused its discretion by choosing deliberately to blind itself to the facts.

The Bankruptcy Court did all this because, in its own words, it was determined to rule "today" and thus come closer to finishing this years-long proceeding.[10]  But the law does not allow bankruptcy courts to cut investigative corners for the sake of speed, and for that reason the resulting order must be reversed.

Reversal is also warranted of the Bankruptcy Court's finding that the Settlement qualified as a "sale" of assets under 11 U.S.C. § 363, because that statute

---

[10] *See, e.g.*, Supp. R. 000249, Hrg. Tr. 249:13–14 ("I have a mountain of other stuff waiting for me, so I really want to rule today.").

sets an even more rigorous standard for proving a purchaser's good faith than either Highland or HMIT could possibly have met. Even absent any evidence of bad faith (and such evidence was presented), the court erred in believing it could conclude there was good faith simply from an apparent absence of bad faith.

The Bankruptcy Court also abused its discretion and committed clear error in valuing HMIT's Class 10 claims by adopting a novel and unproven fixed-dollar amount methodology instead of the well-established "standard" *pro rata* approach (*i.e.*, allocating the funds left for equity holders on the basis of their percentage ownership interests) proposed by Dugaboy. Nothing in the Plan contemplated the method employed by Highland's Trustee of calculating claim values based on pre-petition limited partner capital accounts, and there was no evidence anyone else had ever used that method. The Bankruptcy Court committed reversible error in adopting Highland's unprecedented, untested, and unreliable methodology, which resulted in an inequitable and unsupported outcome that defied Rule 9019's requirement of fair and equitable treatment.

## IV.   ARGUMENT AND AUTHORITIES

### A.   The Bankruptcy Court Abused Its Discretion Under Rule 9019 By Approving a Settlement That Is Neither Fair, Equitable, nor in the Best Interest of the Estate.

A bankruptcy court cannot determine whether a proposed settlement is fair, equitable, or in the best interest of the estate under Rule 9019 without conducting an

independent inquiry into the underlying facts so that it can make an informed and intelligent decision.  For the reasons explained below, the Bankruptcy Court abused its discretion by failing to perform its duty of inquiry under Rule 9019 and by declining to hear evidence of a massive fraudulent scheme that rendered the Settlement both unfair and inequitable.

### 1.    *Standard for Approving Settlement Agreements in Bankruptcy.*

Under Federal Rule of Bankruptcy Procedure 9019, a court may approve or deny a proposed settlement.  In so doing, the court must consider whether the proposed settlement is fair, equitable, and in the best interest of the estate and its creditors, with a specific focus on comparing the proposed settlement to the likely outcome of continued litigation.  *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *Matter of Jackson Brewing Co*., 624 F.2d 599, 602 (5th Cir. 1980).  In *TMT Trailer*, the Supreme Court instructed bankruptcy courts to evaluate the fairness of a proposed compromise within a corporate reorganization based on three factors:  (1) the probability of success if the claim were litigated; (2) the complexity, expense, and likely duration of the litigation, including possible difficulty of collecting on a judgment; and (3) "all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  390 U.S. at 424–25.

The Fifth Circuit has set forth several factors to guide the courts' exercise of discretion in conducting this analysis. *See Jackson Brewing,* 624 F.2d at 602–03; *DeepRock Venture Partners, L.P. v. Beach (In re Beach*), 731 Fed. Appx. 322, 325 (5th Cir. 2018). The first three *Jackson Brewing* factors closely follow those set forth in *TMT Trailer.* 624 F.3d at 602; *see TMT Trailer*, 390 U.S. at 424–25. In addition, the Bankruptcy Court should consider (a) whether the proposed settlement serves the best interests of creditors, with "proper deference to their reasonable views," and (b) the extent to which the settlement is the product of arms' length bargaining and not of fraud or collusion. *DeepRock Ventures*, 731 Fed. Appx. at 325.

In making predictions about the probability of success in continued litigation, the bankruptcy court need not conduct a "mini-trial" or otherwise determine which party is in the right. *In re Cajun Electric Power Cooperative, Inc.,* 119 F.3d 349, 355–56 (5th Cir. 1997). But the bankruptcy court does have a duty to "apprise [it]self of the relevant facts and law so that [it] can make an informed and intelligent decision." *Id.* at 356. Reviewing courts have not hesitated to reverse for abuse of discretion when bankruptcy courts have failed to conduct that independent inquiry. *See, e.g.*, *Matter of AWECO, Inc*., 725 F.2d 293, 299 (5th Cir. 1984) (holding bankruptcy court abused its discretion in approving settlement despite "gaping holes" in the factual background needed to determine its fairness); *Matter of Foster Mortgage Corp.*, 68 F.3d 914, 918 (5th Cir. 1995) (holding bankruptcy court abused

its discretion by failing to investigate or make any findings on views of creditors who overwhelmingly opposed insider settlement); *cf. TMT Trailer*, 390 U.S. at 452–53 (holding district court erred in confirming reorganization plan based on going-concern valuation that incorrectly considered only past earnings and did not inquire into future earning capacity).

### 2. *The Bankruptcy Court Failed to Satisfy Its Duties Under Rule 9019.*

"An approval of a compromise, absent a sufficient factual foundation, ***inherently constitutes an abuse of discretion***." *AWECO*, 725 F.2d at 299 (emphasis added). Here, the Bankruptcy Court abused its discretion by failing in its duty under Rule 9019 in several respects. First, it made unsupported and conclusory findings of good faith based on the movants' self-serving assertions rather than independently investigating (or even weighing) the veracity of those assertions. Second, the Bankruptcy Court compounded this failure by deliberately ignoring numerous warnings about the proceedings pending in the Cayman Islands and the potential cloud they cast over Mark Patrick's authority to enter into the Settlement on behalf of HMIT. It did so notwithstanding that the Cayman court had already ousted Patrick from control of one of the entities holding the interests that he was attempting to self-deal in this Settlement. That he was before the Bankruptcy Court at all was thanks to his transfer of assets out of the Cayman court's jurisdiction just ahead of his ouster.

21

Finally, the Bankruptcy Court failed to deliver an appropriate and equitable valuation of the equity interests because it accepted the untested, unprecedented, and unreliable method proposed by Highland's Claimant Trustee James Seery without independently considering other more recognized and reliable methods such as the *pro rata* approach proposed by Dugaboy.  *See* Section IV.C below.  In each of these respects, the Bankruptcy Court abused its discretion by dereliction of its Rule 9019 duty of independent investigation.  *See AWECO*, 725 F.2d at 299.

The Bankruptcy Court concluded that the HMIT Entities—represented at the hearing only by Patrick—acted in good faith in negotiating and entering the proposed Settlement.  R. 000012. (finding that the HMIT Entities "have proceeded with all aspects of the Settlement Agreement in good faith").  The only apparent evidence supporting that finding was this testimony from Mark Patrick:

> **"Q. And do you believe that you're entering into the settlement agreement on behalf of the HMIT entities in good faith?**
> **A. Yes, I do**."

Supp. R. 000190, Hrg. Tr. 188:3–6.

As explained above, it was error for the Bankruptcy Court to premise its findings of good faith on this single self-serving statement.

There was no shortage of warnings that Patrick's conduct warranted further investigation.  Patrick admitted to the chain of relationships that effectuated his

22

wrongful restructuring of HoldCo and of HMIT to wrest beneficial control from various charitable entities. Supp. R. 000173–000174 and 000183, Hrg. Tr. 173:22–174:11, 183:4–11. And email evidence admitted at the hearing established the knowledge and complicity of Highland's counsel in Patrick's scheme to "extinguish" and dispossess the Charities of their participating shares. R. 001259; Supp. R. 000047, Hrg. Tr. 47:1–3.

The Bankruptcy Court knew that serious allegations against Patrick might implicate (or destroy) his authority to act for HMIT, and that more evidence would shortly be forthcoming, but the court chose to disregard the request of the independent, court-appointed Cayman Liquidators for a 45-day stay to investigate Patrick's misconduct in handling these entities and assets, in favor of rushing to a quick decision. Supp. R. 000029–000030, Hrg. Tr. 29:25–30:9 ("I'm not going to let it stop me from going forward today."). Rule 9019 does not permit bankruptcy courts to cut investigative corners for the sake of speed. *See AWECO*, 725 F.2d at 299–300 (holding bankruptcy court erred in succumbing to time pressure and denying objector's request for a continuance to develop evidence for its own appraisal of refinery's value). "[T]he circumstances below, surrounding approval of this settlement, called for a pause." *Id*. at 300. For these reasons, the Bankruptcy Court abused its discretion and its approval of the Settlement must be reversed.

### 3. *Highland Cannot Establish the Required Good Faith Under 11 U.S.C. § 363.*

The Bankruptcy Court also erred in approving the Settlement as a sale of assets under 11 U.S.C. § 363, because Highland cannot make the required showing that it is a "good faith" purchaser. *See id*. § 363(m). The parties have already briefed the § 363 issue in this Court in the context of Highland's pending Motion to Dismiss this Appeal based on statutory mootness.   Dkts. 21 (Highland's Motion), 33 (Dugaboy's Response), 36 (Highland's Reply).   Highland contends the transfers of assets under the Settlement constitute a "sale" under § 363 and thus require the dismissal of Dugaboy's appeal under the doctrine of statutory mootness.   *See id*. § 363(m); Dkt. 21.   For multiple reasons set forth in Dugaboy's Response, Dugaboy contends that the transactions under the Settlement do not implicate § 363.   Dkt. 33. Dugaboy will not rehash that argument here, but instead focuses on the consequences for Highland's defense should it win that legal argument as the Bankruptcy Court concluded that it did.   R. 000012.

If Highland is correct and the Bankruptcy Court's order stands, then Highland faces a nearly insurmountable hurdle to qualify as a "good faith" purchaser under § 363(m) because controlling Fifth Circuit precedent squarely places a stringent burden of proof onto the party claiming good faith.   *In re TMT Procurement Corp.*, 764 F.3d 512, 520 (5th Cir. 2014).   The moving party's proof of good faith and the absence of bad faith is an absolute prerequisite to prevailing on a claim of statutory

mootness. *Id.* at 519. The party arguing for mootness must present ***facts*** establishing the purchaser's good faith, not just "boilerplate 'good faith' findings in orders."[11] The proponent of the transaction has the burden to prove the good faith of its participants, and more is required to make that determination than a mere absence of evidence of bad faith. *Id.* at 520; *In re M Capital Corp.,* 290 B.R. 743, 747 (9th Cir. BAP 2003).

Because the burden of proving "good faith" falls on the proponent of the challenged sale, a bankruptcy court's findings must be premised on affirmative evidence in the record. *TMT Procurement*, 764 F.3d at 520. It is error to find good faith based only on an absence of evidence for bad faith. *See M Capital*, 290 B.R. at 749 (cited approvingly by *TMT Procurement*, 764 F.3d at 520). That was exactly the Bankruptcy Court's error here, presuming from a purported lack of countervailing evidence that Patrick had authority to act for the HMIT entities and therefore must have acted in good faith. *See* Supp. R. 000259, Hrg. Tr. 259:13–20:

> "[The Court]: **I didn't have any persuasive evidence, solid evidence to show me that Mark Patrick doesn't have appropriate corporate governance authority to enter into this settlement agreement. . .. [A]s of today, I don't have any evidence that he doesn't have authority currently to enter into the settlement**."

---

[11] *See In re M Capital Corp.,* 290 B.R. 743, 752 (9th Cir. BAP 2003) ("Boilerplate good faith findings in orders will not suffice, and courts should avoid the temptation to sign such orders without an evidentiary foundation.").

As discussed above, at the time of the hearing there was already some indication that Patrick had restructured HMIT, which Dugaboy later learned was done to give his sham foundation beneficial ownership and defraud HMIT's true charitable beneficiaries. *See* R. 000849; Supp. R. 000250, Hrg. Tr. 250:6–11. But even absent such evidence, it was error for the Bankruptcy Court to premise the required finding of good faith on nothing more than the apparent absence of bad faith. For this reason, not only does Highland's statutory mootness argument fail, but the Bankruptcy Court abused its discretion and committed reversible error in approving the Settlement as a sale under § 363. *See TMT Procurement*, 764 F.3d at 520.

### B. The Bankruptcy Court Erred in Approving the Settlement Agreement Without Allowing Time for the Cayman Islands Liquidators to Complete their Investigation.

The Bankruptcy Court also erred by approving the Settlement without allowing time for the Cayman Liquidators to complete their investigation. Without the results of that investigation, the Bankruptcy Court lacked critical information necessary to meaningfully evaluate the proposed Settlement. As discussed in Section IV.A above, controlling Fifth Circuit law requires a bankruptcy court to obtain and consider all relevant facts before approving a settlement under Rule 9019. The facts presented at the time of the hearing demonstrated a sufficient connection between the Cayman Islands investigation and the propriety of the proposed

Settlement to put the Bankruptcy Court on notice that further investigation could be highly relevant to its consideration of the Settlement. Having been warned of Patrick's troubling misconduct and without a complete factual record in front of it, the Bankruptcy Court lacked clearly relevant facts necessary to approve the Settlement. Accordingly, the Court's approval of the Settlement lacking those facts was error.

### 1. *Applicable Legal Standard.*

The Bankruptcy Court "must be informed of all the relevant facts and information in order to make an independent judgment as to whether the settlement is fair and reasonable under the circumstances." *Cook v. Waldron*, 2006 WL 1007489, at *4 (S.D. Tex. 2006). "An approval of a compromise, absent a sufficient factual foundation, **inherently constitutes an abuse of discretion**." *AWECO*, 725 F.2d at 299 (emphasis added). "The duty of a bankruptcy judge to reach an 'intelligent, objective and educated evaluation' of settlements cannot be carried out absent a sufficient factual background." *Id.* (citing *Jackson Brewing*, 624 F.2d at 602).

### 2. *The Bankruptcy Court Ruled Prematurely and Thus Failed to Consider Highly Damning Evidence That Potentially Undermined Mark Patrick's Ability to Enter the Settlement on Behalf of HMIT.*

By rushing to rule on the Rule 9019 motion, the Bankruptcy Court willfully blinded itself to and deprived itself of the opportunity to consider significant

evidence that it knew could materially affect the propriety of the Settlement. At the time of the June 25, 2025 hearing, the Bankruptcy Court did not yet have the requisite factual background sufficient to meaningfully evaluate the Settlement because the JOLs' investigation in the Cayman Islands was at a very early stage. Indeed, the investigation had only just begun when the Court held its evidentiary hearing. Supp. R. 000190, Hrg. Tr. 190:8–21.

Keep in mind that the Cayman Islands court with jurisdiction over the entities that had long held the assets being exchanged in this Settlement *had already removed* Patrick from control of at least one of those entities because of evidence of his misconduct and appointed an independent receiver (the Joint Official Liquidators) to further investigate the matter. *See* Supp. R. 000183, Hrg. Tr. 183:15–21. This was no small step. The record before the Bankruptcy Court, including knowledge of the action taken by the Cayman court, showed the potential gravity of the issue and indicated a high likelihood that the Cayman investigation would yield much more information relevant to the propriety of the Settlement, for which the Bankruptcy Court should have waited before taking action. *See generally* Supp. R. 000190–000203.

The court-appointed Cayman Liquidators were investigating Patrick—the same person who signed the Settlement on behalf of HMIT—for his improper management of the charitable HoldCo entity and the multiple breaches of fiduciary

duty he committed to enrich himself at the expense of the Charitable Beneficiaries. *See* R. 004332–004333. The evidence was serious enough for the Cayman court to remove Patrick from control of at least one of those entities and to place them under an independent receiver, which was no small step. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (holding that corporate management should not be removed in favor of a receiver in the absence of "clear necessity" and where no "less drastic measures" are available to avoid further corporate misconduct). This information was placed before the Bankruptcy Court. Supp. R. 000204–000205. If Patrick had in fact improperly restructured HMIT and entered into the Settlement to further his misappropriation of charitable funds, that would seriously call into question whether the Settlement could be approved under Rule 9019 as reasonable, in good faith, and in the best interests of the estate.

### 3.     *The Bankruptcy Court Was on Notice that More Evidence of Mark Patrick's Misconduct Was Imminent.*

If the Bankruptcy Court had agreed to put off its decision pending the outcome of the Cayman investigation, it would not have had to wait long. In fact, the detailed and damning allegations in the Cayman Court's Writ of Summons issued just two weeks after the Bankruptcy Court's June 30, 2025 order approving the Settlement. *See* R. 004328; R. 0000010. And Dugaboy put the Court on notice during the Rule 9019 hearing that there was a proceeding in the Cayman Islands that threatened to

undercut both the good faith and fairness of the Settlement Agreement and Patrick's authority to enter into it.

Based on the preliminary facts presented by Dugaboy at the hearing, the Court should have allowed time for a sufficient investigation and fact-gathering period to have the entire record before it about Patrick's wrongdoing. Highland's own witnesses confirmed that there was scant information about what was happening in the Caymans. Jim Seery, the Claimant Trustee, was hesitant to say on the stand that he was even "generally" aware of it, and Highland's counsel stated on the record regarding the apparent falling out between Patrick and Dondero due to Patrick's actions: "I don't care. I have no knowledge of that." *See* Supp. R. 000098–99, Hrg. Tr. 98:24–99:2; Supp. R. 000061–62, Hrg. Tr. 61:25–62:1. Neither Dugaboy nor Highland nor the Bankruptcy Court could know the impact of Patrick's actions on the proposed Settlement absent further developments in the Cayman proceedings.

### 4. *The "Gaping Holes" in the Record Should Have Dissuaded the Bankruptcy Court from Approving the Settlement.*

Such "gaping holes" in the relevant factual background leading to a settlement preclude a bankruptcy court from fulfilling its duty under Rule 9019 to determine whether the settlement is reasonable, fair, or in the best interests of the estate. *See, e.g., AWECO,* 725 F.2d at 299 (reversing and remanding after finding there were "gaping holes in the background of information regarding the [parties'] settlement."); *In re Rock & Republic Enterprises Inc.*, No. 10–11728, 2011 WL

30

6445420, at *7 (Bankr. S.D.N.Y. Dec. 22, 2011) (declining to approve settlement where certain legal issues were not considered by the administrator because "[a] proposed settlement based upon an incomplete review of the relevant legal issues is not in the best interests of the estate and therefore may not be approved under section 9019"); *In re Lion Capital Grp.*, 49 B.R. 163, 189 (Bankr. S.D.N.Y. 1985) (holding approval of a settlement is not permitted where the record reveals "gaping holes in the background of information"); *Matter of Liberia Alma Mater, Inc.*, 123 B.R. 698, 700 (Bankr. D. P.R. 1991) ("When the record omits key relevant facts, the Bankruptcy Court is precluded from determining whether the settlement falls within the lowest bounds of reasonableness. The record of this case reveals gaping holes in the background information . . .").

### 5.     *The Court Reached Erroneous Conclusions About the Propriety of the Settlement.*

Due to the gaping holes in the record, the Bankruptcy Court made erroneous conclusions of facts and law to support its approval of a deeply flawed settlement. The Bankruptcy Court could not reasonably determine that the "Settlement Agreement is fair, reasonable, and in the best interests of each of the Highland Entities and their creditors and constituents," R.004551, in the absence of critical facts regarding Patrick's improper motives and the means through which he wrested beneficial ownership of HMIT from its original beneficiaries.   Likewise, the Bankruptcy Court's conclusion that the Agreement was "negotiated and entered into

31

by the Highland Entities and the HMIT Entities without collusion or fraud, in good faith" and was the result of "arms-length negotiations," *see* R.004551, lacked support in view of the additional information gleaned from the Cayman Liquidators' pending investigation.

### 6. *The Cayman Investigation Uncovered Facts That Compel Rejection of the Proposed Settlement.*

As expected, shortly after the Rule 9019 hearing, the Cayman investigation revealed new evidence that Patrick had engaged in a series of fraudulent, bad faith transactions designed to abscond with the Charities' money for his own benefit, that would negate any pretext of "good faith" in his negotiating and entering into the Settlement.

The investigation also uncovered additional evidence of what Dugaboy already suspected—that the Settlement facilitated Patrick's clandestine misdirection of goal of misdirecting funds that should have flowed to the Charitable Beneficiaries into other entities that he controlled.[12] This gap in the record seriously undermines the Bankruptcy Court's findings. It was error for the Bankruptcy Court to a baseless conclusion that the Settlement was entered into in good faith without awaiting the

---

[12] *See, e.g.*, R. 001259 (email showing the knowledge and complicity of Highland's counsel in Patrick's scheme to "extinguish" and dispossess the charitable foundations of their participating shares).

ample evidence of bad faith that, as Dugaboy's counsel and others explained at the hearing, would shortly be forthcoming.

Finally, the incomplete factual record meant that the Bankruptcy Court could not truly assess Patrick's authority to enter into the Settlement. Indeed, the Cayman Liquidators had not yet determined by the time of the Rule 9019 hearing whether Patrick's fraud should divest him of authority to act for HMIT. *See* Supp. R. 000250, Hrg. Tr. 250:6–12. Yet it is a fundamental principle of agency law that an agent cannot bind a principal to a contract unless the agent has authority to do so. *See In re Northlake Dev. LLC*, 643 F.3d 448, 450 (5th Cir. 2011). Dugaboy raised possible concerns about Patrick's authority to act for HMIT at the hearing, but due to the nascent stage of the Cayman proceeding, lacked complete evidence to present to the Bankruptcy Court. *See generally* Supp. R. 000195–205. Given the importance of the issue of a party's authority to enter into a settlement of the magnitude at issue, the Court should have awaited additional evidence on the issue of Patrick's relationships to HoldCo, HMIT, and the several intermediate entities that connected them. R. 000204–000205.

*** 

The Bankruptcy Court abused its discretion by approving the Settlement without allowing time for the Cayman Liquidators' investigation to fill the "gaping holes" in the factual record. Because the Cayman investigation was ongoing and the

33

court-appointed independent Liquidators had requested that the Bankruptcy Court stay its proceedings for 45 days in order to await their findings, the court should have recognized the likelihood that there was considerably more evidence soon to be uncovered that could greatly affect its evaluation of the proposed Settlement under the Rule 9019 factors. Had it done so, it would have held off ruling on the Settlement until the Cayman Liquidators completed—or at least significantly advanced—their investigation. It was error to approve the proposed Agreement based on insufficient factual information, and accordingly this Court should reverse the Bankruptcy Court's ruling. *See AWECO*, 725 F.2d at 298.

### C.    The Bankruptcy Court Erred in Allowing an Untested and Unreliable Claim Valuation Methodology.

The Bankruptcy Court abused its discretion and committed fundamental error in valuing HMIT's Class 10 claims by adopting an arbitrary fixed-dollar amount methodology instead of the standard *pro rata* approach, which ensures creditors receive full value on their claims and aligns with both the Plan and established bankruptcy principles. HMIT's Class 10 claims should have been valued *pro rata*, using HMIT's 99.5% equity ownership share in Highland as a proxy.[13] This

---

[13] Although Dugaboy is not a member of Class 10, it has a right to contest the Bankruptcy Court's method of valuation because the ultimate value of Class 10 claims directly affects what assets will be left to distribute to Dugaboy's Class 11 interest. *See* Supp. R. 000081, Hrg. Tr. 81:19–21 (the Bankruptcy Court "hear[d] about" the methodology issue because it would make "a material difference").

methodology is not only "standard," Supp. R. 000132–133, Hrg. Tr. 132:20–133:8, but ensures creditors receive the full value of their claims.

At the June 25, 2025 hearing, Dugaboy objected to the claim valuation methodology proposed by Claimant Trustee James Seery. Supp. R. 000079–80, Hrg. Tr. 79:24–80:16. Seery explained that he used the dollar amount in HMIT's limited partner capital account on the date the petition was filed ($394,630,871.53) as the basis for calculating HMIT's allowed amount for purposes of its bankruptcy claim. Supp. R. 000093–94, Hrg. Tr. 93:19–94:9. After subtracting the balance of approximately $57 million on a note HMIT owed to Highland, Seery arrived at a claim value of $336,940,230.58. Supp. R. 000110–000111, Hrg. Tr. 110: 14–111:7. Dugaboy strenuously argued that allowed amounts for the remaining claims should be calculated by using a *pro rata* percentage based on equity ownership shares, but the Bankruptcy Court sided with Highland and allowed HMIT's Class 10 claim in the same fixed amount calculated by Seery. R. 000246; R. 000249–000250.

## 1.    *Applicable Legal Standard.*

A district court must "independently determine" whether a bankruptcy judge's ultimate legal conclusion is correct, while reviewing the underlying facts for clear error. *Matter of Bufkin Bros., Inc.*, 757 F.2d 1573, 1577–78 (5th Cir. 1985) (quoting *Matter of Hammons*, 614 F.2d 399, 402–03 (5th Cir. 1980)). Therefore, when the bankruptcy court's methodology lacks factual support, the district court reviews the

issue *de novo* as a pure legal question. *In re Stembridge*, 394 F.3d 383, 388 (5th Cir. 2004).

### 2.    *Highland's Fixed-Dollar Methodology is Unsupported and Unreliable.*

The Bankruptcy Court erred by allowing Seery to use a fixed-sum methodology to determine claim value.[14] The Bankruptcy Court's approach is unsupported by both the Plan and the record. The Plan does not specify a claim valuation method. R. 000765. Seery admitted he could not "cite . . . [anything] specific" that supports the use of capital accounts to value the remaining claims. Supp. R. 000133, Hrg. Tr. 133:4. Seery also testified that it is "standard" to use equity ownership percentages to determine payments to equity holders on a *pro rata* basis, as Dugaboy proposed. Supp. R. 000132–000133, Hrg. Tr. 132:20–133:8. The Bankruptcy Court erred in adopting the fixed-sum capital account methodology apparently plucked from thin air by Highland's non-credentialed "expert" Seery. *See TMT Trailer*, 390 U.S. at 453 (reversing approval of plan confirmation because the court used an incorrect valuation methodology).

---

[14] Under the approach that Seery proposed and the Bankruptcy Court adopted, claims are valued based on each holder's allowed Class 10 interest, fixed to the limited partner capital account balance as of the petition date and divided by the total allowed Class 10 interests. *See generally* Supp. R. 000095-97. But Highland presented no evidence that Seery's use of capital account balances was a recognized method for valuation, or even that anyone else has ever used it for that purpose. It is not a reliable methodology.

Furthermore, capital accounts are not, and never were, intended as proxies for claim valuation. Highland acknowledges that limited partnership capital accounts are calculated primarily for tax purposes and tend to fluctuate over time. R. 000790; R. 003454; Supp. R. 000131, Hrg. Tr. 131:7–25. These accounts do not reflect the market value of partnership interests and are not suitable for determining creditor claims. In fact, Seery explained capital accounts are used in "sale . . . or liquidation of the partnership." Supp. R. 000094, Hrg. Tr. 94:6–7. There is no evidence that capital accounts are an appropriate proxy for claim valuation. This is not a reliable methodology for creditors to receive full value for their claims.

### 3.    *Dugaboy's Proposed* **Pro Rata** *Method is the Correct Approach for Valuing Equity Interests Under the Absolute Priority Rule.*

Dugaboy's proposed *pro rata* methodology is better suited to the facts and complies with the absolute priority rule. Class 11 is subordinated to Class 10. R. 002721; Supp. R. 000096–97, Hrg. Tr. 96:23–97:2. Absent agreement otherwise, the absolute priority rule requires senior creditors to be paid in full before junior creditors receive anything. *See* 11 U.S.C. § 1129(b)(2)(C); *In re Seaquest Diving, L.P.*, 579 F.3d 411, 420 n.5 (5th Cir. 2009). But the rule is not violated when junior creditors or equity holders receive only a contingent interest in a liquidating trust, which is only realized in the event of full payment to senior creditors. *See In re Introgen Therapeutics*, 429 B.R. 570, 585 (Bankr. W.D. Tex. 2010) ("The right to

receive something imaginary is not property."). That applying a *pro rata* methodology could ultimately result in Dugaboy receiving the value of its 0.5% equity share does not mean that Class 11 would improperly receive distributions ahead of Class 10. Dugaboy's receipt of any value is contingent on full payment to HMIT based on HMIT's own 99.5% equity share. Had the Bankruptcy Court accepted Dugaboy's methodology, Dugaboy would have had only an inchoate interest until Class 10 was paid in full.

Highland's fixed-dollar methodology violates the absolute priority rule because it inaccurately values creditors' claims. The absolute priority rule is violated both by the overpayment and underpayment of senior creditors. *See, e.g., In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009) ("The corollary of the absolute priority rule is that senior classes cannot receive more than a one hundred percent (100%) recovery for their claims."). Highland's fixed dollar amount methodology uses capital accounts as of October 16, 2019, the petition date. R. 000080. Because capital accounts are calculated primarily for tax reasons, their book values have little or nothing to do with the actual market value of an equity interest. R. 000790; R. 003454. Relying on capital accounts to value creditors' claims all but guarantees inaccurate payments to senior creditors and violates the absolute priority rule.

### 4.    *HMIT's Substantial Equity Interest Is Sufficient to Value All Class 10 Claims.*

The Bankruptcy Court erred by disregarding the clear structure of the estate and the parties' contractual arrangements, instead adopting a fixed-dollar methodology that is unsupported by the record. HMIT's equity share alone is sufficient to value the claims remaining in the estate, because when its claim is valued, the other claims to be determined fall in place. HMIT's 99.5% equity interest in Highland (as a Class 10 interest) sits immediately above the Class 11 interests, which collectively hold the remaining 0.5%. This means that HMIT's equity share is not only the overwhelming majority, but also the controlling interest for purposes of distribution. Because of this structure, properly valuing and satisfying HMIT's 99.5% equity interest is the critical step in the distribution process. Once HMIT's claim is valued and paid in full, the requirements of absolute priority are met. HMIT's equity share alone is sufficient to determine the value of all claims at this level of the priority scheme because satisfaction of its claim necessarily precedes and constrains any potential recovery by junior interests.

### 5.    *The Bankruptcy Court Incorrectly Valued the Equity Interests.*

Because the Intercreditor Agreement had already resolved HCLOM's non-equity claim, the only remaining claims to value were those of the equity holders. The absolute priority rule functions to subordinate equity holders' claims to those of

other creditors. *See Seaquest Diving*, 579 F.3d at 420 n.5. With the only Class 10 non-equity creditor claim subsumed under the Intercreditor Agreement, the Bankruptcy Court was required to ensure that its valuation methodology treated all remaining equity holders fairly and in accordance with the absolute priority rule. *See In re Serta Simmons Bedding, Inc.*, 125 F.4th 555, 565 (5th Cir. 2024) (the Bankruptcy Code upholds the "important norm" that similarly situated creditors receive similar treatment); 11 U.S.C. § 726(a)(6) (any distribution of estate property must go, in the last instance to the debtor). The Bankruptcy Court's failure to apply a fair and consistent valuation methodology for equity holders contravened both the absolute priority rule and the fundamental principle of equal treatment among similarly situated claimants. This too constitutes clear error and requires reversal.

***

The Bankruptcy Court's decision to adopt a fixed-dollar method for valuing Class 10 claims was a clear error that requires correction. *See TMT Trailer*, 390 U.S. at 453 (using incomplete and inaccurate valuation method was reversible error). The record reveals that there is no factual or legal basis for using limited partners' capital account balances as a proxy for claim value, especially when the Plan does not contemplate such an approach and no expert testimony supports its use. By disregarding the *pro rata* methodology—anchored in HMIT's overwhelming 99.5% equity interest and the clear terms of the Intercreditor Agreement—the Bankruptcy Court not only departed from standard bankruptcy practice but also undermined the

40

absolute priority rule and the principle of equal treatment for similarly situated creditors. The *pro rata* approach, by contrast, is supported by the Plan, the parties' contractual arrangements, and established bankruptcy law. It ensures that all claims are valued fairly and in accordance with the priorities set forth in the Code. The Bankruptcy Court's mistaken adoption of an unrecognized and unreliable fixed-sum method thus resulted in an inequitable and unsupported outcome, defying Rule 9019's command of fair and equitable treatment and warranting reversal.

## CONCLUSION

For these reasons, the Bankruptcy Court's Order approving the Settlement should be reversed.

Dated:  November 25, 2025          Respectfully submitted,

**WINSTON & STRAWN LLP**

*/s/ Geoffrey S. Harper*
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
(214) 453-6500
(214) 453-6400 (fax)


***Attorneys for Appellant The Dugaboy
Investment Trust***

42

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 25, 2025, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ *Geoffrey S. Harper*
Geoffrey S. Harper

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(h) as it contains 9,519 words, excluding the portions of the document exempted by 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman (12-point in footnotes).

Dated: November 25, 2025            Respectfully submitted,
_____

                                     **WINSTON & STRAWN LLP**

                                     */s/ Geoffrey S. Harper*
                                     Geoffrey S. Harper
                                     Texas Bar No. 00795408
                                     gharper@winston.com
                                     John Michael Gaddis
                                     Texas Bar No. 24069747
                                     mgaddis@winston.com
                                     2121 N. Pearl Street, Suite 900
                                     (214) 453-6500
                                     (214) 453-6400 (fax)

                                     ***Attorneys for Appellant The Dugaboy Investment Trust***