Case No. 3:25-cv-01876-K

---

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

---

## IN RE HIGHLAND CAPITAL MANAGEMENT, L.P.,
*Debtor*

---

### THE DUGABOY INVESTMENT TRUST

*Appellant*

v.

### HIGHLAND CAPITAL MANAGEMENT, L.P. and HIGHLAND CLAIMANT TRUST,

*Appellees*

---

On Appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 19-34054-sgj11
**THE HONORABLE CHIEF JUDGE STACEY G. C. JERNIGAN, PRESIDING**

---

### APPELLANT THE DUGABOY INVESTMENT TRUST'S REPLY BRIEF

---

Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
(214) 453-6500
(214) 453-6400 (fax)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

    A.    Highland's Challenges to Dugaboy's Standing Are
           Meritless ................................................................................2

    B.    Highland Cannot Salvage the Bankruptcy Court's Errors
           in Approving the Settlement ...................................................4

           1.    The Bankruptcy Court Erred in Rushing to
                  Approve the Settlement Based on an Incomplete
                  Factual Record ..........................................................4

           2.    Dugaboy Established a Clear Connection Between
                  the Cayman Proceeding and Dugaboy's Objections
                  to the Proposed Settlement..........................................7

    C.    The Bankruptcy Court Erred by Adopting an Improper
           Valuation Methodology...........................................................9

           1.    Applicable Legal Standard........................................10

           2.    Highland's Method for Valuing Equity Holders'
                  Claims was Untested and Unreliable .....................10

            3.    Dugaboy's Well-Established *Pro Rata* Method
                  Satisfies the Absolute Priority Rule........................13

           4.    Neither the Plan nor the Claimant Trust Agreement
                  Contemplate Highland's Proposed Methodology...................14

CONCLUSION ...................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of AWECO, Inc.*,
   725 F.2d 293 (5th Cir. 1984) ...................................................................5, 6

*Matter of Cmty. Home Fin. Servs. Corp.*,
   32 F.4th 472 (5th Cir. 2022) .............................................................12

*Cook v. Waldron*,
   No. H-05-3438, 2006 WL 1007489 (S.D. Tex. Apr. 18, 2006) ...........5

*Czyzewski v. Jevic Holding Corp.*,
   580 U.S. 451 (2017)...........................................................................3

*In re Diamond Beach VP, LP*,
   551 B.R. 590 (S.D. Tex. 2016) ...........................................................10

*Matter of Dunham*,
   110 F.3d 286 (5th Cir. 1997) .......................................................10, 12

*In re Idearc, Inc.*,
   423 B.R. 138 (Bankr. N.D. Tex. 2009)..............................................14

*In re Introgen Therapeutics*,
   429 B.R. 570 (Bankr. W.D. Tex. 2010)........................................13, 14

*In re Stembridge*,
   394 F.3d 383 (5th Cir. 2004) .......................................................10, 12

*In re Technicool Sys, Inc.*,
   896 F.3d 382 (5th Cir. 2018) ..............................................................4

*In re With Purpose, Inc.*,
   No. 23–30246-MVL7, 2025 WL 271469 (Bankr. N.D. Tex. 2025) ...........11, 12

**Statutes**

11 U.S.C. § 1129(b)(2)(C) ........................................................................13

iii

**Other Authorities**

Fed. R. Bankr. P. 9019 ........................................................................................1, 2

## INTRODUCTION

Despite its best efforts, Highland's Response cannot save the bankruptcy court from the errors that doom its approval of the Settlement.[1]  Most of those errors were driven by that court's determination to rule "today"[2] rather than take the time to conduct the independent inquiry required by Federal Rule of Bankruptcy Procedure 9019 and controlling case law construing it.  Haste made the court rush to its ruling even though it knew that considerably more evidence of Mark Patrick's misconduct would soon arrive from the Joint Official Liquidators in the Cayman Islands proceeding. The bankruptcy court also erred in accepting Highland's proposed methodology for valuing claim interests based on fixed dollar amounts, which was not "math" but junk math unsupported by any experts, publications, or evidence used by anyone ever before. By contrast, Highland's own Claimant Trustee admitted that the *pro rata* methodology proposed by Dugaboy was a "standard" and widely accepted approach. Controlling law requires the bankruptcy court to justify its endorsement of Highland's methodology, but it did not do so. For all these reasons,

---

[1] Highland also commits a major error that the bankruptcy court did ***not*** make, by incorrectly suggesting that Dugaboy lacked standing to challenge the Settlement. *See* Section A below. Highland insists it is not actually ***asserting*** its standing arguments in this appeal and instead is content to vent about them in footnotes. *See, e.g.,* Resp. 18 n.41.  In so doing, Highland avoids the inevitable defeat that would result from litigating its meritless contentions. As the bankruptcy court correctly recognized, Dugaboy has pecuniary interests that give it a stake in the settlement proceedings.

[2] *See* Supp. R. 000249, Hrg. Tr. 249:11–14 ("I have a mountain of other stuff waiting for me, so I really want to rule today.").

1

this Court should reverse the bankruptcy court's approval of the proposed Settlement under Rule 9019.

## ARGUMENT

### A.    Highland's Challenges to Dugaboy's Standing Are Meritless

Highland spends much of its Response speculating—while maintaining that it is not actually arguing—that Dugaboy lacks a pecuniary interest sufficient to give it standing to challenge the Settlement. Resp. 15–16 & n.38, 18 & n.41, 25 & n.57.[3] Highland frames this argument style as a favor to the court. *See, e.g.*, Resp. 18 & n.41 ("Highland has declined to further complicate this appeal with what would be a meritorious motion to dismiss Dugaboy's appeal for lack of standing.").[4]  But the bankruptcy court has already rejected Highland's argument, finding that Dugaboy had a pecuniary interest at stake. Supp. R. 000038, Hrg. Tr. 38:20–22 ("I think they're affected by the settlement, so that makes them a party in interest."). Highland does not address the bankruptcy court's finding at all, let alone argue that the court abused its discretion by making that finding.

If Highland were challenging Dugaboy's standing—which it says it is not— that challenge would fail for multiple reasons. First, Dugaboy had standing to

---

[3] Dugaboy's Opening Brief will be cited herein as "Br." and Highland's Response Brief will be cited as "Resp."

[4] For this reason, Dugaboy will not distinguish the numerous prior standing decisions that Highland relegates to a footnote. *See* Resp. 18 n.41.  However, Dugaboy reserves the right to oppose these standing arguments if and when Highland affirmatively asserts them.

challenge the bankruptcy court's determination of the allowed amount and method for valuation of HMIT's Class 10 equity interest, because "the ultimate value of Class 10 claims directly affects what assets will be left to distribute to Dugaboy's Class 11 interest." *See* Br. 34 n.13 (citing Supp. R. 000081, Hrg. Tr. 81:19–21 (the bankruptcy court "hear[d] about" the methodology issue because it would make a "material difference" to Dugaboy's Class 11 interest)).

Second, while Dugaboy's equity interest in Class 11 is small (0.1866%, compared to HMIT's 99.5%), it is not zero and that suffices to establish the required pecuniary interest. A small interest is still a "cognizable interest." *See* Resp. 18; *see also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").

After repeated references to the small size of Dugaboy's Class 11 interest, Highland then forgets that number exists, making the factually and mathematically wrong argument that Dugaboy "lacks *any* pecuniary interest in the Highland estate or the outcome of this appeal." Resp. at 16 n.38 (emphasis added); *see id*. at 7, 18 n.41, 28 n.62. To that end, Highland contends that "with epistemological certainty, that Dugaboy cannot now and never will recover anything under the Plan." Resp. 29.[5]

---

[5] Highland repeatedly characterizes Dugaboy's Class 11 interest as "out of the money"—a term which has no legal significance for any analysis of standing. *See* Resp. 15–16, 30.

3

But "epistemological certainty" is not the law. To have standing to contest a bankruptcy court's order, an appellant need only be "directly, adversely, and financially impacted by a bankruptcy order." *In re Technicool Sys, Inc.*, 896 F.3d 382, 384 (5th Cir. 2018). Here, the bankruptcy court found that the methodology used to value the allowed amount for purposes of Class 10 claims would make a "material difference" when it came to fixing the allowed amount of Dugaboy's Class 11 interest. Supp. R. 000081, Hrg. Tr. 81:19–21.

Third and finally, the Settlement's inclusion of the approximately $17 million Dugaboy Note creates an additional pecuniary interest separate and apart from Dugaboy's Class 11 interest. Br. 11; R. 000817. For all these reasons, Dugaboy has standing to appeal the bankruptcy court's approval of the Settlement.

## B.   Highland Cannot Salvage the Bankruptcy Court's Errors in Approving the Settlement

### 1.   *The Bankruptcy Court Erred in Rushing to Approve the Settlement Based on an Incomplete Factual Record*

Nowhere in its Response does Highland meaningfully address one of Dugaboy's primary issues on appeal: that it was error for the bankruptcy court to approve the Settlement without a complete record of all relevant facts before it. Instead, Highland summarily dismisses any possible connection between the Cayman Islands proceeding and the challenged Settlement.[6]

---

[6] Resp. at 10–12, 16–17.

4

Dugaboy's actual argument—which Highland essentially ignores—is that the bankruptcy court erred by failing to avail itself of all relevant facts before rendering its decision on the Settlement. Controlling Fifth Circuit law requires a bankruptcy court to obtain and consider all relevant facts before approving a settlement. *See, e.g., Cook v. Waldron*, No. H-05-3438, 2006 WL 1007489 (S.D. Tex. Apr. 18, 2006); *Matter of AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984). As *Cook* explains, "[t]he court must be informed of all the relevant facts and information in order to make an independent judgment as to whether the settlement is fair and reasonable under the circumstances." 2006 WL 1007489, at *4. And the Fifth Circuit in *AWECO* warned that "[a]n approval of a compromise, absent a sufficient factual foundation, ***inherently constitutes an abuse of discretion***," emphasizing the bankruptcy judge's duty to reach an "intelligent, objective and educated evaluation" supported by a sufficient factual background. 725 F.2d at 299–300 (emphasis added).

Here, the bankruptcy court was presented with sufficient facts to recognize that there was some connection between the Cayman Islands proceeding and the proposed Settlement, most prominently through the involvement of Mark Patrick, and that this connection had the potential to undercut both the good faith and fairness of the proposed Settlement. Although Dugaboy adequately raised facts demonstrating this connection in the bankruptcy court, and also pointed out that there were substantial facts relevant to this issue not yet in the court's possession,

5

the court nonetheless approved the Settlement without waiting for additional developments in the Cayman Islands proceeding. *See* Supp. R. 000028–30, Hrg. Tr. 28:17–30:9. This itself was error, in no small part because the court made clear that its choice to plow forward without all relevant facts was based not on legal reasoning but instead on a desire to be done with this prolonged bankruptcy proceeding.

The bankruptcy court's own comments underscore the unnecessary rush: "I have a mountain of other stuff waiting for me, so I really want to rule today."[7] This remark runs directly contrary to the Fifth Circuit's directive in *AWECO* that "the need for expedition is not a justification for abandoning proper standards." 725 F.2d at 299. As in *AWECO*—where time pressure led to approval of a settlement despite "gaping holes" in the record—in this case the record was devoid of the important evidence and information that was imminently forthcoming from the Cayman Islands proceeding. Indeed, the bankruptcy court was warned that the Cayman Islands proceeding would shortly produce evidence and make findings bearing on Patrick's authority to act and his good faith, which should have counseled the court to pause before ruling on the proposed Settlement. *See id.*

Highland does not and cannot dispute that *AWECO* is controlling precedent and required the bankruptcy court to ensure it obtained and assessed all relevant underlying facts in formulating its decision. Instead, Highland calls the Cayman

---

[7] *See, e.g.*, Supp. R. 000249, Hrg. Tr. 249:13–14.

proceedings irrelevant and emphasizes the absence of contrary evidence at the hearing. But that framing simply confirms Dugaboy's point: because the Cayman investigation was still in its infancy, the pertinent facts were not yet available, and the law required the bankruptcy court to await those facts rather than approve a settlement under a cloud of uncertainty. *See* Br. 32–33. The bankruptcy court erred in approving the Settlement prematurely and without all relevant evidence.

> **2.** ***Dugaboy Established a Clear Connection Between the Cayman Proceeding and Dugaboy's Objections to the Proposed Settlement***

Further, contrary to Highland's contention that there is no possible connection between the Settlement and the Cayman Islands proceeding, Dugaboy has established a clear connection between the Cayman Islands proceeding and Dugaboy's objections to the Settlement. Specifically, at the June 25, 2025 hearing to approve the Settlement, Dugaboy informed the bankruptcy court that the pending proceeding in the Caymans involved an investigation into Mark Patrick's alleged misuse of charitable foundations connected to both Highland and Hunter Mountain Investment Trust ("HMIT").[8] Mark Patrick—who was entering into the Settlement with Highland—was being investigated for serious mismanagement and breach of

---

[8] *See* Supp. R. 000204–000205, Hrg. Tr. 204:10–205:24 (James Dondero testimony); R.004702–03.

fiduciary duties.[9] At the outset of that investigation, Patrick was removed from control of the Charitable DAF HoldCo entity ("HoldCo"), which was placed under joint receivership.[10] And Patrick himself admitted that he controlled HMIT through a chain of intermediate entities linking HoldCo to HMIT.[11]

The testimony and evidence discussed above put the bankruptcy court on notice of the serious allegations against Mark Patrick. Given the connections between the HoldCo entity and the assets at issue in the Settlement[12]—along with Patrick's efforts to consolidate funds and squirrel them away beyond the reach of the law[13]—the court should have recognized the strong possibility that Patrick entered into the HMIT/Highland settlement with the wrongful purpose of misappropriating the assets obtained through the Settlement for his own benefit.[14] Additional information was needed to determine the extent of the wrongdoing and its impact on the Settlement. The Cayman Joint Official Liquidators ("JOLs") were put in charge of that investigation, and HoldCo even reached out to Highland Claimant Trustee

---

[9] *See* R. 004332–004333 (Charitable DAF HoldCo's Statement of Claim in Cayman Islands proceeding).

[10] Br. 9 n.7; *see* Supp. R. 000173–74 and 000183, Hrg. Tr. 173:22–174:11, 183:4–21 (Mark Patrick testimony).

[11] *See id.*

[12] *See id.*

[13] *See, e.g.*, R. 004718 (HoldCo's Statement of Claim in Cayman Islands proceeding).

[14] Supp. R. 000204–000205, Hrg. Tr. 204:11–205:24 (James Dondero testimony); *see* R. 004769 (HoldCo Statement of Claim).

James P. Seery, Jr. ("Seery") to request that the settlement hearing be adjourned or that distributions under the Settlement be stayed for 45 days while the investigation proceeded.[15]  Counsel for Dugaboy conveyed this request to the bankruptcy court during the June 25, 2025 hearing on the Settlement, but the court declined to grant it.  *Id*.[16] These facts all demonstrate that the Cayman investigation is inextricably tied to Mark Patrick's authority to act for HMIT, and the fairness and propriety of the resulting Settlement.

### C.    The Bankruptcy Court Erred by Adopting an Improper Valuation Methodology

The bankruptcy court also committed a fundamental legal error by approving an untested and unrecognized methodology for valuing HMIT's Class 10 claim. That methodology—which was based on the use of pre-petition limited partner capital accounts—is untested, unprecedented, and fails to capture the full value of

---

[15] Supp. R. 000029–000030, Hrg. Tr. 29:25–30:9 (Dugaboy counsel discussing letter from JOLs).

[16] Highland expends much ink baselessly accusing Dugaboy of disingenuousness, deception, and dishonesty regarding the letter that the Cayman Liquidators sent on the eve of the June 25, 2025 settlement hearing. *See* Resp. 11 & n.33, 25 n.58.  In that letter, which was sent to Highland Claimant Trustee Seery but not directly to the bankruptcy court, the Liquidators asked for either an adjournment of the settlement hearing or a 45-day stay on making distributions to HMIT entities under the Settlement so that the Liquidators could complete their investigation of Mark Patrick's alleged misdeeds.  The Liquidators' letter was extensively discussed at the hearing, and Dugaboy's counsel offered it and the court admitted it into evidence. *See* Supp. R. 000028–30, 000037, 000185, 000188–89, 000191–92, 000222, Hrg. Tr. 28:17–30:5, 37:10–23, 185:7–22, 188:25–189:8, 191:8–192:1, 222:4–8. Because only the bankruptcy court could adjourn the hearing or order a stay, the Liquidators' obvious intent was for Seery or counsel to convey those requests to the court, which counsel did. *See id*. Highland's overwrought accusation aside, there was no "deception" because everyone at the hearing understood that the letter had not been sent directly to the bankruptcy court, but the court was nevertheless informed of the Liquidators' requests. *See* Supp. R. 000028–30, Hrg. Tr. 28:17–30:9. No one was misled about anything.

former equity holders' claims. The bankruptcy court's unexplained adoption of this improper methodology not only contravenes established precedent but also lacks textual support in Highland's governing documents. Highland's own witness—and the architect of the so-called "capital account method"—admitted that it is not a recognized methodology for determining value. Supp. R. 000133, Hrg. Tr. 133:4 (Seery admitting he could not "cite . . . [anything] specific" that supports using capital accounts for valuation). The bankruptcy court's endorsement of that unrecognized and unreliable methodology cannot stand.

### 1.     *Applicable Legal Standard*

A bankruptcy court's choice of valuation methodology is reviewed de novo. *See In re Stembridge*, 394 F.3d 383, 385 (5th Cir. 2004); *Matter of Dunham*, 110 F.3d 286, 289 n.11 (5th Cir. 1997). And even when an expert advocates for a particular methodology, the bankruptcy court is "not bound to follow [that] expert's choice," "***particularly*** where that choice is not supported by the evidence." *In re Diamond Beach VP, LP*, 551 B.R. 590, 609 (S.D. Tex. 2016) (emphasis added).

### 2.     *Highland's Method for Valuing Equity Holders' Claims was Untested and Unreliable*

Highland fails to rebut Dugaboy's argument that capital accounts are an inappropriate means to accurately determine the value of the former equity holders' claims. *See* Br. 36–37. Highland's non-credentialed expert Seery acknowledged that limited partner capital accounts are calculated primarily for tax purposes and

fluctuate over time, which makes them inherently ill-suited for valuing residual equity claims. Br. 37 (citing R. 000790; R. 003454; Supp. R. 000131, Hrg Tr. 131:7–25). Highland's only response is that the fixed-dollar methodology Seery used "was math." Resp. 27. That non sequitur is a far cry from an explanation of why Seery's methodology was appropriate or how it fairly captured the value of equity interests. *See id.* Nor does Seery's purported reliance on "Highland's own internal capital account ledgers, pre-bankruptcy tax returns, and K-1s prepared by Highland's accounts when Dondero controlled Highland" salvage his otherwise baseless methodology. *See id.*

As explained above and in Dugaboy's Opening Brief (Br. 37–38), the capital account values do not accurately reflect the market value of the underlying equity interests. Relying on these tax-driven documents to calculate claims is not just inappropriate, it is fundamentally unreliable. Given the utter lack of evidence that the capital account approach is a recognized valuation method—or even that anyone else has ever used that approach (*see* Br. 36 & n.14)—Highland's "math" is nothing more than unrecognized and unreliable junk math that the bankruptcy court should have recognized as such and refused to adopt.[17]

---

[17] Highland misstates the governing legal standard by suggesting that it need only show a "rational basis" to support the method it used to calculate HMIT's Class 10 Interest. Resp. 26. But "rational basis" is a concept from constitutional and civil-rights law that does not apply to valuation in a bankruptcy context. It is distinct from the bankruptcy standard, which requires that a settlement be "within the range of reasonableness." *See, e.g., In re With Purpose, Inc.*, No. 23–30246-MVL7,

Given the total lack of evidence that the capital account approach was an established or even recognized method, or that anyone before Seery has ever used it, the bankruptcy court's adoption of that method is a legal conclusion that is reviewed without deference. *See Stembridge*, 394 F.3d at 385; *Dunham*, 110 F.3d at 289 n.11.

The bankruptcy court also failed to "elaborate on the reasoning behind its valuation method," which Fifth Circuit law requires. *Matter of Cmty. Home Fin. Servs. Corp.*, 32 F.4th 472, 482–83 (5th Cir. 2022). Under these circumstances, remand is the proper remedy. *See id.* (finding remand proper even where appellant "did not provide an alternative valuation").

In this case, the bankruptcy court's lack of explanation is doubly problematic. Highland's Fifth Amended Plan of Reorganization (as Modified) (the "Plan") does not address what method should be used for calculating the allowed amounts former equity holders' Class 10 and Class 11 interests. *See* R. 000625–714. That made it all the more important for the bankruptcy court to explain why the methodology being used to calculate those amounts was appropriate.  But the court's June 30, 2025 Order approving the Settlement does not do so. R. 004549–4552; R. 000254–262. Remand is therefore necessary so that the bankruptcy court can make a ***reasoned*** determination of the value of the Class 10 and Class 11 interests.

---

2025 WL 271469, at *21 (Bankr. N.D. Tex. 2025)*. That standard, in turn, typically refers to the value recovered and not the method for calculating that value. *See id*.

### 3. *Dugaboy's Well-Established Pro Rata Method Satisfies the Absolute Priority Rule*

Nor is there any merit to Highland's argument that the valuation methodology advocated by Dugaboy violates the so-called "absolute priority rule." *See* Resp. 29–30, *citing* 11 U.S.C. § 1129(b)(2)(C) (requiring that senior interest holders must be paid in full before junior interests receive anything). Highland is wrong.

Highland acknowledges that "[t]he Plan does not treat all equity interests the same." *See* Resp. at 28. Thus, in its Opening Brief, Dugaboy explained that not only does Dugaboy's *pro rata* methodology fully comply with bankruptcy priority rules, Dugaboy's methodology is the ***only*** way to ensure a fair result for all remaining interest holders. Br. 37–38.

A *pro rata* methodology does not mean that Dugaboy's Class 11 claim would receive a distribution ahead of HMIT's Class 10 claim.[18] "When junior creditors or equity holders receive only a contingent interest in a liquidating trust, which is only realized in the event of full payment to senior creditors," the absolute priority rule is not violated. Br. 37–38 (citing *In re Introgen Therapeutics*, 429 B.R. 570, 585 (Bankr. W.D. Tex. 2010) ("The right to receive something imaginary is not property.")). Use of equity ownership percentages to determine claim value does not

---

[18] Dugaboy does not dispute that Class 11 is subordinated to Class 10. *See* R. 002721; Supp. R. 000096–97, Hrg. Tr. 96:23–97:2.

contravene the absolute priority rule because, until Class 10 is paid in full, what Class 11 holds is only "imaginary." *Introgen*, 429 B.R. at 585.

Highland fails to address these arguments, even though Dugaboy has already explained in its Opening Brief that "[t]he absolute priority rule is violated both by the overpayment and underpayment of senior creditors." Br. 38 (citing *In re Idearc, Inc.*, 423 B.R. 138, 170 (Bankr. N.D. Tex. 2009) ("The corollary of the absolute priority rule is that senior classes cannot receive more than one hundred (100%) recovery for their claims.")). Dugaboy's point here is that the absolute priority rule does not allow HMIT to collect ***more than*** 100% of the value for its Class 10 claim and thus deprive Dugaboy of the residual value of its subordinated Class 11 claim. Br. 37–38. For this reason (*contra* Highland Resp. 29–30), the value of the interest holder's claim has ***everything*** to do with the absolute priority rule. Dugaboy's *pro rata* methodology is a sound choice under established bankruptcy principles and delivers full and fair value on all interest holders' claims.

### 4.    *Neither the Plan nor the Claimant Trust Agreement Contemplate Highland's Proposed Methodology*

Highland's assertion that the Plan and Claimant Trust Agreement ("CTA") mandates the use of a fixed-dollar methodology is not only unsupported by the actual language of those documents but also contradicted by Seery's sworn testimony. *See, e.g.*, Supp. R. 000133, Hrg. Tr. 133:4. Highland asserts that "[t]he Plan and the Claimant Trust Agreement require that all allowed Class 10 and Class 11 interests

14

be determined in a fixed amount" without explaining how the cited provisions support this notion. Resp. 6 (citing R. 000744–000745 (Plan, Art. III, ¶¶ 10–11); R. 003501–003502 (CTA Art. V. 5.1(c)) (cleaned up). The cited provisions of the Plan say nothing of the sort, and Seery's own testimony contradicts Highland's argument. As Seery conceded at the June 25, 2025 hearing. the Plan "doesn't tell you how to do the amount." R. 0000130, Hrg. Tr. 130:14–19. Highland's argument to the contrary is wrong twice over.

Highland also points to provisions in the Plan and CTA that it argues (incorrectly) require Class 10 and Class 11 interests to be determined in a fixed amount. Resp. 10 (citing R. 000744–000745; R. 003501–003502). The pertinent part of Article III, paragraphs 10 and 11 of the Plan reads:

> On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 [or Class 11] Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) **its Pro Rata share of the Contingent Claimant Trust Interests or** (ii) **such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing**.

R. 000744–000745 (emphasis added). The Plan's plain language dictates that the amount of each claim shall be determined by the "Pro Rata Share of the Contingent Claimant Trust Interests" or by other less favorable means as may be agreed. *Id.* This is no mandate for a fixed dollar methodology, much less for the use of capital accounts to arrive at a fixed amount. Highland mischaracterizes the Plan's text. *Cf.*

15

Resp. 6 ("The Plan . . . requires that all allowed Class 10 and Class 11 interests be determined in a fixed amount").

> As for the CTA, the pertinent part reads:

> The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest **equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests**, as applicable, under the plan.

R. 003501–003502 (emphasis added). This language means that the Trustee is to calculate claim value by taking the amount of a holder's Allowed Interest, however that is determined by the bankruptcy court, and dividing it by the total amount of all Allowed Interests in the same class. *Id.* This provision also does not mandate the use of a fixed-dollar methodology. Highland again mischaracterizes the text. *See* Resp. 6 ("The . . . [CTA] requires that all allowed Class 10 and Class 11 interests be determined in a fixed amount."). Highland's reading of these provisions is fundamentally wrong and conflicts with the clear proportional allocation method outlined in the Plan and CTA.

***

As Dugaboy explained in its Opening Brief, the use of capital accounts to value claims is an unrecognized, unprecedented, and untested method—and Highland presented no evidence to the contrary. By contrast, Dugaboy's proposed

16

method of using equity ownership percentages to determine payments to equity holders on a *pro rata* basis—as Seery acknowledged—is a "standard" valuation methodology. Br. 36 (citing Supp. R. 000132–000133 (Hrg. Tr. 132:20–133:8)). With no textual support in Highland's governing documents, no explanation from the Bankruptcy Court, and an admittedly unsupported methodology, the bankruptcy court's order adopting the fixed-dollar methodology for calculating the value of HMIT's Class 10 claim cannot stand.

## CONCLUSION

The bankruptcy court's Order approving the Settlement should be reversed and this proceeding should be remanded.

Dated:  February 5, 2026            Respectfully submitted,

                                    **WINSTON & STRAWN LLP**

                                    */s/ Geoffrey S. Harper*
                                    Geoffrey S. Harper
                                    Texas Bar No. 00795408
                                    gharper@winston.com
                                    John Michael Gaddis
                                    Texas Bar No. 24069747
                                    mgaddis@winston.com
                                    2121 N. Pearl Street, Suite 900
                                    (214) 453-6500
                                    (214) 453-6400 (fax)


                                    ***Attorneys for Appellant The Dugaboy
                                    Investment Trust***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 5, 2026, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

/s/ Geoffrey S. Harper
Geoffrey S. Harper

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(h) as it contains 4,189 words, excluding the portions of the document exempted by 8015(g).

I further certify that this document complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(7)(B) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman (12-point in footnotes).

Dated: February 5, 2026
_____

Respectfully submitted,

**WINSTON & STRAWN LLP**

*/s/ Geoffrey S. Harper*_____
Geoffrey S. Harper
Texas Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Texas Bar No. 24069747
mgaddis@winston.com
2121 N. Pearl Street, Suite 900
(214) 453-6500
(214) 453-6400 (fax)

*Attorneys for Appellant The Dugaboy Investment Trust*